UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**17 CV 4327**

-------------------------------------------------------X

MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE VENTURES,
LLC, NDAP, LLC and CHANNELREPLY, LLC

_____Civ._____(   )

Plaintiffs,

-against-

DAVID GITMAN, JEREMY FALK, SUMMIT
ROCK HOLDINGS, LLC, ACCEL COMMERCE,
LLC, DALVA VENTURES, LLC, KONSTANTYN
BAGAEV, OLESKSII GLUKHAREV and
CHANNEL REPLY, INC.,

Defendants.

-------------------------------------------------------X

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUCTION AND TEMPORARY RESTRAINING ORDER

---

Barry S. Guaglardi, Esq. (BSG2401)
ARTURI, D'ARGENIO,
GUAGLARDI & MELITI, LLP
Attorneys for Plaintiff
365 West Passaic Street, Suite 130
Rochelle Park, NJ 07662
Phone: (201)947-4100
Fax:    (201)947-4010
Email: bguaglardi@adgmlaw.com

<u>TABLE OF CONTENTS</u>

<u>Page No.</u>

BRIEF STATEMENT OF FACTS ……………………………………........... 1

LEGAL ARGUMENT ……………………………………………….. ...5

    I.     DEFENDANTS ARE ENTITLED TO IMMEDIATE
          AND PRELIMINARY RESTRAINTS …………………………........... 5

    II.    GITMAN, CHANNEL REPLY, INC. AND THE OTHER
          DEFENDANTS MUST BE IMMEDIATELY RESTRAINED
          FROM: (1) COMPETING WITH CSV AND CHANNELREPLY;
          (2) UNLAWFULLY MISAPPROPRIATING PLAINTIFFS'
          LABOR, SKILL, NAME AND REPUTATION;
          (3) MISAPPROPRIATING COMPANY DOCUMENTS
          AND INFORMATION FOR USE IN DEFENDANTS'
          RESPECTIVE COMPETITIVE BUSINESSES; AND/OR (4)
          MISAPPROPRIATING, USING, RELEASNG OR
          REPRODUCING PLAINTIFFS' TRADE SECRETS,
          COMPUTER SOFTWARE PROGRAMS, COMPUTER DATA,
          CODES AND ALL OTHER PROPRIETARY AND
          CONFIDENTIAL INFORMATION ………………………….. 8

   A.  Plaintiffs will be irreparably harmed if Defendants are not
      immediately enjoined from engaging in any competitive business
      and/or misappropriating, using, releasing or reproducing
      Plaintiff CSV's and ChannelReply's trade secrets,
      computer software programs and/or codes and all other
      proprietary and confidential information …………………………….. 8

   B.  Plaintiffs have a likelihood of success on the merits
      of their claims …………………………………………………….. 9

      1.  Plaintiffs have a likelihood of success on the merits of
         their claim that Defendant Gitman breached his fiduciary duties
         to Plaintiffs Dardashtian, CSV, Channel Reply and NDAP …………... 9

      2.  Plaintiffs have a likelihood of success on the merits of
         their claims that the Defendants have engaged in unfair
         competition under New York law …………………………........... 13

i

3.  Plaintiffs have a likelihood of success on the merits of their claims that Defendant Gitman, misappropriated their trade secrets in violation of 18 U.S.C.S. §1832 and are entitled to the requested relief pursuant to 18 U.S.C.S. §1836 ................................................................ 16

4.  Plaintiffs have a likelihood of success on the merits of their claims that Defendants Gitman and Channel Reply, Inc., conspired with the Plaintiffs' developers, to misappropriate Plaintiffs CSV and ChannelReply's trade secrets and protected information in violation of 18 U.S.C.S. §1832 and are entitled to the requested relief pursuant to 18 U.S.C.S. §1836 ................................................................ 22

5.  Plaintiffs have a likelihood of success on the merits of their claims that Defendants Gitman and Channel Reply, Inc. and John Does 1-10 have misappropriated their trade secrets in violation of New York Law ............................................. 23

C.  Even if there exists sufficiently serious questions as to the merits, the balance of the hardships are decidedly tipped in Plaintiffs' favor .................................................................... 29

III.   DEFENDANT GITMAN MUST BE ENJOINED FROM DISSIPATING OR OTHERWISE TRANSFERRING PLAINTIFFS CSV, NDAP AND CHANNELREPLY'S ASSETS AND ORDERED TO IMMEDIATELY RETURN ALL FUNDS MISAPPROPRIATED FROM PLAINTIFF CSV'S BANK OF AMERICA ACCOUNT ENDING 7343 BACK TO THAT ACCOUNT SO THAT PLAINTIFFS CSV AND CHANNELREPLY CAN CONTINUE TO OPERATE THEIR BUSINESS ................................................................ 30

A.  Plaintiffs CSV and ChannelReply will be irreparably harmed if all funds wrongfully removed from their operating account are not immediately returned .......................................... ..30

B.  Plaintiffs have a likelihood of success on the merits of their claims ................................................................ 32

1.  Plaintiffs have a likelihood of success on the merits of their claims that Defendant Gitman wrongfully misappropriated and converted funds belonging to Plaintiffs CSV, NDAP and

ChannelReply ……………………………………................ 32

   2.  Plaintiffs have a likelihood of success on the merits of
their claim for a constructive trust ………………………… 32

C.  Even if there exists sufficiently serious questions as to the
merits, the balance of the hardships are decidedly tipped in
Plaintiffs' favor ……………………………………………….. 33

IV.    DEFENDANTS GITMAN AND CHANNEL REPLY, INC.
MUST BE IMMEDIATELY ENJOINED FROM ENGAGING
IN ANY COMPETITVE BUSINESS TO PLAINTIFFS,
CSV, NDAP AND CHANNELREPLY, INCLUDING USING
PLAINTIFFS' TRADE SECRETS AND CONFIDENTIAL
AND PROPRIETARY INFORMATION OWNED BY
PLAINTIFFS' CSV AND CHANNELREPLY AND FROM
USING THE TRADENAME "CHANNEL REPLY" IN ANY
FORM AND UNDER ANY CIRCUMSTANCE ………………… 34

A.  Plaintiffs will suffer immediate and irreparable injury if an
order is not entered immediately enjoining Defendants Gitman
and Channel Reply, Inc. from using, marketing, advertising
and/or in any way holding themselves out to third parties
with the tradename "Channel Reply"……………………………....... 34

B.  Plaintiffs have a likelihood of success on the merits of their
claims against Defendants Gitman and Channel Reply, Inc ………….. 34

   1.  Plaintiff ChannelReply have a likelihood of success
on the merits of their claim of misappropriation of trade secrets
and confidential information ……………………………........ 35

   2.  Plaintiff ChannelReply have a likelihood of success on
the merits of their claim of unfair competition and trade name
infringement in violation of 15 U.S.C.S. §1125 …………………….. 35

C.  Even if there exists sufficiently serious questions as to the merits,
the balance of the hardships are decidedly tipped in
Plaintiffs' favor ……………………………………………….…… 37

V.   DEFENDANTS GITMAN, CHANNEL REPLY, INC,
      FALK, ACCEL AND/OR ANYONE ACTING ON
      THEIR BEHALF, MUST BE IMMEDIATELY
      ENJOINED FROM ACCESSING PLAINTIFF CSV,
      NDAP AND CHANNELREPLY'S COMPUTERS, DATA,
      COMPUTER PASSWORDS, BANK PASSWORDS,
      CODES, SOFTWARE, PROGRAMS AND OTHER
      INTELLECTUAL PROPERTY AND CONFIDENTIAL
      INFORMATION........................................................ 37

VI.  DEFENDANT GITMAN MUST BE ORDERED TO
      IMMEDIATELY PROVIDE PLAINTIFF DARDASHTIAN
      WITH ALL USERNAMES AND PASSWORDS GRANTING
      COMPLETE ACCESS TO ALL OF PLAINTIFFS'
      COMPUTUER, BANK AND OTHER ACCOUNTS AND
      MUST BE RESTRAINED FROM REMOVING OR
      OTHERWISE RESTRICTING PLAINTIFF
      DARDASHTIAN'S COMPLETE ACCESS TO ALL OF
      PLAINTIFFS' ACCOUNTS ....................................... 39

A.  Plaintiffs Dardashtian, CSV, NDAP and ChannelReply will
     suffer immediate and irreparable harm if an Order is not entered
     requiring Defendant Gitman to immediately provide Plaintiff
     Dardashtian with all usernames, passwords and all other forms
     of access for all computer, bank and all other accounts maintained
     by Plaintiffs CSV, NDAP and ChannelReply, and thereafter also
     restraining Defendant Gitman from again restricting or otherwise
     removing or terminating Plaintiff Dardashtian's access to all of
     Plaintiffs' accounts in any way .......................................... 39

B.  Plaintiffs have a likelihood of success on the merits of their
     claims that Gitman breached his fiduciary duties ........................ 41

C.  Even if there exists sufficiently serious questions as to the
     merits, the balance of the hardships are decidedly tipped in
     Plaintiffs' favor ............................................................ 41

CONCLUSION ................................................................ 41

TABLE OF AUTHORITIES

Cases

Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985) .................................... 9

Ashland Mgmt., Inc. v. Janien, 82 N.Y.2d 395 (1993) .......................................24

Audubon Levy Investors, LP v. E. W. Realty Ventures, LLC,
698 F. Supp. 2d 328 (Eastern Dist., 2010) ..................................................... 5, 39

Birnbaum v. Birnbaum, 73 N.Y.2d 461, 539 N.E.2d 574 (1989) ...................................10

County of Nassau, N.Y. v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008) ...............................5

Computer Assoc. Int.' v. Altai, 982 F.2d 693, 717 (2d Cir. 1992) ....................................... 25

Computer Assoc. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y. 1992) ............8, 24, 25

Demetriades v. Kaufman, 698 F. Supp. 521, 526 (S.D.N.Y. 1988) .................................14

Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 568 (1959) ...................................... 14

FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.3d, 61, 63 (2d Cir. 1984) ..................8

