**Exhibit 5** A

 **DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**CINCINNATI   OH   45999-0023**

Date of this notice:  08-25-2011

Employer Identification Number:
~~XXXXXXXXX~~597

Form:  SS-4

Number of this notice:  CP 575 A

NDAP
MICHAEL DARDASHTIAN MBR
10616 JAMAICA AVE
RICHMOND HILL, NY   11418

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


### WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

    Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 45-3082597.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

    When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

    Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

                Form 941                        01/31/2012
                Form 940                        01/31/2012
                Form 1065                       04/15/2012

    If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods*.

    We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election*.  See Form 8832 and its instructions for additional information.

    A limited liability company (LLC) may file Form 8832, *Entity Classification
Election*, and elect to be classified as an association taxable as a corporation.  If
the LLC is eligible to be treated as a corporation that meets certain tests and it
will be electing S corporation status, it must timely file Form 2553, *Election by a
Small Business Corporation*.  The LLC will be treated as a corporation as of the
effective date of the S corporation election and does not need to file Form 8832.



(IRS USE ONLY)      575A                08-25-2011  NDAP  B  9999999999  SS-4

    If you are required to deposit for employment taxes (Forms 941, 943, 940, 944, 945, CT-1, or 1042), excise taxes (Form 720), or income taxes (Form 1120), you will receive a Welcome Package shortly, which includes instructions for making your deposits electronically through the Electronic Federal Tax Payment System (EFTPS).  A Personal Identification Number (PIN) for EFTPS will also be sent to you under separate cover. Please activate the PIN once you receive it, even if you have requested the services of a tax professional or representative.  For more information about EFTPS, refer to Publication 966, *Electronic Choices to Pay All Your Federal Taxes*.  If you need to make a deposit immediately, you will need to make arrangements with your Financial Institution to complete a wire transfer.

    The IRS is committed to helping all taxpayers comply with their tax filing obligations.  If you need help completing your returns or meeting your tax obligations, Authorized e-file Providers, such as Reporting Agents (payroll service providers) are available to assist you.  Visit the IRS Web site at www.irs.gov for a list of companies that offer IRS e-file for business products and services.  The list provides addresses, telephone numbers, and links to their Web sites.

    To obtain tax forms and publications, including those referenced in this notice, visit our Web site at www.irs.gov.  If you do not have access to the Internet, call 1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

IMPORTANT REMINDERS:

    *  Keep a copy of this notice in your permanent records.  **This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.**

    *  Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax returns.

    *  Refer to this EIN on your tax-related correspondence and documents.

    If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice.  If you write, please tear off the stub at the bottom of this notice and send it along with your letter.  If you do not need to write us, do not complete and return the stub.  Thank you for your cooperation.

                      Keep this part for your records.      CP 575 A (Rev. 7-2007)

--------------------------------------------------------------------------------

    Return this part with any correspondence
so we may identify your account.  Please                          CP 575 A
correct any errors in your name or address.
                                            9999999999

   Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  08-25-2011
   (    )   -                           EMPLOYER IDENTIFICATION NUMBER: ████597
   _____  _____  FORM:  SS-4           NOBOD

INTERNAL REVENUE SERVICE                    NDAP
CINCINNATI  OH   45999-0023                 MICHAEL DARDASHTIAN MBR
ılıllılllılllılllılıllılıllıllılıllı        10616 JAMAICA AVE
                                            RICHMOND HILL, NY  11418



# EXHIBIT B

Oct·14·2011 07:57 AM BANK OF AMERICA · Greatneck 516-498-3116                    47/56

**Bank of America** 〰〰〰

*ade DAVID*

BANK OF AMERICA, N.A. (THE "BANK")

| | | | **Limited Liability Company Signature Card** |
|---|---|---|---|
| Account Number | 4830 3825 7345 | | ☐ Temporary Signature Card |
| Account Type | BUSINESS ECONOMY CHECKING | | |
| Account Title | COOPER SQUARE VENTURES, LLC | | |

Name of Company    COOPER SQUARE VENTURES, LLC

Tax Identification Number ▓▓▓▓▓587

For a Limited liability Company enter the tax classification (D = disregarded entity, C = corporation, or P = partnership)
on this line.    *C*

☐ Exempt payee

By signing below, the above named Association agrees that this account is and shall be governed by the terms and conditions set forth in the following documents, as amended from time to time: (1) the Deposit Agreement and Disclosures, (2) the Business Schedule of Fees, and (3) the Miscellaneous Fees for Business Accounts, and the Association further acknowledges the receipt of these documents.

