UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE VENTURES,
LLC, NDAP, LLC and CHANNELREPLY, LLC          Case No.: 17-CV-4327 (LLS)

                                        Plaintiffs,

        -against-

DAVID GITMAN, JEREMY FALK, SUMMIT            AFFIDAVIT OF
ROCK HOLDINGS, LLC, ACCEL COMMERCE,          MICHAEL DARDASHTIAN
LLC, DALVA VENTURES, LLC, KONSTANTYN         IN SUPPORT OF ORDER
BAGAEV, OLESKSII GLUKHAREV and               TO SHOW CAUSE SEEKING
CHANNEL REPLY, INC.,                         A CONTEMPT ORDER,
                                  Defendants. IMMEDIATE COMPLIANCE
                                             WITH A COURT ORDER;
                                             AND REMOVAL OF
                                             DEFENDANT GITMAN
                                             FROM MANAGING
                                             AND ACCESSING
                                             PLAINTIFF COMPANIES

-------------------------------------------------------------X

        Michael Dardashtian, being duly sworn deposes and says:

        1.      I am a Plaintiff in the above matter and  a fifty percent (50%) member of Plaintiff

Cooper SquareVentures, LLC ("CSV"), NDAP, LLC ("NDAP") and ChannelReply, LLC

("Plaintiff ChannelReply" and collectively "Plaintiff Companies").  I filed the within action on

June 8, 2017 on behalf of myself, and on behalf of Plaintiff Companies as Defendant David

Gitman ("Gitman" or "Defendant Gitman"), also a 50% member of Plaintiff Companies, with the

assistance and participation of the other defendants, have been misappropriating and converting

assets, confidential and proprietary information of the Plaintiff Companies, in order to form and

operate competing businesses, including Defendant Channel Reply, Inc., a company owned by

Defendant Gitman using the exact same name, "ChannelReply" as the proprietary software

owned by Plaintiffs. In short, Gitman is seeking to use Plaintiffs' proprietary software and to

unlawfully solicit Plaintiffs' developers to work for him in Channel Reply, Inc. in order to put CSV and ChannelReply out of business. Gitman has drained the Plaintiffs' banking account, changed all passcodes, locked me out of all accounts to which I have had access since the inception of the Plaintiffs' businesses of which I am a co- manager and equal owner.

2.    I was successful in obtaining certain temporary restraints from this Court by way of a June 8, 2017 Order to Show Cause ("June 8 OSC") entered by the Honorable Edgardo Ramos, USDJ, which June 8 OSC was amended on June 9, 2017 to only include certain time deadlines for Gitman's full compliance with same ("Amended OSC"). The June 8 OSC and Amended OSC are collectively referred to herein as the "OSC" and are attached hereto as **Exhibit A** and **Exhibit B** respectively.

3.    Because of Defendant Gitman's willful disregard of this Court's OSC, and his clear intent to demonstrate that he is above the law, it is now necessary for me, individually and on behalf of Plaintiff Companies, to incur the time and expense to file yet another emergent application with this Court as 1) Defendant Gitman has failed to comply with the express provisions of the OSC; and 2) has since taken additional unlawful actions as to the Plaintiff Companies; and has submitted a false certification to this Court claiming he has fully complied with the OSC.

4.    Rather than me burden the Court with a repetitive factual submission, I respectfully incorporate the facts set forth in my initial moving Affidavit ("Initial Aff.") and Verified Complaint in this matter filed on June 9, 2017, and which are listed on the Docket Report for this matter as entries 1 and 4, respectively. These documents set forth in detail the relevant factual history and the causes of action resulting from Defendants' conduct, and which were the basis for this Court's entry of the OSC.

5.    At the time of Defendant Gitman's conduct complained of herein, and which

forms the basis for this present application, I ask this Court to note that Gitman had full

knowledge of this Court's entry of the OSC. I believe this weighs heavily to demonstrate the

willfulness of Defendant Gitman's actions and his disregard for this Court's authority and his

duties to Plaintiffs. Two separate attorneys representing Defendant Gitman also participated in

the telephone hearing with this Court when the Court determined to enter the OSC, and further

received notification and a copy of the OSC on the date of entry.

**GITMAN HAS FAILED TO REDEPOSIT THE MONEY HE UNLAWFULLY AND
UNILATERALLY WITHDREW FROM PLAINTIFF CSV'S BANK ACCOUNT IN
VIOLATION OF PARAGRAPH (b) OF THE OSC**

6.    Paragraph (b) of the OSC requires:

> Defendant Gitman to redeposit into the CSV [Plaintiff Channel Square Ventures]
> Bank of America banking account all monies withdrawn by him and pay any
> overdraft fees incurred since May 27th, 2017, the date on which he withdrew the
> company's funds, no later than 5:00 p.m. on Tuesday, June 13, 2013;

[**Exhibit B**]

7.    As set forth in my Initial Affidavit, and without my knowledge or authorization,

on May 27, 2017, Defendant Gitman drained and siphoned Plaintiff CSV's Bank of America

bank account ("BoA Account") of $73,982.53 in two separate withdrawals of $50,000.00 and

$23,982.53 which cleared on May 30, 2017 (**Exhibit C**).

8.    Defendant Gitman left the CSV banking account with no money to pay its

obligations, including auto debits. As a result, charges hit the BoA Account with insufficient

funds. This caused overdraft charges in the amount of $89.22. **Exhibit C**.

9.    After being served with the OSC requiring him to replace the money he

unlawfully withdrew, Defendant Gitman, by way of bank transfer on June 13, 2017, deposited

the sum of $68,669.53 to the BoA Account. **Exhibit C**.  However, as set forth below, he has not

paid the remaining balance due of $5,312.47 or satisfied the bank fees caused by his actions.

10.   On June 13, 2017, Defendant Gitman wired an additional $5,373.00 to the BoA

Account, but then improperly transferred from the BoA Account the sum of $5,060.00 via wire

transfer to Defendant Gitman's company, Defendant Dalva Ventures, which company is also

subject to the restraints in the OSC. **Exhibit C**. This transfer to Defendant Dalva Ventures

constitutes a separate violation of paragraph (a) of the OSC.

