UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE VENTURES,
LLC, NDAP, LLC and CHANNELREPLY, LLC

Case No. 17 CV 4327 (LLS)

Plaintiffs,

-against-

DAVID GITMAN, JEREMY FALK, SUMMIT
ROCK HOLDINGS, LLC, ACCEL COMMERCE,
LLC, DALVA VENTURES, LLC, KONSTANTYN
BAGAEV, OLESKSII GLUKHAREV and
CHANNEL REPLY, INC.,

Defendants.
-----------------------------------------------------------X

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE AND SANCTIONS

---

Dated: June 16, 2017

Barry S. Guaglardi, Esq. (BSG2401)
ARTURI, D'ARGENIO,
GUAGLARDI & MELITI, LLP
Attorneys for Plaintiff
365 West Passaic Street, Suite 130
Rochelle Park, NJ 07662
Phone: (201)947-4100
Fax:    (201)947-4010
Email: bguaglardi@adgmlaw.com

## BRIEF STATEMENT OF THE CASE

This application is being brought on an emergent basis for Defendant David Gitman's ("Defendant Gitman") willful and inexcusable violation of the Court's Order to Show Cause with temporary restraints dated June 8, 2017 and Amended Order dated June 9, 2017[1] ("June 8 OSC"). (Second Dardashtian Affidavit ["Plaintiff Second Aff[2]."] at Ex. A). The June 8 OSC entered temporary restraints that, in sum, restrain Defendant Gitman and his related entities from 1) misappropriating and/or otherwise withdrawing funds belonging to Plaintiff Companies' 2) transferring, accessing and/or using in any manner Plaintiff Companies' confidential and proprietary information including email addresses, computer codes, passcodes, passwords, intellectual property, customer lists, computer software programs and other "Company Confidential Information" as defined in the Plaintiff Companies Operating Agreements 3) competing with Plaintiff Companies by using Plaintiff Companies' proprietary and trade secret information  4) destroying, altering, terminating, transferring or otherwise affecting Plaintiff Companies' proprietary or confidential information 5) and misappropriating Plaintiff Dardashtian's identity including his business identity and emails.  The June 8 OSC also compelled Defendant Gitman to restore Plaintiff Dardashtian's access to all emails, electronic accounts and business operating accounts immediately, including accounts on Google Domain.

However, since entry of the June 8 OSC, Defendant Gitman has continuously interfered with the operations of Plaintiffs Companies by precluding Plaintiff Dardashtian from having any

---

[1] The only reason for the amended order was to include specific time frames for Defendant Gitman's compliance, no substantive relief/restraint was altered from the June 8 OSC.

[2] To distinguish between Plaintiff's Affidavit submitted June 8, 2017 and the Affidavit relating to the within application, the current application's affidavit shall be "Plaintiff's Second Aff." and if reference is made to the Affidavit submitted June 8th, that is referred to as "Plaintiff's Initial Aff."

1

communication with the Plaintiff Companies' employees and developers in a further effort to compete with Plaintiff Companies in direct violation of the June 8 OSC (see June 8 OSC at paragraph "g."). Defendant Gitman has also since removed the Plaintiff Companies' employees from the Plaintiff Companies' Time Doctor software, which enabled Plaintiff to monitor all work- related tasks and communications by and between Plaintiff Companies' employees and its owners/managers. (See Plaintiff Second Aff., ¶¶48-52).

In addition, Defendant Gitman has further violated the June 8 OSC as he (1) has failed to fully restore Plaintiff Dardashtian's access to the Plaintiff companies' electronic accounts pursuant to paragraph (g) of the June 8 OSC; (2) has communicated with the Plaintiff Companies' employees and developers in the Ukraine and Russia about renting workspace in the Ukraine to set up a competing company using the Plaintiffs' Companies' software, confidential and proprietary information and trade secrets in violation of the June 8 OSC at paragraph (n); (3) has converted all of Plaintiff ChannelReply's account information under the control of a new Google Internet Account (commonly known as a "G Suite") created by Defendant Gitman for Defendant Channel Reply, Inc. in violation of paragraph (g) of the June 8 OSC; and, shockingly, (4) deleted Plaintiff Dardashtian's business email address and additional data belonging to Plaintiff Companies in violation of paragraph (h) of the June 8 OSC.

For the reasons set forth below, Defendant Gitman must be held in contempt for his willful and ongoing violations of the June 8 OSC and must further be restrained from having any further administrative and management control or access to any of Plaintiffs' Companies' accounts in any regard to preserve the status quo.

## LEGAL ARGUMENT

I.  **DEFENDANT GITMAN MUST BE SANCTIONED FOR HIS WILLFUL DISOBEDIENCE OF THE JUNE 8 OSC AND AMENDED OSC AND FOR FURTHER IRREPARABLY HARMING PLAINTIFFS**

Under federal law, the court has the inherent power to coerce compliance with its orders, sanction behavior constituting fraud on the court, and vindicate its authority in the face of contumacious behavior. Chambers v. Nasco, Inc., 501 U.S. 32 (1991):

> It is firmly established that the power to punish for contempt is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines, for the underlying concern that gave rise to the contempt power was not merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.

