UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL DARDASHTIAN, individually and on behalf of COOPER SQUARE VENTURES, LLC NDAP, LLC and CHANNEL REPLY<br>　　　　　Plaintiffs,<br><br>　-against-<br><br>DAVID GITMAN, JEREMY FALK, SUMMIT ROCK HOLDINGS, LLC, ACCEL COMMERCE, LLC, DALVA VENTURES, LLC, KONSTANTYN BAGAIEV, OLESKKII GLUKHAREV and CHANNEL REPLY, INC.<br>　　　　　Defendants. | Case No. 17 CV 4327 (LLS) |

**DEFENDANTS DAVID GITMAN, ACCEL COMMERCE, LLC, DALVA VENTURES, LLC, AND CHANNEL REPLY, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE SEEKING A PRELIMINARY INJUNCTION**

DENTONS US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
Brian S. Cousin, Esq.
brian.cousin@dentons.com
Lindsay F. Ditlow, Esq.
lindsay.ditlow@dentons.com
Mark D. Meredith, Esq.
mark.meredith@dentons.com
(212) 768-6700
*Attorneys for Defendants*
*David Gitman, Accel Commerce, LLC,*
*Dalva Ventures, LLC and Channel Reply,*
*Inc.*

**PRELIMINARY STATEMENT**

This case is about a business dispute between two co-owners.  Plaintiff Michael Dardashtian ("Dardashtian") and defendant David Gitman ("Gitman") each owns 50% in various related technology companies involving software technologies, platform architecture, and processes that, among other things, provide a platform for worldwide retailers and store owners associated with eBay and Amazon to communicate with customers via customer service messages.  Through a series of events, Gitman began to suspect Dardashtian of siphoning funds from the various businesses and even forging his signature in relation to one of these entities.  As a result, acting in good faith, Gitman took steps to protect the various assets of the existing companies.  As trust and communication continued to break down between Dardashtian and Gitman, however, Dardashtian aggressively turned to this Court for interference.  Dardashtian, purportedly on behalf of himself and entities Cooper Square Ventures, LLC ("CSV"), NDAP LLC ("NDAP") and ChannelReply, LLC ("CR LLC"), brought this current action seeking the extraordinary remedy of a temporary restraining order and a preliminary injunction.  The effort should fail.

Despite the 219-paragraph verified complaint and the 41-page brief in support, plaintiffs cannot show, as they must, either a (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation.  Indeed, with respect to the named entity plaintiffs, CSV, NDAP and CR LLC, the complaint not only fails to meet the standard for a preliminary injunction, it fails to state a claim upon which relief may be granted.  First, as a threshold technical matter, Dardashtian purports to bring this action on behalf of CSV.  However, as Gitman points out in his affidavit, there is no facially valid operating agreement for CSV before this Court.  Instead, there is the operating agreement for Cooper

Square, LLC, an entity that is not a named party to this lawsuit. The claims that rely on the Cooper Square, LLC Operating Agreement, attached as Exhibit 2 to Dardashtian's affidavit, should fail therefore at this stage in the litigation. The agreement is for an entity that is not party to this lawsuit, and plaintiffs have not met their burden, particularly in light of the fact that Dardashtian's family real estate attorney was solely responsible for drafting the original agreement.

Second, and more important, even assuming Cooper Square, LLC's Operating Agreement controls the business relationship of the parties in this action because of a scrivener's error in the title of the operating agreement, that agreement expressly prohibits Dardashtian from bringing an action on behalf of the entity absent consent from Gitman. Under Article 8.1(a)-(c) of the Cooper Square, LLC Operating Agreement, there are two Managers of the Company, and "[w]henever Management shall be required to take any action, make any decision or exercise any discretion and there shall be more than one Manager, then except as otherwise provided in this Agreement, the action, decision or exercise of discretion shall require the approval of <u>all</u> of the persons appointed as Manager." (emphasis in the original). The language is crystal clear. Where, as here, there is more than one Manager, all Managers have to approve of the action. Moreover, there is no exception elsewhere in the Operating Agreement that would permit Dardashtian to bring an action on behalf of the entity (for argument's sake, here, CSV). Gitman, of course, has not approved the lawsuit on behalf of CSV. Therefore, CSV must be dismissed from this action, as well as all claims held by CSV or relating to the purported CSV operating agreement, including trade secret and proprietary information misappropriations, theft and violations, breach of contract, breach of the implied covenant of good faith and fair dealing, and any breach of

2

fiduciary duty claims owing to CSV.  There is a total absence of serious questions going to the merits with respect to claims relating to CSV in this action.

