UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| MICHAEL DARDASHTIAN, individually and on behalf of COOPER SQUARE VENTURES, LLC NDAP, LLC and CHANNEL REPLY, LLC, | ) ) ) | Case No. 17 CV 4327 (LLS) |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| DAVID GITMAN, JEREMY FALK, SUMMIT ROCK HOLDINGS, LLC, ACCEL COMMERCE, LLC, DALVA VENTURES, LLC, KONSTANTYN BAGAIEV, OLESKSII GLUKHAREV and CHANNEL REPLY, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF
DEFENDANTS DAVID GITMAN, ACCEL COMMERCE, LCC, DALVA VENTURES,
LLC, AND CHANNEL REPLY, INC.**

**DENTONS US LLP**
Brian S. Cousin, Esq.
Lindsay F. Ditlow, Esq.
Mark D. Meredith, Esq.
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800

*Attorneys for Defendants David Gitman,
Accel Commerce, LLC, Dalva Ventures,
LLC and Channel Reply, Inc.*

# Table of Contents

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT ..................................................................................................................... 7

    I.    THE STANDARD OF REVIEW ...................................................................... 7

    II.   DARDASHTIAN ACTED WITHOUT AUTHORITY TO BRING AN ACTION ON BEHALF OF THE PLAINTIFF ENTITIES AND, THEREFORE, THOSE ENTITIES SHOULD BE DISMISSED AS A MATTER OF LAW. ........................................................ 8

    III.  ALL CLAIMS BELONGING TO, OR OWNED BY, THE PLAINTIFF ENTITIES SHOULD BE DISMISSED, INCLUDING ALL FEDERAL CAUSES OF ACTION ........... 11

    IV.  THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS AND DISMISS ALL REMAINING CLAIMS. .......................................................................................................................... 14

    V.   EVEN IF THE COURT RETAINS SUPPLEMENTAL JURISDICTION, THE REMAINING STATE LAW CLAIMS FAIL AS A MATTER OF LAW. ........................... 14

CONCLUSION ................................................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................7, 8, 14

*Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*,
    414 Fed. Appx 334 (2d Cir. 2011).............................................................14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir.2007)...........................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................8, 14

*Bright View Trading Co. v. Park*,
    2004 U.S. Dist. LEXIS 18572 (S.D.N.Y. Sept. 15, 2004)........................15

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).....................................................................4, 8

*ChatterPlug, Inc. v. Digital Intent, LLC*,
    2016 WL 6395409 (N.D. Ill. Oct. 28, 2016)............................................13

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)......................................................16

*Christopher P. v. Marcus*,
    915 F.2d 794 (2d Cir. 1990)......................................................................15

*Crane, A.G. v. 206 W. 41st St. Hotel Assoc., L.P.*,
    87 A.D.3d 174 (1st Dep't 2011) .........................................................10, 11

*Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
    612 F. Supp. 2d 330 (S.D.N.Y. 2009).......................................................14

*Grusd v Arccos Golf LLC*,
    2014 N.Y. Misc. LEXIS 2543 (N.Y. Sup. Ct., N.Y. Co., June 3, 2014) ................12

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998).........................................................................14

*Mastrio v. Sebelius*,
    768 F.3d 116 (2d Cir. 2014).......................................................................16

*Miller v. Wells Fargo Bank, N.A.*,
  994 F. Supp. 2d 542 (S.D.N.Y. Jan. 30, 2014) ......................................................16

*Paradiso & DiMenna, Inc. v. DiMenna*,
  649 N.Y.S.2d 126 (1st Dep't 1996)..........................................................................15

*Ramsaran v. Abraham*,
  2017 U.S. Dist. LEXIS 47751 (S.D.N.Y. Mar. 30, 2017) ......................................16

*Sit-Up Ltd. v. IAC/InterActive Corp.*,
  2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) ...........................................................13

*Starr v. Sony BMG Music Entm't*,
  592 F.3d 314 (2d Cir. 2010)..................................................................................7, 8

*Stone v Frederick*,
  245 A.D.2d 742, 666 N.Y.S.2d 294 (1997) ............................................................11

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012) ..................................................................................13

*Weidberg v. Barnett*,
  752 F. Supp. 2d 301 ................................................................................................15

