H6LsDARC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MICHAEL DARDASHTIAN, et al.

 4                  Plaintiffs,

 5           v.                          17 Civ. 4327 (LLS)

 6   DAVID GITMAN, et al.,

 7                  Defendants.

 8   ------------------------------x
                                        New York, N.Y.
 9                                      June 21, 2017
                                        3:00 p.m.
10
     Before:
11
                        HON. LOUIS L. STANTON,
12
                                        District Judge
13
                            APPEARANCES
14
     ARTURI, D'ARGENIO & GUAGLARDI, LLP
15        Attorneys for Plaintiffs
     BY:  BARRY S. GUAGLARDI
16        EVAN OSTREV

17   DENTONS US LLP
          Attorneys for Defendant Gitman
18   BY:  LINDSAY F. DITLOW
          MARK D. MEREDITH
19
     MORRISON COHEN, LLP
20        Attorneys for Defendants Falk and Summit
     BY:  EDWARD P. GILBERT
21

22

23

24

25
```

H6LsDARC

1            (Case called)

2            THE COURT:  Has general reply been dissolved?

3            MS. DITLOW:  Yes, your Honor.

4            The certificate of dissolution was filed yesterday,

5    and a copy of that was submitted not only to Mr. Guaglardi

6    yesterday, but also in connection with our court papers today.

7    It has been dissolved, as well as transfer of all accounts,

8    transferring money.

9            There is one bank account, all the money was

10   transferred out, but it could not be closed.  There were some

11   pending transactions and the bank would not close it for that

12   purpose.  But certainly, once those pending transactions are

13   cleared, it will be closed and we are happy to provide a full

14   accounting of that account.

15           THE COURT:  How many items remain open and unsatisfied

16   at present?

17           MR. GUAGLARDI:  I can go through them with your Honor.

18           THE COURT:  No.

19           MR. GUAGLARDI:  No?

20           THE COURT:  We'll proceed much more efficiently if,

21   when I ask a question, I get the answer to that question.

22           The question is, how many?

23           I know there are lots of things that you all want to

24   tell me, but I can only process them if I do it in accordance

25   with the way my mind happens to work.

```
 1              MR. GUAGLARDI:  No problem at all, your Honor.  I am

 2     going to tell your Honor right now.

 3              THE COURT:  There is a list of 10 at page 24 --

 4              MR. GUAGLARDI:  Yes.

 5              THE COURT:  -- 25, and 26 of your memorandum.

 6              MR. GUAGLARDI:  There are eight account issues, your

 7     Honor, and one banking issue.  So nine total.

 8              THE COURT:  OK.  That's a much more manageable number

 9     than we have been living through.

10              I assume progress is being made.

11              MR. GUAGLARDI:  Some.  The major issue still hasn't

12     been resolved.

13              THE COURT:  Excuse me?

14              MR. GUAGLARDI:  Some progress, but the major issue,

15     the return of the G Suite to the NDAP, LLC account still has

16     not been done.  That is the primary one that we had asked for.

17              THE COURT:  What, as you see them, are the issues with

18     respect to that item?

