UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MICHAEL DARDASHTIAN,
COOPER SQUARE VENTURES, LLC,
and CHANNEL REPLY                                    CASE NO. 17 CV 4327 (LLS)

                              Plaintiffs,

             -against-

DAVID GITMAN, JEREMY FALK, SUMMIT
ROCK HOLDINGS, LLC, ACCEL COMMERCE,
LLC, DALVA VENTURES, LLC,
CHANNEL REPLY, INC.
                              Defendants.
-----------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF FACT AND LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

On the Brief:  Barry Guaglardi, Esq.

Dated: August 11, 2017

TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................................................1

PROCEDURAL HISTORY...............................................................................1

FACTS.......................................................................................................3

LEGAL ARGUMENT......................................................................................3

    I.     THE COURT SHOULD DENY THE MOVING DEFENDANTS'
          MOTION TO DISMISS ..............................................................3

        A.  PLAINTIFF SUCCESSFULLY PLEADS A DERIVATIVE ACTION
            ON BEHALF OF THE PLAINTIFF COMPANIES ......................4

        B.  PLAINTIFF DARDASHTIAN IS PERMITTED TO FILE
            DERIVATIVE CLAIMS AND INDIVIDUAL CLAIMS.................11

           1.  The Plaintiff Companies and Plaintiff Dardashtian, respectively,
               present valid Breach of Fiduciary Claims in Count 2 and Count 4
               of the Complaint .........................................................11

           2.  Movants Admit that the Claims in Counts 5, 6, 7, 8, 12, 13, 14, 18
               and 19 belong to the Plaintiff Companies ...............................15

        C.  PLAINTIFF SUFFICIENTLY ALLEGES TRADE SECRET
            CLAIMS AND COMPUTER FRAUD AND ABUSE ACT CLAIMS ....15

           1.  Plaintiffs plead a sustainable Trade Secret cause of action ...........15

           2.  Plaintiffs sufficiently plead a Computer Fraud and Abuse Act
               violation ....................................................................17

         D.  THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE
            STATE-BASED CLAIMS ...............................................19

        E.  PLAINTIFFS SUFFICIENTLY PLEAD THE STATE CLAIMS ........20

CONCLUSION...........................................................................................25

## PRELIMINARY STATEMENT

Defendants David Gitman, Accel Commerce, LLC, Dalva Ventures, LLC and Channel Reply, Inc. ("Moving Defendants"), despite the entry of an emergent TRO to enjoin their respective wrongful conduct premised upon the allegations in Plaintiffs' Complaint coupled with approximately **100 exhibits**, have now filed a pre-answer motion to dismiss Plaintiffs Michael Dardashtian ("Plaintiff Dardashtian"), individually and on behalf of Cooper Square Venture, LLC, NDAP, LLC and Channel Reply, LLC ("Plaintiff Companies", and collectively "Plaintiffs") Verified Complaint in this matter ("Complaint").

Rather than burden the Court by re-filing Plaintiffs' Verified Complaint, which is 65 pages, in this matter, Plaintiffs respectfully refer the Court to Docket Entry No. 1 on the Court's electronic docket.  Additionally, rather than re-file the extensive and lengthy Affidavits already reviewed by this Court, when citing to them, reference is also made to the Docket Entry on the Court's Electronic Docket.  If the Court prefers/requires the re-submission of these documents with this filing, Plaintiffs will immediately do so.

## PROCEDURAL HISTORY

By way of Verified Complaint, Plaintiffs commenced this litigation on June 8, 2017, alleging fraud, misappropriation of trade secrets, identity theft, conversion and other causes of action against the Moving Defendants, for Defendant Gitman's engagement in self-help and other tortious misconduct, including but not limited to locking his partner, Plaintiff Dardashtian, out of the Plaintiff Companies, depleting the Plaintiff Companies' operating accounts and debiting those depleted accounts which resulted in company debts, unlawfully transferring confidential and otherwise proprietary information and trade secrets into a newly formed entity, Channel Reply, Inc. ("CR Inc" or "Channel Reply, Inc"), which upon information and belief is

1

exclusively owned and controlled by Defendant Gitman, and soliciting the Plaintiff Companies'

developers to terminate their relationship with the Plaintiff Companies and become a member or

consultant for Defendant CR. Inc. and/or Gitman's other competing entities. (See Complaint,

paras., 22-109).

By way of Order to Show Cause dated June 8, 2017, Plaintiffs moved before this Court

seeking temporary restraints against Defendant Gitman and the Moving Defendants from

misappropriating the Plaintiff Companies' confidential, trade secret and proprietary information,

to immediately restore the Plaintiff Companies' operating accounts, and to cease the improper

solicitation of the Plaintiff Companies' developers in order to unlawfully  compete with the

Plaintiff Companies' proprietary business Channel Reply and for other related relief.  ("June 8

OSC") (Docket Entry No. 3).

This Court granted Plaintiffs' Order to Show Cause for temporary restraints, in part, by

way of its June 8, 2017 Order and Amended Order dated June 9, 2017. (Docket Entry Nos. 3 and

5).

On June 17, 2017, Plaintiffs moved by order to show cause again to remedy the Moving

Defendants' non-compliance with the prior temporary restraints entered by this Court by seeking

(1) a contempt order; (2) Defendant Gitman's immediate compliance with the June 8 and June 9

Amended OSC; (3) the removal of Defendant Gitman from managing and accessing the Plaintiff

Companies; and (4) for Defendant Gitman to cease and desist his continuing operation of his

newly formed competing company, Channel Reply, Inc., which was operating in direct

competition with Plaintiff Companies using Plaintiff Companies' trade secrets and confidential

information and diverting and collecting receivables from Plaintiff Companies' from their

existing customers (Plaintiffs' Affidavit in Support of June 17, 2017 OSC, Docket Entry 17).

