USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/28/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE VENTURES,
LLC, NDAP, LLC and CHANNELREPLY, LLC

              Plaintiffs,

     - against -

DAVID GITMAN, JEREMY FALK, SUMMIT
ROCK HOLDINGS, LLC, ACCEL COMMERCE,
LLC, DALVA VENTURES, LLC,
KONSTANTYN BAGAIEV, OLESKSII
GLUKHAREV and CHANNEL REPLY, INC.

              Defendants.

- - - - - - - - - - - - - - - - - - -X

17 Civ. 4327 (LLS)

OPINION & ORDER

    Defendants David Gitman; Accel Commerce, LLC; Dalva

Ventures, LLC; and ChannelReply, Inc. move for dismissal of the

complaint. The motion (Doc. No. 48) is granted in part and

denied in part.

## PARTIES

    Plaintiff Michael Dardashtian asserts this action

individually, and derivatively on behalf of Cooper Square

Ventures, LLC ("CSV"); NDAP, LLC; and ChannelReply, LLC, both

wholly owned subsidiaries of CSV (collectively, the "plaintiff

entities"). Dardashtian and defendant Gitman are the only

members of CSV, each owning a 50% membership interest and profit

percentage, and named in its operating agreement as its co-

managers responsible for its daily operations.

CSV is an e-commerce software technology company. ChannelReply, LLC, a software service created and owned by CSV, facilitates eBay and Amazon store owners' communications with their customers.  CSV's proprietary and confidential ChannelReply, LLC software was created by freelance subcontractors of CSV, Konstantyn Bagaev and Oleskii Glukharev. NDAP, LLC, another subsidiary of CSV, sold automobile parts online; since the complaint was filed in June 2017, its proprietary technology assets and business have been sold.

Defendant Jeremy Falk is a principal and member of Summit Rock Holdings, LLC ("Summit Rock"), and both served as brokers and consultants to CSV and NDAP in connection with the sale of NDAP, LLC.  Accel Commerce, LLC is an e-commerce company formed by Falk and Gitman, allegedly to compete with CSV and ChannelReply, LLC.  ChannelReply, Inc. is a separate and distinct entity from ChannelReply, LLC, and was formed by Gitman allegedly to compete against CSV and ChannelReply, LLC.

## BACKGROUND

Dardashtian filed the complaint against defendants on June 8, 2017, alleging various claims against Gitman, including breach of fiduciary duty, computer fraud, misappropriation of trade secrets, identity theft, and conversion.  The claims arise

- 2 -

from Gitman allegedly "locking out" Dardashtian from the plaintiff entities; depleting the plaintiff entities' operating accounts; unlawfully transferring confidential and proprietary information and trade secrets into his newly formed competing companies; and soliciting the plaintiff entities' software developers, Bagaev and Glukharev, to join the competing company, ChannelReply, Inc.

The following allegations are taken from the complaint.

**Falk's and Summit Rock's Consulting Fee.**  In February and March 2017, Gitman and Falk began urging Dardashtian to agree to pay Falk and Summit Rock a flat fee for their consulting work related to CSV's sale of NDAP.  They agreed to lower their fee at Gitman's behest.  Nevertheless, before the sale closed, Falk and Gitman demanded that Falk receive a higher fee and Gitman demanded that he receive a greater portion than Dardashtian of the sale profits.

**Defendants' Misappropriation and Conversion of CSV's Assets.**  In October 2011, Dardashtian and Gitman had agreed that CSV's bank account with Bank of America would be used to fund ChannelReply, LLC; NDAP, LLC; and other operations in the CSV portfolio.  As of May 26, 2017, that account had a balance of $73,982.53.

On the morning of Saturday, May 27, 2017, Gitman withdrew

- 3 -

practically all of the funds in the CSV Bank of America account, reducing its balance to less than $25.00.  Around 4:30pm on May 27, Dardashtian received an email from Gitman, stating that Gitman withdrew the funds from that account and would thereafter unilaterally make decisions on behalf of CSV.  By May 29 at 8:01pm, the account balance was overdrawn by $229.40 by payments for preexisting ChannelReply, LLC services.  On May 31, Gitman began increasing CSV's debt using its Bank of America account and credit card, including for a lease payment on his BMW automobile.  This use of CSV's funds threatened its loss of its 200-plus customers, and its collapse.

