## GUAGLARDI & MELITI, L.L.P.

*Attorneys At Law*
*A Limited Liability Partnership*

| | | |
|---|---|---|
| BARRY S. GUAGLARDI ▲ | 365 WEST PASSAIC STREET, SUITE 130 | JASON S. NUNNERMACKER ♦ |
| MICHAEL P. MELITI ▲ | ROCHELLE PARK, NJ 07662 | FRANCES OLIVERI ▲ |
| | TELEPHONE: 201-947-4100 | KRISTEN E. SCHREIB ▲ |
| | FACSIMILE: 201-947-1010 | EVAN A. OSTRER ▲ |
| | FACSIMILE: 201-843-5302 | MYLES M. MISSIRIAN ♦ |
| | | |
| | 111 MAIN STREET | ♦  NJ BAR |
| | P.O. BOX 509 | ▲  NJ & NY BAR |
| | CHESTER, NY 10918 | |
| | TELEPHONE: 845-576-0600 | |
| | FACSIMILE: 845-576-0601 | |
| | | |
| | DIRECT DIAL: 201-374-9092 | |
| | EOSTRER@ADGMLAW.COM | |
| | | |
| | WEBSITE: WWW.ADGMLAW.COM | |

**VIA E-FILE**                                                                July 14, 2020
Honorable Louis Stanton, U.S.D.J.
U. S. District Court of New York
United States Courthouse
500 Pearl Street,
New York, NY 10007

Re:   **Michael Dardashtian, et al. v. David Gitman, et al.**
      **17-cv-4327**

Dear Judge Stanton:

We represent the Plaintiff, Michael Dardashtian ("Dardashtian"), individually and on behalf of Plaintiffs, Cooper Square, LLC a/k/a Cooper Square Ventures, LLC ("CSV"), NDAP, LLC ("NDAP") and ChannelReply ("CR") (collectively "Plaintiff Companies"). Pursuant to Your Honor's Individual Practices, we write to request a pre-motion conference seeking leave for Plaintiffs to file a Motion for Summary Judgment under FRCP 56. This letter summarizes the bases for the motion.[1]

**Background**. Dardashtian and Gitman are 50/50 owners of the Plaintiff Companies, which are engaged in the business of e-commerce and governed by the CSV Operating Agreement. CSV owns and maintains proprietary software as a service (SaaS) known as "ChannelReply" (referred to herein as "Plaintiff ChannelReply") that is utilized through service agreements with CSV's customers throughout the United States and abroad, including Ebay and Amazon. Prior to the commencement of this Action, both Dardashtian and Gitman served as the Plaintiff Companies' co-managers, and operated the Plaintiff Companies income and expenses through CSV's Bank of America banking account ("CSV Account"), of which Dardashtian and Gitman were the only signatories. In May, 2017, without Dardashtian's knowledge or consent, Gitman transferred all of the funds from the CSV Account to an account owned and maintained exclusively by Gitman, leaving the Plaintiff Companies with a negative balance, and simultaneously removed all of Dardashtian's online and

---

[1] Plaintiffs received permission from the Court to exceed the page limitation in connection with this request.

1

other access to all of the Plaintiff Companies' electronic and other accounts, including Dardashtian's own email account effectively freezing Dardashtian out of the Plaintiff Companies. In June, 2017, Dardashtian learned, through live action screenshots from the Plaintiff Companies' TimeDoctor software, that Gitman had covertly made arrangements to usurp the Plaintiff Companies' trade name, "ChannelReply", as well as its proprietary software, confidential codes, trade secrets, intellectual property, customers and accounts. Dardashtian learned that Gitman had secretly travelled to the Ukraine to solicit the Plaintiff Companies' IT developers, Konstantyn Bagaiev and Oleksii Glulkharev ("the Developers") who helped develop and maintain the "ChannelReply" platform and code for CSV, who paid the Developers for such services, to induce the Developers to resign from the Plaintiff Companies, and to join Gitman as an owner of Gitman's newly created competitor company, Defendant Channel Reply, Inc. ("CR, Inc."). Thereafter, the Developers were emailed draft resignation letters from Gitman for their review and submission to CSV/ChannelReply. The Developers then submitted identical resignation letters to Dardashtian (and Gitman) advising of their intention to resign from the Plaintiff Companies. Discovery has revealed that Gitman, a 50% member of CSV, assisted the Developers in the drafting of their resignation letters, told the Developers not to speak to Dardashtian, and sought to undermine a restoration of the status quo during the course of this proceeding, by telling the Developers, *in writing*, to delete text messages and TimeDoctor screenshots.

