UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE, LLC a/k/a
COOPER SQUARE VENTURES,
LLC, NDAP, LLC and CHANNELREPLY,        1:17 Civ.4327 ( LLS) (RWL)

        Plaintiffs,

    -against-

DAVID GITMAN, ACCEL COMMERCE, LLC,
DALVA VENTURES, LLC, KONSTANTYN
BAGAIEV, OLESKSII GLUKHAREV and
CHANNEL REPLY, INC.,
        Defendants.
------------------------------------------------------------X

## PLAINTIFFS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Plaintiffs, Michael Dardashtian, individually ("Dardashtian") and on behalf of Cooper Square, LLC a/k/a Cooper Square Ventures, LLC, NDAP, LLC and ChannelReply (hereinafter collectively referred to as "Plaintiff Companies") submit this statement of uncontested facts pursuant to Local Civil Rule 56.1 in support of their Motion for Summary Judgment.

### A. THE PLAINTIFF COMPANIES

<u>Cooper Square, LLC a/k/a Cooper Square Ventures, LLC</u>

1. Dardashtian and Defendant David Gitman (hereinafter "Gitman") are both managers and founders of Cooper Square, LLC a/k/a Cooper Square Ventures, LLC ("CSV"). (See Defendants' Amended Counterclaim dated June 9, 2020 ("Counterclaim") at paragraph ("para") *10, annexed to the Declaration of Barry Guaglardi ("Guaglardi Decl.") at Ex. E.*

1

2. On August 13, 2011, Dardashtian and Gitman with the intention to be bound thereby, each executed an Operating Agreement for CSV ("CSV Operating Agreement"), granting Dardashtian and Gitman each a 50% ownership interest in CSV, and sharing equal management control on behalf of CSV. See Affidavit of Michael Dardashtian in Support of Motion for Summary Judgment, ("Dardashtian. Aff.") at *Ex. 2, p. 25)*; see also *Guaglardi Decl. at Ex. L, para 13* (Affidavit of Jeffrey E. Rothman, Esq. dated June 21, 2017) ("Rothman Aff.").

3. All income and expenses for CSV and ChannelReply have been maintained in the CSV Bank Account since October 31, 2011 through the present. See Guaglardi Decl. at Ex. E, (Defendants' Counterclaim). See also, Declaration of Joel Liebman, C.P.A ("Liebman Decl.") at *paras 2, 6, 7, 9-11*.

4. All income and expenses for CSV, ChannelReply and NDAP are shared equally 50/50 by Dardashtian and Gitman as reported on CSV's income tax returns and Form K-1's issued to Dardashtian and Gitman. See Declaration of Joel Liebman, C.P.A ("Liebman Decl.") at *paras 2, 6, 7, 9-11*.

5. Gitman has no proof in his possession to support his claim for disproportionate distributions, misappropriation, or theft allegedly committed by Dardashtian as it relates to CSV. ChannelReply and/or NDAP. See, *Guaglardi Decl. Ex. M at para 12* (Gitman Supplemental Discovery Responses).

## NDAP, LLC

6. NDAP, LLC ("NDAP") is a wholly owned subsidiary of CSV, which was established for the purpose of creating an e-commerce software platform to sell and distribute auto parts under the name "Next Day Auto Parts," later to be known as "Car Part

2

Kings." See, Guaglardi Decl. Ex. E, para 27 (Defendants' Counterclaim); see also, *Dardashtian Aff. at Exs. 4a and 4b*.

7. Pursuant to Article 6.5 of the NDAP Operating Agreement, Dardashtian and Gitman agreed that Gitman and Dardashtian "shall not be entitled to enter into transactions that may be considered competitive with the Company" and "for twenty four (24) months following the termination of this Agreement, they shall not be engaged in any business, whether internet based or of a traditional brick and mortar type that is competitive with the Company without the express written permission of the Majority.

8. From August 24, 2011 through July 28, 2017, NDAP created, owned and operated an original proprietary software which facilitated the online inventory and sale of auto parts through Carpartkings. See, *Dardashtian Aff. at Exs 10a and 10b; see also, Guaglardi Decl. Ex. E at para. 33* (Defendants' Counterclaim).

