

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE VENTURES,
LLC, NDAP, LLC and CHANNELREPLY, LLC

                Plaintiffs,

     -against-

DAVID GITMAN, JEREMY FALK, SUMMIT
ROCK HOLDINGS, LLC, ACCEL COMMERCE,
LLC, DALVA VENTURES, LLC, KONSTANTYN
BAGAEV, OLESKSII GLUKHAREV and
CHANNEL REPLY, INC.,

                Defendants.
-------------------------------------------------------------X

1:17 Civ. 4327 )

**VERIFIED COMPLAINT**

Plaintiffs, Michael Dardashtian ("Dardashtian" residing at P.O. Box 222055, Great Neck,

NY 11022), individually and on behalf of Cooper Square Ventures, LLC ("Cooper Square

Ventures" or "CSV" and having a principal place of business located at 129 W. 29th Street, New

York, NY), NDAP, LLC, a wholly owned subsidiary of CSV and Channel Reply, LLC a wholly

owned subsidiary of CSV, by way of Verified Complaint against the Defendants hereby state as

follows:

## PARTIES

1.      Cooper Square, founded in 2011, is a software technology limited liability

company specializing in e-commerce (with an emphasis on large catalogs), software as a service,

software creation and innovation and technology consulting services.

2.      Pursuant to CSV's operating agreement, Plaintiff Dardashtian and Defendant

1

David Gitman ("Gitman") are the sole members of CSV, each owning an equal 50% membership interest and profit percentage of CSV, and both serve as co-managers responsible for its daily operations.

3.     To date, CSV has generated in excess of $10 million dollars of revenue and owns and operates multiple subsidiary companies specializing in different technology-related services.

4.     ChannelReply is an online product owned by CSV and is a software service Solution falling under software as a service or "SaaS" created and owned by CSV to facilitate the messaging of eBay and Amazon store owners' respective communications to their customers and potential customers throughout the United States of America and worldwide.

5.     For instance, nationally known, prominent companies pay a monthly subscription fee to ChannelReply in order to integrate their eBay and Amazon store messages to allow a free-flowing, streamlined and efficient customer service response time and order management tool for communicating with customers.

6.     CSV's proprietary and confidential ChannelReply software was created by freelance subcontractors of CSV as a work for hire and such confidential software is owned by and exclusively the proprietary and intellectual property of CSV.

7.     The Plaintiff CSV's ChannelReply service has current revenue exceeding $30,000 per month and has more than 200 customers worldwide.

8.     ChannelReply, LLC is a limited liability company formed under the laws of New York and registered with the New York Secretary of State on June 9, 2016. Notification of same was published beginning June 17, 2016.  ChannelReply LLC was formed two days after Defendant Gitman and Plaintiff Dardashtian discussed, on June 7, 2016 creating a separate LLC for "Channel Reply" so that CSV could transfer the service and its accompanying assets to a

"ChannelReply" subsidiary company. After years of development and customer acquisition, the service, had grown to generate a revenue base that would allow the company to run on its own. In their June 7, 2016 discussion, Defendant Gitman agreed with Plaintiff Dardashtian's suggestion to form ChannelReply LLC. On September 6, 2016, Dardashtian acquired an EIN for Channel Reply, LLC and on October 5, 2016, Plaintiff Dardashtian sent Defendant Gitman an operating agreement drawn up by CSV's attorney Jeffrey Rothman for ChannelReply, LLC which Defendant said he would sign. Defendant never returned an executed version of the ChannelReply, LLC operating agreement thereby obstructing Dardashtian from opening a bank account for their new subsidiary. Plaintiff's Affidavit, Exhibits 13(a), 13(b), 14, 15, 16, 18, 19(a) and 19(b).

9.     NDAP, LLC is also a wholly owned subsidiary of CSV that was engaged in the online sale of automobile parts to customers throughout the United States of America and worldwide.

10.     CSV is currently attempting to sell NDAP, LLC's proprietary technology assets and business to a potential purchaser identified herein as XYX Corp[1], an entity located in another state.

11.     Defendant Jeremy Falk, individually, is a principal and member of Defendant Summit Rock Holdings, LLC ("Summit Rock"). Falk and Summit Rock, respectively, are serving as a broker and consultant for CSV and NDAP as to the sale to XYZ Corp. Thereby, Falk and Summit Rock owe a fiduciary duty of loyalty to Dardashtian and CSV, respectively, as well as other certain contractual obligations to CSV pursuant to a March 3, 2017 Services Agreement, which is attached to Plaintiff's Affidavit ("Plaintiff's Aff.") Exhibit 25.

---

[1] XYZ Corp. is herein used as there may be a confidentiality agreement as to this potential sale which may include the identity of the purchaser.

12.     Accel Commerce, LLC ("Accel Commerce") is a Delaware company engaging in business activities in the State of New York within the jurisdiction of this Court. Accel Commerce is an e-commerce company, which was unbeknownst to Plaintiff Dardashtian at the time, formed by Defendant Falk and Defendant Gitman to compete with Plaintiff CSV and Plaintiff ChannelReply in the electronic commerce industry.

13.     Accel Commerce was formed in March, 2017, without the knowledge or authorization of Plaintiff Dardashtian, and upon information and belief, has been using Plaintiff CSV's assets, such as personnel, funds, and proprietary information to compete against Plaintiff CSV and Plaintiff ChannelReply in the e-commerce industry.

14.     Defendant Channel Reply, Inc. (which is a separate and distinct entity than Plaintiff "ChannelReply") is an entity formed by Defendant Gitman, without the knowledge or authorization of Plaintiff Dardashtian, which also engages in electronic commerce. To distinguish between the two, the Plaintiff ChannelReply, LLC owned by CSV will be referred to as "Plaintiff ChannelReply" and Defendant Channel Reply, Inc., which was formed by Gitman to compete against Plaintiffs ChannelReply and CSV in the ecommerce industry, will be referred to as Defendant Channel Reply, Inc.

15.     Defendant Channel Reply, Inc. is unlawfully utilizing the assets of Plaintiffs CSV and Plaintiff ChannelReply, such as personnel, monetary funds, confidential and proprietary information, and their trade secrets to unfairly compete against Plaintiffs CSV and Plaintiff ChannelReply.

16.     As Plaintiff Dardashtian is a 50% member of Plaintiff CSV, Plaintiff ChannelReply and Plaintiff NDAP, and therefore without the ability to authorize Plaintiff CSV, Plaintiff Channel Reply, and Plaintiff NDAP respectively, to file suit, Plaintiff Dardashtian

brings such action on behalf of himself, individually, and on behalf of Plaintiff CSV, Plaintiff ChannelReply and Plaintiff NDAP for damages suffered by such entities as a result of Defendants' actions.

17.     Konstantyn Bagaev ("Bagaev") and Olesksii Glukharev ("Glukharev") are independent contractors retained by CSV and NDAP to serve as software developers for CSV and its ChannelReply software programs which they developed as the exclusive proprietary property and trade secrets of CSV and Plaintiff ChannelReply. Bagaev and Glukharev have assisted and been solicited by Defendant Gitman to participate in various unlawful acts as alleged herein.

## JURISDICTION AND VENUE

18.     This action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, as amended, and New York law. This Court has jurisdiction pursuant to 28 USC §1331 over Plaintiffs' federal-based claims (18 USC 1030 and 15 USC 1125).

19.     This Court has supplemental jurisdiction pursuant to 28 USC §1367 over Plaintiff's State-based claims.

20.     Venue is proper in this Court pursuant to 28 USC §1391(b) as all parties reside within this jurisdiction of this Court or regularly conduct business within this Court's jurisdiction.

21.     Additionally, CSV's operating agreement provides a choice of forum and venue selection clause in favor of this Court for any disputes arising out of CSV's operations.

## FACTS COMMON TO ALL COUNTS

## FALK AND SUMMIT ROCK'S "CONSULTING FEE"

22.     In February, 2017 and March, 2017 Defendants Gitman and Falk began pressuring Plaintiff Dardashtian to sign an agreement to pay Falk a flat fee for his "consulting work" related to finalizing a deal with XYZ Corp., which Plaintiff Dardashtian had initially procured himself. Falk's fee was not only grossly above industry standard but his contract falsely stated that he had been working solely on NDAP's sale transaction for more than a year when he had only been involved for a number of months. Falk would not reveal a deal offer to Plaintiff Dardashtian until he signed his agreement and refused to accept a reasonable percentage of the sale price, as is customary. In mid-May, 2017 Dardashtian again raised concerns and objections about Falk's and Summit Rock's compensation under the Summit Rock-CSV Services Agreement dated March 3, 2017 regarding the sale of NDAP, LLC to XYZ Corp. ("Summit Rock Service Agreement") as both, Falk and Gitman were pressuring him to agree to pay Falk, who Dardashtian later learned to be Gitman's secret business partner in Accel Commerce, a competing business, a greater "consultant" fee.

23.     The Summit Rock Service Agreement provided that Summit Rock, Falk's company, would be paid $110,000.00 plus .0025% of the eventual purchase price of the sale of NDAP, LLC.

24.     Once the purchase price, however, was determined just one day after the execution of the Summit Rock Services Agreement it became clear to Dardashtian that the purchase price would not satisfy the a) outstanding debt of NDAP, LLC, b) other outstanding financial obligations; c) closing costs; and d) would not yield an acceptable profit to either Defendant Gitman or Plaintiff Dardashtian.

6

25.     Thereafter on March 15, 2017, Falk and Summit Rock agreed to lower their fee, at the behest of Defendant Gitman, to $80,000.00 in total which was acceptable to Dardashtian and Defendant Gitman and all agreed via email to this number.

26.     However, on or about May 17, 2017, before the closing of the NDAP, LLC-XYZ Corp. transaction, and before the final necessary closing documents were signed and approved by Dardashtian, Falk and Gitman both demanded that Falk receive $100,000.00 as a fee rather than the agreed upon $80,000.00.

27.     Gitman also demanded that he receive a greater portion of the profits of such sale than Dardashtian. Specifically, Gitman demanded distributions be paid out to an employee that he had made unauthorized promises too, and that after all obligations were paid out, he would recieve a 70-30 split of the remaining profits in his favor despite the CSV operating agreement requiring Dardashtian and Gitman to split profits 50-50. After many negotiations, Dardashtian started offering concessions to try to satisfy Defendant Gitman and achieve the sale but Defendant Gitman's demands only began to greedily grow. Defendant Gitman soon began demanding higher distributions to compensate him for his work prior to the sale but did not want to pay Dardashtian for his work prior to the sale. Defendant Gitman also wanted to chargeback hours against Dardashtian's profit percentage in the event that he had to work for the purchasing company, even though the purchasing company had agreed to pay him a generous hourly rate. He expressed that he was worth more than three times what purchasing company would pay him and that Dardashtian should foot the bill. Defendant Gitman also began demanding the company pay for repetitive accountings after he had hired and fired multiple accountants because he had "suspicions" that he wanted to investigate.  Accordingly, Dardashtian, on behalf of CSV and NDAP communicated to Defendant Gitman that he would not meet his unreasonable demands

7

and that he would not proceed to sign and finalize the necessary closing documents for the transaction absent an agreement that he receive a fair profit percentage pursuant to NDAP and CSV's operating agreements.

## DEFENDANTS' RESPECTIVE MISAPPROPRIATION AND CONVERSION OF CSV'S ASSETS

28.     As of May 26, 2017, CSV's Bank of America bank account had an account balance of $73,982.53.  Plaintiff's Aff. <u>Exhibit</u> 59.

