UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE, LLC a/k/a
COOPER SQUARE VENTURES,
LLC, NDAP, LLC and CHANNELREPLY,

                  Plaintiffs,

        -against-

DAVID GITMAN, ACCEL COMMERCE, LLC,
DALVA VENTURES, LLC, KONSTANTYN
BAGAIEV, OLESKSII GLUKHAREV and
CHANNEL REPLY, INC.,
                  Defendants.
----------------------------------------------------------X

DAVID GITMAN, individually, and on behalf of
COOPER SQUARE VENTURES, LLC, and
NDAP, LLC,

           Counterclaim Plaintiffs,

        -against-

MICHAEL DARDASHTIAN,

           Counterclaim Defendant.

----------------------------------------------------------X

1:17 Civ.4327 ( LLS)

**PLAINTIFFS' FIRST
AMENDED VERIFIED
COMPLAINT**

      Plaintiffs, Michael Dardashtian ("Dardashtian" and residing at 13 Polofield Lane, Great

Neck, New York), individually and on behalf of Cooper Square, LLC a/k/a Cooper Square

Ventures, LLC (collectively referred to herein as "Cooper Square Ventures" or "CSV" and

having a principal place of business located 13 Polofield Lane, Great Neck, New York), NDAP,

LLC, ("NDAP") a wholly owned subsidiary of CSV and Channel Reply ("ChannelReply"), a

wholly owned subsidiary of CSV, as and for their First Amended Verified Complaint against the Defendants hereby state as follows:

## **PARTIES**

1.      Cooper Square Ventures was founded in 2011, is a software technology limited liability company specializing in e-commerce (with an emphasis on large catalogs), software as a service, software creation and innovation and technology consulting services.

2.      Pursuant to CSV's operating agreement ("CSV Operating Agreement"), Plaintiff Dardashtian and Defendant David Gitman ("Gitman" or "Mr. Gitman") are the sole members of CSV, each owning an equal 50% membership interest and profit percentage of CSV, and both served as co-managers responsible for its daily operations. [1] Mr. Gitman was later removed as a co-manager by the Court as described infra.

3.      To date, CSV has generated in excess of $10 million dollars of revenue and owns and operates multiple subsidiary companies specializing in different technology-related services.

4.      ChannelReply is an online product owned by CSV and is a software service Solution falling under software as a service or "SaaS" created and owned by CSV to facilitate the messaging of eBay and Amazon store owners' respective communications to their customers and potential customers throughout the United States of America and worldwide.

5.      For instance, nationally known prominent companies pay a monthly subscription fee to ChannelReply in order to connect their eBay and Amazon store messages with its customers to allow a free-flowing communication between them and the customers.

---

[1] The CSV Operating Agreement was inadvertently entitled "Operating Agreement of Cooper Square, LLC" by virtue of a scrivener's error by CSV's attorney Jeffrey Rothman, Esq., which failed to include the word "Ventures." *See* Affidavit of Jeffrey Rothman dated June 21, 2017, previously filed in further support of Plaintiffs' Order to Show Cause for Preliminary Injunctive Relief on June 21, 2017.

2

by freelance subcontractors of CSV as a work for hire and such confidential software is owned

by and exclusively the proprietary and intellectual property of CSV and ChannelReply.

7.     The Plaintiff ChannelReply has current revenue exceeding $30,000 per month and

has more than 200 customers worldwide.

8.     NDAP is also a wholly owned subsidiary of CSV engaged in the online sale

of automobile parts to customers throughout the United States of America and worldwide.

9.     CSV has since sold NDAPs assets and business to a purchaser identified

herein as XYX Corp[2]. an entity located in another state.

10.     Jeremy Falk is a principal and member of Defendant Summit Rock

Holdings, LLC ("Summit Rock") who served as a broker and consultant for CSV and NDAP as

to the sale to XYZ Corp., pursuant to a March 3, 2017 Services Agreement..

11.     Accel Commerce, LLC ("Accel Commerce") is a Delaware company engaging in

business activities in the State of New York within the jurisdiction of this Court. Accel

Commerce is an e-commerce company, which was unbeknownst to Plaintiff Dardashtian at the

time, formed by Defendant Gitman with others to compete with Plaintiff CSV and Plaintiff

ChannelReply in the electronic commerce industry.

12.     Accel Commerce was formed in March, 2017, without the knowledge or

authorization of Plaintiff Dardashtian, and has been using Plaintiff CSV and Plaintiff

ChannelReply's assets, such as personnel, funds, and proprietary information to compete against

Plaintiff CSV and Plaintiff ChannelReply in the e-commerce industry.

13.     Defendant Channel Reply, Inc. (which is a separate and distinct entity than

---

[2] XYZ Corp. is herein used as there may be a confidentiality agreement as to this potential sale which may include the identity of the purchaser.

3

Plaintiff "ChannelReply") is an entity formed by Defendant Gitman, without the knowledge or authorization of Plaintiff Dardashtian, which also engages in electronic commerce. To distinguish between the two, the Plaintiff ChannelReply owned by CSV will be referred as "ChannelReply" and Defendant Channel Reply, Inc., which was formed by Gitman to compete against Plaintiff ChannelReply in the ecommerce industry, will be referred to as Defendant "Channel Reply, Inc."

14.     Defendant Channel Reply, Inc. is unlawfully utilizing the assets of Plaintiffs CSV and Plaintiff ChannelReply, such as personnel, monetary funds, confidential and proprietary information, intellectual property, tradename, and their trade secrets to unfairly compete against Plaintiffs CSV and Plaintiff ChannelReply.

15.     As Plaintiff Dardashtian is a 50% member of Plaintiff CSV, Plaintiff ChannelReply and Plaintiff NDAP, and therefore without the ability to authorize Plaintiff CSV, Plaintiff ChannelReply, and Plaintiff NDAP respectively, to file suit, Plaintiff Dardashtian brings such action on behalf of himself, individually, and on behalf of Plaintiff CSV, Plaintiff ChannelReply and Plaintiff NDAP for damages suffered by such entities as a result of Defendants' actions.

16.     Konstantyn Bagaiev ("Bagaiev") and Olesksii Glukharev ("Glukharev") (Bagaiev and Glukharev are collectively referred to herein as the "Plaintiff Companies' developers") are independent contractors retained by CSV and Plaintiff ChannelReply to serve as software developers for CSV and the ChannelReply software programs which they helped develop as the exclusive proprietary property and trade secrets of Plaintiff CSV and Plaintiff ChannelReply. Bagaiev and Glukharev were solicited and otherwise induced by Defendant Gitman to participate in various unlawful acts as alleged herein.

4

17.     Upon information and belief, Defendant Gitman unlawfully solicited and induced Bagaiev and Glukharev to resign from the Plaintiff Companies and to join Defendant Gitman to work for him and Defendant Channel Reply, Inc.

18.     As a result of Defendant Gitman's unlawful competition and solicitation of Bagaiev and Glukharev, Bagaiev and Glukharev terminated their employment with the Plaintiff Companies, further causing the Plaintiff Companies' damages.

## JURISDICTION AND VENUE

19.     This action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, as amended, and New York law. This Court has jurisdiction pursuant to 28 USC §1331 over Plaintiffs' federal-based claims (18 USC 1030 and 15 USC 1125).

20.     This Court has supplemental jurisdiction pursuant to 28 USC §1367 over Plaintiff's State-based claims.

21.     Venue is proper in this Court pursuant to 28 USC §1391(b) as all parties reside within this jurisdiction of this Court or regularly conduct business within this Court's jurisdiction.

22.     Additionally, CSV's operating agreement provides a choice of forum and venue selection clause in favor of this Court for any disputes arising out of CSV's operations.

## FACTS COMMON TO ALL COUNTS

## FALK AND SUMMIT ROCK'S "CONSULTING FEE"

23.     In mid-May, 2017 Dardashtian raised concerns and objections about Falk's and Summit Rock's compensation under the Summit Rock-CSV Services Agreement dated March 3, 2017 regarding the sale of NDAP, LLC to XYZ Corp. ("Summit Rock Service Agreement") as both, Falk and Gitman were pressuring him to agree to pay Falk, who Dardashtian later learned

to be Gitman's secret business partner in Accel Commerce, a competing business, a greater "consultant" fee.

24.    The Summit Rock Service Agreement provided that Summit Rock, Falk's company, would be paid $110,000.00 plus .0025% of the eventual purchase price of the sale of NDAP, LLC.

25.    Once the purchase price, however, was determined a few days after the execution of the Summit Rock Services Agreement it became clear to Dardashtian that the purchase price would not satisfy the a) outstanding debt of NDAP, LLC, b) other outstanding financial obligations; c) closing costs; and d) would not yield an acceptable profit to Dardashtian.

26.    Thereafter on March 15, 2017, Falk and Summit Rock agreed to lower their fee to $80,000.00 in total which was acceptable to Dardashtian. The reduction of Falk and Summit Rock's fee was as a sole result of Dardashtian's negotiation of such fee on behalf of NDAP.

27.    However, on or about May 17, 2017, before the closing of the NDAP, LLC-XYZ Corp. transaction, and before the final necessary closing documents were signed and approved by Dardashtian, Gitman demanded that Falk receive $100,000.00 as a fee rather than the agreed upon $80,000.00.

28.    Gitman also demanded that Gitman receive a greater portion of the profits of such sale than Dardashtian. Specifically, Gitman demanded a 70-30 split of the profits in his favor despite the CSV operating agreement requiring Dardashtian and Gitman to split profits 50-50.

29.    At all times relevant herein, Gitman's actions were contrary to the best interests of the Plaintiff Companies, of which he is a 50% member, a breach of his fiduciary obligations to Dardashtian, and a direct material breach of the CSV Operating Agreement.

## DEFENDANTS' RESPECTIVE MISAPPROPRIATION AND CONVERSION OF CSV'S ASSETS

30.     As of April 30, 2017, CSV's Bank of America bank account had an account balance of $73,982.53.  Plaintiff's Aff. Exhibit 59. Gitman and Dardashtian had agreed in January, 2006 that such banking account would be used to fund the operations of Plaintiff ChannelReply, NDAP and other operations.

31.     On the morning of Saturday May 27, 2017, at the start of Memorial Day long-holiday weekend and knowing the bank would not be open again until that following Tuesday, and with no notice whatsoever to Dardashtian, Gitman depleted CSV's bank account, which funds several of CSV's subsidiary companies, including Plaintiff ChannelReply.

32.     The timing of Gitman's unlawful draining and siphoning of CSV's bank account coincides with Dardashtian's refusal to agree to 1) pay Falk a greater consultant fee for the NDAP sale to XYZ Corp. and 2) a 70-30 split with Gitman of the profits of such sale. Gitman in fact unlawfully threatened to transfer CSV's cash balances to a separate account maintained exclusively by Gitman.

33.     Dardashtian received a mobile notification that all available cash in CSV's account had been withdrawn. CSV's online account information, as viewed on Dardashtian's mobile device, showed two cashed checks: $50,000 and $23,982.53 bringing the account balance down to under $25.00.  Plaintiff's Aff. Exhibit 59 and Exhibit 60.

34.     Dardashtian immediately called the bank and was told that Gitman had withdrawn all of the money.

35.     On May 27, 2017, at around 4:30pm Dardashtian received an email from Gitman admitting that he withdrew all of the funds from the CSV Bank of America account and that, he, unilaterally, will be making decisions on behalf of CSV despite the requirement under the CSV

operating agreement requiring a 50-50 management of CSV. Gitman also essentially threatened

Dardashtian to sign a purchase agreement for the NDAP, LLC sale to XYZ Corp., which is being

"brokered" by Falk and Summit Rock.

36.     By 2:11 pm on Sunday May 28, 2017, CSV's account balance was overdrawn by

negative $10.89. CSV's bank account not only collects revenue in the form of monthly service

fees from customers, but it also funds the operation of the ChannelReply service.

37.     On 8:01 pm on Monday May 29, 2017, the CSV bank account was overdrawn by

$229.40 due to preexisting auto debits to pay for services essential to operate ChannelReply.

Plaintiff Aff. Exhibit 67.

38.     On May 31, 2017, Gitman unilaterally began increasing CSV's debt

by using CSV's depleted bank account and credit card. Gitman paid an invoice to a Plaintiff

Channel Reply worker from CSV's overdrawn bank account for $218.51 further driving the

account into overdrawn status. The accompanying invoice indicates the charge comes from

Gitman and lists his personal home address in Brooklyn, New York.

39.     On June 2, 2017, Gitman charged $3,500 to amazon web services

using NDAP's American Express credit card, thereby driving up CSV's debt to over $7,000.00 in

addition to his emptying its bank account.

40.     Such actions by Gitman have frustrated and prevented Dardashtian

from paying the jointly-held business credit card in each of Gitman's and Dardashtian's names.

As Gitman then locked Dardashtian out of CSV's amazon web services account by changing the

password, Dardashtian could not even see what the charge is or the purpose of it.

41.     Auto-debits have been prescheduled to pay for Plaintiff ChannelReply's servers,

employees and other digital portals that help service CSV and Plaintiff ChannelReply.

42. There was no money in CSV's account due to Defendant Gitman's actions, and thus, CSV's contractual obligations were not being paid and the account continued to be overdrawn. Mobile screenshot of the overdrawn account is annexed to Plaintiff's Aff. Exhibit "65."

43. Gitman's actions threatened the complete shut-down of Plaintiff ChannelReply, which is presently servicing subscriptions held by more than two hundred worldwide customers. These business relationships took years to build and are not only a source of monthly revenue but are invaluable assets to CSV and Dardashtian, as a businessman, 50% owner and co-manager of CSV. The loss of these customers would cause irreparable harm to Dardashtian, Plaintiff ChannelReply, CSV and its other businesses.

