UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL DARDASHTIAN, individually and on behalf of COOPER SQUARE VENTURES, LLC NDAP, LLC and CHANNEL REPLY, LLC<br>Plaintiffs,<br><br>-against-<br><br>DAVID GITMAN, JEREMY FALK, SUMMIT ROCK HOLDINGS, LLC, ACCEL COMMERCE, LLC, DALVA VENTURES, LLC, KONSTANTYN BAGAIEV, OLESKSII GLUKHAREV and CHANNEL REPLY, INC.<br>Defendants. | Case No. 17 CV 4327 (LLS)<br><br>**SUPPLEMENTAL AFFIDAVIT OF DAVID GITMAN IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE FOR SANCTIONS AND OTHER RELIEF** |

**DAVID GITMAN**, being duly sworn deposes and says:

1. I am one of the defendants in this action. I am fully familiar with the facts and circumstances of this matter as set forth herein. Unless stated otherwise, I have personal knowledge of the matters stated in this affidavit.

2. I write this affidavit in opposition to the plaintiffs' Order to Show Cause for sanctions and other relief and to inform the Court and the plaintiffs of my good faith efforts to fully comply with the Court's Temporary Restraining Order dated June 8, 2017, and as amended on June 9, 2017, and the Court's verbal temporary restraining order of June 19, 2017 (the "TRO").

3. Since the conclusion of the court hearing on June 19, 2017, I have diligently worked to reset the plaintiff entities, Cooper Square Ventures, LLC ("CSV"), NDAP, LLC ("NDAP"), and ChannelReply, LLC ("CR LLC"), to the status quo as of May 26, 2017. It

has never been my intent to circumvent any of the prior court orders. I was working in good faith both to comply with the court's orders and to protect the assets of the relevant businesses. I understand that I may have misinterpreted elements of the TRO. I have taken measures to ensure that this type of mistake will not happen again and have worked diligently to comply since.

4. Moments after the June 19, 2017 hearing, I instructed Channel Reply, Inc.'s ("CR Inc.") attorney Umar Farooq, Esq. to dissolve CR Inc., which was a Delaware corporation.

5. I understand that Mr. Farooq began the process by ensuring franchise tax filings were in place. Attached hereto as Exhibit A is a true and correct copy of CR Inc.'s Annual Franchise Tax Report for the State of Delaware evidencing payment on June 20, 2017.

6. Mr. Farooq also prepared corporate resolutions and filings with the State of Delaware to dissolve CR Inc. On June 20, 2017, CR Inc. was dissolved. Attached hereto as Exhibit B is a true and correct copy of the State of Delaware Certificate of Dissolution for CR Inc.

7. On June 19, 2017, at approximately 5:30 p.m., I went to the JP Morgan Chase bank branch located at 221 Canal St., New York, NY 10013 to close the CR Inc. bank accounts and to deposit all funds into the CSV Bank of America bank account. I was told by a bank employee that there were some pending transactions on the account which prevented me from closing the account at that time. Attached hereto as Exhibit C is a true and correct account statement of the CR Inc. JP Morgan Chase bank account showing pending transactions. Once the transactions clear, I will close the account and provide an accounting.

8. On June 20, 2017, in an effort to not run afoul of the TRO, I initiated a wire transfer from the CR Inc. JP Morgan Chase bank account to the CSV Bank of America bank account of all available funds in the CR Inc. bank account.

9.      As set forth in my Affidavit of June 19, 2017 (the "June 19 Affidavit"), I have restored all other monies withdrawn by me from CSV Bank of America account since May 27, 2017. Attached hereto as Exhibit D is an outline of all CSV Bank of America bank account activity by me since May 27, 2017. As set forth in Exhibit D to June 19 Affidavit, the CSV Bank of America account balance is currently approximately $81,0000 -- it was approximately $73,000 on May 27, 2017.

10.     On June 20, 2017, I also provided plaintiffs with a detailed account breakdown of all login and password information for all accounts requested, other than the two accounts I have no knowledge of as stated in my June 19 Affidavit. Attached hereto as Exhibit E is a true and correct copy of that spreadsheet.

11.     On June 20, 2017, I instructed my counsel to confirm with plaintiffs' counsel that I was in compliance with the TRO. Attached hereto as Exhibit F is a true and correct copy of my counsel's e-mail to plaintiffs' counsel, Mr. Guaglardi, at 11:33 a.m. on June 20, 2017, detailing the above efforts and asking Mr. Guaglardi if there were any additional steps he believed I needed to take to dissolve CR Inc. and comply with the TRO.

12.     Thereafter, Ms. Ditlow sent Mr. Guaglardi an e-mail at 4:13 p.m. which attached (i) a spreadsheet detailing all account information, including login and password information for Dardashtian; (ii) the CR Inc. State of Delaware Certificate of Dissolution; and (iii) an outline of all recent money transfers regarding the CSV Bank of America bank account. As noted above and in my June 19 Affidavit, the current balance of that account is over $80,000 (it was approximately $73,000 on or May 27). Ms. Ditlow's e-mail asked Mr. Guaglardi to review the documents attached, and let her know if there was anything else he believed I was required to do to comply with the TRO. Attached hereto as Exhibit G is a true and correct

3

copy of Ms. Ditlow's June 20, 4:13 p.m. e-mail and attachments.

13.     Approximately two (2) hours later, Ms. Ditlow forwarded me an email from Mr. Guaglardi that was sent at 6:01 p.m. and outlined outstanding compliance items plaintiffs' contended still existed. Attached hereto as Exhibit H is a true and correct copy of Mr. Guaglardi's 6:01 p.m. e-mail.

