May 1, 2020

**Via Fedex**
David Gitman
4005 Overcup Oak Lane
Cary, North Carolina 27519

### REDEMPTION NOTICE PURSUANT TO ARTICLE 11.5 OF THE AUGUST 13, 2011 COOPER SQUARE VENTURES, LLC OPERATING AGREEMENT

Dear Mr. Gitman,

As you are aware, by Court Order dated June 19, 2017 in the matter of <u>Michael Dardashtian, et. al. v. David Gitman, et. al.</u>, Case Number 1:17 Civ. 4327 pending in the United States District Court, Southern District of New York ("Federal Lawsuit"), Plaintiff Michael Dardashtian was appointed with Joel Liebman, C.P.A. as co-managers of Cooper Square Ventures, LLC ("CSV") and its related subsidiaries and/or affiliates including NDAP, LLC ("NDAP") and ChannelReply ("ChannelReply") (collectively "Plaintiff Companies"). Pursuant to Article 11.5 of the CSV Operating Agreement dated August 13, 2011[1] ("CSV Operating Agreement"), NOTICE is hereby given by CSV that it hereby elects to redeem any and all of David Gitman's ("Mr. Gitman") rights, title, ownership and interests in CSV, NDAP and ChannelReply in accordance with Article 11.5 of the CSV Operating Agreement.

In accordance with Article 11.5(b) of the CSV Operating Agreement, the decision to redeem a Member's interest shall be made by CSV's management ("Management"), in its sole discretion, in the following circumstances:

(i)   Willful or serious misconduct by the Member with respect to the business, operations or assets of the Company.
(ii)  Fraud or dishonesty on the part of the Member, whether or not with respect to the business or affairs of the Company, which affects the business, operations, assets or reputation of the Company.
(iii) The Member's conviction of a felony crime, or a non-felony crime involving an act of moral turpitude.
(iv)  A transfer by the member of its interest in the company in violation of this Agreement.
(v)   An attempt by the Member to withdraw from the Company in violation of this Agreement.

---

[1] The CSV Operating Agreement was inadvertently titled as "Operating Agreement of Cooper Square, LLC" by virtue of a scriveners error by CSV's attorney Jeffrey Rothman, Esq. See Affidavit of Jeffrey Rothman dated June 21, 2017 and filed in the Federal Lawsuit on July 21, 2017.

1

(vi) An attempt by the Member to partition the property of the Company in violation of this Agreement.
(vii) A breach by the Member of any of the other terms, conditions and obligations contained in this Agreement.
(viii) A failure to contribute additional capital to the Company pursuant to Management's call in Article 5.2(b) above.
(ix) A breach by the Member of any employment agreement between the Member and the Company.
(x) Any event resulting in a separation of the Member from service to the Company as an employee, contractor or agent.

For the reasons set forth below, Management has determined that Mr. Gitman has violated Articles 11.5(b)(i),(ii),(iv)(v),(vi), (vii), (ix) and (x). Specifically, by way of illustration, and not by way of limitation, Mr. Gitman's violations of Article 11.5(b) of the CSV Operating Agreement, include, but are not limited to the following:

A. On May 27, 2017, without the consent or knowledge of Michael Dardashtian, Mr. Gitman caused $73, 982.53 to be withdrawn from the CSV Bank of America operating account ending #7345 and deposited into a banking account maintained and owned solely by Mr. Gitman which actions are contrary to Article 9 of the CSV Operating Agreement and applicable law. On said date, Mr. Gitman's unauthorized withdrawal of CSV's funds undermined CSV's ability to properly maintain the operation of Plaintiff Companies.

B. On May 28, 2017, CSV's operating account balance was overdrawn by negative $10.89 as a result of Mr. Gitman's actions.

C. Michael Dardashtian had no access to the funds withdrawn by Mr. Gitman nor knowledge of their whereabouts.

D. On or about May 29, 2017, and continuing thereafter, Mr. Gitman unilaterally canceled Michael Dardashtian's participation in pre-scheduled weekly conference calls with the Plaintiff Companies' developers, Konstantyn Bagaiev and Oleksii Glukharev ("Plaintiff Companies developers") who were assisting in the operation and maintenance of ChannelReply and its platform.

E. Without Michael Dardashtian's knowledge or authorization, Mr. Gitman removed scheduled events from Michael Dardashtian's calendar so that he could not join Skype conferences with the Plaintiff Companies' developers , terminated Michael Dardashtian's access to the Plaintiff Companies' electronic accounts and funds and removed Michael Dardashtian's ability to obtain updates and/or participate in ChannelReply's daily business operation as had been customary in the past and which Michael Dardashtian was otherwise entitled to do as a Co-Manager and 50% owner of the Plaintiff Companies.

