UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

MICHAEL DARDASHTIAN, individually and on behalf of COOPER SQUARE VENTURES, LLC NDAP, LLC and CHANNEL REPLY, LLC[1]

                           Plaintiffs,

-against-

DAVID GITMAN, ACCEL COMMERCE, LLC, ROCK HOLDINGS, LLC, ACCEL COMMERCE, LLC, DALVA VENTURES, LLC, KONSTANTYN BAGAIEV, OLESKSII GLUKHAREV and CHANNEL REPLY, INC.,

_____

Case No. 17 CV 4327 (LLS)(RWL)


**AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANTS DAVID GITMAN, ACCEL COMMERCE, LLC, DALVA VENTURES, LLC AND CHANNELREPLY, INC.**


**JURY DEMAND**

---

[1] Counsel notes that the correct spelling of both defendant ChannelReply, Inc. ("CR Inc.") and plaintiff ChannelReply, LLC ("CR LLC") has no space between the words "Channel" and "Reply." Counsel further notes that since the filing of this action, CR Inc. has been dissolved pursuant to Court Order, dated June 19, 2017.

DAVID GITMAN, individually, and on behalf of )
COOPER SQUARE VENTURES, LLC, and )
NDAP, LLC )
          Counterclaim Plaintiffs, )
 )
-against- )
 )
MICHAEL DARDASHTIAN )
 )
          Counterclaim Defendant. )
 )

_____

     Defendants David Gitman ("Gitman"), Accel Commerce, LLC ("Accel"), Dalva Ventures, LLC ("Dalva"), and ChannelReply, Inc. ("CR Inc.") (collectively, the "Defendants"), by and through their undersigned counsel, respond to plaintiffs' Verified Complaint dated April 30, 2020 (the "Complaint") with the following Answer and Defenses.

## DEFENDANTS' ANSWER
## PARTIES

1.     Defendants deny the allegations in paragraph 1 of the Complaint.

2.     Defendants deny the allegations in paragraph 2 of the Complaint.

3.     Defendants deny the allegations in paragraph 3 of the Complaint.

4.     Defendants deny the allegations in paragraph 4 of the Complaint.

5.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6.     Defendants deny the allegations in paragraph 6 of the Complaint.

7.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint.

8.     Defendants deny the allegations in paragraph 8 of the Complaint.

9.     Defendants deny the allegations in paragraph 9 of the Complaint.

10.     Defendants deny the allegations in paragraph 10 of the Complaint.

11.     Defendants deny the allegations in paragraph 11 of the Complaint.

12.     Defendants deny the allegations in paragraph 12 of the Complaint.

13.     Defendants deny the allegations in paragraph 13 of the Complaint.

14.     Defendants deny the allegations in paragraph 14 of the Complaint.

15.     Defendants deny the allegations in paragraph 15 of the Complaint.

16.     Defendants deny the allegations in paragraph 16 of the Complaint.

17.     Defendants deny the allegations in paragraph 17 of the Complaint.

18.     Defendants deny the allegations in paragraph 18 of the Complaint

## JURISDICTION AND VENUE

19.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

## FACTS COMMON TO ALL COUNTS

23.     Defendants deny the allegations in paragraph 23 of the Complaint.

24.     Defendants deny the allegations in paragraph 24 of the Complaint, and state that the terms of the Summit Rock Service Agreement speak for themselves.

25.     Defendants deny the allegations in paragraph 25 of the Complaint.

26.     Defendants admit the allegations in paragraph 26 of the Complaint.

27.     Defendants deny the allegations in paragraph 27 of the Complaint.

28.     Defendants deny the allegations in paragraph 28 of the Complaint.

29.     Defendants deny the allegations in paragraph 29 of the Complaint.

30.     Defendants deny the allegations in paragraph 30 of the Complaint.

31.     Defendants deny the allegations in paragraph 31 of the Complaint.

32.     Defendants deny the allegations in paragraph 32 of the Complaint.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Complaint.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Complaint. (Dardashtian immediately called bank)

35.     Defendants deny the allegations in paragraph 35 of the Complaint.

36.     Defendants deny the allegations in paragraph 36 of the Complaint.

37.     Defendants deny the allegations in paragraph 37 of the Complaint.

38.     Defendants deny the allegations in paragraph 38 of the Complaint.

39.     Defendants deny the allegations in paragraph 39 of the Complaint.

40.     Defendants deny the allegations in paragraph 40 of the Complaint.

41.     Defendants deny the allegations in paragraph 41 of the Complaint.

42.     Defendants deny the allegations in paragraph 42 of the Complaint.

43.     Defendants deny the allegations in paragraph 43 of the Complaint.

44.     Defendants deny the allegations in paragraph 44 of the Complaint.

45.     Defendants deny the allegations in paragraph 45 of the Complaint.

46.     Defendants deny the allegations in paragraph 46 of the Complaint.

47.    Defendants deny the allegations in paragraph 47 of the Complaint.

48.    Defendants deny the allegations in paragraph 48 of the Complaint.

49.    Defendants deny the allegations in paragraph 49 of the Complaint.

50.    Defendants deny the allegations in paragraph 50 of the Complaint.

51.    Defendants deny the allegations in paragraph 51 of the Complaint.

52.    Defendants deny the allegations in paragraph 52 of the Complaint.

53.    Defendants deny the allegations in paragraph 53 of the Complaint.

54.    Defendants deny the allegations in paragraph 54 of the Complaint.

55.    Defendants deny the allegations in paragraph 55 of the Complaint.

56.    Defendants deny the allegations in paragraph 56 of the Complaint.

57.    Defendants deny the allegations in paragraph 57 of the Complaint.

58.    Defendants deny the allegations in paragraph 58 of the Complaint.

59.    Defendants deny the allegations in paragraph 59 of the Complaint.

60.    Defendants deny the allegations in paragraph 60 of the Complaint.

61.    Defendants deny the allegations in paragraph 61 of the Complaint.

62.    Defendants deny the allegations in paragraph 62 of the Complaint.

63.    Defendants deny the allegations in paragraph 63 of the Complaint.

64.    Defendants deny the allegations in paragraph 64 of the Complaint.

65.    Defendants deny the allegations in paragraph 65 of the Complaint.

66.    Defendants deny the allegations in paragraph 66 of the Complaint.

67.    Defendants deny the allegations in paragraph 67 of the Complaint.

68.    Defendants deny the allegations in paragraph 68 of the Complaint.

69.    Defendants deny the allegations in paragraph 69 of the Complaint.

70.     Defendants deny the allegations in paragraph 70 of the Complaint.

71.     Defendants deny the allegations in paragraph 71 of the Complaint.

72.     Defendants deny the allegations in paragraph 72 of the Complaint.

73.     Defendants deny the allegations in paragraph 73 of the Complaint.

74.     Defendants deny the allegations in paragraph 74 of the Complaint.

75.     Defendants deny the allegations in paragraph 75 of the Complaint.

76.     Defendants deny the allegations in paragraph 76 of the Complaint.

77.     Defendants deny the allegations in paragraph 77 of the Complaint.

78.     Defendants deny the allegations in paragraph 78 of the Complaint.

79.     Defendants deny the allegations in paragraph 79 of the Complaint.

80.     Defendants deny the allegations in paragraph 80 of the Complaint.

81.     Defendants deny the allegations in paragraph 81 of the Complaint.

82.     Defendants deny the allegations in paragraph 82 of the Complaint.

83.     Defendants deny the allegations in paragraph 83 of the Complaint.

84.     Defendants deny the allegations in paragraph 84 of the Complaint.

85.     Defendants deny the allegations in paragraph 85 of the Complaint.

86.     Defendants deny the allegations in paragraph 86 of the Complaint.

87.     Defendants deny the allegations in paragraph 87 of the Complaint.

88.     Defendants deny the allegations in paragraph 88 of the Complaint.

89.     Defendants deny the allegations in paragraph 89 of the Complaint.

90.     Defendants deny the allegations in paragraph 90 of the Complaint.

91.     Defendants deny the allegations in paragraph 91 of the Complaint.

92.     Defendants deny the allegations in paragraph 92 of the Complaint.

93.     Defendants deny the allegations in paragraph 93 of the Complaint.

94.     Defendants deny the allegations in paragraph 94 of the Complaint

95.     Defendants deny the allegations in paragraph 95 of the Complaint.

96.     Defendants deny the allegations in paragraph 96 of the Complaint.

97.     Defendants deny the allegations in paragraph 97 of the Complaint.

98.     Defendants deny the allegations in paragraph 98 of the Complaint.

99.     Defendants deny the allegations in paragraph 99 of the Complaint.

100.    Defendants deny the allegations in paragraph 100 of the Complaint.

101.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101 of the Complaint.

