


`Case 1:17-cv-04327-LLS-RWL   Document 180-28   Filed 08/14/20   Page 1 of 19`



EXHIBIT B

Cooper Square Ventures, LLC
1010 Northern Blvd, Suite 208
Great Neck, NY 11021 USA

Dated as of November 16, 2017

Dear Mr. Bagaiev:

When signed by each of the parties hereto, this letter agreement ("Agreement") sets forth the entire agreement between Cooper Square Ventures, LLC, a New York Limited Liability Company (hereinafter "the Company", "CSV" and/or "the Disclosing Party") and Konstantyn Bagaiev, Ul Mira d 59 k3 kv 138 Jeleznogorsk 307178 Russia, Registration Number 315463300002436 (hereinafter "the Contractor", "Bagaiev" and/or "the Receiving Party"), with respect to the engagement of Contractor as an independent contractor by the Company on the following terms and conditions:

1. <u>Acknowledgment</u>. Contractor understands, acknowledges and agrees that:

    (a)    The Company is engaged in a continuous program of research, design, development, production, publishing, marketing and servicing with respect to its business, including but not limited to the further development of the Company's proprietary, trade secret, ChannelReply software and source code (ChannelReply source code") ("collectively ChannelReply software") owned solely by the Company, and as part of Contractor's continued engagement by the Company, Contractor is, and will be expected to make new contributions, developments and inventions of value to the ChannelReply Software, and solely on behalf of the Company ("Company's Intellectual Property") to be owned solely by the Company;

    (b)    The Contractor hereby acknowledges that he first contracted with the Company as a freelancer on January 8, 2014 via Upwork via a job posting in order to create a solution solely on behalf of the Company to answer eBay messages in Zendesk which solution is the ChannelReply Software and the Company's Intellectual Property. The Contractor continued with his contractual relationship with the Company through February 7, 2015 developing the ChannelReply Software and the Company's Intellectual Property for the sole benefit of the Company.

    (c)    The Contractor was rehired by the Company on January 1, 2016 pursuant to a written agreement that the Contractor hereby acknowledges he signed with the Company or an affiliate of the Company similar to, and containing terms consistent with this Agreement, whereby the Contractor had previously agreed with

1

the Company to create and develop, for the sole and exclusive benefit of the Company, the ChannelReply Software and/or the Company's Intellectual Property, including but not limited to, further develop the ChannelReply source code, other codes, passwords, software, processes and other confidential and proprietary property, including but not limited to all software as a solution related to ChannelReply (collectively "Company's Proprietary Property"), for the sole and exclusive benefit of the Company. At this time, the Contractor acknowledges to the Company that all previous work performed by the Contractor related to the creation, development and further development of the ChannelReply software, the Company's Intellectual Property and/or the Company's Proprietary Property, is for the sole and exclusive benefit of the Company, and was undertaken by the Contractor as a work made for hire for the Company's sole and exclusive benefit, and that the Company solely owns the ChannelReply Software, including the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, including, but not limited to, all such further work, creations, source codes, codes, passcodes, software, and other inventions and extensions of same, created and/or developed by the Contractor in connection with the ChannelReply software, Channel Reply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, and that the Contractor has transferred and assigned all such rights to the ChannelReply Software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, exclusively to the Company and to no one else. The Contractor hereby acknowledges and reaffirms that he retains no rights whatsoever to the ChannelReply software, the Channel Reply source code, the Company's Intellectual Property and the Company's Proprietary Property and/or any other code, passcode, administrative code, process, development or the like created or developed by the Contractor which in any way or in any manner relates to the ChannelReply software, the ChannelReply source code, the ChannelReply Intellectual Property and/or the ChannelReply Proprietary Property, all of which additional works, creations and developments by the Contractor the Contractor agrees shall become a part of the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property. The Contractor hereby acknowledges and agrees that the Contractor is not entitled to and does not have any ownership interest in the ChannelReply software, the ChannelReply source code, the ChannelReply Intellectual Property, the ChannelReply Proprietary Property, the Company's Confidential Information, the Company and/or any of the Company's affiliated companies;

(d) The Contractor hereby acknowledges that he has continued to be engaged as an independent contractor with the Company since January 1, 2016 to further develop the ChannelReply software, the ChannelReply source code, the

Company's Intellectual Property, and the Company's Proprietary Property, and has been continuously contracted with the Company since January 1, 2016 through the date of this Agreement for such purposes, except solely for a two week period of time commencing on June 20, 2017 and ending on July 3, 2017, when the Contractor resigned from such contractual relationship with the Company.