Forschner Group v. Arrow Trading Co., 904 F. Supp. 1409, 1415 (S.D.N.Y. 1995)................36

Faiveley Transp. Malmo AB v. Wabtec Corp., 599 F.3d 110, 117 (2d Cir. 2009) ........23, 29, 35

Green Party v. N.Y. State Bd. Of Elections, 389 F.3d 411, 418 (2d Cir. 2004) .....................5

Integrated Cash Management Servs. v. Digital Transactions, Inc.,
920 F.2d 171, 173 (2d Cir. 1990) ......................................................... 24

Kalikow v. Shalik, 43 Misc. 3d 817, 986 N.Y.S. 2d 762
(Supreme Court of New York, Nassau County, 2014) ............................................. 10

Lehman v. Dow Jones & Co., 783 F.2d. 285, 298 (2d Cir. 1986) .................................. 24

Linkco, Inc. v. Fujitsu Ltd. 230 F. Supp. 2d 492, 500 (S.D.N.Y. 2002) ............................ 14

National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 851 (2d Cir. 1997) ................... 14

Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804,
921 N.Y.S.2d 260 (2d Dept., 2011) ............................................................... 9

Q-Co Industries, Inc. v. Hoffman, 625 F. Supp. 608, 617 (S.D.N.Y. 1985) ................... 25, 26

Simonds v. Simonds, 45 N.Y.2d 233, 30 N.E.2d 189 (1978) ......................................... 32

U.S. v. Hsu, 155 F.3d 189 (3d Cir. 1998) ...........................................................18, 22

Vigilant Ins. Co. of Am v. Hous. Auth., 87 N.Y.2d 36, 600 N.E.2d 1121 (1995) ................ 32

Federal Statutes

15 U.S.C.S. §1125 .................................................................. 35, 36, 37

18 U.S.C.S. §1030.................................................................... 37, 38

18 U.S.C.S. § 1832 ............................................................... 16, 17, 22, 23

18 U.S.C.S. §1836 ............................................................... 16, 17, 22, 23

18 U.S.C.S. §1839 ............................................................... 17,18, 19, 21

New York State Statutes

NY CLS LLC §409(A) .....................................................................9

Fed. Civ. Pro. Rule 65(a)(1) ..............................................................5

Fed. Civ. Pro. Rule 65(b)(1) ..............................................................5

## BRIEF STATEMENT OF FACTS

The Plaintiffs rely upon the facts set forth in the Verified Complaint and Affidavit of Michael Dardashtian, submitted herewith, as if more fully set forth herein at length for a complete statement of the relevant facts and exhibits.

In summary, this matter involves joint 50/50 ownership and joint 50/50 management of two technology companies, NDAP, LLC ("NDAP"), and Cooper Square Ventures, LLC. ("CSV"). Each of the Plaintiff companies owns computer software technology, processes and code, and have retained developers, including developers who reside in Russia and the Ukraine, who have developed valuable proprietary property and software owned by the Plaintiff companies that allows the Plaintiff companies to operate and compete. CSV owns Plaintiff ChannelReply which provides a platform for worldwide retailers and store owners affiliated with Ebay and Amazon to streamline their customer service messages and seamlessly communicate with their customers. Plaintiff ChannelReply utilizes this proprietary software to operate.

The basis for the Order to Show Cause and application for restraints and injunctive relief centers around Plaintiff CSV and ChannelReply.

Defendant Gitman, the CTO of CSV, has developed relationships with the company's code developers, who are the only parties, in addition to Defendant Gitman, who have and understand the intellectual property and processes, to operate the ChannelReply platform. Defendant Gitman has just formed a new competitive business to ChannelReply with the same name, Channel Reply, Inc. Defendant Gitman has recently offered to bring in the developers from Russia and the Ukraine as equity owners of Channel Reply, Inc., and is departing the United States this  Friday, June 9, 2017, to meet with Plaintiffs' developers to sign off on and form the new company, and to employ Plaintiffs' developers to directly compete with Plaintiffs CSV and Channel Reply, using the same name and using Plaintiff's intellectual property and

1

confidential information, including the code and software. These fraudulent and unfair actions are also intended to deceive the public and customers of Plaintiff ChannelReply. Dardashtian Affidavit at para. 91, Ex 66b.

 At the same time, and in furtherance of his scheme, Defendant Gitman has changed all of Plaintiffs' company passwords, and removed Plaintiff Dardashtian's access to each and every account that Plaintiffs' maintain and which Plaintiff Dardashtian formerly had access to throughout the entire time of each of the Plaintiff companies' existence. Dardashtian Affidavit, Exhibit 52, ¶97. Defendant Gitman withdrew all of the funds in the CSV Bank of America banking account and placed such funds, upon information and belief, in his own account in his own name with Bank of America. Id at paras 112-114; Exs. 60a-60c, 71, 72a, 72b. It appears that Defendant Gitman created a Channel Reply, Inc. bank account with Chase and may have deposited some of the stolen monies there as well so that the employees can access the funds abroad. Id at Ex. 90. Plaintiffs' CSV and ChannelReply now have automatic debits that are overdrawing their Bank of America banking account, and this will impede these companies from meeting their obligations and will result in the platforms servicing the Ebay and Amazon customers to fail. Id at para. 112; Exs 85a-85b. Defendant Gitman is also continuing to overdraw CSV's accounts with a BMW car payment and to pay employees that he is trying to recruit to join his unlawful company Channel Reply, Inc.  Id at Ex. 72b. Defendant Gitman has also been charging NDAP's credit card, most recently in the amount of $3500.00 knowing that CSV's account is overdrawn and cannot pay the credit card debt he is amassing. Id at. para 36. Exs. 20b-20i. Defendant Gitman has changed all email passwords and removed Plaintiff Dardashtian's access to close to two dozen company accounts. Id at para. 75.  He has frozen Plaintiff Dardashtian from his own calendar and from Google so that he cannot participate in any aspect

of the Plaintiffs' businesses, and has gone so far as to usurp Plaintiff Dardashtian's personal

business identity, by replacing Defendant Gitman's photo on Plaintiff Dardashtian's email

account, receiving his business messages and potentially communicating as if he were Plaintiff

Dardashtian to third parties in connection with Plaintiffs' business. Id at para. 79; Ex. 54.

Defendant Gitman is further disparaging and lying to the Russian/Ukrainian developers

in an effort to solicit their assistance in essentially moving ChannelReply's business and

customer base to Channel Reply, Inc., the company he formed to steal the Plaintiffs' business. Id

at para 100; Exs. 73 and 74.

Defendant Gitman has removed Plaintiff Dardashtian's access to the payment portals for

the Plaintiffs' companies' receivables, and Plaintiff Dardashtian has no idea as to whether the

payments due to ChannelReply are being funneled to Defendant Gitman or to Channel Reply,

Inc. Id at para 114; Exs. 60a-60c.

Defendant Gitman has also become associated and believed to be in partnership with

Jeremy Falk, a man who positioned himself to be an independent consultant and was helping to

facilitate a sale of NDAP's proprietary software on behalf of CSV.  Defendant Gitman and Falk

have formed another competing business in ecommerce entitled "Accel Commerce". Id at paras

53-56; Exs. 33, 35a-35h.

If Defendant Gitman is permitted to travel to the Ukraine or Russia as scheduled on this

weekend to formerly enter into written agreements with the Russian code developers and others

to form a new business designed to steal Plaintiff's ChannelReply business, it will be even more

difficult to unwind same as the potential other members may be outside of the jurisdiction of this

Court and we do not know if or when Defendant Gitman plans to return. Defendant Gitman's

actions are willful and deliberate. They demonstrate a clear breach of fiduciary duty to both

Plaintiff Dardashtian and to the Plaintiff companies. They are designed to benefit Defendant Gitman to the exclusion of his remaining 50% member and co-manager, as well as to the exclusion of the Plaintiff companies and are resulting in the deception of Plaintiff companies' customers and their customers' customers.

We ask that the Court enter all restraints enjoining Defendant Gitman and the other defendants from engaging in this intentional conduct that they have undertaken thus far which is irreparably damaging Plaintiffs, threatening the demise of the Plaintiffs' business entities, causing invaluable trade secrets and other proprietary and confidential information and computer data to be stolen, harming his business reputation and identity and which is at the same time, causing or will cause extreme confusion to Plaintiff's customers who may at this moment be dealing with a new entity under the false pretense that they are dealing with ChannelReply. Id at para 98; Ex. 70.

As an aside, there is a contract for the sale of NDAP to a third party purchaser, and it appears that both Plaintiff Dardashtian and Defendant Gitman are willing to sell NDAP. Id at para 115; Ex. 87. The commission due Defendant Falk was an obstacle to this agreement being finalized, but it appears that the parties have agreed to a reduced commission to Falk and his company subject to Falk's agreement to accept same. The parties are arguing over the escrow of the net sale proceeds and a subsequent accounting of NDAP, and whether the corporate accountant, Joel Liebman will perform same and the scope of the accounting. The only emergent issue here is the need to escrow the net sale proceeds if the contract is consummated and to order an accounting. Id at paras 68-69; Exs. 48 and 49.

## LEGAL ARGUMENT

### I.   DEFENDANTS ARE ENTITLED TO IMMEDIATE AND PRELIMINARY RESTRAINTS.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, "The court may issue a preliminary injunction only on notice to the adverse party." Fed. Civ. Pro. Rule 65(a)(1).

It is well settled that, in the Second Circuit, a plaintiff seeking a preliminary injunction must show:

> "(1) irreparable harm in the absence of the injunction and
>
> (2) either
>
> > (a) likelihood of success on the merits, or
> >
> > (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor."

Audubon Levy Investors, LP v. E. W. Realty Ventures, LLC, 698 F. Supp. 2d 328 (E.D.N.Y., 2010), citing, County of Nassau, N.Y. v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008); Green Party v. N.Y. State Bd. Of Elections, 389 F.3d 411, 418 (2d Cir. 2004).

Rule 65 of the Federal Rules of Civil Procedure further vests that court with the authority to issue a

> "temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certified in writings any efforts made to give notice and the reasons why it should not be required."