Substitute Form W-9, Certification–Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. citizen or other U.S. person (as defined in the instructions).
Certification Instructions
You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. (See also IRS instructions for Form W-9).

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| Name (typed or printed) | Signature | Date |
|---|---|---|
| 1. MICHAEL DARDASTIAN | | 10/13/11 |
| 2. DAVID GITMAN | | 10/13/11 |
| 3. | | |
| 4. | | |
| 5. | | |

I, the undersigned, hereby certify (1) that I am a duly authorized member/manager of the Company named above, (2) that the above named person(s) are those persons currently empowered to act under the Company resolutions authorizing this account and the other banking services provided for therein, (3) that the specimen signature set forth opposite the name of each person is true and genuine, and (4) the Substitute Form W-9 certifications.

This __13__ day of __OCTOBER 2011__    ✓ _____

DAVID GITMAN          Member/Manager    MICHAEL DARDASTIAN
NY DL ▓▓▓▓▓          NY DL ▓▓▓▓▓85
1-9/6/11 E-11/26/11    1-4/3/10 E-11/01/17

ATM/Deposit/Check Card Request

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Check Cards, I (as authorized by the resolutions which authorizes this account) hereby request the issuance of such cards to any of the authorized signers on this account.

BOA VISA DEBIT 4035    AMEX 2005
EXP 9/15    5/14

✓ _____
Member/Manager                    Member/Manager

| **Bank Information** | |
|---|---|
| Date | 10/13/2011 |
| Banking Center/Name | GREAT NECK |
| Associate's Name | GLORIA NARDONE |
| Associate's Phone Number | 516-482-1933 |

95-14-9011M 06-2009
NNY

# EXHIBIT C

ChannelReply is a Software as a Service solution created to facilitate the messaging of eBay and Amazon store owners communications with their customers.

Worldwide retailers pay a monthly subscription fee to ChannelReply in order to connect their eBay and Amazon store messages with a customer service software solution.  Once connected ChannelReply's API passes messages from customers contacting store owners via eBay and Amazon accounts to large customer service management software solutions.  This allows for free flowing communication between store owners and customers.

By depleting the bank account, which operates ChannelReply, David Gitman has put our company at risk of operating.  If auto debits continue to bounce, the servers that run ChannelReply will be turned off. ChannelReply's API will no longer function and ChannelReply's customers will no longer be able to communicate with their own customers reaching out to them via eBay and Amazon.

The more than two hundred companies we service process thousands of customer service messages daily through ChannelReply's servers.

# EXHIBIT D

Exhibit 5D - SaaSBuilders.png                                                  Page 1 of 1

6/1/2017                                  ndap Mail - SaaS Builders I AngelList



Mike Dash <mdash@ndap-llc.com>

## SaaS Builders | AngelList

**David Gitman <dgitman@ndap-llc.com>**                        Mon, Oct 19, 2015 at 4:34 PM
To: Michael Dash <mdash@ndap-llc.com>

Here's what I sent him.

Cooper Square Ventures creates, operates and acquires eCommerce websites. Our current portfolio of properties was (re)built using modern technologies to bring antiquated merchandising online.

In the past 5 years, our eCommerce platform has evolved from serving omni-channel consumers (B2C) to serving multi-channel consumers (B2C) and businesses (B2B). During this organic transformation, we built a suite of internal tools to enhance eCommerce Product Information Management, Customer Relationship Management, Pricing Strategies and more. We realized these tools were not only valuable to us, but to other eCommerce merchants.

We are therefore now pivoting into SaaS eCommerce (pronounced / sassy-commerce) to transform our internal e-commerce tools into a platform to drive success for any eCommerce merchant.  (not sure this is worded right?)

The first product we've launched is ChannelReply. It's a multi-channel eCommerce messaging solution. It connects help desks with marketplaces. For example, eBay and Amazon sellers can perform their customer service with the power of ZenDesk.

We are actively developing new features, adding help desks and supporting additional marketplaces with ChannelReply. We're now also planning to release additional eCommerce tools.