11. Paragraph (a) of the OSC provides:

> Restraining and enjoining Defendants Gitman, Dalva Ventures, [Accel] and/or
> Channel Reply, Inc., their owners, members, officers, directors, managers,
> employees, subcontractors, agents, transferees and representatives, from
> misappropriating and/or otherwise <u>withdrawing</u> funds belonging to CSV, NDAP
> and/or Plaintiff ChannelReply from Plaintiffs' banking accounts and/or from any of
> Plaintiff's payment or subscription portals, including but not limited to Stripe,
> Chargebee, PayPal, Amazon, eBay and/or from any other location electronic or
> otherwise; (Emphasis Added)
>
> [Exhibit A]

12. On June 13, 2017, Gitman filed a sworn Certification with this Court contending he

has complied with the OSC and stating in relevant part as follows:

> "   6.   I further understand that the Court has directed me to redeposit into the CSV
> Bank of America banking account all monies recently withdrawn by me from this
> account and to pay any overdraft fees incurred since May 27th, 2017…
>
>     7.   I have transferred to the CSV Bank of America banking account all monies
> withdrawn by me from this account since May 27, 2017."
>
> [Exhibit P]

13.   Defendant Gitman is intentionally using his words loosely with this Court by stating

that he has "transferred" all monies withdrawn by him from the BoA Account, when he knows he withdrew $5,060.00 thereafter and did not comply with the OSC. This Court ordered Gitman to redeposit the funds he unlawfully took under paragraph (b) of the OSC and then restrained Gitman and Dalva from withdrawing those funds under paragraph (a) of the OSC. This type of conduct is indicative of the reason I was forced to bring the OSC in the first instance.

14.     Gitman has knowingly misrepresented to this Court on this issue.

15.     Thereafter, after Gitman filed his Certification on June 13, 2017, and represented to the Court that he is in full compliance with the OSC, on or about June 15, 2017, Gitman then deposited the sum of $10,560.00 into the BoA Account. He did this presumably because he knew that he had violated the OSC which required the deposit of the funds two days earlier and that his $5,060 transfer to Defendant Dalva was yet another violation. **Exhibit C**.

16.     However, on that same day, June 15, 2017, Gitman, again in violation of paragraph (a) of the OSC, withdrew the sum of $5,775.00 from the BoA Account to pay a third party by the name of "upcounsel.com." **Exhibit C**.

17.     I looked up UpCounsel which is an interactive online service for people and businesses to find and hire legal counsel. Upon information and belief, UpCounsel's clients pay UpCounsel directly and then UpCounsel pays the attorney who performs the service when invoiced. As Mr. Farooq is Gitman's attorney, we are investigating whether the payment was made to UpCounsel in order to avoid detection that a payment was being made to Mr. Farooq. Upon information and belief, Mr. Farooq is the attorney who helped form Defendant, Channel Reply, Inc. for Defendant Gitman.

18.     Gitman's current counsel, Umar Farooq, Esq., is currently advertising his services on upcounsel.com. **Exhibit D**.

19. Whether Gitman withdrew the $5,775.00 to pay Umar Farooq, Esq. is presently unknown, but is currently being investigated, as is the purpose of the payment. **Exhibit C**.

20. Regardless of whether Gitman is using Plaintiff Companies' funds to pay for his own personal legal representation, or paying Mr. Farooq for his unauthorized representation of NDAP in its pending sale is of no moment. Gitman's withdrawal of any funds from the BoA Account is prohibited and a direct violation of paragraph (a) of the OSC and his certification to this Court claiming compliance with the OSC is false in this regard.

21. As part of the OSC, as explained below, Defendant Gitman was also required to restore me with immediate and complete access to the Stripe and PayPal accounts, among others, by the end of business Friday, June 9, 2017. That access will allow me to track payments due the Plaintiff Companies, and Defendant Gitman has not done that either in violation of the OSC, paragraph (g).

22. Because I am currently, and have since May 27, 2017, been locked out of the Stripe, PayPal and other accounts of Plaintiffs which reflect payments made by customers using the ChannelReply software, I am unable to determine where the Plaintiff Companies' receivables are located, and whether they have been misappropriated by Defendant Gitman and/or the other Defendants. As a result of Gitman's breach of the OSC in willfully failing to restore my access, I am in the dark on any aspect of the finances of Plaintiff Companies and whether other monies have been misappropriated in violation of paragraph (a) of the OSC.

**DEFENDANT GITMAN HAS FAILED TO RESTORE MY ACCESS TO PLAINTIFF COMPANIES' ELECTRONIC ACCOUNTS IN VIOLATION OF PARAGRAPH (g) OF THE OSC, AND HAS INTERFERED WITH MY ACCESS TO COMMUNICATE WITH PLAINTIFF COMPANIES' EMPLOYEES**

23. Paragraph "g" of the OSC imposed the following temporary restraint against Defendant Gitman:

6

Directing Defendant Gitman to immediately provide and restore Plaintiff Michael Dardashtian with full and complete access to all NDAP, CSV and ChannelReply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, email accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV and ChannelReply, including all twenty-two (22) accounts listed in Exhibit 58 to the Affidavit of Michael Dardashtian in support of the OSC, <u>by no later than 5:00 p.m. on June 9, 2017</u>".

24.     For the Court's convenience, I have attached Exhibit 58 to my Initial Aff.

hereto as **Exhibit E** setting forth the numerous accounts in which Defendant Gitman terminated

my access.

25.     On June 9, 2017, via correspondence through counsel at 8:25 p.m., approximately

three (3) hours <u>after</u> my full access to all accounts was to be completely restored by Defendant

Gitman, I still did not have access to the following eleven (11) accounts, most of which relate to

ChannelReply, the very reason why I obtained the OSC in the first place:

a.  The ChannelReply email;
b.  The Chargebee Account;
c.  The Stripe Account;
d.  The PayPal Account;
e.  The Upwork Account (there was one account and user name was NDAP, I do not have access to that account. Gitman created new limited accounts and locked me out of others);
f.  The Zendesk Accounts (Gitman gave me access to Zendesk through my CSV email and not my email for Channel Reply);
g.  The Slack Account;
h.  The Amazon Account(s) (the Amazon Web Services accounts, NDAP & Channel Reply are empty);
i.  The Magento NDAP Account;
j.  The GoDaddy Account (Gitman denied me access to our parent master admin account, userlogin NDAP, he created out new separate accounts and removed Channel Reply); and
k.   The Channel Reply Github Account.

[**Exhibit E**].

26.     Further, at 8:25 p.m. on June 9, 2017, Defendant Gitman's counsel, Umar Farooq,

Esq., sent an Excel Spreadsheet, representing Defendant Gitman's "itemized status report of [Defendant Gitman's] alleged *compliance* with paragraph (g) of the OSC (hereinafter referred to as "Gitman's Excel Spreadsheet") (emphasis added). **Exhibit G**.

27.    However, Gitman's Excel Spreadsheet only confirms that Defendant Gitman further violated the OSC by removing/deleting my email at channelreply.com, thereby intentionally precluding me from having any access to Plaintiff ChannelReply's Google account ("G-Suite") and the eleven (11) accounts associated therewith (identified above). **Exhibit G**.