"Contempt is considered civil if the sanction imposed is designed primarily to coerce the contemnor into complying with the court's demands and criminal if its purpose is to punish the contemnor, vindicate the court's authority, or deter future misconduct." Hicks v. Deiock, 485 U.S. 624 (1988). This Court has wide discretion to remedy Defendant Gitman's intentional and wrongful contempt of this Court's Order dated June 8, 2017 and such findings will only be disturbed for "clear error." Close-Up, Int'l, Inc. v. Berov 411 Fed. App. 349, 353 (2nd Cir. 2011).

To succeed on a motion for an order finding an enjoined party in civil contempt, Plaintiff must prove by clear and convincing evidence, the June 8 OSC must be "clear and unambiguous, the proof of noncompliance [must be] . . . 'clear and convincing,'" and the enjoined party must not have "been reasonably diligent and energetic in attempting to accomplish what was ordered.". EEOC v. Local 28, et. al. 753 F.2d 1172, 1178 (quoting Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981); EEOC v. Local 638, 889 F. Supp. 642 (S.D.N.Y. Feb. 23, 1995);

3

McComb v. Jacksonville Paper Co., 336 U.S. 187 (1949) (It is not necessary that the enjoined party willfully disobey the court's order for there to be contempt).

Here, the June 8 OSC is certainly "clear and unambiguous." Defendant Gitman was provided notice of the requested relief at the same time of Plaintiffs' filing. (See Plaintiff Second Aff. Exhibit O). Additionally, the Court held two telephone conferences in which Defendant Gitman's attorney participated relating to the restraints. Without question, Defendant Gitman was provided notice of the restraints and the exact nature of what he, and the Defendant companies, are unable to do.

However, Defendant Gitman has failed to fully restore Plaintiffs' access to the electronic accounts of NDAP, LLC, CSV, and Plaintiff ChannelReply pursuant to paragraph (g) of the June 8 OSC. (Plaintiff Second Aff. ¶¶17-44; Exhibits F, G, H, I and J). Moreover, since the entry of the June 8 OSC, Defendant Gitman (1) has since communicated with the Companies' employees and developers in the Ukraine and Russia about renting workspace in the Ukraine to set up a competing company, in violation of the June 8 OSC at paragraph (n) (Plaintiff's Second Aff. Exhibit K, p. 3) (2) has converted all of Plaintiff ChannelReply's account information under the control of a new "G Suite" account created by Defendant Gitman for Defendant Channel Reply, Inc. in violation of paragraph (g) of the June 8 OSC (See Plaintiff Second Aff., Exhibits F, G and H); and most shockingly (3) deleted Plaintiff Dardashtian's business email and Plaintiffs' Companies' data in violation of paragraph (h) of the June 8 OSC (Id., Exhibit L).

Absent sanction, there is nothing to deter Defendant Gitman from continuing to engage in such misconduct while the temporary restraints remain in effect.

**Gitman Has Failed to Replenish Plaintiff Companies' Bank Account**

Paragraph (b) of the June 8 OSC requires:

> Defendant Gitman to redeposit into the CSV [Plaintiff Channel Square Ventures] Bank of America banking account all monies withdrawn by him and pay any overdraft fees incurred since May 27th, 2017, the date on which he withdrew the company's funds, <u>no later than 5:00 p.m. on Tuesday, June 13, 2013</u>;

[Plaintiff's Second Aff. <u>Exhibit</u> L]

As set forth in Plaintiff's Initial Affidavit, Gitman drained and siphoned Plaintiff CSV's Bank of America bank account of $73,982.00. (Plaintiff Initial Aff. 65-70 and see <u>Exhibit</u> M to Plaintiff's Second Aff.)

The bank fees as a result of Gitman's draining the account, which caused overdraft charges, was $89.22. (Plaintiff's Second Aff., <u>Exhibit</u> C, last page).

On June 13, 2017, Gitman, by way of bank transfer, deposited $68,669.53 of the approximate $73,982.00 that he was required to re-deposit in accordance with the Court's Order. <u>Exhibit</u> C at p.2. Later that day, Gitman deposited another $5,373.00 into the CSV Bank of America account but then <u>withdrew</u> $,5060.00 from the CSV Bank of America account and wired those funds to Dalva Ventures, one of Gitman's newly created companies and co-defendant that is subject to the June 8 OSC. <u>Exhibit</u> C. at p. 4. Not only is Gitman's transfer of funds to Dalva Ventures a violation of the OSC, but is a further misappropriation of the Plaintiff Companies funds, in which Gitman is a co-owner.

On June 15, 2017, Gitman deposited $10,560.00 into the CSV Bank of America account. <u>Exhibit</u> C at p. 6. Gitman then withdrew an additional $5,775.00 to pay "upcounsel.com," which upon information and belief is an interactive online service that enables clients to find an attorney. Umar Farooq, Esq., is currently advertising his services on upcounsel.com. <u>Exhibit</u> D.