Third, NDAP likewise has an operating agreement that precludes Dardashtian from unilaterally bringing an action on its behalf.  As an initial matter, the NDAP Operating Agreement, attached to Dardashtian's affidavit as Exhibit 3, states that its Managing Members of "shall be: Cooper Square Ventures, LLC."  Moreover, setting aside the question of NDAP's corporate standing as a result of having CSV as its Managing Member, the NDAP Operating Agreement appears to suggest – however unclearly--that Gitman and Dardashtian may also be Managing Members.  *See* Section 7.2 (describing "Each" Managing Member).  Whether or not this is the case, what is clear is that Dardashtian cannot, as he has purported to do, bring an action unilaterally on behalf of NDAP.  Section 7.7 states that only Managing Members can bind the company "by unanimous consent" if more than 1.  Once again, Dardashtian needs the consent of Gitman to bring an action on behalf of NDAP, and he has failed to secure that consent.  Thus, NDAP must be dismissed, as well as all claims pertaining to any trade secret or proprietary information owned by NDAP, any fiduciary duty owed to NDAP and any other claims involving that entity.

Fourth, CR LLC's claims also fail for the same reasons as CSV and NDAP's.  CR LLC's Operating Agreement, attached to Dardashtian's affidavit as Exhibit 19, mirrors the language used in the Cooper Square, LLC Operating Agreement.  As in the Cooper Square, LLC Operating Agreement, Section 8.1(c) of the CR LLC Operating Agreement, the Decision-Making clause, requires that whenever Management takes "any action, make[s] any decision or exercise[s] any discretion, . . . the action, decision or exercise of discretion shall require the approval of <u>all</u> of the persons appointed as Manager."  (emphasis in the original).  Dardashtian

3

failed to secure the approval of all of the persons appointed as Manager, namely Gitman.  New York law is also clear on this point.  Where co-owners exist, absent an agreement to the contrary, consent of the other co-owner is required prior to bringing an action on behalf of an entity.  All claims on behalf of CR LLC, including those involving trade secret theft allegations, misappropriation, trade name claims, unfair competition and fiduciary obligations flowing to the entity should therefore be dismissed.  At this preliminary injunction stage, the claims do not raise a serious issue requiring further litigation.

      Finally, Dardashtian's own claims also fail to meet the required federal standard.  Gitman's compliance with the TRO has cured many of Dardashtian's claims, especially regarding access to funds and passwords.  However, Dardashtian's remaining conclusory allegations regarding trade secrets and proprietary information are belied by Gitman's own affidavit.  The so-called proprietary information, while technical, does not qualify as confidential.  It relates largely to platform architecture rather than propriety software coding.  Thus, it does not trigger any of the trade secret or misappropriation claims with respect to Gitman.  Moreover, to the extent he is claiming a breach of fiduciary duty owed by Gitman to him, Gitman's own actions and affidavit demonstrate that Gitman was acting in good faith in an effort to shield the company from Dardashtian's own possible siphoning of funds and other potential bad acts.  Finally, Dardashtian's claim must also fail because he seeks an equitable remedy of an injunction.  However, Dardashtian's own forgery of documents relating to NDAP, his possible siphoning of funds, his continued payments to himself while Gitman went years without compensation from CSV, and his full-time role as Yotpo, Ltd's ("Yotpo") Head of Sales in direct competition with CR LLC all render Dardashtian with unclean hands, thus precluding the relief he seeks under New York law.

Plaintiffs' application for a preliminary injunction should be denied in its entirety. In addition to failing to show sufficiently serious questions going to the merits, plaintiffs also fail the other two prongs of the test: irreparable harm and that public interest and the equities balance in their favor. For all of these reasons, the relief sought should be denied.

## STATEMENT OF FACTS

For the Statement of Facts, Defendants David Gitman, Accel Commerce, LLC, Dalva Ventures, LLC and Channel Reply, Inc. herein incorporate by reference the Affidavit of David Gitman in Opposition to Plaintiffs' Order to Show Cause Seeking Preliminary Injunction, dated June 19, 2017 ("Gitman Aff."). The Court is referred to the Gitman Affidavit in its entirety, with attached exhibits, for its full content and context.