**Statutes**

15 U.S.C. § 1125 ...............................................................................................................3, 12

18 U.S.C.
  § 1030........................................................................................................................3, 12, 13
  § 1030(e)(6) .....................................................................................................................13
  § 1832..................................................................................................................................3
  §1836...................................................................................................................................3

28 U.S.C.
  § 1367..................................................................................................................................3
  § 1367(c) ...........................................................................................................................14

**Other Authorities**

Federal Rules of Civil Procedure
  12(b)(1) ....................................................................................................3, 4, 14, 16
  12(b)(6) ............................................................................................................4, 7, 16
  12(d)...................................................................................................................................8
  56.......................................................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff Michael Dardashtian ("Dardashtian") brings this action individually and, purportedly, on behalf of entities Cooper Square Ventures, LLC ("CSV"), NDAP, LLC ("NDAP"), and ChannelReply, LLC ("CR LLC") (together, the "Plaintiff Entities"). As explained below, the plaintiffs' complaint should be dismissed as a matter of law. Dardashtian, as 50% co-owner and co-Manager with defendant David Gitman ("Gitman") of the Plaintiff Entities, was wholly and unequivocally without authority to bring an action on behalf of the Plaintiff Entities without the approval of Gitman. Not only did Dardashtian not have the approval of Gitman to bring this action, but he made no attempt to seek such approval. Indeed, Dardashtian and the Plaintiff Entities do not -- because they cannot -- allege anywhere in the 64-page, 219 paragraph, 19-Count Verified Complaint (the "Complaint" or "Cplt.") that Gitman gave his consent, voted in favor of the action, or was even asked about the action prior to its commencement. No process or procedure was followed by Dardashtian. This violates the plain and controlling language in each of the Plaintiff Entities' Operating Agreements (the "Operating Agreements"). Dardashtian's claims are all derivative in nature; yet he failed to bring those claims in the proper fashion. Therefore, as explained in detail below, all of the plaintiffs' claims should be dismissed with prejudice as a matter of law.

The Operating Agreements each provide, in sum and substance, that "[w]henever Management shall be required to take any action, make any decision or exercise any discretion and there shall be more than one Manager, then except as other otherwise provided in this Agreement, the action, decision or exercise of discretion shall require the approval of _all_ of the persons appointed as Manager." Operating Agreement of CSV, Section 8.1 (emphasis in original). The Operating Agreement for plaintiff CR LLC contains the identical language at its Section 8.1 and NDAP's Operating Agreement states that only authorized agents and Managing

1

Members -- defined as CSV, which in turn is co-owned and co-managed by Dardashtian and Gitman -- of the Company "shall have the authority to bind the Company . . . including . . . the institution, prosecution and defense of any Proceeding in the Company's name."  Limited Liability Company Operating Agreement of NDAP, LLC ("NDAP Operating Agreement"), Section 7.3(a).  Each of the Operating Agreements is crystal clear:  Dardashtian and Gitman each needed the other's consent and approval to bring an action on behalf of one of the companies they co-owned and co-managed.  This was an arm's length, bargained for provision.  Instead of abiding by the contractual language, Dardashtian, in his zeal and eagerness to sue his business partner Gitman, flouted the agreements and ignored their language.  The law does not permit this.

Nor does the Court's Order temporarily replacing Gitman as a Manager of CSV permit plaintiffs to correct this critical defect.  Since the plaintiffs brought their action while Gitman was a co-Manager, they cannot now -- as an end run around the enforceable contract provisions -- look to the Court's TRO temporarily removing Gitman as Manager to justify their improper pleading.  The Court was clear:  Mr. Gitman retains his right to vote.  Moreover, it was plainly not the Court's intent to create an extra-contractual right that plaintiffs did not enjoy prior to the granting of the TRO.

Plaintiffs' claims regarding trade secrets, trade names, computer property, and confidential and proprietary information must similarly fail.  The trade secrets and confidential and proprietary information are owned by the Plaintiff Entities, not by Dardashtian individually.  It is clear from the pertinent Operating Agreements that the information belongs to the companies.  Because the Plaintiff Entities must be dismissed from this action since Dardashtian acted without authority, all of the claims related to the Plaintiff Entities' trade secrets, trade

2

names, computers, confidential and proprietary information, and any other property owned by the various Plaintiff Entities, must all be dismissed as well. Simply put, Dardashtian, individually, lacks the necessary standing to bring these claims. Thus, Counts 5, 6, 12, 13, 14 and 19 of the Complaint should all be dismissed in their entirety.