19              MS. DITLOW:  We sent a screenshot.  The accounts that

20     they contend were still --

21              THE COURT:  This is the time doctor?

22              MS. DITLOW:  I think the G Suite and other account,

23     they didn't have complete access to last night.  They sent us

24     a list, similar to the list that's in their papers, and we

25     provided them a Word document that had screenshots and
```

H6LsDARC

1   passwords.

2               THE COURT:  Look, I may not have made the question as

3   clear as I should have.  I'm not asking for the history of

4   compliance to date or the amounts that remain still at issue.

5               I'm asking for, what are the issues with respect to

6   that, as you see them?

7               MS. DITLOW:  We've reviewed with Mr. Gitman, and to

8   the best of his ability and best of his knowledge, they have

9   complete access.  If there is an issue, a dispute to that, we

10   are happy to do a screen-sharing session or something to

11   assist --

12               THE COURT:  I'm going to try one more time.

13               What are the issues with respect to that as you

14   perceive them?

15               MS. DITLOW:  None.  We think we've done full

16   compliance.

17               We do understand there is one bank account issue, and

18   that's in connection with the account that can't be closed that

19   we are going to provide an accounting for, but with regards to

20   the accounts --

21               THE COURT:  You're baffled by his position that there

22   are still unresolved issues with respect to that?

23               MS. DITLOW:  Yes.  But I will say, and what we have

24   tried to work with them last night, if there are still issues,

25   we are happy to resolve them.

H6LsDARC

1          He shut off communications in an attempt to

2     facilitate that around last evening.  We are willing to do a

3     screen-sharing session, whatever we can do to comply.

4     Mr. Gitman certainly wants to.

5          At this point --

6          THE COURT:  Look, life is short, and we're going to

7     consume too much of it in speeches this afternoon if we don't

8     confine our responses to answering the questions I ask.

9          MS. DITLOW:  Yes.

10         In short, your Honor, we believe we're in full

11    compliance.  If there are issues that remain outstanding, we

12    are happy to work with plaintiff to resolve them.

13         THE COURT:  I had already sensed that from your

14    previous statement of it three times.

15         MS. DITLOW:  My apologies.

16         THE COURT:  What do you see as the unresolved issues

17    there?

18         MR. GUAGLARDI:  Thank you, your Honor.

19         We do not have direct access to

20    *Michael@channelreply.com*, as we did on May 26.

21         Instead, Mr. Gitman is now forwarding the e-mails to

22    an alternative e-mail address that does not give us the ability

23    to access or control our own e-mail, as we were able to do on

24    May 26.

25         THE COURT:  What's the remedy for that?

H6LsDARC

| | |
|---|---|
| 1 | MR. GITMAN:  That issue was resolved last night. |
| 2 | THE COURT:  Excuse me? |
| 3 | MR. GITMAN:  It's been remedied.  It was remedied last |
| 4 | night.  That statement is untrue. |
| 5 | MR. GUAGLARDI:  I can only tell you -- |
| 6 | MR. GITMAN:  I have a screenshot here to prove it. |
| 7 | MR. GUAGLARDI:  We continue to check, and Mr. Gitman's |
| 8 | missed three or four deadliness now, including your Honor's, so |
| 9 | it is a moving target. |
| 10 | We are spending extraordinary resources to try and do |
| 11 | the hide-and-go-seek with Mr. Gitman, which is not what your |
| 12 | Honor had indicated. |
| 13 | THE COURT:  Can it be resolved by a trier of fact by |
| 14 | demonstrating to him your problem in getting access on a |
| 15 | machine and your method of solving that difficulty? |
| 16 | MR. GITMAN:  That makes a lot of sense to me. |
| 17 | THE COURT:  You think that's feasible to do? |
| 18 | MR. GITMAN:  Absolutely. |
| 19 | MR. GUAGLARDI:  I do, as well. |
| 20 | THE COURT:  Do you deny that it is feasible to do? |
| 21 | MR. GUAGLARDI:  Not at all.  I believe it is feasible. |
| 22 | THE COURT:  How many of the remaining ten issues, nine |
| 23 | or ten, are susceptible to that same method of treatment? |
| 24 | MR. GUAGLARDI:  I believe all of them. |
| 25 | THE COURT:  All of them? |

H6LsDARC

1          MR. GUAGLARDI:  Although I can just speak, your

2    Honor --

3          THE COURT:  Please.  You did very well.

4          MR. GUAGLARDI:  Yes.  The answer is all of them.  All

5    of them.

6          THE COURT:  Do you agree with that?

7          MS. DITLOW:  We agree.