On June 19, 2017, this Court deferred its ruling on the June 17, 2017 OSC to June 19, 2017 for a hearing on Plaintiffs' request for additional preliminary injunctive relief.

By way of Order of the Court on June 19, 2017, this Court granted Plaintiffs request for preliminary injunctive relief in accordance with the June 8 OSC and amended June 9 OSC, finding Plaintiffs had met its burden to warrant such relief under applicable law.

## LEGAL ARGUMENT

### I.   THE COURT SHOULD DENY THE MOVING DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 8(a)(2), a complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Therefore, "[t]o survive a **motion to dismiss** under Rule 12(b)(6), however, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Cruz v. Rose Associates, LLC, No. 13 Civ. 0112 (JPO), 2013 U.S. Dist. LEXIS 49755, 2013 WL 1387018, at *1 (S.D.N.Y. Apr. 5, 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). The plausibility standard "is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." When "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim is said to possess facial plausibility. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Though *Ashcroft* and *Twombly* necessitate plausibility, they do not contemplate a "heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8 . . . ." Arista Records LLC v. Doe, 604 F.3d 110, 110 (2d Cir. 2010). However, notwithstanding the latter, Plaintiffs in this case have already submitted approximately 100 exhibits of specific evidence to support the factual content and allegations contained in the Complaint. Indeed, based on those exhibits, the Court has already issued two separate orders of preliminary relief.

3

Moreover, while there may always be more than one plausible interpretation of a Defendant's words or conduct, the Second Circuit has determined that at the pleading stage, it is not up to the District Court, to decide among the vast array of plausible alternatives or explanations to those alleged by Plaintiffs when ruling on a motion to dismiss. Rather, "the choice between or among plausible interpretations of the evidence will be a task for the factfinder." (Anderson News, LLC v. Am. Media, Inc., 680 F. 3d. 162, 184 (2d Cir.).

Furthermore, in deciding a motion to dismiss, courts are required to give the Plaintiff the benefit of the doubt and "accept as true all of the factual allegations contained in the complaint," RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 394 (SDNY 2009). The Court must draw "all inferences in the light most favorable to the non-moving party[] . . . ," In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

Here, Plaintiffs have not only pled enough facts to state claims to relief that are plausible on their face but went to great lengths to support every one of those alleged facts with extensive, detailed and direct evidence, above and beyond what is required in the initial pleading stage, supported by the Affidavit of Michael Dardashtian in support of Plaintiffs' Order to Show Cause and the Verified Complaint.

## A. PLAINTIFF SUCCESSFULLY PLEADS A DERIVATIVE ACTION ON BEHALF OF THE PLAINTIFF COMPANIES

The Moving Defendants' argument in this regard is perplexing. In one instance, they concede that most of Plaintiffs' claims are derivative in nature (see Moving Brief, pages 1, 2, 8, 11, 12, and 15) but then the vast basis for the Moving Defendants' sought-after relief is the respective operating agreements. Defendants formerly contested the Cooper Square Ventures, LLC Operating agreement on which they now attempt to rely and alleged that it was invalid. Defendants also now try to rely on the Channel Reply, LLC operating agreement which

4

Defendant Gitman never executed (See Meredith Dec. Exhibit 3, last page).  Regardless, their interpretation of the provisions they rely upon in any of the operating agreements are improper and inconsistent with the clear underlying intent of same, which underscore and expressly detail the expectation that managers and members act in good faith and in accordance with their fiduciary duties, as set forth *infra*.

Defendants reference Section 8.1 of the CSV Operating Agreement. Yet nothing in Section 8.1 expressly prohibits a manager from bringing an action on behalf of the company to protect the members and company's interests. In fact, several provisions in the CSV Operating Agreement contemplate and account for such a scenario. Section 17.11, the remedies clause, expressly states that "any remedies provided in the Agreement are not to exclude all other remedies available at law or equity which the members and managers may avail themselves of and pursue to the fullest extent of the law." Section 8.7 of the CSV Operating Agreement expressly states that there is "no waiver of liability for managers who engage in wrongful or reckless conduct" and Section 8.8 exempts managers from company indemnification for actions brought by and on behalf of the company.

Furthermore, the Moving Defendants ignore New York law, as interpreted by both State and the Federal Courts, as to Plaintiff Dardashtian's rights to file such a derivative suit on behalf of the Plaintiff Companies.

Clearly, "members of LLCs may sue derivatively."   Tzolis v. Wolff, 10 NY 3d 100, 109, (Court of Appeals of New York, 2008).  The Southern District further recognizes that right, ... "New York LLC members may bring derivative actions under New York law…" Bischoff v. Boar's Head Provisions Co., 436 F Supp. 2d 626, 631 (SDNY 2006). Indeed, in Bischoff, the Hon. Denny Chin, USDJ recognized that a LLC member may sue for, both, derivative and

individual claims.  Id. p. 633. (citing Excimer Assocs. v. LCA Vision, Inc., 292 F. 3d 134, 140

(2d. Cir. 2002) (a corporation's claim for injury 'does not preclude the plaintiff from asserting its

claim directly' where plaintiff has also sustained harm.).

     Indeed,

> the common law often gives an individual standing to bring a 'derivative' action
> on behalf of a legal entity, such as a corporation, in which he holds an interest if
> that entity would be the only party entitled to bring a direct suit and has failed to
> do so.

[Bartfield v. Murphy, 578 F. Supp. 2d 638, 645 (SDNY 2008)]

The Moving Defendants' arguments that the Plaintiffs Companies' operating agreements all

require a majority vote to file the within action is illogical as that argument would support, even

encourage, the situation in which a member, such as Defendant Gitman, can outright steal a

subject company's assets, provide proprietary information to a competitor in the industry field

and deplete a company's resources, but then simply posit that such member does not give

permission for the subject Company to file suit and protect its' rights. This argument is baseless.