**Gitman's Formation of Competing Businesses.**  Gitman formed two businesses to compete with plaintiff entities: Accel Commerce, LLC and ChannelReply, Inc.  The CSV operating agreement permits its members to form and operate a competing business, but not to take CSV's actual business.  (CSV Operating Agmt. § 12).  The "outside activities" clause prohibits Dardashtian and Gitman from using CSV's confidential and proprietary information for their own benefit or that of any competing business.  (Id.)  The operating agreement also forbids Dardashtian and Gitman from using CSV money or property other than for CSV's benefit.  (Id. § 8.2(d)).

In late April 2017, Dardashtian learned that Gitman and

Falk formed Accel Commerce, LLC, a company that competes with CSV and ChannelReply, LLC.  He also learned that they were using a CSV electronic account to operate Accel Commerce, LLC.

On May 29, Gitman blocked Dardashtian from accessing a CSV and ChannelReply, LLC conference call with their employees. Later that day and the following day, Gitman told Bagaev (ChannelReply, LLC's lead software developer) that Gitman intended to fly to Russia immediately to meet privately with Bagaev and Glukharev, ChannelReply, LLC's two software developers.

On May 30, Gitman registered ChannelReply, Inc. with the Delaware Secretary of State, allegedly for the purpose of transferring to it all CSV's assets, including ChannelReply, LLC's proprietary software codes.  On June 1, Gitman sent Bagaev and Glukharev agreements for their employment with ChannelReply, Inc.; and on June 5, he advised Bagaev that he intended to develop a new corporation in the Ukraine to reduce company taxes.  Gitman also discussed with them obtaining venture capital for the new company.

**Gitman's Misappropriation of Computer Passcodes and Software.**  On May 27, Dardashtian discovered that he was locked out of the CSV and the NDAP, LLC accounts with Bank of America. Gitman removed Dardashtian's access to "1Password," a website

containing all company-level passwords to CSV's many computer software programs.[1]   In addition, Gitman locked Dardashtian out from and created a new domain for CSV's Google Suite, to which he migrated Dardashtian's email address (michael@channelreply.com), allowing him to send and receive Dardashtian's business emails.   Dardashtian has evidence that Gitman also opened and downloaded Dardashtian's personal investment and tax documents.

**Gitman's Defamatory Comments.**   Gitman made several false statements to his business associates to demean Dardashtian, and stated to Bagaev that Dardashtian "stole" money, operated a "pyramid scheme," and was a "parasite" and a "bully."

**PROCEDURAL HISTORY**

On June 8, 2017, Dardashtian obtained from this Court temporary restraints enjoining defendants from:

- misappropriating or otherwise withdrawing funds belonging to plaintiffs from plaintiffs' bank

---

[1] Gitman revoked or suspended Dardashtian's access to over a score of accounts, including 1Password (password and login account management), Chargebee (subscription management), Stripe (credit card billing), PayPal (online payment), Upwork (freelancer marketplace), Zendesk (customer service management), JIRA (project management), Slack (messaging management), Amazon Seller (Amazon sales), eBay (eBay sales), Timedoctor (employee time management), Amazon Web Services (Amazon Web Servers management), American Express (NDAP, LLC corporate credit card), Magento (backend data), Quickbooks (accounting), Desk.com (customer service management), Godaddy (domain operation), Magemojo (Magento hosted server), Mailchimp (email subscription newsletter), Github (software storage), Ringcentral (VOIP system), and Join.me (screenshare).

accounts, payment or subscription portals, or any other location;

- accessing, disclosing, reproducing, or using plaintiff entities' confidential information, customer lists and contact information, vendor lists and contact information, computer codes and passcodes, intellectual property, and trade secrets;

- utilizing, sharing, or selling the proprietary or confidential information and code that was developed by Bagaev and Glukharev for the sole benefit of plaintiff entities;

- misappropriating Dardashtian's identity or falsely representing themselves in any manner as Michael Dardashtian or under his business name, "Michael Dash";

- using plaintiff entities' confidential, proprietary or trade secret information to compete against plaintiff entities, and replicating or attempting to replicate an identical or functionally similar analog of any of plaintiff entities' confidential, proprietary, or trade secret information;

and directing Gitman to:

- redeposit into the CSV Bank of America account all monies withdrawn by him and pay any overdraft fees incurred since May 27, 2017; and

- restore Dardashtian's access to plaintiff entities' electronic accounts;

and directing defendants to:

- return to plaintiffs all physical and electronic copies, backups, discs, drives, and other storage devices containing any of plaintiff entities' confidential information, trade secrets, company data, and other property in defendants' possession, custody, or control.