On July 8, 2017, this Court granted Dardashtian's OSC, in part, finding that Dardashtian has demonstrated a likelihood of success on the merits, and compelled Gitman to immediately restore the Plaintiff Companies to the status quo, including the immediate transfer of funds back into the CSV Account, and ordered a full restoration of Dardashtian's access to the Plaintiff Companies' online and other accounts, amongst other related relief (which Gitman was compelled to comply with under the supervision of this Court). On June 19, 2017, the Court ordered Gitman's removal as co-manager of the Plaintiff Companies on a preliminary basis, and appointed Joel Liebman, C.P.A., the Plaintiff Companies' accountant, to serve with Dardashtian as co-manager of the Plaintiff Companies which arrangement continues through this date.

Since Gitman's removal as co-manager approximately three-years ago, and with Dardashtian's leadership, the Plaintiff Companies have not suffered a frustration of purpose and have grown and increased revenue and customer base.

**Motion for Summary Judgment- Plaintiffs' Claims against Gitman Defendants.[2]**

*Count 2: Breach of Fiduciary Duty; Count 4: Aiding and Abetting; Count 10: Conversion*: Documentary evidence confirms that Gitman owed fiduciary duties to Dardashtian and the Plaintiff Companies by way of the Plaintiff Companies' Operating Agreements, and breached such duties. The Plaintiff Companies' "TimeDoctor" software, before it was deleted by Gitman, took live action screenshots of Gitman committing the act(s) complained of, including Gitman's unlawful depletion of the CSV Account, the unauthorized removal of Dardashtian's access to the Plaintiff Companies' online accounts and the formation of CR, Inc. misappropriating the tradename ChannelReply and

---

[2] By Decision and Order dated November 28, 2017, this Court granted Defendants' motion to dismiss Plaintiffs' Complaint with respect to the claims of violation of the CFAA, Identity Theft and Injunctive Relief (as an independent cause of action). All other claims against the Gitman Defendants remain.

using it as a direct competitor of the Plaintiff Companies.[3] Such facts are not in dispute as Gitman was ordered by this Court to return the money, restore Dardashtian's access to the online accounts under the supervision of this Court and dissolve CR, Inc. These facts are in addition to the solicitation of the Developers to terminate their relationship with the Plaintiffs.

*Count 5: Violation of 18 USC 1832; Count 10: Conversion; Count 15: Tortious Interference; Count 19: Misappropriation of Trade Secrets*: Gitman surreptitiously usurped the Plaintiff Companies' trade secrets, software, codes and confidential and proprietary information in his efforts to develop his own competing businesses, including Defendants CR, Inc., Dalva Ventures ("Dalva") and Accel.Commerce ("Accel"). Discovery, including communications with the Developers and emails exchanged between Gitman and former Defendant, Jeremy Falk ("Falk"), demonstrate that Gitman opened CR, Inc. with the intent to strip Plaintiff ChannelReply of its business, and without Dardashtian's knowledge, shared ChannelReply's confidential data and financial information with Falk using Gitman's Accel email account. Discovery further demonstrates that unbeknownst to Dardashtian, Falk was Gitman's partner in their joint ventures Accel and Dalva, while Falk served as an agent/broker to the Plaintiff Companies in connection with the sale of NDAP. Falk is not an owner, member, officer, director or employee of Plaintiff Companies. Gitman's actions in taking the Plaintiff Companies' proprietary software, violating his fiduciary duty by opening a competitive business using the same name, and unlawfully soliciting Plaintiff ChannelReply's customers while using Plaintiff ChannelReply's own protected intellectual property against it should further support judgment in favor of Plaintiffs' claim of *Tortious Interference* (*Count 15*) and *Misappropriation of Trade Secrets*. (*Count 19*). See Catskill Dev., LLC v. Park Place Entm't Corp., 547 F.3d 115 (2d Cir. 2008).