ChannelReply

9. Since "ChannelReply" was established, it has been solely owned and operated by and through CSV. *Dardashtian Aff. Exs. 5b, 5c, 5d, 6, 7a, 7b*; see also *Liebman Decl. at paras 2, 7, 9, 10, 11*.

10. CSV owns 100% of ChannelReply and Dardashtian and Gitman each own 50% of ChannelReply by and through their equal ownership interest in CSV as provided in the CSV Operating Agreement. See *Dardashtian Aff. Ex. 2*, last page; see also *Liebman Decl. at paras 2, 7, 9, 10, 11*.

11. ChannelReply was never owned by CSV 50%, Gitman individually 42.5%, Bagaiev 5% and Glukarev 2.5%. Bagaiev Aff. at para 105; *Bagaiev Aff. Ex. B at Section 1(e)*; see also *Liebman Decl. paras 6, 7, 8, 9, 10, 11*. See also CSV Operating Agreement.

12. The ChannelReply software, including its code, is CSV's intellectual property and constitutes a protected trade secret as provided by 18 U.S.C. 1836. See, *Guaglardi Decl. Ex. K at para 47* (Gitman Affidavit); *Dardashtian Aff. at paras 6-7; Bagaiev Aff at paras 86, 94-99, Ex. B; Dardashtian Aff. at para 7; Exs. 6, 9, 11-12, 59*.

13. CSV's Terms of Service with ChannelReply customers requires each ChannelReply customer to agree to ChannelReply's technical safeguards to protect the security and confidentiality of ChannelReply's service data. *Dardashtian Aff. Ex. 12, p. 2*.

14. Gitman transferred ChannelReply's intellectual property, confidential information, including ChannelReply's business accounts, ChannelReply's contract terms and conditions with existing customers, customer lists, protected trade secrets including its software code to Gitman's company, Channel Reply Inc. See, Bagaiev Aff. at paras 43, 56, 57, 86, 94-99; *Dardashtian Aff. at Exs. 11, 26, 41; see also*, Channel Reply Inc.'s Stock Plan Agreement *at Dardashtian Aff. Ex. 42*, see also *Ex. 42 at Exhibit D Assignment of IP and Other Assets"; Dardashtian Aff. Ex. 26, pp. 3-4;* see also Channel Reply Inc.'s bank records at *Dardashtian Aff. Ex. 41*.

## B. CHRONOLOGICAL STATEMENT OF UNDISPUTED FACTS

<u>Defendant Gitman's Access to the Plaintiff Companies' Records</u>

15. On October 31, 2016, Gitman advised that he wanted to have a "grip" on all financial related aspects of the Plaintiff Companies and requested that Dardashtian agree to a

4

third party to review the financial records. See, *Dardashtian Aff. at para 37, Exs. 118, 119; 126.*

16. From December 2, 2013 through the present, Gitman has had, at all times relevant hereto, complete access to the Plaintiff Companies' QuickBooks accounts, and has logged in to access the Plaintiff Companies' QuickBooks multiple times each year from 2013 through the present. See, *Dardashtian Aff. Exs. 115 and 116; 118, Ex. 92.*

ChannelReply, Inc., Accel Commerce, LLC and Dalva Ventures, LLC

17. In early 2017, Gitman decided that he no longer wanted to be a partner with Dardashtian on any new ventures. See *Guaglardi Decl. Ex. K at para 109* (Gitman Aff).

18. As of January, 2017, Gitman and Falk had been operating Accel Commerce, LLC (Accel), listing Gitman as Accel's business manager, with the purpose of doing business in the e-commerce industry. See, *Dardashtian Aff. Ex. 33a and 33b; Ex. 37* see also, *Guaglardi Decl. Ex. K at para 110* (Gitman Aff).