29.     Gitman and Dardashtian had agreed in October, 2011 that such banking account would be used to fund the operations of ChannelReply, NDAP, LLC and other operations under the CSV portfolio.

30.     On the morning of Saturday May 27, 2017, at the start of Memorial Day long-holiday weekend and knowing the bank would not be open again until that following Tuesday, and with no notice whatsoever to Dardashtian, Defendant Gitman depleted CSV's bank account, which funds several of CSV's subsidiary companies, and its Plaintiff ChannelReply service operations.

31.     The timing of Gitman's unlawful draining and siphoning of CSV's bank account coincides with Dardashtian's refusal to agree to 1) pay Falk a greater consultant fee for the NDAP sale to XYZ Corp. and 2) meet a multitude of unreasonable and unfair demands for different levels of payment to Gitman in a disproportionate profit share that could have, according to one of Falk's proposals, diluted Dardashtian down to zero, or in one of Defendant Gitman's distribution proposals, resulted in Dardashtian owing the company money and therefore Defendant Gitman money, post-sale.

32.     Dardashtian received a mobile notification that all available cash in CSV's account had been withdrawn. CSV's online account information, as viewed on Dardashtian's

mobile device, showed two wire transfers: $50,000 and $23,982.53 bringing the account balance down to under $25.00. Plaintiff's Aff. Exhibit 59 and Exhibit 60.

33. Dardashtian immediately called the bank and was told that Gitman had withdrawn all of the money.

34. On May 27, 2017, at around 4:30pm Dardashtian received an email from Gitman admitting that he withdrew all of the funds from the CSV Bank of America account and that, he, unilaterally, will be making decisions on behalf of CSV despite the requirement under the CSV operating agreement requiring a 50-50 management of CSV. Gitman also essentially threatened Dardashtian to sign a purchase agreement, on his terms, for the NDAP, LLC sale to XYZ Corp., which is being "brokered" by Falk and Summit Rock.

35. By 2:11 pm on Sunday May 28, 2017, CSV's account balance was overdrawn by negative $10.89. CSV's bank account not only collects revenue in the form of monthly service fees from customers, but it also funds the operation of the ChannelReply service.

36. On 8:01 pm on Monday May 29, 2017, the CSV bank account was overdrawn by $229.40 due to preexisting auto debits to pay for services essential to operate ChannelReply. Plaintiff Aff. Exhibit 67.

37. On May 31, 2017, Defendant Gitman unilaterally began increasing CSV's debt by using CSV's depleted bank account and credit card. Gitman paid an invoice to a ChannelReply worker from CSV's overdrawn bank account for $218.51 further driving the account into overdrawn status. The accompanying invoice indicates the charge comes from Defendant Gitman and lists his personal home address in Brooklyn, New York. Defendant Gitman also charged a lease payment for his BMW car to further overdraw the company account.

38.     On June 2, 2017, Defendant Gitman charged $3,500 to amazon web services using NDAP's American Express credit card, thereby driving up CSV's debt to over $7,000.00 in addition to his emptying its bank account which is used to pay that same company credit card.

39.     Such actions by Defendant Gitman have frustrated and prevented Dardashtian from paying the jointly-held business credit card in each of Gitman's and Dardashtian's names. As Defendant Gitman then locked Dardashtian out of CSV's amazon web services account by changing the password, Dardashtian cannot even see what the charge is or the purpose of it.

40.     Auto-debits have been prescheduled to pay for Plaintiff CSV's ChannelReply servers, employees and other digital portals that help service CSV and ChannelReply.

41.     There is presently no money in CSV's account due to Defendant Gitman's actions, and thus, CSV's contractual obligations are not being paid and the account continues to be overdrawn. Mobile screenshot of overdrawn account is annexed to Plaintiff's Aff. <u>Exhibit</u> "65."

42.     This will quickly lead to the shut-down of CSV and its service, ChannelReply, which is presently servicing subscriptions held by more than two hundred worldwide customers. These business relationships took years to build and are not only a source of monthly revenue but are invaluable assets to CSV and Dardashtian, as a businessman, 50% owner and co-manager of CSV. The loss of these customers would cause irreparable harm to Dardashtian, Plaintiff ChannelReply, CSV and its other businesses.

43.     Defendant Gitman's actions can also cause CSV and Plaintiff ChannelReply's third-party customers to lose or damage relationships with their own customers, if they cannot service them properly, and is also causing harm to their customer service capabilities in that Dardashtian cannot help them with customer issues. Defendant Gitman has redirected customer

support emails to himself by absconding with Dardashtian's business email address bearing

Dardashtian's name, but has no experience with customer service and has not indicated whether

he is providing any or even responding when customers, partners and vendors email

Dardashtian's business address. Defendant Gitman also placed his face on Dardashtian's

business email to pose as Dardashtian.

## GITMAN'S UNLAWFUL FORMATION OF COMPETING BUSINESSES- ACCEL COMMERCE AND DEFENDANT CHANNEL REPLY, INC.

### Accel Commerce

44.     Dardashtian and Gitman are the sole members of CSV, each owning an equal

50% membership interest of CSV and both serve as co-managers responsible for its daily

operations.

45.     CSV's operating agreement does provide for either of its members, Dardashtian

or Gitman, to form and operate a competing business to that of CSV, but not to take CSV's

actual business. The "outside activities" clause, as it is generally known, is preempted to operate

only "except as provided otherwise herein," meaning it should not conflict with or defeat other

obligations in the agreement but rather complement them and subordinate to the overriding goals

and purposes of the operating agreement.   As such, Article 12 of the operating agreement very

clearly, expressly and specifically prohibits either member to use CSV's confidential and

proprietary information such as financial information/data, business plans, marketing or sales

plans, trade secrets, computer programs, processes, data, designs, compilations, policies,

procedures, sales know how or anything that is considered to be proprietary to CSV ("CSV's

Confidential Information") for their own use or that of any competing business opportunity. The

operating agreement also expressly forbids management from expending or using company

11

money or property other than on the account and for the benefit of the Company or to pledge any of the Company's credit or property for other than Company purposes. Plaintiff's Aff. <u>Exhibit</u> 1, Article 12.

46.     However, Dardashtian in late April 2017, learned that Gitman formed Defendant Accel Commerce with Falk.  Accel Commerce is a competitor of CSV and Plaintiff ChannelReply in the e-commerce industry.

47.     Specifically, Dardashtian logged into CSV's "Upwork" account, owned by CSV, which takes screen shots of employees while they do computer work for CSV on CSV computers, to track their work product and time worked.

48.     Dardashtian saw screenshots, of the bookkeeper Gitman had hired, Mary Faith Anden ("Anden"), working on the books of Accel Commerce. Dardashtian also saw correspondence between Anden and Defendant Gitman discussing Gitman's business partnership with Falk, including their P&L and later discovered business cards created by an Upwork graphic designer for Accel, naming Defendants Gitman and Falk as "managing partners" of Accel.

49.     Dardashtian also was surprised that Gitman and Falk were using CSV's Upwork account in relation to the affairs of their new side business, Accel Commerce.  Dardashtian learned that Accel Commerce was formed in March 20, 2017, less than two weeks after Falk and Defendant Gitman had pressured Dardashtian into signing Falk's services agreement and **prior** to the sale of NDAP to XYZ Corp.  During this time through the present, Falk was and is "acting" as an independent consultant but in reality is not. Falk's own agreement even committed him to a very detailed confidentiality clause where he promised to keep all company info, data and proprietary information of any kind, in confidence. Throughout the sale process, Defendant

Falk received numerous documents containing CSV's financial reports, contracts with vendors and a massive amount of confidential data related to CSV and NDAP's business operations.

50.     In other words, Gitman and Falk secretly formed a competing business to CSV before Falk "brokered" the purchase price between NDAP and XYZ Corp. and while Gitman and Falk were insisting that Falk receive a greater broker fee for the transaction.

51.     The fact that Falk and Gitman had formed a competing business unbeknownst to Dardashtian and were using CSV resources, proprietary information, trade secrets, and assets as part of its operation is another reason that the NDAP sale to XYZ Corp has been held up. Falk's "consultant" fee has been a great source of disagreement as he and Gitman have ganged up on Dardashtian to try to inflate Falk's fee above any customary consultant or broker fee, all the while "in bed" together conducting their burgeoning side business.


**Defendant Channel Reply, Inc.**

52.     On Monday May 29, 2017, Defendant Gitman unilaterally canceled Dardashtian's participation in a pre-scheduled weekly conference call with international employees operating Plaintiff ChannelReply. He removed the event from Dardashtian's calendar so that he could not join the Skype call and get any information, updates or ask any questions about Plaintiff ChannelReply's business.  See Plaintiff Aff. Exhibit 66a.

53.     On Monday May 29, 2017, after blocking Dardashtian's access to the CSV and Plaintiff ChannelReply company conference call with employees, Defendant Gitman spoke with Defendant Bagaev, Plaintiff Channel Reply's lead software developer, indicating Gitman's intent to fly to Russia to meet with Bagaev. Plaintiff's Aff. Exhibit "66b."

54.     On Tuesday May 30, 2017 at approximately 5:08 p.m., Defendant Gitman again stated to Bagaev his intent to fly to Russia immediately to meet privately with him and Plaintiff ChannelReply's other developer, Oleskii Glukharev, to discuss CSV's and Plaintiff ChannelReply's respective operations, without Dardashtian being present. Plaintiff Aff. Exhibit "71."

55.     On the very same day that Defendant Gitman conveyed his intentions to meet with Plaintiff ChannelReply's developers in Russia, on May 30, 2017, Defendant Gitman registered Defendant Channel Reply, Inc. with the Secretary of State in Delaware.

56.     Defendant Gitman's clear purpose of forming Defendant Channel Reply, Inc. is to transfer all of CSV and Plaintiff ChannelReply's assets into a new company for Defendant Gitman's own use, thereby stealing CSV"s assets, including the Plaintiff ChannelReply proprietary software codes and converting all of its assets, trade secrets, intellectual and proprietary property, software, code and employees, while, simultaneously, locking Dardashtian out of CSV and Plaintiff ChannelReply so that Dardashtian had no access to any resources to try to prevent it or defend himself, to CSV and ChannelReply's customers and employees.

57.     On June 1, 2017, Defendant Gitman sent Defendants Bagaev and Glukharev new employment agreements for them to become employees of his newly formed company "[Defendant] Channel Reply, Inc."

58.     Plaintiff sent these employment agreements relating to Defendant Channel Reply Inc. using the email David@dalva.ventures. Upon closer examination, it appears Defendant Gitman formed Dalva Ventures in February of 2017, indicating that his unlawful intentions commenced at least back in February, 2017 to steal and convert Plaintiff ChannelReply to his own use and for his own benefit. Dalva Ventures is believed to be another entity formed by

Defendant Gitman to compete directly or indirectly with Plaintiff ChannelReply and CSV in the e-commerce industry.

59.     On June 1, 2017, Defendant Gitman offered employees of CSV a stock plan agreement and 125,000 shares of equity in his newly formed Defendant Channel Reply, Inc. and also told CSV and Plaintiff ChannelReply's lead developer, Konstantyn Bagaev, that he will be considered a co-founder of the new Defendant Channel Reply Inc. company to win his loyalty.

60.     On June 2, 2017 Defendant Gitman spoke to Konstantyn Bagaev about new hires for his new company, Defendant Channel Reply, Inc.