44. Defendant Gitman's actions also caused CSV and Plaintiff ChannelReply's third-party customers to lose or damage relationships with their own customers, and caused harm to their customer service capabilities in that Dardashtian cannot help them with customer issues. Gitman redirected customer support emails to himself, with no experience with customer service and has not indicated whether he is providing any.

45. Thereafter, Dardashtian received notice from Bagaiev and Glukharev that they were both resigning from the Plaintiff Companies, placing the Plaintiff Companies and Plaintiff ChannelReply in further jeopardy.

46. On or about June 20, 2017, Plaintiff Dardashtian received letters from Bagaiev and Glukharev stating their intention to resign from the Plaintiff Companies. The letters presented by Bagaiev and Glukharev were suspiciously identical with the exception of their names, the letters, upon information and belief, were drafted by or on behalf of Defendant Gitman.

47.     Such actions by Defendant Gitman in inducing the Plaintiff Companies'
developers to resign from Plaintiff Companies, was to effectuate Defendant Gitman's goal of
damaging the Plaintiff Companies upon his removal as manager by virtue of the Court's June 19,
2017 order and attempting to undermine the Plaintiff Companies' ability to conduct business
operations.

48.     Dardashtian was required to immediately find and replace Bagaiev and Glukharev
with another company at additional cost and expense, just to keep Plaintiff ChannelReply afloat
and preserve CSV's business relationships with its customers.

## GITMAN'S UNLAWFUL FORMATION OF COMPETING BUSINESSES- ACCEL COMMERCE AND DEFENDANT CHANNEL REPLY, INC.

### Accel Commerce

49.     Dardashtian and Gitman are the sole members of CSV, each owning an equal
50% membership interest of CSV and both serve as co-managers responsible for its daily
operations.

50.     CSV's operating agreement does provide for either of its members, Dardashtian
or Gitman, to form and operate a competing business to that of CSV.  However, Article 12 of the
CSV operating agreement prohibits either member to use CSV's confidential and proprietary
information such as financial information/data, business plans, marketing or sales plans, trade
secrets, computer programs, processes, data, designs, compilations, policies, procedures, sales
know how or anything that is considered to be proprietary to CSV ("CSV's Confidential
Information") for their own use or that of any competing business opportunity. Plaintiff's Aff.
Exhibit 1, Article 12.

10

51.     However, Dardashtian in late April 2017, learned that Gitman formed Defendant Accel Commerce with Falk.  Upon information and belief, Accel Commerce is a competitor of CSV and Plaintiff ChannelReply in the e-commerce industry.

52.     Specifically, Dardashtian logged into CSV's "Upwork" account, owned by CSV, which takes screen shots of employees while they do computer work for CSV on CSV computers, to track their work product and time worked.

53.     Dardashtian saw screenshots, of the bookkeeper Gitman had hired, Mary Faith Anden ("Anden"), working on the books of Accel Commerce. Dardashtian also saw statements reflecting bank accounts in the name of Jeremy Falk and Defendant Gitman, and correspondence between Anden and Defendant Gitman discussing Gitman's business partnership with Falk. Gitman further shared ChannelReply's confidential and proprietary information with Falk without Dardashtian's consent.

54.     Dardashtian also was surprised that Gitman and Falk were using CSV's Upwork account in relation to the affairs of their new side business, Accel Commerce.  Dardashtian learned that Accel Commerce was formed in March 20, 2017, which is **prior** to the purchase price being determined and buyer located for what would be the NDAP sale to XYZ Corp.

55.     In other words, Gitman secretly formed a competing business to CSV before Falk "brokered" the purchase price between NDAP and XYZ Corp. and while Gitman was insisting that Falk receive a greater broker fee for the transaction.

56.     The fact that Gitman had formed a competing business unbeknownst to Dardashtian, and was using CSV resources, proprietary information, trade secrets, and assets as part of its operation is another reason Dardashtian refused to execute the necessary documents to close the NDAP sale to XYZ Corp.

**Defendant Channel Reply, Inc.**

57.     On Monday May 29, 2017, Defendant Gitman unilaterally canceled Dardashtian's

participation in a pre-scheduled weekly conference call with international employees operating

Plaintiff ChannelReply. He removed the event from Dardashtian's calendar so that he could not

join the Skype call and get any information, updates or ask any questions about Plaintiff

ChannelReply's business.  See Plaintiff Aff. Exhibit 66a.

58.     On Monday May 29, 2017, after blocking Dardashtian's access to the CSV and

Plaintiff ChannelReply company conference call with employees, Defendant Gitman spoke with

Defendant Bagaiev, Plaintiff ChannelReply's lead software developer, indicating Gitman's intent

to fly to Russia/Ukraine to meet with Bagaiev. Plaintiff's Aff. Exhibit "66b."

59.     On Tuesday May 30, 2017 at approximately 5:08 p.m., Defendant Gitman again

stated to Bagaiev his intent to fly to Russia/Ukraine immediately to meet privately with him and

Plaintiff ChannelReply's other developer, Oleskii Glukharev, to discuss CSV's and Plaintiff

ChannelReply's respective operations, without Dardashtian being present. Plaintiff Aff.  Exhibit

"71."

60.     On the very same day that Defendant Gitman conveyed his intentions to meet

with Plaintiff ChannelReply's developers in Russia/Ukraine, on May 30, 2017, Defendant

Gitman formed and registered Defendant Channel Reply, Inc. with the Secretary of State in

Delaware.

61.     Defendant Gitman's clear purpose of forming Defendant Channel Reply, Inc. was

to transfer all of CSV and Plaintiff ChannelReply's assets into a new company for Defendant

Gitman's own use, thereby stealing Plaintiff ChannelReply and converting all of its assets, trade

12

secrets, intellectual and proprietary property, tradename, software, code and employees, while, simultaneously, locking Dardashtian out of CSV and Plaintiff ChannelReply so that Dardashtian had no access to any resources to try to prevent it or defend himself, to CSV and Plaintiff ChannelReply's customers and employees.

62. On June 1, 2017, it was revealed that Defendant Gitman sent Bagaiev and Glukharev new agreements for them to become owners and/or employees of his newly formed company "[Defendant] Channel Reply, Inc."

63. Plaintiff sent these agreements relating to Defendant Channel Reply Inc. using the email David@dalva.ventures. Upon closer examination, it appears Defendant Gitman formed Dalva Ventures in February of 2017, indicating that his unlawful intentions commenced at least back in February, 2017 to steal and convert Plaintiff ChannelReply to his own use and for his own benefit. Dalva Ventures is believed to be another entity formed by Defendant Gitman to compete directly or indirectly with Plaintiff ChannelReply and CSV in the e-commerce industry.

64. On June 1, 2017, Defendant Gitman offered Plaintiff Companies' developers, or either one of them a stock plan agreement and 125,000 shares of equity in his newly formed entity, Defendant Channel Reply, Inc., without Dardashtian and/or the Plaintiff Companies' authorization and/or consent. Defendant Gitman, upon information and belief, also told Bagaiev, that he will be considered a co-founder of the new Defendant Channel Reply Inc. company to win his loyalty.

65. On June 2, 2017 Defendant Gitman spoke to Bagaiev about becoming an owner of his new company, Defendant Channel Reply, Inc.

66. Upon information and belief, Bagaiev thereafter became an owner of Channel

Reply, Inc.

67.    Upon information and belief, Defendant Gitman also discussed getting venture capital and said he knew of a venture capitalist that could help.

68.    On June 2, 2017, Defendant Gitman essentially indicated to Bagaiev, that after he converted all of CSV's assets to his new company Defendant Channel Reply Inc., he would offer Dardashtian a 5% share of the new company but if Dardashtian did not accept it, then the 5% share offered to Dardashtian would revert back to Bagaiev.  When Bagaiev questioned why Dardashtian would ever accept a 5% share of Defendant Channel Reply, Inc. (a company unlawfully formed to compete with CSV and Plaintiff ChannelReply in which Dardashtian already owns 50%), Defendant Gitman said "it was a fair and generous offer."

69.    Also, on June 2, 2017, Dardashtian noticed that Defendant Gitman had updated the CSV-funded TimeDoctor account and changed the name to "David's company" thereby further evidencing Defendant Gitman's intent and plot to make CSV and Plaintiff ChannelReply his and only his.

70.    On June 4, 2017, Bagaiev asked whether they should update the Plaintiff ChannelReply website and remove CSV's Terms of Service which identified CSV as the owner of Plaintiff ChannelReply and replace it with new terms of service for Plaintiff ChannelReply's existing customers so they can convert those customers to Defendant Channel Reply Inc. Defendant responded "absolutely."

71.    Defendant Gitman also confirmed he is traveling to Russia/Ukraine to meet with the Plaintiff Companies developers, Bagaiev and Glukharev in further efforts to operate Defendant Channel Reply, Inc. in person within a few days.

72.    On June 5, 2017, Defendant Gitman advised Bagaiev, in substance, that he

intends to develop a new corporation in the Ukraine to cut company taxes. It appears he will be trying to divert additional CSV's funds, assets and proprietary information abroad.

73.     Defendant Gitman has misappropriated and converted funds and assets rightfully belonging to CSV and Plaintiff ChannelReply to fund his unlawful competing businesses, Accel Commerce and Defendant Channel Reply, Inc.

74.     Defendant Gitman further induced the Plaintiff Companies' developers to participate in his scheme to misappropriate CSV and Plaintiff ChannelReply's assets, trade secrets and confidential and proprietary information to the benefit of Gitman and Defendant Channel Reply, Inc.

75.     Defendant Falk has conspired and participated in Defendant Gitman's misappropriation and conversion of CSV's and Plaintiff Channel Reply's assets, trade secrets and confidential and proprietary information to the benefit of Accel Commerce Defendant Channel Reply Inc. and himself.

76.     Defendants Bagaiev and Glukharev have also conspired and participated in Defendant Gitman's misappropriation of CSV's and Plaintiff ChannelReply's assets, trade secrets, tradename and confidential and proprietary information to the benefit of Accel Commerce, Defendant Channel Reply, Inc. and themselves, respectively.


**GITMAN, FALK, BAGAIEV, DALVA VENTURES, GLUKHAREV, DEFENDANT CHANNEL REPLY, INC AND ACCEL COMMERCE MISAPPROPRIATION OF VARIOUS COMPUTER PASSCODES AND SOFTWARE**

77.     From May 27, 2017 through the commencement of the instant action, Dardashtian tried to logon to his CSV Bank of America bank account without success. Dardashtian received notification that his passcodes had been changed, thereby locking him out so that he could not

alter or redirect any preexisting debits, nor see incoming or outgoing account activity. Plaintiff Aff. <u>Exhibit</u> "63."

78.     Dardashtian was also locked out of the NDAP, LLC Bank of America business account as well.

79.     After attempting to access other CSV computer software, Dardashtian was unable to access any of CSV's accounts that are utilized to operate multiple websites and businesses through CSV.

80.     CSV stores all passwords to all accounts on a heavily encrypted password storage site called "1 password". This is a site designed to control all company level passwords for all accounts.

81.     Defendant Gitman abused and his exceeded his authority as to CSV's software as he has "locked out" Dardashtian from CSV's computer software by removing his access to "1 password."

82.     As a result of Gitman's actions, Dardashtian could not access passwords to around two dozen company portals housing all company data, customer lists, codes, payment information, receipts, company historical documents, proprietary information and other information relating to CSV and Plaintiff ChannelReply.

83.     Gitman also abused and his exceeded his authority as to CSV's software by "locking out" Dardashtian from Google Suite. Google Suite is a business level version of Google. The suite of services provided by google includes email addresses, google documents, including all of Dardashtian's company documents, such as company data, documents, customer lists, subscriptions and invoices.

84. Defendant Gitman further created a new Google domain suite for Plaintiff ChannelReply to transfer all of Plaintiff ChannelReply's proprietary documents, email addresses and other confidential information away from CSV's business accounts and to a new Google suite portal that only Gitman controls. Dardashtian cannot access it despite Gitman sending CSV employees new invite logins for such access.

85. Since Defendant Gitman misappropriated and converted all of CSV's company data over to his new Google Suite and locked Dardashtian out of 1Password, Dardashtian could not access any company accounts except for his NDAP, LLC email address. This meant that anything new going forward, new incoming or outgoing emails, new and past data and documents, Dardashtian could not access.

86. Defendant Gitman not only locked Dardashtian out of CSV's and Plaintiff ChannelReply's computer software but he also misappropriated Dardashtian's business identity by taking his email address michael@channelreply.com to the new G suite and put his own photo up on Google. Gitman's actions had the deceiving effect upon anyone who receives an email or has received an email in the past from Dardashtian's email address. The email stated Michael@channelreply.com and Michael Dash (Dardashtian's known business name) but had Defendant Gitman's face on the Gmail account, as if he was Dardashtian.

87. Gitman's actions further enabled Gitman to receive all emails going to and intended for Dardashtian by Plaintiff's Channel Reply's customers and business associates. If he responded to such communications, he was doing so pretending and fraudulently conveying that he was Dardashtian. If he did not respond, it portrayed that Dardashtian was not responding to his customers and colleagues. Either way Gitman had enormous power to continue to damage Dardashtian's business reputation, as well as the company Dardashtian spent years building.

17

88.     Defendant Gitman also exceeded and abused his authorization to access to CSV's Google Suite to download all data, reset all passwords, delete or suspend some accounts all without Dardashtian's knowledge or authorization.

89.     Upon information and belief, Defendant Gitman downloaded all NDAP business data and emails without Dardashtian's knowledge or authorization.

90.     Dardashtian has compiled evidence through an email tracking software called MixMax that Defendant Gitman, upon information and belief, opened and then downloaded Dardashtian's personal investment document, which is Dardashtian's confidential personal financial statement.