14.     After receiving this e-mail, I immediately addressed each issue raised by Mr. Guaglardi's 6:01 p.m. e-mail. I provided this additional information to my counsel. At 7:47 p.m., Ms. Ditlow emailed Mr. Guaglardi and provided account and login information demonstrating that all account issues raised by Mr. Guaglardi's 6:01 p.m. e-mail were resolved and provided additional information and evidence responding to the other issues raised therein, including, without limitation, a deposit check receipt. Ms. Ditlow asked Mr. Guaglardi to advise if the additional information and documents provided resolved the outstanding issues. Attached hereto as Exhibit I is a true and correct copy of Ms. Ditlow's 7:47 e-mail and attachments.

15.     I understand that at 7:59 p.m. last evening, Mr. Guaglardi responded to Ms. Ditlow and said he was no longer interested in providing guidance as to what plaintiffs considered to be complete compliance with the TRO, even though I believe the Court instructed me to work with plaintiffs to understand any compliance issues they contend are outstanding. Attached hereto as Exhibit J is a true and correct copy of Mr. Guaglardi's 7:59 p.m. e-mail.

16.     I have made every effort to comply with the TRO and I am not aware of any items that remain outstanding. I dissolved CR Inc., transferred all CR Inc. assets and accounts to plaintiffs and have restored the status quo to that of May 26, 2017 to the best of my ability.

17.     I want to resolve this matter and focus on my professional future.

4

18. I have no agreement that restricts my ability to utilize source code or customer data.

19. There is no agreement which restricts my ability to compete against CSV or any of the related entities. *See* Dardashtian, Affidavit dated June 8, 2017, Exh. 2, paragraph 12.1 ("Competitive Undertakings. Except as otherwise provided herein, any Member and Management may engage in business ventures of any nature and description independently or with others, including, but not limited to, business of the character described in Article 3 (or any part thereof), and neither the Company nor any of the Members shall have any rights in or to such independent ventures of the income or profits derived therefrom.").

20. Additionally, the plaintiffs repeatedly allege that I had the intent to "steal" CR LLC and intentionally compete with Dardashtian and CR LLC. However, the purpose of incorporating CR Inc. was not to compete with Dardashtian or CR LLC, but to formalize the business in a way that Dardashtian had failed to do. This was necessary to retain the workers who had grown distrustful of Dardashtian, provide them with the ownership shares they had been promised by Dardashtian, develop and execute an operating agreement and finally to legally separate the assets from NDAP in accordance with the asset purchase agreement. In fact, I always had the intention to offer Dardashtian a fair ownership interest in CR Inc. commensurate with his contributions to CR LLC.

21. My use of the "ChannelReply" name is not evidence of my intent to improperly compete. My intent was to use the same name in order to solidify and protect the business.

22. Additionally, none of the data or code at issue constitutes a protectable trade secret and/or confidential information.

23. At its most basic form, CR LLC is a "store and forward messaging system."

24. "Store and forward" is a telecommunications technique in which information (eBay

5

or Amazon messages) is sent to an intermediate station (CR LLC) where it is kept and sent at a later time to the final destination (Zendesk, Desk.com or Freshdesk).

25. The most well-known store and forward system is email. It is very common for an email system to accept a message, store it and then forward it on elsewhere. Although fully open mail relays are no longer common (because of the rise of unsolicited bulk email, aka SPAM), not only does simple server-based forwarding work this way, but also do many email filtering and automated electronic mailing lists services.

26. Store and forward predates the use of computers. Point-to-point teleprinter equipment was used to send messages which were stored at the receiving end on punched paper tape at a relay center. A human operator at the center removed the message tape from the receiving machine, read the addressing information, and then sent it toward its destination on appropriate outbound point-to-point teleprinter link. If the outbound link was in use, the operator placed the message in tape in a physical queue, usually consisting of a set of clips or hooks. A major relay center in the mid-1900s might have dozens of inbound and outbound teleprinters, scores of operators, and thousands of messages in the queues during peak periods. Operators referred to these centers as "torn-tape relay centers," a reference to removing the received message from the inbound teleprinter by tearing the paper tape to separate one message from the next. The U.S. military term for such a center was "Non-Automated Relay Center" (NARC).

27. Since CR LLC utilizes a 70 year old store and forward system, there has been no effort to construct and refine any algorithms to distinguish the product from the competition. Simply, it is a known and longstanding communication channel, which does not require the creation or use of any trade secret technology.

28. Below is a basic topology of a message passing through CR LLC:

eBay / Amazon <-> ChannelReply <-> Zendesk / Desk.com / Freshdesk

29. This diagram illustrates how messages that originate on a marketplace like eBay or Amazon are relayed through CR LLC to a Customer Relationship Management (CRM) platform like Zendesk, Desk.com, Freshdesk. Replies from a CRM are then relayed back to the marketplace.

30. An eCommerce merchant can build a similar software to respond to their customers on eBay or Amazon for about $2,500 plus operational and administrative costs. However, for many companies, it may be more cost efficient to use CR LLC for $39/month rather than building a store and forward system on their own, and that is the value, as it is not a trade secret or confidential or proprietary system.

31. Furthermore, any algorithms used by the company are publicly described on CR LLC's website, blog posts, explainer videos, publicly accessible help center, and YouTube videos.

I certify under penalty of perjury that the foregoing statements made by me are true. I am aware that of any of the foregoing statements made by me are willfully false, I am subject to punishment.

June 21, 2017

David Gitman

104021593