F. On May 30, 2017, Mr. Gitman formed Channel Reply Inc., an entity of which Michael Dardashtian was not an owner, to directly compete with ChannelReply, without Michael Dardashtian's knowledge or consent. Mr. Gitman, without authorization from Michael Dardashtian, unlawfully usurped CSV and ChannelReply's proprietary assets, customers, electronic accounts, proprietary software code, email accounts and confidential information for Mr. Gitman's own use, through Channel Reply Inc., thereby effectively converting and otherwise misappropriating ChannelReply, and all of its assets, including but not limited to, its tradename, electronic and other accounts, customer lists, trade secrets, intellectual and proprietary property, software, relationship with Plaintiff Companies' developers and the code used to operate ChannelReply.

G. Mr. Gitman's formation of Channel Reply, Inc. unlawfully used the ChannelReply tradename owned by CSV in a further effort to unlawfully compete with CSV and ChannelReply.

H. On or about June 1, 2017, Mr. Gitman sent agreements, prepared by or on behalf of Mr. Gitman, to the Plaintiff Companies' developers, Konstantyn Bagaiev and Oleksii Glukharev, seeking to induce the Plaintiff Companies' developers to terminate their business relationships with the Plaintiff Companies and Michael Dardashtian, and to join Mr. Gitman as a co-owner, employee and/or independent contractor of Channel Reply, Inc., knowing that same with ChannelReply's orderly operation, all with the intent to harm and otherwise damage the Plaintiff Companies. Mr. Gitman was, upon information and belief, later involved in the preparation and/or review of the actual termination letters prepared for and on behalf of the Plaintiff Companies' developers before they were actually reviewed by the Plaintiff Companies' developers and sent to Michael Dardashtian, who received them on behalf of the Plaintiff Companies. Mr. Gitman further made defamatory statements against Michael Dardashtian to Plaintiff Companies' developers to further induce their departure from Plaintiff Companies and attempt to sour their relationship with Michael Dardashtian and loyalty to the Plaintiff Companies. Mr. Gitman also orally and in writing, encouraged Plaintiff Companies' developers not to communicate with Mr. Dardashtian.

I. Without the consent of Michael Dardashtian, on June 2, 2017 and continuing thereafter, Mr. Gitman made debits from the CSV operating account, including for his BMW automobile lease payment and a $3,500 payment to amazon web services using a Plaintiff Companies' American Express credit card, thereby increasing CSV's debt to over $7,000.00.

J. On or about and between June 2, 2017 through July 8, 2017, Mr. Gitman exceeded and abused his then existing authorization to access the Plaintiff Companies' online electronic accounts by terminating Co-Manager Michael Dardashtian's access thereto. The Plaintiff Companies' accounts for which Mr. Gitman terminated Michael Dardashtian's access include, but are not limited to, the following:

3

a.  1Password Account – this is a password and login account management system. It holds all of Michael Dardashtian's personal passwords and the companies shared passwords. The account was paid for out of Plaintiff Companies' funds.

b.  Chargebee Account – This is the Plaintiff Companies' subscription management account that holds the customer information and billing information for the Plaintiff Companies, including ChannelReply's customers.

c.  Stripe Account – This is the Plaintiff Companies' credit card billing service that allows the Plaintiff Companies to receive credit card payments from ChannelReply customers.

d.  PayPal Account – This is an online payment system which allows the Plaintiff Companies to take online payments from ChannelReply customers.

e.  Upwork Account – This is a freelancer marketplace that allows the Plaintiff Companies to hire and pay freelancers to run the ChannelReply business owned by CSV.

f.  Zendesk Accounts – This is a customer service management account which allows the Plaintiff Companies to communicate with their customers through support tickets.

g.  JIRA Account – This is a project management software that allows the Plaintiff Companies to manage projects effectively for business tasks.

h.  Slack – This is a messaging management software for CSV's business that allows Plaintiff Companies' employees and freelancers to openly communicate with one another and share documents.

i.  Amazon Seller Central – This is the Plaintiff Companies' Amazon seller account that allows the Company to sell products on Amazon and manage MWS accounts for ChannelReply sellers.

j.  eBay Accounts – This allows the Plaintiff Companies to sell products on eBay and manage their eBay subscription identifications for ChannelReply sellers.