102.    Defendants deny the allegations in paragraph 102 of the Complaint

103.    Defendants deny the allegations in paragraph 103 of the Complaint.

104.    Defendants deny the allegations in paragraph 104 of the Complaint.

105.    Defendants deny the allegations in paragraph 105 of the Complaint.

106.    Defendants deny the allegations in paragraph 106 of the Complaint.

107.    Defendants deny the allegations in paragraph 107 of the Complaint.

108.    Defendants deny the allegations in paragraph 108 of the Complaint.

109.    Defendants deny the allegations in paragraph 109 of the Complaint.

110.    Defendants deny the allegations in paragraph 110 of the Complaint.

111.    Defendants deny the allegations in paragraph 111 of the Complaint

112.    Defendants deny the allegations in paragraph 112 of the Complaint.

113.    Defendants deny the allegations in paragraph 113 of the Complaint.

114.    Defendants deny the allegations in paragraph 114 of the Complaint.

115.    Defendants deny the allegations in paragraph 115 of the Complaint.

116.    Defendants deny the allegations in paragraph 116 of the Complaint.

117.    Defendants deny the allegations in paragraph 117 of the Complaint.

118.    Defendants deny the allegations in paragraph 118 of the Complaint.

119.    Defendants deny the allegations in paragraph 119 of the Complaint.

120.    Defendants deny the allegations in paragraph 120 of the Complaint

121.    Defendants deny the allegations in paragraph 121 of the Complaint.

122.    Defendants deny the allegations in paragraph 122 of the Complaint.

123.    Defendants deny the allegations in paragraph 123 of the Complaint.

124.    Defendants deny the allegations in paragraph 124 of the Complaint.

125.    Defendants deny the allegations in paragraph 125 of the Complaint.

126.    Defendants deny the allegations in paragraph 126 of the Complaint.

127.    Defendants deny the allegations in paragraph 127 of the Complaint.

128.    Defendants deny the allegations in paragraph 128 of the Complaint.

129.    Defendants deny the allegations in paragraph 129 of the Complaint

130.    Defendants deny the allegations in paragraph 130 of the Complaint.

131.    Defendants deny the allegations in paragraph 131 of the Complaint.

132.    Defendants deny the allegations in paragraph 132 of the Complaint.

133.    Defendants admit that a buyout agreement was sent to Gitman but deny that said agreement was sent on the date specified in paragraph 133 of the Complaint.

134.    Defendants admit that Gitman rejected the aforementioned buyout agreement but deny that said rejection occurred on the date specified in paragraph 134 of the Complaint.

135.    Defendants deny the allegations in paragraph 135 of the Complaint.

136.    Defendants deny the allegations in paragraph 136 of the Complaint.

137.    Defendants deny the allegations in paragraph 137 of the Complaint

## COUNT 1
## INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

138.    Answering paragraph 138, Defendants repeat their answers to paragraphs 1 through 137 as though fully set forth at length herein.

139.    In response to paragraph 139, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count One of the Complaint as to Defendants.  To the extent an answer is required, Defendants deny the allegations contained in paragraph 139.

140.    In response to paragraph 140, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count One of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 140.

141.    In response to paragraph 141, Defendants state that no answer is required in light   of the Court's Opinion and Order, dated November 28, 2017, dismissing Count One of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 141.

142.    In response to paragraph 142, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count One of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 142.

143.    In response to paragraph 143, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count One of the Complaint

as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 143.

144.    In response to paragraph 144, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count One of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 144. In response to the "Whereas" clause of Count One of the Complaint, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count One of the Complaint. However, the Defendants deny the allegations contained in paragraph 144 of the Complaint.

## COUNT 2
## BREACH OF FIDUCIARY DUTY AS TO GITMAN

145.    Answering paragraph 145, Defendants repeat their answers to paragraphs 1 through 144 as though fully set forth at length herein.

146.    Gitman denies the allegations in paragraph 146 of the Complaint

147.    Gitman denies the allegations in paragraph 147 of the Complaint.

148.    Gitman denies the allegations in paragraph 148 of the Complaint.

149.    Gitman denies the allegations in paragraph 149 of the Complaint.

150.    Gitman denies the allegations in paragraph 150 of the Complaint.

151.    Gitman denies the allegations in paragraph 151 of the Complaint.  Gitman denies that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Two of the Complaint.

## COUNT 3

**BREACH OF FIDUCIARY DUTY AS TO FALK AND SUMMIT ROCK**

152.    Answering paragraph 152, Defendants repeats their answers to paragraphs 1 through 151 as though fully set forth at length herein.

153.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153 of the Complaint.

154.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 154 of the Complaint. Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Three of the Complaint.

**COUNT 4**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES**
**AS TO ALL DEFENDANTS**

155.    Answering paragraph 155, Defendants repeats their answers to paragraphs 1 through 154 as though fully set forth at length herein.

156.    Defendants deny the allegations in paragraph 156 of the Complaint.

157.    Defendants deny the allegations in paragraph 157 of the Complaint.

158.    Defendants deny the allegations in paragraph 158 of the Complaint.

159.    Defendants deny the allegations in paragraph 159 of the Complaint. Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Four of the Complaint.

**COUNT 5**
**VIOLATION OF 18 USC 1832 AND 18 USC 1836 AGAINST GITMAN,**
**FALK, BAGAIEV, GLUHAREV, ACCEL COMMERCE, DALVA**
**VENTURES, AND DEFENDANT CHANNEL REPLY, INC.**

160.    Answering paragraph 160, Defendants repeats their answers to paragraphs 1 through 159 as though fully set forth at length herein.

161.    Defendants deny the allegations in paragraph 161 of the Complaint.

162.    Defendants deny the allegations in paragraph 162 of the Complaint.

163.    Defendants deny the allegations in paragraph 163 of the Complaint.

164.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 164 of the Complaint.

165.    Defendants deny the allegations in paragraph 165 of the Complaint.

Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Five of the Complaint.

### COUNT 6
### INJUNCTIVE RELIEF PURSUANT TO 18 USC 1836(b)(3) AGAINST GITMAN, FALK, BAGAIEV, GLUKHAREV, ACCEL COMMERCE AND DEFENDANT CHANNEL REPLY, INC.

166.    In response to paragraph 166, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Six of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 166.

167.    In response to paragraph 167, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Six of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 167.

168.    In response to paragraph 168, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Six of the Complaint as

to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 168.

169.    In response to paragraph 169, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Six of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 169.

170.    In response to paragraph 170, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Six of the Complaint as to Defendants. In response to the "Whereas" clause of Count Six of the Complaint, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Six of the Complaint. To the extent an answer is required, Defendants deny the allegations contained in paragraph 170.

## COUNT 7
## BREACH OF CONTRACT AGAINST GITMAN

171.    Answering paragraph 171, Gitman repeats his answers to paragraphs 1 through 170 as though fully set forth at length herein.

172.    Gitman denies the allegations in paragraph 172 of the Complaint, and states that the terms of the CSV Operating Agreement speak for themselves.

173.    Gitman denies the allegations in paragraph 173 of the Complaint.

174.    Gitman denies the allegations in paragraph 174 of the Complaint, states that the terms of the CSV Operating Agreement speak for themselves.

175.    Gitman denies the allegations in paragraph 175 of the Complaint.

176.    Gitman denies the allegations in paragraph 176 of the Complaint.

177.    Gitman denies the allegations in paragraph 177 of the Complaint.

178.    Gitman denies the allegations in paragraph 178 of the Complaint

179.    Gitman denies the allegations in paragraph 179 of the complaint

180.    Gitman denies the allegations in paragraph 180 of the Complaint, states that the terms of the CSV Operating Agreement speak for themselves. Gitman denies that Plaintiffs are entitled to any of the relief sought in the "Wheref7ore" clause of Count Seven of the Complaint.