(e) The Contractor further acknowledges and agrees that the ownership of all of the Contractor's work product and intellectual property related in any and every way to the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and the Company's Proprietary Property, for which the Contractor hereby acknowledges that he was paid in full by the Company, is the sole and exclusive property of the Company and that the Contractor retained no rights to same and that all of the Contractor's rights to his work product and intellectual property related to the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and the Company's Proprietary Property have been, and will continue to be assigned by the Contractor solely to the Company.

(f) The Contractor further acknowledges and agrees that he has taken no action to confer, transfer, assign or in any other many provide, any license, title, fee and/or ownership interest in or to the Contractor's work product and/or intellectual property that was undertaken as a work made for hire solely on behalf of the Company which relates in any and/or every way to the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, and that no other person or entity, including any other developers, including Oleksii Glukharev, who may have assisted the Contractor in the development and further development of the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and the Company's Proprietary Property, have any ownership interest of any kind in the Contractor's work product and/or intellectual property which was assigned by the Contractor to the Company and/or in the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property.

(g) The Contractor acknowledges that he has previously been solicited by Channel Reply, Inc. ("CR, Inc.") to transfer the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and the Company's Proprietary Property relating to the ChannelReply software and the ChannelReply source code to CR, Inc., but hereby confirms that he has taken no such action, and that he has complied with his obligations to the Company by refusing to transfer the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property related in any and/or every way to the ChannelReply software and/or the ChannelReply source code, and the

Contractor hereby further confirms that he has not transferred same, or any part of the foregoing to CR, Inc. and/or to any third party, including but not limited to Oleksii Glukarev, and the Contractor hereby further acknowledges that he has no knowledge that any other person, including Oleksii Glukharev, has transferred the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property to CR, Inc., and/or the Company's Confidential Information to any Third Party. The Contractor hereby agrees to indemnify and hold harmless the Company from any and all damages, including attorney's fees, incurred by the Company in connection with any violation of this subparagraph (g) by the Contractor;

(h)     The Contractor hereby acknowledges that he has been named by the Company as a Defendant in litigation captioned <u>Michael Dardashtian, individually and on behalf of Cooper Square Ventures, NDAP, LLC and Channel Reply, LLC v David Gitman, Jeremy Falk, Summit Rock Holdings, LLC, Accel Commerce, LLC, Dalva Ventures, LLC, Konstantyn Bagaiev, Oleksii Glukharev and Channel Reply Inc.</u>, United States District Court, Southern District of New York, Docket No. 1:17-cv-4327 (referred to herein as the "Litigation"). The Contractor acknowledges that nothing contained in this Agreement shall constitute a settlement, dismissal and/or waiver of the Company's rights against the Contractor pursuant to the Litigation. The Contractor hereby acknowledges and agrees that he is entering into this Agreement with the Company voluntarily, and that neither the Company nor Michael Dardashtian or any other third party has made any promises to the Contractor as an inducement for the Contractor to enter into this Agreement. The Contractor is seeking to memorialize his independent contractor relationship with the Company in this Agreement and is also seeking to assist the Company in mitigating its damages resulting from the actions complained of by the Company in the Litigation. The Contractor hereby expressly agrees that any future settlement or dismissal of any kind between the Company and the Plaintiffs in the Litigation on the one hand, and the Contractor on the other hand, must be contained in a separate written agreement signed by the Company and the Plaintiffs on the one hand, and the Contractor on the other hand.