[Fed. Civ. Pro. Rule 65(b)(1)].

5

Here, the facts as alleged in the Verified Complaint and Affidavit of Michael Dardashtian unquestionably demonstrate that the bases for both temporary and preliminary injunctive relief are met based upon the various wrongful acts of Defendant David Gitman ("Gitman"), Jeremy Falk ("Falk"), Summit Rock Holdings, LLC ("Summit"), Accel Commerce, LLC ("Accel"), Dalva Ventures, LLC ("Dalva") and Channel Reply, Inc. ("Channel Reply, Inc."), which have and will continue, to result in substantial and irreparable injury to Plaintiffs' Dardashtian, CSV, ChannelReply and NDAP. Summit is a business owned by Falk. Dardashtian Aff. at para 30. Accel is an ecommerce business, upon information and belief, owned by Defendant Gitman and Defendant Falk. Dalva is a business owned by Defendant Gitman. Id at para 103; Exs 76a-g. Channel Reply, Inc. is a business just recently formed by Defendant Gitman and in which he is seeking to involve as equity owners the CSV developers of Plaintiff ChannelReply. Id at paras 105-108; Exs. 78a-78d, 81a-81f.

CSV and ChannelReply will suffer irreparable harm in the absence of temporary and preliminary injunctive relief as Defendants will continue the misappropriation and use of their trade secrets and other proprietary and confidential information for the benefit of businesses formed by Defendant Gitman for the express purpose of stealing Plaintiffs' proprietary and confidential information and unfairly competing with Plaintiffs using their own protected information. These actions by Defendants are designed to not only tamper with, alter, and attempt to undue more than five years worth of business development, growth, customer acquisition and operations but entirely strip both CSV and ChannelReply of their business and resulting value. Plaintiff Dardashtian, who has a fifty-percent (50%) interest in CSV, ChannelReply and NDAP, and who is also an equal co-manager of each of these entities, has absolutely no interest in Defendants Accel or in Channel Reply, Inc. Dardashtian Aff. at paras

11, 110;, Exs 2, 4a, 83.  Plaintiff Dardashtian, will in turn, be irreparably harmed as the value of

his interest in CSV and ChannelReply, both of which have substantial present and future value

and which generate substantial daily revenue, will be entirely depleted by virtue of the theft of

their trade secrets, and other proprietary and confidential information by Defendants.

In addition, by intentionally changing all of the passwords and passcodes for all of CSV's

and Channel Reply's computer and banking information, Defendant Gitman has intentionally

sought to "freeze out" and deprive Plaintiff Dardashtian from having any access to understand

what is actually happening with the Plaintiff companies while Defendant Gitman nefariously

undertakes to conspire and steal Plaintiff companies' confidential and proprietary information,

including their customers. Plaintiff Dardashtian has no ability whatsoever to manage CSV

ChannelReply and or NDAP, or to have access to any of their accounts. He is completely in the

dark at this point due to Defendant Gitman's intentional acts. Dardashtian Aff at paras 7, 98,

116;, Exs 53, 69, 70.

Moreover, Defendant Gitman is utilizing, misappropriating and otherwise divulging

Plaintiffs' CSV and ChannelReply's trade secrets and confidential information vital to the

operation of these entities to Defendant Gitman's competing business and to third parties who he

is conspiring with, which will render Plaintiffs' business entities valueless unless Gitman and all

parties in possession of these misappropriated trade secrets and confidential information are

immediately restrained from receiving and utilizing same in competition with the Plaintiff

companies.

Defendant Gitman and the remaining Defendants must be immediately enjoined from

their wrongful conduct as outlined below to prevent further immediate and irreparable injury to

Plaintiffs, Dardashtian, CSV, ChannelReply and NDAP.

II.  **GITMAN, CHANNEL REPLY, INC. AND THE OTHER DEFENDANTS MUST BE IMMEDIATELY RESTRAINED FROM: (1) COMPETING WITH CSV AND CHANNELREPLY; (2) UNLAWFULLY MISAPPROPRIATING PLAINTIFFS' LABOR, SKILL, NAME AND REPUTATION; (3) MISAPPROPRIATING COMPANY DOCUMENTS AND INFORMATION FOR USE IN DEFENDANT'S RESPECTIVE COMPETITIVE BUSINESSES; AND/OR (4) MISAPPROPRIATING, USING, RELEASNG OR REPRODUCING PLAINTIFFS' TRADE SECRETS, COMPUTER SOFTWARE PROGRAMS AND/OR CODES AND ALL OTHER PROPRIETARY AND CONFIDENTIAL INFORMATION.**

A.  Plaintiffs will be irreparably harmed if Defendants are not immediately enjoined from engaging in any competitive business and/or misappropriating, using, releasing or reproducing Plaintiff CSV's and ChannelReply's trade secrets, computer software programs and/or codes and all other proprietary and confidential information.

The Second Circuit has clearly recognized that "the loss of trade secrets is not measureable in terms of money damages." Computer Assoc. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y., 1992), citing, FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.3d, 61, 63 (2d Cir. 1984).  This is true because "a trade secret once lost is, of course, lost forever." FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.3d at 63.  Therefore, loss of a trade secret is considered irreparable harm as a matter of law. See, Computer Assoc. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y., 1992), citing, FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.3d, 61, 63 (2d Cir. 1984);

In addition, "the potential loss of an industry leader's present market and loss of the advantage of being a pioneer in the field and the market leader, may constitute irreparable harm. Computer Assoc. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y. 1992) *internal citations omitted.*

As further outlined in Point (II)(B)(2)-(4) below, Defendants are misappropriating CSV and ChannelReply's trade secrets, including but not being limited to, its proprietary software and

8

codes vital to the operation of these businesses.  Without these codes, or if these codes are used

unfairly by Defendants' competing businesses set up for that purpose, Plaintiffs' businesses are

unable to function and will be rendered completely valueless, resulting in irreparable harm as

clearly recognized as a matter of law. Dardashtian Aff at paras 7,17,75;, Exs. 1, 52.

     B.  Plaintiffs have a likelihood of success on the merits of their claims.

The burden upon the movant to demonstrate a likelihood of success upon the merits is not

a great one. As to the likelihood of success "the movant need not show that success is an

absolute certainty. It need only be shown that the probability of the movant prevailing is better

than fifty percent." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985).

     *1.  Plaintiffs have a likelihood of success on the merits of their claim that Gitman*
        *breached his fiduciary duties to Plaintiff Dardashtian, CSV, Channel Reply and*
        *NDAP.*

The elements of a cause of action to recover damages for breach of fiduciary duty are (1)

the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages

directly caused by the defendant's misconduct. Palmetto Partners, L.P. v. AJW Qualified

Partners, LLC, 83 A.D.3d 804, 921 N.Y.S.2d 260 (App. Div., 2nd Dept., 2011).

Pursuant to New York Consolidated Laws Service Limited Liability Company Law,

§409, a manager of an LLC,

> "shall perform his or her duties as a manager, including his or her duties as a
> member of any class of managers, in good faith and with that degree of care that
> an ordinarily prudent person in a like position would use under similar
> circumstances."
>
> [NY CLS LLC §409(A)].

Indeed,

> "The acts of working in concert and managing a limited liability company clearly
> gives rise to a relationship among the members which is analogous to that of
> partners, who, as fiduciaries of one another, owe a duty of undivided loyalty to
> the partnership's interests."

[Kalikow v. Shalik, 43 Misc. 3d 817, 986 N.Y.S. 2d 762 (Supreme Court of New York, Nassau County, 2014), citing, Birnbaum v. Birnbaum, 73 N.Y.2d 461, 539 N.E.2d 574 (1989)].

It is well settled that,

"This is a sensitive and "inflexible rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty...Included within the rules broad scope is every situation in which a fiduciary, who is bound to single-mindedly pursue the interests of those to whom a duty of loyalty is owed, deals with a person, "in such close relation [to the fiduciary] that possible advantage to such other person might consciously or unconsciously influence the fiduciary's judgment."

[Birnbaum, 73 N.Y.2d at 466, 539, N.E.2d at 576].

Duties of managers and/or members may be further defined by the terms of the company's operating agreement.  In the case at bar, the operating agreement unequivocally requires the managers of CSV to operate CSV in good faith and for purposes that are reasonably believed to be in the best interest of the Company. Dardashtian Aff. Ex 2 at, ¶8.7.  Although the Operating Agreement places limits upon a manager's liability, the Operating Agreement makes clear that it shall not be construed to limit liability for gross negligence, recklessness or intentional wrongdoing.

Moreover, although the operating agreement may, under certain circumstances, permit a member of CSV to engage in a competing business venture, it unconditionally and expressly restricts the use by any member of the "Company's Confidential Information," which is broadly defined and includes computer processes, data, design computer programs, customer lists, cost or price data and the like. Such Confidential Information also includes "any other information that may be considered to be proprietary to or a trade secret of the Company, whether or not such information is considered a trade secret within the meaning of applicable law."  The preemption of the competitive undertakings clause by the starting phrase, "except as otherwise provided herein," clearly gives it a back seat to the parties' obligations to protect and maintain the

10

confidential information of the Plaintiff companies for the benefit of the Plaintiff companies and reinforces its allegiance to several express provisions. Just to give a few examples: the operating agreement expressly forbids management from expending or using company money or property other than on the account and for the benefit of the Company or to pledge any of the Company's credit or property for other than Company purposes.  The Operating agreement also limits the LLC liability "veil of protection" when a manager acts with gross negligence, recklessness or intentional wrongdoing. Clearly the usurpation of all company funds, data, employees, proprietary information, customers, business documents and even its own name would constitute such conduct and not be classified as simply an "outside activity" in a similar industry as is generally intended by the competitive undertakings clause. Dardashtian Aff, Ex 2 ¶12.2.