David Gitman
**ndap**
Tel: (646) 553-5917
dgitman@ndap-llc.com I http://www.ndap-llc.com

## **Exhibit 6**

# COOPER SQUARE VENTURES, LLC

### ChannelReply Beta Test Agreement

This Beta Test Agreement ("Agreement") governs the disclosure of information by Cooper Square Ventures, LLC. ("Company") to ▨▨▨▨▨▨▨▨ LLC   (the "Recipient") and Recipient's use of Company's beta service offering for ChannelReply ("Service").

1. Subject to the terms and conditions of this Agreement, Company grants Recipient a nonexclusive, nontransferable license to use the Company Service for a period designated by the Company for the purpose of testing and evaluating the Service.

2. Beta Functionality Performance - This offering is new.   As a beta subscriber you may experience some issues with performance or functionality.  ChannelReply will make its best efforts to resolve these issues in a timely manner. However, there is no guarantee that all issues will be resolved, nor does the typical performance SLA for the ChannelReply platform apply to this functionality.  Please note, there will be no financial credits (or other compensation) issued should this beta not meet your expectations in terms of performance, functionality or otherwise.

3. Feedback - You agree to provide regular, timely and confidential feedback on the performance of the beta feature to ChannelReply, at Company's request, so that ChannelReply can make further improvements to the software.

4. Confidentiality - You agree to keep any information regarding the Beta functionality and your participation in the beta confidential (please see confidentiality clause in terms and conditions).

5. Support - Support for this feature will be available through ChannelReply's typical support channels (support@ChannelReply.com) while the offering is in beta.

6. Post-beta Publicity - If you wish to continue using the functionality upon completion of the beta period, you agree to participate in a case study and/or survey and provide a quote for a press release.

7. Fee/Billing – A non-refundable initial install fee shall be billed to you prior to installation in the amount of $500.  Pricing for eBay ChannelReply support shall be $99 per month, billed on the first day of each month.  Pricing for Amazon ChannelReply support shall be an additional $99 per month, billed on the first day of each month.  Pricing for combined eBay and Amazon ChannelReply support shall be $149 per month, billed on the first day of each month. If payment is not received by the 7th day of the month, service shall be suspended. These prices are subject to change at the Company's sole discretion at any time. Recipient shall be granted at least two weeks advanced notice.

# COOPER SQUARE VENTURES, LLC

8.   Participation - You agree that you are able and willing to dedicate the time necessary to cooperate with us so that we may maximize the beta functionality. This may at times require Recipient to grant Company complete access to one or more of Recipient's accounts, including but not limited to eBay, Amazon, ZenDesk and any other account used in conjunction with ChannelReply for the purpose of Company performing configuration, maintenance and troubleshooting.

9.   Time Frame: The Company's Service shall be provided on a month-to-month basis. Should the subscriber seek to cancel or suspend service for any reason, a notice must be sent to Support@ChannelReply.com 30 days in advance or Recipient will be billed for the following month. The Company reserves the right to cancel or suspend Recipient's use and access to Service at any time for any reason with or without cause.

## ADDITIONAL TERMS AND CONDITIONS

## (INCORPORATED HEREIN AS PART & PARCEL OF THIS AGREEMENT)

10.   The Recipient agrees that it at all times will hold in strict confidence and not disclose Confidential Information (as defined below) to any third party except as approved in writing by the Company and will use the Confidential Information for no purpose other than evaluating the Service. The Recipient shall only permit access to Confidential Information to those of its employees having a need to know and who have signed confidentiality agreements or are otherwise bound by confidentiality obligations at least as restrictive as those contained herein. "Confidential Information" means all non-public materials and information provided or made available by Company to Recipient, including products and services, information regarding technology, know-how, processes, software programs, research, development, financial information and information regarding third parties.

11.   After Recipient's evaluation of the Service is complete, or upon request of the Company, the Recipient shall promptly return to the Company all documents, notes and other tangible materials and return or certify the destruction of all electronic documents, notes, software, data, and other materials in electronic form representing the Confidential Information and all copies thereof.

12.   The Recipient agrees that nothing contained in this Agreement shall be construed as granting any ownership rights to any Confidential Information disclosed pursuant to this Agreement, or to any invention or any patent, copyright, trademark, or other intellectual property right. The Recipient shall not make, have made, use or sell for any purpose any product or other item using, incorporating or derived from any Confidential Information or the Service. The Recipient will not modify, reverse engineer, decompile, create other works from, or disassemble any software programs contained in the Confidential Information or the Service.