28.    Indeed, contained within Gitman's Excel Spreadsheet under the headline "notes," it states that Plaintiffs' "channelreply.com was moved by [Defendant Gitman] to [Defendant], Channel Reply Inc.'s G Suite account. This account no longer exists." **Exhibit G** at p. 5.

29.    Incredulously, Defendant Gitman seeks to rely upon his intentional deletion or transfer of the channelreply.com email account which violates Paragraph (h) of the OSC (see below), as an excuse not to immediately restore the michael@channelreply.com email account as he was ordered to do by this Court in accordance with the OSC. As set forth below, the restoration of access to the channelreply.com email account would provide me with immediate access to the multiple accounts as mandated by the OSC, and conversely, by keeping me locked out of the channelreply.com email account prevents me from having access to most of these accounts.

30.    In other words, Defendant Gitman simply deleted my electronic email account rather than restore my full-access. This is exactly the type of conduct that the OSC sought to protect against. Defendant Gitman is playing a game with Plaintiffs and this Court.

31.    Defendant Gitman cannot relieve himself from the obligations imposed upon him

by virtue of the OSC by taking deliberate actions to delete accounts in violation of the OSC, and then state that "the account no longer exists," as a basis not to restore my access. This behavior is reprehensible and must be sanctioned by this Court.

32.    When Defendant Gitman failed to restore my access to all accounts as required under the OSC, I investigated the truthfulness of his representation that the channelreply.com "account no longer exists."

33.    Despite Defendant Gitman's misrepresentations to the contrary, it does exist. **Exhibit F** and **Exhibit H**.

34.    Specifically, as a test, after June 9, 2017, when I should have been restored with complete access under the OSC, I tried to log in to Michael@channelreply.com but received a message that Google "couldn't find" my Michael@channelreply.com account. **Exhibit F at p. 1)**.

35.    However, when I input Defendant Gitman at David@channelreply.com, and Plaintiff ChannelReply' developers (and co-Defendants) at Konstantyn@channelreply.com and Aleksey@channelreply.com, there was no "couldn't find" message. **Exhibit H**.

36.    Accordingly, David@channelreply.com, Konstantyn@channelreply.com and Aleksey@channelreply.com are all recognized email accounts, but my email account, Michael@channelreply.com is not.

37.    If Defendant Gitman, or the Plaintiff Companies' developers at Gitman's direction, deleted my channelreply.com business email account, Michael@channelreply.com which it appears has been done, this means that any customers, vendors, employees or business associates who try to email me will get a bounce back which is essentially an error email message stating something in the vein of that my email address no longer exists. This means that, from the time

that Defendant Gitman or the other Defendants deleted my Michael@channelreply.com email address through the present, all business emails being sent to me are gone forever and I will never receive them or be able to recover them. This could and may have already ruined my business relationships because I cannot respond to or even know when someone is emailing me or what they are emailing me about. Additionally, evidence of Defendants' bad conduct will be lost forever.

38. My Michael@channelreply.com email account needs to be immediately restored and Defendant Gitman needs to be immediately removed in all respects from the Plaintiff's businesses and sanctioned by this Court to deter this type of conduct from occurring any longer.

39.   The channelreply.com email account cannot "no longer exist(s)," unless it was deleted or transferred by Defendant Gitman as he and the Plaintiff Companies' developers are the only ones who had access to make such a change, and the Plaintiff Companies' developers are taking direction from Defendant Gitman. Further, notwithstanding Defendant Gitman's baseless excuse that the channelreply.com email account no longer exists, Defendant Gitman still had and has a court-ordered obligation pursuant to the OSC to immediately *restore* my access to it, and he has outright refused to do so and given the Court an untruthful statement intentionally circumventing the truth.

40.   Gitman, in his sworn Certification to this Court claiming compliance stated as follows:

> 4.   I further understand that the Court has directed me to '[i]mmediately provide and restore Plaintiffs Michael Dardashtian with full and complete access to all NDAP, CSV, and Channel Reply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, e-mail accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV, and Channel Reply, including all twenty-two (22) accounts listed on Exhibit 58 to the Affidavit of Michael Dardashtian in support of the OSC.

> 5.   I have provided Mr. Dardashtian with full and complete access to all existing NDAP, CSV and Channel Reply electronic accounts <u>which are owned and/or paid for</u> by Mr. Dardashtian and/or the plaintiff entities, <u>which I have knowledge of and access to</u>. Mr. Dardashtian may have access to other accounts which I am not aware of and which I do not have access to. (Emphasis added)

**[Exhibit P].**

41.   Again, Gitman is intentionally qualifying his statement to the Court in an effort to mislead by referencing accounts "which are owned and/or paid for by Mr. Dardashtian and/or the plaintiff entities" or accounts which Gitman has "knowledge of and access to." Clearly, Gitman transferred these accounts unlawfully to Channel Reply, Inc. and is willfully refusing to abide by this Court's order and to return such accounts and to restore my access to same. As is clear from a review of paragraph (g) of the OSC, Gitman's misleading "qualifications" set forth in his false Certification are nowhere to be found.

42.   To properly restore the channelreply.com email account, Defendant Gitman was simply required to transfer channelreply.com from Channel Reply Inc.'s G Suite back to NDAP-LLC.Com's G Suite, where the channelreply.com email account lived prior to him unlawfully moving it. He has not done so, despite the Orders of the Court and despite his absolute knowledge on how to return the email account and restore my access. I ask the Court to sanction Gitman for his deliberate non-compliance and to return the channelreply.com email account as requested above.

43.   If the channelreply.com account no longer exists as he falsely claims, Defendant Gitman continues to have an obligation to immediately *restore* such account and provide me with immediate access to it.

44.   Defendant Gitman deliberate refusal to restore or provide me with any ability to

access ChannelReply's emails and communications from clients and customers all in violation of

the OSC is denying me from pivotal accounts related to ChannelReply, which is the proprietary,

confidential and trade secret software that is the subject of this litigation

45.  As of this date, only Defendant Gitman, and Plaintiff Companies' developers at

Defendant Gitman's direction, have access to the channelreply.com email account through his

unlawful transfer of Plaintiff's proprietary data to Defendant, Channel Reply Inc.'s G Suite; and

has provided himself with sole exclusive access to communicate with Plaintiff Channel Reply's

clients, customers and employees.

46   Indeed, Defendant Gitman has completely precluded me from having <u>any</u>

communication with the Plaintiff Companies' developers, and further instructed them to block

my calls, which is in a further effort to unfairly compete with Plaintiff Companies in direct

violation of the OSC.