While Plaintiffs are currently investigating whether Gitman has used the CSV Bank of America account to pay for his own legal representation. (See Plaintiff Second Aff. at para. 18-20).

Regardless of whether Gitman is using Plaintiff Companies' funds to pay for his own legal representation, or paying Mr. Farooq for his representation of NDAP in its pending sale is, however, of no moment. Gitman is still using the CSV Bank of America account as his own personal *piggy bank*, in direct violation of the June 8 OSC. Perhaps most telling, is Gitman's representation to this Court that he complied with the OSC and "transferred to the CSV bank of America banking account all monies withdrawn by me from this account since May, 27, 2017." Exhibit P at para 6. Gitman neglects to mention in his sworn Certification that he transferred money from the CSV Bank of America account to Dalva Ventures, one of Gitman's competing companies, on that same date that he signed the sworn Certification. Gitman also made his sworn statement two days prior to using funds in the CSV Bank of America account to pay "upcounsel.com." Exhibit C at p. 6.

Contrary to Gitman's representations to this Court, Gitman remains in violation of Paragraph (b) of the June 8 OSC.  Furthermore, because Plaintiff Dardashtian is still locked out of all of Plaintiff Companies' payment and subscription portals for ChannelReply, he cannot see where customer receivables are being routed potentially in continued violation of Paragraph "a" of the June 8 OSC, restraining Defendant Gitman and Defendant Companies from "misappropriating and/or otherwise withdrawing funds belonging to" Plaintiff Companies' "banking accounts" and/or "payment or subscription portals." With the exception of Plaintiffs' ability to see the CSV Bank of America account statements, Plaintiffs have no ability to control Gitman's unfettered access to the CSV Bank of America account as he so chooses.

**Gitman's Violation of Paragraph "g" of the June 8 OSC and Interference with Dardashtian's Communication with Employees**

Paragraph "g" of the June 8 OSC imposed the following temporary restraint against

Defendant Gitman:

> "g.    Directing Defendant Gitman to immediately provide and restore Plaintiff Michael Dardashtian with full and complete access to all NDAP, CSV and ChannelReply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, email accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV and ChannelReply, including all twenty-two (22) accounts listed in Exhibit 58[3] to the Affidavit of Michael Dardashtian in support of the OSC, <u>by no later than 5:00 p.m. on June 9, 2017</u>" .

Clearly, paragraph "g" specified the Court Order requirements in detail. Defendant

Gitman further had actual knowledge of the entry June 8 OSC.

As clearly stated in in the June 8 OSC, Defendant Gitman was to immediately restore

Plaintiff Michael Dardashtian "with full and complete access" to the Plaintiff Companies'

"electronic accounts," listed in <u>Exhibit</u> 58 of Plaintiffs Affidavit in Support of the June 8 OSC.

He has not. (Plaintiff's Second Aff., <u>Exhibit</u> E).

On June 9, 2017, via correspondence through counsel at 8:25 p.m., approximately three

(3) hours after Plaintiffs full access to all accounts were to be completely restored, Plaintiff

Dardashtian still did not have complete access to eleven (11) accounts contained in the June 8

OSC and still does not:

> (1) The ChannelReply email;
> (2) The Chargebee Account;
> (3) The Stripe Account;
> (4) The PayPal Account;
> (5) The Upwork Account (there was one account and user name was NDAP, I do not have access to that account. Gitman created new limited accounts and locked me out of others);
> (6) The Zendesk Accounts (Gitman gave me access to Zendesk through my CSV email and not my email for Channel Reply);
> (7) The Slack Account;

---

[3] This exhibit is also attached to Second Plaintiff Aff. as Exhibit M.

(8) The Amazon Account(s) (the Amazon Web Services accounts, NDAP & Channel
    Reply are empty);

(9) The Magento NDAP Account;

(10)   The GoDaddy Account (Gitman denied me access to our parent master admin
    account, userlogin NDAP, he created out new separate accounts and removed
    Channel Reply); and

k.   The Channel Reply Github Account.

**[Exhibit E]**.

(See Plaintiff Second Aff., ¶¶16-17; Exhibit F).

However, at 8:25 p.m. of June 9, 2017, Defendant Gitman's counsel sent an Excel

Spreadsheet, which purportedly represented Defendant Gitman's "itemized status report of

[Defendant Gitman's] *compliance* with para g [of the June 8 OSC] (hereinafter referred to as

"Gitman's Excel Spreadsheet")(Plaintiff Second Aff. Exhibit G, emphasis added).

However, Gitman's Excel Spreadsheet confirms that Defendant Gitman removed/deleted

Plaintiff Dardashtian's email at channelreply.com, which continues to preclude Plaintiff

Dardashtian from accessing ChannelReply's G-Suite account and the eleven (11) accounts

associated therewith. Indeed, contained within Gitman's Excel Spreadsheet under the headline

"notes," states that channelreply.com was **moved** by [Defendant Gitman] to ChannelReply Inc.'s

G Suite account. This account no longer exists."