## ARGUMENT

### I. PLAINTIFFS CANNOT MEET THEIR HEAVY BURDEN REQUIRED FOR A COURT TO ISSUE THE EXTRAORDINARY RELIEF OF A PRELIMINARY INJUNCTION

It has long been recognized in this Circuit that "preliminary injunctive relief is an extraordinary remedy and should not be routinely granted." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). A party seeking a preliminary injunction has the burden to demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010); *Mullins v. City of New York*, 626 F.3d 47, 52-53 (2d Cir.2010). The injunction standard provides an alternative to demonstrating a likelihood of success when serious questions exist as to the merits "to make them a fair ground for litigation." "The 'serious questions' standard permits a District Court to grant a preliminary injunction in situations where it cannot determine with certainty that

5

the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Mkts.,* 598 F.3d at 35.  To satisfy this alternate standard, however, the movant must establish that 'the balance of hardships tips <u>decidedly</u>' in its favor." *Id.*  (emphasis added).

No matter how plaintiffs try to characterize their application, they plainly seek relief that flies in the face of the controlling corporate documents.  Therefore, as a preliminary matter, plaintiffs are unable to demonstrate a likelihood of success on the merits or even sufficiently serious questions going to the merits to make them a fair ground for litigation.  Moreover, plaintiffs fail to meet the irreparable harm or balance of the equities prongs of the federal standard.  Where, as here, there is testimonial evidence by way of an affidavit that one of the plaintiffs forged the defendant's signature, as well as possibly siphoned off funds from the company and directly competed with the company, the doctrine of unclean hands will preclude the equitable relief sought.  *See Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 532-533, (S.D.N.Y. 2009) (finding unclean hands precluded equitable relief sought).

**II.**     **<u>PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS</u>**

**A.     The Corporate Plaintiffs' Injunction Application Is Based On a Flawed Reading of the Various Operating Agreements and Must Fail**

None of the corporate plaintiffs – that is, CSV, NDAP and CR LLC – belongs in this lawsuit.  Dardashtian has no authority to sue on their behalf.  The operating agreements provided by plaintiffs plainly state that this is so.  Moreover, plaintiffs have offered no valid operating agreement for CSV, at least on its face.  Instead, plaintiffs have attached an operating agreement for an entity called Cooper Square, LLC.  Gitman Aff., ¶ 5; Dardashtian Aff., Ex. 2.  Cooper Square, LLC is *not* a party to this action.  Thus, the Court does not have before it at this stage in the proceeding evidence of CSV's corporate structure, its operating agreement, or its

management structure. Thus, CSV, NDAP and CR LLC should not only be denied the injunctive relief each seeks, but they should also be dismissed from this lawsuit. Moreover, all of plaintiffs' claims that stem from each of those corporate entities, including any proprietary information, trade secrets, or intellectual property claims owned by the corporate entities, as well as contract claims, unfair trade practices, and conversion of company assets should also be dismissed. Thus, for example, at a minimum, Counts 5, 6, 7, 9, 11, 12, 13, 14, 15, and 19 all fail and should be dismissed in their entirety. At a minimum, all other counts should be narrowed to exclude the claims based upon the corporate plaintiffs.

CSV is the holding company that owns NDAP. NDAP, in turn, operates CR LLC. Thus, without a facially valid operating agreement for CSV before this Court, plaintiffs have failed to meet their burden of showing a likelihood of success on the merits for any of the corporate plaintiffs' claims. However, even if this Court assumes that the attached operating agreement for Cooper Square, LLC is the controlling operating agreement for CSV due to a drafting error (caused by Dardashtian's family real estate attorney and so construed against Dardashtian), that agreement nevertheless requires Dardashtian to get the other manager's consent prior to bringing an action on behalf of the entity. Article 8.1(a)-(c) of the Cooper Square, LLC Operating Agreement provides that there are two Managers of the Company, and "[w]henever Management shall be required to take any action, make any decision or exercise any discretion and there shall be more than one Manager, then except as otherwise provided in this Agreement, the action, decision or exercise of discretion shall require the approval of <u>all</u> of the persons appointed as Manager." (emphasis in the original). The language is clear. Where, as here, there is more than one Manager, all Managers have to approve of the action. There is no exception elsewhere in the Operating Agreement that would permit Dardashtian to bring an action on behalf of the entity

7

CSV.  Gitman has not approved the action on behalf of CSV.  Therefore, CSV must be dismissed from this action, as well as all claims held by CSV or relating to the purported CSV operating agreement, including trade secret and proprietary information misappropriations, theft and violations, breach of contract, breach of the implied covenant of good faith and fair dealing, and any breach of fiduciary duty claims owing to CSV.