Moreover, as explained further below, even if the Plaintiff Entities could somehow survive the standing issues to bring claims based upon trade secrets, these allegations lack the required specificity under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 & 1836. As a result, plaintiffs' claims under the DTSA, for False Designation/Unfair Competition, 15 U.S.C. § 1125, and for Computer Fraud, 18 U.S.C. § 1030, should all be dismissed.

Thus, there should be no federal claims remaining in the Complaint, and no basis for federal jurisdiction. This Court should, therefore, decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367, and dismiss the action in its entirety pursuant to Fed. R. Civ. P. 12(b)(1). Courts in this district routinely decline to exercise supplemental jurisdiction over state law claims, and this Court should follow that precedent.

Even if the Court declines to dismiss the remaining state law claims based upon a lack of jurisdiction, those claims nevertheless fail and should be dismissed as a matter of law. Each and every remaining allegation is conclusory in nature, fails to overcome prescribed pleading hurdles, or fails to allege sufficient damages suffered by Dardashtian individually as opposed to damages incurred by the Plaintiff Entities.

Both the relevant facts and law support granting this motion to dismiss in its entirety. As set forth in detail below: (1) under the various operating agreements, Dardashtian was without authority to bring this action on behalf of the Plaintiff Entities; (2) the Plaintiff Entities should therefore all be dismissed; (3) all claims belonging solely to the Plaintiff Entities should

likewise be dismissed; (4) these claims include all of the federal claims in this action and, thus, there is no basis for federal jurisdiction in this action; (5) the Court should decline to exercise supplemental jurisdiction over this matter and dismiss all remaining state law claims; and (6) notwithstanding a lack of federal jurisdiction, the Court should nonetheless dismiss the remaining state law claims because they fail to state cognizable causes of action.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Complaint should be dismissed with prejudice in its entirety.

## STATEMENT OF FACTS[1]

Pursuant to the CSV Operating Agreement, plaintiff Dardashtian and defendant Gitman are the "sole members of CSV, each owning an equal 50% membership interest and profit percentage of CSV, and both serve as co-managers responsible for its daily operations." Cplt. ¶ 2. CR LLC is an online product "owned by CSV" and is a software service solution "created and owned by CSV to facilitate the messaging of eBay and Amazon store owners' respective communications to their customers and potential customers throughout the United States of America and worldwide." Cplt. ¶ 4. CR LLC was formed after Gitman and Dardashtian discussed, on June 7, 2016, creating a separate LLC so that CSV could transfer the service and its accompanying assets to a "ChannelReply" subsidiary company. Cplt. ¶ 8. NDAP is also a "wholly owned subsidiary of CSV that was engaged in the online sale of automobile parts to customers throughout the United States of America and worldwide." Cplt. ¶ 9.

---

[1] Allegations pleaded in plaintiffs' Complaint, as well as language from three documents plaintiffs attach to their pleadings, discuss and rely upon repeatedly in the Complaint -- the CSV Operating Agreement (Affidavit of Michael Dardashtian in Support of Order to Show Cause Seeking Restraints, dated June 7, 2017) ("Dardashtian Aff." Ex. 2), the NDAP Operating Agreement, Dardashtian Aff., Ex. 4A, and the Operating Agreement of Channel Reply LLC (the "CR LLC Operating Agreement"), Dardashtian Aff., Ex. 19B -- are all relevant to this motion. Each of these documents can be considered on a motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (the court may consider a document, even if not attached or incorporated by reference, where the complaint "relies heavily upon its terms and effect," thus rendering the document "integral" to the complaint).