8          THE COURT:  Well, it's a little hard for me to

9    articulate what I am trying to express because, of course, as

10   an outsider, not only I, but any lay man of any intelligence

11   would put the question, well, if it can be done that way to a

12   trier of fact, why can't it be resolved that way between

13   yourselves.

14         But I forebear to ask that question, because I'm

15   rather impressed, actually, by the amount that has been

16   accomplished once the situation was taken in hand and by the

17   apparent -- putting to one side the bitching and fetching --

18   the apparent goodwill and good heart and cooperative nature of

19   the exercise.  I think that should be applauded and not

20   degraded.  I'm not putting that question, although, it is so

21   obvious as to almost blank at all of the thought.

22         I ask these questions because, on going through your

23   papers, well, frankly, I got the impression that some of them

24   were drafted before our conference of last Monday.  They had

25   kind of a curiously dated series of complaints about what had

1   happened and not happened, that I had the impression were

2   pretty well taken care of on Monday afternoon.

3          I mention that because the papers on both sides --

4   this is not a fault of the clients, this is a comment directed

5   to the lawyers, because they should know better -- on both

6   sides failed to make any solid, intellectual distinction

7   between matters which can be addressed by a preliminary

8   injunction and matters which have to be resolved after trial.

9          Yet that is the situation that we're in.  I'm merely

10  complaining about the past, challenging the credibility of one

11  side or the other side, about that kind of matter.  It doesn't

12  help us put in place an injunction which will control the

13  further proceedings until it is either amended or the case is

14  over or a permanent injunction is entered or not entered.

15         I think here, I think I'm referring mainly to a matter

16  of phraseology, but to the extent it is anything more than

17  that, I will point out that the directions of a court -- be it

18  Judge Ramos or myself or a magistrate judge -- continue even

19  past the entry of a preliminary injunction and remain for the

20  continued action and, often, the time thereafter.  It's not as

21  though they evaporate.

22         An order that he entered remains subject to

23  compliance.  An order that I entered on Monday is still valid

24  on Friday and thereafter.  Therefore, it's not as though the

25  parties are operating in a gap during which there were no

1    orders.  That makes, again, the question of what is needed in a

2    preliminary injunction left a little baffling.  I think the

3    lawyers could do better than that if they kept those

4    differences in mind.  Their work could be more practical.

5    Cases are decided on evidence and the law, not on rhetoric.

6            Now, how to cope with that?  Because this is really

7    the return date of the applications for a preliminary

8    injunction, and the submissions on both sides that have

9    suffered severely from the defects I have pointed out are of

10   not much use in the preparation of an injunction.

11           I think -- and I offer this at least preliminarily for

12   the reactions of counsel -- I'd like to hear what they say

13   before I sign it, but I'm quite inclined to think this is the

14   path to take.  Because, although you're whittling down rather

15   commendably the fields of dispute and the long list of

16   grievances in dispute, nevertheless, you are coming down to

17   those that are harder and harder.

18           My thought is to refer this to Magistrate Judge

19   Francis for the purpose of his identification and resolution of

20   outstanding disputes regarding completeness of defendants'

21   compliance with orders of this court -- Judge Ramos on June 8

22   and 9 and Stanton on June 19 -- for the purpose of restoring

23   the factual situation to that existing on May 26, 2017, here

24   and determined resolution of each specific item still in issue

25   between the parties.

H6LsDARC

1              Now, I think this afternoon I've heard that that is

2       already quite feasible.

3              Recommend directions to be included in a preliminary

4       injunction as necessary to address continuing violations.

5              That would be the purpose of the specific

6       non-dispositive items to be determined by Judge Francis.

7              That, in its drafting, leaves unresolved -- because it

8       is unresolvable in a preliminary injunction -- the underlying

9       business grievances expressed in the complaint, and since then,