Hypocritically, Defendant Gitman himself violated, on multiple occasions, the very provision of

the operating agreement he attempts to now invoke. Defendant Gitman brazenly asserts that

Plaintiff Dardashtian was not permitted to bring this lawsuit to defend himself and Plaintiff

Companies without Defendant Gitman's permission but Defendant Gitman neglects to mention

that he never asked Plaintiff Dardashtian's permission prior to taking actions that led

Dardashtian to bring the action, such as depleting and rerouting Company accounts, changing

company passwords, moving company data and proprietary information to a competing

company, among other unlawful acts. Yet, despite Defendant Gitman failing to obtain Plaintiff

Dardashtian's consent to act contrary to the Plaintiff Company's interests, Defendant Gitman

now claims Plaintiff Dardashtian needs his consent to defend the Plaintiff Companies against

such unlawful actions. In fact, as pled in the Verified Complaint in Paragraph 34, Defendant

Gitman expressly stated in written correspondence that he would be making unilateral decisions

on behalf of the Plaintiff Companies including proceeding with a sale of Plaintiff NDAP and

using a broker in connection with that sale, whose good faith had come into question, and with

whom Defendant Gitman had an undisclosed competitive business relationship.

Indeed, the very purpose of a derivative action is designed to prevent exactly what

Defendant Gitman has done here:

> In addressing the question [of allowing derivative suits for a LLC member], we
> continue to heed the realization that influenced Chancellor Walworth in 1832 and
> Lord Hardwicke 90 years earlier:  When fiduciaries are faithless to their trust, the
> victims must not be left wholly without a remedy.  As Lord Hardwicke put it, to
> 'determine that frauds of this kind are out of reach of courts of law or equity'
> would lead to 'an intolerable grievance.' (Charitable Corp. v. Sutton, 2 Atk 400,
> 406 (Ch. 1742).
>
> **To hold that there is no remedy when corporate fiduciaries use corporate
> assets to enrich themselves was unacceptable in 1742 and in 1832, and it is
> still unacceptable today.**  Derivative suits are not the only possible remedy, but
> they are the one that has been recognized for most of two centuries, and to abolish
> them in the LLC context would be a radical step.
>
> [Tzolis, p. 104 (emphasis added)]

Further, the Southern District in Obeid v. La Mack, 2015 US Dist. Lexis 127327, *19

(SDNY 2015) while addressing a discovery dispute, recognized that a LLC member may still

avail himself of a derivative suit even if an operating agreement provides that the affairs of the

LLC are to be "governed by majority vote of the members/managers."

The Moving Defendants, anemically and very briefly, simply allege that Plaintiff

Dardashtian "failed to bring [the derivative claims] in the proper fashion." (Moving Brief, page

1).  However, absent from the Moving Defendants' submission is any basis for such a statement.

Indeed, while New York courts have required a "pre-suit" demand of the LLC to institute a

lawsuit, it is also clear that the Court does not require such demand when it would be "futile". Fine v. New York Community Bank, 33 Misc. 3d 1215(A), 1215 (Supreme Court Queens County, 2008).  See also, In re Pfizer, Inc. Derivative Sec. Litig., 503 F. Supp. 2d 680, 683 (SDNY 2007): "Federal Rule of Civil Procedure 23.1 requires that a derivative plaintiff make a pre-suit demand on the board of directors to commence the action, or plead particularized facts demonstrating that demand was excused as futile." Initially, Plaintiff Companies do not have a board of directors. Instead, Plaintiffs fulfilled the demand requirements on several occasions by issuing a multitude of written correspondence to Defendant to place him on notice of the wrongful acts and give an opportunity to cure.  As pled in Paragraphs 102, 108 and 163 of the Complaint, Defendant rebuffed such attempts at pre-suit resolution, including a proposed arbitration at the behest of Plaintiff Companies' own attorney. Paragraph 102 of the Complaint makes reference to the June 5, 2017 correspondence sent by Defendant in response to Plaintiff's demand letter, which again proposed the company attorney's dispute resolution solution. As referenced in the pleadings, Defendant Gitman refused to even discuss his wrongful actions regarding Channel Reply and made a new set of egregious demands on the Plaintiff Companies and Plaintiff Dardashtian.  Likewise, Paragraph 108 of the Verified Complaint  references Defendant Gitman's defamatory response to Plaintiffs' demands that he not meet with the Plaintiff Companies' developers without Plaintiffs' consent and/or participation, or fly to the Ukraine to unlawfully solicit them away from the Plaintiff Companies. To steal the Channel Reply software and to bring it to Defendant Channel Reply, Inc, which is exactly what Gitman did until this Court recommended that Channel Reply Inc., be dissolved. Paragraph 163 of the pleadings in the Verified Complaint also reference Defendant Gitman's response to a pre-suit demand made by Plaintiffs, whereby Defendant Gitman refused to identify where he had

relocated Plaintiff Companies' bank funds and refused to restore Plaintiff Company bank funds to the Plaintiff Companies' bank account. While Plaintiffs had anything but "zeal and eagerness to sue," and were simply seeking to restore the status quo before Defendant Gitman stole data, funds and trade secrets, Defendant Gitman's actions compelled such suit due to his refusal to cooperate with Plaintiffs' pre-suit demands and was well on the way to unfairly compete with Plaintiff Companies using Plaintiff Companies' trade secrets until this Court enjoined Defendant Gitman from doing so.