(Doc. Nos. 3, 5).

Those orders remain in full force and effect.  (Doc. No. 33).

## DISCUSSION

### Derivative and Individual Claims

*Dardashtian May Assert Derivative Claims on Behalf of Plaintiff Entities*

Defendants contend that, under the operating agreements, Dardashtian has no authority to sue on behalf of the plaintiff entities.  They rely on the "Management by Managers" clause of

- 8 -

the operating agreements for arguing that Dardashtian's

commencing this suit on behalf of CSV; NDAP, LLC; and

ChannelReply, LLC required (and lacked) Gitman's approval.  The

clause provides:

> Whenever management shall be required to take any
> action, make any decision or exercise any discretion and
> there shall be more than one Manager, then except as
> otherwise provided in this Agreement, the action,
> decision or exercise of discretion shall require the
> approval of all of the persons appointed as Manager.

(CSV Operating Agmt. § 8.1(c); ChannelReply, LLC Operating Agmt.

§ 8.1(c); NDAP, LLC Operating Agmt. § 7.3(a)).

Under New York law, a member of an LLC need not be a

manager to sue derivatively on its behalf.  Tzolis v. Wolff, 10

N.Y.3d 100, 109 (N.Y. 2008) ("We therefore hold that members of

LLCs may sue derivatively."); Bischoff v. Boar's Head Provisions

Co., 436 F. Supp. 2d 626, 631 (S.D.N.Y. 2006)) ("New York LLC

members may assert derivative actions under New York law.").  A

member bringing a derivative lawsuit does not require any

action, decision, exercise of discretion, or approval by

management; indeed, management often opposes the derivative

action, and may be held in liability as a result of it.

Dardashtian is a member of the LLC, and under Section 17.11 of

the CSV operating agreement, all remedies of members at law, in

equity, or by statute are cumulative.

The cited clause has no application to the bringing of this derivative suit, and does not prevent it.

*Dardashtian Satisfies the Demand Requirement*

Under New York law, a plaintiff bringing a derivative action on behalf of an LLC must make a pre-suit demand, except where making demand would be futile.  N.Y. Bus. Corp. Law § 626(c) ("In any such action, the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort."); see also Fine v. New York Cmty. Bank, 33 Misc. 3d 1215(A), 1215 (N.Y. Sup. Ct. 2008); In re Pfizer, Inc. Derivative Sec. Litig., 503 F. Supp. 2d 680, 683 (S.D.N.Y. 2007).  The requirement of making a pre-suit demand on the board of directors is excused if demand would be futile.  See Marx v. Akers, 666 N.E.2d 1034 (N.Y. 1996).  "Directors are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally."  Id. at 1042.

All of the transactions that Dardashtian challenges were being carried out under Gitman's control or direction.  Gitman stood to benefit financially from the challenged transactions, which he performed allegedly to establish competing businesses for his profit.  Since the beneficiary of the challenged

transactions is the only other manager and 50% owner,
Dardashtian has met the demand requirement by alleging facts
showing that demand would be futile.

*Dardashtian Does Not Confuse the Derivative and Individual*

*Claims*

Defendants argue that the complaint should be dismissed
because Dardashtian fails to segregate the individual and
derivative claims.  Defendants raise this argument for the first
time in their reply brief, so it need not be considered.  <u>See</u>
<u>Koehler v. Bank of Bermuda Ltd.</u>, No. M18-302, 2004 WL 906274, at
*5 (S.D.N.Y. Apr. 27, 2004); <u>see also</u> <u>JP Morgan Chase Bank v.</u>
<u>Altos Hornos de Mexico, S.A. de C.V.</u>, 412 F.3d 418, 428 (2d Cir.
2005).

In any event, Dardashtian adequately segregates the
derivative and individual claims.  The complaint specifies
whether the alleged claim of right and harm belongs to him
individually, one or more of plaintiff entities, or both.
Dardashtian, as an LLC member, may sue for both derivative and
individual claims.  <u>Bischoff v. Boar's Head Provisions Co.</u>, 436
F. Supp. 2d 626, 633 (S.D.N.Y. 2006) (citing <u>Excimer Assocs. V.</u>
<u>LCA Vision, Inc.</u>, 292 F.3d 134, 140 (2d Cir. 2002) (a derivative
claim "does not preclude the plaintiff from asserting its claim
directly" where the plaintiff has also sustained direct harm)).