*Count 7: Breach of Contract*: Plaintiffs CSV and NDAP each have an Operating Agreement of which Gitman and Dardashtian are 50/50 members. The Amended Verified Complaint sets forth multiple provisions of each Operating Agreement which Gitman has materially breached, certain of which are set forth above, and which also include Gitman's unlawful dissemination of confidential information belonging to the Plaintiff Companies.[4]

*Count 9: Breach of Covenant of Good Faith and Fair Dealing*: Gitman, an equal member of Plaintiff Companies and who signed the CSV and NDAP Operating Agreements, drained and siphoned the CSV Account, formed CR, Inc. used for CR, Inc.'s benefit ChannelReply's tradename, software, intellectual property and customers, and induced the Developers to resign from the Plaintiff Companies and join CR, Inc., and removed Dardashtian's access to the Plaintiff Companies' accounts and assets. Gitman also enriched himself by attempting to partition ChannelReply for his own benefit and to the detriment of the Plaintiff Companies.[5]

*Count 16: Defamation*. Text messages sent by Gitman reveal that Gitman made false statements to third parties, including the Developers that were knowingly false, including statements that Dardashtian "stole money" and was operating a "pyramid scheme." Gitman's actions were designed

---

[3] Such facts further support Plaintiffs' Cause of Action for *Conversion (Count 10)*. See Lopresti v. Terwilliger, 126 F.3d 34 (2d Cir. 1997).

[4] Attorneys Fees: Section 17.10 of the CSV Operating Agreement provides that if a non-breaching party prevails in any action to enforce its rights under the CSV Operating Agreement, such party shall be awarded reasonable attorneys' fees incurred to enforce such rights.

[5] Such facts further support Plaintiffs' Claim of *Unjust Enrichment* under a quasi-contractual theory (*Count 8*).

to and did induce the Developers to resign from Plaintiff Companies and leave Dardashtian, and to join Gitman in his competing company, CR Inc. See Spring v. City of Monroe, 57 NYS 3d 799 (NY App.Div 2017).

*Count 20: Declaratory Judgment (Redemption of Gitman's Membership Interests)*. Article 11.5 of the CSV Operating Agreement permits CSV to redeem a member's interests under ten enumerated circumstances, including willful or serious misconduct; breach of duties, and attempt to partition CSV's property. Discovery in this matter, including discovery submitted to this Court in support of the Order to Show Cause that was granted, Time Doctor Screenshots of Gitman's own text messages to the Developers, and Gitman's own admissions in his sworn deposition testimony, all support the Redemption by CSV of all of Gitman's right, title and interest in Plaintiff Companies under several subparts of Article 11.5 of the CSV Operating Agreement.

*Count 21: Equitable Buyout*. Since the Court restored the status quo, the Plaintiff Companies have not suffered frustration of purpose, and have continued to grow under Dardashtian's leadership, rendering dissolution/liquidation a harsh remedy that is contrary to well-settled law. Dardashtian should be permitted to buy-out Gitman's interests for value taking into consideration the circumstances of this Action in the event that the Court does not grant CSV the right to redeem Gitman's right, title and interest in Plaintiff Companies pursuant to Count 20 above.