19. On or about February 13, 2017, Gitman, Laura Gitman and Jeremy Falk ("Falk") executed an operating agreement for Dalva Ventures, LLC, a company engaged in e-commerce ("Dalva"). See *Dardashtian Aff. Ex. 39.*

20. As of February 13, 2017, Falk was a consultant for NDAP in connection with a potential sale of NDAP to a third party purchaser. See, *Dardashtian Aff. Ex. 24, 25.*

21. On or about and between February 26, 2017 and March 7, 2017, Gitman requested that Dardashtian agree to pay Falk $160,000.00 in accordance with the Falk Agreement. See, *Dardashtian Aff. Ex. 24; 29a.*

22. As of March 7, 2017 Gitman and Falk were members of Dalva. See *Dardashtian Aff. Ex. 39*.

23. On March 15, 2017, Falk agreed to reduce his fee to $80,000.00 per Dardashtian's request. See *Dardashtian Aff. at Ex. 32*.

24. Accel did business in the years 2017-2018. See, *Dardashtian Aff. Exs. 38; see also, 35a, 35b, 35c, 35d, 35e, 35f, 35g, 35h*.

25. On April 14, 2017, Gitman used his email address dgitman@accelcommerce.com to send to Falk at jfalk@accelcommerce.com a copy of ChannelReply's Profit and Loss Statement for the year 2016, without Dardashtian's authorization and/or consent. See *Dardashtian Aff. Ex. 23*.

26. On May 27, 2017, Gitman advised Dardashtian that Dardashtian's "resistance for an accounting has given [Gitman] cause to transfer the company's cash balances to a call deposit account," and "this money will remain in this account until an audit is completed by the company's accountant, Liebman Goldberg & Hymowitz ("Liebman") or you accept my conservative estimate of $121,500 in overpayments." *Dardashtian Aff. Ex. 24*.

<u>Gitman's transfer of the Plaintiff Companies' Funds</u>

27. As of May 27, 2017, without Dardashtian's knowledge or consent, Gitman changed the passwords and/or otherwise transferred the Plaintiff Companies online accounts to a separate domain, removing Dardashtian's ability to access same, including, but not limited to, "1 password" which controls all of the passwords for all of the Plaintiff Companies' online accounts, and Google Suite, which includes access to the Plaintiff

Companies' data, customer lists, subscriptions with customers, invoices, etc. See, *Dardashtian Aff. Ex. 52; see also Guaglardi Decl. Ex. J at para 92.*

28. Gitman also "moved" the Plaintiff Companies' Chargebee and Stripe accounts to Channel Reply Inc., a company formed by Gitman without Dardashtian's knowledge or consent, and of which Dardashtian had no ownership or affiliation. See *Guaglardi Decl. Ex. J at para 96.*

29. The Plaintiff Companies' Chargebee account, Stripe account and Slack account were all transferred to Channel Reply Inc. and those specific accounts no longer exist. *Id at para 101.*

30. After the TRO was entered, Gitman created new Chargebee, Slack and Stripe accounts to provide Dardashtian with access "in an effort to fully comply with the TRO." See, *Guaglardi Decl. Ex. J at para 101* (Gitman Aff).

31. As of May 27, 2017 and continuing thereafter, Gitman transferred Dardashtian's business accounts, including Dardashtian's email address michael@channelreply.com to Gitman's new G suite account for ChannelReply. See, *Dardashtian Aff. Ex. 54.* See also, *Bagaiev Aff. at paras 43, 56, 57, 86, 94-99.*

32. Gitman's "lockout" of Dardashtian from the Plaintiff Companies accounts was intentional until such time that an accounting was "properly set-up." See *Guaglardi Decl. Ex. J para 97.*

33. On or about and between May 27, 2017 through May 30, 2017, Gitman caused the removal of Dardashtian's access to the following business accounts belonging to the Plaintiff Companies:

a) 1Password Account – this is a password and login account management system. It holds all of my personal passwords and the companies shared passwords. Account was paid for out of company funds.

b) Chargebee Account – This is our subscription management account that holds the customer information and billing information for all of our ChannelReply customers

c) Stripe Account – This is our credit card billing service that allows us to receive credit card payments from our customers.

d) PayPal Account – This is an online payment system which allows us to take online payments from our customers.

e) Upwork Account – This is a freelancer marketplace that allows us to hire and pay freelancers to run the business.

f) Zendesk Accounts – This is a customer service management account which allows us to talk to our customers when they email us through support tickets.