61.     Defendant Gitman also discussed getting venture capital and said he knew a venture capitalist who could help. Gitman also promised to help Bagaev get a Visa and access to U.S. bank accounts to induce his cooperation and gain his loyalty.

62.     On June 2, 2017, Defendant Gitman essentially indicated to Bagaev, Plaintiff ChannelReply's developer, that after he converted all of CSV's assets to his new company Defendant Channel Reply Inc., he would offer Dardashtian a 5% share of the new company but if Dardashtian did not accept it, then the 5% share offered to Dardashtian would revert back to Bagaev.  When Bagaev questioned why Dardashtian would ever accept a 5% share of Defendant Channel Reply, Inc. (a company unlawfully formed to compete with CSV and Plaintiff ChannelReply in which Dardashtian already owns 50%), Defendant Gitman said "it was a "fair" and "generous" offer.

63.     Also, on June 2, 2017, Dardashtian noticed that Defendant Gitman had updated the CSV-funded TimeDoctor account and changed the name to "David's company" thereby further evidencing Defendant Gitman's intent and plot to make CSV and Plaintiff ChannelReply his and only his.

64.     On June 4, 2017, Bagaev asked whether they should update the Plaintiff ChannelReply website and remove CSV's Terms of Service which identified CSV as the owner of ChannelReply and replace it with new terms of service for ChannelReply's existing customers so they can convert those customers to Defendant Channel Reply Inc.  Defendant responded "absolutely."

65.     Defendant Gitman also confirmed he is traveling to the Ukraine to meet with the lead Developers, Bagaev and Glukharev in further efforts to operate Defendant Channel Reply, Inc. in person within a few days.

66.     On June 5, 2017, Defendant Gitman advised Bagaev, Plaintiff ChannelReply's lead developer that he intends to develop a new corporation in the Ukraine to cut company taxes. It appears he will be trying to divert additional CSV's funds, assets and proprietary information abroad.

67.     Defendant Gitman has misappropriated and converted funds and assets rightfully belonging to CSV and Plaintiff ChannelReply to fund his unlawful competing businesses, Accel Commerce and Defendant Channel Reply, Inc.

68.     Defendant Falk has conspired and participated in Defendant Gitman's misappropriation and conversion of CSV's and Plaintiff Channel Reply's assets, trade secrets and confidential and proprietary information to the benefit of Accel Commerce Defendant Channel Reply Inc. and himself.

69.     Defendants Bagaev and Glukharev have also conspired and participated in Defendant Gitman's misappropriation of CSV's and Plaintiff ChannelReply's assets, trade secrets and confidential and proprietary information to the benefit of Accel Commerce, Defendant Channel Reply, Inc. and themselves, respectively.

**GITMAN, FALK, BAGAEV, DALVA VENTURES, GLUKHAREV, DEFENDANT CHANNEL REPLY, INC AND ACCEL COMMERCE MISAPPROPRIATION OF VARIOUS COMPUTER PASSCODES AND SOFTWARE**

70.     On May 27, 2017 up until present, Dardashtian has tried to logon to his CSV Bank of America bank account without success. Dardashtian received notification that his passcodes had been changed, thereby locking him out so that he could not alter or redirect any preexisting debits, nor see incoming or outgoing account activity. Plaintiff Aff. Exhibit "63."

71.     Dardashtian is also locked out of the NDAP, LLC Bank of America business account as well.

72.     After attempting to access other CSV computer software, Dardashtian was unable to access any of CSV's accounts that are utilized to operate multiple websites and businesses through CSV.

73.     CSV stores all passwords to all accounts on a heavily encrypted password storage site called "1 password". This is a site designed to control all company level passwords for all accounts.

74.     Defendant Gitman has abused and has exceeded his authority as to CSV's software as he has "locked out" Dardashtian from CSV's computer software by removing his access to "1 password."

75.     Therefore, Dardashtian cannot access passwords to around two dozen company portals housing all company data, customer lists, codes, payment information, receipts, company historical documents, proprietary information and other information relating to CSV, NDAP and Plaintiff ChannelReply as well as several other businesses, domains and websites owned by CSV.

17

76.     Gitman has also abused and his exceeded his authority as to CSV's software by "locking out" Dardashtian from Google Suite. Google Suite is a business level version of Google. The suite of services provided by google includes email addresses, google documents, including all of Dardashtian's company documents, such as company data, documents, customer lists, subscriptions and invoices.

77.     Defendant also created a new Google domain suite for ChannelReply to transfer all of ChannelReply's proprietary documents, email addresses and other confidential information away from CSV's business accounts and to a new Google suite portal that only Gitman controls. Dardashtian cannot access it despite Gitman sending CSV employees new invite logins for such access.

78.     Since Defendant Gitman has misappropriated and converted all of CSV's company data over to his new Google Suite and locked Dardashtian out of 1Password, Dardashtian cannot access any company accounts except for his NDAP, LLC email address. This means that anything new going forward, new incoming or outgoing emails, new and past data and documents, Dardashtian cannot access.

79.     Defendant Gitman has not only locked Dardashtian out of CSV's and Plaintiff ChannelReply's computer software but he has stolen Dardashtian's business identity by taking his email address michael@channelreply.com to the new G suite and has put his own photo up on Google so that if anyone receives an email or has received an email in the past from Dardashtian's email address, the email says Michael@channelreply.com and Michael Dash (Dardashtian's known business name) but it has Defendant Gitman's face on the Gmail account, as if he is Dardashtian.

80.     Defendant Gitman also now gets all emails going to and intended for Dardashtian by ChannelReply's customers and business associates. If he responds to such communications, he is doing so pretending and fraudulently conveying that he is Dardashtian.  If he doesn't respond, it portrays that Dardashtian is not responding to his customers and colleagues. Either way Gitman has enormous power to continue to damage Dardashtian's business reputation, as well as the company Dardashtian spent years building.

81. Defendant Gitman has also exceeded and abused his authorization to access to CSV's Google Suite to download all data, reset all passwords, delete or suspend some accounts all without Dardashtian's knowledge or authorization.

82.     Upon information and belief, Defendant Gitman has downloaded all NDAP business data and emails without Dardashtian's knowledge or authorization.

83.     Dardashtian has compiled evidence through an email tracking software called MixMax that Defendant Gitman, upon information and belief, opened and then downloaded Dardashtian's personal investment document and tax document, which is Dardashtian's confidential personal financial statement that he sent to his accountant.

84.     Mix Max indicates that at around 6:02 a.m. Defendant Gitman began opening certain company emails from Brooklyn, NY.  When someone accesses an email that was not sent to him, MixMax shows the recipient's name and also the location of where that person is accessing the email communication. On this occasion, only minutes after Defendant Gitman opened a company document from Brooklyn, it shows that someone from Brooklyn opened a personal investment document that Dardashtian had sent privately to his accountant and then downloaded it. Dardashtian's accountant does not live in Brooklyn, and was not in Brooklyn that morning, neither was his accountant's assistant who was cc'd on the email.  Therefore, the only

other person who had the access to download and open Dardashtian's personal financial statement was Defendant Gitman since he holds master admin logon to Dardashtian's NDAP email which Gitman has since converted.

85. Gitman also changed passwords to Chargebee and Stripe which are the payment portals for the existing ChannelReply customers to pay their subscriptions. Those passwords were saved on Dardashtian's personal computer. When Dardashtian attempted to login he could not. When he tried to reset the passwords, the password resets were sent to Michael@channelreply.com which is now under Gitman's control. Dardashtian cannot access those accounts, and therefore cannot access any payment information for ChannelReply. Stripe is an online payment portal for customers, Chargebee is a subscription management portal for customers.

86. Defendant Gitman had these capabilities because he is a master administrator of accounts on Google Domain by virtue of him creating the CSV Google account, which Dardashtian was also formerly an equal administrator prior to May 27, 2017.

87. On May 27, 2017, Defendant Gitman abused and exceeded his authorization as to his company access by removing Dardashtian as an administrator on Google Domain. By removing Dardashtian as admin from the ndapllc.com level domain, which controls all of CSV's subdomains, Defendant Gitman has removed Dardashtian's access to more than a dozen active email addresses that Dardashtian uses to conduct business and get information related to his businesses from vendors and customers.

88. Such businesses that fall under NDAP- LLC and under the CSV umbrella, which Dardashtian cannot now access: Car Part Kings, Cooper Square Ventures, Plumburs, NDAP, LLC, Next Day Auto Parts. This results in Dardashtian not having access to any Google drive

accounts associated with the email accounts above, which contain all of Dardashtian's business documents, accountings, receipts, transaction records, customer information, proprietary information, etc.

89.     Dardashtian also cannot access any Google analytics accounts associated with the email addresses above. A list of locked out accounts are annexed to Plaintiff Aff. Exhibit 64a.

90.     Defendant has also changed, shared company passwords, and revoked or suspended Dardashtian's access to the following accounts:

    a.   1Password Account – this is a password and login account management system. It holds all of Dardashtian's personal passwords and the companies shared passwords. Account was paid for out of CSV company funds.

    b.   Chargebee Account – This is CSV's subscription management account that holds the customer information and billing information for all of Plaintiff's ChannelReply customers.

    c.   Stripe Account – This is CSV's credit card billing service that allows CSV to receive credit card payments from Plaintiff ChannelReply customers.

    d.   PayPal Account – This is an online payment system which allows CSV to take online payments from Plaintiff ChannelReply customers.

    e.   Upwork Account – This is a freelancer marketplace that allows CSV to hire and pay freelancers to run the Plaintiff ChannelReply business.

    f.   Zendesk Accounts – This is a customer service management account which allows CSV to talk to its customers when they email CSV through support tickets.

    g.   JIRA Account – This is a project management software that allows CSV to manage projects effectively for CSV's business to successfully complete tasks.

    h.   Slack – This is a messaging management software for CSV's business that allows company employees and freelancers to openly communicate with one another and share documents.

    i.   Amazon Seller Central – This is CSV's Amazon seller account that allows CSV to sell products on Amazon and manage MWS accounts for Plaintiff ChannelReply sellers through its admin.

j.  eBay Accounts – This allows CSV to sell products on ebay and manage its ebay subscription identifications for Plaintiff ChannelReply sellers through its admin.

k.  Timedoctor – This allows CSV to manage the time management of employees and freelancers via an online portal to track time and take screenshots of employees and freelancer work.

l.  Amazon Web Services (AWS) – This is where CSV manages all of its Amazon Web Servers which keep the businesses servers running effectively.

m.  American Express Account – This is a NDAP corporate credit card account.

n.  Magento Accounts – This is CSV's Magento Admin which allows it to see all backend data associated with our business.

o.  Quickbooks Accounts.

p.  Desk.com Account - This is a customer service management account which allows CSV to talk to CSV customers when they email through support tickets.

q.  Godaddy Account – CSV has an account with godaddy account which owns and operates many domains, Dardashtian cannot login to Godaddy to even list all of the domains owned by CSV and/or Plaintiff ChannelReply.

r.  Magemojo – This is CSV's Magento hosted server account.

s.  Mailchimp – This is CSV's email subscription newsletter account.

t.  Github – This is where all of CSV's software is checked in and stored for sharing.

u.  Ringcentral – This is CSV's VOIP system that allows CSV to make and receive internet phone calls and faxes.

v.  Join.me – This is a screenshare service that allows CSV to talk to customers and share screens with them.

[See Plaintiff's Aff. <u>Exhibits</u> "64a", "64b," 64c", "64d", "64e," "64f," "64g," "64h," "64i."]