91.     Mix Max indicates that at around 6:00 a.m. Defendant Gitman was opening certain company emails from Brooklyn, NY. When someone accesses an email that was not sent to him, MixMax shows the recipient's name and also the location of where that person is accessing the email communication. On this occasion, only minutes after Defendant Gitman opened a company document from Brooklyn, it shows that someone from Brooklyn opened a personal investment document that Dardashtian had sent privately to his accountant and then downloaded it. Dardashtian's accountant does not live in Brooklyn, and was not in Brooklyn that morning, so the only other person who had the access to download and open Dardashtian's personal financial statement was Defendant Gitman since he holds master admin logon to Dardashtian's NDAP email which Gitman has since converted.

92.     Gitman also changed passwords to Chargebee and Stripe which are the payment portals for the existing Plaintiff ChannelReply customers to pay their subscriptions. Those passwords were saved on Dardashtian's personal computer. When Dardashtian attempted to login he could not. When he tried to reset the passwords, the password resets were sent

to Michael@channelreply.com which is now under Gitman's control. Dardashtian cannot access

those accounts, and therefore cannot access any payment information for Plaintiff ChannelReply.

Stripe is an online payment portal for customers, Chargebee is a subscription management portal

for customers.

93.     Defendant Gitman had these capabilities because he is a master administrator

of accounts on Google Domain by virtue of him creating the CSV Google account, which

Dardashtian was also formerly an equal administrator prior to May 27, 2017.

94.     On May 27, 2017, Defendant Gitman abused and exceeded his authorization as to

his company access by removing Dardashtian as an administrator on Google Domain. By

removing Dardashtian as admin from the ndapllc.com level domain, which controls all of CSV's

subdomains, Defendant Gitman has removed Dardashtian's access to more than a dozen active

email addresses that Dardashtian uses to conduct business and get information related to his

businesses from vendors and customers.

95.     Such businesses that fall under NDAP- LLC and under the CSV umbrella, which

Dardashtian cannot now access: Car Part Kings, Cooper Square Ventures, Plumburs, NDAP,

LLC, Next Day Auto Parts. This results in Dardashtian not having access to any Google drive

accounts associated with the email accounts above, which contain all of Dardashtian's business

documents, accountings, receipts, transaction records, customer information, proprietary

information, etc.

96.     Gitman also removed Dardashtian's access to any Google analytics accounts

associated with the email addresses above. A list of locked out accounts are annexed to Plaintiff

Aff. Exhibit 64a.

97.     Defendant Gitman  also changed, shared company passwords, and revoked or

suspended Dardashtian's access to the following accounts:

a. 1Password Account – this is a password and login account management system. It holds all of Dardashtian's personal passwords and the companies shared passwords. Account was paid for out of CSV company funds.

b. Chargebee Account – This is CSV's subscription management account that holds the customer information and billing information for all of Plaintiff's ChannelReply customers.

c. Stripe Account – This is CSV's credit card billing service that allows CSV to receive credit card payments from Plaintiff ChannelReply customers.

d. PayPal Account – This is an online payment system which allows CSV to take online payments from Plaintiff ChannelReply customers.

e. Upwork Account – This is a freelancer marketplace that allows CSV to hire and pay freelancers to run the Plaintiff ChannelReply business.

f. Zendesk Accounts – This is a customer service management account which allows CSV to talk to its customers when they email CSV through support tickets.

g. JIRA Account – This is a project management software that allows CSV to manage projects effectively for CSV's business to successfully complete tasks.

h. Slack – This is a messaging management software for CSV's business that allows company employees and freelancers to openly communicate with one another and share documents.

i. Amazon Seller Central – This is CSV's Amazon seller account that allows CSV to sell products on Amazon and manage MWS accounts for Plaintiff ChannelReply sellers through its admin.

j. eBay Accounts – This allows CSV to sell products on ebay and manage its ebay subscription identifications for Plaintiff ChannelReply sellers through its admin.

k. Timedoctor – This allows CSV to manage the time management of employees and freelancers via an online portal to track time and take screenshots of employees and freelancer work.

l. Amazon Web Services (AWS) – This is where CSV manages all of its Amazon Web Servers which keep the businesses servers running effectively.

m. American Express Account – This is a NDAP corporate credit card account.

n. Magento Accounts – This is CSV's Magento Admin which allows it to see all backend data associated with our business.

o. Quickbooks Accounts. This provides access to the Plaintiff Companies' Quickbooks accounts.

p. Desk.com Account - This is a customer service management account which allows CSV to talk to CSV customers when they email through support tickets.

q. Godaddy Account – CSV has an account with godaddy account which owns and operates many domains, Dardashtian cannot login to Godaddy to even list all of the domains owned by CSV and/or Plaintiff ChannelReply.

r. Magemojo – This is CSV's Magento hosted server account.

s. Mailchimp – This is CSV's email subscription newsletter account.

t. Github – This is where all of CSV's software is checked in and stored for sharing.

u. Ringcentral – This is CSV's VOIP system that allows CSV to make and receive internet phone calls and faxes.

v. Join.me – This is a screenshare service that allows CSV to talk to customers and share screens with them.

[See Plaintiff's Aff. <u>Exhibits</u> "64a", "64b," 64c", "64d," "64e," "64f," "64g," "64h," "64i."]

98.     Defendant Gitman threatened the existence of Dardashtian's, CSV's

and Plaintiff ChannelReply's respective businesses and further prevented Dardashtian from

growing them, causing Dardashtian, CSV, and Plaintiff ChannelReply to lose business

relationships.

99.     However, Defendant Gitman's actions in intentionally damaging Dardashtian,

CSV and Plaintiff ChannelReply for his own personal gain and that of Channel Reply, Inc.,

caused Dardashtian to review Defendant Gitman's actions on a real-time basis.

100.     Defendant Gitman neglected to terminate Dardashtian's access to

TimeDoctor, which allowed Dardashtian to monitor Defendant Gitman's intentions and actions, even though Dardashtian had no access to the vast majority of CSV data, no access to company bank accounts, no access to CSV's and Plaintiff ChannelReply's computer codes, and virtually no access to CSV's employees.

101.     On May 27, 2017, Dardashtian received a notification that someone requested to change the password to Plaintiff ChannelReply's PayPal account.

102.     Proof of Defendant's Gitman's illegal conduct is that on Tuesday, May 30, 2017, at approximately 3:00 p.m., Defendant Gitman told Bagaiev, Plaintiff ChannelReply's lead developer, that he usurped Dardashtian's company email address which caused customers attempting to reach Dardashtian for different services, but were unable to do so. Plaintiff's Aff. Exhibit 70.

103.     On May 30, 2017, Defendant Gitman also acknowledged to Bagaiev that he moved the Plaintiff ChannelReply email and account information to a new G suite. Defendant Gitman changed employee passwords so they could access the G suite with all company emails and documents. However, Defendant Gitman locked Dardashtian out of all company documents, including customer lists, contracts, subscription information, and payment accounts etc.

104.     On June 1, 2017, Defendant Gitman acknowledged to Plaintiff ChannelReply's lead developer that he has been viewing Dardashtian's emails from Dardashtian's NDAP, LLC company email address.

105.     From May 27, 2017, when Defendant Gitman depleted CSV's bank account to the present, customers have still been under contract with CSV, believing they are paying CSV.

106.     However, upon information and belief Defendant Gitman has

misappropriated these payments by siphoning them to his own personal accounts or his new company Defendant Channel Reply, Inc's accounts without notifying CSV consumers.

107.    Evidence of such misappropriation and conversion is documented, demonstrating that Defendant Gitman locked Dardashtian out of CSV's Stripe and Chargebee accounts, the accounts which collect and deposit customer payments into the CSV bank account, and the CSV bank account was caused to be overdrawn by Defendant Gitman's actions.

108.    Dardashtian had not seen any customer payments from Stripe or Chargebee in the CSV payment portals since May 27, 2017.

109.    Dardashtian has also received email notice that a new PayPal account has been created for Plaintiff ChannelReply, to which Dardashtian does not have access.

110.    Assuming that Dardashtian's refusal to close the NDAP, LLC-XYZ Corp. transaction, and thereby not reward Falk's and Gitman's respective unlawful conduct in relation to said deal, is in large measure motivation for Defendant Gitman's above wrongful conduct is that on June 5, 2017, Defendant Gitman sent Dardashtian correspondence stating that he will not discuss Plaintiff ChannelReply until Dardashtian meets Defendant Gitman's egregious demands relating to the sale of NDAP.

111.    Defendants Falk, Bagaiev, Glukharev, Accel Commerce and Defendant Channel Reply, Inc., respectively and jointly, have conspired and participated with Gitman who has exceeded his authority as a holder of CSV's and Plaintiff ChannelReply's computer passcodes, software, and passwords to further benefit themselves in competing businesses.

23

**Defamatory Comments**

112.    Defendant Gitman has also defamed Dardashtian
by stating several intentional false statements exposing Dardashtian to public contempt, ridicule,
aversion or disgrace thereby causing Dardashtian damages.

113.    On June 1, 2017 and June 2, 2017, Defendant Gitman stated to Bagaiev that
Dardashtian "stole" money, which was used in part by Defendant Gitman to induce Bagaiev and
Glukharev to resign from the Plaintiff Companies and join Gitman in Gitman's unlawful
competing business, Channel Reply, Inc..

114.    On June 2, 2017, Defendant Gitman stated to Bagaiev that Dardashtian was
operating a "pyramid scheme" via written communication.

115.    On June 1, 2017, Defendant Gitman stated to Bagaiev that Dardashtian was a
"parasite" via written communication.

116.    It was readily apparent that any efforts by Dardashtian to seek Defendant
Gitman's cooperation to restore the Plaintiff Companies' accounts, comply with his fiduciary
obligations or the CSV Operating Agreement were futile.

117.    Defendant Gitman's actions, were designed to and did, place the Plaintiff
Companies in complete deadlock for Gitman's own personal gain.

118.    As a result of Defendant Gitman's actions, the Plaintiff Companies'
developers resigned from the Plaintiff Companies, forcing the Plaintiff Companies to lose
customers and to find secondary replacement contractors at a higher cost, contrary to the best
interests of the Plaintiff Companies.


**COMPANY DEADLOCK AND GITMAN'S REPLACEMENT AS MANAGER**

119.    It was also apparent that the Plaintiff Companies could no longer be managed and

operated jointly by Dardashtian and Gitman in conformity with the Plaintiff Companies'
Operating Agreements.

120.     Leading up to the commencement of the within action, Dardashtian sought to
obtain Gitman's cooperation to repair the business relationship and/or would either seek to
redeem Gitman's interests in accordance with the CSV Operating Agreement or seek emergent
relief from a Court of competent jurisdiction.

121.     On or about June 5, 2017, Gitman made a series of written demands, including,
but not limited to, (a) asking Dardashtian to use Plaintiff Companies' funds to pay broker Jeremy
Falk more than reasonable value of his services, and (b) to pay an employee of Plaintiff
Companies, Alice Fritz, a portion of the net sale proceeds from a future sale of NDAP's assets, in
excess of the reasonable value of her services.

122.     Defendant Gitman's actions were not in the best interests of the Plaintiff
Companies, and Dardashtian sought to the protect the Plaintiff Companies' assets.

123.     Every effort by Dardashtian to redeem and/or buy out Defendan Gitman's rights,
title and interest in the Plaintiff Companies was refused by Defendant Gitman, who advised
Dardashtian that there is "no deal to be made here," further rendering any attempt by Dardashtian
to redeem Gitman's interests or obtain Gitman's cooperation futile.

124.     Dardashtian had no choice but to seek emergent relief from the Court, as it was
only Gitman's unlawful and oppressive conduct that placed the Plaintiff Companies, CSV and
Plaintiff ChannelReply in jeopardy.

125.     Upon information and belief, the Plaintiff Companies' accounts continued to

become overdrawn as a result of Gitman's misappropriation of customer payments while he simultaneously ran his personal expenses including his BMW car payments through the Plaintiff Companies even after he emptied the CSV bank account of all funds.

126.    Accordingly, Plaintiffs commenced the within action by way of Order to Show Cause seeking temporary and preliminary injunctive relief and Verified Complaint on June 8, 2017 in an effort to restore the Plaintiff Companies operating and banking accounts and to remove Gitman as manager to mitigate against the drastic remedy of dissolution or liquidation of the Plaintiff Companies' assets, which were converted by Gitman.

127.    On June 8, 2017, the Court granted certain temporary injunctive relief to Plaintiffs, including, but not being limited to, the Court's requirement that Gitman immediately restore the Plaintiff Companies' operating and business accounts so that it could continue to operate.

128.    By Order of the Court dated June 19, 2017, the Court ultimately granted preliminary injunctive relief to Plaintiffs, in part, including, but not being limited to, the removal of Gitman as a co-manager of the Plaintiff Companies, for Gitman to fully restore the Plaintiff Companies' operating and banking accounts, and for Gitman to immediately dissolve Defendant Channel Reply, Inc.

129.    The Court's Order of June 19, 2017 provided a remedy that would enable the Plaintiff Companies to continue to do business and obviate the continuing existing threat of harm presented by Gitman and his oppressive misconduct.

130.    Since the Court's Order of June 19, 2017 through the present, CSV and Plaintiff

ChannelReply have been able to continue to do business under existing management by Dardashtian without frustration of purpose and for the benefit of Plaintiff Companies' large national and international customer base.

131.　　On or about August 14, 2018, Plaintiffs advised Gitman of Plaintiffs' intention to redeem Gitman's membership interests in the Plaintiff Companies.

132.　　On or about and between October 4, 2018 through December 21, 2018, Plaintiffs and Gitman attempted to negotiate satisfactory terms for a redemption of Gitman's interests in the Plaintiff Companies, including a) purchase price; and b) the time period for such closing and c) the terms of the redemption agreement.

133.　　On December 20, 2018, in furtherance of Plaintiffs' and Gitman's negotiations and Plaintiffs' intention to redeem Gitman's interests, Plaintiffs' sent a draft buyout agreement to Gitman for Gitman's review and approval ("Proposed Buyout Agreement").