k.  Timedoctor – This allows the Plaintiff Companies to manage the time management of employees and freelancers via an online portal to track time and take screenshots of employees and freelancer work.

l.  Amazon Web Services (AWS) – This allows the Plaintiff Companies to manage all of their Amazon Web Servers which keep the businesses servers running effectively.

m.  American Express Account – This is a NDAP corporate credit card account used by the Plaintiff Companies in their business operation.

n. Magento Accounts – This is the Plaintiff Companies' Magento Administrator which allows the Plaintiff Companies to monitor all backend data associated with their business.

o. QuickBooks Accounts. This provides access to the Plaintiff Companies' QuickBooks accounts.

p. Desk.com Account - This is a customer service management account which allows the Plaintiff Companies to communicate with their customers through support tickets.

q. Godaddy Account – the Plaintiff Companies have an account with godaddy which owns and operates many domains. Mr. Gitman terminated Michael Dardashtian from his previously existing login access to Godaddy .

r. Magemojo – This is the Plaintiff Companies' Magento hosted server account.

s. Mailchimp – This is the Plaintiff Companies' email subscription newsletter account.

t. Github – This is where all of the Plaintiff Companies' software is checked in and stored for sharing.

u. Ringcentral – This is the Plaintiff Companies' VOIP system that allows the Plaintiff Companies to make and receive internet phone calls and faxes.

v. Join.me – This is a screenshare service that allows the Plaintiff Companies to communicate with customers.

K. Mr. Gitman unilaterally and without Michael Dardashtian's knowledge and/or authorization, changed, altered and/or reset of all of the Plaintiff Companies' passwords, thereby deleting, terminating, removing and/or suspending Michael Dardashtian's previously existing access to all of the Plaintiff Companies' above-referenced accounts. At all times relevant thereto, Michael Dardashtian was a Co-Manager and 50% owner of Plaintiff Companies with Mr. Gitman and Mr. Gitman owed Michael Dardashtian and Plaintiff Companies a fiduciary duty.

L. Mr. Gitman usurped Michael Dardashtian's company email address so that customers and vendors could not reach Michael Dardashtian and Mr. Gitman even placed his own face on Michael Dardashtian's email profile causing confusion among Company customers, vendors and employees.

M. Mr. Gitman misappropriated and diverted Plaintiff Companies' customer payments and revenues away from Plaintiff Companies using his control over Plaintiff Companies electronic payment portals.

N. Mr. Gitman further tried to hold up the sale of the assets of NDAP, CSV owned and controlled company, and demanded financial concessions from Plaintiff Companies by issuing oral and written demands upon Michael Dardashtian that he, in part, pay a portion of Plaintiff Companies' profits from the future sale of NDAP's assets to an employee named Alice Fritz and pay amounts in excess of what was agreed upon to broker, Jeremy Falk, who Mr. Gitman was secretly engaged in at least one competing business with at the time, unbeknownst to Michael Dardashtian or Plaintiff Companies.

O. Mr. Gitman, without Michael Dardashtian's knowledge or consent, operated one or more competing businesses with Plaintiff Companies' broker Jeremy Falk while Falk was representing Plaintiff CSV as a broker for the sale of the assets of NDAP, and shared certain financial information related to Plaintiff Companies with Falk without Michael Dardashtian's knowledge or consent.

P. Mr. Gitman previously attempted to obtain a paid job with a company that CSV had invested in, named Sigmento, without disclosing this to Michael Dardashtian.

Q. Mr. Gitman engaged in a series of actions as outlined above that resulted in his own voluntary, and subsequent court-ordered separation and removal as a Co-Manager to the Plaintiff Companies. Mr. Gitman first voluntarily separated himself from serving the company by forming a competing company and converting/misappropriating Plaintiff Companies' assets, developers, employees, funds, customers and confidential and proprietary information belonging to CSV and ChannelReply diverting same over to Mr. Gitman's newly formed competing company, Channel Reply Inc,. to the detriment of Plaintiff Companies.

The Court thereafter ordered in the Federal Lawsuit Mr. Gitman's separation and removal as a Co-Manager to the Plaintiff Companies. By Order of the Honorable Louis L. Stanton, U.S.D.J. dated June 19, 2017 in the Federal Lawsuit, the Court granted preliminary injunctive relief, in-part, in favor of the Plaintiff Companies and Plaintiff Michael Dardashtian, against Mr. Gitman, including, but not being limited to, (i) the removal of Mr. Gitman as Co-Manager of the Plaintiff Companies (ii) for Mr. Gitman to fully restore the Plaintiff Companies' operating and banking accounts, and (iii) for Mr. Gitman to immediately dissolve Defendant Channel Reply, Inc. Mr. Gitman was also ordered to restore Michael Dardashtian's previously existing access to all Plaintiff Companies' electronic and other accounts.