## COUNT 8
## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

181.    Answering paragraph 181, Defendants repeat the answers to paragraphs 1 through 180 as though fully set fort at length herein.

182.    Defendants deny the allegations in paragraph 182 of the Complaint.

183.    Defendants deny the allegations in paragraph 183 of the Complaint.

184.    Defendants deny the allegations in paragraph 184 of the Complaint.

Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Eight of the Complaint.

## COUNT 9
## BREACH OF COVENANT OF GOOD FAITH
## AND FAIR DEALING AGAINST GITMAN

185.    Answering paragraph 185, Gitman repeats his answers to paragraphs 1 through 184 as though fully set forth at length herein.

186.    The allegations contained in paragraph 186 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Gitman denies the allegations in paragraph 186 of the Complaint.

187.    Gitman denies the allegations in paragraph 187 of the Complaint.

188.     Gitman denies the allegations in paragraph 188 of the Complaint. Gitman denies that

Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Nine of the

Complaint.

**COUNT 10**
**CONVERSION**

189.     Answering 189, Gitman repeats his answers to paragraphs 1 through 188 as though fully

set forth at length herein.

190.     Gitman admits the allegations in paragraph 190 of the Complaint.


191.     Gitman denies the allegations in paragraph 191 of the Complaint.

192.     Gitman denies the allegations in paragraph 192 of the Complaint, and states that the bank

account records speak for themselves.

193.     Gitman denies the allegations in paragraph 193 of the Complaint.

194.     Gitman denies the allegations in paragraph 194 of the Complaint.

195.     Gitman denies the allegations in paragraph 195 of the Complaint.

196.     Gitman denies the allegations in paragraph 196 of the Complaint.

197.     Gitman denies the allegations in paragraph 197 of the Complaint.

Gitman denies that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of

Count Ten of the Complaint.

**COUNT 11**
**CIVIL CONSPIRACY AS TO FALK, ACCEL COMMERCE, BAGAIEV,**
**GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC.**
**AS TO GITMAN'S CONVERSION**

198.     Answering paragraph 198, Defendants repeat the answers to paragraphs 1 through 197 as

though fully set forth at length herein.

199.    Defendants deny the allegations in paragraph 199 of the Complaint.

200.    Defendants deny the allegations in paragraph 200 of the Complaint.

201.    Defendants deny the allegations in paragraph 201 of the Complaint.

202.    Defendants deny the allegations in paragraph 202 of the Complaint.

Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Eleven of the Complaint.

## COUNT 12
### FALSE DESIGNATION/ UNFAIR COMPETITION 15 U.S.C. 1125
### AGAINST GITMAN AND DEFENDANT CHANNEL REPLY, INC.

203.    Answering paragraph 203, Defendants Gitman and CR Inc. repeat the answers to paragraphs 1 through 202 as though fully set forth at length herein.

204.    Defendants Gitman and CR Inc. deny the allegations in paragraph 204 of the Complaint.

205.    Defendants Gitman and CR Inc. deny the allegations in paragraph 205 of the Complaint.

206.    Defendants Gitman and CR Inc. deny the allegations in paragraph 206 of the Complaint.

207.    Defendants Gitman and CR Inc. deny the allegations in paragraph 207 of the Complaint.

208.    Defendants Gitman and CR Inc. deny the allegations in paragraph 208 of the Complaint.

209.    Defendants Gitman and CR Inc. deny the allegations in paragraph 209 of the Complaint.

210.    The allegations contained in paragraph 210 of the Complaint contain legal conclusions to which no response is required, and refer to the Court's Order, dated June 19, 2017. To the extent a response is required, Defendants Gitman and CR Inc. deny the allegations contained in paragraph 210 of the Complaint.

211.    Defendants Gitman and CR Inc. deny the allegations contained in paragraph 211 of the Complaint. Defendants Gitman and CR Inc. deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Twelve of the Complaint.

## COUNT 13
## COMPUTER FRAUD 18 USC § 1030

212.    In response to paragraph 212, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 212.

213.    In response to paragraph 213, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 213.

214.    In response to paragraph 214, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 214.

215.    In response to paragraph 215, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 215.

216.    In response to paragraph 216, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 216.

217.    In response to paragraph 217, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the

Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 217.

218.     In response to paragraph 218, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 218.

219.     In response to paragraph 219, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 219.

220.     In response to paragraph 220, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. In response to the "Wherefore" clause, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 220.

## COUNT 14
### CIVIL CONSPIRACY AS TO FALK, ACCEL COMMERCE, BAGAIEV, GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC. AS TO GITMAN'S VIOLATION OF 18 USC § 1030

221.     In response to paragraph 221, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants, and therefore Count Fourteen, which is dependent on Count Thirteen. To the extent an answer is required, Defendants repeat the answers to paragraphs 1 through 221 as though fully set forth at length herein.

222.    In response to paragraph 222, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants, and therefore Count Fourteen, which is dependent on Count Thirteen. To the extent an answer is required, Defendants deny the allegations contained in paragraph 222.

223.    In response to paragraph 223, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants, and therefore Count Fourteen, which is dependent on Count Thirteen. To the extent an answer is required, Defendants deny the allegations contained in paragraph 223.

224.    In response to paragraph 224, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants, and therefore Count Fourteen, which is dependent on Count Thirteen. To the extent an answer is required, Defendants deny the allegations contained in paragraph 224.

225.    In response to paragraph 225, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants, and therefore Count Fourteen, which is dependent on Count Thirteen. To the extent an answer is required, Defendants deny the allegations contained in paragraph 225. In response to the "Wherefore" clause, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Thirteen of the Complaint as to Defendants, and therefore Count Fourteen, which is dependent

on Count Thirteen, Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Fourteen of the Complaint.

## COUNT 15
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AGAINST GITMAN, FALK, ACCEL COMMERCE, BAGAIEV, GLUKHAREV, DALVA VENTURES, AND CHANNEL REPLY, INC.

226. Answering paragraph 226, Defendants repeat the answers to paragraphs 1 through 194 as though fully set forth at length herein.

227. Defendants deny the allegations in paragraph 227 of the Complaint.

228. Defendants deny the allegations in paragraph 228 of the Complaint.

229. Defendants deny the allegations in paragraph 229 of the Complaint.

230. Defendants deny the allegations in paragraph 230 of the Complaint.

231. Defendants deny the allegations in paragraph 231 of the Complaint.

Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Fifteen of the Complaint.

## COUNT 16
### DEFAMATION PER SE

232. Answering paragraph 232, Gitman repeats the answers to paragraphs 1 through 231 as though fully set forth at length herein.

233. Answering paragraph 233, Gitman repeats the answers to paragraphs

234. Gitman denies the allegations in paragraph 234 of the Complaint.

235. Gitman denies the allegations in paragraph 235 of the Complaint.

236. Gitman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 236 of the Complaint.

237.     Gitman denies the allegations in paragraph 237 of the Complaint, except admits that he stated his opinion to Bagaiev that Dardashtian was a "bully."

238.     Gitman denies the allegations in paragraph 238 of the Complaint. Gitman denies that Plaintiff Dardashtian is entitled to any of the relief sought in the "Wherefore" clause of Count Sixteen of the Complaint.

## COUNT 17
## IDENTITY THEFT: NY CLS BUS 380-S AGAINST GITMAN

239.     In response to paragraph 239, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Seventeen of the Complaint as to Defendants. To the extent an answer is required, Defendants repeat the answers to paragraphs 1 through 239 as though fully set forth at length herein.

240.     In response to paragraph 240, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Seventeen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 240.

241.     In response to paragraph 241, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Seventeen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 241.

242.     In response to paragraph 243, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017, dismissing Count Seventeen of the Complaint as to Defendants. In response to the "Wherefore" clause, Defendants state that no answer is required in light of the Court's Opinion and Order, dated November 28, 2017,

dismissing Count Seventeen of the Complaint as to Defendants. To the extent an answer is required, Defendants deny the allegations contained in paragraph 242.