(i)     The Company's continued engagement of the Contractor has, and continues to create a relationship of trust and confidence between the Contractor and the Company with respect to the confidential and proprietary information, including but not limited to the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, including but not limited to the continued development of the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, as well as in connection with the business of

4

any client, customer, or business partner of the Company, which may be made known to the Contractor by the Company, or by any client, customer, or business partner of the Company, or learned by the Contractor during the period of Contractor's engagement here with the Company.

(j)   The Company possesses and will continue to possess confidential and proprietary information, including but not limited to, the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, that has been created, discovered or developed by, or otherwise become known to, the Company (including, without limitation, information created, discovered, developed or made known by the Contractor during the period of or arising out of Contractor's engagement by the Company, whether before or after the date hereof) and/or in which property rights have been in the past and/or which have already been agreed by the Contractor to be assigned in the future, or otherwise conveyed by the Contractor to the Company, which confidential and proprietary information, including but not limited to the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, the Contractor hereby acknowledges, has substantial present and future commercial value to the Company and in the business in which the Company is engaged and which confidential, proprietary and trade secret information which the Company treats and maintains as confidential and the sole property of the Company.

(k)   As used herein, the period of Contractor's engagement includes any time during which the Contractor has in the past and/or shall in the future, perform any services for, or on behalf of, the Company, in any capacity, including as an independent contractor, employee, consultant or otherwise, it being intended that any and all work product performed, including any intellectual property created, by the Contractor at any time, is covered by this Agreement regardless of the nature of the Contractor's status.

2. Engagement.

(a)   All work product and intellectual property previously performed and/or created by the Contractor solely on behalf of the Company, including but not limited to the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, has been communicated via Email, Skype and Slack by an authorized representative of the Contractor and the Company.

(b)   All work orders for future work product and intellectual property to be

5

performed and/or created hereunder by the Contractor, in order to be effective; must be signed by either Michael Dardashtian or Joel Liebman, or approved by Michael Dardashtian, in writing, following the submission of a work order in JIRA or a comparable work order software. Each Work Order shall set forth, at a minimum, the work to be performed, the duration of the assignment, and the fees for the work to be performed. In the absence of any further agreement written later than the date of this Agreement, the Company hereby agrees to pay, and the Contractor hereby agrees to accept, the hourly rate of $28.00 per hour for his services under this Agreement.

3. <u>Commitment to Company</u>.   During the period of the Contractor's engagement by the Company, the Contractor will devote that portion of Contractor's business time, energy and attention to the business and affairs of the Company as is necessary to achieve the Company's goals and objectives as are set forth in the Work Orders that the Company and the Contractor may enter into from time to time. The Contractor's time shall be monitored and calculated by the Company using TimeDoctor, unless or until such time as, the Company managers approve a different time tracking software program or method.

4. <u>Term of Engagement.</u>

(a)   The termination of this Agreement shall not affect the obligations of the Contractor under Sections 5(d), 6, 7 and 8 hereof. Notwithstanding the terms of any Work Order, the Company hereby reserves the right to terminate this Agreement, and its engagement of Contractor, at any time, and for any reason, including but not limited to, if the Company finds the Contractor's work to be unsatisfactory, or if there is a breakdown in communication between the Company and the Contractor. In the event that the Company exercises its right to terminate this Agreement, and any Work Order, with the Contractor, the Company shall only be responsible for compensating the Contractor for the number of hours he has already performed, and the Company shall have no further obligation to compensate the Contractor for any future work(s) not yet performed, whether such work(s) are anticipated by a signed Work Order or not.

(b)   Notwithstanding the foregoing, the Contractor shall have no right to terminate this Agreement with the Company prior to fully completing a signed Work Order. Any such refusal by the Contractor to complete work on a signed Work Order shall be deemed a breach of this Agreement, and shall result in harm to the Company, entitling the Company to seek damages and injunctive and other equitable relief against the Contractor, including the right to seek that the Contractor specifically perform under this Agreement and any signed Work Order, and shall include

providing the Company with remedies as are more fully described in Section 10, Remedies, below.