There can be no doubt that, as a 50% member and co-manager of CSV and ChannelReply, Defendant Gitman has a fiduciary duty of good faith and a duty to act in the best interest of CSV and ChannelReply, both at law and pursuant to the terms of the CSV Operating Agreement. Defendant Gitman's duty to CSV, ChannelReply, NDAP and Dardashtian extends beyond his duty of good faith, and prohibits him from self-dealing and/or engaging in any other activity where his personal interests are in direct conflict with that of CSV, NDAP and ChannelReply's business and future existence. Defendant Gitman has grossly and intentionally breached his fiduciary duty to Plaintiff Dardashtian and the Plaintiff Companies by stealing and otherwise misappropriating CSV and ChannelReply's trade secrets and other proprietary and confidential information, as further outlined below, for the benefit of Dalva Ventures, Channel Reply, Inc. and Accel, three competing business interests recently formed and operated by him, for the express purpose of excluding Plaintiffs Dardashtian, CSV, NDAP and ChannelReply and without Plaintiffs' prior knowledge, authorization or consent. The unfair and deceptive use of

CSV and ChannelReply's trade secrets and proprietary and confidential information by Channel

Reply, Inc. will inevitably result in the complete shutdown of Plaintiff ChannelReply as Channel

Reply, Inc. was formed by Defendant Gitman as a shell to  extinguish   Channel Reply, convert

all of Channel Reply's property and perform the exact same business. Clearly, Defendant Gitman

is seeking to employ the very same technology software codes and involve as owners and

employees the very code developers who were paid by CSV, NDAP and ChannelReply to

develop the trade secret and proprietary software used by Plaintiff ChannelReply to operate its

business. Without the trade secret and proprietary software and code, Plaintiff ChannelReply is

out of business. Id at. Ex. 90. As a fiduciary, Defendant Gitman must act in Plaintiffs CSV,

NDAP and ChannelReply's best interests and protect Plaintiffs' proprietary and confidential

information for the benefit of the Plaintiff companies. Defendant Gitman has not only failed to

meet his fiduciary obligations to Plaintiffs, but worse, he is engaging in intentional unlawful acts

to do exactly the opposite. He is engaging in impermissible self-dealing and trying to steal and

misappropriate the Plaintiff companies by stealing their protected and valuable intellectual

property, confidential information and trade secrets and Plaintiff Dardashtian's business

reputation, name and likeness.

    The use by Defendant Gitman and the other Defendants of the "Company's Confidential

Information" for Defendant Gitman and his competing companies benefit to the exclusion of

Plaintiff Dardashtian and the Plaintiff companies is certainly prohibited, unfair and reprehensible

conduct. Defendant Gitman's misappropriation of Plaintiff's companies trade secrets, transfer of

Plaintiff's company computer data, suspension by Defendant Gitman of Plaintiff Dardashtian's 1

Password Account, Google Suite, G suite and other accounts that have made it impossible for

Plaintiff Dardashtian to both understand the complexity of Defendant Gitman's fraud as well as

to manage Plaintiffs CSV, NDAP and ChannelReply while company operations unravel and Defendant Gitman drives up company debt, overwhelmingly demonstrate Defendant Gitman's bad intent to not only completely abscond with Plaintiffs CSV and ChannelReply's business but destroy it. Dardashtian Aff. at para. 84, Exs. 53a-b, 54, 59. These actions by Defendant Gitman are clearly a breach of his fiduciary duty against self-dealing and harming the company itself, as well as being in violation of the express terms of the Operating Agreement which prohibits his use of the "Company's Confidential Information." Dardashtian Aff. Exhibit 2 ¶12.2.

Defendant Gitman has further breached his fiduciary duties by misappropriating the funds in CSV's sole operating account, which has resulted in the inability of ChannelReply to pay for the servers necessary to run its business, thereby placing ChannelReply at a real and substantial risk of being entirely shut down and losing its customers. Id at para 89, Ex. 63. Not only did Defendant Gitman misappropriate CSV's funds, but he has also failed to disclose the whereabouts of these funds and refused Dardashtian's reasonable request to place these fund in CSV's attorney's trust account. Id at para. 69. **It has just been discovered that CSV's funds were improperly transferred by Defendant Gitman to an account in only Defendant Gitman's name in Bank of America** and may have also been transferred in part to a Chase account bearing the name Channel Reply Inc.. Id at Ex. 46 and 46b; 90.

Based upon the foregoing, Plaintiffs have established a likelihood of success on the merits of their claim that Defendant Gitman, as a 50% member and co-manager, has breached his fiduciary duties to Plaintiffs Dardashtian, CSV, NDAP and ChannelReply.

> 2. *Plaintiffs have a likelihood of success on the merits of their claims that the Defendants have engaged in unfair competition under New York law.*

"The central principle underlying a claim for unfair competition under New York law is

that one may not misappropriate the results of labor, skill and expenditures of another." Linkco, Inc. v. Fujitsu Ltd. 230 F. Supp. 2d 492, 500 (S.D.N.Y. 2002). Unfair competition must also involve some level of bad faith. Id.

New York pattern jury instructions recognize the following types of unfair competition: misappropriation of trade secrets or trademarks, trade name infringement, palming off, misappropriation, false labeling or advertising. Id.

However, the Second Circuit has made clear that, "unfair competition is not limited to categories of infringement that have been described in New York's pattern jury instructions recognized by courts but instead encompasses a broad range of conduct." Id. New York unfair competition law stands for the "broader principle that property rights of commercial value are to be and will be protected from any form of commercial immortality." Id., citing, National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 851 (2d Cir. 1997). Indeed, the "incalculable variety of illegal commercial practices denominated as unfair competition is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put out to use." Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 568 (1959).

"A claim for unfair competition based upon misappropriation, generally involves the taking of a property right." Linkco, Inc. v. Fujitsu Ltd. 230 F. Supp. 2d at 500 (internal citations omitted). Under New York law, "persons have a protectable property interest in their labor, skill expenditure, name and reputation."

Among the practices recognized as unfair competition is the taking and exploitation of company documents for use in a competitive business, even where such information may not qualify as a trade secret. Demetriades v. Kaufman, 698 F. Supp. 521, 526 (S.D.N.Y., 1988).

14

As outlined in greater detail in Point (B)(3)-(5) below, Defendant Gitman and the other defendants with whom he has conspired, have engaged in unfair trade practices by misappropriating Plaintiff, CSV and ChannelReply's trade secrets and proprietary and confidential information, including the codes and software, that are vital to the continued operation of Plaintiffs businesses. Dardashtian Aff. at para. 7-16; Exs. 5c, 5d, 7b-7d.

Defendant Gitman has further improperly solicited to conspire with Plaintiff ChannelReply's Russian/Ukranian-based code and software developers, who Defendant Gitman is seeking to involve as owners and employees of Defendant Channel Reply, Inc., by sending new employment agreements for these developers to become the employees of Channel Reply, Inc. his newly formed company, with the same exact name, and offered the employees an equity share in his new company to incentivize them to leave ChannelReply. Id at para. 103; Exs. 76a-g. As further incentive, Defendant Gitman assured one of Plaintiff's developers that he would assist him and get him a Visa, access to U.S. bank accounts and possibly a place to live.  Id at para. 107; Ex. 80.

Not only is Defendant Gitman unlawfully soliciting Plaintiff CSV and ChannelReply's employees and subcontractors, but he has also illegally transferred all CSV and ChannelReply information to his own G Suite account excluding Plaintiff Dardashtian from having any access to all of the Plaintiff companies' data, documents, customers lists and accounts that required password access, and despite the fact that Plaintiff Dardashtian has had complete and unfettered access to all such accounts since the inception of the Plaintiff companies' formation. Id at. Exs. 53a and 53b.

Moreover, Defendant Gitman instructed Plaintiff's developers and employees to remove CSV's name from Channel Reply's website's Terms of Service and replace it with a new Terms

of Service so that Channel Reply, Inc. can steal ChannelReply's customers. Id at para. 113; Ex.
86. Since Defendant Gitman depleted CSV's banking account, there is reason to believe that he
has also deceptively directed Plaintiff CSV and Plaintiff ChannelReply customers to redirect
their payment for services to a new payment account created in the name of Channel Reply, Inc.
Id at Ex. 46b, Ex. 90. There is indication that Defendant Gitman is in the process of reaching out
to customers, after requesting customer messaging tips from the developers and is or will very
soon be asking all customers to "reconnect" their service thereby gaining their unintentional yet
complicit consent so he can achieve this goal in an underhanded manner.  Plaintiff Dardashtian is
locked out of all accounts, but has seen no activity in CVS's operating account with Bank of
America.Id at para. 114; Exs. 60a-60c.

    Defendant Gitman has blatantly, and with complete disregard of his fiduciary obligations
and of Plaintiff Dardashtian's rights, taken measures to boldly steal ChannelReply's entire
business and divert it to his own. Id at Ex 46b.  The magnitude of Defendant Gitman's unlawful
conduct amounts to unfair trade practices in violation of New York Law and must now be
restrained by this Court.

> 3.  *Plaintiffs have a likelihood of success on the merits of their claims that Gitman,
> misappropriated their trade secrets in violation of 18 U.S.C.S. §1832 and are
> entitled to the requested relief pursuant to 18 U.S.C.S. §1836.*

Pursuant to 18 U.S.C.S. § 1832,

(a) Whoever, with intent to convert a trade secret, that is related to a product or service
used in or intended for use in interstate or foreign commerce, to the economic benefit
of anyone other than the owner thereof, and intending or knowing that the offense
will, injure any owner of that trade secret, knowingly –

    (1) steals, or without authorization appropriates, takes, carries away or conceals, or
by fraud, artifice, or deception obtains such information;

    (2) without authorization copies, duplicates, sketches, draws, photographs,
downloads, uploads, alters, destroys, photocopies, replicates transmits, delivers,
sends, mails communicates, or conveys such information;

(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in paragraphs (1) through (3); or

(5) conspires with one or more persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,

shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

(b) Any organization that commits any offense described in subsection (a) shall be fined not more than the greater of $5,000,000.00 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided.

[18 U.S.C.S. § 1832].

The legislature created federal private cause of action for trade secret misappropriation, which provides,

"An owner of a trade secret that is misappropriated may being a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

[18 U.S.C.S. §1836].

A "trade secret" is defined as

"all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from disclosure or use of the information;"

[18 U.S.C.S. §1839(3)].