# COOPER SQUARE VENTURES, LLC

13.     This Service is a beta release offering and is not at the level of performance of a commercially available product offering.  The Service may not operate correctly and may be substantially modified prior to first commercial release, or at Company's option may not be released commercially in the future.  THE SERVICE AND DOCUMENTATION ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, AND COMPANY AND ITS LICENSORS DISCLAIM ALL WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTIES OF TITLE, NON-INFRINGEMENT OF THIRD PARTY RIGHTS, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.  NO ORAL OR WRITTEN ADVICE OR CONSULTATION GIVEN BY COMPANY, ITS AGENTS OR EMPLOYEES WILL IN ANY WAY GIVE RISE TO A WARRANTY.  THE ENTIRE RISK ARISING OUT OF THE USE OR PERFORMANCE OF THE SERVICE REMAINS WITH RECIPIENT.

14.     COMPANY AND ITS LICENSORS SHALL NOT BE LIABLE FOR LOSS OF USE, LOST PROFIT, COST OF COVER, LOSS OF DATA, BUSINESS INTERRUPTION, OR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, SPECIAL, OR EXEMPLARY DAMAGES ARISING OUT OF OR RELATED TO THE SERVICE OR THIS AGREEMENT, HOWEVER CAUSED AND REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE) STRICT LIABILITY, OR OTHERWISE, EVEN IF SUCH PARTIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  IN NO EVENT WILL COMPANY'S AGGREGATE CUMULATIVE LIABILITY FOR ANY CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT EXCEED $50.00 OR THE AMOUNT RECIPIENT ACTUALLY PAID COMPANY UNDER THIS AGREEMENT (IF ANY).

15.     The Recipient's obligations under this Agreement shall survive any termination of this agreement. This Agreement shall be governed by and construed in accordance with the laws of New York. The Recipient hereby agrees that breach of this Agreement will cause Company irreparable damage for which recovery of damages would be inadequate, and that the Company shall therefore be entitled to obtain timely injunctive relief under this Agreement, as well as such further relief as may be granted by a court of competent jurisdiction.  The Recipient will not assign or transfer any rights or obligations under this Agreement without the prior written consent of the Company.

## COOPER SQUARE VENTURES, LLC

Agreed to and Accepted on and by:

Signature: ████████████            Date: 9/3/14

Name: ████████ ████████            Title: Owner

**Exhibit 7**

5/29/2017                                    ndap Mail - Tactical Fallout just paid for your invoice CR-1000703



Mike Dash <mdash@ndap-llc.com>

## Tactical Fallout just paid for your invoice CR-1000703

**'service@paypal.com' via Partners** <partners@ndap-llc.com>                    Thu, Sep 4, 2014 at 2:57 PM
Reply-To: "service@paypal.com" <service@paypal.com>
To: "Cooper Square Ventures, LLC" <paypal@coopersquareventures.com>

PayPal

Transaction ID: 2GH26806A69238132

## You received a payment

Dear Cooper Square Ventures, LLC,

Thanks for using PayPal. To see all the transaction details, log in to your PayPal account.

See your invoice

It may take a few moments for this transaction to appear in your account.

| Customer | Note from customer |
|----------|--------------------|
| ▓▓▓▓▓▓▓▓▓ | None |
| ta▓▓▓▓▓▓▓▓▓▓▓▓▓▓m | |

**Shipping address** – confirmed
▓▓▓▓▓▓LC
▓▓▓▓▓▓▓▓▓▓
United States

| Description | Unit price | Qty | Amount |
|-------------|-----------|-----|--------|
| Channel Reply Install | $500.00 | 1 | $500.00 |
| | Subtotal | | $500.00 |
| | Shipping and handling | | $0.00 |
| | **Total** | | $500.00 USD |

Invoice ID CR-1000703

Sincerely,
PayPal

Help Center | Resolution Center | Security Center

This email was sent by an automated system, so if you reply, nobody will see it. To get in touch with us, log in to your account and click "Contact Us" at the bottom of any page.

Copyright © 2014 PayPal, Inc. All rights reserved. PayPal is located at 2211 N. First St., San Jose, CA 95131.