47   On the very same day that Defendant Gitman received and read the Verified

Complaint and June 8 OSC application, he "strongly recommended" to CSV's lead software

engineer/developer, Defendant, Konstantyn Bagaev to "block" me when I tried to communicate

with him. **Exhibit I**. Upon information and belief, this communication by Gitman took place

while all counsel were before Judge Ramos on June 8, 2017.

48   Since the entry of the OSC, Defendant Gitman has succeeded in making matters

irreparably worse, and completely isolated both of Plaintiff ChannelReply's critical and essential

developers, who developed Plaintiffs' ChannelReply code, and who have operated Plaintiffs'

service of ChannelReply, from me so that I cannot manage Plaintiff Companies or participate in

their operations. Gitman is literally seeking to steal ChannelReply and its developers, and

transfer the technology and software to Defendant, Channel Reply, Inc.

49      Defendant, Bagaev has since removed me from Skype, an instant messaging service that provides online text and video chat services. **Exhibit J**.

50      I unquestionably believe that this action was at the direction of Defendant Gitman, due to his past requests for Defendant Bagaev not to communicate with me and to "block" me. **Exhibit I**.

51.     On Friday, June 9, 2017, after the June 8 OSC was entered, I communicated with Defendant Bagaev on a Skype chat, and I was removed from Skype immediately *after* that conversation occurred. **Exhibit J, p. 2**.

52      As set forth in my Initial Affidavit, Defendant Gitman also revoked my access to Slack, a messaging service that I traditionally used to communicate with Plaintiff Companies' developers who are located abroad. (**See Initial Aff. ¶¶ 84 and 88**).

53      As a result, the only mechanism for me to communicate with Defendant Bagaev was via "Skype." With my removal from Skype, I can no longer communicate in real time with my and Plaintiff Companies' developers. This was Gitman's intention in order to distance me from Plaintiffs' developers to attempt to lure them to leave Plaintiffs and provide Plaintiffs' confidential information to Defendant Channel Reply, Inc.

54      I also now have no way of knowing whether Defendant Gitman is *still* offering Defendant Bagaev gifts, promises and monies from Payoneer, an online money transfer service, or from Defendant Channel Reply, Inc.'s bank account with Chase (as I have seen him do via TimeDoctor, which I now have no access to either, as Defendant Gitman has terminated my access to that also as explained below) to incentivize Defendant Bagaev to support him in this matter. (see June 1, 2017 and June 2, 2017 screenshots annexed hereto as **Exhibit K** at pp.1-2)

55.     The evidence presented in my Initial Affidavit shows that Defendant Bagaev was asked by Defendant Gitman to sign a new employment agreement, told he would be a co-founder of Defendant Gitman's new competing company, Channel Reply, Inc. and offered stock options, along with Plaintiff Companies' other developer, Glukharev. **(See Initial Aff; Exhibit ___)**

56      Even after the entry of the OSC, in order to further his plan to steal the trade secrets and intellectual property owned by Plaintiff Companies, Defendant Gitman is continuing his pursuit of locking me out of the business accounts and operations of Plaintiff Companies, which is continuing to cause me and the Plaintiff Companies the same irreparable harm that was found by this Court when it entered the OSC.

57      On June 14, 2017, when my attorneys were in Court seeking permission to file this order to show cause and contempt application, I was told that Defendant Gitman was directed to personally appear in Court that day, but was in Russia, and unavailable to appear. Obviously, he is at this moment meeting with Plaintiffs' developers in order to attempt to solicit their cooperation to facilitate the misappropriation of Plaintiffs' intellectual property, trade secrets and confidential information. In fact, Defendant sent Plaintiff Companies' developers proof of his travel plans to meet them starting on June 12 for several days thereafter and in communications captured via TimeDoctor, Defendant Gitman discussed using a Fabrika workspace in the Ukraine to conduct business with Plaintiff Companies' developers. (I am told that Judge Ramos on June 8, 2017 indicated that Defendant Gitman proceeded at his "peril" if he chose to travel to Russia or elsewhere to meet the Plaintiffs' developers and undertook any action which was violative of the OSC and/or damaging to the Plaintiffs).

58      Absent Defendant Gitman and Defendant Channel Reply, Inc.'s compliance with

the restraints in the OSC, they will have unfettered access and control over Plaintiffs'

channelreply.com email accounts and will have the ability to exclusively control, destroy and

otherwise affect Plaintiff Companies and Channel Reply's accounts and business operations to

my exclusion, while simultaneously misappropriating the confidential and proprietary property

of Plaintiff Companies for the benefit of Gitman's newly-formed competing business, Defendant

Channel Reply, Inc.

**Issues With Gitman's Transfer of Plaintiff Companies G-Suite Account to Defendant
Channel Reply, Inc. and Need To Remove Gitman From Having Administrative Control
Over Accounts**

59  The owner of the Plaintiff Companies' G Suite Account is NDAP-LLC.com. When I

logged into G-Suite, before Gitman transferred the G Suite account to his new Defendant

Channel Reply Inc.,  I was able to access the following domain companies owned by CSV:

  a.  Carpartkings.com

  b.  Plumburs.com

  c.  Coopersquareventures.com

  d.  Coopersquare.ventures

  e.  Channelreply.com

60   I could send emails from channelreply.com using my email address at

Michael@channelreply.com.

61   When the Plaintiff Companies' G Suite existed prior to Gitman's theft, I was able to

choose from a drop down menu which company [(a) through (e) above] that I wanted to send an

email from, including channelreply.com.

62   Since Gitman transferred the G Suite Account to Channel Reply Inc., I no longer have

such capabilities.

63   When I log in to the G Suite Account today, channelreply.com is no longer an available option. Only [(a) through (d) above] are available choices.

64   Michael@channelreply.com was deleted by Gitman. Therefore, anyone who tries to email me, customers, clients, etc., the email will get bounced back. Any emails that I received from customers, vendors or business associates from the time Gitman deleted Michael@channelreply.com through the present are gone forever and I will never have the benefit of retrieving them or presenting them to this Court.

65   Now, Gitman has misappropriated the channelreply.com email and G Suite and transferred same to Defendant Channel Reply, Inc.

66   Defendant Channel Reply, Inc.'s G Suite contains only David@channelreply.com, Konstantyn@channelreply.com and Aleksy@channelreply.com. Michael@channelreply.com does not exist as an option at the Channel Reply, Inc. G Suite.

67   As stated above, Gitman has refused to comply with the OSC and restore channelreply.com and transfer channelreply.com back into NDAP-LLC's G Suite where it formerly was so that I have access as I did since we developed the ChannelReply software solution. I am seeking that the Court order Gitman to transfer channelreply.com back into NDAP-LLC's G Suite and to provide me with all emails sent to my Michael@channelreply.com email account from May 27, 2017 through the present, including those emails that Gitman received before deleting my email address.