Incredulously, Defendant Gitman seeks to rely upon his deletion of

michael@channelreply.com, which violated the June 8 OSC, as an excuse to not restore the

michael@channelreply.com account immediately, which would provide Plaintiffs immediate

access to its accounts in accordance with the June 8 OSC.  Defendant Gitman cannot relieve

himself from the June 8 OSC by simply stating that "the account no longer exists," which was a

product of his own malfeasance in the first place.

In fact, after Defendant Gitman failed to restore Plaintiffs access to all accounts, Plaintiff Dardashtian investigated Defendant Gitman's representation that the channelreply.com "account no longer exists." Despite Defendant Gitman's representations to the contrary, it does exist. (See Plaintiff Second Aff. ¶¶20-27; Exhibits. F at p.1 and H).

As a test, after June 9, 2017, when Plaintiff should have been restored with complete access, Plaintiff Dardashtian tried to log in to Michael@channelreply.com but received an "error" message that Google "couldn't find" Plaintiff Dardashtian's Michael@channelreply.com account.  (Plaintiff Second Aff., Exhibit F at p.1).  However, when Plaintiff Dardashtian input Defendant Gitman at David@channelreply.com, and the developers at Konstantyn@channelreply.com and Aleksey@channelreply.com, there was no such "error" message. (Plaintiff Second Aff., Exhibit H).  In other words, David@channelreply.com , Konstantyn@channelreply.com and Aleksey@channelreply.com are all recognized and only Plaintiff's account is not. The channelreply.com email ccount was housed in Plaintiff Companies' G Suite account under the owner NDAP-LLC.com. Defendant Gitman never returned it to that location owned by Plaintiff Companies and instead continues to maintain it under his new G Suite created by and for himself and/or Defendant Companies, to Plaintiff Companies' exclusion.

Even if this Court were to give Defendant Gitman every benefit of the doubt to believe that the channelreply.com "account no longer exists," despite the evidence which proves the contrary, Defendant Gitman still had a court ordered obligation to *restore* such access and he has outright refused to do so. (See Exhibit A, para. G; Aff.).  If the channelreply.com account no longer exists, even though it does, Defendant Gitman continues to have an obligation to *restore* such account to Plaintiff Companies G Suite for NDAP-LLC.com and provide Plaintiffs with

9

immediate access to it. (See Plaintiff Second Aff. at ¶¶53-65) Defendant Gitman also continues

to have an obligation to restore Plaintiff Dardashtian's email account associated with

channelreply.com to him. Defendant Gitman must restore Michael@channelreply.com to

Plaintiff Dardashtian pursuant to the June 8 OSC so that he may access his business accounts

held by Plaintiff Companies. Until this is done, Plaintiff Dardashtian's business associates,

vendors and customers cannot reach him and all emails being sent to Plaintiff Dardashtian may

be lost forever and may be generating a bounce back error message to those trying to contact

him.  The irreparable harm is continuing as of the present, despite Gitman's obligation to fully

restore Plaintiffs with such access by June 9, 2017. (Exhibit B at para. (g)).

Further, Defendant Gitman has now prevented Dardashtian from having any

communication with the Plaintiff Companies' employees and developers, which is in a further

effort to compete with Plaintiff Companies in direct violation of the June 8 OSC.

On the very same day that Defendant Gitman received and read the Verified Complaint

and June 8 OSC, he "strongly recommended" to CSV's lead software engineer/developer

Konstantyn Bagaev to "block" Dardashtian when/if Dardashtian tried to communicate with him.

(Plaintiff Second Aff., Exhibit I at p.1).

Further, since the entry of the June 8 OSC, Gitman has succeeded in making matters

worse and completely isolated Plaintiff ChannelReply's two critical and essential employees,

who developed its code and run its service, from Dardashtian so that Dardashtian cannot manage

Plaintiff Companies or partake in operations.  For instance, Bagaev has since removed

Dardashtian from Skype, an instant messaging service that provides online text and video chat

services. (Plaintiff Second Aff. Exhibit J).  Indeed, on Friday, June 9, 2017, Dardashtian

communicated with Bagaev on "Skype chat" and Dardashtian was removed from Skype immediately *after* that conversation occurred. (Plaintiff Second Aff., <u>Exhibit</u> J, p. 2).

As set forth in Plaintiff's Initial Affidavit, Defendant Gitman revoked Dardashtian's access to Slack, a messaging service that Dardashtian traditionally used to communicate with his employees abroad. (See Initial Aff. ¶¶ 84 and 88).  As a result, the only mechanism for Dardashtian to communicate with Bagaev was via "Skype." With Dardashtian's removal from Skype, Dardashtian can no longer communicate with his employees.

Dardashtian also now has no way of knowing whether Defendant Gitman is *still* offering Bagaev gifts, promises and monies from Payoneer, an online money transfer service, or from Defendant Channel Reply, Inc.'s bank account with Chase to incentivize Defendant Bagaev's support of Defendant Gitman in this matter. Plaintiff Dardashtian presented proof in his first affidavit to the Court evidencing Defendant Gitman already offering Defendant Bagaev to be a co-founder of his competing company, offering him and fellow developer Glukharev new employment agreements, stock options and potential assistance in obtaining visas.