Similarly, NDAP also has an operating agreement that precludes Dardashtian from unilaterally bringing an action on its behalf.  As a initial matter, the NDAP Operating Agreement, attached to Dardashtian's affidavit as Exhibit 3, states that its Managing Members "shall be: Cooper Square Ventures, LLC."  Assuming *arguendo* that the Cooper Square, LLC Operating Agreement governs, that agreement, as demonstrated above, requires the consent of all of the managers before bringing an action on behalf of the entity.  Thus, the conclusion is the same: Gitman's consent is a prerequisite to bringing suit on behalf of NDAP.  Moreover, notwithstanding any questions concerning NDAP's corporate standing because of having CSV as its Managing Member, the NDAP Operating Agreement appears to suggest – however unclearly--that Gitman and Dardashtian may also be Managing Members.  *See* Section 7.2 (describing "Each" Managing Member).  Whether or not this is the case, it is once again crystal clear that Dardashtian cannot, as he has purported to do, bring an action on behalf of NDAP without Gitman's consent.  Section 7.7 states that only Managing Members can bind the company "by unanimous consent" if there is more than one Managing Member.  Dardashtian has again acted outside the scope of his authority.

CR LLC's claims also fail for the same reasons.  CR LLC's Operating Agreement, attached to Dardashtian's affidavit as Exhibit 19, parrots the language used in the Cooper Square, LLC Operating Agreement.  As in the Cooper Square, LLC Operating Agreement, Section 8.1(c)

8

of the CR LLC Operating Agreement, the Decision-Making clause, requires that whenever Management takes "any action, make[s] any decision or exercise[s] any discretion, . . . the action, decision or exercise of discretion shall require the approval of <u>all</u> of the persons appointed as Manager." (emphasis in the original). Dardashtian failed to secure the approval of all of the persons appointed as Manager, namely Gitman.

New York law bolsters this reading of the agreements. Where co-owners exist, absent an agreement to the contrary, consent of the other co-owner is required prior to bringing an action on behalf of an entity. In *Crane, A.G. v. 206 W. 41st St. Hotel Assoc., L.P.*, 87 A.D.3d 174 (1st Dep't 2011), the court ruled that the deadlock between two co-owners over whether they should defend a foreclosure action against a hotel required the conclusion that one party had no authority to cross-move to vacate an alleged default and seek leave to file an answer. *Id*. at 176-77 (citing *Sterling Indus. v. Ball Bearing Pen Corp.*, 298 N.Y. 483 (1949)). The co-owner or 50-50 shareholders needed the consent of the other to act. *See Stone v Frederick*, 245 A.D.2d 742, 666 N.Y.S.2d 294 (1997). In *Crane*, the First Department reasoned that the parties' agreement governed, and the freedom of contract of the parties must be respected. 87 A.D.3d at 177.

These agreements are no different from those in *Crane* and *Sterling Industries*. The operating agreements here plainly limit the authority of one manager to act unilaterally on behalf of the entity. New York courts have repeatedly respected the rights of the parties to contract. Dardashtian and Gitman entered into contracts in which their authority to bring lawsuits was limited. Dardashtian, in purporting to bring actions on behalf of CSV, NDAP and CR LLC, has acted beyond his authority. All of the relief sought on behalf of the corporate entities should therefore be denied, and the corporate entities dismissed as plaintiffs. Importantly, the Court must also dismiss all trade secret, trade name, contract, misappropriation, conversion and

proprietary/confidential information-related claims to the extent those claims belong to the corporate entities.

Indeed, at this preliminary injunction stage, these claims brought by the corporate entity plaintiffs do not remotely raise a sufficiently serious issue requiring further litigation. They should be dismissed.