The CSV Operating Agreement provides that Dardashtian and Gitman are co-Members and co-Managers of CSV.  CSV Operating Agreement at 1, attached hereto as Exhibit 1 to the Declaration of Mark D. Meredith, Esq. ("Meredith Decl.").  Article 8.1(a)-(c) of the CSV Operating Agreement provides that there are two Managers of the Company, and regarding "Decision-Making," "[w]henever Management shall be required to take any action, make any decision or exercise any discretion and there shall be more than one Manager, then except as otherwise provided in this Agreement, the action, decision or exercise of discretion shall require the approval of <u>all</u> of the persons appointed as Manager." (emphasis in original).  Further, the CSV Operating Agreement does not "otherwise provide" any relevant exception to this edict.

The NDAP Operating Agreement designates Gitman and Dardashtian as Members and CSV as the Managing Member.  NDAP Operating Agreement, § 7.1, Meredith Decl., Ex. 2. Only the "Managing Members and authorized agents of the Company shall have the authority to bind the Company," including the "institution, prosecution and defense of any Proceeding in the Company's name."  NDAP Operating Agreement, § 7.3(a).  A "Proceeding" is defined as any administrative, judicial, or other adversary proceeding, including without limitation litigation. . . ."  NDAP Operating Agreement, § 1.35.  Therefore, under the NDAP Operating Agreement, only CSV as Managing Member can initiate a litigation.  CSV, in turn, can only lawfully bring an action upon approval of both Dardashtian and Gitman.  Meredith Decl., Ex. 1, p. 1.

The CR LLC Operating Agreement contains identical language to CSV's Operating Agreement.  Gitman and Dardashtian are co-Members and co-Managers.  CR LLC Operating Agreement at 1, attached at Meredith Decl., Ex. 3.  As with the CSV Operating Agreement, Section 8.1(a)-(c) provides that there are two Managers of CR LLC, and that "[w]henever Management shall be required to take any action, make any decision or exercise any discretion

5

and there shall be more than one Manager, then except as otherwise provided in this Agreement, the action, decision or exercise of discretion shall require the approval of <u>all</u> of the persons appointed as Manager." CR LLC Operating Agreement, § 8.1(c) (emphasis in original). The parties even emphasized in the CR LLC Operating Agreement that such decision "shall require" the approval of "<u>all</u>" Managers.

Each of the Operating Agreements also makes clear that all of the confidential, proprietary and/or trade secret information belongs to the respective companies. The CSV Operating Agreement provides, in relevant part, that each "Member" . . . recognizes and acknowledges that by virtue of its relationship with the Company it may be exposed to, discover, develop, generate or contribute to the *Company's* Confidential Information." CSV Operating Agreement, § 12.2(a) (emphasis added). Further, each "Member hereby acknowledges that all Confidential Information is valuable, material and will significantly affect[] the effective and successful conduct of the *Company's* business and its goodwill." *Id.* (emphasis added). In addition, the agreement provides that "Confidential Information shall mean all information or data relating to the business and affairs *of the Company,*" including all such information "that may be considered to be proprietary to or a trade secret *of the Company*." *Id.*, § 12.2(b) (emphasis added).

The NDAP Operating Agreement contains language whereby Gitman and Dardashtian, as Members of the Company, agree to hold confidential information in the "strictest of confidence, to be used only in connection with the operation *of the Company*." NDAP Operating Agreement, § 6.5(c) (emphasis added). The CR LLC Operating Agreement uses the identical confidentiality and trade secret language that the CSV Operating Agreement does. *See* CR LLC Operating

6

Agreement, § 12.2(a)-(b).  In each case, the confidential, proprietary, and trade secret information is owned by the respective companies.

After a series of disputes, plaintiffs commenced this action against all defendants, including defendants David Gitman, Accel Commerce, LLC, Dalva Ventures, LLC and Channel Reply, Inc. (together, the "Defendants").  This Court ordered the Defendants to provide Dardashtian with access to various company accounts, and to restore the Plaintiff Entities to the same status as of May 26, 2017.  As a consequence, defendant Channel Reply, Inc. has been fully dissolved and should be dismissed from this action.  Gitman was also replaced temporarily as Manager of CSV as part of the Court's Order.  The parties last appeared before Magistrate Judge Francis on July 5, 2017, after which all known outstanding compliance issues were resolved.  Plaintiffs have not since raised any other compliance issues with Defendants' counsel.