10      such matters as penalties and attorneys' fees, costs for

11      laggardly compliance or breaches of fiduciary relationship or

12      whatever.  Those things have to be resolved as part of what

13      would remain in the case.

14             What's your reaction to that?

15             MS. DITLOW:  We are certainly open to that and would

16      absolutely agree to that.

17             THE COURT:  You do what?

18             MS. DITLOW:  We agree with your Honor's

19      recommendation.  We would also like to work with plaintiff's

20      counsel in the interim before that with Judge Francis to

21      hopefully resolve them.

22             THE COURT:  Absolutely, to shorten the list.

23             MS. DITLOW:  Absolutely.

24             THE COURT:  It may solve them all.

25             MS. DITLOW:  Yes.

1          THE COURT:  But it takes machinery to encourage that.

2          MS. DITLOW:  Absolutely.

3          MR. GUAGLARDI:  I agree, your Honor.

4          THE COURT:  I should point out then, at this

5     juncture -- and if I were you, and you get started before him,

6     I would consider it, and I think it's sensible to wait until

7     you get a look at it, if I were in your shoes, I would do.  But

8     it's also possible to consent to the case being referred to the

9     magistrate judge for all purposes.

10          In this, you've got a very good magistrate judge, and

11     it's the kind of case that they're very familiar with.  I think

12     that's for consideration by counsel.

13          The thought would be that, at the end of this process,

14     the parties will emerge with what remains for -- I'm sorry,

15     they won't emerge with that -- they will emerge with a useful

16     articulation of what portion of preliminary relief can usefully

17     be made and should be made.  In other words, something goes

18     beyond what you've already been ordered to do and will have

19     some use in controlling the immediate urgent situation.  The

20     rest of it is the litigation of the underlying business

21     disputes.

22          Now, I will send that right down to him.  My thought

23     was, I might say to him that if he can get to this, say, this

24     week or next week and complete it by sometime the following

25     week or the week thereafter, the sooner the better for the

 1   parties.  But it is good for you to both keep hammering at it

 2   because you know what you're doing.  He has to go through a

 3   process of education, and that will take time.

 4          But I no longer perceive the passing of a day or so as

 5   being something that's really inflicting an injury on people

 6   the.

 7          MS. DITLOW:  Your Honor, if I may?

 8          MR. GUAGLARDI:  I'm sorry.  I had an issue with that

 9   that I wanted to discuss with your Honor that I think your

10   Honor should be aware of.

11          THE COURT:  All right.

12          MR. GUAGLARDI:  We have received termination letters.

13          THE COURT:  Oh, yes.  I saw those.

14          MR. GUAGLARDI:  That is a very serious issue.

15          The two developers that are managing the code that are

16   from Russia, that Mr. Gitman met with, that Mr. Gitman

17   telegraphed during the last conference might quit, in fact, did

18   quit.

19          Without getting into what we think about why they quit

20   or what we might suppose, the issue is those developers need to

21   be replaced immediately so that Channelreply --

22          THE COURT:  I thought you had fairly well replaced

23   them?

24          MR. GUAGLARDI:  We have not replaced them yet.  We

25   have a gentleman that we are going to speak to about it.

H6LsDARC

1              THE COURT:  I see.

2              MR. GUAGLARDI:  We understand that within a week, we

3     are going to have a replacement for those developers so that

4     those developers can then continue to manage the code and

5     manage the customer issues as well.  I just wanted to put the

6     court on notice that we will be doing that.

7              THE COURT:  I don't have to be on notice.  Those are

8     matters left to Mr. Liebman and Dardashtian.

9              MR. GUAGLARDI:  That's right.

10             THE COURT:  They are charged with running the company

11    now.

12             MS. DITLOW:  Your Honor, the issue I wanted to raise,

13    and while we are aware that isn't the one, as your Honor is

14    probably familiar with by the papers --

15             THE COURT:  By the way, in relieving you, as I did on

16    Monday, I do not mean to take away your vote, your ability to

17    vote on matters as a 50 percent shareholder --

18             MR. GITMAN:  Thank you, your Honor.