As well, any pre-suit demand would have been and turned out to be futile and therefore was not required, despite Defendants' assertions to the contrary. As is clear from the Moving Defendants own submission herein and amply pled facts, Defendant was an interested party who could not exercise independent business judgment because of his improper self-dealings at the time. All of the transactions Plaintiffs were challenging were being carried out by Defendant Gitman under his complete control and direction. The underlying purpose of the demand requirement is to place directors of corporations on notice of a potential problem and give them the opportunity to correct the problems or to give them the benefit of the doubt so that said directors may explain to shareholders the often times overlooked exercise of valid business judgment that underlies said challenged transaction. Gitman's breaches of fiduciary duties, as alleged in the Verified Complaint and which are deemed as true, offend the basic tenets of the underlying purpose of the foregoing.

Defendant Gitman's actions are expressly forbidden by the general proscription outlined in Section 8.2(d) of the CSV Operating Agreement prohibiting the use of company funds for anything other than the benefit of the company.

Defendant Gitman has clearly taken the position that he is above the law as the Plaintiff Companies' operating agreements, per the Moving Defendants, require a majority vote for the Plaintiff Companies to protect their rights against his unlawful behavior. Demands by Plaintiff Dardashtian to Defendant Gitman were met with the same hubris. In fact, Defendant Gitman refused Plaintiff Dardashtian's repeated attempts to meet in person or speak by phone as well as the Plaintiff Companies' counsel's suggestion for a joint meeting with both Plaintiff Dardashtian and Defendant Gitman. This blatant stonewalling by Defendant Gitman, further frustrated Plaintiffs attempts at pre-suit dispute resolution. Additionally, as is set forth in Paragraphs 83-103 of the Verified Complaint, Defendant Gitman ignored Plaintiff Dardashtian's many attempts to 1) resolve the issues set forth in this lawsuit prior to instituting suit; 2) gain access to the Plaintiff Companies' banking accounts and every other account and email, all of which Plaintiff Dardashtian was locked out of by Defendant Gitman; and 3) attempts for any of the Plaintiff Companies' information. (See also Affidavit of Plaintiff in Support of June 17, 2017 OSC at paras 16-47, Docket Entry 17). Gitman's bold attempt to dismiss the Verified Complaint on such grounds when he created the inability to comply should not be entertained by the Court for purposes of the instant motion in lieu of an answer. Clearly, Defendant Gitman has no basis to assert the need for his permission to bring suit against Defendant Gitman for his own malfeasance.

Certainly, the Court cannot ignore the likelihood (or the unlikelihood) that Defendant Gitman would have given such consent to be sued considering the extent and nature of the several wrongful acts which have already warranted not one but two Temporary Restraining Orders being entered against him for his conduct. Indeed, Defendant Gitman denied any wrongdoing in his opposition to Plaintiffs June 8 and June 17 OSC, then certified to this Court

that he was in compliance with such order when he was not. Moreover, Defendant Gitman

conveniently ignores the expressed language contained in the operating agreements which

designate this Court as the competent forum to handle such disputes, see e.g. Declaration of

Mark D. Meredith ["Meredith Dec."] Exhibit 1¶17.8 and Exhibit 3¶17.8 ("…any suit, action or

proceeding arising out of or related to this agreement or the Company shall be brought only in

the United States District Court for the Southern District…").

## B. PLAINTIFF DARDASHTIAN IS PERMITTED TO FILE DERIVATIVE CLAIMS AND INDIVIDUAL CLAIMS

"In order to distinguish between direct and derivative claims, courts examine the source

of the claim of right:

> If the right flows from the breach of a duty owed by the defendants to the
> corporation, the harm to the investor flows through the corporation, and a suit
> brought by the [member] to redress the harm is one 'derivative' of the right
> retained by the corporation.  If the right flows from the breach of a duty owed
> directly to the plaintiff independent of the plaintiff's status as a [member]…of the
> corporation, the suit is direct.

> [Weber v. King, 110 F. Supp. 2d 124, 132 (EDNY 2000)]

Additionally:

> Courts also look at whether the injury resulting from the alleged wrongdoing is to
> the business entity or to the party bringing suit.  If the injury does not exist
> independently of the business entity, but rather is more accurately characterized
> as harm to the entity itself, and is similar to that suffered by other [members],
> then the action is derivative…If the wrong involves a contractual right of a
> shareholder which exists independent of any right of the corporation, such as the
> right to vote, then it is more aptly characterized as direct.

> [Weber, p. 132]

## 1. The Plaintiff Companies and Plaintiff Dardashtian, respectively, present valid Breach of Fiduciary Claims in Count 2 and Count 4 of the Complaint

The elements of a cause of action to recover damages for breach of fiduciary duty are (1)

the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages

directly caused by the defendant's misconduct. <u>Palmetto Partners, L.P. v. AJW Qualified Partners, LLC</u>, 83 A.D.3d 804, 921 N.Y.S.2d 260 (App. Div., 2nd Dept., 2011).

Pursuant to New York Consolidated Laws Service Limited Liability Company Law, §409, a manager of an LLC,

> "shall perform his or her duties as a manger, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances."
> [NY CLS LLC §409(A)].

Indeed,

> "The acts of working in concert and managing a limited liability company clearly **gives rise to a relationship among the members** which is analogous to that of partners, who, as fiduciaries of one another, owe a duty of undivided loyalty to the partnership's interests."
> [Kalikow v. Shalik, 43 Misc. 3d 817, 986 N.Y.S. 2d 762 (Supreme Court of New York, Nassau County, 2014)(emphasis added), citing, Birnbaum v. Birnbaum, 73 N.Y.2d 461, 539 N.E.2d 574 (1989)].

It is well settled that,

> "This is a sensitive and "inflexible rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty…Included within the rules broad scope is every situation in which a fiduciary, who is bound to single-mindedly pursue the interests of those to whom a duty of loyalty is owed, deals with a person, "in such close relation [to the fiduciary] that possible advantage to such other person might consciously or unconsciously influence the fiduciary's judgment."