- 11 -

Defendants also contend that derivative and individual claims "must not be intermingled within the same causes of action, but instead must be pleaded separately." Greenberg v. Falco Constr. Corp., No. 4267/2010, 2010 WL 3781279, at *3 (N.Y. Sup. Ct. 2010). In Greenberg, however, the plaintiff purported to assert claims derivatively, but sought relief both individually and derivatively. Here, there is no such confusion. Defendants themselves have identified Counts 5, 6, 7, 8, 12, 13, 14, and 18 as derivative claims. (Doc No. 49 at 12). Although defendants articulate the test for determining whether a claim is derivative or individual, they do not claim that Dardashtian was mistaken in asserting any claims derivatively or individually.

Defendants' motion to dismiss for failing to segregate the derivative and individual claims is denied.

### Federal Law Claims

#### Defend Trade Secrets Act ("DTSA")

The DTSA allows an owner of a trade secret to sue in federal court when its trade secrets have been misappropriated. See 18 U.S.C. §§ 1382, 1836. New York law "requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed." Sit-Up Ltd. v. IAC/InterActive Corp., No. 05 Civ. 9292, 2008 WL 463884,

at *10 (S.D.N.Y. Feb. 20, 2008).  A trade secret claimant must

"provide Defendants with the general contours of the alleged

trade secrets" that it seeks to protect.  Chatterplug, Inc. v.

Digital Intent, LLC, No. 16 Civ. 4056, 2016 WL 6395409, at *3

(N.D. Ill. Oct. 28, 2016).  "Defendants are entitled to be able

to discern what trade secrets are at issue."  Id.

Here, Dardashtian identifies the trade secrets he seeks to

protect:

> Such trade secrets include customer lists and addresses,
> vendor lists and addresses, computer software programs;
> computer pass codes and other protectable intellectual
> property and proprietary information.  These trade
> secrets include but are not limited to CSV's and
> Plaintiff Channel Reply's electronic services that are
> used in or intended for use in interstate and foreign
> commerce.

(Compl. ¶ 132).  This level of detail is adequate for defendants

to discern the trade secrets at issue.  In fact, these

allegations were previously found to be sufficient to warrant

temporary restraints against defendants' dissemination of trade

secrets.  (Doc. Nos. 3, 5).  Dardashtian pleads breaches of the

DTSA with sufficient specificity.

The complaint also demands judgment against Gitman for

damages resulting from the DTSA violation, as permitted by the

DTSA.  See 18 U.S.C. § 1836(b)(3)(B).  Thus, because Dardashtian

seeks different relief than that this Court has already granted,

the DTSA claim has not been rendered academic.

- 13 -

Defendants' motion to dismiss the DTSA claim is denied.

*Computer Fraud and Abuse Act ("CFAA")*

The CFAA imposes liability on whoever:

(i) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage.

18 U.S.C. § 1030(a)(5)(A). The CFAA also imposes liability on whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains-- . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).

A defendant who misappropriates information from a computer that he is authorized to access does not access the computer "without authorization" or "exceed authorized access" under the CFAA. The CFAA does not define "without authorization," but defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to so obtain or alter." 18 U.S.C. § 1030(e)(6). The Second Circuit has construed Section 1030(a) narrowly, such that a

- 14 -

defendant exceeds authorized access "only when he obtains or alters information that he does not have authorization to access for any purpose which is located on a computer that he is otherwise authorized to access." United States v. Valle, 807 F.3d 508, 511 (2d Cir. 2015) (holding that a police officer who used his status to access a database to search for an individual, with no law enforcement purpose, did not exceed his authorized access). Computer use is "without authorization" only in limited circumstances, such as where a student uploaded malware to his university's computer system by using a "special and unauthorized access route into computers," because his use was not "in any way related to [its] intended function," United States v. Morris, 928 F.2d 504, 510 (2d Cir. 1991). That interpretation comports with the CFAA's overall structure and purpose: prohibiting computer hacking. See United States v. Aleynikov, 737 F. Supp. 2d 173, 192 (S.D.N.Y. 2010).