**Summary of Defendants' Counterclaims.**

Gitman asserts a Counterclaim, individually and also derivatively, purportedly on behalf of the Plaintiff Companies, alleging in substance that Dardashtian engaged in misappropriation by collecting disproportionate distributions from the Plaintiff Companies, and by taking customers away from ChannelReply. Gitman seeks Declaratory Judgment finding Gitman to be free to own and/or work for any entity which directly competes with CSV/ChannelReply (Seventh Counterclaim); an Accounting (Eighth Counterclaim); and Declaratory Judgment that ChannelReply is **not** wholly owned by CSV 100%, but rather owned by CSV (50%), Gitman (42.5%) and the Developers (5%) (Ninth Counterclaim).[6] Gitman seeks money damages as a result of Dardashtian's alleged failure to prepare "the necessary paper work setting forth Gitman's, CSV's and the Developers' respective ownership interests in what Gitman characterizes as a "joint venture", namely his self-created entity, Defendant CR, Inc. which this Court directed Gitman to dissolve (and "evaporate") as part of the relief this Court granted in Plaintiffs' Order to Show Cause.

Summary Judgment is warranted with respect to Gitman's tort and contract based claims. Gitman confirmed by way of his discovery responses that despite Gitman's allegations, he is "not in possession" of any records to demonstrate (1) that Dardashtian took any customers away from ChannelReply (2) that Dardashtian took disproportionate distributions; (3) that Dardashtian engaged in any theft; and/or (4) that Dardashtian engaged in misappropriation[7].

---

[6] Gitman's assertions to reduce CSV's ownership should require the dismissal of Gitman's derivative causes of action, as Gitman's derivative claims do not fairly and adequately represent the interests of the Plaintiff Companies' or its members.

[7] Gitman's request for an Accounting (Eighth Counterclaim) should likewise be dismissed as an accounting is expressly prohibited by CSV's Operating Agreement. An equitable accounting claim also cannot coexist with a breach of contract claim covering the same subject matter. See e.g. Physicians Mut. Ins. Co., 2009 U.S. Dist. LEXIS 32616.

Gitman's Unjust Enrichment Claim seeking a Constructive Trust also fails, as the remedy Gitman seeks is to benefit himself and the Developers, and not the Plaintiff Companies. "The claimant to a constructive trust must establish the facts giving rise to the trust by clear and convincing evidence." S.E.C. v. Credit Bancorp, Ltd., 138 F. Supp. 2d 512, 532-33 (S.D.N.Y. 2001) While Gitman contends that a trust should be imposed on all income derived from ChannelReply, such income is maintained in the Plaintiff Companies' sole bank account, which benefits both Dardashtian and Gitman equally subject to the claims in this Action. Gitman's contentions, even if true, would not permit a constructive trust as legal title would go to Gitman and the Developers, who are not owners of such funds, thus failing to meet the predicate for such relief[8].

Gitman's Ninth Counterclaim for Declaratory Judgment, seeks a declaration that ChannelReply (whose income and expenses are declared on CSV's federal income tax return and for which Gitman receives a Form k-1) is **not** wholly owned by CSV 100%, but is rather only *partially* owned by CSV (50%), Gitman in his individual capacity (42.5%) and the Developers (5%). Gitman has not come forward with any evidence which proves or tends to prove that CSV does not own ChannelReply 100% and all evidence including the income tax returns of both CSV, Gitman and Dardashtian all reflect the contrary. This is another baseless assertion by Gitman.

For the foregoing reasons, Plaintiffs respectfully seek a pre-motion conference to address the prior Scheduling Order of Judge Lehrburger which currently requires dispositive motions to be filed by July 30, 2020[9], and to set a briefing schedule if the Court permits Plaintiffs to file their Motion for Summary Judgment.

Thank you for Your Honor's consideration of this request.

Respectfully Submitted,
GUAGLARDI & MELITI, LLP

Evan Ostrer

Cc: All Counsel of Record (via ECF)

---

[8] The Developers have not appeared in this action, however, the Developers have returned to work for Plaintiff CSV/ChannelReply since the Court's preliminary removal of Gitman as co-manager of the Plaintiff Companies.

[9] On July 10, 2020, Defendants filed a motion pursuant to Fed.R. Civ. P 72 with a return date of July 31, 2020 (a day after the deadline for dispositive motions to be filed) ("Defendants' Motion"). Defendants' Motion seeks relief that could likewise extend discovery and would necessitate the need for a briefing schedule if leave is granted.