g) JIRA Account – This is a project management software that allows us to manage projects effectively for our business and work with one another to successfully complete tasks.

h) Slack – This is a messaging management software for our business that allows company employees and freelancer to openly communicate with one another and share documents.

i) Amazon Seller Central – This is our Amazon seller account that allows us to sell products on Amazon and manage our MWS accounts for ChannelReply sellers.

j) EBay Accounts – This allows us to sell products on eBay and manage our eBay subscription id's for ChannelReply sellers.

k) Timedoctor – This allows us to manage the time management of employees and freelancers via an online portal to track time and take screenshots of employees and freelancer work.

l) Amazon Web Services (AWS) – This is where we manage all of our Amazon Web Servers which keep the businesses servers running effectively.

m) American Express Account – This is a NDAP corporate credit card account

n) Magento Accounts – This is our Magento Admin which allows us to see all backend data associated with our business

o) QuickBooks Accounts – This is where all the finances are held and all accounting and reconciliation is done.

p) Desk.com Account - This is a customer service management account which allows us to talk to our customers when they email us through support tickets.

q) Godaddy Account – We have a company godaddy account which owns and operates many domains, I cannot login to Godaddy to even list all of the domains we own together.

r) Magemojo – This is our Magento hosted server account

s) Mailchimp – This is our email subscription newsletter account

t) GitHub – This is where all of our software is checked in and stored for sharing

u) Ringcentral – This is our VOIP system that allows us to make and receive internet phone calls and faxes

v) Join.me – This is a screen share service that allows us to talk to customers and share our screens with them

See, *Dardashtian Aff. Ex. 59; 60a, 60b, 60c.*

34. Gitman admits that he suspended Dardashtian's "1 Password" account, which Gitman restored "in compliance with the TRO." See, *Guaglardi Decl. Ex. J at para 93* (Gitman Aff).

35. On or about and between May 27, 2017 to May 30, 2017, without Dardashtian's knowledge, authorization or consent, Gitman authorized and completed two (2) electronic transfers from the CSV Bank Account:

    (1) Transfer in the amount of $23,982.53 to Checking Account ending #5141- David Gitman, Banking Ctr Northwood #0094043 PA, Confirmation # 0189542525;

    (2) Transfer in the amount of $50,000.00 to Checking Account ending #5141- David Gitman, Banking Ctr Northwood #0094043 PA, Confirmation #2589533902.

    *Dardashtian Aff. Exs 46a and 46b; see also Ex. 24.*

9

36. Gitman used $5,060.00 of the Plaintiff Companies' funds to pay Gitman's personal counsel, Umar Farooq. See, *Guaglardi Decl. Ex. K at para 83* (Gitman Aff); see also *Dardashtian Aff. Ex. 44.*

37. On Monday May 29, 2017, Defendant Gitman canceled Dardashtian's participation in a pre-scheduled weekly conference call with Gitman, Bagaiev and Glukarev. See, *Dardashtian Aff. Ex. 64.*

38. As of May 31, 2017, Gitman continued to charge a lease auto payment for his personal BMW to the CSV Bank Account. See, *Dardashtian Aff. Exs 71, 72a and 72b.*

39. Gitman does not have proof in his possession that Dardashtian took any disproportionate distributions in the amount of $121,500 or otherwise from the Plaintiff Companies. See, *Guaglardi Decl. Ex. M at para 12* (Gitman Discovery Responses).

40. Dardashtian did not have access to send or receive emails from his michael@channelreply.com email address from May 30, 2017 to June 14, 2017. See, *Guaglardi, Decl. Ex. J at para 95* (Gitman Aff).

## Defendants' Unlawful Competition with Plaintiff Companies

41. Without Dardashtian's knowledge, authorization and/or consent, Gitman opened a separate bank account under the name Channel Reply Inc., with Chase Bank under account number ending in #7775, with an address of 100 Sterling Pl, Apt 1A, Brooklyn, New York 11217. See *Dardashtian Aff. Ex. 41.*

42. Gitman, with the assistance of his personal attorney, Umar Farooq, Esq., created Channel Reply Inc., to set up a new competitive company to that of ChannelReply

and intended to create a stock ownership plan to incentivize the developers, Bagaiev and Oleksii Glukharev ("Glukharev"0. See, *Guaglardi Decl. Ex. J at para 69* (Gitman Aff).