91.  Defendant Gitman is not only threatening the existence of Dardashtian's, CSV's and Plaintiff ChannelReply's, respective, present businesses but is preventing Dardashtian from growing them, and causing Dardashtian, CSV, and Plaintiff ChannelReply to lose business relationships and customer acquisitions daily.

92.     Defendant Gitman apparently neglected to terminate Dardashtian's access to TimeDoctor, which has allowed Dardashtian to monitor Defendant's intentions and actions, even though Dardashtian has no access to the vast majority of CSV data, no access to company bank accounts, no access to CSV's and Plaintiff ChannelReply's computer codes, and virtually no access to CSV's employees. Dardashtian has had to watch Defendant Gitman's deceptive plans unfold before his very eyes, with no power to stop them, as if he is watching a movie. This includes having to watch Gitman promulgate disparaging lies about Dardashtian to his employees. The very employees that Dardashtian worked with unilaterally to grow ChannelReply and double its sales, making it into a viable company, when Gitman had left the company to work elsewhere and sarcastically opined to Dardashtian that ChannelReply should be called "Really going out of business." Once Gitman saw the fruits of Dardashtian's labor, he arrived back on scene with a renewed interest in ChannelReply and his plans to make it "his" began to unfold at lightning speed.  Plaintiff's Aff. Exhibits 13a and 13b and 19c.

93.     On May 27, 2017, Dardashtian received a notification that someone requested to change the password to ChannelReply's PayPal account.

94.     Proof of Defendant's Gitman's illegal conduct is that on Tuesday, May 30, 2017, at approximately 3:00 p.m., Defendant Gitman told Bagaev, Plaintiff ChannelReply's lead developer, that he usurped Dardashtian's company email address which caused customers attempting to reach Dardashtian for different services, unable to do so.  Gitman supremely stated, "I get those emails now," referring to his seizure of Dardashtian's business emails. Plaintiff's Aff. Exhibit 70.

95.     On May 30, 2017, Defendant Gitman also acknowledged to Bagaev that he moved the Plaintiff ChannelReply email and account information to a new G suite. Defendant

Gitman changed employee passwords so they could access the G suite with all company emails and documents. However, Defendant Gitman locked Dardashtian out of all company documents, including customer lists, contracts, subscription information, and payment accounts etc. Specifically Defendant Gitman spelled out his conversion of ChannelReply's confidential data to his new G Suite saying, "I'm moving ChannelReply email to a dedicated G suite account. You should have received an email in your personal inbox with the new account. Can you give me your old password so I can migrate your email?" later adding, "I reset your NDAP password to kick off the migration of your emails to CR's new G Suite account."

96. On June 1, 2017, Defendant Gitman acknowledged to Plaintiff ChannelReply's lead developer that he has been viewing Dardashtian's emails from Dardashtian's NDAP, LLC company email address saying that he saw an email that Dardashtian had sent to employees asking them not to get involved in any disputes between him and Gitman and to just do their work and operate the company as normal. Unfortunately, Gitman had other plans for the employees and quickly made them instruments of his unlawful activities by spreading lies about Dardashtian and offering them rewards too enticing to pass up, like ownership interests in Channel Reply, Inc. and promises of a Visa.

97. From May 27, 2017, when Defendant Gitman depleted CSV's bank account to the present, customers have still been under contract with CSV, believing they are paying CSV. Defendant Gitman has indicated he is in the process of reaching out to customers. Based on the content of the conversations, Dardashtian believes the plan is to have ChannelReply's customers "reconnect" their service to get them to unknowingly consent to Defendant Gitman's new payment portals and/or servers belonging to Channel Reply, Inc.

98.     However, upon information and belief, Defendant Gitman has misappropriated these payments by siphoning them to his own personal accounts or his new company Defendant Channel Reply, Inc's accounts without notifying CSV consumers.

99.     Evidence of such misappropriation and conversion is that Defendant Gitman has locked Dardashtian out of CSV's Stripe and Chargebee accounts, the accounts which collect and deposit customer payments into the CSV bank account, and the CSV bank account continues to be overdrawn.

100.    Dardashtian has not seen any customer payments from Stripe or Chargebee in the CSV payment portals since May 27, 2017.

101.    Dardashtian has also received email notice that a new PayPal account has been created for Plaintiff ChannelReply, to which Dardashtian does not have access.

102.    Assuming that Dardashtian's refusal to close the NDAP, LLC-XYZ Corp. transaction, and thereby not reward Falk's and Gitman's respective unlawful conduct in relation to said deal, is in large measure motivation for Defendant Gitman's above wrongful conduct is that on June 5, 2017, Defendant Gitman sent Dardashtian correspondence stating that he will not discuss ChannelReply until Dardashtian meets Defendant Gitman's egregious demands relating to the sale of NDAP.  Essentially ChannelReply is Gitman's hostage, until concedes to his terms for the sale, and once he achieves that goal he can move onto his other expressly stated plan of offering Dardashtian 5% of his newly formed Channel Reply, Inc. and show him that he has converted the company and its developers over, leaving Dardashtian at his mercy. He does not realize Dardashtian has been watching his plot unfold and compiling proof of his actions and intentions using the TimeDoctor screenshot software installed by employees of CSV.

103.     Defendants Falk, Bagaev, Glukharev, Accel Commerce and Defendant Channel Reply, Inc., respectively and jointly, have conspired and participated with Gitman who has exceeded his authority as a holder of CSV's and Plaintiff ChannelReply's computer passcodes, software, and passwords to further benefit themselves in competing businesses.

**Defamatory Comments**

104.     Defendant Gitman has also defamed Dardashtian by stating several intentional false statements in an effort to demean Dardashtian to his employees so Gitman can be lauded by them, with such false statements exposing Dardashtian to public contempt, ridicule, aversion or disgrace thereby causing Dardashtian damages. Dardashtian was also told by a company that CSV has invested in that Defendant Gitman went to their company headquarters and again disparaged Dardashtian to his own business associates and CSV partners. It is also unknown by Dardashtian what Gitman has said to his colleagues and customers while controlling and locking him out of the business email address that bears his name.

105.     On June 1, 2017 and June 2, 2017, Defendant Gitman stated to Bagaev that Dardashtian "stole" money.

106.     On June 1, 2017, Defendant Gitman stated to Bagaev that Dardashtian was operating a "pyramid scheme" via written communication.

107.     On June 1, 2017, Defendant Gitman alluded to Bagaev that he was working with a "parasite", aka Dardashtian, via written communication.

108.     On June 1, 2017 He also called Dardashtian a "bully" when he heard that Dardashtian had requested Gitman not meet with the developers behind his back.

109.    On June 2, 2017 Defendant Gitman praised himself to the developer after he promised to make the developer Bagaev a "co-founder" of his new unlawful company Channel Reply, Inc, saying he would like to believe there are more people like himself and that he just wants to do the right thing and lead by example.

## COUNT 1

### INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

110.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

111.    Plaintiffs are likely to succeed on its claims in this matter, including but not limited to, a) breach of contract; b) misappropriation; c) conversion; d) tortious interference; e) computer fraud pursuant to 18 USC 1030; f) theft of trade secrets pursuant to 18 USC 1832; and g) breach of fiduciary duty. Specifically, as Plaintiff CSV is likely to prevail on the merits of its claim under 18 USC 1030, it is entitled to injunctive relief pursuant to 18 USC 1030(g).

112.    In the alternative, even if there exist sufficiently serious questions as to the merits, the balance of hardships is decidedly tipped in the Plaintiffs' favor.

113.    Absent injunctive relief, Plaintiffs will suffer immediate and irreparable harm as a result of the respective and joint actions of Gitman, Falk, Dalva Ventures, Accel Commerce, Bagaev, Glukharev and Defendant Channel Reply, Inc., including a) depletion of the assets of Plaintiff ChannelReply and CSV; b) conversion of proprietary and confidential information exclusively belonging to Plaintiff ChannelReply and CSV; c) significant damage to the business relations of Plaintiff ChannelReply and CSV and to Dardashtian's business reputation; and d) misappropriation of CSV's and Plaintiff ChannelReply's trade secrets, confidential and

27

proprietary information, such as customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes.

114.    The status quo certainly weighs in favor of Plaintiffs as Plaintiffs merely seek that the Court restrain further unlawful misappropriation, depletion, usage, reproduction of Plaintiff ChannelReply and CSV's assets and trade secrets, prevent continued unfair competition through the conversion and use of those assets and the Plaintiff ChannelReply trade name, and to compel Gitman to replace all funds he wrongfully siphoned to competing businesses, Defendant Channel Reply, Inc., Dalva Ventures and Accel Commerce, and to maintain those funds as has been the normal course of conduct of the nearly 6 years' business operations of Plaintiff ChannelReply and CSV.

115.    Therefore, the Court must issue the following immediate Restraints:

    a.  Restraining and enjoining Defendants, Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from misappropriating and/or otherwise withdrawing funds belonging to CSV, NDAP and/or Plaintiff ChannelReply from Plaintiff's banking accounts and/or from any of Plaintiff's payment or subscription portals, including but not limited to Stripe, Chargebee, PayPal, Amazon, eBay and/or from any other location electronic or otherwise;

    b.  Directing Defendant Gitman to redeposit into the CSV Bank of America banking account all monies withdrawn by him and pay any overdraft fees incurred since May 27th, 2017, the date on which he withdrew the company's funds;

    c.  Restraining Defendant Gitman from auto-debiting or scheduling new charges to the NDAP American Express credit card or charges from the CSV or NDAP bank accounts for any reason but also including, his personal expenses unrelated to business, including but not limited to his RingCentral account, his Founders discount card, and his BMW car payments and accompanying car insurance;

    d.  Directing Defendant Gitman to remove his pre-existing and recurring monthly auto debits from the CSV or NDAP bank accounts and the NDAP American Express credit card including but not limited to his BMW car payments and accompanying car insurance, his RingCentral account and his Founders discount card;

e. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff NDAP's customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs, computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

f. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff CSV and Plaintiff ChannelReply's "Company Confidential Information" as defined in the CSV Operating Agreement, customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs; computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

g. Directing Defendant Gitman to immediately provide and restore Plaintiff Michael Dardashtian with full and complete access to all NDAP, CSV and ChannelReply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, email accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV and ChannelReply, including all twenty-two (22) accounts listed in **Exhibit 58** to the Affidavit of Michael Dardashtian;

h. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from utilizing, sharing, selling, transferring, backing up, destroying, altering, wasting, terminating, discontinuing, building upon or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers, Konstantyn Bagaev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP;

i. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from soliciting, bribing, contracting with, offering employment to, offering an equity participation in any one of Defendants' business entities and/or otherwise in any manner interfering with NDAP, CSV and ChannelReply's