134.　　On December 21, 2018, Gitman refused to enter into the Proposed Buyout Agreement.

135.　　Any attempt by Dardashtian, as co-manager of Plaintiff Companies before Defendant Gitman was removed as a co-manager, to effectuate a redemption of Gitman's membership interests in Plaintiff Companies was futile considering a) Gitman, at all times relevant, would not agree to sell his interests in the Plaintiff Companies; b) Gitman's oppressive conduct while co-manager displayed his unwillingness to act in an equitable and fair manner as to any potential redemption and c) despite almost a year of good faith negotiations by Plaintiff to reach an equitable redemption of Gitman's membership interests, Gitman refused.

136.　　Based on the reasons set forth herein, and the rationale in support of Court's

preliminary removal of Defendant Gitman as a manager of the Plaintiff Companies, Dardashtian

and Gitman cannot continue to jointly operate and manage the Plaintiff Companies, CSV and

Plaintiff ChannelReply in accordance with the CSV Operating Agreement as written.

In addition to Gitman's unlawful and detrimental actions to date, Gitman continues to make false

assertions that he unilaterally owns CSV and ChannelReply's proprietary code and other assets,

has, upon information and belief, made defamatory statements to the Plaintiff Companies'

developers about Dardashtian, and stated to them orally and/or in writing that he would never

work with Dardashtian again, and continues to state his intentions to compete with CSV and

convert its intellectual property for that purpose.

137.    In contrast to the Plaintiff Companies' dire situation that existed both prior to and

immediately following the Court's June 19, 2017 preliminary removal of Defendant Gitman as

co-manager , Plaintiff Companies have since thereafter, under Dardashtian's management,

remained stable, increased customer base, formed new partnerships and product features and a

return and retention of former employees.

28

## COUNT 1 [Dismissed]

### INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS[3]

138.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

139.    Plaintiffs are likely to succeed on its claims in this matter, including but not limited to, a) breach of contract; b) misappropriation; c) conversion; d) tortious interference; e) computer fraud pursuant to 18 USC 1030; f) theft of trade secrets pursuant to 18 USC 1832; and g) breach of fiduciary duty. Specifically, as Plaintiff CSV is likely to prevail on the merits of its claim under 18 USC 1030, it is entitled to injunctive relief pursuant to 18 USC 1030(g).

140.    In the alternative, even if there exist sufficiently serious questions as to the merits, the balance of hardships is decidedly tipped in the Plaintiffs' favor.

141.    Absent injunctive relief, Plaintiffs will suffer immediate and irreparable harm as a result of the respective and joint actions of Gitman, Falk, Dalva Ventures, Accel Commerce, Bagaiev, Glukharev and Defendant Channel Reply, Inc., including a) depletion of the assets of Plaintiff ChannelReply and CSV; b) conversion of proprietary and confidential information exclusively belonging to Plaintiff ChannelReply and CSV; c) significant damage to the business relations of Plaintiff ChannelReply and CSV; and d) misappropriation of CSV's and Plaintiff ChannelReply's trade secrets, confidential and proprietary information, such as customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes.

---

[3] By Order of the Court dated November 28, 2017, this Court granted Defendants' motion to dismiss Plaintiffs' First Cause of Action on the grounds that injuctive relief is not a separate cause of action, it is a remedy. The Court however found that injunctive relief is a possible remedy for Plaintiffs' remaining claims, which shall remain undisturbed.

142.   The status quo certainly weighs in favor of Plaintiffs as Plaintiffs merely seek that the Court restrain further unlawful misappropriation, depletion, usage, reproduction of Plaintiff ChannelReply and CSV's assets and trade secrets, prevent continued unfair competition through the conversion and use of those assets and the Plaintiff ChannelReply trade name, and to compel Gitman to replace all funds he wrongfully siphoned to competing businesses, Defendant Channel Reply, Inc., Dalva Ventures and Accel Commerce, and to maintain those funds as has been the normal course of conduct of the nearly 6 years' business operations of Plaintiff ChannelReply and CSV.

143.   Therefore, the Court must issue the following immediate Restraints:

   a.   Restraining and enjoining Defendants, Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from misappropriating and/or otherwise withdrawing funds belonging to CSV, NDAP and/or Plaintiff ChannelReply from Plaintiff's banking accounts and/or from any of Plaintiff's payment or subscription portals, including but not limited to Stripe, Chargebee, PayPal, Amazon, eBay and/or from any other location electronic or otherwise;

   b.   Directing Defendant Gitman to redeposit into the CSV Bank of America banking account all monies withdrawn by him and pay any overdraft fees incurred since May 27th, 2017, the date on which he withdrew the company's funds;

   c.   Restraining Defendant Gitman from auto-debiting or scheduling new charges to the NDAP American Express credit card or charges from the CSV or NDAP bank accounts for any reason but also including, his personal expenses unrelated to business, including but not limited to his RingCentral account, his Founders discount card, and his BMW car payments and accompanying car insurance;

   d.   Directing Defendant Gitman to remove his pre-existing and recurring monthly auto debits from the CSV or NDAP bank accounts and the NDAP American Express credit card including but not limited to his BMW car payments and accompanying car insurance, his RingCentral account and his Founders discount card;

   e.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and

representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff NDAP's customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs, computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

f.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff CSV and Plaintiff ChannelReply's "Company Confidential Information" as defined in the CSV Operating Agreement, customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs; computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

g.  Directing Defendant Gitman to immediately provide and restore Plaintiff Michael Dardashtian with full and complete access to all NDAP, CSV and ChannelReply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, email accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV and ChannelReply, including all twenty-two (22) accounts listed in **Exhibit 58** to the Affidavit of Michael Dardashtian;

h.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from utilizing, sharing, selling, transferring, backing up, destroying, altering, wasting, terminating, discontinuing, building upon or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers, Konstantyn Bagaiev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP;

i.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from soliciting, bribing, contracting with, offering employment to, offering an equity participation in any one of Defendants' business entities and/or otherwise in any manner interfering with NDAP, CSV and ChannelReply's business relationships with its customers, vendors, employees, partners, investment partners, prospective purchasers and/or subcontractors, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev;

31

j.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from inducing or in any other manner soliciting Plaintiffs, NDAP, CSV and ChannelReply's customers, vendors, employees and/or subcontractors, partners, prospective purchasers, investment partners, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev to terminate or alter their business relationship and/or contractual relationship with Plaintiffs, or any one of them;

k.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives from misappropriating Plaintiff Michael Dardashtian's identity, including but not limited to his business identity, his emails, his personal financial and identifier information, his tax documents, and/or falsely representing themselves in any manner as Michael Dardashtian or under Plaintiff's business name "Michael Dash;"

l.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from contacting or in any other manner communicating with any of Plaintiffs, NDAP, CSV, and/or Plaintiff ChannelReply's customers, vendors, employees, subcontractors, investors, prospective purchasers, including but not limited to Konstantyn Bagaiev and Alesky Glukharev for any reason whatsoever including but not limited to messaging customers and asking them to reconnect their service or API for any purpose including to switch to a new payment account;

m.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev from using the tradename "ChannelReply", "Channel Reply", "Channel Reply, Inc.", "ChannelReply,Inc." "Channel Reply, LLC", "ChannelReply, LLC" or any other analogous or confusingly similar name to that of Plaintiff's "ChannelReply" for any reason whatsoever;

n.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev, from using , in any way, shape or form, and for any purpose, any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply and

from replicating or trying to replicate or recreate an identical or functionally similar analog of any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply;

o.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc. from engaging in any action(s) whatsoever which are competitive to Plaintiffs NDAP, CSV and/or ChannelReply's businesses or interests;

p.  Restraining and enjoining Defendant Gitman from making any decisions concerning Plaintiffs NDAP, CSV and/or ChannelReply without prior written approval of Plaintiff Michael Dardashtian or order of the Court;

q.  Restraining and enjoining Defendants Gitman, Falk, and any business in which they are affiliated as an owner, member, officer, director, manager, or otherwise, from engaging in any communications with any proposed purchaser of NDAP and/or otherwise interfering with any potential sale of NDAP;

r.  Restraining and enjoining all of Defendant Channel Reply, Inc.'s accounts, physical, electronic or otherwise and Defendant David Gitman's Bank of America banking accounts and directing that a constructive trust be immediately imposed on such accounts;

s.  Directing Defendant Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and any of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to return to Plaintiffs all physical and/or electronic copies, backups, discs, drives, including but not limited to USB drives, or other storage devices containing copies or originals of any of NDAP, CSV or ChannelReply's Company Confidential Information as defined in the CSV Operating agreement, trade secrets, company data or other property now in Defendants' possession, custody or control;

t.  Directing Defendants Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to preserve and not alter, tamper with or destroy in any way, all physical or electronic data, documents, removable media, personal computers, work computers, hard drives associated with personal and work computers, email accounts and corresponding passwords, electronic storage devices including from or on the "cloud," remote servers, code repositories, writeable compact discs or CDs, writeable digital video discs or DVDs, USB drives, floppy discs, files, messages, emails or any other storage device containing information relating to their activities with NDAP, CSV and Plaintiff Channel Reply, Channel Reply, Inc., Dalva Ventures, Summit Rock

Holdings, Accel Commerce and any other related companies without alteration and make them available for review by Plaintiffs and their authorized agents pursuant to a Discovery request which Plaintiffs will submit to the Court;

WHEREAS, Plaintiffs request that the Court issue immediate preliminary and temporary restraints as follows:

a. Restraining and enjoining Defendants, Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from misappropriating and/or otherwise withdrawing funds belonging to CSV, NDAP and/or Plaintiff ChannelReply from Plaintiff's banking accounts and/or from any of Plaintiff's payment or subscription portals, including but not limited to Stripe, Chargebee, PayPal, Amazon, eBay and/or from any other location electronic or otherwise;

b. Directing Defendant Gitman to redeposit into the CSV Bank of America banking account all monies withdrawn by him and pay any overdraft fees incurred since May 27th, 2017, the date on which he withdrew the company's funds;

c. Restraining Defendant Gitman from auto-debiting or scheduling new charges to the NDAP American Express credit card or charges from the CSV or NDAP bank accounts for any reason but also including, his personal expenses unrelated to business, including but not limited to his RingCentral account, his Founders discount card, and his BMW car payments and accompanying car insurance;

d. Directing Defendant Gitman to remove his pre-existing and recurring monthly auto debits from the CSV or NDAP bank accounts and the NDAP American Express credit card including but not limited to his BMW car payments and accompanying car insurance, his RingCentral account and his Founders discount card;

e. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff NDAP's customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs, computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

f. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and

representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff CSV and Plaintiff Channel Reply's "Company Confidential Information" as defined in the CSV Operating Agreement, customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs; computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

g. Directing Defendant Gitman to immediately provide and restore Plaintiff Michael Dardashtian with full and complete access to all NDAP, CSV and ChannelReply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, email accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV and ChannelReply, including all twenty-two (22) accounts listed in **Exhibit 58** to the Affidavit of Michael Dardashtian;

h. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from utilizing, sharing, selling, transferring, backing up, destroying, altering, wasting, terminating, discontinuing, building upon or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers, Konstantyn Bagaiev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP;

i. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from soliciting, bribing, contracting with, offering employment to, offering an equity participation in any one of Defendants' business entities and/or otherwise in any manner interfering with NDAP, CSV and ChannelReply's business relationships with its customers, vendors, employees, partners, investment partners, prospective purchasers and/or subcontractors, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev;

j. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from inducing or in any other manner soliciting Plaintiffs, NDAP, CSV and ChannelReply's customers, vendors, employees and/or subcontractors, partners, prospective purchasers, investment partners, including but not limited to Konstantyn Bagaiev and Olesksii Glukharev to terminate or alter their business relationship and/or contractual relationship with Plaintiffs, or any one of them;

k.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives from misappropriating Plaintiff Michael Dardashtian's identity, including but not limited to his business identity, his emails, his personal financial and identifier information, his tax documents, and/or falsely representing themselves in any manner as Michael Dardashtian or under Plaintiff's business name "Michael Dash;"

l.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from contacting or in any other manner communicating with any of Plaintiffs, NDAP, CSV, and/or Plaintiff ChannelReply's customers, vendors, employees, subcontractors, investors, prospective purchasers, including but not limited to Konstantyn Bagaiev and Alesky Glukharev for any reason whatsoever including but not limited to messaging customers and asking them to reconnect their service or API for any purpose including to switch to a new payment account;

m.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev from using the tradename "ChannelReply", "Channel Reply", "Channel Reply, Inc.", "ChannelReply,Inc." "Channel Reply, LLC", "ChannelReply, LLC" or any other analogous or confusingly similar name to that of Plaintiff's "ChannelReply" for any reason whatsoever;

n.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev, from using , in any way, shape or form, and for any purpose, any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply and from replicating or trying to replicate or recreate an identical or functionally similar analog of any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply;

o.  Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc. from engaging in any

action(s) whatsoever which are competitive to Plaintiffs NDAP, CSV and/or ChannelReply's businesses or interests;

p. Restraining and enjoining Defendant Gitman from making any decisions concerning Plaintiffs NDAP, CSV and/or ChannelReply without prior written approval of Plaintiff Michael Dardashtian or order of the Court;

q. Restraining and enjoining Defendants Gitman, Falk, and any business in which they are affiliated as an owner, member, officer, director, manager, or otherwise, from engaging in any communications with any proposed purchaser of NDAP and/or otherwise interfering with any potential sale of NDAP;

r. Restraining and enjoining all of Defendant Channel Reply, Inc.'s accounts, physical, electronic or otherwise and Defendant David Gitman's Bank of America banking accounts and directing that a constructive trust be immediately imposed on such accounts;

s. Directing Defendant Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and any of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to return to Plaintiffs all physical and/or electronic copies, backups, discs, drives, including but not limited to USB drives, or other storage devices containing copies or originals of any of NDAP, CSV or ChannelReply's Company Confidential Information as defined in the CSV Operating agreement, trade secrets, company data or other property now in Defendants' possession, custody or control;

t. Directing Defendants Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to preserve and not alter, tamper with or destroy in any way, all physical or electronic data, documents, removable media, personal computers, work computers, hard drives associated with personal and work computers, email accounts and corresponding passwords, electronic storage devices including from or on the "cloud," remote servers, code repositories, writeable compact discs or CDs, writeable digital video discs or DVDs, USB drives, floppy discs, files, messages, emails or any other storage device containing information relating to their activities with NDAP, CSV and ChannelReply, Channel Reply, Inc., Dalva Ventures, Summit Rock Holdings, Accel Commerce and any other related companies without alteration and make them available for review by Plaintiffs and their authorized agents pursuant to a Discovery request which Plaintiffs will submit to the Court.