R. On or about June 20, 2017, Mr. Gitman induced the Plaintiff Companies' developers to resign from and otherwise terminate their business relationship with the Plaintiff Companies, including ChannelReply, in a further effort to shut down ChannelReply and

unlawfully compete against Plaintiff Companies and ChannelReply using Mr. Gitman's newly formed entity, Channel Reply, Inc., with the intent to harm the Plaintiff Companies. As a direct result of the Plaintiff Companies' developers' resignations, Plaintiff Companies were unable to service existing customers, lost new customers and had to expend considerable funds to train and hire third party contractors to take over for the newly departed Plaintiff Companies' developers in order to keep the Plaintiff Companies' business operations afloat.

## PURCHASE PRICE

Pursuant to Article 11.5(d) of the CSV Operating Agreement, the Purchase Price to be paid by CSV to Mr. Gitman for the redemption of all of Mr. Gitman's right, title, ownership and interest in the Plaintiff Companies shall be equal to (i) the amount that Mr. Gitman (also referred to herein as the "Redeemed Member") would have received had the Plaintiff Companies (A) terminated on the date the Redemption Notice is given, (B) sold all of their assets at their fair market values on the date the Redemption Notice was given, (C) satisfied all of their debts and obligations and (D) made distributions to the Members, Michael Dardashtian and Mr. Gitman, in accordance with Article 16.2 of the CSV Operating Agreement, less (ii) any distributions made to Mr. Gitman after the date the Redemption Notice is given to the Redemption Closing Date. The value of the Plaintiff Companies' assets and Mr. Gitman's interests therein shall be determined by Management pursuant to Article 11.5 of the CSV Operating Agreement.

Management has determined that the redemption amount to be paid to Mr. Gitman for the redemption of all of his right, title, ownership and interest in CSV and ChannelReply shall be FIVE HUNDRED AND FIVE THOUSAND DOLLARS ($505,000) ("Purchase Price").

Management has determined that the Purchase Price to be paid to Mr. Gitman by CSV, on behalf of NDAP, for the redemption of all of his right, title, ownership and interest in NDAP, shall be computed as follows:

- NDAP Asset Sale Price-$450,000
- Less Parts Authority Debt Paid- $100,000
- Less Broker Fee Paid to Jeremy Falk- $55,000
- Current Net Payments in the Escrow Account- $130,000 ("NDAP Escrow")
- Payments Due from Buy Auto Parts to NDAP are $5,000 per month with a total balance due NDAP as of May 1, 2020 in the amount of $165,000 ("Buy Auto Parts Receivable")
- Total of NDAP Escrow ($130,000) plus Buy Auto Parts Receivable ($165,000) equals $295,000 assuming the full Buy Auto Parts Receivable is collected.

Management has determined that the Purchase Price to be paid to Mr. Gitman by CSV, on behalf of its 50% ownership interest in its non-operating company, Plumburs, LLC, for the redemption of all of his right, title, ownership and interest in Plumburs, LLC, shall be computed as follows:

- Plumburs, LLC CitiBank Account Balance- $9,081.62
- Less BPVC, LLC's 50% interest in the CitiBank Account Balance- $4,540.81
- CSV's 50% interest in the CitiBank Account Balance- $4,540.81
- Mr. Gitman's 50% interest in CSV's 50% interest Plumburs, LLC CitiBank Account Balance- $2,270.41

Management has determined that the Purchase Price to be paid to Mr. Gitman by CSV, on behalf of its 50% ownership interest in Plumburs, LLC, for the redemption of all of his right, title, ownership and interest in Plumburs, LLC, shall be 50% of CVS's 50% interest in Plumburs, LLC CitiBank Account Balance in the amount of $2,270.41.