## COUNT 18
## UNFAIR COMPETITION AS TO ALL DEFENDANTS
## UNDER NEW YORK STATE LAW

243.    Answering paragraph 244, Defendants repeat the answers to paragraphs 1 through 243 as though fully set forth at length herein.

244.    Defendants deny the allegations in paragraph 245 of the Complaint.

245.    Defendants deny the allegations in paragraph 246 of the Complaint. Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Eighteen of the Complaint.

## COUNT 19
## MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK STATE
## LAW

246.    Answering paragraph 247, Defendants repeat the answers to paragraphs 1 through 246 as though fully set forth at length herein.

247.    Defendants deny the allegations in paragraph 216 of the Complaint.

248.    Defendants deny the allegations in paragraph 217 of the Complaint.

249.    Defendants deny the allegations in paragraph 218 of the Complaint.

250.    Defendants deny the allegations in paragraph 219 of the Complaint.

Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Nineteen of the Complaint.

## COUNT 20
## DECLARATORY JUDGEMENT PURSUANT TO CPLR 3001 COMPELLING
## THE REDEMPTION OF DEFENDANT GITMAN'S MEMBERSHIP INTERESTS

**IN PLAINTIFF COMPANIES PURSUANT TO SECTION 11.5 OF THE CSV OPERATING AGREEMENT**

251.    Answering paragraph 251, Defendants repeat the answers to paragraphs 1 through 250 as though fully set forth at length herein.

252.    Defendants deny the allegations in paragraph 252 of the Complaint.

253.    Defendants deny the allegations in paragraph 253 of the Complaint.

254.    Defendants deny the allegations in paragraph 254 of the Complaint.

255.    Defendants deny the allegations in paragraph 255 of the Complaint.

256.    Defendants deny the allegations in paragraph 256 of the Complaint.

257.    Defendants deny the allegations in paragraph 257 of the Complaint.

258.    Defendants deny the allegations in paragraph 258 of the Complaint.

259.    Defendants deny the allegations in paragraph 259 of the Complaint.

260.    Defendants deny the allegations in paragraph 260 of the Complaint.

261.    Defendants deny the allegations in paragraph 261 of the Complaint.

262.    Defendants deny the allegations in paragraph 262 of the Complaint.

263.    Defendants deny the allegations in paragraph 263 of the Complaint.

Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Nineteen of the Complaint.

**COUNT 21**
**JUDICIAL DISSOLUTION OF CSV AND ITS WHOLLY OWNED COMPANIES PURSUANT TO NY CLS LLC 702 AND SECTIONS 4.2 AND 16 OF THE OPERATING AGREEMENT, AND ORDERING PLAINTIFF DARDASHTIAN AND/OR PLAINTIFF CSV BE PERMITTED TO EQUITABLY BUY-OUT ALL OF DEFENDANT GITMAN'S RIGHT, TITLE, AND MEMBERSHIP INTERESTS IN THE PLAINTIFF COMPANIES CSV, NDAP, LLC AND CHANNELREPLY.**

264.　　Answering paragraph 264, Defendants repeat the answers to paragraphs 1 through 263 as though fully set forth at length herein.

265.　　Defendants deny the allegations in paragraph 265 of the Complaint.

266.　　Defendants deny the allegations in paragraph 266 of the Complaint.

267.　　Defendants deny the allegations in paragraph 267 of the Complaint.

268.　　Defendants deny the allegations in paragraph 268 of the Complaint.

269.　　Defendants deny the allegations in paragraph 269 of the Complaint.

270.　　Defendants deny the allegations in paragraph 270 of the Complaint.

271.　　Defendants deny the allegations in paragraph 271 of the Complaint.

272.　　Defendants deny the allegations in paragraph 272 of the Complaint.

273.　　Defendants deny the allegations in paragraph 273 of the Complaint.

274.　　Defendants deny the allegations in paragraph 274 of the Complaint.

275.　　Defendants deny the allegations in paragraph 275 of the Complaint.

276.　　Defendants deny the allegations in paragraph 276 of the Complaint.

Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clause of Count Nineteen of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES[2]

### FIRST DEFENSE
Plaintiffs fail to state a claim upon which relief can be granted.

---

[2] Defendants do not assume the burden of proof or production that they would not otherwise have as a matter of law.

## SECOND DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations and, subject to proof through discovery, Plaintiffs do not establish any continuing violation.

## THIRD DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

## FOURTH DEFENSE

Plaintiffs have failed to sufficiently mitigate their damages, if any.

## FIFTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of estoppel, quasiestoppel, and/or equitable estoppel.

## SIXTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the after-acquired evidence doctrine.

## SEVENTH DEFENSE

Plaintiffs' own culpable conduct caused, in whole or in part, whatever damages they may have suffered.

## EIGHTH DEFENSE

To the extent Plaintiffs have suffered any damages, such damages are not attributable to any alleged breaches or wrongdoing by Defendants.

## NINTH DEFENSE

Defendants breached no duty, contractual or otherwise, to Plaintiffs.

## TENTH DEFENSE

At all times relevant hereto, Defendants complied with all applicable laws, regulations, and standards.

## ELEVENTH DEFENSE

Plaintiffs are not entitled to punitive damages in that (i) Plaintiffs cannot demonstrate malice, actual participation in unlawful acts or reckless indifference; and (ii) Plaintiffs cannot impute liability for punitive damages to Defendants because of their comprehensive good-faith efforts to comply with all laws.

## TWELFTH DEFENSE

The United States and New York Constitutions, and/or the laws under which this action purports to be brought bars Plaintiffs' claims for punitive damages, in whole or in part.

## THIRTEENTH DEFENSE

All actions taken or omitted by Defendants with respect to Plaintiffs were taken or omitted in good faith, without any malice, evil motives, callous indifference, reckless indifference, or willfulness.

## FOURTEENTH DEFENSE

Plaintiffs' alleged damages are speculative and not recoverable.

## FIFTEENTH DEFENSE

Plaintiffs' defamation claims are barred in whole or in part because they constitute opinion speech and/or constitute true statements.

## SIXTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part because Plaintiffs lack the legal authority to bring them.

## SEVENTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

**EIGHTEENTH DEFENSE**

Plaintiffs have committed wrongdoing in regards to CSV, the very subject of Plaintiff's

legal action against Defendants. Plaintiffs' claims are therefore barred in

whole or in part by the doctrine of Unclean Hands.

**NINETEENTH DEFENSE**

Plaintiffs filed this amended complaint without obtaining the consent of the

Defendants or Leave of Court. Plaintiffs are therefore barred from raising any claims not

raised in Plaintiffs' first amended complaint dated April 30, 2020.

**TWENTIETH DEFENSE**

Defendants assert all affirmative and other defenses available to them under the

state law, common law, and otherwise.

**COUNTERCLAIMS**

Defendant/Counterclaimant Gitman files the following Counterclaims,

individually and on behalf of Cooper Square Ventures, LLC ("CSV") and NDAP, LLC

("NDAP") (together, "Counterclaim Plaintiffs") against plaintiff/counterclaim defendant

Michael Dardashtian ("Dardashtian").

**PARTIES**

1.      Counterclaim plaintiff David Gitman is an individual who owns a fifty-percent (50%)

membership interest in CSV, and who is a resident of Kings County, New York. Gitman is a

2016 and 2017 IBM Cloud Champion, Amazon Web Service Certified Solutions

Architect and Magento Certified Solution Specialist with decades of experience in e-commerce.

2.      Counterclaim plaintiff CSV is a New York limited liability company with a principal

place of business located at 1010 Northern Blvd, Suite 208, Great Neck, NY 11021.

3.      Counterclaim plaintiff NDAP is a wholly owned subsidiary of CSV that was engaged in the online sale of automobile parts to customers. The assets of NDAP were sold on July 28, 2017.

4.      Counterclaim defendant Michael Dardashtian is an individual who owns a fiftypercent (50%) membership interest in CSV, and who resides at 21 Canterbury Rd, Apt 3, Great Neck, New York, 11021.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction with respect to these counterclaims pursuant to 28 U.S.C. § 1367 and based upon the doctrine of supplemental jurisdiction.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as all parties to the Counterclaims reside within the jurisdiction of this Court or regularly conduct business within this Court's jurisdiction.