(c)  Subject to the foregoing and this Agreement, the Company hereby guarantees the Contractor 960 hours of work under the terms of this Agreement over a period of six (6) consecutive months commencing with the date of this Agreement at the rate of $28.00 per hour. The Company agrees that it will not terminate this Agreement to reduce the 960 hours guaranteed to the Contractor under this section 4(c) unless the Contractor has breached this Agreement.

5. Declaration.

(a)  Contractor acknowledges and agrees that he is acting as an independent contractor in the performance of the services hereunder, and nothing herein contained shall be deemed to create an agency and/or an employer/employee relationship between Contractor and the Company. As an independent contractor, the Contractor shall determine the times and locations at which his services are to be performed, subject to the timetable for the completion of specified tasks as the Company and Contractor shall agree. The Contractor shall bear all costs associated with the performance of his services (with the exception of travel costs associated with the work contemplated under this Agreement), provided however that such travel costs are pre-approved in writing by Michael Dardashtian or Joel Liebman.

(b)  Contractor shall in no event be entitled to participate in, or receive any benefits from, any of the Company's benefit or welfare plans, specifically including, but not limited to, coverage under the Company's workers' compensation program. The Company shall have no obligation whatsoever to compensate Contractor on account of any damages or injuries which Contractor may sustain as a result of, or in the course of, the performance of Contractor's services hereunder. The Contractor has sole liability and responsibility for all such damages.

(c)  Contractor shall be solely responsible for the payment of all Federal and State income taxes, social security taxes, Federal and State unemployment and similar taxes and all other assessments, taxes, contributions or sums payable, with the exception of applicable sales tax, with respect to Contractor as a result of, or in connection with, the services performed by the Contractor hereunder, and the Contractor shall be responsible to file all returns and reports with respect to any of the foregoing. Contractor hereby agrees to execute a Form W8-BEN to certify Contractor's foreign status, and more specifically to certify that the Contractor is not a United States citizen and has been and continues to perform all work on behalf of and for the Company outside of the United States.

(d) Contractor shall defend, indemnify and hold harmless the Company and its affiliates and their members managers, officers, directors, employees, attorneys, agents, successors and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees) arising out of or resulting from (a) bodily injury, death of any person or damage to real or tangible, personal property resulting from Contractor's acts or omissions; and (b) Contractor's breach of any representation, warranty or obligation under this Agreement. The Company may satisfy such indemnity (in whole or in part) by way of deduction from any payment due to the Contractor. The provisions of this paragraph shall survive the expiration or earlier termination of this Agreement.

6. <u>Works Made for Hire.</u>   The Contractor acknowledges that all right, title and interest in all works of authorship, designs, computer programs, software, code, passwords, copyrights and copyright applications, inventions, discoveries, developments, creations, customers, original content production or programming, know-how, systems, processes, formulae, patent and patent applications, trade secrets, new products, internal reports and memoranda, strategies, and marketing plans conceived, devised, developed, written, reduced to practice, or otherwise created, developed, added upon, additions to, or otherwise in any manner and at any time obtained or undertaken by the Contractor in connection with Contractor's engagement by the Company in accordance with the Contractor's prior agreement with the Company and/or under this Agreement, including but not limited to all work product and intellectual property performed and/or created by the Contractor relating in any way to the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property and/or the Company's Proprietary Property shall be regarded as "works made for hire" with the Company as the sole author and owner thereof including, without limitation, all Work performed by the Contractor under each and every Work Order (collectively the "Company's Proprietary Works"). The Company hereby owns all right, title and interest in the Company's Proprietary Works with the full and unrestricted right to exploit same in any manner or media now known or hereafter devised, and without any additional compensation to the Contractor. To the extent that any such Company's Proprietary Works is for any reason not deemed to be works made for hire, the Contractor hereby transfers and assigns to the Company all right, title and interest in and to the Company's Proprietary Works from the inception of creation thereof. Promptly after Contractor creates or obtains knowledge of any of the Company's Proprietary Works, Contractor will disclose it to the Company. Upon request of the Company, Contractor will execute and deliver all documents or instruments, and take all other action as the Company may deem reasonably necessary to transfer all right, title, and interest in