17

The definition of a trade secret under 18 U.S.C.S. §1839(3) protects a broader range of technological and intangible information than most civil laws. U.S. v. Hsu, 155 F.3d 189 (3d Cir. 1998). "Trade secrets are no longer restricted to formulas, patterns, and compilations, but now include program and codes 'whether tangible, and whether or how stored.'" Id. Moreover, "a trade secret must not be generally known to, or readily ascertainable by, the general public, rather than simply those who can obtain economic value from the secret's disclosure or use." Id.

An owner of a trade secret is "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C.S. §1839(4).

"Misappropriation" occurs under the following circumstances,

"(A)   acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B)   disclosure or use of a trade secret of another without express or implied consent by a person who—

(i) used improper means to acquire knowledge of the trade secret;
(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was –

(I)   derived from or through a person who had used improper means to acquire the trade secret;
(II)   acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
(III)   derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret;"

[18 U.S.C.S. §1839(5)].

"Improper means" includes "theft, bribery, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C.S. §1839(6).

In the case at bar, Plaintiff's CSV and ChannelReply are unquestionably the rightful owners of the code, software and process, that constitutes a trade secret. Plaintiffs seek to enjoin

Defendants Gitman and Channel Reply, Inc. from using Plaintiff CSV and ChannelReply's proprietary and confidential software program and codes, including their customer lists and other protected information to benefit himself and his competing businesses, Channel Reply, Inc. and Accel which businesses were formed for the express purpose of receiving stolen trade secrets and other confidential information so that they could unfairly compete with and put out of business the Plaintiff companies. Dardashtian Aff. at para. 113-114; Ex. 86. The threshold issue is whether the information sought to be protected is a "trade secret." Software programs and codes clearly fall within the definition of a trade secret as outlined in 18 U.S.C.S. §1839(3), which specifically sets forth "programs, or codes." Customer lists and related data similarly fall within the "trade secret" definition as they constitute financial and business information. Plaintiffs' trade secret and other confidential information is not readily available to the public.

Plaintiffs' CSV, NDAP and ChannelReply have taken substantial and reasonable steps to keep this confidential information secret. First, all software codes are hosted on secure, encrypted AWS servers, as well as on a private and secure, encrypted GitHub repository for backups and testing and all passwords are stored in a secure, encrypted password storage databank . Dardashtian Affidavit, at para. ¶7 and 17. Second, the CSV Operating Agreement prohibits both Defendant Gitman and Plaintiff Dardashtian from directly or indirectly communicating or otherwise divulging the "Company's Confidential Information," which is defined to include "computer programs" and "information of or relating to suppliers or customers, customer requirements, cost or price data, research data…" Dardashtian Aff, Ex 2, ¶12.2.

Additionally, Plaintiff companies have entered into written agreements with the Plaintiff company developers where the developers themselves acknowledge that the code and software

that they are and continue to develop for the Plaintiff companies is intellectual property owned by the Plaintiff companies, and that same is the proprietary interest, trade secret and protected information owned by the Plaintiff companies. Dardashtian Aff. para 16; Ex. 7d.

Moreover, the software programs and codes, along with the customer information, derive all of the independent economic value to Plaintiff CSV and ChannelReply's business. Without these confidential and proprietary software programs and codes, which are invaluable and protected confidential information owned by the Plaintiffs, Plaintiff CSV and ChannelReply would not be able to connect the eBay and Amazon worldwide retailers and store owners with their customers through their streamlined messaging tool. Id at para. 22. Plaintiff ChannelReply has and will continue to derive a substantial financial benefit from the implementation and use of Plaintiff's trade secrets, codes and software to operate Plaintiff's business, having consummated in excess of $350,000.00 in closed transactions and having an ongoing revenue stream of approximately $30,000.00 per month. Dardashtian Aff, at para 22. Plaintiff ChannelReply's value results from the fact that no other person or entity outside of Plaintiffs CSV and/or ChannelReply has access to these software programs, codes and customer information except for Plaintiffs' developers who Defendant Gitman is unlawfully attempting to solicit to Defendant Channel Reply, Inc. Id at para. 105; Ex. 78a-78d.

Based upon the foregoing, there is a likelihood of success that this Court will determine that the information sought to be protected constitutes a trade secret owned by the Plaintiff companies.

The next issue is whether, Defendant Gitman obtained the protected information by improper means. As noted in Point (II)(B)(1), as a co-manager of Plaintiffs CSV, NDAP and Channel Reply, Defendant Gitman owes a fiduciary duty to Plaintiffs Dardashtian, CSV, NDAP

and ChannelReply. As a fiduciary, Defendant Gitman is required to maintain the secrecy of Plaintiff, CSV, NDAP and Channel Reply's trade secrets, and is also prohibited from self-dealing and using Plaintiffs' trade secrets for his own benefit and for that of his competing companies, the very Defendant companies that Defendant Gitman formed for the express purpose of receiving and trading upon Plaintiff's name, trade secrets and other intellectual and protected property.  As a result, Plaintiffs' trade secrets and protected proprietary property were obtained by Defendant Gitman while a 50/50 member of the Plaintiff companies and a co-manager and he has used improper means in breaching his duty as defined by 18 U.S.C.S. §1839(6)(a) in disseminating these trade secrets to Defendant Channel Reply Inc. and possibly others, and for an unlawful purpose.

The next issue is whether Defendant Gitman misappropriated Plaintiffs CSV, NDAP and ChannelReply's trade secrets and protected information as defined by 18 U.S.C.S. §1839(5). Here, Defendant Gitman has taken his knowledge of Plaintiff's trade secret and protected information which he is privy to only as a result of his 50% membership interest in the Plaintiffs companies and because he is a co-manager of the Plaintiff companies, and has unlawfully disclosed Plaintiff CSV, NDAP and ChannelReply's trade secrets and protected information to Defendant Channel Reply, Inc. and others who are conspiring with him, without the authorization or consent of Plaintiffs Dardashtian, CSV, NDAP and/or ChannelReply, which constitutes "misappropriation" in violation of 18 U.S.C.S. §1839(5)(B)(i). Dardashtian Affidavit, at paras 56-58, 65. Not only has Defendant Gitman misappropriated Plaintiffs, CSV, NDAP and/or ChannelReply's software, software codes, trade secrets and customer information, but again, Defendant Gitman has taken all of Plaintiffs CSV and ChannelReply's company data over to a new Google domain G Suite to transfer all proprietary documents, email addresses and other

21

confidential information away from Plaintiffs CSV and ChannelReply's business accounts to a G suite portal that only Defendant Gitman controls to the exclusion of Plaintiff Dardashtian.

Lastly, there can be no dispute that Plaintiffs CSV, NDAP and ChannelReply's trade secrets are used in interstate commerce as they are used throughout the United States and the world. <u>Dardashtian Aff. at para 15.</u> Defendant Gitman is seeking to use Plaintiff's trade secrets to his own economic advantage and the advantage of his competing businesses, including Channel Reply, Inc. As a co-manager of Plaintiffs CSV, NDAP and ChannelReply, Defendant Gitman knows that his misappropriation of these trade secrets and protected information will cause substantial economic injury to Plaintiffs CSV, NDAP and ChannelReply and its customers and its customers' customers.

Based upon the foregoing, Plaintiffs have a likelihood of success on their claims that Defendant Gitman misappropriated Plaintiff CSV, NDAP and/or ChannelReply's trade secrets in violation of 18 U.S.C.S. § 1832.

     4.   *Plaintiffs have a likelihood of success on the merits of their claims that Defendant Gitman and Channel Reply, Inc., conspired with the Plaintiffs' developers, to misappropriate CSV's and Channel Reply's trade secrets and protected information in violation of 18 U.S.C.S. §1832 and are entitled to the requested relief pursuant to 18 U.S.C.S. §1836.*

18 U.S.C.S. §1832, set forth in detail in Point II(B)(2) *supra* makes unlawful, the act of conspiring to misappropriate trade secrets.

"Conspiracy charges under §1832 require both an agreement and an "overt act" in furtherance of the conspiratorial objective." <u>U.S. v. Hsu</u>, 155 F.3d at 204.

As noted above, Defendant Gitman misappropriated Plaintiffs CSV and ChannelReply's trade secret and protected information.  Plaintiff's developers Bagaev and Glukhavev have conspired with Defendant Gitman to assist him in misappropriating Plaintiffs CSV and ChannelReply's software programs, codes, customer lists and other trade secrets with the intent

to use them for Defendant Gitman and Channel Reply Inc.'s own economic benefit with the intent or knowledge that Plaintiffs Dardashtian, CSV, NDAP and ChannelReply would suffer a substantial loss and experience complete destruction. The very fact that Defendant Gitman formed a competing company with the *same exact name*, and gave access to Channel Reply, Inc. to the misappropriated trade secrets and other protected information owned by Plaintiffs, demonstrates an intent on the part of Defendants Gitman and Channel Reply, Inc., and any others having an interest in Channel Reply, Inc., to create confusion in the customers of Plaintiff ChannelReply, and induce them to believe that they are dealing with the same business entity, when they are not, causing substantial loss and injury to Plaintiff ChannelReply.

Moreover, the evidence also demonstrates that Defendant Gitman has conspired with Defendant Falk to misappropriate Plaintiff's trade secrets and use them for the benefit of Accel, another competitive business owned by Defendant Gitman and, upon information and belief, Defendant Falk, and which is involved in Plaintiff, CSV's business, e-commerce. See e.g., Dardahstian Aff at. paras. 53-56; Ex. 33a-33b, 34, 35.

Based upon the foregoing, Plaintiffs have a likelihood of success on the merits of their claims that Defendant Gitman and Channel Reply, Inc. have conspired to misappropriate Plaintiffs CSV and ChannelReply's trade secrets and other protected information in violation of 18 U.S.C.S. §1832 and are entitled to the requested relief pursuant to 18 U.S.C.S. §1836.