PayPal Email ID PP1560 – ac9c8f3a9b581

# EXHIBIT B

6/5/2017                                  ndap Mail – Welcoming Konstantyn Bagaiev



                                                        Mike Dash <mdash@ndap-llc.com>

---

## Welcoming Konstantyn Bagaiev

---

**David Gitman** <david@coopersquare.ventures>                    Tue, Oct 21, 2014 at 9:53 AM
To: "team@ndap-llc.com" <team@ndap-llc.com>

Good Morning,

I'd like to welcome Konstantyn Bagaiev to the team full time. Some of you may know Konstantyn already as "Agent K". He has been working with us for 2 years on ChannelReply (Zendesk eBay intergration). K will continue to develop ChannelReply and help us grow and optimize our catalogs.

Please join me in welcoming Konstantyn to the ndap t.

David Gitman
**Cooper Square Ventures**
Tel: (646) 553-5917
david@coopersquare.ventures | http://coopersquare.ventures



# EXHIBIT C



Mike Dash <mdash@ndap-llc.com>

## Payee Added in Online Business Suite

**transfers@mail.sbinvoicesandpayments.bankofamerica.com**
<transfers@mail.sbinvoicesandpayments.bankofamerica.com>
To: partners@ndap-llc.com

Fri, Nov 14, 2014 at
12:14 PM

To: NDAP, LLC
Payee: Konstantyn Bagaiev
Date Added: November 14, 2014

This payee has been added to your list of payees in Online Business Suite Direct Payments.

At Bank of America we care about your security, so for your protection we are notifying you of this activity.

If you did not intend to add this payee, please contact us immediately at 866.758.5972.

---------------------------------------------------------------------------------------------------------------------------------

Email Preferences

This is a service email from Bank of America. Please note that you may receive service email in accordance with your Bank of America service agreements, whether or not you elect to receive promotional email.

-------------------------------------------------------------------
-------------------------------------------------------------------

Contact us about this email

Please do not reply to this email with sensitive information, such as an account number, PIN, password, or Online ID. The security and confidentiality of your personal information is important to us. If you have any questions, please either call the phone number on your account statement or go to the Contact Us page below, so we can properly verify your identity: http://www.bankofamerica.com/contact/

Privacy and Security

Keeping your financial information secure is one of our most important responsibilities. For an explanation of how we manage customer information, please read our Privacy Policy: http://www.bankofamerica.com/privacy

You can also learn how Bank of America keeps your personal information secure and how you can help protect yourself: http://www.bankofamerica.com/privacy/index.cfm?template=privacysecur_prevent_fraud

Bank of America Email, 8th Floor, 101 South Tryon St., Charlotte, NC 28255-0001

Bank of America, N.A. Member FDIC. Equal Housing Lender: http://www.bankofamerica.com/help/equalhousing.cfm

(C) 2014 Bank of America Corporation. All rights reserved.

This e-mail was sent to: (partners@ndap-llc.com).

# EXHIBIT D

**NDAP, LLC**
**1010 Northern Blvd, Suite 208**
**Great Neck, NY 11021**
**USA**

Dated as of January 1ˢᵗ, 2016

Dear Mr. Bagaev:

When signed by each of the parties hereto, this letter sets forth the entire agreement between NDAP, LLC., a New York Limited Liability Company (the "Company") and Konstantyn Bagaev Registration Number: ~~████████~~2436 (the "Contractor"), with respect to the engagement of Contractor as an independent contractor by the Company on the following terms and conditions:

1. <u>Acknowledgment</u>.  Contractor understands and acknowledges that:

(a)  The Company is engaged in a continuous program of research, design, development, production, publishing, marketing and servicing with respect to its business and as part of Contractor's engagement by the Company, Contractor is (or may be) expected to make new contributions and inventions of value to the Company.

(b)   The Company's engagement of Contractor creates a relationship of confidence and trust between Contractor and the Company with respect to certain information applicable to the business of the Company or the business of any client, customer, or business partner of the Company, which may be made known to Contractor by the Company or by any client, customer, or business partner of the Company, or learned by Contractor during the period of Contractor's engagement.