68   While Gitman falsely claims to this Court that he cannot do so because the "account no longer exists," he could have and can do so easily, and should have completely restored the G Suite account back to NDAP-LLC.com, but he has deliberately refused.

69   Likewise, with regards to the Plaintiff Companies' GoDaddy account, before

Gitman stole it, the owner of the Master Account was Plaintiff, NDAP. When you log in you see all domains owned by Plaintiff, CSV.

70   Now, because of Gitman's misappropriation, I am locked out of the NDAP Master Account. When I try and log in, I have to go through a two-step verification process. However, when I do, the verification sends a text to Gitman's phone as Gitman is the current administrator of the Master Account. Therefore, I require Gitman's phone every time I want to log in to my own account with GoDaddy.

71   Gitman created separate subaccount logins and he gave me the login on GoDaddy only for the "Cooper Square Ventures", "Plumburs" and "NDAP-LLC" accounts and not for "ChannelReply".

72   I am asking the Court to order Gitman to put all GoDaddy subaccounts back into the Master NDAP Account and to give me the login for the Master NDAP Account so I can see all accounts, including ChannelReply when I log in as I was able to do before he stole it. If Gitman moved ChannelReply out of the Master NDAP Account, I am asking the Court to order that Gitman return same back into the Master NDAP Account.

73   Gitman's alleged *effort* to comply with the OSC is non-existent. Gitman merely created separate "subaccount" logins for the above accounts with the exception of channelreply.com which he continues to prevent me from accessing in clear violation of paragraph (g) of the OSC.

74   The fact that he has not done so and claims he is excused from such an obligation because he deleted michael@channelreply.com is a fabrication to this Court and inexcusable. He could have already transferred and restored the G Suite account from Defendant Channel Reply,

Inc. to NDAP-LLC.COM, and could have already provided me with the same account access as he, and the same capabilities that I had before he improperly made the transfer.

75   Gitman's intentional interference with my ability to access channelreply.com impacts my ability to log in to my other remaining accounts as identified in Exhibit 58 of my affidavit in support of the June 8 OSC.

76   For me to be able to access all of my other accounts, I need Gitman to restore channelreply.com to NDAP-LLC.com's G Suite Account, and also restore my email Michael@channelreply.com. Then, I will be able to login to the remaining accounts of which I am currently locked out. **Exhibit E**.

77   I am asking the Court to sanction Gitman and fine him to compel him to make the above transfers and to completely restore my access to the above accounts, and to order Gitman to provide me with all passwords to all accounts so that I can access same. If Gitman changed the passwords, I am asking the Court to order Gitman to reset all passwords so that I am provided with complete access. I am also asking the Court to direct Gitman to reverse any changes made to any accounts and restore all accounts to their condition prior to him locking me out on May 27, 2017. Gitman has not only locked me out of accounts but has moved accounts, created subaccounts, and altered the content in accounts. I ask the Court to direct him once again to restore everything to the way it was, as already directed in the June 8 OSC.

78   Based on Gitman's bold refusal and delay in providing me with the ability to access channelreply.com, while Gitman is simultaneously operating Defendant Channel Reply, Inc. and travelling to Russia to conspire with the Plaintiff Companies' developers, I am extremely concerned with Gitman continuing to have the administrative control where he has the ability to terminate my account(s) and/or change the content of the Company accounts in the future.

79  I ask that the Court appoint a neutral administrator to handle all of these accounts, once I am fully restored, so that neither Gitman nor I can control one's access to the Plaintiff Companies' accounts, and to avoid the potential for Gitman to repeat this bad conduct in the future.

**80**  I respectfully propose Joel Liebman as the neutral administrator to handle all accounts.

## GITMAN HAS CONTINUED TO DESTROY CONFIDENTIAL AND PROPRIETARY INFORMATION BELONGING TO PLAINTIFF COMPANIES

81      Paragraph "h" of the OSC imposed the following temporary restraint against Defendant Gitman:

"h.      Restraining and enjoining Defendants Gitman, Accel, Dalva Ventures, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from utilizing, sharing, selling, transferring, backing up, **destroying, altering**, wasting, **terminating, discontinuing**, building upon or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers, Konstantyn Bagaiev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP."

[Exhibit A, emphasis added]

82      In addition to my channelreply.com email account, as set forth above, Gitman has destroyed, altered, terminated and/or otherwise discontinued Plaintiff Companies' TimeDoctor electronic files/software.

83      As set forth in my Initial Affidavit in support of the June 8 OSC, TimeDoctor is an employee time-tracking software that tracks employees' work time and projects. The Time Doctor software enables Plaintiffs to take screenshots of what Plaintiffs and Plaintiffs employees are working on for Plaintiffs review.

84      Considering the sensitivity of the work performed by Plaintiff Companies in the

electronic commerce industry and my expectation and desire that Plaintiff Companies' software and information remain confidential and not disclosed to unauthorized third-parties, each of our employees and consultants are required to install the TimeDoctor software on their computers providing me and Gitman permission to monitor their time and work product.

85     The software takes "screenshots" every 9 minutes of their computer screens for either of us to review, to track their work and time.

86     Both of the Plaintiffs Companies' developers, Konstantyn Bagaev and Olesksii Glukharev have both been using TimeDoctor daily for at least the past two years.

87     The TimeDoctor software enabled me to view screenshots evidencing Defendant Gitman's communications with the Plaintiff Companies' developers, which revealed Defendant Gitman's attempts to convert the Plaintiff Companies' property and confidential data and revenue to his own exclusive use through Defendant Channel Reply, Inc.  **Exhibit K.**

88     Illustrative of Gitman's complete disregard of his Court-ordered obligations, after the entry of the OSC, I logged on to TimeDoctor on June 9, 2017, only to see that both of the Plaintiff Companies' developers had been completely <u>removed</u> from the TimeDoctor software, and their respective accounts were <u>deleted</u> by Defendant Gitman.  **Exhibit L**.

89     It was in my Initial Affidavit that I revealed that the only account Gitman forgot to terminate my access from was TimeDoctor and that is where I was able to secure the information to evidence his fraudulent actions. Once he read my Initial Affidavit, and my attorneys were able to produce for Judge Ramos at the June 8, 2017 hearing a TimeDoctor screenshot of Gitman advising Bagaev that he could not understand how I knew the details of his fraud, and further advising Bagaev to "block" me, he then, after the June 8 hearing, removed and deleted the Plaintiff Companies' developers from TimeDoctor. Now, I have no access

whatsoever to view their work or handling of sensitive Company Information and codes. With the exception of the screenshots that were included in my Initial Affidavit in support of the June 8 OSC, all other screenshots in the TimeDoctor application have been destroyed by Defendant Gitman. Such malicious conduct only further establishes Defendant Gitman's motives and his willful violation of the June 8 OSC.