Clearly, Defendant Gitman is continuing his systematic pursuit of locking Plaintiffs out of the business accounts, which is continuing to cause Plaintiffs the same irreparable harm before the entry of the June 8 OSC. The only owner/manager with account access to Plaintiffs' Channel Reply accounts is Defendant Gitman, who is competing with Plaintiffs' business through Defendant Channel Reply, Inc.  Indeed, Gitman has even acknowledged that the Plaintiffs Companies accounts were "moved to Channel Reply Inc." (See Gitman's Excel Spreadsheet at Plaintiff Second Aff., <u>Exhibit</u> G) The mere fact that Gitman's Channel Reply Inc., has access to Plaintiff Companies accounts, including channelreply.com is direct evidence of Gitman's misappropriation of Plaintiff Companies' proprietary information.

11

Absent a restraint against Gitman from having unfettered access and control over Plaintiffs' channelreply.com accounts, Defendant Gitman will have the ability to exclusively control Plaintiff ChannelReply's accounts to Plaintiff Dardashtian's exclusion, while simultaneously operating his competing business, Defendant ChannelReply, Inc.

Defendant Gitman should be held accountable for the egregiousness of his misconduct, and should further be restrained from having any control over Plaintiffs' accounts due to his conflict of interest and ongoing pursuit of misappropriating trade secret information to Defendant Channel Reply, Inc., which as shown in Plaintiffs' initial submission violates the CSV operating agreement and State and Federal Law.

Absent Gitman's immediate restraint from Plaintiffs' entire respective business operations, Defendant Gitman will continue to have within his control the ability to continue to disrupt the status quo, which is otherwise the most crucial remedy that the June 8 OSC is designed to protect.

**Gitman's Violation of paragraph "h" of the June 8 OSC**

Paragraph "h" of the June 8 OSC imposed the following temporary restraint against Defendant Gitman:

> "h.    Restraining and enjoining Defendants Gitman, Accel, Dalva Ventures, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from utilizing, sharing, selling, transferring, backing up, destroying, altering, wasting, terminating, discontinuing, building upon or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers, Konstantyn Bagaiev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP."

Defendant Gitman has destroyed and affected the proprietary and/or confidential information belonging to Plaintiffs.  Specifically, since the June 8 OSC, Defendant Gitman has

destroyed, altered and affected the Plaintiffs' Time Doctor software (See Plaintiff Second Aff., Exhibits L).

Time Doctor is an employee time tracking software that monitors and reviews employee's work time and projects. The Time Doctor software enables Plaintiffs to take screenshots of what Plaintiffs and Plaintiffs' employees are working on for Plaintiffs' review. Each employee is required to install the software on their computers giving the Plaintiffs permission to monitor time and take screenshots every 9 minutes for employer review. Both of the Plaintiffs' Companies' developers, Konstantyn Bagaev and Olesksii Glukharev have both been using Time Doctor daily for the past two years. (Plaintiff Second Aff., ¶¶83-87).

In addition, it was the Time Doctor software that enabled Plaintiff Dardashtian to take screenshots of Defendant Gitman's communications with the Plaintiff Companies' developers, which revealed Defendant Gitman's attempt to take the Plaintiff Companies developers to Defendant Gitman's competing company, Defendant ChannelReply, Inc. All of the screenshots taken by Plaintiffs that were included in Plaintiffs Affidavit in support of the June 8 OSC were obtained through the Time Doctor software. (Plaintiff Second Aff., ¶¶87-88; see also e.g., Exhibit K).

Before the June 8 OSC was filed with the court, Defendant Gitman either neglected to or forgot to lock Plaintiffs out of the Time Doctor software, which enabled Plaintiff to produce the foregoing evidence to the Court.   Upon receipt of Plaintiffs' June 8 OSC, Defendant Gitman stated "I don't get how [Plaintiff Dardashtian] knows all these details." (Plaintiff Second Aff Exhibit I).

However, after Plaintiffs filed their moving papers in conjunction with the June 8 OSC, Defendant Gitman destroyed the Time Doctor software data by completely removing the

developers from Time Doctor and deleting all employee accounts and data as well.  (Plaintiff Second Aff. Exhibit  L).

Clearly, after Defendant Gitman learned or realized Plaintiff Dardashtian's ability to monitor all communications through Time Doctor, Defendant Gitman has now deleted and/or otherwise transferred the employee accounts from it thereby a) continuing to interfere with Dardashtian's access to Plaintiff Companies' operations and b) violating the June 8 OSC.

As a result, the June 8 OSC, which was designed to preserve the *status quo* and restore Dardashtian's complete access to the Plaintiff Companies accounts, has been willfully violated by Defendant Gitman as he has since removed Plaintiff Dardashtian from having any ability to monitor and review Plaintiffs' own developers through the Time Doctor software.

Moreover, by deleting the developers from the Time Doctor software in direct violation of paragraph (h) of the June 8 OSC, Defendant Gitman has purged the Plaintiffs' Companies' Time Doctor account of all employee data, preventing me from accessing evidence of the conversations between Defendant Gitman and the developers. (Second Plaintiff Aff., Exhibit L).