### B. Dardshtian's Injunction Application Is Based Upon Conclusory Allegations, Contradicted by Gitman's Affidavit, and Must Fail

Dardashtian's own claims also fail to meet the required federal standard. The claims do not show a likelihood of success on the merits, or even raise a sufficiently serious question going to the merits. Gitman's compliance with the TRO has already cured many of Dardashtian's claims, including those regarding access to funds and passwords. Dardashtian's remaining conclusory allegations concerning trade secrets and proprietary information fail because they provide no evidence whatsoever that any information was confidential or proprietary. Indeed, Dardashtian's concerns regarding confidential information are belied by Gitman's own affidavit. The so-called proprietary information, while technical, does not qualify as confidential. It relates largely to platform architecture rather than propriety software coding. Gitman Aff., ¶ 98. Thus, it does not trigger any of the trade secret or misappropriation claims. Moreover, to the extent Dardashtian is claiming a breach of fiduciary duty owed by Gitman to him, Gitman's own actions and affidavit demonstrate that Gitman was acting in good faith in an effort to shield the company from Dardashtian's own possible siphoning of funds and other potential bad acts. Gitman Aff., ¶ 80. Gitman acted in a way that was consistent with any fiduciary duty he owed. *See Bank of America Corp. v Lemgruber,* 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) (discussing fiduciary duty owed when exercising management authority). Dardashtian, on the other hand,

10

repeatedly refused to provide any kind of accounting over the books and records, which raised serious concerns for Gitman over possible siphoning of funds. Gitman Aff., ¶ 80.

Moreover, claims by Dardashtian that defendants, including Gitman, are unfairly competing with plaintiffs are rebutted by plaintiffs' own submission. To the extent the Operating Agreement of Cooper Square, LLC controls (see Dardashtian Aff., Exh. 2), it expressly provides in its "Competitive Undertakings" clause that "any Member and Management may engage in business ventures of any nature and description independently or with others, including, but not limited to, business of the character described in Article 3." Dardashtian Exh.2, Art. 12.1. Article 3, in turn, expressly permits owning membership interests in other business entities engaged in the business of internet sales. *Id*. at Art. 3.  Therefore, while the parties plainly must still respect confidential information, they also contemplated each retaining the right, under the Cooper Square, LLC Operating Agreement to participate in competitive businesses. Dardashtian's complaints regarding Gitman's supposed competitive efforts are accordingly undermined by the very agreement Dardashtian relies upon in his application for injunctive relief. Gitman Aff., ¶¶ 46-50.

Finally, Dardashtian's claim must also fail because he seeks an equitable remedy of an injunction, and yet plainly has unclean hands. Under New York law, it is a "fundamental principle that 'he who comes into equity must come with clean hands.'" *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000). This principle precludes Dardashtian from being granted injunctive relief. For example, Dardashtian's own forgery of documents relating to NDAP, which were material to the operations of NDAP, are sufficient to preclude the relief Dardashtian seeks. Gitman Aff., ¶ 21. Also, Dardashtian's possible siphoning of funds

and continuous refusal to permit an accounting furthers undermines his claims for injunctive relief.  Gitman Aff., ¶ 80.

In addition, Dardashtian's full-time role as Yotpo's Head of Sales, a company in direct competition with CR LLC, also undercuts Dardashtian's claim to equitable relief.  Gitman Aff., ¶¶ 46-50.  Dardashtian's role at Yotpo requires a finding of unclean hands for two reasons.  First, Dardashtian's role with Yotpo has usurped his work at CSV.  As explained in Gitman's affidavit, from 2011 to 2016, Dardashtian dedicated his efforts to the business of CSV, including taking a leading role in managerial and strategic thinking.  However, since Dardashtian has turned his focus to Yotpo, his role at CSV has been greatly reduced.  His work now is limited to more of a financing and accounting role, and CSV's business prospects have suffered substantially as a result.

Second, because Dardashtian has chosen to work for Yotpo, a direct competitor, after working along side Gitman and his technological expertise for over five years at CSV, Dardashtian has put himself in a position to inevitably disclose CSV's trade secret and proprietary information to Yotpo.  This doctrine of inevitable disclosure has long been recognized in New York.  *See EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 308-309 (S.D.N.Y. 1999) (citing cases).  Under the doctrine, irreparable harm may be established in a trade secret context where the movant competes directly with the prospective employer and the transient employee possesses highly confidential or technical knowledge concerning manufacturing processes, marketing strategies, or the like.  *Id*.  The law recognizes that disclosure of confidential information is "inevitable."  Such a risk was present in the seminal case of *Pepsico, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), where the Seventh Circuit analogized the former employer's predicament to that of "a coach, one of whose players has left, playbook in hand, to