## ARGUMENT

## I.   THE STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must "provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly,* 550 U.S. at 570).  *See also Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (same).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  In applying that standard, the Court should accept as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "threadbare

7

recitals of the elements of a cause of action."  *Id.*  If the court can infer no more than "the mere possibility of misconduct" from the factual averments -- in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate.  *Twombly,* 550 U.S. at 570*; Starr,* 592 F.3d at 321 (quoting *Iqbal*).

This motion relies not only on plaintiffs' allegations, but on the language of the three Operating Agreements, all of which were attached to plaintiffs' pleadings.  These documents are integral to, and intertwined with, plaintiffs' pleading, such that they are not "matters outside the pleadings" under Fed. R. Civ. P. 12(d).  They can and should be considered by the Court on this motion without converting it to a motion for summary judgment under Fed. R. Civ. P. 56. *Chambers,* 282 F.3d at 153 (the court may consider a document, even if not attached or incorporated by reference, where the complaint "relies heavily upon its terms and effect," thus rendering the document "integral" to the complaint).

## II.   DARDASHTIAN ACTED WITHOUT AUTHORITY TO BRING AN ACTION ON BEHALF OF THE PLAINTIFF ENTITIES AND, THEREFORE, THOSE ENTITIES SHOULD BE DISMISSED AS A MATTER OF LAW.

None of the Plaintiff Entities – that is, CSV, NDAP and CR LLC – belongs in this lawsuit.  Dardashtian has no authority to sue on their behalf.  Indeed, plaintiffs admit as much in their Complaint:

> As Plaintiff Dardashtian is a 50% member of Plaintiff CSV, Plaintiff ChannelReply and Plaintiff DNAP, and therefore *without the ability to authorize Plaintiff CSV, Plaintiff Channel Reply, and Plaintiff NDAP respectively, to file suit*, Plaintiff Dardashtian brings such action on behalf of himself, individually, and on behalf of Plaintiff CSV, Plaintiff ChannelReply and Plaintiff NDAP for damages suffered by such entities as a result of Defendants' actions.

Cplt. ¶ 16 (emphasis added).

8

There are only two explanations:  either (1) plaintiffs brazenly admit that Dardashtian lacks the authority to bring an action on behalf of the Plaintiff Entities, and then Dardashtian frivolously brought an action on their behalf anyway, or (2) this is a typographical error that leans heavily in the direction of a Freudian slip.  In any event, the Plaintiff Entities are not properly in this action. The Operating Agreements plainly state that this is so.  Thus, CSV, NDAP, and CR LLC should be dismissed from this lawsuit.  Moreover, all of plaintiffs' claims that stem from each of those corporate entities, including any proprietary information, trade secrets, or intellectual property claims owned by the corporate entities, as well as the claims for breach of contract, unfair trade practices, and conversion of company assets should also be dismissed.

CSV is the holding company that owns NDAP.  NDAP, in turn, operates CR LLC. Article 8.1(a)-(c) of the CSV Operating Agreement provides that there are two Managers of the company, and "[w]henever Management shall be required to take any action, make any decision or exercise any discretion and there shall be more than one Manager, then except as otherwise provided in this Agreement, the action, decision or exercise of discretion shall require the approval of all of the persons appointed as Manager." (emphasis in the original).  The language is clear.  Where, as here, there is more than one Manager, all Managers have to approve of the action. There is no exception elsewhere in the Operating Agreement that would permit Dardashtian to bring an action on behalf of CSV.  Gitman has not approved the action on behalf of CSV.  Therefore, CSV must be dismissed from this action, as well as all claims held by CSV or relating to the purported CSV Operating Agreement, including trade secret and proprietary information misappropriations, theft and violations, breach of contract, breach of the implied covenant of good faith and fair dealing, and any breach of fiduciary duty claims owing to CSV.

Similarly, NDAP also has an operating agreement that precludes Dardashtian from unilaterally bringing an action on its behalf.  As an initial matter, the NDAP Operating Agreement, designates its Managing Members as CSV.  CSV, in turn, requires the consent of all of the managers before bringing an action on behalf of the entity.  Thus, the conclusion is the same:  Gitman's consent is a prerequisite to bringing suit on behalf of NDAP.  As more evidence that Dardashtian needed Gitman's approval to act on behalf of NDAP, Section 7.7 states that only Managing Members can bind the company "by unanimous consent" if there is more than one Managing Member.  Even if the agreement is construed to mean that both Gitman and Dardashtian are Managing Members of NDAP, Dardashtian has once again acted outside the scope of his authority.