19             THE COURT:  -- in the company.

20             I don't mean to deprive you of the exercise of a vote,

21    or, if and where you have it under the articles, a veto.

22             What I took away was your ability to act for the

23    company, but not your ownership.

24             MR. GUAGLARDI:  May I just, your Honor, address that

25    question?

H6LsDARC

1          THE COURT:  Yes.

2          MR. GUAGLARDI:  So if Mr. Liebman determines, as the

3    person that has been appointed to manage the companies, that it

4    is in the best interest of the plaintiff companies to retain a

5    replacement developer, Mr. Liebman has the controlling

6    determination because he's the one that your Honor put in to

7    manage those companies.

8          So I don't want the record to reflect that if we go

9    and we have a replacement developer, and Mr. Gitman steps in to

10   try to object to, hypothetically, obstruct our ability to

11   operate the company, that he should have the ability to do

12   that.  We anticipate that will happen.  We want to avoid that,

13   because we'll end up back here again, and we are trying to

14   avoid that.

15         MS. DITLOW:  I doubt that would happen.

16         MR. GUAGLARDI:  We disagree.  Then we shouldn't have

17   an issue if they doubt that would happen.

18         THE COURT:  Is he authorized to do that under the

19   operating agreement?

20         MR. GUAGLARDI:  It's not clear because this particular

21   issue wasn't contemplated.  The developers were not part of the

22   operating agreement that Mr. Gitman said didn't exist.

23         THE COURT:  Certainly the operating agreement was

24   addressed to operating the company, not to a specific

25   situation.

H6LsDARC

1            MR. GUAGLARDI:  Right.

2            So we have two managing members, but now your Honor

3       has appointed effectively a tie-break manager, which is

4       Mr. Liebman, for the purpose of managing.  That is what our

5       understanding of the appointment of a third party in order to

6       create a neutral person to operate.

7            MS. DITLOW:  Your Honor.

8            MR. GUAGLARDI:  Excuse me for a second.

9            We do not want to be in a position where we are

10      exactly where we were before we came back to this court, where

11      Mr. Gitman is obstructing the company's ability to operate.

12            THE COURT:  I regard this as a matter controlled by

13      the operating agreement.  I'm not going to make a ruling on it,

14      because I don't want to set a precedent of backing up or

15      undercutting the operating agreement.

16            MR. GUAGLARDI:  Can I just ask for clarification?

17            THE COURT:  What clarity?

18            MR. GUAGLARDI:  Only Mr. Liebman's role as it relates

19      to --

20            THE COURT:  It is as stated as a manager in Article 8

21      of the operating agreement.

22            MR. GUAGLARDI:  OK.

23            THE COURT:  That is the provision under which I

24      appointed him.

25            MR. GUAGLARDI:  OK.

H6LsDARC

 1          THE COURT:  He is to act that way, and if he fails

 2     to act that way, he is acting in derogation of his own

 3     responsibilities.

 4          MR. GUAGLARDI:  The only issue I have with that then,

 5     just for clarification, is now we have three managers.  We have

 6     Mr. Gitman, we have Mr. Dardashtian --

 7          THE COURT:  You don't have Mr. Gitman.

 8          MR. GUAGLARDI:  That's correct.  I apologize.

 9          THE COURT:  I removed him --

10          MR. GUAGLARDI:  My mistake.  I apologize.

11          THE COURT:  -- Monday afternoon in your presence.

12          MR. GUAGLARDI:  I apologize.  My mistake.  Your Honor

13     is correct.

14          Thank you.  That clarifies what my concern was.

15     Thank you.

16          THE COURT:  I didn't clarify them.  You clarified

17     them.

18          MR. GUAGLARDI:  I clarified them.

19          MS. DITLOW:  Judge, just so we have some additional

20     clarification, he is removed as a manager but still has his

21     voting power, as your Honor --

22          THE COURT:  Has what?

23          MS. DITLOW:  Before you mentioned that Mr. Gitman

24     still has his voting power?

25          THE COURT:  As the owner of his financial interest in

1    the company.

2              MS. DITLOW:  OK.  For day-to-day managerial operation,

3    he is no longer -- just for clarification purposes.

4              THE COURT:  Now, you say just for clarification.  What

5    have I left unclear?

6              MS. DITLOW:  Since Mr. Guaglardi brought up the

7    day-to-day management aspect of the decision-making and, kind