> [Birnbaum, 73 N.Y.2d at 466, 539, N.E.2d at 576].

As such, clearly Defendant Gitman has a fiduciary duty of loyalty and good faith to Plaintiff Dardashtian, individually.  Further, the Plaintiff Companies respective operating agreements dictate that a manager, such as Defendant Gitman, owes a duty of good faith and reasonable judgment to the Plaintiff Companies, as well.  (Meredith Dec. Exhibit 1¶8.7 and Exhibit 3¶8.7and Exhibit 2¶ 7.6).

Pursuant to ¶8.7 of the CSV Operating Agreement, no member shall be relieved of "…any liability by reason of gross negligence, recklessness or intentional wrongdoing or to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Section to the fullest extent permitted by law." The Channel Reply LLC Operating Agreement, albeit unsigned by Defendant Gitman, which he nonetheless cites to in support of the instant motion, has the same provision.  (Meredith Dec. <u>Exhibit</u> 1¶8.7 and <u>Exhibit</u> 3¶8.7).

Likewise, ¶ 7.6 of the NDAP Operating Agreement states, in pertinent part, "[e]ach managing Member shall discharge the Managing Member's duties *to the Company and the other Members* in good faith and with that degree of care that an ordinarily prudent person in a similar position would use under similar circumstances, recognizing he or she is acting on behalf of all Members in the nature of a fiduciary…" (emphasis added).

Here, paragraph 120 of Plaintiffs' Verified Complaint alleges that the Moving Defendants, namely Defendant Gitman, knowingly breached such fiduciary duties to Plaintiffs on multiple occasions, including but not limited to:

    a)  Depleting the CSV business operating account without the express permission of Plaintiff Dardashtian;

    b)  Misappropriated and converted CSV's and Plaintiff ChannelReply's respective business assets and proprietary and confidential information and trade secrets to form several competing companies [Moving Defendants];

    c)  Improperly solicited CSV's and ChannelReply's respective employees and customers on behalf of competing businesses without Plaintiff Dardashtian's knowledge or consent;

    d)  "locked out" Plaintiff Dardashtian from multiple computer and electronic accounts necessary and fundamental to CSV's, NDAP and Plaintiff ChannelReply's business operations, including financial accounts in which Plaintiff Dardashtian had always had access;

    e)  Accessed and disclosed Plaintiff Dardashtian's personal private financial and other information;

    f)  Usurped Plaintiff Dardashtian's business email address preventing Plaintiff Dardashtian from accessing business emails for weeks, which will likely never be

recovered and further, created confusion for Plaintiff Dardashtian's business dealings with CSV's customers and colleagues by inserting Defendant's likeness next to Plaintiff Dardashtian's name and email. (See Paragraph 43 of Plaintiffs Verified Complaint.)

g)   Diverted CSV customer receivables to Defendant's personally controlled accounts.

h)   Incurred company debt on the NDAP credit card and CSV bank accounts after depleting CSV's accounts of funds and without Plaintiff Dardashtian's authorization.

i)   Conspired with Summit Rock and Defendant Falk, respectively, to increase their brokerage fee as to the NDAP, LLC-XYZ transaction, while at the same time forming a competing business with Falk and sabotaging the NDAP sale with their unreasonable demands;

j)   Misappropriated and otherwise used the exact tradename "Channel Reply" to unfairly compete against CSV and Plaintiff ChannelReply; and

k)   Misappropriated and altered Plaintiff Companies' computer data without Plaintiff Dardashtian's knowledge or consent.

[Plaintiffs' Complaint para 120].

The allegations contained in Count 2 of the Verified Complaint, deemed as true at this juncture, sufficiently states a cause of action. In fact, the Verified Complaint sets forth facts which support that Plaintiff Dardashtian repeatedly tried to obtain Defendant Gitman's cooperation before filing suit. (See Verified Complaint at para. 102). Defendant Gitman refused to cooperate and instead suggested he would only agree to cease his foregoing actions on condition that Plaintiff Dardashtian agree with Defendant Gitman's egregious demands. (Id). Absent the commencement of a derivative action, Plaintiff Companies were and continue to be at substantial risk. It is submitted that is why this Court entered the restraints against Defendant Gitman that it did.

Likewise, Count 4 of the Complaint sufficiently states an aiding and abetting breach of fiduciary duty claim as to all Defendants in this action.

Despite Moving Defendants' conclusory assertions to the contrary, Defendant Gitman maintains a fiduciary duty to Plaintiff Dardashtian and to the Plaintiff Companies as expressly stated in the CSV and NDAP Operating Agreements. As Plaintiffs alleged a breach of fiduciary duty claim against Defendant Gitman per Count 2 of the Verified Complaint, Count 4 is

sufficiently pleaded, see <u>Kaufman v. Cohen</u>, 307 A.D.2d 113.  (Defendant must have actual

knowledge that fiduciary duty exists). Defendant Gitman signed the CSV and NDAP Operating

Agreements, but thereafter established competing companies through Moving Defendants and

others, and misappropriated funds belonging to Plaintiff Companies nonetheless. (Meredith Dec.

<u>Exhibit</u> 1¶8.7 and <u>Exhibit</u> 3¶8.7and Exhibit 2¶ 7.6).

> **2. Movants Admit that the Claims in Counts 5, 6, 7, 8, 12, 13, 14, 18 and 19 belong to the Plaintiff Companies**

On Page 12 of Movant's brief they concede that the claims set forth in these counts

belong to the Plaintiff Companies.  As set forth in Point A, Plaintiff Dardashtian has the right to

bring such claims on behalf of the Plaintiff Companies.