Dardashtian recognizes that he and Gitman "jointly and equally shared and had access to the Company Computers Passwords, logon and login information, administrator information and therefore each fully maintained equal access to the Company Computers." (Compl. ¶ 186). Dardashtian's allegations that Gitman withdrew funds from the Bank of America account and transferred plaintiff entities' passwords and

- 15 -

electronic accounts to a competing business are in effect
allegations that he misappropriated company information for his
personal use.  That does not state a claim for violation of the
CFAA.

Defendants' motion to dismiss the CFAA claim is granted.

## Supplemental Jurisdiction over State Law Claims

A federal district court may decline to assert supplemental
jurisdiction over remaining state law claims in an action when
it "has dismissed all claims over which it has original
jurisdiction."  28 U.S.C. § 1376.  Because federal law claims
remain in this action, that provision does not apply.

Defendants' motion to dismiss for lack of supplemental
jurisdiction over the state claims is denied.

## State Law Claims

### Fiduciary Duty

The elements of a claim for breach of fiduciary duty are
"(i) the existence of a fiduciary duty; (ii) a knowing breach of
that duty; and (iii) damages resulting therefrom."  Johnson v.
Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011) (citing
Barrett v. Freifeld, 883 N.Y.S.2d 305, 308 (N.Y. App. Div.
2009)).  New York courts have held that managing an LLC "gives
rise to a relationship among the members which is analogous to
that of partners, who, as fiduciaries of one another, owe a duty

- 16 -

of undivided loyalty to the partnership's interests." See
Kalikow v. Shalik, 986 N.Y.S.2d 762, 757 (N.Y. Sup. Ct. 2014).

Dardashtian adequately alleges that Gitman, as a co-manager
of plaintiff entities (all of which are LLCs) owes fiduciary
duties to Dardashtian and the entities. Indeed, the NDAP
operating agreement recites that each managing member "is acting
on behalf of all Members in the nature of a fiduciary." (Id.
¶ 7.6).

Dardashtian also adequately alleges that Gitman breached
his fiduciary duties to Dardashtian and plaintiff entities,
causing damages to both. Dardashtian pleads a number of
specific actions Gitman has taken to harm Plaintiffs:

> Among other things, a) Defendant Gitman depleted the CSV
> business operating account with the express permission
> of Plaintiff Dardashtian; b) misappropriated and
> converted CSV's and Plaintiff ChannelReply's respective
> business assets and confidential information and trade
> secrets to form three competing companies, Accel
> Commerce, Dalva Ventures and Defendant Channel Reply,
> Inc.; c) solicited CSR's [sic] and ChannelReply's
> respective customers on behalf of competing businesses;
> d) "locked out" Plaintiff Dardashtian from multiple
> computer and electronic accounts necessary and
> fundamental to CSV's, NDAP and Plaintiff ChannelReply's
> business operations, including financial accounts in
> which Dardashtian had always had access; e) accessed and
> disclosed Plaintiff Dardashtian's personal private
> financial and other information; f) conspired with
> Summit Rock and Falk, respectively, to increase their
> brokerage fee as to the NDAP, LLC-XYZ transaction, while
> at the same time forming a competing business with Falk
> and sabotaging the sale with their unreasonable demands;
> and g) misappropriated and otherwise used the exact

tradename "Channel Reply" to unfairly compete against
CSV and Plaintiff ChannelReply.

(Compl. ¶ 120).  Defendants argue that "plaintiff's claims
regarding breach of fiduciary duty (Counts 2 & 4) allege only
damages that inure to the benefit of Plaintiff Entities, not
Dardashtian individually."  (Defendants' Brief, Doc. No. 49 at
14-15).  That ignores Dardashtian's allegations of his
individual harm, including the access and disclosure of his
personal financial information.

Defendants' motion to dismiss the fiduciary duty claims is
denied.