43. On June 1, 2017, Gitman, using his Dalva email account, David@dalva.ventures, sent to Bagaiev and Glukarev employment agreements for Bagaiev and Glukharev to become employees of Channel Reply Inc. See, *Dardashtian Aff. Exs. 76a, 76b, 76c, 76,d, 76e, 76f, 76g.*

44. On June 2, 2017, Gitman charged $3,500 to amazon web services using NDAP's American Express credit card. See, *Dardashtian Aff. Exs 85a and 85b.*

45. On June 2, 2017 at 7:12 p.m., Gitman advised Bagaiev, that providing Dardashtian with a lesser ownership interest in ChannelReply "considering how much money [Dardashtian] stole it is more than generous." *Dardashtian Aff. Ex. 82.*

46. On June 8, 2017, Gitman entered into a "Common Stock Purchase Agreement" with Bagaiev providing Bagaiev 1,000,000 shares of stock in Channel Reply Inc. *Dardashtian Aff. Ex. 42.*

47. On June 19, 2017 at 5:57:58 p.m., Gitman told Bagaiev to "clear his text (sic) conversation" with Gitman. *Bagaiev Aff. Ex. A*; see also, *Guaglardi Decl. Ex. Q at p 40.*

## Resignation of Developers from CSV

48. On June 20, 2017 at 9:13 a.m., Gitman sent to Bagaiev and Glukharev resignation letter "templates" and then asked Bagaiev to "please use one of these." *Bagaiev Aff. Ex. A*; see also, *Guaglardi Decl. Ex. Q at p. 38.*

11

49. On June 20, 2017 at 3:37 p.m. regarding Bagaiev's resignation letter, Gitman advised Bagaiev, referring to Gitman's form counsel Lindsay Ditlow, Esq., that "Lindsay asked me to send you an email to send mike the resignation letter." *Id at p. 35.*

50. On June 20, 2017 at 5:46 p.m. regarding Bagaiev's resignation letter, Gitman advised Bagaiev "The lawyers want it to come from you not them. Otherwise Mike might argue that we are conspiring." *Id at p. 35.*

51. By letters dated June 20, 2017, Bagaiev and Glukharev resigned from ChannelReply "effective June 20, 2017". *Dardashtian Aff. Ex. 34.*

<u>Gitman's Interference with Dardashtian's and the Plaintiff Companies' Past, Present and Future Expectation of Economic Gain</u>

52. In the year 2017, Accel Commerce generated a gross profit of $79,274.32 *Dardashtian Aff. Ex. 38.*

53. On May 1, 2020, Plaintiff Companies' co-managers, Dardashtian and Liebman issued a "Redemption Notice" pursuant to Article 11.5 of the CSV Operating Agreement authorizing CSV to redeem all of Gitman's right, title and interests in the Plaintiff Companies ("Redemption Notice"), with a Redemption Closing to take place on June 1, 2020 ("Redemption Closing Date"). *Liebman Decl. Ex. A.*

54. Pursuant to Article 11.5(f) of the CSV Operating Agreement, "[t]he closing of a redemption as contemplated in this paragraph shall not prejudice a Redeemed Member's right to contest the amount of the Purchase Price but a Redeemed Member *shall not be permitted to contest the closing as contemplated by this paragraph.*" See *Dardashtian Aff. Ex. 2* (CSV Operating Agreement)(emphasis added).

55. On May 6, 2020, Gitman sent a "Rejection of Notice of Redemption, Cooper Square Ventures, LLC", contesting the closing on the grounds that Gitman never "consented, endorsed, supported or approved of the proposed redemption". See *Guaglardi Decl. Ex. O.*

Respectfully submitted this 14th day of August, 2020.

Dated: August 14, 2020

By: _____
Barry Guaglardi (BSG2401)
Evan Ostrer (EO1099)

365 W. Passaic Street, Suite 130
Rochelle Park, New Jersey 07662
(201)947-4100
bguaglardi@adgmlaw.com
eostrer@adgmlaw.com