29

business relationships with its customers, vendors, employees, partners, investment partners, prospective purchasers and/or subcontractors, including but not limited to Konstantyn Bagaev and Oleksii Glukharev;

j. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from inducing or in any other manner soliciting Plaintiffs, NDAP, CSV and ChannelReply's customers, vendors, employees and/or subcontractors, partners, prospective purchasers, investment partners, including but not limited to Konstantyn Bagaev and Olesksii Glukharev to terminate or alter their business relationship and/or contractual relationship with Plaintiffs, or any one of them;

k. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives from misappropriating Plaintiff Michael Dardashtian's identity, including but not limited to his business identity, his emails, his personal financial and identifier information, his tax documents, and/or falsely representing themselves in any manner as Michael Dardashtian or under Plaintiff's business name "Michael Dash;"

l. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from contacting or in any other manner communicating with any of Plaintiffs, NDAP, CSV, and/or Plaintiff ChannelReply's customers, vendors, employees, subcontractors, investors, prospective purchasers, including but not limited to Konstantyn Bagaev and Alesky Glukharev for any reason whatsoever including but not limited to messaging customers and asking them to reconnect their service or API for any purpose including to switch to a new payment account;

m. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaev and Oleksii Glukharev from using the tradename "ChannelReply", "Channel Reply", "Channel Reply, Inc.", "ChannelReply,Inc." "Channel Reply, LLC", "ChannelReply, LLC" or any other analogous or confusingly similar name to that of Plaintiff's "ChannelReply" for any reason whatsoever;

n. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaev and Oleksii

Glukharev, from using , in any way, shape or form, and for any purpose, any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply and from replicating or trying to replicate or recreate an identical or functionally similar analog of any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply;

o. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc. from engaging in any action(s) whatsoever which are competitive to Plaintiffs NDAP, CSV and/or ChannelReply's businesses or interests;

p. Restraining and enjoining Defendant Gitman from making any decisions concerning Plaintiffs NDAP, CSV and/or ChannelReply without prior written approval of Plaintiff Michael Dardashtian or order of the Court;

q. Restraining and enjoining Defendants Gitman, Falk, and any business in which they are affiliated as an owner, member, officer, director, manager, or otherwise, from engaging in any communications with any proposed purchaser of NDAP and/or otherwise interfering with any potential sale of NDAP;

r. Restraining and enjoining all of Defendant Channel Reply, Inc.'s accounts, physical, electronic or otherwise and Defendant David Gitman's Bank of America banking accounts and directing that a constructive trust be immediately imposed on such accounts;

s. Directing Defendant Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and any of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to return to Plaintiffs all physical and/or electronic copies, backups, discs, drives, including but not limited to USB drives, or other storage devices containing copies or originals of any of NDAP, CSV or ChannelReply's Company Confidential Information as defined in the CSV Operating agreement, trade secrets, company data or other property now in Defendants' possession, custody or control;

t. Directing Defendants Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to preserve and not alter, tamper with or destroy in any way, all physical or electronic data, documents, removable media, personal computers, work computers, hard drives associated with personal and work computers, email accounts and corresponding passwords, electronic storage devices including from or on the "cloud," remote

31

servers, code repositories, writeable compact discs or CDs, writeable digital video discs or DVDs, USB drives, floppy discs, files, messages, emails or any other storage device containing information relating to their activities with NDAP, CSV and Plaintiff Channel Reply, Channel Reply, Inc., Dalva Ventures, Summit Rock Holdings, Accel Commerce and any other related companies without alteration and make them available for review by Plaintiffs and their authorized agents pursuant to a Discovery request which Plaintiffs will submit to the Court;

WHEREAS, Plaintiffs request that the Court issue immediate preliminary and temporary restraints as follows:

a. Restraining and enjoining Defendants, Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from misappropriating and/or otherwise withdrawing funds belonging to CSV, NDAP and/or Plaintiff ChannelReply from Plaintiff's banking accounts and/or from any of Plaintiff's payment or subscription portals, including but not limited to Stripe, Chargebee, PayPal, Amazon, eBay and/or from any other location electronic or otherwise;

b. Directing Defendant Gitman to redeposit into the CSV Bank of America banking account all monies withdrawn by him and pay any overdraft fees incurred since May 27th, 2017, the date on which he withdrew the company's funds;

c. Restraining Defendant Gitman from auto-debiting or scheduling new charges to the NDAP American Express credit card or charges from the CSV or NDAP bank accounts for any reason but also including, his personal expenses unrelated to business, including but not limited to his RingCentral account, his Founders discount card, and his BMW car payments and accompanying car insurance;

d. Directing Defendant Gitman to remove his pre-existing and recurring monthly auto debits from the CSV or NDAP bank accounts and the NDAP American Express credit card including but not limited to his BMW car payments and accompanying car insurance, his RingCentral account and his Founders discount card;

e. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff NDAP's customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs, computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

f.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff CSV and Plaintiff Channel Reply's "Company Confidential Information" as defined in the CSV Operating Agreement, customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs; computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

g.   Directing Defendant Gitman to immediately provide and restore Plaintiff Michael Dardashtian with full and complete access to all NDAP, CSV and ChannelReply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, email accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV and ChannelReply, including all twenty-two (22) accounts listed in **Exhibit 58** to the Affidavit of Michael Dardashtian;

h.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from utilizing, sharing, selling, transferring, backing up, destroying, altering, wasting, terminating, discontinuing, building upon or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers, Konstantyn Bagaev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP;

i.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from soliciting, bribing, contracting with, offering employment to, offering an equity participation in any one of Defendants' business entities and/or otherwise in any manner interfering with NDAP, CSV and ChannelReply's business relationships with its customers, vendors, employees, partners, investment partners, prospective purchasers and/or subcontractors, including but not limited to Konstantyn Bagaev and Oleksii Glukharev;

j.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from inducing or in any other manner soliciting Plaintiffs, NDAP, CSV and ChannelReply's customers, vendors, employees and/or subcontractors, partners, prospective purchasers, investment partners, including but not limited to

Konstantyn Bagaev and Oleksii Glukharev to terminate or alter their business relationship and/or contractual relationship with Plaintiffs, or any one of them;

k. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives from misappropriating Plaintiff Michael Dardashtian's identity, including but not limited to his business identity, his emails, his personal financial and identifier information, his tax documents, and/or falsely representing themselves in any manner as Michael Dardashtian or under Plaintiff's business name "Michael Dash;"

l. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from contacting or in any other manner communicating with any of Plaintiffs, NDAP, CSV, and/or Plaintiff ChannelReply's customers, vendors, employees, subcontractors, investors, prospective purchasers, including but not limited to Konstantyn Bagaev and Alesky Glukharev for any reason whatsoever including but not limited to messaging customers and asking them to reconnect their service or API for any purpose including to switch to a new payment account;

m. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaev and Oleksii Glukharev from using the tradename "ChannelReply", "Channel Reply", "Channel Reply, Inc.", "ChannelReply,Inc." "Channel Reply, LLC", "ChannelReply, LLC" or any other analogous or confusingly similar name to that of Plaintiff's "ChannelReply" for any reason whatsoever;

n. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaev and Oleksii Glukharev, from using , in any way, shape or form, and for any purpose, any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply and from replicating or trying to replicate or recreate an identical or functionally similar analog of any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply;

34

o. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc. from engaging in any action(s) whatsoever which are competitive to Plaintiffs NDAP, CSV and/or ChannelReply's businesses or interests;

p. Restraining and enjoining Defendant Gitman from making any decisions concerning Plaintiffs NDAP, CSV and/or ChannelReply without prior written approval of Plaintiff Michael Dardashtian or order of the Court;

q. Restraining and enjoining Defendants Gitman, Falk, and any business in which they are affiliated as an owner, member, officer, director, manager, or otherwise, from engaging in any communications with any proposed purchaser of NDAP and/or otherwise interfering with any potential sale of NDAP;

r. Restraining and enjoining all of Defendant Channel Reply, Inc.'s accounts, physical, electronic or otherwise and Defendant David Gitman's Bank of America banking accounts and the Chase banking account in the name of Channel Reply, Inc. directing that a constructive trust be immediately imposed on such accounts;

s. Directing Defendant Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and any of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to return to Plaintiffs all physical and/or electronic copies, backups, discs, drives, including but not limited to USB drives, or other storage devices containing copies or originals of any of NDAP, CSV or ChannelReply's Company Confidential Information as defined in the CSV Operating agreement, trade secrets, company data or other property now in Defendants' possession, custody or control;

t. Directing Defendants Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to preserve and not alter, tamper with or destroy in any way, all physical or electronic data, documents, removable media, personal computers, work computers, hard drives associated with personal and work computers, email accounts and corresponding passwords, electronic storage devices including from or on the "cloud," remote servers, code repositories, writeable compact discs or CDs, writeable digital video discs or DVDs, USB drives, floppy discs, files, messages, emails or any other storage device containing information relating to their activities with NDAP, CSV and ChannelReply, Channel Reply, Inc., Dalva Ventures, Summit Rock Holdings, Accel Commerce and any other related companies without alteration and make them available for review by Plaintiffs and their authorized agents pursuant to a Discovery request which Plaintiffs will submit to the Court.

## COUNT 2

## BREACH OF FIDUCIARY DUTY AS TO GITMAN

116.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

117.    As a co-owner and co-manager of CSV, Defendant Gitman owed and continues to owe fiduciary duties of care, loyalty and good faith to CSV, NDAP and Plaintiff Dardashtian. These fiduciary duties include obligations to discharge his obligations to Plaintiffs in good faith and honestly.

118.    Defendant Gitman knowingly breached his fiduciary duties to Plaintiffs.

119.    Defendant Gitman failed to act in a manner consistent with his obligations in accordance with the CSV Operating Agreement, his agency and trust to Plaintiffs, and failed to exercise the utmost good faith and loyalty in the performance of his duties to Plaintiffs.

120.    Among other things, a) Defendant Gitman depleted the CSV business operating account without the express permission of Plaintiff Dardashtian; b) misappropriated and converted CSV's and Plaintiff ChannelReply's respective business assets and proprietary and confidential information and trade secrets to form three competing companies, Accel Commerce, Dalva Ventures and Defendant Channel Reply, Inc.; c) solicited CSR's and ChannelReply's respective customers on behalf of competing businesses; d) "locked out" Plaintiff Dardashtian from multiple computer and electronic accounts necessary and fundamental to CSV's, NDAP and Plaintiff ChannelReply's business operations, including financial accounts in which Dardashtian had always had access; e) accessed and disclosed Plaintiff Dardashtian's personal private financial and other information; f) conspired with Summit Rock and Falk, respectively, to

36

increase their brokerage fee as to the NADP, LLC-XYZ transaction, while at the same time forming a competing business with Falk and sabotaging the sale with their unreasonable demands; and g) misappropriated and otherwise used the exact tradename "Channel Reply" to unfairly compete against CSV and Plaintiff ChannelReply.

121.    Defendant Gitman has exploited CSV and ChannelReply's trade secrets and confidential information, and has damaged CSV's operating accounts, converted and altered CSV's computer passcodes and software thereby irreparably harming Dardashtian and CSV's and Plaintiff Channel Reply's respective relationship with its own customers.

122.    As a direct and proximate result of Defendant Gitman's breaches of his fiduciary duties, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Gitman for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which is in excess of $2,000,000.00.

## COUNT 3

### BREACH OF FIDUCIARY DUTY AS TO FALK
### AND SUMMIT ROCK

123.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

124.    Defendant Falk and Summit Rock, as a broker and consultant to CSV, owe a respective duty of loyalty to CSV, NDAP and Dardashtian, pursuant to law and the consulting agreement that he poached from Dardashtian under false pretenses, which includes not forming a competing business against CSV and Plaintiff ChannelReply unbeknownst to Dardashtian, while attempting to leverage Dardashtian for a higher brokerage fee and inflated profit shares as to the NADP, LLC-XYZ, Corp. transaction.

125.    Defendant Falk further owes a duty to Dardashtian, NDAP and to CSV to not secretly or openly use CSV's company funds for the operations of his company Accel, such as his use of CSV's Upwork account to make his business cards or use of a bookkeeper on CSV's payroll to do his company books on the same Upwork account. Falk owes further duty to Dardashtian, CSV and NDAP to not conspire with Gitman to convert and misappropriate the assets of CSV and Plaintiff ChannelReply to benefit Accel Commerce, Summit Rock or any other secret company he has formed for his own benefit or for the benefit of he and Gitman working in concert.