## COUNT 2

## BREACH OF FIDUCIARY DUTY AS TO GITMAN

144.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

145.    As an equal 50% co-owner and co-manager of CSV, NDAP and Plaintiff ChannelReply, Defendant Gitman owed and continues to owe fiduciary duties of care, loyalty and good faith to CSV, Plaintiff ChannelReply, Plaintiff, NDAP and Plaintiff Dardashtian. These fiduciary duties include obligations to discharge his obligations to Plaintiffs in good faith and honestly.

146.    Defendant Gitman knowingly breached his fiduciary duties to Plaintiffs.

147.    Defendant Gitman failed to act in a manner consistent with his obligations in accordance with the CSV Operating Agreement, his agency and trust to Plaintiffs, and failed to exercise the utmost good faith and loyalty in the performance of his duties to Plaintiffs.

148.    Among other things, a) Defendant Gitman depleted the CSV business operating account without the express permission of Plaintiff Dardashtian; b) misappropriated and converted CSV's and Plaintiff ChannelReply's respective business assets and proprietary and confidential information and trade secrets to form two competing companies, Accel Commerce and Defendant Channel Reply, Inc.; c) solicited CSR's and Plaintiff's ChannelReply's respective customers on behalf of competing businesses; d) "locked out" Plaintiff Dardashtian from multiple computer and electronic accounts necessary and fundamental to CSV's and Plaintiff ChannelReply's business operations, including financial accounts in which Dardashtian had always had access; e) accessed and disclosed Plaintiff Dardashtian's personal private financial and other information; f) conspired with Summit Rock and Falk, respectively, to increase their

brokerage fee as to the NADP, LLC-XYZ transaction, while at the same time forming a competing business with Falk; and g) misappropriated and otherwise used the exact tradename "Channel Reply" to unfairly compete against Plaintiff ChannelReply.

149.    Defendant Gitman has exploited CSV and Plaintiff ChannelReply's trade secrets and confidential information, and has damaged CSV's operating accounts, converted and altered CSV's computer passcodes and software thereby irreparably harming Dardashtian and CSV's and Plaintiff Channel Reply's respective relationship with its own customers.

150.    Defendant Gitman's actions caused the loss of customers of the Plaintiff Companies and excessive costs in replacing the Plaintiff Companies' developers that Defendant Gitman induced to resign contrary to the best interests of the Plaintiff Companies which caused further damages. .

151.    As a direct and proximate result of Defendant Gitman's breaches of his fiduciary duties, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Gitman for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which is in excess of $2,000,000.00.

## COUNT 3[4]

## BREACH OF FIDUCIARY DUTY AS TO FALK
## AND SUMMIT ROCK [Dismissed]

152.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

153.    Defendant Falk and Summit Rock, as a broker and consultant to CSV, owe a respective duty of loyalty to CSV and Dardashtian, which includes not forming a competing business against CSV and Plaintiff ChannelReply unbeknownst to Dardashtian, while attempting to leverage Dardashtian for a higher brokerage fee as to the NADP, LLC-XYZ, Corp. transaction.

154.    Defendant Falk further owes a duty to Dardashtian and to CSV to not conspire with Gitman to convert and misappropriate the assets of CSV and Plaintiff ChannelReply to benefit Accel Commerce.

WHEREFORE, Plaintiff demands judgment against Defendants Falk Summit Rock and Gitman for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which is in excess of $2,000,000.00.

---

[4] All causes of action asserted as against Falk and Summit Rock were dismissed with prejudice by way of stipulation of the parties and entered by the Court on January 10, 2018.

## COUNT 4

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES AS TO ALL DEFENDANTS [Dismissed as to Falk and Summit Rock]

155. Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

156. Defendants Falk, Accel Commerce, Dalva Ventures, Bagaiev, Glukharev, and Channel Reply, Inc. have actual knowledge of Defendant Gitman's duties and obligations because they are each aware that Defendant Gitman serves as an equal 50% co-owner and co-manager of CSV, NDAP and Plaintiff ChannelReply.

157. Despite Falk, Accel Commerce, Dalva Ventures, Bagaiev, Glukharev, and Channel Reply, Inc.'s respective knowledge of Defendant Gitman's fiduciary duties and obligations to Plaintiffs, they, respectively and jointly, have knowingly induced, participated in, and/or assisted Defendant Gitman to breach his fiduciary duties of care, loyalty and good faith to Dardashtian, CSV and Plaintiff ChannelReply by, among other things, a) the depletion of the CSV business operating account without the express permission of Plaintiff Dardashtian; b) misappropriating and converting CSV's and ChannelReply's respective business assets and proprietary and confidential information and trade secrets to form and for the benefit of themselves including the two competing companies, Accel Commerce and Channel Reply, Inc.; c) soliciting CSV's and Plaintiff's Channel Reply's respective customers on behalf of competing businesses; d) abusing and exceeding authority and "locking out" Plaintiff Dardashtian from multiple computer and electronic accounts necessary and fundamental to CSV's and Plaintiff's ChannelReply's business operations, including financial accounts; e) improperly accessing and disclosing Plaintiff Dardashtian's personal private financial and other information; f) using an

41

exact same trade name to unfairly compete against Plaintiff Channel Reply; and g) improperly soliciting Plaintiffs' developers to breach their duties to Plaintiffs.

158.    Defendants Falk, Accel Commerce, Bagaiev, Glukharev, and Channel Reply, Inc's respective and joint actions in aiding and abetting these breaches of fiduciary duty were and are intentional, illegal and have been engaged in for the specific purpose of aiding and abetting Defendant Gitman to breach his fiduciary duties to Plaintiffs.

159.    As a proximate result of Falk, Accel Commerce, Bagaiev, Glukharev, and Defendant Channel Reply, Inc respective and joint aiding and abetting of breach of fiduciary duties, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for all compensatory, punitive, attorney's fees and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 5

### VIOLATION OF 18 USC 1832 AND 18 USC 1836 AGAINST GITMAN, FALK, BAGAIEV, GLUHAREV, ACCEL COMMERCE, DALVA VENTURES, AND DEFENDANT CHANNEL REPLY, INC. [Dismissed as to Falk and Summit Rock]

160.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

161.    Plaintiffs, CSV and Plaintiff ChannelReply are the owners of the trade secrets and confidential and proprietary information relating to Plaintiff ChannelReply's computer software used in the industry of e-commerce. Such trade secrets include customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes and other protectable intellectual property and proprietary information. These trade secrets include but are not limited to CSV's and Plaintiff Channel Reply's electronic services that are used in or intended for use in interstate and foreign commerce. CSV and Plaintiff ChannelReply sell the software solutions throughout the United States and worldwide.

162.    Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaiev, Olesksii Glukharev, respectively and jointly, have stolen, fraudulently used, possessed, and/or misappropriated CSV's and Plaintiff ChannelReply's trade secrets and confidential information by knowingly acquiring such trade secrets, intellectual and proprietary property and confidential information to form and maintain a competing business operation to CSV and Plaintiff ChannelReply.

163.    Defendant Gitman, Falk, Dalva Ventures, Accel Commerce, Defendant Channel Reply, Inc., Konstantyn Bagaiev, Olesksii Glukharev have conspired to fraudulently use, possess,  and/or misappropriate CSV's and Plaintiff ChannelReply's trade secrets, intellectual

43

and proprietary property and confidential information by knowingly acquiring such trade secrets, intellectual and proprietary property and confidential information to form and maintain a competing business operation to CSV and Plaintiff ChannelReply.

164.    18 USC 1836 provides a plaintiff with civil remedies against any individuals who have misappropriated a trade secret, such damages including damages for the actual loss of the trade secret, damages for any unjust enrichment caused by the misappropriation of the trade secret, and if willfully and maliciously misappropriated, the Court shall award two times the amount of the damages awarded to a plaintiff.

165.    Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaiev, Olesksii Gluharev have acted maliciously and willfully in misappropriating CSV and Plaintiff ChannelReply trade secret information that CSV and Plaintiff ChannelReply produce, service, and use in interstate and foreign commerce.

WHEREFORE, Plaintiff demands judgment against Defendant Gitman for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00, including an award of two times the amount of damages awarded to the plaintiff at trial.

## COUNT 6

### INJUNCTIVE RELIEF PURSUANT TO 18 USC 1836(b)(3) AGAINST GITMAN, FALK, BAGAIEV, GLUHAREV, ACCEL COMMERCE AND DEFENDANT CHANNEL REPLY, INC. [Dismissed as to Falk and Summit Rock]

166. Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

167. 18 USC 1836(b)(3) provides an owner of a trade secret that has been misappropriated injunctive relief to prevent any actual or threatened misappropriation on terms the Court finds reasonable and may require the defendants to take affirmative action to protect the trade secret.

168. Plaintiffs CSV and ChannelReply are the owner of the trade secrets and otherwise confidential and proprietary information relating to its and Plaintiff ChannelReply computer software and codes used in the industry of e-commerce, such trade secrets include customer lists and addresses, vendor lists and addresses, computer software programs; computer passcodes, codes and other intellectual and proprietary property. These trade secrets are CSV's and Plaintiff ChannelReply's electronic services that are used in or intended for use in interstate or foreign commerce. CSV and Plaintiff ChannelReply sell its software solutions throughout the United States and worldwide.

169. Defendants Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaiev, Oleksii Glukharev, respectively and jointly, have stolen, fraudulently used, possessed, and/or misappropriated CSV's and Plaintiff ChannelReply's trade secrets and intellectual and proprietary property, tradename and confidential information by knowingly acquiring such trade secrets, intellectual and proprietary property, tradename and

45

confidential information to form and maintain a competing business operation to CSV and Plaintiff ChannelReply.

170.     Defendant Gitman, Dalva Ventures, Falk, Accel Commerce, Defendant Channel Reply, Inc., Konstantyn Bagaiev, Olesksii Glukharev have conspired to fraudulently use, possess, and/or misappropriate CSV's and Plaintiff ChannelReply's trade secrets, intellectual and proprietary property and confidential information by knowingly acquiring such trade secrets, intellectual and proprietary property and confidential information to form and maintain a competing business operation to CSV and Plaintiff ChannelReply.

WHEREFORE, the Court must enter injunctive relief as follows:

   a.   Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from misappropriating and/or otherwise withdrawing funds belonging to CSV, NDAP and/or Plaintiff Channel Reply from Plaintiff's banking accounts and/or from any of Plaintiff's payment or subscription portals, including but not limited to Stripe, Chargebee, PayPal, Amazon, eBay and/or from any other location electronic or otherwise;

   b.   Directing Defendant Gitman to redeposit into the CSV Bank of America banking account all monies withdrawn by him and pay any overdraft fees incurred since May 27th, 2017, the date on which he withdrew the company's funds;

   c.   Restraining Defendant Gitman from auto-debiting or scheduling new charges to the NDAP American Express credit card or charges from the CSV or NDAP bank accounts for any reason but also including, his personal expenses unrelated to business, including but not limited to his RingCentral account, his Founders discount card, and his BMW car payments and accompanying car insurance;

   d.   Directing Defendant Gitman to remove his pre-existing and recurring monthly auto debits from the CSV or NDAP bank accounts and the NDAP American Express credit card including but not limited to his BMW car payments and accompanying car insurance, his RingCentral account and his Founders discount card;

e. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff NDAP's customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs, computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

f. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from accessing, disclosing, reproducing, electronically sharing, electronically backing up, transferring and/or using in any manner Plaintiff CSV and Plaintiff Channel Reply's "Company Confidential Information" as defined in the CSV Operating Agreement, customer lists and addresses, email addresses and phone numbers, vendor lists and addresses, email addresses and phone numbers, computer software programs; computer codes, passcodes, passwords, intellectual property, confidential information and trade secrets for any reason;

g. Directing Defendant Gitman to immediately provide and restore Plaintiff Michael Dardashtian with full and complete access to all NDAP, CSV and Plaintiff Channel Reply electronic accounts, including but not limited to, all password access to all codes, accounts on Google Domain, bank accounts, email accounts, payment portal accounts, and/or any other password-protected account and information relating to NDAP, CSV and Plaintiff Channel Reply, including all twenty-two (22) accounts listed in **Exhibit 58** to the Affidavit of Michael Dardashtian;

h. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from utilizing, sharing, selling, transferring, backing up, destroying, altering, wasting, terminating, discontinuing, building upon or otherwise affecting in any manner the proprietary and/or confidential information and code that was developed by CSV's developers, Konstantyn Bagaiev and Oleksii Glukharev, for the sole benefit of Plaintiffs CSV, ChannelReply and/or NDAP;

i. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from soliciting, bribing, contracting with, offering employment to, offering an equity participation in any one of Defendants' business entities and/or otherwise in any manner interfering with NDAP, CSV and Plaintiff