## PAYMENT OF PURCHASE PRICE

Pursuant to Article 11.5(e) of the CSV Operating Agreement, the Purchase Price for the redemption of all of Mr. Gitman's right, title, ownership and interest in CSV and ChannelReply shall be paid in the form of an unsecured promissory note (the "Redemption Note") payable to Mr. Gitman over a three (3) year term. The principal amount of the Redemption Note shall bear interest at the lowest rate necessary to avoid the imputation of additional interest for Federal income tax purposes. Level payments of interest and principal shall be made on the note on a quarterly basis to fully amortize the principal balance over the term of the Redemption Note. The first payment under the Redemption Note shall be due ninety (90) days after the Redemption Closing Date. The Redemption Note shall be pre-payable at any time and from time to time. The outstanding balance of the Redemption Note shall be prepaid upon the dissolution of the Company in accordance with Article 16.2(b) of the CSV Operating Agreement.

Pursuant to Article 11.5(e) of the CSV Operating Agreement, the Purchase Price for the redemption of all of Mr. Gitman's right, title, ownership and interest in NDAP shall be paid as follows:

(a) 50% of the NDAP Escrow in the amount of $65,000 payable at the Closing; plus

(b) 50% of the Buy Auto Parts Receivable payable on the 1st day of each calendar quarter commencing with July 1, 2020 based upon actual collections.

Pursuant to Article 11.5(e) of the CSV Operating Agreement, the Purchase Price for the redemption of all of Mr. Gitman's right, title, ownership and interest in the CitiBank Account Balance shall be paid as follows:

(a) 50% of CSV's 50% interest in the Plumburs CitiBank Account Balance in the amount of $2,270.41 payable at the Closing.

REDEMPTION CLOSING DATE AND CLOSING DELIVERIES

Pursuant to Article 11.5(f) of the CSV Operating Agreement, the Redemption Closing Date shall be on a date and at the time specified by Management in the Redemption Notice but not later than the 30th day following the date the Redemption Notice is given unless that date is a Saturday or Sunday, in which case the Closing Date shall take place on the Monday immediately following. Closing shall occur at CSV's principal office or at such other place specified by Management in the Redemption Notice. At the closing CSV shall tender the Redemption Note and payment as set forth above to Mr. Gitman, the Redeemed Member, and Mr. Gitman shall accept the same and execute such documents of transfer as Management may request. If Mr. Gitman shall not accept the tenders referenced above or shall refuse to execute said transfer documents, Management shall be entitled to execute the documents of transfer for and on behalf of Mr. Gitman, with the same effect as if Mr. Gitman had done so himself, and the contemplated transfers shall be deemed closed once Management has deposited the Redemption Note (i) as an interpleader in any court of competent jurisdiction or (ii) in a non-interest bearing escrow account at any established title company, trust company or banking institution, under instructions that the same (and any payment made under the Redemption Note after such deposit) may be withdrawn by Mr. Gitman upon demand. The closing of the Redemption as contemplated in this paragraph shall not prejudice Mr. Gitman's right to contest the amount of the Purchase Price but Mr. Gitman shall not be permitted to contest the closing as contemplated by this paragraph and in Article 11.5 of the CSV Operating Agreement.

THE CLOSING of Mr. Gitman's Redemption shall occur on June 1, 2020 ("Redemption Closing Date") at the law office of Guaglardi & Meliti, LLP, located at 365 West Passaic Street, Suite 130, Rochelle Park, New Jersey 07662 at which time all transfer documents required for the Closing shall be executed.

If Mr. Gitman does not accept the tender of the Redemption Note due in connection with the Redemption of all of Mr. Gitman's right, title, ownership and interest in CSV and ChannelReply, or Mr. Gitman does not accept the tender for all of his right, title, ownership and interest in NDAP, and Plumburs, LLC, or Mr. Gitman refuses to execute any transfer document required by Article 11.5 of the CSV Operating Agreement that is required to effectuate the Redemptions as set forth above, Management will execute all such necessary documents to ensure the orderly transfer for and on behalf of Mr. Gitman with the same effect as if the Mr. Gitman had done so himself.

Thank you and if you have any questions, please refer to the CSV Operating Agreement, a copy of which is enclosed herein for your reference. We have copied your counsel in the Federal Lawsuit, Peter Sim, Esq. on this Redemption Notice as well.

Very truly yours,

Michael Dardashtian, Co-Manager of Plaintiff Companies, Cooper Square Ventures, LLC, a/k/a Cooper Square, LLC, ChannelReply and NDAP, LLC

_____

Joel Liebman, Co-Manager of Plaintiff Companies, Cooper Square Ventures, LLC, a/k/a Cooper Square, LLC, ChannelReply and NDAP, LLC

_____

Cc: Peter Sim, Esq., counsel for David Gitman (via electronic mail)