7.      As set forth herein, Dardashtian breached his fiduciary duties to Gitman, individually, and to CSV and NDAP, and also misappropriated confidential and/or proprietary information of the counterclaim plaintiff entities.

8.      Prior to bringing the derivative counterclaims on behalf of CSV and NDAP, Gitman did not make a demand to bring such counterclaims on the managers (Dardashtian and himself) of the entities because such a demand would have been futile given Dardashtian's claims in this lawsuit and the nature of the derivative counterclaims against Dardashtian.

9.      As the required demand would have been futile, Gitman was not required to make such a demand prior to filing the derivative counterclaims on behalf of the counterclaim plaintiff entities.

## STATEMENT OF FACTS

### Dardashtian and Gitman Create CSV

10.     Dardashtian and Gitman are both managers and founders of CSV. They both made initial

capital contributions of $500 each on October 18, 2011.

11.     CSV is a holding company for eCommerce websites and owns the following internet

domain names: channelgento.com, coopersquare.ventures, coopersquareventures.com,

saasecomerce.com, speckify.com, wholsesaledash.co, and wholesaledash.net.

12.     CSV's business operations utilize licensed software and services, open source software

with varying licenses such as GNU or MIT, and software developed by both Gitman and

independent contractors.

13.     From 2011 through the first quarter of 2016, Gitman worked full time on CSV and its

businesses including, among others, NDAP.

14.     Some of the other CSV-related businesses Gitman worked on from 2011 through the first

quarter of 2016 are Plumburs, LLC ("Plumburs"), Sigmento (M.C. Commerce Ltd.)

("Sigmento"), and Quick Ship Today, LLC ("Quick Ship").

15.     Dardashtian controlled the company finances for all of these entities.

16.     In addition to being a co-founder, Gitman is also the Chief Technology Officer

("CTO") of CSV and is also in charge of product strategy, development and operations for CSV

and its related entities.

17.     Dardashtian is responsible for sales, marketing, legal, and finance for all of the

entities.

18.     On October 13, 2011, Dardashtian and Gitman opened a business checking account at

Bank of America under the name Cooper Square Ventures, LLC.

19.     When they were paid for their work as employees of CSV, upon information and belief, Dardashtian and Gitman were paid through CSV payroll which was run through CSV's Bank of America bank account.

20.     Upon information and belief, Dardashtian took payments from CSV and/or NDAP from 2011 to February 2015.

21.     While Gitman also received payments from CSV and/or NDAP during this time, he did, and does, not know if he received payments equal to those taken by Dardashtian.

22.     As CSV began to grow, Gitman asked Dardashtian to see the books and records to gauge how well the business was performing and to determine if the payments being made to them were equal. Gitman first requested this information from the company's then accountant, Greg Frayman ("Frayman"), on November 1, 2016 after noticing Dardashtian had not been keeping the financial books of CSV up to date for some time.

23.     However, upon information and belief, Dardashtian blocked Frayman from providing Gitman with the requested accounting. This caused Gitman to become concerned that he and Dardashtian were not receiving equal payments and expense reimbursements.

24.     On January 23, 2017, Gitman requested that Frayman provide him with Administrator access to the company's accounting software where the company's financial books and records were maintained.

25.     That same day, Frayman asked Dardashtian to approve Gitman's request. Upon information and belief, Dardashtian did not approve Gitman's request for Administrator access to the company's books and records.

26.     Gitman then attempted to have a bookkeeper review the books and records of the

company. However, as set forth below, Dardashtian refused to consent to having the bookkeeper

review the books and records.

## Gitman Developed the Technology for NDAP

27.     NDAP was formed in May 2011 as a wholly owned subsidiary of CSV by Gitman and

Dardashtian for the purpose of creating an e-commerce software platform to sell and distribute

auto parts online under the name "Next Day Auto Parts," later rebranded as "Car Part Kings"

("CPK").

28.     On or about September 1, 2011, on behalf of CSV, Gitman retained Alice Fritz

("Fritz") to work as a developer for NDAP.

29.     On March 15, 2012, on behalf of NDAP, Gitman retained Konstantyn Bagaiev

("Bagaiev") as an independent contractor to work for NDAP in order to help Gitman develop a

script to answer eBay messages.

30.     On or about April 1, 2015, on behalf of NDAP, Gitman retained Oleskii Glukharev

("Glukharev") as an independent contractor to work as a developer on the NDAP project along

with Bagaiev and Fritz.

31.     Gitman's work on NDAP was substantial. Gitman created all of NDAP's business and

technology processes with little to no involvement from Dardashtian including the Magento

ecommerce platform, Pentaho Data Integration platform, warehouse distributor integration, user

experience design, user interface design, multichannel catalog and inventory and pricing,

creation and management of billions of landing pages, search engine optimization, search engine

marketing, pricing tools and algorithms, marketing price protection, fraud detection, tax

compliance, structured data validation, image validation, order routing, cross boarder fulfillment,

order reconciliation, quality assurance, system administration, performance optimization, reporting and analytics.

32.     Dardashtian was supposed to lead NDAP's sales and marketing efforts. However, he never created an outbound sales and marketing program for NDAP.

33.     On or about July 28, 2017, certain assets of NDAP were sold to Meridian Rack & Pinion, Inc. for a total purchase price of $450,000. The assets of NDAP that were sold were technology products created by Gitman.

> **Gitman and the Developers Built a Platform and Suite of Products Called ChannelReply. Dardashtian Did Not Contribute to the Creation or Growth of the ChannelReply Platform or Products and, therefore, Dardashtian's Ownership Interest in the ChannelReply Platform and Products, If Any, Is Minimal**

34.     Although plaintiff ChannelReply, LLC is a New York Limited Liability Company, it has never actually conducted any business. ChannelReply, LLC is not the owner of the platform and suites of products known as "ChannelReply" as explained below. Rather, the ChannelReply platform and suites of products resulted from a joint venture consisting of Gitman, CSV, Bagaiev, and Glukharev.

35.     Gitman had developed the idea for ChannelReply in or about early 2014 and registered the domain name www.ChannelReply.com on May 12, 2014. As stated on the ChannelReply website, the ChannelReply platform "integrates marketplace customer service messages and order information with the Helpdesk of your choice."

36.     In August 2015, December 2016 and June 2017, Gitman went to Ukraine to meet with the Developers in person. Together they worked on the roadmap for the ChannelReply project and discussed different ways to build it. They developed plans that included creating a

ChannelReply application ("App") for Zendesk, a customer service platform. Before that, the ChannelReply products did not include an App.

37.     The development of the ChannelReply App was a pivotal development as most of the sales generated by the ChannelReply platform come from the Zendesk App.

38.     Gitman and Bagaiev also built an Amazon integration which has been the main source of growth for the ChannelReply product line.

39.     The idea and architecture for the ChannelReply platform, products and business was created by Gitman with no involvement by Dardashtian. The ChannelReply platform and products were developed by Gitman and Bagaiev.

40.     Gitman was responsible for the ChannelReply products and infrastructure and Bagaiev was responsible for the software coding that went into the creation of the ChannelReply platform and products. Dardashtian was responsible for little, if any, sales generated by the ChannelReply platform, products or the successful implementations of the product.

41.     Dardashtian made no material contributions to the growth of the ChannelReply platform or products.

42.     Dardashtian was also unable to develop new ChannelReply product features, failed to negotiate an Amazon India account for ChannelReply service, and was unable to negotiate a contract with Salesforce, Zendesk, Freshdesk, Amazon or eBay.

**Dardashtian's Lack of Involvement in CSV and its Related Businesses Damaged Gitman**

43.     Because of Dardashtian's inaction, Dardashtian lost the Plumburs' eBay seller account; an account the businesses needed to continue operating. Furthermore, many customer issues and new features were frozen due to Dardashtian's lack of basic action.

44.      An eBay seller account is required to support customers, fix software bugs, and implement new features. The Plumburs' eBay account was suspended because Dardashtian did not do any basic work to ensure it met certain required minimum seller performance standards, such as responding to emails from eBay about issues with the account. This caused irreparable harm to both the business and reputations of, among others, CSV, Plumburs, LLC and Gitman.