any of the Company's Proprietary Works to the Company; to vest in the Company good, valid and marketable title to the Company's Proprietary Works, to perfect, by registration or otherwise, trademark, copyright and patent protection of the Company with respect to the Company's Proprietary Works; and otherwise to protect the Company's trade secrets and proprietary interest in the Company's Proprietary Works. The Contractor hereby acknowledges and agrees that all work, including but not limited to the Company's Proprietary Works, performed by the Contractor for the Company hereunder, including but not limited to all work related in any manner to the ChannelReply software, the Channel Reply source code, the Company's Intellectual Property and/or the Company's Proprietary Property, constitutes a trade secret owned solely by the Company, in all respects. In the event Contractor does not sign any such document or instrument within five (5) days of a request thereof by the Company or Michael Dardashtian, the Company shall have the right to execute such document or instrument in the Contractor's name and take any other action in order to vest in the Company all rights hereunder, and the Contractor hereby appoints Michael Dardashtian, a manager of the Company, as the Contractor's attorney-in-fact to do so, which power of attorney is irrevocable and coupled with an interest.

7. <u>Documentation</u>.   In the event of the termination of this Agreement by the Company and of the Contractor's engagement for any reason, the Contractor will immediately deliver to the Company all information of any and every kind relating in any way to the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Works, including but not limited to any and all codes, source codes, passcodes, passwords, login names, domains, customer lists, customer information of any and every kind, vendor lists, electronic information, all documents, notes, drawings, blueprints, formulae, specifications, computer programs, data and all other materials of any and every nature pertaining to the Company's Proprietary Works, and/or to the Contractor's work with the Company, including all codes, source codes and other information relating in any way to the operation of ChannelReply, and will not take, misappropriate, transfer and/or assign any of the foregoing, or any reproduction of any of the foregoing that is embodied in a tangible medium of expression to any third party or entity.

8. <u>Confidentiality; Trade Secret; Non-Disclosure and Restrictive Covenant</u>

    (a) Confidential Information disclosed under this Agreement shall mean:

        i.    Any data or information that is competitively sensitive material, and not generally known to the public, including, but not limited to, the ChannelReply software, the ChannelReply source code, the Company's

        Intellectual Property, the Company's Proprietary Property and/or the Company's Proprietary Works, including but not limited to any and all other proprietary software, codes, source codes, emails containing Company information, algorithms, applications, web applications, designs, development of an application, sales information, information about product plans, marketing strategies, all financial and banking information, operations, customer relationships, customer lists, customer profiles, customer information of any and every kind, sales estimates, business plans, pricing information; the identities of Company's customers, vendors, insurance agencies, the address, telephone numbers, e-mail addresses, and financial information of Company's customers; internal financial results relating to the past, present, or future business activities of the Company, litigation issues, pending investigations or actions involving the Company, information learned from the Receiving Party on the Company's behalf, all communications with the Receiving Party and any other developers retained by the Company to assist the Receiving Party to further the ChannelReply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property and/or the Company's Proprietary Works, and all other documentation identified as "Confidential" and which may be produced by the Company, directly, indirectly, or through any authorized third party to the Receiving Party ("the Company's Confidential Information");

ii. Any technical information, including the Company's pricing and profit calculation, concepts, designs, namely ChannelReply's software, ChannelReply's source code, passcodes, codes, logins, domains, backups, processes, procedures, formulae, or improvements that are commercially valuable to the Company and secret in the sense that its confidentially affords the Company a competitive advantage over its competitors (also "the Company's Confidential Information"); and

iii. All confidential or proprietary concepts, documentation, reports, data, specifications, computer software, source code, object code, web applications, design and development of web applications, flow charts, configurations, schedules, databases, inventions, know-how, show-how and trade secrets, whether or not patentable or copyrightable. Confidential Information includes, without limitation, all documents, inventions, substances, engineering and laboratory notebooks, drawings, diagrams, specifications, bills of material, equipment, prototypes and models, names, discs, USB drives, hard drives, tradenames, including

but not limited to ChannelReply, trademarks, domain names, including but not limited to the domain and tradenames ChannelReply.com and ChannelReply, and all other domain names and tradenames used by the Company and/or which may be affiliated with the Company, all intellectual property and any other tangible manifestation of the foregoing relating to the Company's business and operation which now exists, and/or which is planned and/or anticipated for the future, or which may come into the control or possession of another party through the disclosures contemplated herein (also "the Company's Confidential Information").