5. *Plaintiffs have a likelihood of success on the merits of their claims that Defendant Gitman and, Channel Reply, Inc. and John Does 1-10 have misappropriated their trade secrets in violation of New York Law.*

Under New York law, a plaintiff claiming misappropriation of a trade secret must allege that (1) plaintiff possesses a trade secret; and (2) defendant is using the trade secret "in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Faiveley Transp. Malmo AB v. Wabtec Corp., 599 F.3d 110, 117 (2d Cir. 2009).

The Restatement of Torts §757, adopted by New York Courts, defines a trade secret as "any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Integrated Cash Management Servs. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir., 1990).

In determining whether a trade secret exits, New York courts consider the following factors:

> "(1) the extent to which the information is known outside of the businesses;
>
> (2) the extent to which it is known by employees and others involved in the business;
>
> (3) the extent of the measures taken by the business to guard the secrecy of the information;
>
> (4) the value of the information to the business and its competitors;
>
> (5) the amount of effort or money expended by the business developing the information;
>
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."
>
> Ashland Mgmt., Inc. v. Janien, 82 N.Y.2d 395 (1993).

"A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." Integrated Cash Management Servs., 920 F.2d at 174 (finding that that the software program at issue was a trade secret even where the individual utility programs were known to the public).

"The most important consideration remains whether the information was a secret....(and) Secrecy is a question of fact." Computer Assoc. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y. 1992), citing, Lehman v. Dow Jones & Co., 783 F.2d. 285, 298 (2d Cir. 1986).

The movant is not required to demonstrate that the information it seeks to protect is vital to its business, but only that "the information would provide the unauthorized user of it with an unfair competitive advantage which it would not otherwise have enjoyed." Computer Assoc. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y. 1992) *internal citations omitted*. "In determining whether the matter is protectable as a trade secret, courts frequently examine the method by which defendant acquired it, e.g. such as by stealing or copying. Id.

In general,

> "...computer software, or programs are clearly protectable under the rubric of trade secrets, if the other elements are also proven."
>
> Q-Co Industries, Inc. v. Hoffman, 625 F. Supp. 608, 617 (S.D.N.Y. 1985).

"Precisely because trade secret domain protects the discovery of ideas, processes, and systems which are explicitly precluded from coverage under copyright law, courts and commentators alike consider it a necessary and integral part of the intellectual property protection extended to computer programs." Computer Assoc. Int.' v. Altai, 982 F.2d 693, 717 (2d Cir. 1992).

Customer lists are also afforded trade secret protection. Linko, Inv. v. Fujitsu Ltd., 230 F. Supp. 2d 492, 498 (S.D.N.Y. 2002).

Moreover,

> "even where the information would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents, included detailed customer information by an employee for use in his future business or employment is to be enjoined as unfair trade competition."
>
> Computer Assoc. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y. 1992) *internal citations omitted*

As an initial and important matter, the Court has determined that software programs and codes, like those Plaintiff ChannelReply seeks to protect, are generally considered a trade secret subject to protection. See, Q-Co Industries, Inc. v. Hoffman, 625 F. Supp. 608, 617 (S.D.N.Y. 1985). Additionally, review of the relevant factors makes clear that Plaintiff ChannelReply's software and codes constitute a trade secret, subject to protection against misappropriation because they are wholly unique and represent a software solution that was built from scratch to fill a need because no such software solution existed. The code has been innovated and built upon over the course of years in a technology process called "building out," as ChannelReply has grown to not only give basic service to its customers but continue to create new tools and extensions to address the growing needs of its expanding customer base. ChannelReply's customer base has also grown exponentially just from word of mouth due to the one-of-a-kind product created by CSV. Dardashtian Aff. at para. 22.

As to the first factor, Plaintiffs are seeking a restraint on the misappropriation, use, release or other disclosure of Plaintiff CSV and ChannelReply's trade secrets, which includes software programs, codes and processes that are not known or available outside of ChannelReply's business. Dardashtian Aff. at Ex. 2, ¶12.2.

As to the second and third factors, Plaintiffs have taken substantial measures to preserve the secrecy and confidentiality of its trade secrets. All software codes are hosted on secure, encrypted, AWS servers and stored on a private and secure, encrypted GitHub repository for backups and testing. Dardashtian Aff at paras 7.84. Although the software program and codes are known to CSV and ChannelReply's subcontractor developers, they have agreed to keep this information confidential and acknowledged that it is proprietary and a trade secret. Moreover, pursuant to the express terms of the CSV Operating Agreement, Defendant Gitman and Plaintiff

Dardashtian agreed to a Confidentiality provision, by which they each agreed to keep all information relating to Plaintiff CSV, including its computer programs and customer lists, confidential. Id at Ex. 2, ¶12.2.  The secure storage of the Plaintiffs' software and codes, along with the confidentiality provisions protecting it, in addition to the code developer's acknowledgement that the information is proprietary and owned by Plaintiffs, demonstrates both the effort and extent taken by Plaintiffs CSV and ChannelReply to guard the secrecy of this valuable protected software programs and code in satisfaction of the third factor considered by Court in determining whether a trade secret exists.

As to the fourth factor, Plaintiff ChannelReply's sole business operation is connecting eBay and Amazon store owners with their customers' messages through use of its software and codes.  It is this proprietary information that is at issue and it is this proprietary information that is the only process that allows Plaintiffs to conduct their business and be competitive. This protected information is invaluable to Plaintiffs CSV and ChannelReply. Defendant Gitman's egregious conduct, including but not being limited to, creating a company with the same name, misappropriating Plaintiff CSV's funds, locking Plaintiff Dardashtian out of all of Plaintiffs' accounts and removing his access which he has had since the Plaintiffs companies' inception, transferring all Plaintiffs' companies data to Defendant Gitman's new G-Suite account, and the other brazen actions undertaken by Defendant Gitman, clearly demonstrate Defendant Gitman's intent to steal and otherwise misappropriate for himself the trade secrets and valuable protected information owned by Plaintiffs' CSV and ChannelReply, and thereafter to operate, to the exclusion of Plaintiff Dardashtian, the same exact company by the name of Defendant Channel Reply, Inc. In its simplest form, Defendant, Channel Reply, Inc. will not be able to operate as anticipated without Plaintiff, ChannelReply's confidential trade secrets or other codes and

software developed by the Plaintiffs' developers. Upon information and belief, Accel was formed by Defendant Gitman also to compete with Plaintiff CSV's business and using CSV's trade secrets and protected confidential information.

If Defendants Gitman, Channel Reply, Inc., Accel and Falk are not immediately enjoined from using Plaintiffs' trade secrets and the proprietary and confidential information of Plaintiff ChannelReply, Defendant Gitman will be granted license to achieve his goal of converting all of Plaintiff CSV and ChannelReply's trade secrets, confidential information and customers for the benefit of Defendant Channel Reply, Inc. and/or Accel thereby irreparably damaging Plaintiffs Dardashtian, NDAP, CSV and ChannelReply. The fact that Defendant Gitman is doing this to the very companies in which he is co-owner evidences the maliciousness of his conduct.

As to the fifth factor, Plaintiffs CSV and ChannelReply have expended substantial time, money and effort in developing the software programs and codes necessary for Plaintiff ChannelReply to be able to function and operate its business. These efforts began as early 2012, when Plaintiff, CSV first began developing the software, and paying developers to do so, which was not complete in its most basic form until September, 2014 and is still ongoing, as is the nature of the software solutions. Dardashtian Aff. at paras. 15-16; Ex. 5c, 5d, 6.

As to the sixth factor, the re-acquisition or duplication of Plaintiff CSV and ChannelReply's software program and codes would require substantial expertise and capital to develop again and is likely not even possible due to the level of skill, complexity and uniqueness required when writing code. Not only that, but any attempt would require a great deal of time, time that would allow Defendant Gitman and the developers he is unlawfully seeking to solicit, the opportunity to unfairly compete with Plaintiffs CSV and ChannelReply.

Plaintiffs having demonstrated that Plaintiff's ChannelReply's software program and codes constitutes a trade secret, the only issue left for this Court to determine is whether Defendant Gitman and Channel Reply, Inc. are using or preparing to use Plaintiff's trade secret "in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Faiveley Transp. Malmo AB, *supra*. As to Defendant Gitman, there can be no doubt that he obtained and is seeking to use Plaintiff CSV's and Channel Reply's trade secret, codes and programs in breach of his fiduciary duties to Plaintiffs Dardashtian, CSV and ChannelReply, and in further breach of the CSV Operating Agreement as set forth in Point II(B)(1) above and in breach of the applicable state laws that govern said Operating Agreement and in breach of confidence as expected of him as a co-manager of CSV.

C. <u>Even if there exists sufficiently serious questions as to the merits, the balance of the hardships are decidedly tipped in Plaintiffs' favor.</u>

In the alternative, even if there exist sufficiently serious questions as to the merits, the balance of hardships are decidedly tipped in the Plaintiffs' favor.

Plaintiffs are seeking an order returning the status quo as it existed prior to Defendant Gitman's unlawful conduct, and theft and misappropriation of Plaintiff CSV, NDAP and ChannelReply's computer data, passwords, funds, email and other business information and business. Maintaining the status quo certainly weighs heavily in favor of Plaintiffs as Plaintiffs merely seek that this Court restrain further unlawful misappropriation, depletion, usage, reproduction and unauthorized access of and to Plaintiffs assets, tradename, computer data, trade secrets, confidential information, customers, and other valuable information owned only by Plaintiffs and to prevent continued pillaging by Defendant Gitman and other defendants by unfairly seeking to compete with the Plaintiff companies by misappropriating and then using

29

those trade secret and other confidential and proprietary assets, including the "Channel Reply" trade name against Plaintiffs. This application seeks to restore the status quo and compel Defendant Gitman to replace the funds he wrongfully siphoned to himself in a reckless self-help move to dictate how and what he desired to do as if the Plaintiff companies are his own and not also Plaintiff Dardashtian's. This application seeks to compel Defendant Gitman to return those stolen funds into the Plaintiff CSV's banking account so that they may be used for the business' operation as has been the normal course of conduct of the nearly 6 years of business operations of Plaintiff ChannelReply and CSV.  There is no harm whatsoever to any of the Defendants in the granting of such relief, as the Defendants have no entitlement to the Plaintiffs' trade secrets, computer data and valuable protected information now being misappropriated by Defendant Gitman to be used by him and the other defendants to steal CSV and ChannelReply's business.