(c)   The Company possesses and will continue to possess information that has been created, discovered or developed by, or otherwise become known to, the Company (including, without limitation, information created, discovered, developed or made known by Contractor during the period of or arising out of Contractor's engagement by the Company, whether before or after the date hereof) or in which property rights have been or may be assigned or otherwise conveyed to the Company, which information has commercial value in the business in which the Company is engaged and is treated by the Company as confidential.

(d)  As used herein, the period of Contractor's engagement includes any time during which Contractor shall perform any services for or on behalf of the Company, in any capacity, including as an employee.

2. <u>Engagement</u>.  All work performed by Contractor shall be documented in a Work Order signed by authorized representatives of both parties and affixed hereto as Exhibit A.  Each Work Order shall set forth, at a minimum, the work to be done, the duration of the assignment, and the fees for the work to be performed.

3. <u>Commitment to Company</u>.   During the period of Contractor's engagement by the Company, Contractor will devote that portion of Contractor's business time, energy and attention to the business and affairs of the Company subject to the Work Order included as Attachment A herein.

4. <u>Term of Engagement</u>.  As per Work Order included as Attachment A. Termination of this Agreement shall not affect the obligations of Contractor under Sections 5(d), 6, 7 and 8 hereof.  Notwithstanding the terms of the Work Order, Company reserves the right to terminate its engagement of Contractor at any time for any reason, including but not limited to, if Company finds Contractor's work to be unsatisfactory or if there is a breakdown in communication between Company and Contractor . In the event that Company exercises its right to terminate Contractor at will, Company shall only be responsible for compensating Contractor for the fair market value of work already performed and shall have no obligation to compensate Contractor for future works not yet performed, whether such works are anticipated by a signed Work Order or not.   Notwithstanding the foregoing, Contractor shall have no right to terminate premature of completing a signed Work Order. Any such refusal to complete work on a signed Work Order will be deemed a breach of this agreement and result in harm to the Company, entitling the Company to seek damages and injunctive or other equitable relief as described in Section 10, Remedies, below.

5. <u>Declaration</u>.

(a)   Contractor acknowledges and agrees that Contractor is acting as an independent contractor in the performance of the services hereunder, and nothing herein contained shall be deemed to create an agency and/or an employer/employee relationship between Contractor and the Company.   As an independent contractor, Contractor shall determine the times and locations at which his services are performed, subject to the timetable for the completion of specified tasks as the Company and Contractor shall agree.  Contractor shall bear all costs associated with the performance of his services (with the exception of travel costs associated with work with NDAP, LLC, so long as such travel costs are pre-approved by an authorized representative of NDAP, LLC).

(b)   Contractor shall in no event be entitled to participate in, or receive any benefits from, any of the Company's benefit or welfare plans, specifically including, but not limited to, coverage under the Company's workers' compensation program.  The Company shall have no obligation whatsoever to compensate Contractor on account of any damages or injuries which Contractor may sustain as a result or in the course of performance of Contractor's services hereunder.

(c)   Contractor shall be solely responsible for the payment of all Federal and State income taxes, social security taxes, Federal and State unemployment and similar taxes and all other assessments, taxes, contributions or sums payable, with the exception of applicable sales tax, with respect to Contractor as a result of or in connection

with the services performed by Contractor hereunder and Contractor shall file all returns and reports with respect to any of the foregoing.

(d)    Contractor shall defend, indemnify and hold harmless the Company and its affiliates and their officers, directors, employees, agents, successors and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees) arising out of or resulting from (a) bodily injury, death of any person or damage to real or tangible, personal property resulting from Contractor's acts or omissions; and (b) Contractor's breach of any representation, warranty or obligation under this Agreement. The Company may satisfy such indemnity (in whole or in part) by way of deduction from any payment due to Contractor.   The provisions of this paragraph shall survive the expiration or earlier termination of this agreement