90      Gitman's actions have the intended effect of me not being able to monitor Plaintiff Companies' developers' communications as it relates to Plaintiffs' Companies, as has been the course of conduct for over 2 years.

91      Moreover, by deleting the Plaintiff Companies' developers from the Time Doctor software in further violation of paragraph (h) of the OSC, Defendant Gitman has purged the Plaintiff Companies' TimeDoctor account of all employee data, including all a) evidence of the conversations between Defendant Gitman and the Plaintiff Companies' developers, and b) more importantly, the software-monitored work performed by employees and consultants since the inception of the Plaintiff Companies.

92      Such malicious acts have caused Plaintiff Companies damages as employee data has been deliberately destroyed. I am unsure whether all data on TimeDoctor has been destroyed, but I know data has been destroyed or otherwise removed by Gitman.

93      On June 10, 2017, after seeing that information on TimeDoctor had been deleted by Gitman, I immediately contacted the Chief Productivity Officer of TimeDoctor, and sought to retrieve the deleted files and to obtain the IP address of the person(s) that deleted such files. **Exhibit M**.

94      Defendant Gitman serves as the Master Administrator for TimeDoctor and is the

<u>only</u> person with access to remove the files and to retrieve them. See TimeDoctor's correspondence to me at **Exhibit M**.

95      On June 11, 2017, I received correspondence from TimeDoctor stating that TimeDoctor can "recover the information" and will provide the IP address of the person(s) who removed or deleted the file, and will attempt to recover the information, but only with a court order. **Exhibit M**.

96      Gitman's intent in this regard is certainly obvious: By removing my and Plaintiffs' employees and consultants from the TimeDoctor software, I <u>cannot</u> monitor their work product and communications, allowing Defendant Gitman to now communicate directly with the Plaintiffs' Companies' developers to solicit and induce them to compete with me and Plaintiff Companies, in secrecy.

97      Accordingly, such actions are not only in violation of Paragraph (h) of the OSC, but also in violation of the restraints set forth in paragraph (f) of the OSC.

98      For these reasons, I respectfully request a Court order directing Gitman to turn over and assign his Master Administrator status with TimeDoctor to me so that I may obtain the foregoing information from TimeDoctor, as the removed and deleted files must be recovered for the purposes of recovering business records belonging to Plaintiff Companies, and for purposes of this litigation. The recovery of the IP Address of the person(s) who removed and/or deleted such files will further reveal the identity of the person(s) who violated the OSC and interfered with Plaintiff Companies' business operations.

**DENTON'S LETTER DATED JUNE 14, 2017**

99      Gitman has now retained Dentons to represent him, Dalva and Channel Reply, Inc. in the within action.

100    Denton's filed a letter dated June 14, 2017 in response to Plaintiffs' June 13, 2017 letter seeking permission to seek an emergent hearing and to hold Gitman in contempt for his numerous violations of the OSC.

101    Denton's letter seeks to oppose my and Plaintiff Companies' request for emergent relief and contends that Defendants "have fully complied with the TRO" and restored me with access to all account owned by Plaintiffs.

102    In Denton's letter, Defendant Gitman brazenly admits to violating the OSC by claiming that I am not entitled to access the accounts that are in the possession of Defendant Channel Reply, Inc. despite this Court's OSC. Denton goes on to say that these are "new accounts" of Defendant Channel Reply, Inc., "and, as such, there is nothing to restore."

103    In support of the June 8 OSC, Plaintiffs provided ample evidence, including admissions by Defendant Gitman, showing that Defendant Channel Reply Inc. is a recently formed entity improperly and unlawfully housing CSV, NDAP and ChannelReply's long-time company- owned accounts including the email accounts of its employees and its Google Domain account related to channelreply.com. Defendants' admissions include Defendant Gitman telling Plaintiff Companies' developer Oleksii Glukharev, "I'm moving ChannelReply email to a dedicated G Suite account. You should have received an email in your personal inbox with the new account. Can you give me your old password so I can migrate your email." Defendant Gitman goes on to say, "I reset your ndap password…to kick off the migration of your emails to CR's new G Suite account." (I previously submitted this screenshot in support of my Initial Order to Show Cause at **Exhibit 53**).

104    Defendants' position that his newly created company, formed approximately five years after Plaintiffs created and began using the software solution "ChannelReply", and which

infringes upon Plaintiff's name itself, somehow provides Defendant with an independent right to steal the Plaintiff Companies' confidential, proprietary and trade secret information, is unfounded.

105     Defendant Gitman in his counsel's letter to your Honor falsely states to this Court that he has complied with Paragraph (g) of the OSC and "restored my access to all accounts owned by NDAP, LLC Cooper Square Ventures and ChannelReply." I have shown that I cannot access most all accounts related to ChannelReply, which accounts were owned by NDAP and CSV, as well as other accounts listed in Exhibit 58.

106     In violation of Paragraph (f) of the OSC, which restrains and enjoins Defendants Gitman and Channel Reply, Inc. from "accessing...transferring and/or using in any manner Plaintiff CSV and Plaintiff ChannelReply's Company Confidential Information" including "email addresses...intellectual property, confidential information and trade secrets for any reason," Defendant Gitman asserts in his counsel's letter to the Court that his new company Channel Reply Inc., now owns the confidential and proprietary Company Confidential Information formerly belonging to CSV, NDAP and ChannelReply, including its employee email addresses and intellectual property.

107     By transferring Plaintiff Companies CSV, NDAP and ChannelReply's Google domain email accounts to Defendant Channel Reply, Inc., and deleting my email address related to the same, specifically Michael@channelreply.com, Defendants Gitman and Channel Reply, Inc. have further violated Paragraph (k) of the OSC restraining them from "misappropriating Plaintiff Michael Dardashtian's identity, including but not limited to his business identity, his emails..." **Exhibit A**.

108     Counsel for Gitman appears to argue to this Court that because Gitman unlawfully

created a new company account [Defendant Channel Reply, Inc.] and then used it to convert and misappropriate Plaintiff Companies' accounts and Confidential and proprietary information, that somehow Defendants now owns this confidential information despite the Court directing him to return it. It appears that Defendant Gitman did not comply with the Court's OSC simply because he disagrees with it.

109     Defendant Gitman further claims that Defendant Channel Reply, Inc's accounts are "new" despite evidence showing that he unlawfully transferred ChannelReply's email accounts and confidential information over to his new G Suite. Perhaps his unlawful G Suite for Channel Reply Inc. is "new," but its contents are the sole and proprietary property of Plaintiff Companies. Additionally, Defendants' creation of a "new" account should not result in the deletion and extrication of Plaintiff Companies' accounts from their G Suite. **Exhibit G**.