Gitman has asserted that Time Doctor is merely "payroll software," which has "never been used for sensitivity, secrecy or confidentiality…" Exhibit Q at p.2.  "Payroll" is just a multitude of Time Doctor's features, which also includes time tracking, screenshots, chat monitoring, etc. (Second Plaintiff Aff., ¶¶87-88; see also eg.,  Ex. K and I).  Yet, Gitman acknowledges that Time Doctor is owned by Plaintiff Channel Reply, LLC and was opened on April 20, 2017 and contains two years of data. Exhibit Q at p.2.  By virtue of the fact that Time Doctor was opened in April of this year, and contained two years worth of data, evidences that this software maintained company data transferred from older accounts belonging to Plaintiff Companies. However, Gitman now asserts that there was "unauthorized access" to the Time

Doctor account, in his defense that he did not "destroy or delete anything" which conveniently occurred on the same day that Judge Ramos amended the TRO, requiring Gitman to restore Plaintiff with complete access by June 13, 2017. Even if the Court were to give Gitman every benefit of the doubt and believe that there was "unauthorized access" to the Time Doctor software, we have seen no proof to substantiate his position, and continue not to have access to confirm whether his assertion is accurate. Gitman's assertion that Time Doctor was not used for "sensitivity, secrecy or confidentiality" purposes should certainly be questioned, because it makes no sense that Gitman would advise Mr. Bagiev and Mr. Glukharev to stop using Time Doctor due to some "unauthorized access" if nothing contained therein was ever used for "sensitivity, secrecy or confidentiality" as Gitman suggests.  (Exhibit Q at p. 2).

There is no other way to interpret Defendant Gitman's actions other than his outright ongoing attempts to exclude Plaintiff Dardashtian from access to Defendant Gitman's communications with the developers, and to preclude Plaintiff Dardashtian from access to all employee data, due to what such information might reveal.  Again, but for the "screenshots" Plaintiff Dardashtian printed in connection with the June 8 OSC, I am no longer able to access them, or any others.

Such malicious acts are causing further damage to the Plaintiff Companies as employee data has been destroyed, which not only violates the June 8 OSC but also amounts to spoliation of otherwise discoverable material within the context of this litigation, which upon information and belief, cannot be retrieved so long as Defendant Gitman is in exclusive control of the foregoing accounts.

***Plaintiffs Require a Court Order to Obtain Deleted Information Belonging to Plaintiff Companies***

After the June 8 OSC was entered by the Court, which included restraints against Defendant Gitman from "destroying, altering, wasting, terminating… or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers…", Plaintiff Dardashtian logged on to Time Doctor on June 9, 2017, only to find that both of the Plaintiff Companies' developers had been completely removed from the Time Doctor software and that their accounts were deleted by Defendant Gitman, in violation of the June 8 OSC, paragraph (h). (See Time Doctor Screenshot "No date-all removed annexed as Plaintiff's Second Aff. Exhibit L).

On June 10, 2017, Plaintiff Dardashtian contacted the Chief Productivity Officer of Time Doctor, and sought to retrieve the deleted files and to obtain the IP address of the person(s) that deleted such files. Time Doctor stated that Time Doctor can "recover the information" and provide the IP address, but only with a court order. (Plaintiff Second Aff., Exhibit M).

Without restoration of the deleted employee information from Time Doctor and the identity of the IP Address of the person(s) who deleted such information and further removed Bagaev and Ghlukarhev from same, Plaintiff Companies will continue to further suffer irreparable harm.  Due to the transfer, deletion and removal of all information from the Time Doctor account, Plaintiff Companies have no ability to track or monitor its employees' work and/or communications between the employees and Defendant Gitman.

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order for Time Doctor to restore the deleted files and removal of all employees from the Time Doctor software and identify the IP Address of the person(s) who violated the June 8 OSC by doing so.

## II.   THE SANCTIONS IMPOSED SHOULD INCLUDE COSTS AND ATTORNEYS FEES RELATED TO PLAINTIFF DARDASHTIAN MAKING THIS APPLICATION, AND DEFENDANT GITMAN'S COMPLETE REMOVAL FROM HAVING ANY CONTROL OVER AND

**ACCESS TO PLAINTIFFS' ACCOUNTS**

A civil contempt remedy may be coercive or compensatory, but it may not be punitive. Local 28, 478 U.S. at 443; Hess v. N.J. Transit Rail Operations, Inc., 846 F.2d 114, 115 (2d Cir. 1988).

In fashioning a coercive contempt remedy, a district judge should consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 110 (2d Cir. 1987).

Plaintiffs therefore seek monetary sanctions and further equitable restraints against Defendant Gitman.

**a. Monetary Sanction/Attorney's Fees**

The character and magnitude of Defendant Gitman's actions are of outright disobedience and willful violation of the June 8 OSC. Gitman was served with the June 8 OSC and had full notice as to what each restraint entailed. Exhibit O. The only effective manner to ensure Gitman's compliance with orders of this Court, and to preserve the *status quo* is to punish Defendant Gitman so as to deter such conduct from occurring in the future. Given Defendant Gitman's continuing failure to comply with multiple provisions of the June 8 OSC, Defendant Gitman should be sanctioned daily in the amount of $1,000.00 until such compliance is obtained.