join the opposing team before the big game." *Pepsico*, 54 F.3d at 1270.  Here, Dardashtian has taken CSV's playbook to Yotpo, where Yotpo competes in the same cutting edge industry of feedback management as CSV has been doing for years.  *See also Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 629 (E.D.N.Y. 1996) (finding a risk of inevitable disclosure based on, inter alia, the employee's access to highly sensitive information concerning manufacturing costs, pricing structure and new products, plus the fact that the industry in question was a "'copy cat' or cloning industry").  Worse still for Dardashtian, he has (wrongly) accused Gitman of the very same type of trade secret misappropriation despite the fact that he himself has misappropriated information from CSV.  This Court has already rejected this sort of backward logic. *See Coca-Cola*, 646 F. Supp. 2d at 532-533 (finding unclean hands for accusing a party of what that party itself has done).

Under New York law, because he has engaged in inequitable conduct that is materially related to the relief his seeks, Dardastian should be denied the injunctive relief he seeks.  *Laugh Factory Inc. v. Basciano*, 608 F. Supp. 2d 549, 560 (S.D.N.Y. 2009) (noting inequitable conduct that is material to relief sought precludes equitable relief).

### III. PLAINTIFFS DO NOT PRESENT ANY SERIOUS QUESTIONS AS TO THE MERITS NOR DO THE EQUITIES TIP DECIDEDLY IN ITS FAVOR

The injunction standard provides an alternative to demonstrating a likelihood of success when serious questions exist as to the merits "to make them a fair ground for litigation."  "The 'serious questions' standard permits a District Court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Mkts.,* 598 F.3d at 35.  To satisfy this alternate standard, however, the movant must establish that 'the balance of hardships tips decidedly' in its favor." *Id.*

13

(emphasis added). As shown above, there is no serious question as to the merits here as the corporate plaintiffs do not belong in this action, and Dardashtian's claims are conclusory and are contradicted by the affidavit of David Gitman. Furthermore, Gitman worked for years without compensation from CSV. From 2015 to 2017, Gitman did not take a draw from CSV. For a while Dardashtian made the same financial sacrifice. However, while Gitman never was compensated for years of work at CSV, Dardashtian began to write checks to pay himself. This unfair and inequitable conduct tilts the scales even further in the direction of Gitman and a denial of the injunctive relief sought. The balance of hardships and equities favors Gitman here, and in any event, strongly suggests that a conservative approach should be taken by the Court, whereby the parties are free to enter into their contracts and resolve business differences without further Court interference.

### IV. PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM BECAUSE IT DOES NOT FACE AN IMMINENT LOSS THAT IS DIFFICULT TO QUANTIFY

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Citibank N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985)). "Irreparable harm 'means injury for which a monetary award cannot be adequate compensation.'" *Id.* (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Id*. (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 953, 39 L.Ed.2d 166 (1974)). When monetary damages are available to adequately compensate the alleged loss, a preliminary injunction should not issue. *Id*.

Here, if there is any harm caused by a breach of contract, fiduciary duty or unfair completion, and similar claims brought by plaintiffs, should they be found to be wrongful – they would be fully compensable by money damages.  Dardashtian, who appears to have violated the inevitable disclosure doctrine, would be free to show if, at all, various business interests were injured by defendants' conduct.  These damages would be readily calculable and preclude entry of an injunction.  No reason exists for this Court to inject itself into the parties' business dispute.

## CONCLUSION

In sum, plaintiffs fall woefully short of the high burden required of a party seeking a preliminary injunction.  Accordingly, for all the reasons set forth above, Defendants David Gitman, Accel Commerce, LLC, Dalva Ventures, LLC, and Channel Reply, Inc. respectfully submit that plaintiffs' application be denied and that the case proceed to litigation in the normal course, with dismissal of all of the entity plaintiffs.

Date:  June 19, 2017                                                        DENTONS US LLP

By: */s/ Brian S. Cousin*
    Brian S. Cousin, Esq.
    brian.cousin@dentons.com
    Lindsay F. Ditlow, Esq.
    lindsay.ditlow@dentons.com
    Mark D. Meredith, Esq.
    mark.meredith@dentons.com
    1221 Avenue of the Americas
    New York, NY  10020-1089
    (212) 768-6700
    *Attorneys for Defendants*
    *David Gitman, Accel Commerce, LLC, Dalva*
    *Ventures, LLC, and Channel Reply, Inc.*