CR LLC's claims fail for the same reasons.  CR LLC's Operating Agreement parrots the language used in the CSV Operating Agreement.  As in the CSV Operating Agreement, Section 8.1(c) of the CR LLC Operating Agreement, the Decision-Making clause, requires that whenever Management takes "any action, make[s] any decision or exercise[s] any discretion, . . . the action, decision or exercise of discretion shall require the approval of <u>all</u> of the persons appointed as Manager."  (emphasis in the original).  Here, as in the CSV Operating Agreement, the CR LLC Operating Agreement actually goes the extra step to emphasize that "<u>all</u>" of the Managers must approve the action.  Dardashtian failed to secure the approval of all of the persons appointed as Manager, namely Gitman.

New York law strengthens this reading of the Operating Agreements.  Where co-owners exist, absent an agreement to the contrary, consent of the other co-owner is required prior to bringing an action on behalf of an entity.  In *Crane, A.G. v. 206 W. 41st St. Hotel Assoc., L.P.*, 87 A.D.3d 174 (1st Dep't 2011), the court ruled that the deadlock between two co-owners over

10

whether they should defend a foreclosure action against a hotel required the conclusion that one party had no authority to cross-move to vacate an alleged default and seek leave to file an answer. *Id*. at 176-77 (citing *Sterling Indus. v. Ball Bearing Pen Corp*., 298 N.Y. 483 (1949)). The co-owner or 50-50 shareholder needed the consent of the other to act. *See Stone v Frederick*, 245 A.D.2d 742, 666 N.Y.S.2d 294 (1997). In *Crane*, the First Department reasoned that the parties' agreement governed, and the freedom of contract of the parties must be respected. 87 A.D.3d at 177.

The Operating Agreements here are no different from those in *Crane* and *Sterling Industries*. The Operating Agreements plainly limit the authority of one manager to act unilaterally on behalf of the entity. New York courts have repeatedly respected the rights of the parties to contract. Dardashtian and Gitman entered into contracts in which their authority to bring lawsuits was limited. Dardashtian, in purporting to bring actions on behalf of CSV, NDAP and CR LLC, has acted beyond his authority. All of the relief sought on behalf of the Plaintiff Entities should therefore be denied, and the Plaintiff Entities dismissed as plaintiffs.

## III. ALL CLAIMS BELONGING TO, OR OWNED BY, THE PLAINTIFF ENTITIES SHOULD BE DISMISSED, INCLUDING ALL FEDERAL CAUSES OF ACTION.

Once the Plaintiff Entities are dismissed from this action, as is plainly warranted under the Operating Agreements, the Court should also dismiss all trade secret, trade name, contract, misappropriation, conversion and  proprietary/confidential information-related claims to the extent those claims belong to the Plaintiff Entities. This is because those claims are derived from, and based upon, company ownership. Dardashtian, individually, lacks standing to bring claims seeking remedies that belong solely to the Plaintiff Entities and, therefore, he fails to state a claim upon which relief can be granted.

11

Specifically, plaintiffs' claims based upon ownership rights held by the Plaintiff Entities all fail as a matter of law:  trade secrets and confidential and proprietary information claims under the Defense of Trade Secrets Act, 18 U.S.C. §§ 1832 & 1836 (Counts 5 and 6), breach of contract allegations stemming from alleged confidentiality breaches (Count 7), unjust enrichment claims based upon misappropriation of company assets, confidential information, intellectual and proprietary property and/or trade secrets (Count 8), False Designation/Unfair Competition claims under 15 U.S.C. § 1125 (Count 12), Computer Fraud allegations pursuant to 18 U.S.C. § 1030 regarding company computers with admitted joint access by Gitman and Dardashtian (Counts 13 and 14), Unfair Competition (Count 18), and Misappropriation of Trade Secrets (Count 19).  All of these claims belong, if at all, to the Plaintiff Entities.  Dardashtian has failed to allege any sufficient resulting damages to himself individually as a result of these claims.  Therefore, all of these claims should be dismissed as a matter of law.