8    of, brought in Mr. Gitman as one of the approval that would be

9    necessary thereunder, I wanted to make sure that for

10   decision-making --

11             THE COURT:  Did you hear my answer?

12             MS. DITLOW:  I did, your Honor.

13             THE COURT:  Did it put your mind at rest?

14             MS. DITLOW:  It did, your Honor.  Thank you.

15             THE COURT:  Good.

16             MS. DITLOW:  The urgent point that I wanted to raise

17   was separate and apart from that.

18             As your Honor might be familiar with, there is an

19   asset purchase agreement that is currently at stake, and the

20   buyer has been routinely reaching out to Mr. Gitman to find out

21   the status of that and whether that can be executed.

22             There is a representation and warranties provision

23   that requires the parties to essentially sign off that there is

24   no litigation pending.  Obviously we know that is not the case.

25             THE COURT:  That would be hard to do.

H6LsDARC

1              MS. DITLOW:  Right.

2              We would like permission from the court to communicate

3       with the buyer, possibly inform them of this litigation,

4       without any claims from Mr. Guaglardi -- from Mr. Dardashtian

5       that would be interfering with the asset purchase agreement,

6       but also, too, to set up a mechanism to execute it by putting

7       sale proceeds in escrow pending an accounting.

8              MR. GUAGLARDI:  We don't agree with that and there is

9       in action pending even --

10             THE COURT:  Excuse me?

11             MS. DITLOW:  Well --

12             MR. GUAGLARDI:  There has been no affirmative claim

13      filed to even request that relief.  We wouldn't want any

14      unilateral or ex parte communications going on with the buyer.

15             We are happy to talk to counsel for Mr. Gitman about

16      seeing whether we can consensually agree -- and we have already

17      previously spoken to Ms. Ditlow's predecessor -- and we are

18      happy to continue to talk to her.  We don't believe that it is

19      appropriate that that issue is even before the court.

20             MS. DITLOW:  Well --

21             THE COURT:  I don't either.

22             MS. DITLOW:  It may be soon.  We are in preparations

23      to prepare affirmative claims.

24             THE COURT:  As they keep saying in the congress,

25      let me be clear.  I have appointed the people to manage the

H6LsDARC

1    company.  I am not one of them.  They are to act in the best

2    interests of the company, as managers do.

3           I think your discussion should be directed to them.

4    It's not my function to approve or disapprove specific

5    transactions, which I have no idea are in the best interest of

6    the company or not.

7           MS. DITLOW:  Understood.  Thank you, your Honor.

8           THE COURT:  Now, in the nature of things, is there

9    anything else anybody would like to say at this point?

10          Mr. Gitman?

11          MR. GITMAN:  I keep getting e-mails from the buyer.

12   Should I just ignore them?

13          THE COURT:  Excuse me?

14          MR. GITMAN:  I keep getting e-mails from the buyer.

15   Should I just ignore them?

16          THE COURT:  Why would you ignore them?

17          MR. GITMAN:  Because --

18          THE COURT:  It's in your own interest to forward that

19   deal, if it is a good deal.

20          MR. GITMAN:  It's a great deal.

21          THE COURT:  I think you should bring them to the

22   attention of the management of the company and have them dealt

23   with.

24          MR. GITMAN:  I have referred them to the management of

25   the company, and they haven't responded to the buy.

H6LsDARC

1          THE COURT:  Would you like me to tell them to respond,

2     or should they think first?

3          MR. GITMAN:  I would like you to tell them to respond.

4          MR. GUAGLARDI:  We did get a call from the buyer and

5     responded to the buyer.

6          THE COURT:  Responded to the buyer?

7          MR. GUAGLARDI:  Yes.

8          THE COURT:  Did you send Mr. Gitman a copy of your

9     response?

10          MR. GUAGLARDI:  It was a verbal discussion with the

11     buyer, as was --

12          THE COURT:  Did you bring him up to date with it?

13          MR. GUAGLARDI:  There has been no communication at all

14     with Mr. Gitman through this date.

15          THE COURT:  I think that is deplorable.  You have a

16     common interest in running the company well.

17          MR. GUAGLARDI:  I understand.  I think we had to

18     address --

19          THE COURT:  You've got a major stockholder, and if