## C. PLAINTIFF SUFFICIENTLY ALLEGES TRADE SECRET CLAIMS AND COMPUTER FRAUD AND ABUSE ACT CLAIMS

### 1. Plaintiffs plead a sustainable Trade Secret cause of action

In sum, Moving Defendants' contention that Plaintiffs' allegations fail to meet their pleading

burden is without merit, see <u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544 (2007); and <u>Ashcroft v.

Iqbal</u>, 129 S. Ct. 1937 (2009). Although it's not required under <u>Twombly</u> or <u>Iqbal</u>, Plaintiffs not

only pled causes of action with detailed specificity but also incorporated approximately one

hundred exhibits to directly support the facts pled, many of which evidenced the Defendant

Gitman caught "red-handed", by Plaintiff Companies' owned screenshot software, engaging in

misappropriation and company theft.  Defendant Gitman's own virtually recorded words and

admissions detailed much of his malfeasance step by step.

Furthermore, the Second Circuit has expressly rejected the notion that *Twombly* or *Iqbal*

imposed a heightened pleading standard:

> The notion that *Twombly* imposed a heightened standard that requires a complaint to
> include specific evidence, factual allegations in addition to those required by Rule 8, and

declarations from the persons who collected the evidence is belied by the *Twomby* opinion itself. <u>Arista Records LLC v. Doe</u>, 604 F.3d 110 (2d Cir. 2010) (it would be "impermissible" to require a plaintiff to plead any "specific evidence or extra facts beyond what is needed to make the claim plausible." Id at 120-121.

As to Defendants' argument arising under 18 USC 1836 that Plaintiffs' Verified Complaint is not pled with the required specificity, a mere review of Plaintiffs' extensive, detailed Verified Complaint is far beyond the pleading requirements.

> Such trade secrets include customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes and other protectable intellectual property and proprietary information. These trade secrets include but are not limited to CSV's and Plaintiff Channel Reply's electronic services that are used in or intended for use in interstate and foreign commerce.

[Plaintiffs' Verified Complaint ¶132]

In addition, Count 5 of the Verified Complaint further identifies the manner in which Moving Defendants violated 18 USC 1832 and 18 USC 1836 (Verified Complaint, paras 133-136: Defendants used Plaintiff Companies' trade secrets to "form and maintain a competing business operation to CSV and Plaintiff ChannelReply.").

Defendants would have this Court believe that Plaintiffs must specifically identify each trade secret with specificity in order to meet the pleading requirements of 17 USC 1836, which defies common sense. Indeed, were Plaintiff to specifically identify each trade secret and how such trade secret was used and/or misappropriated by Moving Defendants, it would not be a trade secret anymore.

These allegations of concrete harm set forth in the Verified Complaint are more than plausible. Indeed, the allegations, and proofs submitted by Plaintiffs to this Court were enough to warrant this Court's entry of preliminary restraints to stop enjoin Moving Defendants' unlawful dissemination of those trade secrets by Defendant Gitman and the Moving Defendants now Court ordered dissolved and unlawful competing company Channel Reply Inc., and certainly

satisfy Defendants' demonstration "the grounds showing entitlement to relief." <u>Arista Records</u>,

604 F.3d at 120.

    **2.      Plaintiffs sufficiently plead a Computer Fraud and Abuse Act violation**

    Defendants' argument relating to the Computer Fraud and Abuse Act (18 USC 1030) also

fails in every respect.   Plaintiffs certainly plead that Defendant Gitman exceeded any authority

he had when he altered certain computer programs belonging to Plaintiffs:

> 184.    Beginning on or about May 27, 2017, Defendant Gitman knowingly and fraudulently and without Plaintiff Dardashtian's knowledge or consent, **changed CSV's banking passwords and other passwords contained in the Company Computers,** including CSV and Plaintiff ChannelReply's Paypal password which is utilized to communicate with CSV and Plaintiff ChannelReply's local and interstate customers, as well as several other software programs damaging them and blocking and otherwise terminating access to Dardashtian. **Defendant Gitman then <u>altered and transferred</u> Company data contained in the Company Computers to further his scheme of establishing his competing companies and to effectively lockout Dardashtian from CSV and Plaintiff ChannelReply business.**

> 185.    In doing so, and while acting in his capacity as co-owner and co-manager of CSV, NDAP and Plaintiff ChannelReply, Defendant Gitman knowingly and intentionally **exceeded his authorized access to the Company Computers to prevent and otherwise <u>terminate</u> Plaintiff Dardashtian from having computer access and further <u>disabled</u> Plaintiff Dardashtian's ability to access the Company Computers,** all of which actions affect interstate and/or foreign commerce.

    [Plaintiff's Complaint ¶¶184-185]

    Defendants seem to posit that Plaintiffs do not allege that Gitman "altered" or "damaged"

the Plaintiff Companies' protected computers, however, "damage" is defined as, "any

impairment to the integrity or availability of data, a program, a system, or information."  18 <u>USC</u>

1030 (e)(8).  Moreover, 18 <u>USC</u> 1030 (a)(5)(A) creates liability for

> Whoever … (i) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; (ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or (iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage.

Further, 18 USC 1030(a)(2)(C) imposes liability for anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains…information from any protected computer." Further, Congress defined "exceeds authorized access" as "to access a computer with authorization and to **use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter**." 18 USC 1030(e)(6)(emphasis added).