### Conversion

"A conversion takes place when someone, intentionally and
without authority, assumes or exercises control over personal
property belonging to someone else, interfering with that
person's right of possession."  <u>Colavito v. N.Y. Organ Donor
Network, Inc.</u>, 8 N.Y.3d 43, 49-50 (N.Y. 2006).  "[A]n action
will lie under New York law for conversion of money where there
is an obligation to return or otherwise to treat in a particular
manner the specific money in question."  <u>LoPresti v.
Terwilliger</u>, 126 F.3d 34, 41-42 (2d Cir. 1997).  Further, "funds
of a specific, named bank account are sufficiently identifiable
to support a conversion claim."  <u>Newbro v. Freed</u>, 409
F. Supp. 2d 386, 395 (S.D.N.Y. 2006) (internal quotation marks

- 18 -

omitted). The conversion of funds from a corporate account results in a corporate and not individual injury. See Bright View Trading Co. v. Park, 2004 U.S. D.st. LEXIS 18572, at *13 (S.D.N.Y. Sept. 15, 2004; Paradiso & DiMenna, Inc. DiMenna, 649 N.Y.S.2d 126, 127 (N.Y. App. Div. 1996). A claim for conversion applies to electronic records stored on a computer. Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y.3d 283 (N.Y. 2007).

Dardashtian asserts a conversion claim both individually and derivatively: "With the intent to interfere with the BoA Account and Plaintiff Dardashtian's equal rights thereto, Defendant Gitman did intentionally withdraw and siphon the funds from the BoA account to the exclusion of Plaintiff Dardashtian, CSV and Plaintiff ChannelReply and without Dardashtian's authorization or consent." (Compl. ¶ 162). Because Dardashtian adequately alleges that Gitman, intentionally and without authority, exercised control over the $74,715.21 in the CSV Bank of America account, the alleged siphoning off of funds from the account results in a corporate injury to plaintiff entities.

The charge of access to and disclosure of Dardashtian's personal private financial data alleges an exercise of control of that data which is inconsistent with Dardashtian's private possession of it, and thus an act of conversion.

Defendants' motion to dismiss the conversion claim is denied.

### Identity Theft

New York's Fair Credit Reporting Act provides a cause of action for identity theft: "No person, firm, partnership, corporation, or association or employee thereof shall knowingly and with the intent to defraud, obtain, possess, transfer, use, or attempt to obtain, possess, transfer, or use credit, goods, services or anything else of value in the name of another person without his or her consent." N.Y. Gen. Bus. Law § 380-s. The act permits only claims for violations of Section 380-s that "resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided." N.Y. Gen. Bus. Law § 380-*l*; see Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 442 (2d Cir. 2015). Courts dismiss claims for Section 380-s violations where they do not involve credit reporting or do not appear to fall within the intended scope of the section. See Guardsman Elevator Co., Inc. v. Apartment Inv. & Mgmt. Co., 2010 N.Y. Misc. LEXIS 4067, at *5 (N.Y. Sup. Ct. Aug. 24, 2010); Leser v. Karenkooper.com, 856 N.Y.S.2d 498, 498 (N.Y. Sup. Ct. 2008) (dismissing Section 380-s claim that the defendant used the plaintiff's name, email address, logo, trade name, and photo).

- 20 -

Dardashtian alleges that "Defendant Gitman has converted, misappropriated and/or stolen Dardashtian's business identity by wrongfully and without permission using Dardashtian's email address." (Compl. ¶ 209). However, Dardashtian does not allege that these actions implicate credit reporting, as required to recover under Section 380-*l*. Drawing all inferences in favor of Dardashtian, there is nothing to suggest that Gitman's use of Dardashtian's email falls within the intended scope of the New York Fair Credit Reporting Act.

Defendants' motion to dismiss the identity theft claim is granted.

*Tortious Interference with Prospective Economic Advantage*

The elements of a claim for tortious interference with prospective economic advantage are "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008). The wrongful means element is a demanding requirement that balances the plaintiff's interest in a contractual relationship against the interferer's competing business interest, and fosters competition. Id.

Each of those elements is met here, for both Dardashtian's individual and derivative claims.  Dardashtian alleges that CSV and ChannelReply, LLC have over two hundred customers worldwide, which are valuable assets to plaintiff entities and Dardashtian. (Compl. ¶¶ 42, 196).  Dardashtian also alleges that defendants have taken several intentional actions that interfered with and injured those relationships: misappropriating and converting plaintiff entities' accounts and confidential information to form competing companies; soliciting plaintiff entities' customers on behalf of competing businesses; locking out Dardashtian and terminating his access to various electronic business accounts; accessing and disclosing Dardashtian's personal financial information; using and infringing the trade name "ChannelReply" to form competing businesses; and soliciting and interfering with plaintiff entities' software developers. (Compl. ¶ 197).  Furthermore, Dardashtian alleges that defendants' actions prevented plaintiff entities from entering into (and Dardashtian from maintaining) several business relationships.  (Compl. ¶ 198).  As discussed above, Dardashtian adequately pleads claims for an intentional tort (conversion) and breach of fiduciary duty, which demonstrates that defendants used wrongful means.