WHEREFORE, Plaintiff demands judgment against Defendants Falk Summit Rock and Gitman for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which is in excess of $2,000,000.00.

## COUNT 4

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES AS TO ALL DEFENDANTS

126.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

127.    Defendants Falk, Accel Commerce, Dalva Ventures, Bagaev, Glukharev, and Channel Reply, Inc. have actual knowledge of Defendant Gitman's duties and obligations because they are each aware that Defendant Gitman serves as a co-owner and co-manager of CSV, NDAP and Plaintiff ChannelReply and have all worked directly with Dardashtian in his role as co-manager of same.

128.    Despite Falk, Accel Commerce, Dalva Ventures, Bagaev, Glukharev, and Channel Reply, Inc.'s respective knowledge of Defendant Gitman's fiduciary duties and

obligations to Plaintiffs, they, respectively and jointly, have knowingly induced, participated in, and/or assisted Defendant Gitman to breach his fiduciary duties of care, loyalty and good faith to Dardashtian, CSV and Plaintiff ChannelReply by, among other things, a) the depletion of the CSV business operating account without the express permission of Plaintiff Dardashtian; b) misappropriating and converting CSV's and ChannelReply's respective business assets and proprietary and confidential information and trade secrets to form and for the benefit of themselves including the two competing companies, Accel Commerce and Channel Reply, Inc.; c) soliciting CSV's and Plaintiff's Channel Reply's respective customers on behalf of competing businesses; d) abusing and exceeding authority and "locking out" Plaintiff Dardashtian from multiple computer and electronic accounts necessary and fundamental to CSV's and Plaintiff's ChannelReply's business operations, including financial accounts; e) improperly accessing and disclosing Plaintiff Dardashtian's personal private financial and other information; f) using an exact same trade name to unfairly compete against Plaintiff Channel Reply; and g) improperly soliciting Plaintiffs' developers to breach their duties to Plaintiffs.

129. Defendants Falk, Accel Commerce, Bagaev, Glukharev, and Channel Reply, Inc's respective and joint actions in aiding and abetting these breaches of fiduciary duty were and are intentional, illegal and have been engaged in for the specific purpose of aiding and abetting Defendant Gitman to breach his fiduciary duties to Plaintiffs.

130. As a proximate result of Falk, Accel Commerce, Bagaev, Glukharev, and Defendant Channel Reply, Inc respective and joint aiding and abetting of breach of fiduciary duties, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for all compensatory, punitive, attorney's fees and consequential damages as a result of such

unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 5

### VIOLATION OF 18 USC 1832 AND 18 USC 1836 AGAINST GITMAN, FALK, BAGAEV, GLUHAREV, ACCEL COMMERCE, DALVA VENTURES, AND DEFENDANT CHANNEL REPLY, INC.

131.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

132.    Plaintiffs, CSV and Plaintiff ChannelReply are the owners of the trade secrets and confidential and proprietary information relating to Plaintiff ChannelReply's computer software used in the industry of e-commerce. Such trade secrets include customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes and other protectable intellectual property and proprietary information. These trade secrets include but are not limited to CSV's and Plaintiff Channel Reply's electronic services that are used in or intended for use in interstate and foreign commerce. CSV and Plaintiff ChannelReply sell the software solutions throughout the United States and worldwide.

133.    Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaev, Olesksii Glukharev, respectively and jointly, have stolen, fraudulently used, possessed, and/or misappropriated CSV's and Plaintiff ChannelReply's trade secrets and confidential information by knowingly acquiring such trade secrets, intellectual and proprietary property and confidential information to form and maintain a competing business operation to CSV and Plaintiff ChannelReply.

134.    Defendant Gitman, Falk, Dalva Ventures, Accel Commerce, Defendant Channel Reply, Inc., Konstantyn Bagaev, Olesksii Glukharev have conspired to fraudulently use, possess,

40

and/or misappropriate CSV's and Plaintiff ChannelReply's trade secrets, intellectual and proprietary property and confidential information by knowingly acquiring such trade secrets, intellectual and proprietary property and confidential information to form and maintain a competing business operation to CSV and Plaintiff ChannelReply.

135.    18 USC 1836 provides a plaintiff with civil remedies against any individuals who have misappropriated a trade secret, such damages including damages for the actual loss of the trade secret, damages for any unjust enrichment caused by the misappropriation of the trade secret, and if willfully and maliciously misappropriated, the Court shall award two times the amount of the damages awarded to a plaintiff.

136.    Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaev, Olesksii Glukharev have acted maliciously and willfully in misappropriating CSV and Plaintiff ChannelReply trade secret information that CSV and Plaintiff ChannelReply produce, service, and use in interstate and foreign commerce.

WHEREFORE, Plaintiff demands judgment against Defendant Gitman for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00, including an award of two times the amount of damages awarded to the plaintiff at trial.

## COUNT 6

### INJUNCTIVE RELIEF PURSUANT TO 18 USC 1836(b)(3) AGAINST GITMAN, FALK, BAGAEV, GLUKHAREV, ACCEL COMMERCE AND DEFENDANT CHANNEL REPLY, INC.

137.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

138.   18 USC 1836(b)(3) provides an owner of a trade secret that has been misappropriated injunctive relief to prevent any actual or threatened misappropriation on terms the Court finds reasonable and may require the defendants to take affirmative action to protect the trade secret.

139.   CSV and ChannelReply are the owner of the trade secrets and otherwise confidential and proprietary information relating to its and Plaintiff ChannelReply computer software and codes used in the industry of e-commerce, such trade secrets include customer lists and addresses, vendor lists and addresses, computer software programs; computer passcodes, codes and other intellectual and proprietary property. These trade secrets are CSV's and Plaintiff ChannelReply's electronic services that are used in or intended for use in interstate or foreign commerce. CSV and Plaintiff ChannelReply sell its software solutions throughout the United States and worldwide.

140.   Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaev, Olesksii Glukharev, respectively and jointly, have stolen, fraudulently used, possessed, and/or misappropriated CSV's and Plaintiff ChannelReply's trade secrets and intellectual and proprietary property and confidential information by knowingly acquiring such trade secrets, intellectual and proprietary property and confidential information to form and maintain a competing business operation to CSV and Plaintiff ChannelReply.

141.   Defendant Gitman, Dalva Ventures, Falk, Accel Commerce, Defendant Channel Reply, Inc., Konstantyn Bagaev, Olesksii Glukharev have conspired to fraudulently use, possess, and/or misappropriate CSV's and Plaintiff ChannelReply's trade secrets, intellectual and proprietary property and confidential information by knowingly acquiring such trade secrets,

intellectual and proprietary property and confidential information to form and maintain a competing business operation to CSV and Plaintiff ChannelReply.

WHEREFORE, the Court must enter injunctive relief as follows:

a. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from misappropriating and/or otherwise withdrawing funds belonging to CSV, NDAP and/or Plaintiff Channel Reply from Plaintiff's banking accounts and/or from any of Plaintiff's payment or subscription portals, including but not limited to Stripe, Chargebee, PayPal, Amazon, eBay and/or from any other location electronic or otherwise;

b. Directing Defendant Gitman to redeposit into the CSV Bank of America banking account all monies withdrawn by him and pay any overdraft fees incurred since May 27th, 2017, the date on which he withdrew the company's funds;

c. Restraining Defendant Gitman from auto-debiting or scheduling new charges to the NDAP American Express credit card or charges from the CSV or NDAP bank accounts for any reason but also including, his personal expenses unrelated to business, including but not limited to his RingCentral account, his Founders discount card, and his BMW car payments and accompanying car insurance;

d. Directing Defendant Gitman to remove his pre-existing and recurring monthly auto debits from the CSV or NDAP bank accounts and the NDAP American Express credit card including but not limited to his BMW car payments and accompanying car insurance, his RingCentral account and his Founders discount card;

e. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff NDAP's customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs, computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

f. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and

representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff CSV and Plaintiff Channel Reply's "Company Confidential Information" as defined in the CSV Operating Agreement, customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs; computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

g.  Directing Defendant Gitman to immediately provide and restore Plaintiff Michael Dardashtian with full and complete access to all NDAP, CSV and Plaintiff Channel Reply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, email accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV and Plaintiff Channel Reply, including all twenty-two (22) accounts listed in **Exhibit 58** to the Affidavit of Michael Dardashtian;

h.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from utilizing, sharing, selling, transferring, backing up, destroying, altering, wasting, terminating, discontinuing, building upon or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers, Konstantyn Bagaev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP;

i.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from soliciting, bribing, contracting with, offering employment to, offering an equity participation in any one of Defendants' business entities and/or otherwise in any manner interfering with NDAP, CSV and Plaintiff Channel Reply's business relationships with its customers, vendors, employees, partners, investment partners, prospective purchasers and/or subcontractors, including but not limited to Konstantyn Bagaev and Oleksii Glukharev;

j.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from inducing or in any other manner soliciting Plaintiffs, NDAP, CSV and Plaintiff Channel Reply's customers, vendors, employees and/or subcontractors, partners, prospective purchasers, investment partners, including but not limited to Konstantyn Bagaev and Olesksii Glukharev to terminate or alter their business relationship and/or contractual relationship with Plaintiffs, or any one of them;

k.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives from misappropriating Plaintiff Michael Dardashtian's identity, including but not limited to his business identity, his emails, his personal financial and identifier information, his tax documents, and/or falsely representing themselves in any manner as Michael Dardashtian or under Plaintiff's business name "Michael Dash;"

l.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from contacting or in any other manner communicating with any of Plaintiffs, NDAP, CSV, and/or Plaintiff Channel Reply's customers, vendors, employees, subcontractors, investors, prospective purchasers, including but not limited to Konstantyn Bagaev and Alesky Glukharev for any reason whatsoever including but not limited to messaging customers and asking them to reconnect their service or API for any purpose including to switch to a new payment account;

m.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaev and Oleksii Glukharev from using the tradename "ChannelReply", "Channel Reply", "Channel Reply, Inc.", "ChannelReply,Inc." "Channel Reply, LLC", "ChannelReply, LLC" or any other analogous or confusingly similar name to that of Plaintiff's "ChannelReply" for any reason whatsoever;

n.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaev and Oleksii Glukharev, from using , in any way, shape or form, and for any purpose, any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply and from replicating or trying to replicate or recreate an identical or functionally similar analog of any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply;

o.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc. from engaging in any

action(s) whatsoever which are competitive to Plaintiffs NDAP, CSV and/or ChannelReply's businesses or interests;

p. Restraining and enjoining Defendant Gitman from making any decisions concerning Plaintiffs NDAP, CSV and/or ChannelReply without prior written approval of Plaintiff Michael Dardashtian or order of the Court;

q. Restraining and enjoining Defendants Gitman, Falk, and any business in which they are affiliated as an owner, member, officer, director, manager, or otherwise, from engaging in any communications with any proposed purchaser of NDAP and/or otherwise interfering with any potential sale of NDAP;

r. Restraining and enjoining all of Defendant Channel Reply, Inc.'s accounts, physical, electronic or otherwise and Defendant David Gitman's Bank of America banking accounts and the Chase banking account in the name of Channel Reply, Inc. and directing that a constructive trust be immediately imposed on such accounts;

s. Directing Defendant Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and any of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to return to Plaintiffs all physical and/or electronic copies, backups, discs, drives, including but not limited to USB drives, or other storage devices containing copies or originals of any of NDAP, CSV or ChannelReply's Company Confidential Information as defined in the CSV Operating agreement, trade secrets, company data or other property now in Defendants' possession, custody or control;

t. Directing Defendants Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to preserve and not alter, tamper with or destroy in any way, all physical or electronic data, documents, removable media, personal computers, work computers, hard drives associated with personal and work computers, email accounts and corresponding passwords, electronic storage devices including from or on the "cloud," remote servers, code repositories, writeable compact discs or CDs, writeable digital video discs or DVDs, USB drives, floppy discs, files, messages, emails or any other storage device containing information relating to their activities with NDAP, CSV, Plaintiff Channel Reply, Defendant Channel Reply, Inc., Dalva Ventures, Summit Rock Holdings, Accel Commerce and any other related companies without alteration and make them available for review by Plaintiffs and their authorized agents pursuant to a Discovery request which Plaintiffs will submit to the Court.