Channel Reply's business relationships with its customers, vendors, employees, partners, investment partners, prospective purchasers and/or subcontractors, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev;

j. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from inducing or in any other manner soliciting Plaintiffs, NDAP, CSV and Plaintiff Channel Reply's customers, vendors, employees and/or subcontractors, partners, prospective purchasers, investment partners, including but not limited to Konstantyn Bagaiev and Olesksii Glukharev to terminate or alter their business relationship and/or contractual relationship with Plaintiffs, or any one of them;

k. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives from misappropriating Plaintiff Michael Dardashtian's identity, including but not limited to his business identity, his emails, his personal financial and identifier information, his tax documents, and/or falsely representing themselves in any manner as Michael Dardashtian or under Plaintiff's business name "Michael Dash;"

l. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, from contacting or in any other manner communicating with any of Plaintiffs, NDAP, CSV, and/or Plaintiff Channel Reply's customers, vendors, employees, subcontractors, investors, prospective purchasers, including but not limited to Konstantyn Bagaiev and Alesky Glukharev for any reason whatsoever including but not limited to messaging customers and asking them to reconnect their service or API for any purpose including to switch to a new payment account;

m. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev from using the tradename "ChannelReply", "Channel Reply", "Channel Reply, Inc.", "ChannelReply,Inc." "Channel Reply, LLC", "ChannelReply, LLC" or any other analogous or confusingly similar name to that of Plaintiff's "ChannelReply" for any reason whatsoever;

n. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings and/or Channel Reply, Inc., their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and

representatives, including but not limited to Konstantyn Bagaiev and Oleksii Glukharev, from using , in any way, shape or form, and for any purpose, any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply and from replicating or trying to replicate or recreate an identical or functionally similar analog of any of NDAP, CSV and Plaintiff ChannelReply's confidential, proprietary and trade secret information, including but not limited to Plaintiff's codes, software and processes, to compete against Plaintiffs, NDAP, CSV and/or ChannelReply;

o. Restraining and enjoining Defendants Gitman, Falk, Accel, Dalva Ventures, Summit Rock Holdings, and/or Channel Reply, Inc. from engaging in any action(s) whatsoever which are competitive to Plaintiffs NDAP, CSV and/or ChannelReply's businesses or interests;

p. Restraining and enjoining Defendant Gitman from making any decisions concerning Plaintiffs NDAP, CSV and/or ChannelReply without prior written approval of Plaintiff Michael Dardashtian or order of the Court;

q. Restraining and enjoining Defendants Gitman, Falk, and any business in which they are affiliated as an owner, member, officer, director, manager, or otherwise, from engaging in any communications with any proposed purchaser of NDAP and/or otherwise interfering with any potential sale of NDAP;

r. Restraining and enjoining all of Defendant Channel Reply, Inc.'s accounts, physical, electronic or otherwise and Defendant David Gitman's Bank of America banking accounts and directing that a constructive trust be immediately imposed on such accounts;

s. Directing Defendant Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and any of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to return to Plaintiffs all physical and/or electronic copies, backups, discs, drives, including but not limited to USB drives, or other storage devices containing copies or originals of any of NDAP, CSV or ChannelReply's Company Confidential Information as defined in the CSV Operating agreement, trade secrets, company data or other property now in Defendants' possession, custody or control;

t. Directing Defendants Gitman, Falk, Dalva Ventures, Summit Rock Holdings, Channel Reply, Inc. and of their owners, members, officers, directors, managers, employees, subcontractors, agents, transferees and representatives to preserve and not alter, tamper with or destroy in any way, all physical or electronic data, documents, removable media, personal computers, work computers, hard drives associated with personal and work computers, email accounts and corresponding

49

passwords, electronic storage devices including from or on the "cloud," remote servers, code repositories, writeable compact discs or CDs, writeable digital video discs or DVDs, USB drives, floppy discs, files, messages, emails or any other storage device containing information relating to their activities with NDAP, CSV, Plaintiff Channel Reply, Defendant Channel Reply, Inc., Dalva Ventures, Summit Rock Holdings, Accel Commerce and any other related companies without alteration and make them available for review by Plaintiffs and their authorized agents pursuant to a Discovery request which Plaintiffs will submit to the Court.

## COUNT 7

## BREACH OF CONTRACT AGAINST GITMAN

171.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

172.    Section 12.2 of the CSV Operating Agreement provides that Plaintiff Dardashtian and Defendant Gitman shall not publish, communicate, divulge, disclose, disseminate or otherwise reveal to any person or entity, or use for any purpose whatsoever any Confidential Information belonging to CSV. Confidential Information is defined as any of CSV's "processes, data, designs, compilations of information, financial data, salary information, policies and procedures, sales know-how or any other information that may be considered to be proprietary or a trade secret of the Company, whether or not such information is considered a trade secret within the meaning of applicable law."

173.    Defendant Gitman is using CSV's Confidential Information, as that term is defined in the CSV Operating Agreement, to operate Accel Commerce and Defendant Channel Reply, Inc., to directly compete against Dardashtian, CSV and Plaintiff ChannelReply in the e-commerce industry, both within the United States and worldwide.

174.    Further, the CSV Operating Agreement provides that Dardashtian will have equal access to all of CSV's and Channel Reply's respective accounts and assets.

175.    Gitman, unilaterally, has eliminated Dardashtian's access to the CSV and Channel Reply accounts and assets.

176.    Therefore, Defendant Gitman has breached his contractual obligations to Dardashtian, CSV and Plaintiff ChannelReply, respectively. The CSV Operating Agreement sets forth numerous acts which are prohibited by its members, including those set forth in Article

51

11.5, and Defendant Gitman has violated many provisions of the CSV Operating Agreement as are more fully set forth herein.

177.    As a result, Dardashtian and CSV have been damaged in an amount to be proven at trial but which is in excess of $2,000,000.00.

178.    The CSV Operating Agreement in Section 17.10 provides that if a non-breaching party prevails in any action to enforce its rights under same, such party shall be awarded reasonable attorney's fees incurred to enforce such rights.  Therefore, Plaintiffs, including Plaintiff Dardashtian are also entitled to an award of reasonable attorney's fees against Defendant Gitman in relation to this action.

179. After the commencement of the within action, temporary and preliminary injunctive relief was granted by the Court as against Defendants, including Defendant Gitman, including in substance, the requirements that Defendant Gitman restore Plaintiff Dardashtian's access to all of the Plaintiff Companies' electronic accounts and to return all funds unlawfully withdrawn by Defendant Gitman from the CSV Bank of America account. After the clear directives of the Court were issued, Defendant Gitman failed to restore Dardashtian's access to the Plaintiff Companies' electronic accounts and funds in a timely manner as otherwise required, further requiring Plaintiffs to engage in unnecessary motion practice and Court appearances to compel Defendant Gitman's compliance at additional cost and expense to Plaintiffs.

180. Defendant Gitman's non-compliance with the orders of the Court and delays in timely restoring the Plaintiff Companies, so that they could fully operate in a timely manner, should further justify and award of attorneys' fees and costs.

WHEREFORE, Dardashtian, Plaintiff ChannelReply and CSV demand judgment against Defendant Gitman for all compensatory, reasonable attorney's fees, punitive and consequential

damages as a result of such unlawful conduct for an amount to be determined at trial but which is in excess of $2,000,000.00.

## COUNT 8

### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS [Dismissed as to Falk and Summit Rock]

181.  Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

182.  Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaiev and Olesksii Glukharev have received an unjust benefit as a result of their respective and/or joint misappropriation of assets, confidential information, intellectual and proprietary property and/or trade secrets belonging to CSV, Plaintiff ChannelReply and Dardashtian, respectively.

183.  Defendant Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaiev and Olesksii Glukharev, respectively and jointly, have been enriched at the expense of CSV, Plaintiff ChannelReply and Dardashtian as a result of such wrongful conduct.

184.  As a result, Dardashtian, Plaintiff Channel Reply and CSV have been damaged in an amount to be proven at trial but which is in excess of $2,000,000.00.

WHEREFORE, Dardashtian, Plaintiff ChannelReply and CSV demand judgment against Defendants Gitman, Falk, Accel Commerce, Dalva Ventures, Defendant Channel Reply, Inc., Konstantyn Bagaiev and Olesksii Glukharev, jointly and severally, for all compensatory, attorney's fees,  and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 9

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST GITMAN

185.     Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

186.     Every contract contains and implied covenant of good faith and fair dealing that prevents either party to act in a manner that would deprive the other party the right to receive the benefits under their agreement.

187.     Defendant Gitman's unilateral draining and siphoning the financial accounts of CSV, and his formation and operation of competing businesses to CSV and Plaintiff ChannelReply in the e-commerce industry is a violation of the covenant of good faith and fair dealing implicitly found in the CSV Operating Agreement. Defendant Gitman's actions as set forth herein substantially violate his duty of good faith and fair dealing to which he is obligated to Plaintiff Dardashtian and CSV.

188.     As a result, Dardashtian, Plaintiff Channel Reply and CSV have been damaged in an amount to be proven at trial but which is in excess of $2,000,000.00.

WHEREFORE, Dardashtian, Plaintiff Channel Reply and CSV demand judgment against Defendants Gitman, Falk, Accel Commerce, Defendant Channel Reply, Inc., Konstantyn Bagaiev and Olesksii Glukharev, jointly and severally, for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 10

## CONVERSION

189.     Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

190.     On or about October 13, 2011, Plaintiff Dardashtian and Defendant Gitman opened an operating account at Bank of America for CSV and its subsidiary companies including Plaintiff ChannelReply ("BoA Account"). Each Dardashtian and Gitman were dual signatories on such BoA Account.

191.     Should the BoA Account not have funds in the bank to cover the operating expenses of CSV and its subsidiary companies, CSV and its subsidiary companies will jeopardize the operation of its business and the potential loss of its customers.

192.     On May 26, 2017, the BoA Account had an account balance of $74,715.21.

193.     With the intent to interfere with the BoA Account and Plaintiff Dardashtian's equal rights thereto, Defendant Gitman did intentionally withdraw and siphon the funds from the BoA account to the exclusion of Plaintiff Dardashtian, CSV and Plaintiff ChannelReply and without Dardashtian's authorization or consent.

194.     On May 27, 2017, Defendant Gitman emailed Plaintiff Dardashtian acknowledging that Defendant Gitman took all of the money out of the BoA account. Defendant Gitman refused to advise Plaintiff Dardashtian where the funds were located and further refused to replenish the BoA Account so that CSV and its subsidiaries could pay its operating expenses for CSV and Plaintiff ChannelReply. Upon information and belief, the siphoned funds have been placed in an account in Defendant Gitman's name.

195.     Since May 26, 2017, the BoA Account has been operating at a negative balance

55

and is not financially capable of meeting its operating expenses.

196.    Defendant Gitman's actions were intentional and designed solely to harm CSV and its subsidiary companies to gain a competitive advantage in Defendant Gitman's competing businesses.

197.    Additionally, Defendant Gitman has intentionally misappropriated these funds, to interfere with CSV and Plaintiff ChannelReply's ability to operate ChannelReply's confidential, proprietary, and trade secret software to inhibit Plaintiff ChannelReply's ability to properly service its customers in the industry of e-commerce so that Defendant Gitman's competing companies can have an advantage;

**WHEREFORE**, Plaintiff demands judgment against Defendant Gitman for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 11

### CIVL CONSPIRACY AS TO FALK, ACCEL COMMERCE, BAGAIEV, GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC. AS TO GITMAN'S CONVERSION [Dismissed as to Falk and Summit Rock]

198.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

199.    As set forth in Count 10, Defendant Gitman has committed the unlawful act of conversion as to the assets of CSV and Plaintiff ChannelReply.

200.    Defendant Gitman conspired and unlawfully agreed to commit such conversion in conspiring with Defendants Falk, Accel Commerce, Dalva Ventures, Bagaiev, Glukharev, and Defendant Channel Reply, Inc.

201.    Defendants Falk, Accel Commerce, Dalva Ventures, Bagaiev, Glukharev, and Defendant Channel Reply, Inc. each took overt acts in furtherance of their respective and joint agreement with Defendant Gitman to convert and misappropriate CSV's and Plaintiff ChannelReply's assets as set forth in Count 10.

202.    As a proximate result of Defendants Falk, Dalva Ventures, Accel Commerce, Bagaiev, Glukharev, and Channel Reply, Inc respective and joint unlawful conduct, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants Falk, Accel Commerce, Bagaiev, Glukharev, Dalva Ventures, and Defendant Channel Reply, Inc., jointly and severally, for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 12

### FALSE DESIGNATION/ UNFAIR COMPETITION
### 15 U.S.C 1125 AGAINST GITMAN AND
### DEFENDANT CHANNEL REPLY, INC.

203.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at
length.

204.    In January 2014, CSV created a proprietary software solution called
"ChannelReply" that integrates Ebay and Amazon customer service messages and order
information into a customer relationship messaging tool for consumer-friendly messaging.

205.    The "ChannelReply" trade name and title has acquired distinctiveness as it is
sufficiently known that consumers associate it with CSV and ChannelReply's proprietary
messaging software.

206.    Defendant Gitman's use of the term "Channel Reply" to compete with Plaintiff
Channel Reply through Channel Reply Inc., is clearly intended by Defendant Gitman to trade off
CSV's "ChannelReply" trade name, and is likely to cause and indeed will cause confusion,
mistake or deceit as to the affiliation, connection or association of Defendant Channel Reply
Inc., owned by Defendant Gitman, with Plaintiff ChannelReply, co-owned by Defendant Gitman
and Plaintiff Dardashtian.

207.    Defendant Channel Reply Inc., is starkly similar to Plaintiff ChannelReply, in that
Defendant Gitman is seeking to unfairly compete with CSV and Plaintiff ChannelReply with the
misappropriation and unauthorized use of Plaintiff's ChannelReply's goodwill, confidential and
proprietary software to offer the same service(s) to consumers in foreign and interstate
commerce in which Plaintiff ChannelReply maintained a competitive advantage.

208.    Defendant Channel Reply Inc.'s use of the ChannelReply trade name constitutes the unauthorized use in commerce of Plaintiff's Channel Reply name and will deceive consumers into believing that Defendant Channel Reply Inc., is the same business as Plaintiff ChannelReply.