45.      Gitman's personal eBay account was also suspended because of Dardashtian's inaction and negligence since the two accounts (Gitman's and Plumburs') were linked; Gitman had spent the last 18 years developing a perfect rating for his personal eBay account. Gitman is now unable to buy or sell any items on eBay due to Dardashtian's lack of basic eBay account management. Gitman's professional reputation with eBay was further damaged with the loss of his preferred access status.

### Dardashtian Fails to Fulfill Promises to the Developers

46.      In August 2015, it was also agreed by Dardashtian and Gitman that both Glukharev and Bagaiev deserved increases in compensation in connection with their work for NDAP.

47.      After Gitman returned from his trip to the Ukraine in the fall of 2015 and spoke with Dardashtian, they both explained to the Developers that they were in a tough financial situation because of their auto parts business, so they offered the Developers an opportunity to participate as owners (five percent (5%) for Bagaiev and two and a half percent (2.5%) for Glukharev) in a proposed joint venture business that CSV and Gitman planned to create. The by-product of that joint venture was the ChannelReply platform and products described above.

48.      Specifically, CSV would have a 50% ownership interest in the joint venture and the other 50% would be owned by the development team, which, at the time, consisted of Gitman, Bagaiev and Glukharev. As set forth above, Bagaiev would own 5% and Glukarev

would own 2.5% of the joint venture. The remaining 42.5% would be held by Gitman and he could offer equity from that remaining 42.5% to any additional developers he needed to hire to expand the ChannelReply platform and products.

49.    Dardashtian confirmed Bagaiev's co-ownership in the ChannelReply joint venture in an e-mail. Attached hereto as Exhibit A is a true and correct copy of Dardashtian's e-mail to Bagaiev offering a 5% equity stake in the proposed ChannelReply joint venture.

50.    Upon information and belief, Dardashtian sent a similar e-mail to Glukharev confirming his 2.5% co-ownership in the proposed ChannelReply joint venture.

51.    Upon information and belief, in or about the fall of 2015, the Developers agreed to their participation in the proposed ChannelReply joint venture both orally and in Skype messages.

52.    As part of the joint venture, it was Dardashtian's responsibility to set up a legal entity for the ChannelReply business that provided the Developers with the agreed upon ownership interests.

53.    As of June 2016, Dardashtian had failed to do that. As a result, in June 2016, Bagaiev once again expressed his concerns about his future with the ChannelReply business to Dardashtian since he had not yet received confirmation that the promised legal entity had been set up. Upon information and belief, during the course of the following year, Bagaiev, continued to express his frustrations to Dardashtian.

54.    To date, Dardashtian has refused to execute the necessary documentation to effectuate the promised shares to the Developers. Dardashtian's failure to adhere to the agreements with the Developers damaged both Gitman's and CSV's relationships with the Developers.

**Dardashtian Fraudulently Executed Documents on Gitman's Behalf**

55.    Upon information and belief, Dardashtian forged Gitman's signature on a number of corporate documents, including, without limitation, a proposed "Work Order" between NDAP and Bagaiev dated January 1, 2016 and NDA Holding, LLC debt instruments dated June 9, 2015.

56.    Upon information and belief, Dardashtian forged Gitman's signature on another proposed "Work Order" by placing Gitman's electronic signature on the document without Gitman's authorization. A copy of the "Work Order," dated January 1, 2016, on which Dardashtian placed Gitman's signature is attached hereto as Exhibit B.

57.    Upon information and belief, Dardashtian acknowledged this forgery to Bagaiev during an online skype conversation on January 29, 2016. A true and correct copy of Dardashtian and Bagaiev's January 29, 2016 skype conversation is attached hereto as Exhibit C.

58.    Upon information and belief, because Bagaiev knew it was a forged document, he never executed it.

**Dardashtian Breached his Fiduciary Duties to the Counterclaim Plaintiff Entities By Misappropriating Confidential and/or Proprietary Information Belonging to Those Entities**

59.    Upon information and belief, beginning in or about February 2016, Dardashtian began to maintain employment positions outside of CSV and NDAP.

60.    Upon information and belief, from on or about February 10, 2016 through approximately August 9, 2016, Dardashtian worked for ChargePass, a company which focused on payment technology for the cannabis industry.

61.     In addition, upon information and belief, from about October 31, 2016 to the present, Dardashtian has worked full-time as the Head of Sales for a company named Yotpo, Ltd. ("Yotpo").

62.     Yotpo competes with ChannelReply's products, as it markets itself as a marketing content solution and generates reviews, ratings, questions and answers for eCommerce websites.

63.     Upon information and belief, Dardashtian has disclosed confidential and/or proprietary information belonging to the ChannelReply joint venture in connection with his work for Yotpo. For example, Gitman and the Developers previously developed a feedback management feature for the ChannelReply products. Upon information and belief, soon after Dardashtian joined Yotpo, Yotpo developed a similar feature.

64.     Upon information and belief, Dardashtian has also misappropriated confidential customer information belonging to the ChannelReply joint venture. Upon information and belief, as many as 225 ChannelReply customers may have been brought to Yotpo by Dardashtian. At least 15 ChannelReply customers became first-time Yotpo customers soon after Dardashtian officially started working at Yotpo.

65.     By letter dated August 3, 2017, counsel for Gitman placed Yotpo on notice of Dardashtian's continuing obligations of confidentiality regarding customer lists, processes and designs and requested that Yotpo ensure that Dardashtian cease and desist from using "for any purposes whatsoever" confidential information of CSV. To date, Yotpo has failed to confirm its compliance with this request. A true and correct copy of the August 3, 2017 letter to Yotpo is attached hereto as Exhibit D.

66.     Furthermore, Dardashtian's work for Yotpo has had a negative effect on CSV, NDAP, and ChannelReply since Dardashtian is no longer devoting a substantial amount of time and

attention to CSV or NDAP on a regular basis. In fact, since Dardashtian started working at Yotpo, he has had little to no involvement with CSV, NDAP, or ChannelReply and his involvement has been limited to sporadic accounting and finance matters.

67.     Upon information and belief, Dardashtian also improperly provided confidential and/or proprietary information belonging to the ChannelReply joint venture to another competitive company called Volo Commerce.

68.     Upon information and belief, on or about November 7, 2016, Dardashtian provided a confidential and proprietary presentation deck which detailed how the ChannelReply product lines work to Volo Commerce without first obtaining a non-disclosure agreement. Volo Commerce is now competing with the ChannelReply product line.

69.     Additionally, upon information and belief, Dardashtian allowed a personal conflict of interest to interfere with the execution of his duties to the ChannelReply platform. Upon information and belief, Dardashtian sought to divert resources from established ChannelReply product lines to the development of a Desk.com integration product because, upon information and belief, he was seeking an offer of employment from Salesforce, which owns Desk.com.

### Dardashtian has Refused to Consent to an Accounting

70.     Upon information and belief, as head of finance for CSV, Dardashtian maintained poor accounting practices, including, without limitation, failing to maintain separate business accounts.

71.     In his capacity as head of finance for CSV, Dardashtian improperly paid expenses related to the ChannelReply joint venture through other bank accounts including, without limitation, the NDAP and CSV bank accounts.

72.     As CSV and its related businesses began to grow, Gitman requested an accounting to gauge how well the business was performing.

73.     Gitman first requested an accounting from Frayman on November 1, 2016 after noticing that Dardashtian had not been keeping the financial books of CSV up to date for some time and had comingled the accounts.

74.     However, Dardashtian blocked Frayman from providing Gitman with the requested accounting. This caused Gitman to become concerned that he and Dardashtian were not receiving equal distributions and/or expense payments.

75.     On January 23, 2017, Gitman requested that Fraymen provide him with Administrator access to the company's accounting software.

76.     That same day, Frayman asked Dardashtian to approve Gitman's request. Dardashtian did not approve Gitman's request for Administrator access to the company's accounting software.