(b) Confidentiality and Non-Disclosure Obligations.

Except as expressly authorized by prior written consent of Michael Dardashtian, a manager of the Company, the Receiving Party shall:

i. Limit access to the Company's Confidential Information to the Receiving Party's employees or consultants who have a need-to-know in connection with the design and development of any application, software, including but not limited to Channel Reply software, specifications, computer software, source code, object code, web applications, design and development of web applications, flow charts, configurations, schedules, databases, inventions, know-how, show-how and trade secrets and only for use in connection therewith and provided only that such employees and consultants similarly agree to execute this Agreement and be bound by its provisions;

ii. Advise those employees and consultants who have access to the Company's Confidential Information of the proprietary and confidential nature thereof and of the obligations set forth in this Agreement;

iii. Take appropriate action by instruction or agreement with the employees and consultants having access to the Company's Confidential Information to fulfill the Receiving Party's obligations under this Agreement;

iv. Safeguard all of the Company's Confidential Information by using a reasonable degree of care, but not less than that degree of care used by

11

   the Receiving Party in safeguarding its own similar confidential information or material;

v.  Use all of the Company's Confidential Information solely for purposes of assisting the Contractor to fulfill his obligations under this Agreement, including but not limited to the further design and development of the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property and/or the Company's Proprietary Works, and all software contemplated therein and in the Work Orders between the Company and the Contractor. The Contractor shall not be permitted to use the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property and/or the Company's Proprietary Works for the Contractor's own account or benefit at any time and/or for any reason.

vi.  Not disclose any of the Company's Confidential Information to any third parties, except as expressly previously authorized by Michael Dardashtian in writing;

vii.  Upon the Company's request, immediately surrender to the Company all due diligence, electronic data, source codes, object code, codes, algorithms, passcodes, software, processes, logins, administrative access, backups, drives, discs, customer information of any and every kind, sales information, financial information, memoranda, notes, records, drawings, manuals, records, and all other documents or materials, electronic or otherwise (and all copies of same) relating to or containing in any way, shape of form, the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Works and/or the Company's Confidential Information. When the Receiving Party returns the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Works and the Company's Confidential Information, the Receiving Party shall certify in writing that it has returned all materials containing or relating thereto and that neither the Receiving Party, and/or any authorized employees, professionals or consultants on the Receiving Party's behalf have retained any of the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary

Property, the Company's Proprietary Work and/or the Company's Confidential Information.

(d) In the event that the Receiving Party is subpoenaed by any court or federal or state agency of competent jurisdiction to give testimony, information, documents and/or evidence relating to the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information, the Receiving Party and/or any authorized employees, professionals and/or consultants shall give prompt notice to Michael Dardashtian, a manager of the Company, within two (2) days, (48 hours), of receipt of said subpoena or any other document that may give rise to an obligation to produce any part of the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information by electronic mail and overnight mail to:

If Notice is to the Company:

Cooper Square Ventures, LLC
Attn: Michael Dardashtian
1010 Northern Blvd.
Suite 208
Great Neck, NY 11021
Email:  mikedash1@gmail.com

i. The notice referred to in this Paragraph is intended to give the Company and/or its attorneys the opportunity to move to quash any such subpoena and/or any other document giving rise to any request for Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information and to investigate the circumstances pursuant to which the subpoena was issued.