### III.   DEFENDANT GITMAN MUST BE ENJOINED FROM DISSIPATING OR OTHERWISE TRANSFERING CSV AND CHANNELREPLY'S ASSETS AND ORDERED TO IMMEDIATELY RETURN ALL FUNDS MISAPPROPRIATED FROM CSV'S BANK OF AMERICA ACCOUNT ENDING 7343 BACK TO THAT ACCOUNT SO THAT CSV AND CHANNELREPLY CAN CONTINUE TO OPERATE THEIR BUSINESS.

A. Plaintiffs CSV and ChannelReply will be irreparably harmed if all funds wrongfully removed from their operating account are not immediately returned.

The funds in CSV's Bank of America Account ending 7343 ("BOA Account") were the only funds available to CSV for the operation of its business and subsidiaries. Without these funds, CSV will not be able to pay is ordinary expenses and will continue to overdraw on its account.

As part of its operation in facilitating messaging between eBay and Amazon store owners with their customers, Plaintiff ChannelReply is required to pay servers. These payments are automatically debited from CSV's BOA Account. As of Sunday, May 28, 2017, CSV's BOA

account was overdrawn by $10.89 which soon progressed in the days that followed to several hundred dollars as Defendant Gitman ran up charges on the bank account and NDAP credit card. Dardashtian Aff. at para. 89; Ex. ¶96, Ex. 63. As a result of Gitman's wrongful depletion of the BOA Account, removing more than $70,000, Plaintiff ChannelReply has been unable to pay for its servers, which will result in the servers, and thereby Plaintiff ChannelReply, being completely shut down. The shutdown of these servers will in turn result in Plaintiff Channel Reply's API no longer functioning and will also result in Plaintiff ChannelReply's customers being unable to communicate with their customers reaching out to them via eBay and Amazon. This will clearly damage Plaintiff CSV and ChannelReply's business with its customers which is undoubtedly the goal of Defendant Gitman.

By depleting the only bank account from which both Plaintiffs CSV and ChannelReply operates, Defendant Gitman has intentionally jeopardized the continued operation of Plaintiff ChannelReply, and put it at risk of substantial loss of revenue, customer service issues, the loss of customers and closing as well as debt. Id at Ex. 46b. By way of example, one of Plaintiff ChannelReply's customers transacts nearly $6 million dollars in business per day on eBay, and sends thousands of customer service messages daily through Plaintiff ChannelReply's servers. If and when Plaintiff ChannelReply's servers are turned off as a result of Defendant Gitman's wrongful depletion of the BOA Account and the inability to pay for such servers, this extremely valuable customer of Plaintiffs will lose the ability to use the ChannelReply solution to respond to messages from its marketplace customers. There can be no doubt that this will result in substantial customer dissatisfaction and the end of such business relationship.

Not only is Defendant Gitman's conduct making it impossible to pay Plaintiff

ChannelReply's operating and current expenses, and thereby operate its business at all, but if the servers are completely shut down, it is placing Plaintiff ChannelReply at substantial risk of irreparable damage to its business relationship with its customers.

B. Plaintiffs have a likelihood of success on the merits of their claims.

    *1.   Plaintiffs have a likelihood of success on the merits of their claims that Defendant Gitman wrongfully misappropriated and converted funds belonging to Plaintiffs CSV and ChannelReply.*

It is well settled that one commits the tort of conversion, where, as here, he engages in the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." <u>Vigilant Ins. Co. of Am v. Hous. Auth.</u>, 87 N.Y.2d 36, 600 N.E.2d 1121 (1995).

It is undisputed that Defendant Gitman removed all of the funds from the BOA Account belonging only to CSV, and, upon information and belief, transferred same to his own account, without consent, thereby depriving Plaintiffs CSV and Channel Reply of the use of these desperately needed funds. He then exercised the right of ownership over ChannelReply's online goods, data, product, developers, customers, in sum virtually all of its property and substance to the exclusion of Plaintiff Dardashtian and CSV.

The Court must order the immediate return of these funds to CSV's BOA Account so that Plaintiffs CSV and ChannelReply can continue to pay their operating expenses, including payment of Plaintiff ChannelReply's server, and thereby preserve the integrity of its customer service and customer relationship. <u>Dardashtian Aff. at para 65; Ex. 45a and 45b</u>.

    *2.   Plaintiffs have a likelihood of success on the merits of their claim for a constructive trust.*

There are generally four factors a court deems useful: (1) a promise; (2) a transfer in reliance thereon; (3) a fiduciary relation; and (4) unjust enrichment. <u>Simonds v. Simonds</u>, 45

N.Y.2d 233, 30 N.E.2d 189 (1978). However, although these factors are useful in many cases, the doctrine is not rigidly limited and a construct trust may be imposed even in the absence of one of one or more factors. "A constructive trust will be erected whenever necessary to satisfy the demands of justice***[Its] applicability is limited only by the inventiveness of men who find ways to enrich themselves unjustly by grasping what should not belong to them." Id.

There can be no doubt that Gitman converted CSV's BOA Account in direct violation of his fiduciary duties to CSV and Channel Reply, and for the enrichment of himself and his competing business entities.  Justice requires that a constructive trust be placed upon the funds in Gitman's accounts in the amount of $73,736.86, representing the sum of monies wrongfully taken by Gitman from the CSV account.

C.  <u>Even if there exists sufficiently serious questions as to the merits, the balance of the hardships are decidedly tipped in Plaintiffs' favor.</u>

There is significant harm to Plaintiff ChannelReply if the monies in its BOA account are not immediately returned to the account. Plaintiff ChannelReply's operations will completely shut down and its relationships with its customers will be irreparably damaged if these funds are not returned. Further, the Court needs to enter a restraint on currently paid funds by ChannelReply's customers as they are not being deposited into CSV's banking account and their whereabouts are unknown as Plaintiff Dardashtian is locked out of everything. To the contrary, there will be no harm to Defendants Gitman or to Channel Reply, Inc. if the Court grants the requested relief as they have any legal entitlement to CSV or ChannelReply's funds.

IV. **DEFENDANTS GITMAN AND CHANNEL REPLY, INC. MUST BE IMMEDIATELY ENJOINED FROM ENGAGING IN ANY COMPETITVE BUSINESS TO PLAINTIFFS, CSV, NDAP OR CHANNELREPLY, INCLUDING USING PLAINTIFFS' TRADE SECRETS AND CONFIDENTIAL INFORMATION OWNED BY PLAINTIFFS' CSV, CHANNELREPLY AND FROM USING THE TRADENAME "CHANNEL REPLY" IN ANY FORM AND UNDER ANY CIRCUMSTANCE.**

A. Plaintiffs will suffer immediate and irreparable injury if an order is not entered immediately enjoining Defendants Gitman and Channel Reply, Inc. from using, marketing, advertising and/or in any way holding themselves out to third parties with the tradename "Channel Reply".

As outlined in great detail in the Dardashtian Affidavit, Defendant Gitman has misappropriated the trade secrets of Plaintiffs CSV and ChannelReply and intends to or is using them currently for the benefit of Defendant Channel Reply, Inc. Defendant Gitman has further held himself out to be Michael Dardashtian by use of Plaintiff Dardashtian's email address with Defendant Gitman's photo. Dardashtian Aff. at para. 80; Ex. 55a and 55b. Defendant Gitman removed Plaintiff Dardashtian's access to all of Plaintiff companies secure sites and passwords, and transferred all Plaintiff company information to Defendant Gitman's own Google G Suite Account. Dardashtian Aff. at para. 79; Ex. 54. Defendant Gitman's actions on behalf of himself and Defendant Channel Reply, Inc. make clear his intention to hold Defendant Channel Reply, Inc. out as Plaintiff ChannelReply in an attempt to confuse Plaintiff ChannelReply's customers into believing that they are the same entity, thereby depriving Plaintiff ChannelReply of its customers and entire business.  If Defendant Channel Reply, Inc. is not immediately restrained form using, marketing, advertising and/or in any way holding itself out to third parties with the name "Channel Reply", Plaintiff ChannelReply will be immediately and irreparably harmed by the loss of its business to Defendant Channel Reply, Inc.

B. Plaintiffs have a likelihood of success on the merits of their claims against Defendants Gitman and Channel Reply, Inc.

  1. *Plaintiff ChannelReply has a likelihood of success on the merits of its claim of misappropriation of trade secrets and information.*

As set forth in Points II(B)(2)-(4) above, a cause of action exists where a party uses a trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Faiveley Transp. Malmo AB v. Wabtec Corp., 599 F.3d 110, 117 (2d Cir. 2009).

Here, Defendants Gitman and Channel Reply, Inc. has had access to Plaintiff ChannelReply's software, software codes, customer lists and other proprietary information by virtue of Defendant Gitman's interest in each of these Plaintiff companies and his sharing such information with Plaintiffs' developers. Id at para. 91; Ex. 65, 66b. Defendant Gitman, as a co-manager of Plaintiff ChannelReply owes a duty to keep this confidential information in confidence. Defendant Channel Reply, Inc. now has possession of Plaintiff ChannelReply's trade secrets, proprietary information and confidential information which it obtained by improper means, namely from Defendant Gitman who owns Defendant Channel Reply, Inc.

Based upon the foregoing, Defendant Channel Reply, Inc. must be immediately enjoined.

  2. *Plaintiff Channel Reply has a likelihood of success on the merits of its claim of unfair competition and trade name infringement in violation of 15 U.S.C.S. §1125.*

As this Court is aware, 15 U.S.C.S. §1125 provides a civil cause of action for trade name infringement.  The statute provides, in relevant part,

  "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ---

    (A) Is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another

person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or

(B) In commercial advertising or promotion, misrepresents the nature characteristics, qualities, or geographic origin of his or her or another's persons goods, services or commercial activities,

shall be liability in a civil action by any person who believes that he or she is likely to be damaged by such act."