6. <u>Works Made for Hire</u>.  Contractor acknowledges that all right, title and interest in all works of authorship, designs, computer programs, copyrights and copyright applications, inventions, discoveries, developments, original content production or programming, know-how, systems, processes, formulae, patent and patent applications, trade secrets, new products, internal reports and memoranda, strategies, and marketing plans conceived, devised, developed, written, reduced to practice, or otherwise created or obtained by Contractor in connection with Contractor's engagement by the Company (the "Intellectual Property") shall be regarded as "works made for hire" with Company as the sole author and owner thereof including, without limitation, as works specially ordered or commissioned for use as part of an audiovisual work.  Company will own all right, title and interest in the Intellectual Property with the full and unrestricted right to exploit same in any manner or media now known or hereafter devised and without any additional compensation to Contractor. To the extent that any such Intellectual Property is for any reason not deemed to be works made for hire, Contractor hereby transfers and assigns to the Company all right, title and interest in and to the Intellectual Property from the inception of creation thereof.  Promptly after Contractor creates or obtains knowledge of any Intellectual Property, Contractor will disclose it to the Company.  Upon request of the Company, Contractor will execute and deliver all documents or instruments and take all other action as the Company may deem reasonably necessary to transfer all right, title, and interest in any Intellectual Property to the Company; to vest in the Company good, valid and marketable title to such Intellectual Property; to perfect, by registration or otherwise, trademark, copyright and patent protection of the Company with respect to such Intellectual Property; and otherwise to protect the Company's trade secrets and proprietary interest in such Intellectual Property.  In the event Contractor does not sign any such document or instrument within five (5) days of a request thereof, Company shall have the right to execute such document or instrument in Contractor's name and take any other action in order to vest in Company all rights hereunder and Contractor appoints Company as Contractor's attorney in fact to do so, which power of attorney is irrevocable and coupled with an interest.

7. <u>Documentation</u>.   In the event of the termination of Contractor's engagement for any reason, Contractor will deliver to the Company all documents, notes, drawings, blueprints, formulae, specifications, computer programs, data and other materials of any nature pertaining to any Intellectual Property or to Contractor's work with the Company, and will not take any of the foregoing or any reproduction of any of the foregoing that is embodied in a tangible medium of expression.

8. <u>Confidentiality</u>.   At all times, both during Contractor's engagement by the Company and after its termination, Contractor will keep in strict confidence and will not disclose any confidential or proprietary information relating to the business of the Company, or any client, customer, or business partner of the Company, to any person or entity, or make use of any such confidential or proprietary information for Contractor's own purposes or for the benefit of any person or entity, except as may be necessary in the ordinary course of performing Contractor's duties for the Company.

9. <u>Other Agreements</u>.   Contractor represents and warrants that Contractor's execution and delivery of this Agreement and the performance of all the terms of this Agreement do not and will not breach any agreement to keep in confidence proprietary information acquired by Contractor in confidence or trust.   Contractor has not entered into and shall not enter into any agreement, either written or oral, in conflict with this Agreement.   Contractor represents that Contractor has not brought and will not bring with Contractor to the Company or use at the Company any materials or documents of an employer or a former employer that are not generally available to the public, unless express written authorization from such employer for their possession and use has been obtained.   Contractor also understands that Contractor is not to breach any obligation of confidentiality that Contractor has to any employer or former employer and agrees to fulfill all such obligations during the period of Contractor's affiliation with the Company.

10. <u>Remedies</u>.   Contractor acknowledges that a remedy at law for any breach or threatened breach of the provisions of this Agreement would be inadequate and therefore agrees that the Company shall be entitled to injunctive relief in addition to any other available rights and remedies in case of any such breach or threatened breach; <u>provided</u>, <u>however</u>, that nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available for any such breach or threatened breach.   Contractor further acknowledges that in the event of breach by Company of this or any other agreement Contractor may have with Company, Contractor shall be limited to an action-at-law for damages actually suffered, subject first to mediation by a mediator chosen by both parties or if the parties cannot agree then through a court-appointed mediator; in no event shall Contractor have the right to terminate or rescind any rights granted to Company hereunder, to obtain equitable relief or otherwise to enjoin, restrain or otherwise interfere with the full exploitation of the rights herein granted including, without limitation, with respect to any or all Intellectual Property.

11. <u>Assignment</u>.   This Agreement and the rights and obligations of the parties hereto shall bind and inure to the benefit of any successor or successors of the Company by reorganization, merger or consolidation or otherwise and any assignee of all

or substantially all of its business and properties, but neither this Agreement nor any rights or benefits hereunder may be assigned by Contractor.