110     In counsel's letter to your Honor, Defendant Gitman claims that the NDAP and CSV accounts are listed as assets to be transferred in connection with an asset purchase agreement with respect to Buy Auto Parts. This blanket statement incorporates a host of falsehoods. Certain accounts related to NDAP were scheduled to be transferred in connection with this proposed transaction which has not yet been consummated, however, this did <u>not</u> include accounts related to ChannelReply which is a different service owned and operated by CSV and has nothing to do with the anticipated BAP purchase.

111     I am unable to access most all accounts related to ChannelReply, which have no relevance or inclusion in the BAP deal, as well as other Plaintiff Companies' accounts. As the name would imply, Defendant Gitman's new Channel Reply Inc. still unlawfully holds some of these Channel Reply accounts, unrelated to the BAP deal, and in violation of the OSC.

112     In the alternative, the BAP asset purchase has not occurred due to Defendant Gitman's actions, and any accounts that were scheduled to transfer as part of that deal, still belong to NDAP and CSV and would need to be in the possession of NDAP and CSV in order to complete the terms of the asset purchase agreement. Thus, in order to consummate this purchase, these accounts must be returned immediately. Defendant Gitman appears to be arguing that since the asset purchase agreement anticipated the future transfer of a few NDAP-owned accounts to BAP, that he himself may claim sole ownership of those accounts as well as the ChannelReply accounts that were not even going to be a part of the BAP sale, and that he may also lock me out of all such accounts. This argument defies logic. Defendant Gitman states that "these accounts were in the process of separating from NDAP and CSV for many months," however, NDAP and CSV still own these accounts as no BAP deal has been signed by me because of Gitman's conduct. Defendant Gitman is frustrating the sale of company assets and the BAP deal by willfully violating this Court's orders. I will assert a damage claim against him if we lose the transaction.

113     In the Exhibit that Defendant Gitman attaches to support his irrelevant argument that certain accounts were scheduled to be sold, he references the future transfer of an Upwork account, which again has not taken place. This Upwork account is just one of the 22 accounts that Defendant Gitman was ordered to return to me and the Plaintiff Companies. I am still locked out of, or only have limited access to, just about half of the accounts that the Court ordered Defendant Gitman to restore. Defendant Gitman's Exhibit is from a conversation that took place on Slack, a messaging service, which I have been locked out of. This Exhibit only supports my claim that I used to have access to Slack to discuss company business. Defendant Gitman's Exhibit also does not show that I was aware of the transfer of the Upwork account.

26

114   Counsel for Gitman contends that TimeDoctor is a "payroll" software and "has never been used for sensitivity, secrecy or confidentiality." Again, Defendant Gitman misleads this Court. TimeDoctor states on its own website that "payroll" is just one of a multitude of its features, which also include time tracking, screenshots, chat monitoring, web and app usage, clients feature, powerful reports, payment integrations and flexibility for tracking employees time and work. It bills itself as a way to "get insights into exactly what is going on with your business" and its software aims to "dramatically improve the productivity of teams...help improve business processes by analyzing exactly where time is spent" and "help companies to be able to manage remote workers just as if they were in the same office, maintaining a high level of productivity when working remotely." **Exhibit Q.**

115   CSV and NDAP utilized TimeDoctor to accomplish all of the above, primarily as a productivity and employee-monitoring tool, customer relationship management tool and to manage Plaintiffs developers, Bagaev and Glukharev, who are working remotely abroad and handling sensitive and confidential codes and information. Defendant Gitman contends in his counsel's letter to the Court, that he "has not destroyed any evidence." Plaintiffs respond by saying that not only did Gitman destroy evidence submitted to this Court, which fortunately I was able to secure from TimeDoctor and present to this Court before TimeDoctor was deleted by Gitman, but Defendant Gitman also destroyed valuable company data belonging to Plaintiffs. This data contained substantial employee work product, including information related to the development of Plaintiff Companies' services and products. The data also evidenced how long employees worked on company matters, the content of their work and their actions in relation to customers and the Plaintiff Companies' sensitive and proprietary information.

116. Defendant Gitman admits in his counsel's letter to your Honor that the TimeDoctor account is owned by Plaintiff ChannelReply. He says Defendant Channel Reply Inc.'s current TimeDoctor account was first opened on April 20, 2017 and that it contained two years' worth of data. Regardless, Defendant admits it is owned by Plaintiffs. Defendant Gitman then asserts that there was an "unauthorized access" to the TimeDoctor account, which conveniently, according to Gitman, seems to have occurred on the same day that Judge Ramos amended the TRO, and one day after the June 8 OSC, which provided Defendant Gitman with evidence that Plaintiffs had uncovered his plan to steal Plaintiff Companies' through the TimeDoctor software screenshots. Even if the Court were to believe that there was such coincidental "unauthorized access," Defendant Gitman has provided no proof of such, either in the form of screenshots demonstrating unauthorized changes to the account or in a letter from TimeDoctor.

117. Defendant Gitman did not consult with the Court or Plaintiff Companies or Plaintiff Dardashtian to inform anyone of said "unauthorized access" and instead unilaterally removed Plaintiff Companies' employees from the account in violation of paragraph (f) of the OSC, which restrained Defendant Gitman from "accessing…or using in any manner" Plaintiff Channel Reply's "computer software programs" and Paragraph (h) of the OSC, which restrains Defendant Gitman from "utilizing…destroying, altering, wasting, terminating, discontinuing, building upon or otherwise affecting in any manner, the proprietary and/or confidential information …that was developed by CSV"'s developers Konstantyn Bagaev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP." In its simplest form, the June 8 OSC restrained Defendant Gitman from even accessing Plaintiff, ChannelReply's TimeDoctor software.

118.   Defendant Gitman further breached CSV's operating agreement which requires co-managerial agreement on such decisions.  Defendant Gitman then goes on to blame the Court for his unauthorized and destructive actions, by saying that he had to take such steps to remove employees and data from the software because he couldn't secure the account "without changing passwords, which was prohibited by the TRO."  Defendant Gitman then asserts that he "did not destroy or delete" anything, when the TimeDoctor software contained two years' worth of company records and contained no data whatsoever after Defendant Gitman's violations of the June 8 OSC.  Nothing can be further from the truth.