Further, Defendant Gitman should be compelled to pay Plaintiffs' attorneys' fees and costs to file the within application. "A successful complainant in a contempt proceeding is entitled to the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the court's order is found to have been willful." Pro-Choice Network v. Project

Rescue, 848 F. Supp. 400, 404 (WDNY 1994) citing Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd., 869 F. Ed 34, 39 (2d Cir.).

     As to violations of Temporary Restraining Orders, as is the case here, the Court in Pro-Choice, relying upon the above holding of the Second Circuit, found,

> As previously noted, the Court found that defendants' violations of the TRO were willful.  Thus, plaintiffs are entitled to be compensated for the cost of bringing and prosecuting these contempts…Defendants' conduct was egregious; it was their intentional violation of the Court's TRO that resulted in the instant award of attorney's fees.
>
> [Pro-Choice, p. 406].

Additionally, Article 17.10 of the CSV operating agreement also provides an award of attorney's fees for any party to enforce his rights under same.  (See Plaintiff Second Aff.,  Exhibit N).This is now the second application in less than one-week that Plaintiff Dardashtian has been required to file to enforce his rights, as a co-manager and member of CSV.  Defendant Gitman must be liable for an immediate award of attorney's fees for both applications.

### b. Restraining Gitman from any Access or Control over Plaintiffs' Business Operations and Electronic Accounts

     A district judge's equitable powers give him great discretion to fashion a remedy that will bring the contemnor into compliance. Perfect Fit Indus., Inc. v. Acme Quilting Co., 673 F.2d 53, 57 (2d Cir,) (1982).

     CSV's operating agreement does not immune a manager form any act or conduct that is "gross negligence, recklessness or intentional wrongdoing." See Plaintiff Second Aff. Exhibit N, Article 8.7.  Moreover, Article 8.1 (d) of the operating agreement contemplates the removal of a manager.  While, Article 8.l(d) mandates that such removal can only be upon 51% vote of the membership, this Court must consider the malicious acts and  irreparable harm that Defendant Gitman has caused to this point, which include an intentional violation of the June 8 OSC.

Furthermore, Article 17.11 of the operating agreement states that the removal remedy outlined in Article 8.1(d) is not intended to be exclusive of any other remedy herein "or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute." Thus the operating agreement's remedies clause confers broad discretion on this Court to grant, to the fullest extent, statutory or equitable remedies the Court deems fit under the circumstances, such as a temporary receivership. (See Plaintiff Second Aff., Exhibit N).

Defendant Gitman's access and authority as to the Plaintiffs' Companies operations must be suspended immediately and transferred to Dardashtian. Defendant Gitman should be immediately compelled to take the necessary measures to transfer all power and authorization to Dardashtian for the operation of the Plaintiff Companies, including all master passwords, administrative information and log-in information for all accounts, including electronic.

If, however, the Court feels more comfortable in appointing a neutral third-party to manage Plaintiff Companies, Plaintiffs respectfully submit that it should be the Plaintiff Companies' longstanding accountant, Joseph Liebman of Liebman, Goldberg & Hymowitz as an interim manager due to his familiarity with the finances and operations of multiple jointly held companies.   Mr. Liebman's responsibilities would include:

      a.  Bookkeeping;
      b.  Payroll;
      c.  Exclusive Control of Administrative Access to all Third-party and internal accounts (electronic or otherwise) with Gitman and Dardashtian only being able to "view" but not "access" the accounts;
      d.  An intermediary as to any financial decision of the Plaintiff Companies, which must be approved unanimously by Gitman and Dardashtian; and
      e.  Provide weekly status reports as to the operations of the Plaintiff Companies.

Plaintiffs suggest Mr. Liebman be compensated $2,500.00 each month and that such compensation be deducted from any of Defendant Gitman's anticipated distributions since it is his continued egregious behavior that warrants this oversight.

To allow Gitman to remain in control of any of the Plaintiff Companies operations after his malicious actions and his flagrant disregard for this Court would otherwise render all relief entered by this Court by way of its June 8 OSC ineffectual or hallow.

## **CONCLUSION**

Therefore, Plaintiffs seek that the Court find the following:

A.      Finding Defendants David Gitman ("Gitman"), Channel Reply, Inc.("Channel Reply, Inc.") and Dalva Ventures, LLC ("Dalva") in contempt of this Court's Orders dated June 8, 2017 and June 9, 2017;

B.   Directing Defendants, Gitman, Channel Reply, Inc. and Dalva Ventures to immediately comply with this Court's Orders dated June 8, 2017 and June 9, 2017;

C.   Compelling and sanctioning Gitman, Channel Reply and Dalva to pay a monetary fine in an amount to be determined by this Court, and a per diem fine in an amount to be determined by this Court for each and every day until there is full compliance with this Court's June 8, 2017 and June 9, 2017 Orders;