Trade secrets and confidential and proprietary information, for example, belong not to Dardashtian individually, but instead to the Plaintiff Entities.  This is clear from the relevant provisions in the Operating Agreements.  *See* CSV Operating Agreement, § 12.2(a)-(b); NDAP Operating Agreement, § 6.5(c); and CR LLC Operating Agreement, § 12.2(a)-(b).  Dardashtian has no individual claim based upon trade secrets, trade names, confidential and proprietary information, False Designation/Unfair Competition, or Computer Fraud.  *See Grusd v Arccos Golf LLC*, 2014 N.Y. Misc. LEXIS 2543, at *15-21 (N.Y. Sup. Ct., N.Y. Co., June 3, 2014) (finding that co-owner failed to state a claim that he could recoup trade secrets, but rather could claim only that he was divested of his equity in the company that owns such secrets).

Moreover, with respect to plaintiffs' claims under the Defend Trade Secret Act (DTSA), the conclusory allegations fail to provide the required specificity regarding what particular trade

secrets have been taken.  *See ChatterPlug, Inc. v. Digital Intent, LLC,* 2016 WL 6395409, *3 (N.D. Ill. Oct. 28, 2016) (wherein the court dismissed the DTSA complaint because it did "not provide Defendants with the general contours of the alleged trade secrets that Chatterplug is seeking to protect" stating, "Defendants are entitled to be able to discern what trade secrets are at issue."); *Sit-Up Ltd. v. IAC/InterActive Corp.,* 2008 WL 463884, *10 (S.D.N.Y. Feb. 20, 2008) ("the law requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed.").

Furthermore, regarding computer fraud, 18 U.S.C. § 1030 makes clear that in order to make out a claim, plaintiffs' allegations must include that defendants exceeded authorized access. The Computer Fraud and Abuse Act (CFAA) defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).  It does not address misappropriation, as plaintiffs seem to allege. *See United States v. Nosal,* 676 F.3d 854, 860 (9th Cir. 2012) (noting that the CFAA "targets the unauthorized procurement or alteration of information, not its misuse or misappropriation").  Here, plaintiffs admit that Dardashtian and Gitman "jointly and equally shared and had access to the Company Computers passwords, logon and login information, administrator information and therefore each fully maintained equal access to the Company Computers" (Cplt., ¶ 186) and, thus, could not have exceeded his authorized access.  Moreover, plaintiffs fail to allege sufficiently any damages flowing to Dardashtian directly from the alleged computer fraud.

Accordingly, all of the remaining claims belonging to the Plaintiff Entities should be dismissed.  This includes all federal claims in the Complaint.

**IV.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS AND DISMISS ALL REMAINING CLAIMS.**

Once the Court dismisses all federal claims in this action, there remains no basis for independent federal jurisdiction.  Under Fed. R. 12(b)(1), the Court should dismiss the entire action for lack of federal subject matter jurisdiction.

Pursuant to 28 U.S.C. § 1367(c), a federal district court may exercise its discretion and decline to assert supplemental jurisdiction over remaining state law claims when it "has dismissed all claims over which it has original jurisdiction."  Indeed, as the Second Circuit has found, "where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims." *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 Fed. Appx 334, 337 (2d Cir. 2011). *See also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 368 (S.D.N.Y. 2009) (dismissing pendent state law claims where there was no remaining independent basis of federal jurisdiction).

Where, as here, none of the claims providing an independent basis of federal jurisdiction should survive this motion, the Court should dismiss any remaining state law claims.

**V.   EVEN IF THE COURT RETAINS SUPPLEMENTAL JURISDICTION, THE REMAINING STATE LAW CLAIMS FAIL AS A MATTER OF LAW.**

In the event the Court retains jurisdiction over plaintiffs' remaining state law claims in this action, they all fail as a matter of law.  First, plaintiffs provide only conclusory allegations that do not meet pleading standards set forth in *Iqbal* and *Twombly*.  Second, there is not a single allegation of damages that flows individually to Dardashtian.  For example, plaintiffs' claims