20     you mistreat that major stockholder, I don't think it is good

21     management.

22          MR. GUAGLARDI:  We would have no intention of

23     mistreating --

24          THE COURT:  Excuse me.

25          MR. GUAGLARDI:  We would have no intention of

1    mistreating any stockholder.

2              THE COURT:  Keep him informed on what is happening.

3              MR. GUAGLARDI:  We will.

4              THE COURT:  Try to build goodwill.  Avoid the

5    litigator's love of destruction.

6              MR. GUAGLARDI:  Up until your Honor stepped in and

7    gave us the ability to be involved in the company, we had no

8    involvement in the company, and it was Mr. Gitman's behavior

9    that brought us to this court.

10             Now that your Honor has removed him and put

11   Mr. Guaglardi --

12             THE COURT:  I did that on Monday.

13             MR. GUAGLARDI:  That is correct.

14             And we have had had conversation.  We are a speaking

15   with Mr. Liebman, and we will inform counsel, as well as

16   Mr. Gitman, through counsel, as to the current status.

17             THE COURT:  Whatever the emotional background or the

18   transactional history, Mr. Gitman's stock ownership is a valid

19   financial interest, which you would impair at your peril.

20             MR. GUAGLARDI:  We recognize that, because we were on

21   the other half of that two days ago, and still are.

22             THE COURT:  Well, the world is full of slow learners

23   as well as fast learners.

24             MR. GUAGLARDI:  We understand.

25             MR. GITMAN:  Thank you for clarifying.

H6LsDARC

1          MS. DITLOW:  Thank you.

2          THE COURT:  I'll sign this and send it to Judge

3     Francis.  He'll be in touch with you.

4          They're busy.  I don't want to give it priority over

5     things that may actually be more urgent than yours, but I'll

6     say that if he can fit it in that way, it will be to the good.

7     The best is if you keep working.

8          MS. DITLOW:  Certainly.

9          THE COURT:  Resolve them all.

10          In that case, what we're left with is, really, the

11     most recent history of the case having resolved the injunctive

12     matters, and the rest is to address by litigation or settlement

13     or whatever the remaining underlying issue.

14          I think, by that time, I'll probably be back, and

15     there is a routine for handling that.  You may need some

16     discovery.  It will be a normal case.

17          I leave you with goodwill.  I was just thinking of

18     President Lincoln's, With Malice toward none, with charity for

19     all, with firmness in the right, as God gives us to see the

20     right.  Try to proceed in that admirable mood.

21          MR. GUAGLARDI:  Judge, if I may, and just before we

22     leave, because I just want to make sure that we're clear on

23     where we're moving forward to.

24          Now that the developers from Russia have terminated

25     their relationship --

H6LsDARC

1            THE COURT:  Yes.

2            MR. GUAGLARDI:  -- and given their knowledge of the

3    source --

4            THE COURT:  If you want to go off the record at this

5    point, the transcripts are normally pretty freely available.

6            MR. GUAGLARDI:  If we could --

7            THE COURT:  I don't care.

8            MR. GUAGLARDI:  -- I prefer to stay on the record.

9            Given that the Russian developers have terminated

10   their relationship and have access to Channelreply's source

11   code and customer list, and given Mr. Gitman's stated position

12   to your Honor and repeated in his certification today that we

13   saw, that he believes that because he has no contract, that he

14   can utilize Channelreply's trade secret, we just --

15           THE COURT:  What relief do you want?

16           MR. GUAGLARDI:  We want to make sure that that does

17   not happen.

18           THE COURT:  How do you want to do it?  You're a

19   lawyer.

20           MR. GUAGLARDI:  Well, we have existing restraints that

21   your Honor already entered that are continuing.  We will rely

22   on those.

23           THE COURT:  I know what.  You would like me to say it

24   again.

25           MR. GUAGLARDI:  That's all right.  We don't need you

H6LsDARC

1    to say it again.  I think I want Mr. Gitman to hear it again.

2              THE COURT:  He is not looking for more trouble.

3              MR. GUAGLARDI:  I hope not.

4              THE COURT:  OK.

5              MS. DITLOW:  Thank you, your Honor.

6              ALL PRESENT:  Thank you, your Honor.

7              (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25