Defendant Gitman appears to argue here that he had authorization to access Plaintiffs' computers to do the following:

- Withdraw all of the funds from the CSV Bank of America account and deplete the Plaintiff Companies' operating account and ability to cover its expenses (see Verified Complaint at para. 34);
- Overdraw the CSV Bank of America account in order to make a personal lease payment for his BMW (see Verified Complaint at para 37);
- Form a competing business under the same tradename and transfer all of Plaintiff Companies' passwords and electronic accounts to Defendant Channel Reply, Inc. (see Verified Complaint at para. 45, 52) ;
- Use Plaintiff Companies "Upwork Account" with a third party in a competing business, Defendant Accel Commerce (see Verified Complaint at para. 49);
- Block Plaintiff Dardashtian's access to the CSV and Plaintiff ChannelReply to conference calls with Plaintiff Company developers (see Verified Complaint at para. 53);
- Unlawfully solicit Plaintiff Companies' employees to work for a competing business under the same tradename through Plaintiff Companies computers (see Verified Complaint at paras. 55-58);
- Offer stock plans and ownership rights to Plaintiff Company developers to incentivize the developers to terminate their business relationship with the Plaintiff Companies and instead obtain employment for Defendant Gitman's competing business, which was offered  through Plaintiff Company computers (see Verified Complaint at para. 59-62);

18

- Alter the Plaintiff Companies' accounts to a different name and change the passwords to the accounts to prevent Plaintiff Dardashtian from access (see Verified Complaint at paras. 63-90).;
- Change and lock Plaintiff Dardashtian out of over 20 Plaintiff Company electronic accounts and thereby prevent him from exercising his managerial duties for the benefits of the Plaintiff companies (see Verified Complaint at para 90 at (a) through (v)).
- Usurp Plaintiff Dardashtian's email address and personal tax and financial information and business identity (see Verified Complaint at para. 92);

As the Court can see, as alleged, Defendant Gitman not only improperly exceeded his authority by accessing and misappropriating the Plaintiff Companies' confidential and password protected information, but Defendant Gitman actually altered this protected information belonging to both Plaintiff Dardashtian individually and the Plaintiff Companies. Paragraph 189 of the Verified Complaint further outlines just some of the measurable damages that resulted from Defendant Gitman's unauthorized and intentional access and subsequent alteration, deletion, transfer, and removal of the Plaintiff Companies' worldwide data, confidential and proprietary information and trade secrets in violation of the Computer Fraud and Abuse Act. This egregious conduct does not even include Defendant Gitman's malfeasance and computer theft that he undertook after the Verified Complaint was filed with this Court and after the date of entry of this Court's orders that necessitated a subsequent contempt application by Plaintiffs.

## D. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE STATE-BASED CLAIMS

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

[28 USC 1367, emphasis added]

The Moving Defendants only argument in this regard is if they are successful in the dismissal of the Federal claims, dismissal of the State-based claims must follow.   As indicated

above, the Federal claims should not be dismissed and therefore the State-based claims are properly venued in this Court.

### E.   PLAINTIFFS SUFFICIENTLY PLEAD THE STATE CLAIMS

In Point V of the Moving brief, it is alleged that only Plaintiff Dardashtian cannot bring State-based claims.  This Court has ancillary jurisdiction over all of Plaintiff Dardashtian's claims in this action. Most of the Moving Defendants' arguments are conclusory without any facts or rational provided.  However, indeed, Defendants concede that the Plaintiff Companies have valid claims against them.

**Fiduciary Duty**

Defendants conveniently omit the expressed terms of the CSV and NDAP Operating Agreements, which expressly provide that the members of the company owe both fiduciary duties to the Company and the individual members. (Meredith Dec. Exhibit 1¶8.7 and Exhibit 3¶8.7). Notwithstanding, Defendant Gitman acted contrary to the interests of Plaintiff Dardashtian, to whom a fiduciary duty was owed, and the Plaintiff Companies, in which Defendant Gitman is an owner and fiduciary.

As to the arguments as to Plaintiff Dardashtian's individual claim for breach of fiduciary duty, we respectfully refer the Court to Point IB that already addresses this issue and that Plaintiff Dardashtian is allowed to bring individual claims for damages he, individually sustained.  Plaintiff Dardashtian has amassed considerable evidence already in support of the claims he has pled on behalf of himself and Plaintiff companies and should be permitted to engage in further discovery to explore the depth of Defendants' wrongful conduct here before any judgment is entered precluding, at minimum, the claim to be made.  Due to Defendant Gitman's unlawful seizure of company accounts and assets, Dardashtian is still unable to fully

assess the amount of damage incurred to his own business reputation and the assets, opportunities and proprietary information owned by Plaintiff Companies. It is undisputed by Defendants, that Plaintiff Companies' data was deleted by Defendant Gitman yet the extent of what and how much is still unknown. Defendant Gitman contended in his excel spreadsheet to this Court, that Plaintiff Companies' proprietary information had been deleted, the reasons for which are also unknown. Plaintffs have significant evidence in this regard, however, proper discovery can also uncover whether Plaintiff Dardashtian and Plaintiff Companies were further harmed by the business dealings between Defendant Gitman and Plaintiff Companies' customers and vendors during the "lock out" period.

**Conversion**

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, (Ct of Appeals 2006)

Even without the benefit of discovery, Plaintiff Dardashtian has individually suffered as a result of Defendant Gitman's conversion, including Defendant Gitman's conversion of Plaintiff Dardashtian's account access, email, and the benefits of Plaintiff Dardashtian's investment in the Company which has been damaged as a result of Defendant Gitman's tortious misconduct as described in more detail in Paragraphs 75-85 of the Complaint.  This Court in entering its' restraints, recognized and reversed the conversion by Defendant Gitman. This does not render Plaintiff Dardashtian's claims associated with such conduct moot given the harm which resulted therefrom.

**Identity Theft**

Also, certainly, Plaintiff Dardashtian has sufficient plead sufficient facts as to his identity theft claim:

> "Theft of Identity. No person, firm, partnership, corporation, or association or employee thereof shall knowingly and with the intent to defraud, obtain, possess, transfer, use or attempt to obtain, possess transfer, or use credit, goods, services or anything else of value in the name of another person without his or her consent."
>
> [Kudelko v. Dalessio, 2006 NY Slip Op 26488, ¶ 2, 14 Misc. 3d 650, 652, (Civ. Ct.) quoting General Business Law §380-s].