Defendants' motion to dismiss the tortious interference claim is denied.

*Defamation*

"The elements for a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se." D'Amico v. Corr. Med. Care, Inc., 991 N.Y.S.2d 687, 694 (N.Y. App. Div. 2014). A statement constitutes defamation per se "if there is some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the charge of incompetence or dishonesty to the particular profession or trade engaged in by plaintiff." Spring v. City of Monroe, 57 N.Y.S.3d 799, 802 (N.Y. App. Div. 2017) (citation and quotation marks omitted). Certain statements fostering a public interest are privileged and therefore shielded from defamation litigation. See Bingham v. Gaynor, 96 N.E. 84, 85 (N.Y. 1911). One type of qualified privilege is the common interest privilege, which extends to a "communication made by one person to another upon a subject in which both have an interest." Stillman v. Ford, 238 N.E.2d 304, 306 (N.Y. 1968); see also Liberman v. Gelstein, 605 N.E.2d 344, 349 (N.Y. 1992). New York courts have determined,

"Statements among employees in furtherance of the common interest of the employer, made at a confidential meeting, may well fall within the ambit of a qualified or conditional privilege." Loughry v. Lincoln First Bank, N.A., 494 N.E.2d 70, 73 (N.Y. 1986). Nonetheless, the privilege does not shield statements published with malice or with knowledge of their falsity or reckless disregard as to their truth or falsity. See O'Rorke v. Carpenter, 432 N.E.2d 136 (N.Y. 1981).

Dardashtian pleads facts that, if true, constitute defamation per se. Dardashtian claims that Gitman made several intentionally false statements to Bagaev, including that Dardashtian "stole" money from the company and operated a "pyramid scheme." (Compl. ¶¶ 203-05). Defendants contend that the defamation claim "fails on the face of its insufficient allegations to overcome Gitman's qualified privilege to discuss work-related matters with co-workers." (Defendants' Brief, Doc. No. 49 at 16). Although Dardashtian does not address that contention, it is doubtful that the common interest privilege would apply to Gitman's particular statements. Defendants do not point to anything suggesting such a broad privilege as would apply to all work-related matters of every nature discussed between coworkers. Even if it does, Dardashtian alleges that Gitman made "intentionally false statements" knowing of their

falsity, which would not be shielded by any privilege. (Compl. ¶ 202).

Defendants' motion to dismiss the defamation claim is denied.

## Attorney's Fees

Dardashtian pleads several bases for receiving attorney's fees. (See, e.g., Compl. ¶¶ 122, 125, 130, 136 & passim).

Article 17.10 of the CSV and ChannelReply, LLC operating agreements both provide that the prevailing party is entitled to recover attorney's fees from the non-prevailing party "[i]f the Company, any Member or any member of Management obtains a judgment in connection with a dispute." (Meredith Decl., Exs. 1, 3). Paragraph 6.7 of the NDAP operating agreement also provides, "A member shall indemnify the Company for any costs or damages incurred by the Company as a result of any unauthorized action by such Member." Aside from the contractual bases for attorney's fees, New York law permits a successful derivative plaintiff to recover attorney's fees from the defendants. See N.Y. Bus. Corp. Law § 626(e).

Defendants' motion to dismiss for lack of a basis for demanding attorney's fees is denied.

### Injunctive Relief

Defendants correctly point out that injunctive relief is a request for a remedy based on a violation of some other right, not an independent claim. See Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) ("Injunction is not a separate cause of action; it is a remedy.").

Defendants' motion to dismiss the injunctive relief claim is granted. Its availability as a possible remedy for the remaining claims remains undisturbed.

### CONCLUSION

The motion for dismissal (Doc. No. 48) is granted with respect to the claims of violation of the CFAA, identity theft, and injunctive relief (as a separate claim), and is otherwise denied.

So ordered.

Dated: New York, New York
       November 28, 2017

_____
LOUIS L. STANTON
U.S.D.J.