46

## COUNT 7

## BREACH OF CONTRACT AGAINST GITMAN

142.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

143.    Section 12.2 of the CSV Operating Agreement provides that Plaintiff Dardashtian and Defendant Gitman shall not publish, communicate, divulge, disclose, disseminate or otherwise reveal to any person or entity, or use for any purpose whatsoever any Confidential Information belonging to CSV. Confidential Information is defined as any of CSV's "processes, data, designs, compilations of information, financial data, salary information, policies and procedures, sales know-how or any other information that may be considered to be proprietary or a trade secret of the Company, whether or not such information is considered a trade secret within the meaning of applicable law."

144.    Defendant Gitman is using CSV's Confidential Information, as that term is defined in the CSV Operating Agreement, to operate Accel Commerce and Defendant Channel Reply, Inc., to directly compete against Dardashtian, CSV and Plaintiff ChannelReply in the e-commerce industry, both within the United States and worldwide.

145.    Further, the Operating Agreement of CSV provides that Dardashtian will have equal access to all of CSV's and Channel Reply's respective accounts and assets.

146.    Gitman, unilaterally, has eliminated Dardashtian's access to the CSV and Channel Reply accounts and assets.

147.    Therefore, Defendant Gitman has breached his contractual obligations to Dardashtian, CSV and Plaintiff ChannelReply, respectively.

148. As a result, Dardashtian and CSV have been damaged in an amount to be proven at trial but which is in excess of $2,000,000.00.

149. Additionally, the CSV operating agreement provides that if a non-breaching party prevails in any action to enforce its rights under same, such party shall be awarded reasonable attorney's fees incurred to enforce such rights. Therefore, Dardashtian is also entitled to an award of reasonable attorney's fees in relation to this action.

WHEREFORE, Dardashtian, Plaintiff ChannelReply and CSV demand judgment against Defendant Gitman for all compensatory, reasonable attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which is in excess of $2,000,000.00.

## COUNT 8

### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

150. Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

151. Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaev and Olesksii Glukharev have received an unjust benefit as a result of their respective and/or joint misappropriation of assets, confidential information, intellectual and proprietary property and/or trade secrets belonging to CSV, Plaintiff ChannelReply and Dardashtian, respectively.

152. Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaev and Olesksii Glukharev, respectively and jointly, have been enriched at the expense of CSV, Plaintiff ChannelReply and Dardashtian as a result of such wrongful conduct.

48

153.    As a result, Dardashtian, Plaintiff Channel Reply and CSV have been damaged in an amount to be proven at trial but which is in excess of $2,000,000.00.

WHEREFORE, Dardashtian, Plaintiff ChannelReply and CSV demand judgment against Defendants Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaev and Olesksii Glukharev, jointly and severally, for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 9

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST GITMAN

154.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

155.    Every contract contains and implied covenant of good faith and fair dealing that prevents either party to act in a manner that would deprive the other party the right to receive the benefits under their agreement.

156.    Defendant Gitman's unilateral draining and siphoning the financial accounts of CSV, and his formation and operation of competing businesses to CSV and Plaintiff ChannelReply in the e-commerce industry is a violation of the covenant of good faith and fair dealing implicitly found in the CSV operating agreement.

157.    As a result, Dardashtian, Plaintiff Channel Reply and CSV have been damaged in an amount to be proven at trial but which is in excess of $2,000,000.00.

WHEREFORE, Dardashtian, Plaintiff Channel Reply and CSV demand judgment against Defendants Gitman, Falk, Accel Commerce, Defendant Channel Reply, Inc., Konstantyn Bagaev

49

and Olesksii Glukharev, jointly and severally, for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 10

## CONVERSION

158.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

159.    On or about October 13, 2011, Plaintiff Dardashtian and Defendant Gitman opened an operating business checking account at Bank of America for CSV and its subsidiary companies including ChannelReply ("BoA Account"). Each Dardashtian and Gitman were dual signatories on such BoA Account.

160.    Should the BoA Account not have funds in the bank to cover the operating expenses of CSV and its subsidiary companies, CSV and its subsidiary companies will jeopardize the operation of its business and the potential loss of its customers.

161.    On May 26, 2017, the BoA Account had an account balance of $74,715.21.

162.    With the intent to interfere with the BoA Account and Plaintiff Dardashtian's equal rights thereto, Defendant Gitman did intentionally withdraw and siphon the funds from the BoA account to the exclusion of Plaintiff Dardashtian, CSV and Plaintiff ChannelReply and without Dardashtian's authorization or consent.

163.    On May 27, 2017, Defendant Gitman emailed Plaintiff Dardashtian acknowledging that Defendant Gitman took all of the money out of the BoA account. Defendant Gitman refused to advise Plaintiff Dardashtian where the funds were located and further refused to replenish the BoA Account so that CSV and its subsidiaries could pay its operating expenses

50

for CSV and ChannelReply. Upon information and belief, the siphoned funds have been placed in a Bank of America account in Defendant Gitman's name as well as a Chase account in Channel Reply Inc.'s name.

164.    Since May 26, 2017, the BoA Account has been operating at a negative balance and is not financially capable of meeting its operating expenses.

165.    Defendant Gitman's actions were intentional and designed solely to harm CSV and its subsidiary companies to gain a competitive advantage in Defendant Gitman's competing businesses and to drive Dardashtian and CSV, NDAP and Channel Reply into debt as evidenced by Gitman's brazen charges to a company credit card and bank account after his withdrawal, including to fund his BMW automobile .

166.    Additionally, Defendant Gitman has intentionally misappropriated these funds, interfere with CSV and Plaintiff ChannelReply's ability to operate ChannelReply's confidential, proprietary, and trade secret software to inhibit  ChannelReply's ability to properly service its customers in the industry of e-commerce so that Defendant Gitman's competing companies can have an advantage and dominate the space by stealing the code;

**WHEREFORE**, Plaintiff demands judgment against Defendant Gitman for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 11

### CIVL CONSPIRACY AS TO FALK, ACCEL COMMERCE, BAGAEV, GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC. AS TO GITMAN'S CONVERSION

167.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

168.    As set forth in Count 10, Defendant Gitman has committed the unlawful act of conversion as to the assets of CSV and ChannelReply.

169.    Defendant Gitman conspired and unlawfully agreed to commit such conversion in conspiring with Defendants Falk, Accel Commerce, Dalva Ventures, Bagaev, Glukharev, and Defendant Channel Reply, Inc.

170.    Defendants Falk, Accel Commerce, Dalva Ventures, Bagaev, Glukharev, and Defendant Channel Reply, Inc. each took overt acts in furtherance of their respective and joint agreement with Defendant Gitman to convert and misappropriate CSV's and Plaintiff ChannelReply's assets as set forth in Count 10.

171.    As a proximate result of Defendants Falk, Dalva Ventures, Accel Commerce, Bagaev, Glukharev, and Channel Reply, Inc respective and joint unlawful conduct, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants Falk, Accel Commerce, Bagaev, Glukharev, Dalva Ventures, and Defendant Channel Reply, Inc., jointly and severally, for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

52

## COUNT 12

### FALSE DESIGNATION/ UNFAIR COMPETITION
### 15 U.S.C 1125 AGAINST GITMAN AND
### DEFENDANT CHANNEL REPLY, INC.

172.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

173.    Starting in 2012, CSV created a proprietary software solution called "ChannelReply" that integrates Ebay and Amazon customer service messages and order information into a customer messaging solution for consumer-friendly messaging.

174.    The "ChannelReply" trade name and title has acquired distinctiveness as it is sufficiently known that consumers associate it with CSV and ChannelReply's proprietary messaging software.

175.    Defendant Gitman's use of the term "Channel Reply" to compete with Plaintiff Channel Reply through Channel Reply Inc., is clearly intended by Defendant Gitman to trade off CSV's "ChannelReply" trade name, and is likely to cause and indeed will cause confusion, mistake or deceit as to the affiliation, connection or association of Defendant Channel Reply Inc., owned by Defendant Gitman, with ChannelReply, co-owned by Defendant Gitman and Plaintiff Dardashtian.

176.    Defendant Channel Reply Inc., is starkly similar to Plaintiff ChannelReply, in that Defendant Gitman is seeking to unfairly compete with CSV and Plaintiff ChannelReply with the misappropriation and unauthorized use of Plaintiff's ChannelReply's goodwill, confidential and proprietary software to offer the same service(s) to consumers in foreign and interstate commerce in which Plaintiff CSV's ChannelReply maintained a competitive advantage.

177.    Defendant Channel Reply Inc.'s use of the ChannelReply trade name constitutes the unauthorized use in commerce of Plaintiff's Channel Reply name and will deceive consumers into believing that Defendant Channel Reply Inc., is the same business as Plaintiff CSV's ChannelReply.

178.    As the co-owner of Plaintiff ChannelReply and the owner of Channel Reply Inc., Defendant Gitman maintains full knowledge of the Plaintiff ChannelReply's trade name and confidential and proprietary software and service. Accordingly and as evidenced by the express words in his conversations with employees delegating tasks to migrate email addresses and all company data to a new ChannelReply G suite account in Google, Defendant Gitman's acts to misappropriate the Plaintiff ChannelReply tradename and good will are willful.

179.    By reason of the acts of Defendant Gitman and Defendant Channel Reply Inc., Plaintiffs have suffered, are suffering and unless Defendant Gitman and Defendant Channel Reply Inc., are restrained, will continue to suffer irreparable injury for which there is no adequate remedy at law.

180.    Plaintiffs are entitled to damages for Defendant Gitman's and Defendant Channel Reply Inc.'s infringement and malicious intentional confusion from its infringing conduct, both in amounts to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants Gitman and Defendant Channel Reply, Inc., jointly and severally, for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 13

## COMPUTER FRAUD
## 18 USC §1030

1781.   Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

182.   CSV's computers and servers are heavily encrypted and password protected which store CSV's and Plaintiff ChannelReply's intellectual, proprietary and confidential information ("Company Computers").

183.   The Company Computers further store bank passwords for online banking access containing financial records of its operating BoA Account which is utilized to pay CSV's and its subsidiary companies operating expenses, including those expenses of Plaintiff ChannelReply.

184.   The Company Computers are used in interstate and foreign commerce.

185.   The Company Computers are all "protected computers" under the 18 USC 1030, the Computer Fraud and Abuse Act ("CFAA").