209.    As the co-owner of Plaintiff ChannelReply and the owner of Channel Reply Inc., Defendant Gitman maintains full knowledge of the Plaintiff ChannelReply's trade name and confidential and proprietary software and service. Accordingly, Defendant Gitman's acts to misappropriate the Plaintiff ChannelReply tradename and good will are willful.

210.    By reason of the acts of Defendant Gitman and Defendant Channel Reply Inc., Plaintiffs have suffered, are suffering and unless Defendant Gitman and Defendant Channel Reply Inc., are restrained, will continue to suffer irreparable injury for which there is no adequate remedy at law.

211.    Plaintiffs are entitled to damages for Defendant Gitman's and Defendant Channel Reply Inc.'s infringement and malicious intentional confusion from its infringing conduct, both in amounts to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants Gitman and Defendant Channel Reply, Inc., jointly and severally, for all compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 13

### COMPUTER FRAUD
### 18 USC §1030 [Dismissed]

212.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

213.    CSV's computers and servers are password protected which store CSV's and Plaintiff ChannelReply's intellectual, proprietary and confidential information ("Company Computers").

214.    The Company Computers further store bank passwords for online banking access containing financial records of its operating BoA Account which is utilized to pay CSV's and its subsidiary companies operating expenses, including those expenses of Plaintiff ChannelReply.

215.    The Company Computers are used in interstate and foreign commerce.

216.    The Company Computers are all "protected computers" under the 18 USC 1030, the Computer Fraud and Abuse Act ("CFAA").

217.    As co-owners and co-managers of CSV and its subsidiary companies, Plaintiff Dardashtian and Defendant Gitman jointly and equally shared and had access to the Company Computers' passwords, logon and login information, administrator information and therefore each fully maintained equal access to the Company Computers although Defendant Gitman had admin access and Plaintiff Dardashtian did not.

218.    Beginning on or about May 27, 2017, Defendant Gitman knowingly and fraudulently and without Plaintiff Dardashtian's knowledge or consent, changed CSV's banking passwords and other passwords contained in the Company Computers, including CSV and Plaintiff ChannelReply's Paypal password which is utilized to communicate with CSV and Plaintiff ChannelReply's local and interstate customers, as well as several other software

60

programs damaging them and blocking and otherwise terminating access to Dardashtian.
Defendant Gitman then altered and transferred Company data contained in the Company
Computers to further his scheme of establishing his competing companies and to effectively
lockout Dardashtian from CSV and Plaintiff ChannelReply business.

219.    In doing so, and while acting in his capacity as co-owner and co-manager of CSV,
NDAP and Plaintiff ChannelReply, Defendant Gitman knowingly and intentionally exceeded his
authorized access to the Company Computers to prevent and otherwise terminate Plaintiff
Dardashtian from having computer access and further disabled Plaintiff Dardashtian's ability to
access the Company Computers, all of which actions affect interstate and/or foreign commerce.

220.    Plaintiffs have suffered a loss as a direct result of Gitman's unlawful actions as
Plaintiffs now must incur costs of responding to the offense, conducting damage assessments,
and restoring the data, program, system, or information to its condition prior to the offense, and
have lost revenue, incurred costs, including attorney's fees, or other consequential damages
incurred because of the interruption of service and Gitman's interference with the Company
Computers.  The aggregate value of such loss is in excess of $5,000.00 within the past one year.

**WHEREFORE**, Plaintiff demands judgment against Defendant Gitman for all
compensatory, attorney's fees, punitive and consequential damages as a result of such unlawful
conduct for an amount to be determined at trial but which amount is in excess of $5,000.00.

## COUNT 14

## CIVL CONSPIRACY AS TO FALK, ACCEL COMMERCE, BAGAIEV, GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC. AS TO GITMAN'S VIOLATION OF 18 USC 1030 [Dismissed as to Falk and Summit Rock]

221.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

222.    As set forth in Count 13, Defendant Gitman has committed the unlawful act of Computer Fraud as to the CSV protected computers, software and passcodes.

223.    Defendant Gitman conspired and unlawfully agreed to commit such conversion with Defendants Falk, Accel Commerce, Dalva Ventures, Bagaiev, Glukharev, and Defendant Channel Reply, Inc.

224.    Defendants Falk, Accel Commerce, Dalva Ventures, Bagaiev, Glukharev, and Defendant Channel Reply, Inc. each took overt acts in furtherance of their respective and joint agreement with Defendant Gitman to convert and misappropriate CSV's and Plaintiff Channel Reply's assets as set forth in Count 13 through Defendant Gitman's commission of Computer Fraud.

225.    As a proximate result of Defendants Falk, Dalva Ventures, Accel Commerce, Bagaiev, Glukharev, and Channel Reply, Inc. respective and joint unlawful conduct, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants Falk, Accel Commerce, Bagaiev, Glukharev, Dalva Ventures, and Defendant Channel Reply, Inc., jointly and severally, for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $5,000.00.

## COUNT 15

**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AGAINST GITMAN, FALK, ACCEL COMMERCE, BAGAIEV, GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC. [Dismissed as to Falk and Summit Rock]**

226.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

227.    Defendants Gitman, Falk, Accel Commerce, Bagaiev, Glukharev, Dalva Ventures and Defendant Channel Reply, Inc. are aware that CSV and Plaintiff ChannelReply have over two hundred customers and additional proposed customers and business relations across the United States and worldwide.

228.    The above Defendants have wrongfully interfered with CSV and Plaintiff ChannelReply's proposed business relations. For example, the above Defendants have either participated, assisted, and/or committed: a) the depletion of the CSV business operating account without the express permission of Plaintiff Dardashtian; b) misappropriation and conversion of CSV's and Plaintiff ChannelReply's respective business assets and proprietary and confidential information and trade secrets to form competing companies, Defendant Channel Reply, Inc. Accel Commerce and Dalva Ventures; c) soliciting CSV's and Plaintiff ChannelReply's respective customers on behalf of competing businesses; d) "locking out" Plaintiff Dardashtian and terminating his access from multiple computer and electronic accounts necessary and fundamental to CSV's and Plaintiff ChannelReply's business operations, including financial accounts; e) accessing and disclosing Plaintiff Dardashtian's personal private financial information; f) using and infringing upon the exact trade name "ChannelReply" to unfairly compete against Plaintiff ChannelReply through Defendant Channel Reply, Inc.; g) breaching their respective fiduciary duties to CSV and Plaintiff ChannelReply; and h) illegally soliciting

63

and otherwise interfering with Plaintiff CSV and Plaintiff ChannelReply's contractual relations with its developers Bagaiev and Glukharev by providing them with false information about Plaintiff Dardashtian and offering them financial incentives to breach their agreement and duty of loyalty to Plaintiffs.

229.     Plaintiff CSV and Plaintiff Channel Reply would have entered into business relations with several customers but for the above Defendants' interference.

230.     The above Defendants acted with wrongful means.

231.     Plaintiff CSV and Plaintiff ChannelReply have been injured as a result.

**WHEREFORE,** Plaintiff demands judgment against Gitman, Falk, Accel Commerce, Bagaiev, Glukharev, Dalva Ventures and Defendant Channel Reply, Inc., jointly and severally, all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 16

## DEFAMATION PER SE

232.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

233.    Defendant Gitman has also defamed Dardashtian by stating several intentional false statements exposing Dardashtian to public contempt, ridicule, aversion or disgrace thereby causing Dardashtian damages.

234.    On June 1, 2017 and June 2, 2017 Defendant Gitman stated to Bagaiev that Dardashtian "stole" money.

235.    On June 2, 2017 Defendant Gitman stated to Bagaiev that Dardashtian was operating a "pyramid scheme" via written communication.

236.    On June 1, 2017, Defendant Gitman stated to Bagaiev that Dardashtian was a "parasite" via written communication.

237.    As a result, Dardashtian has incurred damages in the amount to be proven at trial but which are in excess of $100,000.00.

238.    These statements accuse Dardashtian of a serious crime, and as such, these statements which were made to Plaintiff ChannelReply's lead developer, Bagaiev, unquestionably injure Dardashtian's business and professional reputation.

WHEREFORE, Plaintiff Dardashtian demands judgment against Gitman, for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $100,000.00.

## COUNT 17

### IDENTITY THEFT: NY CLS BUS 380-S AGAINST GITMAN [Dismissed]

239.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

240.    Defendant Gitman has converted, misappropriated and/or stolen Dardashtian's business identity by wrongfully and without permission using Dardashtian's email address, michael@channelreply.com, while placing Gitman's own picture and likeness on the Gmail account so that anyone receiving email communications sees the email address Michael@channelreply.com and Michael Dash (Dardashtian's known business name) on the signatory line but it has Defendant Gitman's face on the Gmail account, as if he is Dardashtian.

241.    Defendant Gitman also received all emails intended for Dardashtian from Plaintiff ChannelReply's customers and business associates.

242.    By doing so, Gitman was acting with an intent to defraud by using such electronic services in the name of Dardashtian without Dardashtian's consent.

WHEREFORE, Plaintiff Dardashtian demands judgment against Gitman, for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $100,000.00.

## COUNT 18

### UNFAIR COMPETITION AS TO ALL DEFENDANTS UNDER NEW YORK STATE LAW [Dismissed as to Falk and Summit Rock]

243.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

244.    The Defendants, in bad faith, have all misappropriated the expenditures, skill and labor of Dardashtian, CSV and Plaintiff ChannelReply by among other things, a) the depletion of the CSV business operating account without the express permission of Plaintiff Dardashtian; b) misappropriating and converting CSV and Channel Reply's respective business assets and proprietary and confidential information and trade secrets to form two competing companies, Accel Commerce and Channel Reply, Inc.; c) improperly soliciting CSV's and Plaintiff ChannelReply's respective customers on behalf of competing businesses; d) "locking out" Plaintiff Dardashtian from multiple computer and electronic accounts necessary and fundamental to CSV's and Plaintiff Channel Reply's business operations, including financial accounts; e) accessing and disclosing Plaintiff Dardashtian's personal private financial information; f) using and infringing upon the exact trade name "ChannelReply" to unfairly compete against Plaintiff ChannelReply through Defendant Channel Reply, Inc.; g) breaching their respective fiduciary duties to CSV and Plaintiff ChannelReply; and h) illegally soliciting and otherwise interfering with Plaintiff CSV and Plaintiff ChannelReply's contractual relations with its developers Bagaiev and Glukharev by providing them with false information about Plaintiff Dardashtian and offering them financial incentives to breach their agreement and duty of loyalty to Plaintiffs.

245.    As a result, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for all compensatory, punitive, attorney's fees, and consequential damages as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 19

## MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK STATE LAW

246.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

247.    CSV is the owner of the trade secrets and other confidential and proprietary information relating to its and Plaintiff ChannelReply's computer software and code used in the industry of e-commerce, such trade secrets include customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes, other codes and other intellectual property. These trade secrets are CSV's and Plaintiff ChannelReply's electronic services that are used in or intended for use in interstate or foreign commerce. CSV and Plaintiff ChannelReply sell its software solutions throughout the United States and worldwide.

248.    Defendant Gitman, with the assistance and participation of all other Defendants, is using and otherwise misappropriating those trade secrets in violation of the CSV operating agreement and in breach of his fiduciary duty to CSV and Dardashtian to unfairly compete against CSV and Plaintiff ChannelReply.

249.    Such trade secrets are vital to CSV and Plaintiff ChannelReply's business and provides Defendants with an unfair competitive advantage which they would otherwise not have enjoyed.

250.    As a result, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demands judgment against Defendants for all compensatory, punitive, consequential damages and attorney's fees as a result of such unlawful conduct for an amount to be determined at trial but which amount is in excess of $2,000,000.00.

## COUNT 20

### DECLARATORY JUDGMENT PURSUANT TO NY CPLR 3001 COMPELLING THE REDEMPTION OF DEFENDANT GITMAN'S MEMBERSHP INTERESTS IN PLAINTIFF COMPANIES PURSUANT TO SECTION 11.5 OF THE CSV OPERATING AGREEMENT

251. Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

252. Article 11.5 of the CSV Operating Agreement provides that in the Management's sole discretion, a member's membership interest may be redeemed in circumstances including (a) a member's willful or serious misconduct with respect to the business operations or assets of CSV, (b) fraud or dishonesty, whether or not with respect to the business or affairs of CSV, (c) an attempt by the member to withdraw from CSV, (d) an attempt by the member to partition the property of CSV, (e) a breach by the member of any employment agreement between the member and CSV, and (f) any event resulting in a separation of the member from service to CSV as an employee, contractor or agent.

253. As alleged herein, Defendant Gitman, while co-manager of CSV, and in violation of Defendant Gitman's fiduciary duties to both the Plaintiff Companies and Plaintiff Dardashtian, (a) engaged in oppressive, willful and/or serious misconduct concerning the business operations or assets of the Plaintiff Companies, (b) breached the terms, conditions and obligations contained in the CSV Operating Agreement, (c) misappropraited the assets of CSV and transferred them to his competing company, Channel Reply, Inc., (d) partitioned the property of CSV to a competing company owned and controlled by him, (e) engaged in fraud and dishonesty, including, but not being limited to, (i) the conversion of the Plaintiff Companies' proprietary information and trade name, (ii) usurping the Plaintiff Companies' business accounts to Dardashtian's exclusion, , (iii) forming Channel Reply Inc. in direct competition with the

Plaintiff Companies and (iv) by misappropriating the Plaintiff Companies' intellectual property, confidential information, trade secrets and assets, (f) directly soliciting the Plaintiff Companies' developers to terminate their business relationship with the Plaintiff Companies and inducing those developers to become an owner of and/or otherwise affiliated with Channel Reply, Inc. in direct competition with the Plaintiff Companies, and and (g) as discovery may further reveal.