77.     Gitman then retained a bookkeeper, Mary Faith Adan ("Adan"), to perform a review of the books and records of the businesses. However, Dardashtian repeatedly refused to cooperate with her. Specifically, on March 18, 2017, Adan sent Dardashtian an e-mail asking questions about charges incurred on Dardashtian's corporate credit card to determine whether the expenses were "Personal or Business." On March 20, Dardashtian replied that he was travelling and would take a look when he returned. Not hearing back from Dardashtian, on April 2, Adan sent Dardashtian a follow-up e-mail. On April 3, Dardashtian replied asking Adan to resend the file with questioned expenses. Adan resent the file that same day. Later that day, on April 3, Dardashtian asked to schedule a call with Adan. A call was then scheduled for April 7, 2017. However, subsequently, Dardashtian proceeded to reschedule the call four (4) separate times. On

April 14, 2017, Adan e-mailed Dardashtian suggesting that the call take place the following Monday and never heard back from Dardashtian.

78.     Upon information and belief, Dardashtian improperly had CSV pay out at least tens of thousands of dollars in family health care expenses for himself, while Gitman did not receive equivalent payments as an equal co-owner of CSV.

79.     Upon information and belief, Dardashtian has taken other distributions from the companies' bank accounts without informing Gitman.

80.     From in or about November 2011 to February 2016, Dardashtian and Gitman received compensation for their work for CSV. However, since an accounting was never performed, Gitman does not know if he and Dardashtian received equal compensation for the work they performed during this time.

81.     Since February 2016, Gitman has not received any compensation for the work he has performed for CSV or any of its related entities and businesses.

82.     Upon information and belief, after February 2016, Dardashtian continued to make payments to himself through the CSV bank account.

## FIRST COUNTERCLAIM
### (BREACH OF FIDUCIARY DUTY AGAINST DARDASHTIAN BY GITMAN)

83.     Gitman repeats and realleges each and every allegation set forth above as if set forth at length herein.

84.     Dardashtian and Gitman are the sole members of CSV.

85.     As a member of CSV, at all relevant times, Dardashtian has owed various fiduciary duties to Gitman (a 50% owner and member) to conduct himself and discharge his duties and responsibilities in good faith, loyally, and fairly.

86. The aforesaid misconduct by Dardashtian constitutes numerous breaches of the fiduciary duties he owed to Gitman.

87. Gitman has been injured by Dardashtian's breaches in an amount to be determined at trial, but believed to be not less than $500,000.

88. As a result of Dardashtian's breaches of his fiduciary duties owed to Gitman, Gitman is also entitled to an award of punitive damages in an amount to be determined at trial.

**SECOND COUNTERCLAIM**
**(BREACH OF FIDUCIARY DUTY AGAINST DARDASHTIAN BY CSV AND NDAP)**

89. CSV and NDAP repeat and reallege each and every allegation set forth above as if set forth at length herein.

90. At all relevant times, Dardashtian was a manager of CSV and NDAP.

91. In that capacity, at all relevant times, Dardashtian has owed fiduciary duties to CSV and NDAP to conduct himself and discharge his duties and responsibilities in good faith, loyally, and fairly.

92. The aforesaid misconduct by Dardashtian constitutes numerous breaches of the fiduciary duties he owed to CSV and NDAP.

93. CSV and NDAP have been injured by Dardashtian's breaches in an amount to be determined at trial, but believed to be not less than $2,000,000.

94. As a result of Dardashtian's breaches of his fiduciary duties owed to CSV and NDAP, CSV and NDAP are also entitled to an award of punitive damages in an amount to be determined at trial.

**THIRD COUNTERCLAIM**

**(BREACH OF CONTRACT AGAINST DARDASHTIAN BY GITMAN)**

95.    Gitman repeats and realleges each and every allegation set forth above as if set forth at length herein.

96.    Gitman and Dardashtian are each parties to the CSV Operating Agreement dated August 13, 2011 (the "CSV Operating Agreement"). As set forth in detail above, Dardashtian has breached his obligations to Gitman under the CSV Operating Agreement.

97.    Among the obligations set forth in the CSV Operating Agreement, Section 12.2 of that agreement provides that Dardashtian and Gitman shall not publish communicate, divulge, disclose, disseminate or otherwise reveal to any person or entity, or use for any purpose whatsoever any Confidential Information belonging to the entity. "Confidential Information" is defined as any of the entity's "processes, data, designs, compilations of information, financial data, salary information, policies and procedures, sales know-how or any other information that may be considered to be proprietary or a trade secret of the Company, whether or not such information is considered a trade secret within the meaning of applicable law."

98.    Upon information and belief, Dardashtian has used Confidential Information of CSV, including, without limitation, customer lists and product development information, in connection with his employment with Yotpo in breach of the CSV Operating Agreement.

99.    Dardashtian's breaches of the CSV Operating Agreement have caused significant damage to Gitman.

100.    As a result, Gitman is entitled to damages in an amount to be determined at trial.

**FOURTH COUNTERCLAIM**

**(TORTIOUS INTERFERENCE WITH CONTRACT AGAINST DARDASHTIAN)**

101.    Gitman repeats and realleges each and every allegation set forth above as if set forth at length herein.

102.    As set forth above, Gitman and CSV intended to enter into a joint venture with the Developers concerning the ChannelReply platform and suite of products.

103.    Following the offer and acceptance to form the joint venture among those parties, Dardashtian, as co-manager of CSV, was tasked with preparing the necessary paper work setting forth Gitman's, CSV's, and the Developer's respective ownership interests in the ChannelReply joint venture.

104.    Notwithstanding Dardashtian's confirmation that the paperwork would be created, Dardashtian intentionally failed to create the necessary paperwork outlining the joint venture ownership rights in accordance with the parties' agreement.

105.    Instead, Dardashtian prepared an operating agreement that gave himself a 50% ownership interest in the joint venture as opposed to the 25% interest he was entitled to under the agreement. Dardashtian did this by having the ChannelReply platform set up as a wholly owned subsidiary of CSV. Gitman refused to execute the operating agreement proposed by Dardashtian as it did not reflect the joint venture agreed upon.

106.    Dardashtian's aforesaid malicious and wrongful conduct was intended to and did interfere with the joint venture agreement.

107.    Gitman has been injured as a proximate result of Dardashtian's tortious interference with the joint venture agreement.

108.    Gitman has been injured by Dardashtian's tortious interference with contract in an amount to be determined at trial.

109.    As a result of Dardashtian's tortious interference with contract, Gitman is also entitled to

an award of punitive damages in an amount to be determined at trial.

### FIFTH COUNTERCLAIM
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST DARDASHTIAN)

110.    Gitman repeats and realleges each and every allegation set forth above as if set forth at

length herein.

111.    As set forth above, Gitman and CSV intended to enter into a joint venture with the

Developers to expand the ChannelReply platform and product lines.

112.    As set forth above, Dardashtian, as co-manager of CSV (one of the parties to the joint

venture), intentionally mislead the Developers and betrayed their trust causing damage to the

relationship between the Developers, Gitman and CSV.

113.    Because of the damage caused by Dardashtian to the relationship among the parties to the

joint venture, the ChannelReply platform and product lines were not properly expanded and

Gitman lost out on considerable revenue and marketplace exposure.

114.    Dardashtian's aforesaid malicious and wrongful conduct was intended to and did

interfere with Gitman's prospective economic advantage.

115.    Gitman has been injured as a proximate result of Dardashtian's tortious interference with

his prospective economic advantage in the ChannelReply platform and products.

116.    Gitman has been injured by Dardashtian's tortious interference in an amount to be

determined at trial.

117.    As a result of Dardashtian's tortious interference, Gitman is also entitled to an award of

punitive damages in an amount to be determined at trial.

### SIXTH COUNTERCLAIM

**(UNJUST ENRICHMENT AND THE IMPOSITION OF A CONSTRUCTIVE TRUST AGAINST DARDASHTIAN)**

118.    Gitman repeats and realleges each and every allegation set forth above as if set forth at length herein.

119.    Dardashtian, in taking unequal distributions and/or expense payments from CSV as compared to Gitman, knowingly obtained unfair benefits.