ii. Once the Receiving Party has given notice to the Company that the Receiving Party has received a subpoena and/or document giving rise to any request for the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information, the Receiving Party shall not be permitted to commit to making itself available for questioning by any other party

and/or its attorneys, with respect to the nature of any communications it, its employees, its agents and/or its attorney may have had with anyone involved in the litigation or proceeding pursuant to which the subpoena was issued without first discussing the matter with counsel for the Company. Should the Company seek to quash the subpoena and/or any other document giving rise to the request for the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information, the Receiving Party agrees that it will cooperate in whatever reasonable manner legally possible to effectuate said result, and that it will maintain the confidentiality of the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information unless and until such time as a court or agency of competent jurisdiction has ruled that it must testify and/or produce any of the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information. Subject to any ruling of any court or agency of competent jurisdiction requiring the Receiving Party to testify and/or produce any of the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information, fulfillment of its obligation pursuant to said subpoena shall not be deemed a breach of this Agreement.

(e) Restrictive Covenant.

    (i)    The Contractor agrees that for a period of three (3) years from the date of this Agreement, that he is expressly prohibited from seeking employment, or otherwise as a freelancer, consultant, independent contractor, owner, member, manager, officer, shareholder, employee (full or part-time) or in any other capacity, in any business which is involved in or undertakes in any way or manner to create a competitive business with ChannelReply and/or the Company, and/or with any business which competes with any business owned and/or operated by the Company;

    (ii)    The Contractor hereby further acknowledges and agrees that for a period of three (3) years from the date of this Agreement, he is

14

  expressly prohibited and precluded from becoming affiliated in any manner with Channel Reply, Inc. and/or any business which competes, or has the potential to compete with the Company, ChannelReply and/or any business which is owned or operated by the Company; and

(iii) The Contractor hereby agrees that the consideration he is receiving under this Agreement is fair and adequate consideration for the promises contained herein.

(iv) The Contractor hereby acknowledges and agrees that the work product and intellectual property, including Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information that he has and continues to create and develop for the Company's sole benefit is a trade secret owned solely by the Company, and that it has substantial commercial value to the Company, and that it is used both throughout the United States and throughout the world.

(e) Equitable Relief. The Company and the Receiving Party agree that monetary damages would not be a sufficient remedy for breach of this Agreement. Accordingly, in addition to all other remedies that the Company may have, the Company shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any breach of this Agreement and that the Contractor hereby consents to same given the sensitive nature of Confidential Information owned solely by the Company. The parties hereby agree to waive any requirement for a bond in connection with any such injunctive and/or other equitable relief application made by the Company. If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the defaulting party shall pay to the prevailing party all reasonable attorney's fees, costs and necessary disbursements incurred by the prevailing party both, before or after judgment, in addition to any other relief to which the prevailing party may be entitled. The terms of this section include, but is not limited to, costs and reasonable attorney's fees incurred in connection with any arbitration, litigation, trial, appellate court proceeding or administrative proceeding filed to enforce the terms of this Agreement.

9. <u>Other Agreements.</u> The Contractor hereby represents and warrants that the Contractor's execution and delivery of this Agreement and the performance of all the terms of this Agreement do not and will not breach any agreement to keep in confidence proprietary information acquired by the Contractor in confidence or trust. The Contractor has not entered into and shall not enter into any agreement, either

written or oral, in conflict with this Agreement. The Contractor represents that he has not brought and will not bring with him to the Company or for use at the Company any materials or documents of an employer, a former employer and/or former client that are not generally available to the public, unless express written authorization from such former employer and/or former client for their possession and use has been obtained. The Contractor also understands that he is not to breach any obligation of confidentiality that he has to any employer, former employer or/or former client and agrees to fulfill all such obligations during the period of the Contractor's affiliation with the Company. The Contractor hereby acknowledges that by creating, developing and otherwise providing work product and intellectual property in connection with the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information, he has breached no obligation to any third party as all such work product and intellectual property performed, created and developed by the Contractor in connection with the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information was done by the Contractor solely for and on behalf of the Company.