15 U.S.C.S. §1125 (a)(1).

The section has frequently provided support for unfair competition claims. Forschner Group v. Arrow Trading Co., 904 F. Supp. 1409, 1415 (S.D.N.Y. 1995).

There is no dispute that Plaintiff CSV, under the joint ownership and co-management of both Plaintiff Dardashtian and Defendant Gitman, offers a proprietary software as a service or "SaaS" solution called "ChannelReply". Plaintiff Dardashtian formally registered ChannelReply, LLC months ago when the ChannelReply service sales had grown to generate substantial capital enabling CSV to explore creating a separate company for the service offering and its business operations. Defendant Gitman agreed to form Channel Reply LLC, as evidenced in Plaintiffs Affidavit. However, after Plaintiff Dardashtian registered the LLC, obtained an EIN and had the company attorney draw up an operating agreement, Defendant Gitman decided to undertake his own devious plans. Merely because CSV never transferred its ChannelReply service and accompanying assets to a separate LLC, that does not give Defendant Gitman, a co-manager of CSV, the very company that owns "Channel Reply", the license to incorporate a separate business entity with the *same exact name*, without CSV's, Channel Reply's and/or Plaintiff Dardashtian's knowledge and/or consent and then to use the name "Channel Reply" in any format to compete with Plaintiff ChannelReply. Defendant Gitman's actions and intentions are deliberate and designed to steal both the name and trade off of its valuable customer base, trade secrets and other confidential and proprietary property.

There can be no question that Defendant Gitman incorporated Defendant Channel Reply, Inc. to facilitate a seamless conversion and misappropriation of Channel Reply's proprietary software and cause confusion to Plaintiff ChannelReply's customers and deceive them to believe that Defendant Channel Reply, Inc. is affiliated or associated with, or is the same company as Plaintiff ChannelReply and unfairly trade off its name and recognition in the industry and to unfairly compete with Plaintiff ChannelReply in direct violation of 15 U.S.C.S §1125. Dardashtian Aff. Ex. 90.

    C. <u>Even if there exists sufficiently serious questions as to the merits, the balance of the hardships are decidedly tipped in Plaintiff's favor.</u>

For the reasons set forth above, the balance of the hardships are decidedly tipped in Plaintiff's favor, warranting the granting of the requested relief.

    **V.    DEFENDANTS GITMAN, CHANNEL REPLY, INC, FALK, ACCEL AND/OR ANYONE ACTING ON THEIR BEHALF, MUST BE IMMEDIATELY ENJOINED FROM ACCESSING PLAINTIFF CSV, NDAP, CHANNEL REPLY'S COMPUTERS, DATA, COMPUTER PASSWORDS, BANK PASSWORDS, CODES, SOFTWARE, PROGRAMS AND OTHER INTELLECTUAL PROPERTY.**

18 U.S.C.S. §1030, also known as the Computer Fraud Statute, provides that whoever,

    "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access and my means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000.00 in any 1-year period."

    <u>18 U.S.C.S. §1030(a)(4).</u>

Although, the Computer Fraud Statute is criminal in nature, the statute itself provides for a civil remedy and vests the Court with authority to grant injunctive and other equitable relief. The statute provides in relevant part,

"Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

18 U.S.C.S. §1030 (g).

18 U.S.C.S. §1030 (g) limits a civil action for a violation of this section to conduct which involves "1 of the factors set forth in subclauses [subclause] (I), (II), (III), (IV),or (V) of subsection (c)(4)(A)(i)." 18 U.S.C.S. §1030 (c)(4)(A)(i)(I), in turn provides for a remedy where, as here, there is

"loss to 1 or more persons during any 1-year period…aggregating at least $5,000.00 in value."

18 U.S.C.S. §1030 (c)(4)(A)(i)(I).

Defendant Gitman, with the intent to defraud, clearly exceeded his authorized access to Plaintiff CSV, NDAP and Channel Reply's Google Suite by creating a new Google domain G suite for Plaintiff ChannelReply to transfer all of Plaintiff ChannelReply's proprietary documents, email addresses and other confidential documents to new G suite portals that only Defendant Gitman controls, downloading all of NDAPs business data and emails, and allowing Defendants Channel Reply, Inc. and Accel to use Plaintiff CSVs Upwork accounts as outlined in greater detail in the Dardashtian Affidavit.  By changing company passwords and using his shared administrator privileges to remove Plaintiff Dardashtian's access to all company accounts, Defendant Gitman exceeded the access granted to him by virtue of his management position within the companies CSV and NDAP. Defendant Gitman accessed these various company computer portals of Plaintiff with the unquestionable intent to defraud Plaintiffs Dardashtian, CSV and Channel Reply, and unlawfully obtain and relocate their trade secrets and proprietary information. Dardahstian Aff. at para. 77-78; Exs. 53a and 53b.

Further, Defendant Gitman has removed Plaintiff Dardashtian's access to all of the data by removing Plaintiff from company's Password storage databanks, altering Plaintiff's

passwords that were not his, and by changing such passwords, in order to lockout Plaintiff

Dardashtian from gaining access to discovery Defendant Gitman's fraudulent scheme. Id at paras

83, 84; Exs. 56a-56d; 58, 60a-60c.

      As a further result, Defendant Gitman has completely eliminated Plaintiff Dardashtian's

ability to manage Plaintiffs CSV and ChannelReply, and has severely jeopardized the continued

operation of these entities, which will result in a substantial loss of revenue to Plaintiffs CSV and

ChannelReply. Plaintiff Dardashtian has already been monetarily damaged as a result of

Defendant Gitman's actions, including his diversion of customer payments, his withdrawal of

company funds, in addition to his theft of Dardashtian's business email account and identity

which has created extreme mental and emotional anguish for Plaintiff Dardashtian, Plaintiff

Dardashtian's expense on attorney's fees defending himself and the company and the like. Id at

para. 36; Exs. 20b-20i.

## VI.    DEFENDANT GITMAN MUST BE ORDERED TO IMMEDIATELY PROVIDE PLAINTIFF DARDASHTIAN WITH ALL USERNAMES AND PASSWORDS FOR ALL COMPUTUER, BANK AND OTHER ACCOUNTS AND MUST BE RESTRAINED FROM REMOVING OR OTHERWISE RESTRICTING PLAINTIFF DARDASHTIAN'S COMPLETE ACCESS TO ALL OF PLAINTIFFS ACCOUNTS.

A.  Plaintiffs Dardashtian, CSV, NDAP and ChannelReply will suffer immediate and irreparable harm if an Order is not entered requiring Defendant Gitman to immediately provide Plaintiff Dardashtian with all usernames, passwords and other forms of access for all computer, bank and all other accounts maintained by Plaintiffs CSV, NDAP and ChannelReply, and thereafter also restraining Defendant Gitman from again restricting or otherwise removing or terminating Plaintiff Dardashtian's access to all of Plaintiffs' accounts in any way.

      There can be no dispute that "a loss of bargained-for managerial control over an

entity constitutes irreparable harm." Audubon Levy Investors, LP v. E. W. Realty Ventures,

LLC, 698 F. Supp. 2d 328 (E.D.N.Y. 2010).

By intentionally terminating Plaintiff Dardashtian's access to all usernames and passwords of Plaintiffs to CSV, NDAP and Channel Reply's computer data, bank accounts and all other accounts as outlined in the Dardashtian Affidavit, Defendant Gitman has completely restricted, frozen out and otherwise prohibited Plaintiff Dardashtian from having any access to Plaintiffs' accounts, from managing Plaintiffs CSV, NDAP and ChannelReply, all of which Plaintiff Dardashtian has managed and for a period of time unilaterally managed, since their inception. The loss of Plaintiff Dardashtian's ability to manage Plaintiffs' entities constitutes irreparable harm as a matter of law. Id.

Defendant Gitman has further frozen Plaintiff Dardashtian out and terminated his access to impede Plaintiff Dardashtian's ability to discovery Defendant Gitman's fraudulent acts and scheme.

Therefore, Defendant Gitman must be ordered to immediately restore and provide Plaintiff Dardashtian with all username and passwords for all of Plaintiffs' computer, bank and other accounts and must be further restrained from any further change to any such usernames and passwords or otherwise limiting Plaintiff Dardashtian's access to all of Plaintiffs' accounts and information.

Defendant Gitman must further agree that all administration rights to Plaintiffs' account must be shared equally with Plaintiff Dardashtian to avoid any further malfeasance by Defendant Gitman. It must also be independently monitored/tracked with safeguards in place to avoid any further malfeasance, trickery or scheming by Defendant Gitman. Furtheremore, Defendant Gitman must be directed to notify Plaintiff Dardashtian of and reverse any substantive changes he or the Channel Reply developers, working at his direction, made to the Channel Reply service

or its customer relations during the time that Plaintiff Dardashtian was denied access to his company.

    B. <u>Plaintiffs have a likelihood of success on the merits of his claim that Gitman breached his fiduciary duties</u>.

For the reasons set forth in Point II(B)(1) above, Plaintiffs have established a likelihood of success on the merits on their claim that Defendant Gitman breached his fiduciary duty owed to Plaintiffs CSV, NDAP, ChannelReply and Dardashtian. As a member and co-manager of Plaintiffs CSV, NDAP and ChannelReply, Plaintiff Dardashtian is entitled to the immediate restoration of complete access to all of Plaintiffs' accounts and to the return of all passwords and codes and administration rights to gain such access to all of Plaintiffs' computer portals, emails, accounts and company information.

    C. <u>Even if there exists sufficiently serious questions as to the merits, the balance of the hardships are decidedly tipped in Plaintiff's favor.</u>

For the reasons set forth above, the balance of the hardships are decidedly tipped in Plaintiffs' favor, warranting the granting of the requested relief.

## CONCLUSION

Based upon the foregoing, Plaintiffs Order to Show Cause of Temporary and Preliminary Injunctive Relief must be granted in its entirety.

By:    ARTURI, D'ARGENIO,
           GUAGLARDI & MELITI, LLP
           Attorneys for Plaintiffs


_____
Barry S. Guaglardi, Esq. (BSG2401)