12. Interpretation, Severability.  It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought.  Accordingly, if any particular provision of this Agreement shall be adjudicated to be invalid or unenforceable, such provisions shall be deemed amended to delete there from the portion thus adjudicated to be invalid or unenforceable, such deletion to apply only with respect to the operation of such provision in the particular jurisdiction in which such adjudication is made.  In addition, if any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the extent compatible with the applicable law as it shall then appear. Should any part(s) of this Agreement be rendered or declared invalid by a court of competent jurisdiction of the State of New York, such invalidation of such part(s) or portion(s) of this Agreement should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

13. Notices.  Any notice which a party is required or may desire to give pursuant to this Agreement shall be given by personal delivery or registered or certified mail, return receipt requested, addressed to Contractor at Contractor's address of record with the Company and addressed to the Company at its principal office, or at such other place as either party may from time to time designate in writing.  The date of personal delivery or the date of mailing any such notice shall be deemed to be the date of delivery thereof.

14. Waivers.  If either party shall waive any breach of any provision of this Agreement, such party shall not thereby be deemed to have waived any preceding or succeeding breach of the same or any other provision of this Agreement.

15. Governing Law.  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to principles governing conflicts of laws.

16. No Employment Agreement.   Contractor acknowledges that this Agreement does not constitute an employment agreement and agrees that, except to the extent herein specified to the contrary, this Agreement shall be binding upon Contractor regardless of whether or not Contractor's engagement shall continue for any length of time hereafter and whether or not Contractor's engagement is terminated for any reason whatsoever by the Company or Contractor or both.

17. Complete Agreement; Amendments; Prior Agreements.  The foregoing is the entire agreement of the parties with respect to the subject matter hereof and may not be amended, supplemented, canceled or discharged except by written instrument executed by both parties.

Very truly yours,

NDAP, LLC.

By: _____
Name: David Gitman
Title: Managing Member
For: NDAP, LLC

AGREED TO AND ACCEPTED

_____

Konstantyn Bagaev

Address: ████████████████ ██38
████████████████ ██78

Registration Number: ████████ ██2436

Business Name: IP █████████████

<u>EXHIBIT A - WORK ORDER</u>

Contractor:  Konstantyn Bagaev

Start Date Under Agreement: January 1st, 2016

Term of Work Order:  One Year, with ability to extend as the parties agree.

                                Time Commitment:  Contractor shall dedicate at minimum 75% of Contractor's business time, energy and attention to the business and affairs of the Company.

Rate of Payment:   $2,000 per month, pro rata for any work due within 30 days of receipt of invoice.

Scope of Services: Act on behalf of Client in the capacity of Work for Hire / Consultant working on various projects included but not limited to ChannelReply API Connection CarPartKings

By:    IP Bagaev Konstantin
         Konstantyn Bagaev
         Ul Mira d 59 k3 kv 138
         Jeleznogorsk 307178
         Russia

Registration Number:  315463300002436

Signed:_____      Date: _____

Agreed and Accepted by Konstantyn Bagaev

By:   NDAP, LLC. (Company)
Rep; David Gitman

By: _____      Date: _____

## **Exhibit 8**

# INTENTIONALLY OMITTED

## **Exhibit 9**

# INTENTIONALLY OMITTED

**Exhibit 10** A



# EXHIBIT B

```
N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS                         ALBANY, NY  12231-0001
                              FILING  RECEIPT
=========================================================================
ENTITY NAME : NDAP, LLC

DOCUMENT TYPE : ASSUMED NAME LTD LIABILITY CO
=========================================================================
   FILER:                              FILED:  07/16/2014
   ------                              CASH#:  329822
                                       FILM#:  20140716077
   MICHAEL DARDASHTIAN
   1010 NORTHERN BLVD.
   SUITE 208
   GREAT NECK        NY    11021




   PRINCIPAL LOCATION
   ------------------

   1010 NORTHERN BLVD
   SUITE 208
   GREAT NECK
   NY    11021




   COMMENT:


   ASSUMED NAME
   ------------
   CAR PART KINGS



=========================================================================
SERVICE COMPANY :    +++  NO SERVICE COMPANY  +++        CODE:
                                                         BOX :


FEES        25.00                     PAYMENTS:  25.00
----                                  --------
FILING :    25.00                     CASH    :
COUNTY :      .00                     CHECK   :
COPIES :      .00                     C CARD  :   25.00
MISC   :      .00
HANDLE :      .00
                                      REFUND  :
                                      ------
=========================================================================
                         DO3HD108              DOS-261 (04/2007)
```