119.   Lastly, Defendant Gitman contends that Mr. Joel Liebman is not a "neutral third-party" but is "Mr. Dardashtian's personal accountant."  Mr. Liebman has always been and still is the company accountant for Plaintiffs' CSV, NDAP and ChannelReply with Gitman's knowledge and consent. Mr. Liebman also acts as an accountant for Plaintiff Dardashtian to assist in filing his personal taxes. However, Mr. Liebman has also acted as a personal accountant to Defendant Gitman in the same manner as to Plaintiff Dardashtian and assisted Defendant Gitman's family with accounting matters. The use of Mr. Liebman by both parties on a professional and personal level makes him a neutral third-party. In fact, it was Defendant Gitman, who offered to use Mr. Liebman to hold monies in escrow and to perform an accounting on disputed issues between he and Plaintiff Dardashtian.

120.   Mr. Liebman's involvement would be in the best interests of Plaintiff Companies because Mr. Liebman is intimately familiar with the company's operations and finances as its longstanding accountant since the formation of Plaintiff Companies.  Bringing in a third party who is unfamiliar with the Plaintiff Companies will likely cause confusion and undue expense and delay in navigating and "catching up" with years of books and operations of multiple

Plaintiff Companies.  Mr. Liebman's role as company accountant has never been contested until this letter to the Court. In fact, Defendant Gitman endorsed and chose Mr. Liebman to handle a Plaintiff Company audit after this dispute arose.

## MY REQUEST FOR IMMEDIATE SANCTIONS; MONETARY SANCTIONS

121    Gitman's willful and flagrant disregard of the OSC and of this Court clearly shows that the only effective manner to ensure Gitman's compliance with orders of this Court is to sanction Defendant Gitman so as to deter such conduct from occurring in the future.

122    Plaintiff Companies generate approximately $30,000.00 in monthly income and therefore, considering Gitman's continuing failure to comply with the OSC, Defendant Gitman should be sanctioned daily in the amount of $1,000.00 until such compliance is obtained.

123    Further, Defendant Gitman should be compelled to pay Plaintiffs' attorneys' fees and costs to file the within application, all of which were necessitated solely and directly as a result of his intentional, deceptive and fraudulent actions.

124    Additionally, Article 17.10 of the CSV operating agreement also provides an award of attorney's fees for any party seeking to enforce his rights under same.  **Exhibit N**. **Section 17.10**.

125    This is now the second application in less than one-week that I have been required to pay for and file to enforce my and the Plaintiff Companies' rights, as a co-manager and member of CSV. Gitman is seeking, and promising, to take the intellectual property and trade secrets of Plaintiff Companies and to use them in Channel Reply, Inc.

126    Clearly, Gitman neither respects my rights under the operating agreement nor

does he respect this Court's Orders and holding him in contempt, removing him from having any

access, making him pay fines and sanctions, and holding the possibility of incarceration over his

head, is the only way to deal with him. The Court may recall that on the date he was directed to

appear in Court on the issue of contempt and compliance, he was in Russia meeting the

Defendant developers conspiring to steal the Plaintiff Companies' confidential information and

to use it against the Plaintiff Companies.

> **IMMEDIATE RESTRAINT ON GITMAN'S OPERATION OF AND
> ACCESS TO PLAINTIFF COMPANIES, INCLUDING ANY AND ALL
> ELECTRONIC ACCOUNTS AND B) TO TRANSFER OPERATIONAL
> AUTHORITY AND MANAGE EXCLUSIVELY TO ME OR A NEUTRAL
> THIRD PARTY**

127    CSV's operating agreement does not immune a manager from any act or conduct

that is "gross negligence, recklessness or intentional wrongdoing." Exhibit N, Article 8.7.

128    Moreover, Article 8.1 (d) of the operating agreement contemplates the removal of

a manager.  While, Article 8.1 (d) mandates that such removal can only be upon 51% vote of the

membership, this Court must consider the malicious acts and irreparable harm that Defendant

Gitman has caused to this point, which include an intentional violation of the June 8 OSC.

Furthermore, Article 17.11 of the operating agreement expressly states that the removal remedy

outlined in Article 8.1(d) is not intended to be exclusive of any other remedy herein "or by law

provided or permitted, but each shall be cumulative and shall be in addition to every other

remedy given hereunder or now or hereafter existing at law, in equity or by statute." Thus the

operating agreement confers broad discretion on this Court to grant, to the fullest extent,

statutory or equitable remedies the Court deems fit under the circumstances, such as a

constructive trust and/or temporary receivership.

129    Defendant Gitman's access and authority as to the Plaintiffs' Companies

operations must be suspended immediately and transferred to me. He has abused and exceeded

his authorized access under the equal co-management principals outlined in the operating

agreement, by using his master administrator access to revoke my access to vital company

accounts, move company accounts to unlawful companies for his own use, and to delete

company data and my business email address.

130    Defendant Gitman should be immediately compelled to take the necessary

measures to transfer all power and authorization to me for the operation of the Plaintiff

Companies, including all passwords, administrative information and log-in information for all

accounts, including electronic, so that I may return company operations to the status quo.

131    I should be the only member of the Plaintiff Companies to manage and operate

the respective companies until the adjudication of this matter.

132    If, however, the Court feels more comfortable in appointing a neutral third-party

to manage Plaintiff Companies, I respectfully submit that it should be the Plaintiff Companies'

longstanding accountant, Joseph Liebman of Liebman, Goldberg & Hymowitz as an interim

manager, since he is familiar with the finances and operations of the company as set forth above.

133    Mr. Liebman's responsibilities would include:

   a.  Bookkeeping;
   b.  Payroll;
   c.  Exclusive Control of Administrative Access to all Third-party and internal
       accounts (electronic or otherwise) with Gitman and I only being able to
       "view" but not "access" the accounts;
   d.  An intermediary as to any financial decision of the Plaintiff Companies, which
       must be approved unanimously by Gitman and I; and
   e.  Provide weekly status reports as to the operations of the Plaintiff Companies.

134    I suggest Mr. Liebman be compensated $2,500.00 each month and further request

that this monthly compensation be deducted from Defendant Gitman's anticipated distributions

since his irresponsible and unethical behavior prompted this oversight necessity.

135    To allow Gitman to remain in control of any of the Plaintiff Companies operations after his malicious actions and his flagrant disregard for this Court would otherwise render all relief entered by this Court by way of its June 8 OSC ineffectual or hallow.

136I further request that as this application is necessary because of Defendant Gitman's direct violations of the OSC and Amended OSC, that I not be required to post a bond.

The foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Michael Dardashtian, Individually
and on behalf of NDAP, LLC,
Cooper Square Ventures, LLC and
ChannelReply

Sworn to before me this 16
Day of June, 2017

**Juan Delacruz Jr.**
**Notary Public State of New York**
**No. 01DE6355978**
**Qualified in Queens County**
**Commission Expires 03/20/2021**