D.   Compelling and sanctioning Gitman, Channel Reply, Inc. and Dalva to pay all of Plaintiff Michael Dardashtian and Plaintiff Companies, Cooper Square Ventures, LLC, NDAP, LLC and ChannelReply, LLC, and their affiliate companies ("Plaintiff Companies") attorney's fees and costs in connection with the preparation, filing and appearances in connection with the June 8, 2017 Order to Show Cause Application and June 9, Amended Order, as well as all of Plaintiffs' attorneys' fees and costs in connection with the preparation, filing and appearance for the within application;

E.   Directing Gitman, Channel Reply, Inc., Dalva and Accel Commerce, as well as their owners, members, officers, directors, managers, employees, subcontractors, consultants, agents, transferees and representatives, to cease from withdrawing any further monies from Plaintiffs' banking accounts and directing Dalva to immediately return all monies paid to it from Plaintiffs;

F.  Directing Gitman, Channel Reply, Inc. and Dalva, as well as their owners, members, officers, directors, managers, employees, subcontractors, consultants, agents, transferees and representatives, to immediately transfer, return and otherwise fully restore the channelreply.com electronic mail account and the Michael@channelreply.com electronic mail account back to Plaintiffs, NDAP-LLC.com's G Suite and Master Account by no later than June 21, 2017 and provide proof to this Court via ECF filing on that date;

G.  Restraining Gitman, Channel Reply, Inc. and Dalva, as well as their owners, members, officers, directors, managers, employees, subcontractors, consultants, agents, transferees and representatives, from using, accessing, logging into, or in any other way affecting the channelreply.com electronic mail account and the Michael@channelreply.com electronic mail account;

H.  Restraining Gitman, Channel Reply, Inc. and Dalva, as well as their owners, members, officers, directors, managers, employees, subcontractors, consultants, agents, transferees and representatives, after Defendants have fully and timely complied with the June 8, 2017 and June 9, 2017 Orders of this Court and this Order, from changing the passwords to the channelreply.com and Michael@channelreply.com electronic mail accounts or any of Plaintiffs' other accounts so as to interfere with Plaintiff Dardashtian and Plaintiff Companies ability to access all of Plaintiff electronic and other accounts;

I.  Directing Gitman, Channel Reply, Inc. and Dalva, as well as their owners, members, officers, directors, managers, employees, subcontractors, consultants, agents, transferees and representatives, to immediately transfer, return, fully restore and provide to Plaintiff Dardashtian and Plaintiff Companies, all electronic mail sent and received in the channelreply.com electronic mail account and the Michael@channelreply.com electronic mail by no later than June 21, 2017 and provide proof to this Court via ECF filing on that date;

J.  Directing Gitman, Channel Reply, Inc. and Dalva, as well as their owners, members, officers, directors, managers, employees, subcontractors, consultants, agents, transferees and representatives, to immediately transfer, return, fully restore and provide to Plaintiff Dardashtian and Plaintiff Companies, all of NDAP's subaccounts that were removed, deleted, transferred, suspended, or otherwise affected by Defendants, and which were located in the Master NDAP account and provide Plaintiff Dardashtian with the login for the Master NDAP account, by no later than June 21, 2017, and provide proof to this Court via ECF filing on that date;

K.  Restraining Gitman, Channel Reply, Inc. and Dalva, as well as their owners, members, officers, directors, managers, employees, subcontractors, consultants, agents, transferees and representatives, after Defendants have fully complied with the June 8, 2017 and June 9, 2017 Orders of this Court and this Order, from changing or otherwise resetting the passwords to the channelreply.com and

Michael@channelreply.com electronic mail accounts or any of Plaintiffs' other accounts to prevent Plaintiff Dardashtian from having full access thereto;

L.   Restraining Gitman, Channel Reply, Inc. and Dalva, as well as their owners, members, officers, directors, managers, employees, subcontractors, consultants, agents, transferees and representatives,

M.   Revoking Gitman's Master Administrative access and status to all of Plaintiffs' accounts including the GoDaddy and G Suite, and directing that Gitman transfer such Master Administrative access and status to Plaintiff Dardashtian no later than June 21, 2017, and provide proof to this Court via ECF filing on that date;

N.   Restraining Defendant Gitman as a co-manager, member, or otherwise, from having any involvement in the operation and management of Plaintiff Companies, and/or any other type of access to any of Plaintiff Companies' accounts (electronic, financial or otherwise) until further order of this Court;

O.   Directing that only Plaintiff Dardashtian shall, as co-manager and member, have the right to manage the Plaintiff Companies and to access Plaintiff Companies' account (electronic, financial or otherwise), or, in the alternative, the Court shall appoint Joseph Liebman of Liebman, Goldberg & Hymowitz as an interim manager for Plaintiff Companies;

P.   Directing that Gitman be incarcerated if he violates the terms of this Order; and

Q.  For such other relief that the Court deems fair, equitable and just under the

circumstances.


By:   ARTURI, D'ARGENIO,
GUAGLARDI & MELITI, LLP
Attorneys for Plaintiffs


_____

Barry S. Guaglardi, Esq. (BSG2401)

22