14

regarding breach of fiduciary duty (Counts 2 & 4) allege only damages that inure to the benefit of the Plaintiff Entities, not Dardashtian individually.  Thus, because his claim for damages is derivative, and the Plaintiff Entities are not proper parties to this action, Dardashtian's claims for breach of fiduciary duty must fail.  *See Weidberg v. Barnett*, 752 F. Supp. 2d 301, 307-08 (dismissing LLC member and manager's breach of fiduciary duty claims because damage claims were derivative in nature and ran to the entity, not the individual).  The same is true with respect to plaintiffs' claims for conversion, and for tortious interference:  the claims -- and alleged damages -- are derivative in nature and should be dismissed.  *See, e.g.*, *Paradiso & DiMenna, Inc. v. DiMenna*, 649 N.Y.S.2d 126, 127 (1st Dep't 1996) ("The conversion of funds from the corporate account 'resulted in a corporate injury because it deprived [the corporation] of those [funds].'"); *see also Bright View Trading Co. v. Park*, 2004 U.S. Dist. LEXIS 18572, at *13 (S.D.N.Y. Sept. 15, 2004) (concluding corporation, not individual, was injured).

Plaintiffs' failure to allege sufficient damages claims also surfaces with respect to the repeated, reflexive, conclusory claims for attorneys' fees.  *See, e.g.*, Cplt. ¶ 122, 125, 130, 136 & *passim*.  Under the various Operating Agreements, plaintiffs have no basis to attorneys' fees whatsoever where the Court ordered a Temporary Restraining Order to restore circumstances to the status quo as of May 26, 2017.  Section 17.10 of the CSV Operating Agreement provides for attorneys' fees from the non-prevailing party only in the event the Company, Member or member of Management "obtains a judgment in connection with a dispute."  Second Circuit law is abundantly clear:  "[T]he procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status."  *Christopher P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990) (citing *Bly v. McLeod*, 605 F.2d 134, 137 (4th Cir. 1979), *cert. denied*,

15

445 U.S. 928 (1980)).  Plaintiffs have not obtained a judgment under any reading of the law, and are not entitled to attorneys' fees.  *See Mastrio v. Sebelius*, 768 F.3d 116, 121 (2d Cir. 2014) (finding that "where 'the relief [does] not result from a determination on the merits . . . plaintiff[ ] [does] not prevail'" and that a TRO that simply retains the "status quo" cannot trigger a "prevailing party" award).

Finally, plaintiffs' remaining claims fail to adequately allege a cause of action.  Count I, for injunctive relief, articulates a remedy, not a cause of action, and should be dismissed on its face.  *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) (recognizing that "injunctions are remedies, not causes of action"); *see also Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. Jan. 30, 2014) (granting motion to dismiss plaintiff's cause of action for declaratory and injunctive relief on that grounds that these "are remedies, not causes of action") (citing *Chiste*).  Likewise, plaintiffs' claim for defamation fails on the face of its insufficient allegations to overcome Gitman's qualified privilege to discuss work-related matters with co-workers.  *See Ramsaran v. Abraham*, 2017 U.S. Dist. LEXIS 47751, at *13, 17 (S.D.N.Y. Mar. 30, 2017) (dismissing plaintiff's defamation claim).  All remaining claims are similarly flawed.

Accordingly, the Complaint should be dismissed in its entirety with prejudice.

## CONCLUSION

For all the reasons set forth above, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants David Gitman, Accel Commerce, LLC, Dalva Ventures, LLC, and Channel Reply, Inc. respectfully submit that plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Date: July 14, 2017                              DENTONS US LLP


By: */s/ Brian S. Cousin*
    Brian S. Cousin, Esq.
    brian.cousin@dentons.com
    Lindsay F. Ditlow, Esq.
    lindsay.ditlow@dentons.com
    Mark D. Meredith, Esq.
    mark.meredith@dentons.com
    1221 Avenue of the Americas
    New York, NY  10020-1089
    (212) 768-6700
    *Attorneys for Defendants*
    *David Gitman, Accel Commerce, LLC, Dalva*
    *Ventures, LLC, and Channel Reply, Inc.*

17

## CERTIFICATE OF SERVICE

I certify that on July 14, 2017, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF System, which will serve all counsel of record by notice of electronic filing under Fed. R. Civ. P. 5 and Local Rule 5.2.


/s/ Mark D. Meredith
Mark D. Meredith

104235904