Certainly, the facts set forth in the Complaint, specifically Count 17 and Paragraphs 79-80 and 84-85 set forth a sufficient cause of action.  Incidentally, as to the Moving Defendants' concern about Plaintiff Dardashtian's request for attorney's fees, GBL 380-I provides an attorney's fee and punitive damages award to a successful plaintiff. This is in addition to the attorney fee provision contained in the CSV Operating Agreement.

**Tortious Interference**

As to Plaintiff Dardashtian's tortious interference claim, the elements of such cause of action are: "(1) a prospective business relationship with a third party; (2) the defendant's interference with that relationship; (3) undertaken with the sole purpose of harming the plaintiff or by wrongful means; and (4) causing injury to the plaintiff." N. State Autobahn, Inc. v. Progressive Ins. Grp., 32 Misc. 3d 798, 805 (2011 Sup. Ct.)

Here, the Verified Complaint pleads in Paragraphs 30-43 and 78-80 and 91 that Defendant Gitman:

- Threatened Plaintiff Dardashtian's financial status and business reputation by driving up charges on the NDAP company credit card, which was signed for with Plaintiff Dardashtian's name and bears upon his ability to get business credit. Defendant Gitman amassed charges with knowledge that the Plaintiff Companies couldn't pay those charges since Defendant Gitman depleted all Plaintiff Company funds;

22

- Damaged Plaintiff Dardashtian's business reputation with company vendors, by depleting ability to pay company obligations signed by Plaintiff Dardashtian as managing member (as set forth in the Verified Complaint);

- Caused irreparable harm to Plaintiff Dardashtian's business reputation by a) preventing Plaintiff Dardashtian from growing the Plaintiff Companies, b) losing weeks of business and customer acquisition and relationship opportunities, c) losing potential money and relationships for business that affects the value of Plaintiff Dardashtian's membership interests in Plaintiff Companies; d) interfering with Plaintiff Dardashtian's ability to respond to business emails and even preventing Plaintiff Dardashtian from ever knowing who tried to contact him for business matters during the "lock out" period.

**Defamation**

As to the defamation claims, Count 16 and Paragraphs 104-109 certainly pleads a sufficient claim.

The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se

[D'Amico v. Corr. Med. Care, Inc., 120 A.D.3d 956, 962, (App. Div. 2014)]

Further:

"A statement imputing incompetence or dishonesty to the plaintiff is defamatory per se if there is some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the charge of incompetence or dishonesty to the particular profession or trade engaged in by plaintiff"

[Spring v. Cty. of Monroe, 2017 NY App. Div. Lexis 4562, ***3 (App. Div. 2017)]

Count 16 of the Verified Complaint alleges that Defendant Gitman has also defamed Plaintiff Dardashtian by stating several intentional false statements exposing Plaintiff Dardashtian to public contempt, ridicule, aversion or disgrace thereby causing Plaintiff Dardashtian damages.  Further, on June 1, 2017 and June 2, 2017 Defendant Gitman stated to the Plaintiff Companies' developer, Bagaiev that Plaintiff Dardashtian "stole" money. On June 2,

2017 Defendant Gitman stated to Bagaiev that Plaintiff Dardashtian was operating a "pyramid scheme" via written communication. On June 1, 2017, Defendant Gitman stated to Bagaiev that Plaintiff Dardashtian was a "parasite" via written communication. These statements accuse Plaintiff Dardashtian of a serious crime and of being dishonest and incompetent, and as such, these false statements which were made to Plaintiff ChannelReply's lead developer, Bagaiev, unquestionably were intended to, *per se*, injure Plaintiff Dardashtian's business and professional reputation and caused damages to Plaintiff Dardashtian and to the Plaintiff Companies.

**Attorney's Fees**

Additionally, Plaintiffs also successfully plead a claim for attorney's fees. Article 17.10 of the Cooper Square and Channel Reply, LLC respective operating agreements provide:

> If the Company, any member or any member of Management obtains a judgment in connection with a dispute arising under or in connection with…this Agreement, such party shall be entitled to recover from the non-prevailing party its court costs and reasonable attorney's fees and disbursements incurred in connection therewith and in any appeal or enforcement proceeding thereafter, in addition to all other recoverable costs.
>
> [Meredith Declaration, Exhibits 1 and 3]

See also ¶6.7 of the NDAP operating agreement ("A member shall indemnify the Company for any costs or damages incurred by the Company as a result of any unauthorized action by such Member.")

Here, if any Plaintiff is successful in obtaining a judgment against Defendant Gitman and Moving Defendants, there is a contractual right to attorney's fees, this would include the necessary efforts and exhaustive duplicate efforts to obtain a TRO on two occasions and then repeated efforts on multiple occasions to later compel enforcement of said TRO because of Defendant Gitman's wrongful conduct, which continued even weeks after the TRO was granted and which resulted in a contempt application.

Further, NY CLS Bus. Corp. §626 does allow a successful plaintiff in a derivative suit to receive reimbursement from attorney's fees and costs from those proceeds that plaintiff recovers on behalf of the company.  The statute permits the award of attorneys' fees for the attorney for a successful derivative plaintiff, out of the corporation's recovery from the defendants. Lewis v. S.L.&E. Inc., 629 F. 2d 764 (SDNY 1983).   While this provision addresses "shareholders" derivative actions, New York Courts, as set forth above, as extended "shareholder" protections to members in an LLC such as the Plaintiff Companies. Tzolis v. Wolff, 39 AD 3d 138 (1st Dept. 2007).

See also Plaintiff's claim for identity theft set forth above.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Moving Defendants' motion to dismiss should be denied.

Respectfully submitted

Barry Guaglardi, Esq.
Attorney for Plaintiffs

25