186.   As co-owners and co-managers of CSV and its subsidiary companies, Plaintiff Dardashtian and Defendant Gitman jointly and equally shared and had access to the Company Computers' passwords, logon and login information, administrator information and therefore each fully maintained equal access to the Company Computers and associated Company Portals, Accounts, Servers and the like,  Both Defendant Gitman  and Plaintiff Dardashtian had admin access but Defendant Gitman intentionally removed Plaintiff Dardashtian as an administrator so he could not gain access or reset passwords. Defendant Gitman also removed Dardashtian's access to a password storage databank storing all company level passwords.

187.   Beginning on or about May 27, 2017, Defendant Gitman knowingly and fraudulently and without Plaintiff Dardashtian's knowledge or consent, changed CSV's banking

passwords and other passwords contained in the Company Computers, including CSV and Plaintiff ChannelReply's Paypal password which is utilized to communicate with CSV and Plaintiff ChannelReply's local and interstate customers, as well as several other software programs damaging them and blocking and otherwise terminating access to Dardashtian. Defendant Gitman then altered and transferred Company data contained in the Company Computers to his new G Suite to further his scheme of establishing his competing companies and to effectively lockout Dardashtian from CSV and Plaintiff ChannelReply business.

188.    In doing so, and while acting in his capacity as co-owner and co-manager of CSV, NDAP and Plaintiff ChannelReply, Defendant Gitman knowingly and intentionally exceeded his authorized access to the Company Computers to prevent and otherwise terminate Plaintiff Dardashtian from having computer access and further disabled Plaintiff Dardashtian's ability to access the Company Computers, all of which actions affect interstate and/or foreign commerce.

189.    Plaintiffs have suffered a loss as a direct result of Gitman's unlawful actions as Plaintiffs now must incur costs of responding to the offense, conducting damage assessments, and restoring the data, program, system, or information to its condition prior to the offense, and have lost revenue, incurred costs, including attorney's fees, or other consequential damages incurred because of the interruption of service and Gitman's interference with the Company Computers.  The aggregate value of such loss is in excess of $5,000.00 within the past one year.

**WHEREFORE**, Plaintiff demands judgment against Defendant Gitman for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $5,000.00.

## COUNT 14

### CIVL CONSPIRACY AS TO FALK, ACCEL COMMERCE, BAGAEV, GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC. AS TO GITMAN'S VIOLATION OF 18 USC 1030

190.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

191.    As set forth in Count 13, Defendant Gitman has committed the unlawful act of Computer Fraud as to the CSV protected computers, software and passcodes.

192.    Defendant Gitman conspired and unlawfully agreed to commit such conversion with Defendants Falk, Accel Commerce, Dalva Ventures, Bagaev, Glukharev, and Defendant Channel Reply, Inc.

193.    Defendants Falk, Accel Commerce, Dalva Ventures, Bagaev, Glukharev, and Defendant Channel Reply, Inc. each took overt acts in furtherance of their respective and joint agreement with Defendant Gitman to convert and misappropriate CSV's and Plaintiff Channel Reply's assets as set forth in Count 13 through Defendant Gitman's commission of Computer Fraud.

194.    As a proximate result of Defendants Falk, Dalva Ventures, Accel Commerce, Bagaev, Glukharev, and Channel Reply, Inc. respective and joint unlawful conduct, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants Falk, Accel Commerce, Bagaev, Glukharev, Dalva Ventures, and Defendant Channel Reply, Inc., jointly and severally, for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $5,000.00.

## COUNT 15

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AGAINST GITMAN, FALK, ACCEL COMMERCE, BAGAEV, GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC.

195.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

196.    Defendants Gitman, Falk, Accel Commerce, Bagaev, Glukharev, Dalva Ventures and Defendant Channel Reply, Inc. are aware that CSV and Plaintiff ChannelReply have over two hundred customers and additional proposed customers and business relations across the United States and worldwide.

197.    The above Defendants have wrongfully interfered with CSV and Plaintiff ChannelReply's proposed business relations. For example, the above Defendants have either participated, assisted, and/or committed: a) the depletion of the CSV business operating account without the express permission of Plaintiff Dardashtian; b) misappropriation and conversion of CSV's and Plaintiff ChannelReply's respective business assets and proprietary and confidential information and trade secrets to form competing companies, Defendant Channel Reply, Inc. Accel Commerce and Dalva Ventures; c) soliciting CSV's and Plaintiff ChannelReply's respective customers on behalf of competing businesses; d) "locking out" Plaintiff Dardashtian and terminating his access from multiple computer and electronic accounts necessary and fundamental to CSV's and Plaintiff ChannelReply's business operations, including financial accounts; e) accessing and disclosing Plaintiff Dardashtian's personal private financial information; f) using and infringing upon the exact trade name "ChannelReply" to unfairly compete against Plaintiff ChannelReply through Defendant Channel Reply, Inc.; g) breaching their respective fiduciary duties to CSV and Plaintiff ChannelReply; and h) illegally soliciting

58

and otherwise interfering with Plaintiff CSV and Plaintiff ChannelReply's contractual relations with its developers Bagaev and Glukharev by providing them with false information about Plaintiff Dardashtian and offering them financial incentives to breach their agreement and duty of loyalty to Plaintiffs.

198.    Plaintiff CSV and Plaintiff Channel Reply would have entered into business relations with several customers but for the above Defendants' interference. Plaintiff Dardashtian would have maintained and grown business relationships for himself and the company but for Defendants' harmful and obstructive actions.

199.    The above Defendants acted with wrongful means. The above Defendants put and continue to put ChannelReply's worldwide customers and the worldwide customers they service at risk of service disruption and collect their payments under dishonest means, funneling said payments into accounts not belonging to CSV, all of this interferes with CSV and Channel Reply's business present and future relationships.

200.    Plaintiff CSV and Plaintiff ChannelReply have been injured as a result.

**WHEREFORE**, Plaintiff demands judgment against Gitman, Falk, Accel Commerce, Bagaev, Glukharev, Dalva Ventures and Defendant Channel Reply, Inc., jointly and severally, all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 16

## DEFAMATION PER SE

201.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

202.    Defendant Gitman has also defamed Dardashtian by stating several intentionally false statements exposing Dardashtian to public contempt, ridicule, aversion or disgrace thereby causing Dardashtian damages.

203.    On June 1, 2017 and June 2, 2017 Defendant Gitman stated to Bagaev that Dardashtian "stole" money.

204.    On June 1, 2017 Defendant Gitman stated to Bagaev that Dardashtian was operating a "pyramid scheme" via written communication.

205.    On June 1, 2017, Defendant Gitman alluded to Bagaev that Dardashtian was a "parasite" via written communication and called him a "bully" when he asked employees to stay out of their dispute.

206.    As a result, Dardashtian has incurred damages in the amount to be proven at trial but which are in excess of $100,000.00.

207.    These false statements accuse Dardashtian of a serious crime, and as such, these statements which were made to Plaintiff ChannelReply's lead developer, Bagaev, unquestionably injure Dardashtian's business and professional reputation.

WHEREFORE, Plaintiff Dardashtian demands judgment against Gitman, for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $100,000.00.

## COUNT 17

### IDENTITY THEFT: NY CLS BUS 380-S AGAINST GITMAN

208.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

209.    Defendant Gitman has converted, misappropriated and/or stolen Dardashtian's business identity by wrongfully and without permission using Dardashtian's email address, michael@channelreply.com, while placing Gitman's own picture and likeness on the Gmail account so that anyone receiving email communications sees the email address Michael@channelreply.com and Michael Dash (Dardashtian's known business name) on the signatory line but it has Defendant Gitman's face on the Gmail account, as if he is Dardashtian.

210.    Defendant Gitman also now receives all emails intended for Dardashtian from Plaintiff ChannelReply's customers and business associates.

211.    By doing so, Gitman is acting with an intent to defraud by using such electronic services in the name of Dardashtian without Dardashtian's consent.

WHEREFORE, Plaintiff Dardashtian demands judgment against Gitman, for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $100,000.00.

### COUNT 18
### UNFAIR COMPETITION AS TO ALL DEFENDANTS UNDER
### NEW YORK STATE LAW

212.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

61

213.    The Defendants, in bad faith, have all misappropriated the expenditures, skill and labor of Dardashtian, CSV and Plaintiff ChannelReply by among other things, a) the depletion of the CSV business operating account without the express permission of Plaintiff Dardashtian; b) misappropriating and converting CSV and Channel Reply's respective business assets and proprietary and confidential information and trade secrets to form two competing companies, Accel Commerce and Channel Reply, Inc.; c) improperly soliciting CSV's and Plaintiff ChannelReply's respective customers on behalf of competing businesses; d) "locking out" Plaintiff Dardashtian from multiple computer and electronic accounts necessary and fundamental to CSV's and Plaintiff Channel Reply's business operations, including financial accounts; e) accessing and disclosing Plaintiff Dardashtian's personal private financial information; f) using and infringing upon the exact trade name "ChannelReply" to unfairly compete against Plaintiff ChannelReply through Defendant Channel Reply, Inc.; g) breaching their respective fiduciary duties to CSV and Plaintiff ChannelReply; and h) illegally soliciting and otherwise interfering with Plaintiff CSV and Plaintiff ChannelReply's contractual relations with its developers Bagaev and Glukharev by providing them with false information about Plaintiff Dardashtian and offering them financial incentives to breach their agreement and duty of loyalty to Plaintiffs

214.    As a result, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 19

## MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK STATE LAW

215.     Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

216.     CSV is the owner of the trade secrets and other confidential and proprietary information relating to its and Plaintiff ChannelReply's computer software and code used in the industry of e-commerce, such trade secrets include customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes, other codes and other intellectual property. These trade secrets are CSV's and Plaintiff ChannelReply's electronic services that are used in or intended for use in interstate or foreign commerce. CSV and Plaintiff ChannelReply sell its software solutions throughout the United States and worldwide.

217.     Defendant Gitman, with the assistance and participation of all other Defendants, is using and otherwise misappropriating those trade secrets in violation of the CSV operating agreement and in breach of his fiduciary duty to CSV and Dardashtian to unfairly compete against CSV and Plaintiff ChannelReply.

218.     Such trade secrets are vital to CSV and Plaintiff ChannelReply's business and provides Defendants with an unfair competitive advantage which they would otherwise not have enjoyed.

219.     As a result, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demands judgment against Defendants for all compensatory, punitive, consequential damages and attorney's fees as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## JURY DEMAND

Plaintiff request a trial by jury on all issues so triable.


ARTURI, D'ARGENIO, GUAGLARDI &
MELITI, LLP

_____
Barry S. Guaglardi, Esq. (BSG2401)
ARTURI, D'ARGENIO,
GUAGLARDI & MELITI, LLP
Attorneys for Plaintiff
365 West Passaic Street, Suite 130
Rochelle Park, NJ 07662
Phone: (201)947-4100
Fax:    (201)947-4010
Email: bguaglardi@adgmlaw.com


Dated: June 8, 2017

## VERIFICATION

I, Michael Dardashtian, individually and on behalf of Plaintiffs, of which I am an equal member and co-manager thereof, having been duly sworn and upon my oath, verifies under the penalties of perjury that I have read the allegations of this Verified Complaint. All of the factual allegations are true and correct to the best of my knowledge, except for any allegation claimed to be upon information and belief.

_____
Michael Dardashtian, Individually and on behalf of
Plaintiffs Cooper Square Ventures, LLC,
ChannelReply and NDAP, LLC

Signed and Sworn to
before me this 9th day
of June 2017

_____

TANIA JEAN BAPTISTE
Notary Public - State of New York
NO. 01JE6348837
Qualified in Kings County
My Commission Expires Oct 3, 2020

63