254. All of Defendant Gitman's intentional, willful and oppressive actions resulted in frustrated the purpose of the Plaintiff Companies'operations, and resulted in Defendant Gitman's Court-ordered preliminary removal and separated him from the Plaintiff Companies contrary to Article 11.5(b)(x) of the CSV Operating Agreement.

255. All of Defendant Gitman's willful conduct is a further violation of the CSV Operating Agreement thereby entitling CSV's management to exercise its right to redeem all of Defendant Gitman's right, title and ownership interests in CSV, ChannelReply and NDAP, LLC.

256. Pursuant to Article 11.5(d) of the CSV Operating Agreement, the purchase price for the redemption of Defendant Gitman's interest in CSV, NDAP, LLC and ChannelReply shall be an amount equal to "(i) the amount that the Redeemed Member would have received had the Company (A) terminated on the date the Redemption Notice was given; (B) sold all of its assets at their fair market values on the date the Redemption Notice was given, (C) satisfied all of its debts and obligations and (D) made distributions to the Members in accordance with Section 16.2 less (ii) any distributions made to the Redeemed Member after the date the Redemption Notice is given to the Redemption Closing Date.

257. After Dardashtian was appointed co-manager of CSV by the Court along with Joel Liebman, C.P.A., the Plaintiff Companies' accountant, and as a result of Gitman's a) willful and serious misconduct, b) violations of the CSV Operating Agreement c) partitioning of

company property d) misappropriation of the Plaintiff Companies' assets to another competing company formed by Defendant GItman e)  Defendant Gitman's fraud and dishonesty while a member of the Plaintiff Companiesand f) Defendant Gitman's Court-ordered removal as a manager  to the Plaintiff Companies, the current co-managers of the Plaintiff Companies, Dardashtian and Joel Liebman, have determined to exercise CSV's right to redeem all of Defendant Gitman's right, title and membership interests in the Plaintiff's Companies, including CSV, NDAP, LLC and ChannelReply pursuant to Section 11.5 of the CSV Operating Agreement.

258.    Any attempt by Plaintiff Dardashtian, as co-manager of CSV before he was appointed by the Court as co-manager with Joel Liebman, C.P.A., to effectuate a redemption of all of Defendant Gitman's membership interests in CSV, NDAP, LLC and ChannelReply was futile considering Gitman refused to have his shares redeemed by CSV on any terms ; b) Gitman's oppressive conduct while co-manager displayed his unwillingness to act in an equitable and fair manner as to any potential redemption and c) despite several months of good faith negotiations by Plaintiff Dardashtian to reach an equitable redemption of Gitman's membership interest in CSV, NDAP, LLC and ChannelReply, Gitman refused to finalize the redemption.

259.    After Plaintiff Dardashtian was appointed as co-manager of CSV by the Court, Defendant Gitman represented that he would agree to a sale of his interests in the Plaintiff Companies.

260.This representation persisted through December 21, 2018, rendering the issuance of a redemption notice futile, in addition to the reasons set forth herein. As a result of Defendant Gitman's representations, Plaintiff Companies' expended significant time and money to engage in good faith negotiations with Defendant Gitman to effectuate an equitable redemption.

Defendant Gitman's bad faith was exhibited when he engaged the cPlaintiffs for months in negotiations, including authorizing his attorneys to work on a final agreement only to refuse to sign said agreement on the day the parties met to execute it.

261. Therefore, any efforts by Plaintiff Companies to serve a Redemption Notice on Defendant Gitman sooner would have also been futile in addition to the reasons set forth herein. In accordance with Article 11.5 of the CSV Operating Agreement, management has discretion over when to issue a Redemption Notice.

262. Plaintiff Companies, through CSV, are entitled to redeem all of Defendant Gitman's interests in the Plaintiff Companies, CSV, NDAP, LLC and ChannelReply, in accordance with the terms set forth in Article 11.5 of the CSV Operating Agreement.

263. It is well recognized that LLCs are "creatures of contract," and Plaintiff Companies therefore respectfully request the Court grant the maximum effect to the principle of the freedom of contract and the enforceability of the terms of Article 11.5 of the CSV Operating Agreeement.

WHEREFORE, Plaintiffs seek a declaratory judgment pursuant to NY CPLR 3001 and the CSV Operating Agreement that a) Plaintiff CSV has the right to redeem all of Defendant Gitman's membership interests in the Plaintiff Companies CSV, NDAP, LLC and ChannelReply;  and b) ordering that the redemption of all of Defendant Gitman's right, title and membership interests in the Plaintiff Companies CSV, NDAP, LLC and ChannelReply be redeemed in accordance with the terms set forth in Article 11.5 of the CSV Operating Agreement, along with an award of all attorney's fees and costs to prosecute the within action in accordance with the terms set forth in the CSV Operating Agreement, including but not limited to Article 17.10.

## COUNT 21

**JUDICIAL DISSOLUTION OF CSV AND ITS WHOLLY OWNED COMPANIES PURSUANT TO NY CLS LLC §702 AND SECTIONS 4.2 AND 16 OF THE CSV OPERATING AGREEMENT, AND ORDERING PLAINTIFF DARDASHTIAN AND/OR PLAINTIFF CSV TO BE PERMITTED TO EQUITABLY BUY-OUT ALL OF DEFENDANT GITMAN'S RIGHT, TITLE AND MEMBERSHIP INTERESTS IN THE PLAINTIFF COMPANIES CSV, NDAP, LLC AND CHANNELREPLY**

264.    Plaintiffs repeat and reallege all facts set forth above herein as if set forth at length.

265.    NY CLS LLC §702 provides:

> On application by or for a member, the supreme court in the judicial district in which the office of the limited liability company is located may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the …. operating agreement.

266.    Additionally, Article 4 of the CSV Operating Agreement provides that CSV shall be dissolved upon the "entry of a judicial decree of dissolution of the Company in accordance with the Act [ as defined in Article I to mean the "Limited Liability Company Act from time to time in force in the State.]"

267.    As a result of Defendant Gitman's actions as alleged throughout this First Amended Verified Complaint, including,but not limited to (a) Defendant Gitman's misappropriation of the Plaintiff Companies' funds; (b) Defendant Gitman's unauthorized removal of Plaintiff Dardashtian's access to the Plaintiff Companies' electronic accounts; (c) Defendant Gitman's unauthorized formation of Channel Reply, Inc., a direct competitor of Plaintiff ChannelReply, (d) Defendant Gitman's misappropriation and diversion of CSV's and ChannelReply's intellectual property, trade name, trade secrets, confidential information and other assets to Channel Reply, Inc.; (e) Defendant Gitman's willful and malicious actions to induce Plaintiff Companies' developers to resign from the Plaintiff Companies, including

ChannelReply, and to join as an owner, employee and/or independent contract of Channel Reply, Inc., to the Plaintiff Companies' detriment; (f) Defendant Gitman's unlawful disclosure of the Plaintiff Companies' proprietary and confidential information to third parties, without the express written consent of the Plaintiffs, and (g) Defendant's continued defamatory actions toward Dardashtian and continued insistence in pleadings that he intends to convert and misappropriate Plaintiff Companies' property if permitted for the purposes of competing with the Plaintiff Companies, all of which frustrated and impeded the Plaintiff Companies from carrying out their intended purposes, and resulted in this Court's preliminary removal of Defendant Gitman as a co-manager of the Plaintiff Companies as well as Defendant Gitman's misconduct that followed, misconduct subsequent to his being removed as a manager, it is not reasonably practicable to carry on the business operations of Plaintiff Companies with Defendant Gitman as a managing member or member, and in conformity with the CSV Operating Agreement.

268.    As alleged herein, Defendant Gitman has intentionally inflicted upon Plaintiff Dardashtian and the Plaintiff Companies unreasonable, bad faith, and oppressive conduct, and engaged in financial defalcation as detailed herein, all of which is prohibited by NY CLS LLC §702, and also prohibited by the terms of the CSV Operating Agreement, including, but not limited to, Defendant Gitman's violation of Article 11.5(b), Article 12.2 and other provisions of the CSV Operating Agreement based upon Gitman's conduct set forth herein.

269.  On or about June 21, 2017, this Honorable Court preliminary removed Defendant Gitman as a co-manager of Plaintiff Companies and appointed Dardashtian as co-manager with Joel Liebman, C.P.A. of Liebman Goldberg & Hymowitz LLP .

270.    Since Defendant Gitman's removal as co- manager of the Plaintiff Companies,

and Plaintiff Dardashtian's appointment as co-manager with Joel Liebman, C.P.A., Dardashtian has operated the Plaintiff Companies, including CSV, NDAP, LLC and ChannelReply in a good faith, stable, financially profitable and lawful manner and has grown its customer base, partnerships, reputation and revenues during this period of time. CSV and ChannelReply are not financially failing, are serving a large national and international customer base reliant on its services for their business operations, and are employing many people.  Therefore, dissolution or liquidation would not be an equitable or appropriate remedy in the event this Honorable  Court explores remedies outside of the CSV Operating Agreemeent

271.    To the contrary, CSV and ChannelReply have  financially grown since June 19, 2017 when Defendant Gitman was preliminary removed as a co-manager.

272.    Plaintiff Dardashtian's actions in protecting the Plaintiff Companies from Defendant Gitman's malfeasance, has resulted the growth of the Plaintiff Companeis. Plaintiff Dardashtian initiated this action on behalf of Plaintiff Companies in order to protect the Plaintiff Companies from Defendant Gitman's malfeasance. Since then, as a result of Plaintiff Dardashtian's efforts, the Plaintiff Companies' developers and other employees have returned to the Plaintiff Companies, new ones have been added, and partnerships, product features, integrations, customers and revenue have grown.

273.    Thus, the fairest and most equitable approach in the event that the Court should decide to order the judicial dissolution of CSV, which owns NDAPand ChannelReply would be to order that Plaintiff Dardashtian and/or CSV be permitted to equitably buy out all of Defendant Gitman's rights, title and membership interests in the Plaintiff Companies, CSV, NDAPand ChannelReply, in order to avoid the drastic remedy of dissolutionon the Plaintiff Companies, their existing employees, and their large national and international customer base which relies on

the Plaintiff Companies' unique, proprietary products including software as a service or SaaS products.

274.     Alternatively, in the event that the Court should decide to permit the CSV Operating Agreement to govern above common law's equitable principles, Plainitff CSV should be permitted to redeem all of Defendant Gitman's right, title and membership interests in the Plaintiff Companies, CSV, NDAP and ChannelReply in accordance with Article 11.5 of the CSV Operating Agreement and applicable law.

275.     Therefore, pursuant to a) New York common law, including Matter of Kassab v. Kasab, 137 AD3d 1138 (2d Dep't 2006) and Mizrahi v. Cohen, 104 AD 3d 917, 920 (2d Dep't 2013), Tal v Superior Vending, LLC, 20 Misc 3d 1103 [A] [Sup Ct NY County June 6, 2008], and Matter of Kemp & Beatley, Inc., 64 NY2d 63 [1984], upon the judicial dissolution of CSV, and b) as contemplated in Article 11.5 of the CSV Operating Agreement, the Court must order the fairest and most equitable remedy short of or other than dissolution, namely that either Plaintiff Dardashtian and/or CSV be permitted to buy-out all of Defendant Gitman's membership rights, title and interests in Plaintiffs CSV, NDAP and ChannelReply, or that Plaintiff CSV be permitted to redeem all of Defendant Gitman's right, title and membership interests in Plaintiffs CSV, NDAP and ChannelReply, for an amount that this Court finds equitable in accordance with applicable law and/or the value definition in Article 11.5 of the CSV Operating Agreement.

276.     Plaintiffs hereby request that this Court enforce Article 11.5 of the CSV Operating Agreement, signed by both Plaintiff Dardashtian and Defendant Gitman, and which has governed the Plaintiff Companies' business operations since inception.

WHEREFORE Plaintiffs' demand a) that Plaintiff CSV be dissolved pursuant to NY CLS LLC §702 and the CSV Operating Agreement, and b) that the Court order that Plaintiff

Dardashtian and/or CSV be permitted to buy-out all of Defendant Gitman's right, title and membership interests in Plaintiffs CSV, NDAP and ChannelReply, or c) that Plaintiff CSV be permitted to redeem all of Defendant Gitman's right, title and membership interests in Plaintiffs CSV, NDAP and ChannelReply, for an amount that this Court finds equitable in accordance with applicable law and/or Article 11.5 of the CSV Operating Agreement. Plaintiffs further demand an award of all attorney's fees and costs to prosecute the within action against Defendant Gitman pursuant to the CSV Operating Agreement, including but not limited to Article 17.10.

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

GUAGLARDI & MELITI, LLP

BARRY S. GUAGLARDI, ESQ.
BSG2401
Attorney for Plaintiff

365 W. Passaic Street, Suite 130
Rochelle Park, NJ 07662
201-947-4100

111 Main Street
PO Box 509
Chester, NY 10918

Dated: April 30, 2020

78

## VERIFICATION

I, Michael Dardashtian, individually and on behalf of Plaintiffs, of which I am an equal

member and co-manager thereof, having been duly sworn and upon my oath, verifies under the

penalties of perjury that I have read the allegations of this First Amended Verified Complaint.

All of the factual allegations are true and correct to the best of my knowledge, except for any

allegation claimed to be upon information and belief.

Michael Dardashtian, Individually and on behalf of
Plaintiffs Cooper Square Ventures, LLC,
ChannelReply and NDAP, LLC

Signed and Sworn to
before me this 30 day
of April, 2020

ANAT H. GORDON
Notary Public State of New York
No. 01GO6024591
Qualified in Nassau County
Commission Expires May 10, 2023

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 30, 2020, the foregoing was electronically

filed with the Court's CM/ECF Filing System, which will send a Notice of Electronic Filing to

all parties of record who are registered with CM/ECF.

By: _____

Evan Ostrer (EO1099)