120.    Dardashtian's receipt of these unequal benefits without distributing equal benefits to Gitman is inequitable.

121.    Additionally, Dardashtian directed all income received from the ChannelReply platform to CSV's bank account. However, the parties to the ChannelReply joint venture entered into an oral constructive trust regarding the ownership interest of the ChannelReply platform. It was agreed by the parties to the joint venture that even though CSV was not the sole owner of the ChannelReply platform, that until a ChannelReply bank account was separately set up by the joint venture, that the income from the ChannelReply platform would be held by CSV in its bank account.

122.    However, as set forth above, Dardashtian has unjustly sought to claim that the ChannelReply platform income belongs to CSV in its entirety in order to unjustly enrich himself.

123.    As a result of Dardashtian's unjust enrichment regarding the mismanagement of CSV financials including, without limitation, unequal disbursement and/or expense payments tohimself, Dardashtian should compensate Gitman for the value of distributions and benefits he received above that which Gitman received as an equal co-owner and co-manager of CSV.

124.    A constructive trust should also be imposed in favor of the joint venture on all moneys received and/or due the joint venture as a result of the constructive trust agreement regarding the income of the ChannelReply platform.

## SEVENTH COUNTERCLAIM
## (DECLARATORY JUDGMENT AGAINST DARDASHTIAN BY GITMAN)

125.    Gitman repeats and realleges each and every allegation set forth above as if set forth at length herein.

126.    All of the skills and expertise that Gitman brought to CSV were based on his decades of experience in the eCommerce industry. By contrast, Dardashtian had no exposure to the eCommerce industry prior to his involvement with CSV, NDAP, and ChannelReply.

127.    Gitman has no agreement that restricts his ability to utilize either the source code or customer data utilized by ChannelReply. Furthermore, that information is neither confidential nor proprietary to the ChannelReply product or any of the entities, for the following reasons:

a.    None of the data or code at issue constitutes a protectable trade secret and/or confidential information.

b.    At its most basic form, ChannelReply is a "store and forward messaging system." "Store and forward" is a telecommunications technique in which information (eBay or Amazon messages) is sent to an intermediate station (ChannelReply) where it is kept and sent at a later time to the final destination (Zendesk, Desk.com or Freshdesk).

c.    The most well-known store and forward system is email. It is very common for an email system to accept a message, store it and then forward it on elsewhere. Although fully open mail relays are no longer common (because of the rise of unsolicited bulk email, aka SPAM), not only does simple server-based forwarding work this way, but also do many email filtering and automated electronic mailing lists services.

d.    Store and forward predates the use of computers. Prior to computers, point-topoint teleprinter equipment was used to send messages which were stored at the receiving end on punched paper tape at a relay center. A human operator at the center removed the message

tape from the receiving machine, read the addressing information, and then sent it toward its destination on an appropriate outbound point-to-point teleprinter link. If the outbound link was in use, the operator placed the message in tape in a physical queue, usually consisting of a set of clips or hooks. A major relay center in the mid-1900s might have dozens of inbound and outbound teleprinters, scores of operators, and thousands of messages in the queues during peak periods. Operators referred to these centers as "torn-tape relay centers," a reference to removing the received message from the inbound teleprinter by tearing the paper tape to separate one message from the next. The U.S. military term for such a center was "Non-Automated Relay Center" (NARC).

e.     Since ChannelReply utilizes a 70 year old store and forward system, there has been no effort to construct and refine any algorithms to distinguish the product from the competition. Simply, it is a known and longstanding communication channel, which does not require the creation or use of any trade secret technology.

f.     Below is a basic topology of a message passing through ChannelReply:

eBay / Amazon <-> ChannelReply <-> Zendesk / Desk.com / Freshdesk

g.     This diagram illustrates how messages that originate on a marketplace like eBay or Amazon are relayed through ChannelReply to a Customer Relationship Management (CRM)platform like Zendesk, Desk.com, or Freshdesk. Replies from a CRM are then relayed back to the marketplace.

h.     An eCommerce merchant can build a similar software to respond to their customers on eBay or Amazon for about $2,500 plus operational and administrative costs. However, for many companies, it may be more cost efficient to use ChannelReply for $39/month rather than spending the time and money to build their own.

i.     Any algorithms used by ChannelReply are publicly described on ChannelReply's website, blog posts, explainer videos, publicly accessible help center, and YouTube videos.

128.    In addition, there is currently no agreement which restricts Gitman's ability to compete against CSV, NDAP, and/or the ChannelReply joint venture.

129.    In fact, the parties' agreements specifically permit Gitman and Dardashtian to engage in other competitive business ventures. Specifically, paragraph 12.1 of the CSV Operating Agreement states:

Competitive Undertakings. Except as otherwise provided herein, any Member and Management may engage in business ventures of any nature and description independently or with others, including, but not limited to, business of the character described in Article 3 (or any part thereof), and neither the Company nor any of the Members shall have any rights in or to such independent ventures of the income or profits derived therefrom.

130.    Accordingly, Gitman is entitled to a declaratory judgment that he is free to own and/or work for any entity which competes with CSV and/or its related entities as long as he does not utilize CSV's Confidential Information (as defined in paragraph 12.2 of the CSV Operating Agreement) to do so.

## EIGHTH COUNTERCLAIM
### (RECORDS PURSUANT TO NY LLC L § 1102 AGAINST DARDASHTIAN)

131.    Gitman repeats and realleges each and every allegation set forth above as if set forth at length herein.

132.    Based on Dardashtian's various breaches of his fiduciary duties as set forth in detail above, Gitman requires an accounting of CSV and CSV's related entities.

133.    In accordance with NY LLC L § 1102(b), this Court should Order that Dardashtian make available to Gitman all records, including, without limitation, financial statements and income tax returns or information and reports maintained by CSV and/or the related entities for the three most recent fiscal years, and any other information regarding the affairs of CSV and the related entities as is just and reasonable.

**NINTH COUNTERCLAIM**
**(DECLARATORY JUDGMENT THAT CHANNEL REPLY IS OWNED BY CSV, GITMAN INDIVIDUALLY, AND THE DEVELOPERS)**

134.    Gitman repeats and realleges each and every allegation set forth above as if set forth at length herein.

135.    Gitman and the Developers developed the ChannelReply platform.

136.    Gitman was responsible for the product and infrastructure and Bagaiev was responsible for coding. Dardashtian was not responsible for any of the growth of the ChannelReply product or the successful implementations of the product.

137.    Dardashtian made no contributions which contributed to the growth of the ChannelReply product in a material way.

138.    Because of the Developers work on ChannelReply, in August 2015, it was agreed that both Glukharev and Bagaiev deserved salary increases in connection with their employment for NDAP.

139.    Instead of a salary increase, in the fall of 2015, Gitman and Dardashtian offered the Developers a share in the new ChannelReply business that was to be formed.   Bagaiev was offered five percent (5%) and Glukharev was offered two and a half percent (2.5%). As set forth above, they each accepted this offer.

140.     Dardashtian failed to properly form the ChannelReply business and give the appropriate ownership interests to the Developers and to Gitman, as they were the only persons who made positive contributions to ChannelReply.

141.     To date, Dardashtian has refused to execute the necessary documentation to effectuate the promised shares to the Developers and to Gitman.

142.     The appropriate equity interests are: CSV owns 50%, Gitman, individually, owns 42.5%, Bagaiev owns 5%, and Glukarev owns 2.5%.

143.     Dardashtian's failure to adhere to the agreements with the Developers has damaged both Gitman's and the companies' relationships with the Developers as well as Gitman's interest in ChannelReply.

144.     Gitman is entitled to a declaratory judgment that the ownership interests in any ChannelReply business are: CSV owns 50%, Gitman, individually, owns 42.5%, Bagaiev owns 5%, and Glukarev owns 2.5%.

145.     Dardashtian's taking of additional monies and equal distributions adversely affected the financial position of both CSV and Gitman while Dardashtian continues to enjoy the fruits of said takings to the present day.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Counterclaimants hereby demand a trial by jury on all issues so triable.


Dated: June 9, 2020
Bayside, New York

By: _/s/ Sang J. Sim
Sang J. Sim

*Attorney for Defendants/Counterclaims Plaintiffs*
.