10. Remedies. The Contractor hereby acknowledges that a remedy at law for any breach or threatened breach of the provisions of this Agreement would be inadequate and therefore agrees that the Company shall be entitled to injunctive relief in addition to any other available rights and remedies in case of any such breach or threatened breach by the Contractor; provided, however, that nothing contained herein shall be construed as prohibiting the Company from pursuing all other available remedies for any such breach or threatened breach including an action in any court of competent jurisdiction. The Contractor further specifically acknowledges that in the event of breach by Company of this Agreement, the Contractor shall be limited to an action-at-law for damages actually suffered with no rights to seek damages beyond those actually suffered. In no event shall Contractor have the right to terminate or rescind any rights granted to the Company hereunder, to obtain equitable relief or otherwise to enjoin, restrain or otherwise interfere with the full exploitation of the Company's rights herein granted including, without limitation, with respect to the Channel Reply software, the ChannelReply source code, the Company's Intellectual Property, the Company's Proprietary Property, the Company's Proprietary Work and/or the Company's Confidential Information.

11. Assignment. This Agreement and the rights and obligations of the parties hereto shall bind and inure to the benefit of any successor or successors of the Company by reorganization, merger or consolidation, or otherwise, and any assignee of all or

substantially all of the Company's business and properties, but neither this Agreement nor any rights or benefits hereunder may be assigned in whole or part by the Contractor.

12. <u>Interpretation, Severability</u>. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought. Accordingly, if any particular provision of this Agreement shall be adjudicated to be invalid or unenforceable, it is the parties' express desire that such provision(s) that may be declared valid or unenforceable, shall be deemed amended to delete there from the portion thus adjudicated to be invalid or unenforceable, such deletion to apply only with respect to the operation of such provision in the particular jurisdiction in which such adjudication is made. In addition, if any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it only so as to be enforceable to the extent compatible with the applicable law as it shall then appear. Should any part of this Agreement be rendered or declared invalid or unenforceable by a court of competent jurisdiction of the State of New York, such invalidation of such part or portion of this Agreement should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

13. <u>Notices</u>. Any notice which a party is required or may desire to give pursuant to this Agreement shall be given by electronic mail, addressed to Contractor at Contractor's email address below and addressed to the Company, attention Michael Dardashtian, at his email address as set forth in paragraph 8(c) above:

Contractor: Konstantyn Bagaiev's email address is as follows:

<u>doomerb@gmail.com</u>

The date of delivery of any such notice shall be deemed to be the delivered on the date the email was sent.

14. <u>Waivers</u>. If either party shall be deemed to have waived any breach of any provision of this Agreement, same must be in writing. In such event, the party waiving such breach in writing shall not thereby be deemed to have waived any preceding or succeeding breach of the same or any other provision of this Agreement.

15. <u>Governing Law</u>. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York. All parties here to

17

expressly consent to the personal jurisdiction of the laws of the State of New York, and hereby expressly agree to submit to the personal and subject matter jurisdiction of the United States District Court for the Southern District of New York to adjudicate and enforce any dispute arising under this Agreement, without giving effect to principles governing conflicts of laws.

16. <u>No Employment Agreement</u>. The Contractor acknowledges that this Agreement does not constitute an employment agreement and agrees that, except to the extent herein specified to the contrary, this Agreement shall be binding upon Contractor regardless of whether or not the Contractor's engagement shall continue for any length of time hereafter and whether or not Contractor's engagement is terminated for any reason whatsoever by the Company or Contractor or both. ✓

18. <u>Complete Agreement</u>; <u>Amendment: Prior Agreements</u>. This Agreement is the entire agreement of the parties with respect to the subject matter hereof and may not be amended, supplemented, canceled or discharged except by written instrument executed by authorized representatives of both parties as contemplated hereunder.

19. <u>Joint drafting.</u> This Agreement shall be considered the product of the drafting and contribution of both parties regardless of which party provided the initial draft or which party had greater input in the language

20. <u>Review by counsel</u>. Each party by execution hereof acknowledges having been afforded sufficient opportunity to have this Agreement reviewed by independent counsel of his or its own choosing prior to its execution.

AGREED TO:

COMPANY:
Cooper Square Ventures, LLC

By: _____
    Michael Dardashtian, Manager

CONTRACTOR:

By: _____
Konstantyn Bagaiev