**Exhibit 11**



# EXHIBIT B

only use applicable Marks to identify You as a Subscriber; provided You do not attempt, now or in the future, to claim any rights in the Marks, degrade the distinctiveness of the Marks, or use the Marks to disparage or misrepresent Us, Our services or products.

## 5. THIRD PARTY SERVICES

If You decide to enable, access or use Other Services, be advised that Your access and use of such Other Services is governed solely by the terms and conditions of such Other Services, and We do not endorse, are not responsible or liable for, and make no representations as to any aspect of such Other Services, including, without limitation, their content or the manner in which they handle data (including Service Data) or any interaction between You and the provider of such Other Services. You irrevocably waive any claim against the ChannelReply Contracting Party with respect to such Other Services. We are not liable for any damage or loss caused or alleged to be caused by or in connection with Your enablement, access or use of any such Other Services, or Your reliance on the privacy practices, data security processes or other policies of such Other Services. You may be required to register for or log into such Other Services on their respective websites. By enabling any Other Services, You are expressly permitting the ChannelReply Contracting Party to disclose Your Login as well as Service Data as necessary to facilitate the use or enablement of such Other Services.

## 6. BILLING, PLAN MODIFICATIONS AND PAYMENTS

6.1 Unless otherwise indicated on a Form referencing these Terms or in any Additional Terms (as defined in Section 12.2) and subject to Section 6.2, all charges associated with Your access to and use of the Service ("Subscription Charges") are due in full upon commencement of Your Subscription Term, or with respect to a Deployed Associated Service, at the time such Deployed Associated Service is purchased, subscribed to or otherwise deployed. At Our election, Subscription Charges for ChannelReply Voice may be charged in arrears or by requiring You to prepay for expected usage. If You fail to pay Your Subscription Charges or charges for other services indicated on any Form referencing these Terms within five (5) business days of Our notice to You that payment is due or delinquent, or if You do not update payment information upon Our request, in addition to Our other remedies, We may suspend or terminate access to and use of such Service by You, Agents and End-Users.

6.2 If You choose to upgrade Your Service Plan or increase the number of Agents authorized to access and use the Service during Your Subscription Term (a "Subscription Upgrade"), any incremental Subscription Charges associated with such Subscription Upgrade will be prorated over the remaining period of Your then current Subscription Term, charged to Your Account and due and payable upon implementation of such Subscription Upgrade. In any future Subscription Term, Your Subscription Charges will reflect any such Subscription Upgrades.

6.3 No refunds or credits for Subscription Charges or other fees or payments will be provided to You if You elect to downgrade Your Service Plan. Downgrading Your Service Plan may cause loss of content, features, or capacity of the Service as available to You under Your Account, and the ChannelReply Contracting Party does not accept any liability for such loss.

6.4 Unless otherwise stated, Our charges do not include any taxes, levies, duties or similar governmental assessments, including value-added, sales, use or withholding taxes assessable by any local, state, provincial or foreign jurisdiction (collectively "Taxes"). You are responsible for paying Taxes except those assessable against the ChannelReply Contracting Party based on its income. We will invoice You for such Taxes if We believe We have a legal obligation to do so and You agree to pay such Taxes if so invoiced.

6.5 If You pay by credit card or certain other payment instruments, the Service provides an interface for the Account owner to change credit card information (e.g. upon card renewal). The Account owner will receive a receipt upon each receipt of payment by the Payment Agent, or they may obtain a receipt from within the Service to track subscription status. You hereby authorize the Payment Agent to bill Your credit card or other payment instrument in advance on a periodic basis in accordance with the terms of the Service Plan for the Service and for periodic Subscription Charges applicable to Deployed Associated Services until You terminate Your Subscription to the Service, and You further agree to pay any Subscription Charges so incurred. If applicable, You hereby authorize the ChannelReply Contracting Party and the Payment Agent to charge Your credit card or other payment instrument to establish such prepaid credit. You agree to promptly update Your Account information with any changes (for example, a change in Your billing address or credit card expiration date) that may occur. The Payment Agent uses a third-party intermediary to manage credit card processing and this intermediary is not permitted to store, retain or use Your billing information except to process Your credit card information for the Payment Agent.

# EXHIBIT C

# TERMS OF SERVICE

Effective as of May 6, 2016, we have updated Terms of Service that apply to both ChannelReply. For a prior version of ChannelReply's Terms of Service, click here.

**THESE TERMS OF SERVICE ("TERMS") CONSTITUTE A CONTRACT BETWEEN YOU AND THE CHANNELREPLY CONTRACTING PARTY (AS DEFINED IN SECTION 18 BELOW) AND GOVERN USE OF AND ACCESS TO THE SERVICE AND SITE BY YOU, AGENTS AND END-USERS WHETHER IN CONNECTION WITH A PAID SUBSCRIPTION TO THE SERVICE OR A FREE TRIAL OF THE SERVICE.**

By accepting these Terms, or by accessing or using the Service or Site, or authorizing or permitting any Agent or End-User to access or use the Service, You agree to be bound by these Terms. If You are entering into these Terms on behalf of a company, organization or another legal entity (an "Entity"), You are agreeing to these Terms for that Entity and representing to ChannelReply that You have the authority to bind such Entity and its Affiliates to these Terms, in which case the terms "Subscriber," "You," "Your" or related capitalized terms herein shall refer to such Entity and its Affiliates. If You do not have such authority, or if You do not agree with these Terms, You must not accept these Terms and may not use the Service.

# 1. DEFINITIONS.

When used in these Terms with the initial letters capitalized, in addition to the terms defined elsewhere in these Terms, the following terms have the following meanings:

**Account:** means any accounts or instances created by or on behalf of Subscriber or its Agents within the Service.

**Affiliate:** means, with respect to a Party, any entity that directly or indirectly controls, is controlled by, or is under common control with such Party, whereby "control" (including, with correlative meaning, the terms "controlled by" and "under common control") means the possession, directly or indirectly, of the power to direct, or cause the direction of the

management and policies of such person, whether through the ownership of voting securities, by contract, or otherwise.

**Agent:** means an individual authorized to use the Service through Your Account as an agent and/or administrator as identified through a unique login.

**API:** means the application programming interfaces developed and enabled by the ChannelReply Contracting Party that permits Subscriber to access certain functionality provided by the Service, including without limitation, the REST API that enables the interaction with the Service automatically through HTTP requests and the application development API that enables the integration of the Service with other web applications.

**Associated Services:** means products, services, features and functionality designed to be used in conjunction with the Service but not included in the Service Plan to which You subscribed, including without limitation, integrations and applications created or developed by ChannelReply or its Affiliates which are expressly stated to be governed by these Terms. For avoidance of doubt, neither the ChannelReply Service or any other product, service, feature or functionality that is expressly stated to be governed by any alternative license, agreement or terms of service shall be deemed an Associated Service.

**Confidential Information:** means all information disclosed by You to the ChannelReply Contracting Party or by the ChannelReply Contracting Party to You which is in tangible form and labeled "confidential" (or with a similar legend) or which a reasonable person would understand to be confidential given the nature of the information and circumstances of disclosure, including, but not limited to information relating to the ChannelReply Contracting Party's security policies and procedures. For purposes of these Terms, these Terms as well as Service Data shall be deemed Confidential Information. Notwithstanding the foregoing, Confidential Information shall not include information that (a) was already known to the receiving party at the time of disclosure by the disclosing party; (b) was or is obtained by the receiving party by a third party not known by the receiving party to be under an obligation of confidentiality with respect to such information; (c) is or becomes generally available to the public other than by violation of these Terms or another valid agreement between the Parties; or (d) was or

is independently developed by the receiving party without use of the disclosing party's Confidential Information.

**Directive:** means Directive 95/46/EC on the protection of individuals with regard to the processing of Personal Data and on the free movement of such data.

**Documentation:** means any written or electronic documentation, images, video, text or sounds specifying the functionalities of the ChannelReply Service provided or made available by the ChannelReply Contracting Party to You, Agents or End-Users through the Site or otherwise.

**End-User:** means any person or entity other than Subscriber or Agents with whom Subscriber or its Agents interact using the Service.

**Form:** means any of Our generated service order forms executed or approved by You with respect to Your subscription to a Service, which form may detail, among other things, the number of Agents authorized to use the Service under Your subscription to the Service and the Service Plan applicable to Your subscription to the Service.

**Other Services:** means third party products, applications, services, software, products, networks, systems, directories, websites, databases and information which the Service links to, or which You may connect to or enable in conjunction with the Service, including, without limitation, Other Services which may be integrated directly into Your Account.

**Payment Agent:** means the ChannelReply Contracting Party, provided that (a) if the ChannelReply Contracting Party is not ChannelReply, the ChannelReply Contracting Party may designate ChannelReply to be the Payment Agent; or (b) if You choose to pay for a Service with a credit card or certain other payment instruments in a currency other than the U.S. Dollar, the ChannelReply Contracting Party may designate the Cooper Square Ventures, LLC Agent to be collect for ChannelReply, an LLC organized under the laws of the United States.

**Personal Data:** means any information relating to an identified or identifiable natural person where an identifiable person is one who can be identified, directly or indirectly, in

particular by reference to an identification number or to one or more factors specific to their physical, physiological, mental, economic, cultural or social identity.

**Processing/To Process/Processed:** means any operation or set of operations which is performed upon Personal Data, whether or not by automatic means, such as collection, recording, organization, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, blocking, erasure or destruction.

**Service:** means the ChannelReply Service, as applicable, together with all applicable Associated Services that You have purchased or deployed or to which You have subscribed ("Deployed Associated Services"), whether made available to You on a trial or paid basis.

**Service Data:** means electronic data, text, messages, communications or other materials submitted to and stored within the Service by You, Agents and End-Users in connection with Your use of such Service, which may include, without limitation, Personal Data.

**Service Plan(s):** means the packaged service plan(s) and the functionality and services associated therewith (as detailed on the Site applicable to the Service) for the ChannelReply Service, as applicable, to which You subscribe.

**Site:** means www.ChannelReply.com as applicable, as well as the other websites that the ChannelReply Contracting Party operates.

**Software:** means software provided by the ChannelReply Contracting Party (either by download or access through the internet) that allows an Agent or End-Users to use any functionality in connection with the applicable Service.

**Subscription Term:** means the period during which You have agreed to subscribe to the ChannelReply Service, as applicable, with respect to any individual Agent.

**Usage Data:** means encoded or anonymized information or aggregated data that the ChannelReply Group may collect about a group or category of services, features or

users while You, Your Agents or End-Users use a Service for certain purposes, including analytics, which does not contain Personal Data.

**"We," "Us" or "Our":** means the ChannelReply Contracting Party described in Section 18.

**ChannelReply Contracting Party:** means the ChannelReply entity with which You are contracting under these Terms.

**ChannelReply:** means Cooper Square Ventures, LLC a New York Limited Liability Company or any of its successors or assignees.

**ChannelReply Group:** means Cooper Square Ventures, LLC a New York Limited Liability Company together with all its Affiliates.

**ChannelReply Service:** means only the on-demand customer service solution made available by ChannelReply online via the subscriber login link at https://www.ChannelReply.com and other web pages designated by ChannelReply, including, individually and collectively, the applicable Software, Updates, API and Documentation.

# 2. GENERAL CONDITIONS; ACCESS TO AND USE OF THE SERVICE

**2.1** During the Subscription Term and subject to compliance by You, Agents and End-Users with these Terms, You have the limited right to access and use a Service consistent with the Service Plan(s) that You subscribe to, together with all applicable Deployed Associated Services, for Your internal business purposes. You may not use the Service to provide customer service, support or other outsourced business process services to more than one third party (other than Affiliates) through a single Account. Without limiting the foregoing, Your right to access and use the API is also subject to the restrictions and policies implemented by the ChannelReply Contracting Party from time to time with respect to the API as set forth in the Documentation or otherwise communicated to You in writing.

**2.2** A high speed Internet connection is required for proper transmission of the Service. You are responsible for procuring and maintaining the network connections that connect Your network to the Service, including, but not limited to, "browser" software that supports protocols used by the ChannelReply Contracting Party, including the Transport Layer Security (TLS) protocol or other protocols accepted by the ChannelReply Contracting Party, and to follow procedures for accessing services that support such protocols. We are not responsible for notifying You, Agents or End-Users of any upgrades, fixes or enhancements to any such software or for any compromise of data, including Service Data, transmitted across computer networks or telecommunications facilities (including but not limited to the Internet) which are not owned, operated or controlled by the ChannelReply Contracting Party. We assume no responsibility for the reliability or performance of any connections as described in this section.

**2.3** In addition to complying with the other terms, conditions and restrictions set forth below in these Terms, You agree not to (a) license, sublicense, sell, resell, rent, lease, transfer, assign, distribute, time share or otherwise commercially exploit or make the Service available to any third party, other than authorized Agents and End-Users in furtherance of Your internal business purposes as expressly permitted by these Terms; (b) use the Service to Process data on behalf of any third party other than Agents or End-Users; (c) modify, adapt, or hack the Service or otherwise attempt to gain unauthorized access to the Service or related systems or networks; (d) falsely imply any sponsorship or association with the ChannelReply Contracting Party, (e) use the Service in any unlawful manner, including but not limited to violation of any person's privacy rights; (f) use the Service to send unsolicited or unauthorized bulk mail, junk mail, spam, pyramid schemes or other forms of duplicative or unsolicited messages; (g) use the Service to store or transmit files, materials, data, text, audio, video, images or other content that infringes on any person's intellectual property rights; (h) use the Service in any manner that interferes with or disrupts the integrity or performance of the Services and its components; (i) attempt to decipher, decompile, reverse engineer or otherwise discover the source code of any Software making up the Service; (j) use the Service to knowingly post, transmit, upload, link to, send or store any content that is unlawful, racist, hateful, abusive, libelous, obscene, or discriminatory; (k) use the Service to store or transmit any "protected health information" as that term is defined in

45 C.F.R. 160.103, unless expressly agreed to otherwise in writing by the ChannelReply Contracting Party; (l) use the Service to knowingly post transmit, upload, link to, send or store any viruses, malware, Trojan horses, time bombs, or any other similar harmful software ("Malicious Software"); or (m) attempt to use, or use the Service in violation of these Terms.

2.4 You are responsible for compliance with the provisions of these Terms by Agents and End-Users and for any and all activities that occur under Your Account, as well as for all Service Data. Without limiting the foregoing, You are solely responsible for ensuring that use of the Service to store and transmit Service Data is compliant with all applicable laws and regulations as well as any and all privacy policies, agreements or other obligations You may maintain or enter into with Agents or End-Users. You also maintain all responsibility for determining whether the Services or the information generated thereby is accurate or sufficient for Your purposes. Subject to any limitation on the number of individual Agents available under the applicable Service Plan(s) to which You subscribed or applicable Deployed Associated Service, access to and use of the Service is restricted to the specified number of individual Agents permitted under Your subscription to the Service. You agree and acknowledge that each Agent will be identified by a unique username and password ("Login") and that an Agent Login may only be used by one (1) individual. You will not share an Agent Login among multiple individuals. The foregoing shall not be deemed to limit Your use of the Multi-Branding and Light Agent features of the ChannelReply Service if Your Service Plan includes these features or they are made available to you as a Deployed Associated Service. You and Your Agents are responsible for maintaining the confidentiality of all Login information for Your Account.

2.5 In addition to Our rights as set forth in Section 8.4, We reserve the right, in Our reasonable discretion, to temporarily suspend Your access to and use of a Service: (a) during planned downtime for upgrades and maintenance to the Service (of which We will use commercially reasonable efforts to notify You in advance both through Our Site and a notice to Your Account owner and Agents) ("Planned Downtime"); (b) during any unavailability caused by circumstances beyond Our reasonable control, such as, but not limited to, acts of God, acts of government, acts of terror or civil unrest, technical failures beyond Our reasonable control (including, without limitation, inability to access

the Internet), or acts undertaken by third parties, including without limitation, distributed denial of service attacks; or (c) if We suspect or detect any Malicious Software connected to Your Account or use of the Service by You, Agents or End-Users.

# 3. DATA PRIVACY AND SECURITY; CONFIDENTIALITY

**3.1** Subject to the express permissions of these Terms, each Party will protect each other's Confidential Information from unauthorized use, access or disclosure in the same manner as each protects its own Confidential Information, but with no less than reasonable care. Except as otherwise expressly permitted pursuant to these Terms, each of us may use each other's Confidential Information solely to exercise our respective rights and perform our respective obligations under these Terms and shall disclose such Confidential Information (a) solely to those of our respective employees, representatives, subcontractors and agents who have a need to know such Confidential Information for such purposes and who are bound to maintain the confidentiality of, and not misuse, such Confidential Information; (b) as necessary to comply with an order or subpoena of any administrative agency or court of competent jurisdiction; or (c) as reasonably necessary to comply with any applicable law or regulation. The provisions of this Section 3 shall supersede any non-disclosure agreement by and between the Parties that would purport to address the confidentiality and security of Service Data and such agreement shall have no further force or effect with respect to Service Data.

**3.2** To the extent Service Data constitutes Personal Data, You and the ChannelReply Contracting Party hereby agree that You shall be deemed to be the data controller and the relevant ChannelReply Contracting Party shall be deemed to be the data processor as those terms are understood under the Directive (and any applicable national legislation implementing the Directive). In providing the Service, the ChannelReply Contracting Party will engage entities within the ChannelReply Group and other authorized service providers, to Process Service Data, including and without limitation, any associated Personal Data pursuant to these Terms within the European Economic Area (the "EEA"), the United States and in other countries and territories. Under no circumstances will the relevant ChannelReply Contracting Party be deemed a data

controller with respect to Service Data under the Directive or any relevant law or regulation of any Member State as defined in the Directive.

**3.3** ChannelReply will maintain commercially reasonable administrative, physical and technical safeguards to protect the security, confidentiality and integrity of Service Data. These safeguards include encryption of Service Data in transmission (using TLS or similar technologies), except for certain Other Services that do not support encryption, which You may link to through the Service at Your election. Our compliance with the provisions of this Section 3.3 shall be deemed compliance with Our obligations to protect Service Data as set forth in Section 3.1.

**3.4** You agree that We and the service providers that We utilize to assist in providing the Service to You shall have the right to access Your Account and to use, modify, reproduce, distribute, display and disclose Service Data to the extent necessary to provide the Service, including, without limitation, in response to Your support requests. Any third party service providers We utilize will only be given access to Your Account and Service Data as is reasonably necessary to provide the Service and will be subject to (a) confidentiality obligations which are commercially reasonable and substantially consistent with the standards described in Section 3.3 and (b) their agreement to comply with the data transfer restrictions applicable to Personal Data.

**3.5** In addition to Service Data, We collect certain information (which may include Personal Data) about You, Agents and End-Users as well as Your and their respective devices, computers and use of the Service. We use, disclose, and protect this information as described in Our Privacy Policy, the then-current version of which is available at www.channelreply.com/privacy and is incorporated into the Terms.

# 4. INTELLECTUAL PROPERTY RIGHTS

Each Party shall maintain all rights, title and interest in and to all our respective patents, inventions, copyrights, trademarks, domain names, trade secrets, know-how and any other intellectual property and/or proprietary rights (collectively, "Intellectual Property Rights"). The rights granted to You, Agents and End-Users to use the Service under these Terms do not convey any additional rights in the Service, or in any Intellectual

Property Rights associated therewith. Subject only to limited rights to access and use the Service as expressly stated herein, all rights, title and interest in and to the Service and all hardware, Software and other components of or used to provide the Service, including all related Intellectual Property Rights, will remain with the ChannelReply Contracting Party and belong exclusively to the ChannelReply Contracting Party. The ChannelReply Group shall have a fully paid-up, royalty-free, worldwide, transferable, sub-licensable, irrevocable and perpetual license to implement, use, modify, commercially exploit, and/or incorporate into the Service or otherwise use any suggestions, enhancement requests, recommendations or other feedback We receive from You, Agents, End-User, or other third parties acting on Your behalf. ChannelReply, and the ChannelReply Group's other product and service names, and logos used or displayed on the Service are registered or unregistered trademarks of one or more members of the ChannelReply Group (collectively, "Marks"), and You may only use applicable Marks to identify You as a Subscriber; provided You do not attempt, now or in the future, to claim any rights in the Marks, degrade the distinctiveness of the Marks, or use the Marks to disparage or misrepresent Us, Our services or products.

## 5. THIRD PARTY SERVICES

If You decide to enable, access or use Other Services, be advised that Your access and use of such Other Services is governed solely by the terms and conditions of such Other Services, and We do not endorse, are not responsible or liable for, and make no representations as to any aspect of such Other Services, including, without limitation, their content or the manner in which they handle data (including Service Data) or any interaction between You and the provider of such Other Services. You irrevocably waive any claim against the ChannelReply Contracting Party with respect to such Other Services. We are not liable for any damage or loss caused or alleged to be caused by or in connection with Your enablement, access or use of any such Other Services, or Your reliance on the privacy practices, data security processes or other policies of such Other Services. You may be required to register for or log into such Other Services on their respective websites. By enabling any Other Services, You are expressly permitting the ChannelReply Contracting Party to disclose Your Login as well as Service Data as necessary to facilitate the use or enablement of such Other Services.

# 6. BILLING, PLAN MODIFICATIONS AND PAYMENTS

**6.1** Unless otherwise indicated on a Form referencing these Terms or in any Additional Terms (as defined in Section 12.2) and subject to Section 6.2, all charges associated with Your access to and use of the Service ("Subscription Charges") are due in full upon commencement of Your Subscription Term, or with respect to a Deployed Associated Service, at the time such Deployed Associated Service is purchased, subscribed to or otherwise deployed. At Our election, Subscription Charges for ChannelReply Voice may be charged in arrears or by requiring You to prepay for expected usage. If You fail to pay Your Subscription Charges or charges for other services indicated on any Form referencing these Terms within five (5) business days of Our notice to You that payment is due or delinquent, or if You do not update payment information upon Our request, in addition to Our other remedies, We may suspend or terminate access to and use of such Service by You, Agents and End-Users.

**6.2** If You choose to upgrade Your Service Plan or increase the number of Agents authorized to access and use the Service during Your Subscription Term (a "Subscription Upgrade"), any incremental Subscription Charges associated with such Subscription Upgrade will be prorated over the remaining period of Your then current Subscription Term, charged to Your Account and due and payable upon implementation of such Subscription Upgrade. In any future Subscription Term, Your Subscription Charges will reflect any such Subscription Upgrades.

**6.3** No refunds or credits for Subscription Charges or other fees or payments will be provided to You if You elect to downgrade Your Service Plan. Downgrading Your Service Plan may cause loss of content, features, or capacity of the Service as available to You under Your Account, and the ChannelReply Contracting Party does not accept any liability for such loss.

**6.4** Unless otherwise stated, Our charges do not include any taxes, levies, duties or similar governmental assessments, including value-added, sales, use or withholding taxes assessable by any local, state, provincial or foreign jurisdiction (collectively "Taxes"). You are responsible for paying Taxes except those assessable against the ChannelReply Contracting Party based on its income. We will invoice You for such

Taxes if We believe We have a legal obligation to do so and You agree to pay such Taxes if so invoiced.

**6.5** If You pay by credit card or certain other payment instruments, the Service provides an interface for the Account owner to change credit card information (e.g. upon card renewal). The Account owner will receive a receipt upon each receipt of payment by the Payment Agent, or they may obtain a receipt from within the Service to track subscription status. You hereby authorize the Payment Agent to bill Your credit card or other payment instrument in advance on a periodic basis in accordance with the terms of the Service Plan for the Service and for periodic Subscription Charges applicable to Deployed Associated Services until You terminate Your Subscription to the Service, and You further agree to pay any Subscription Charges so incurred. If applicable, You hereby authorize the ChannelReply Contracting Party and the Payment Agent to charge Your credit card or other payment instrument to establish such prepaid credit. You agree to promptly update your Account information with any changes (for example, a change in Your billing address or credit card expiration date) that may occur. The Payment Agent uses a third-party intermediary to manage credit card processing and this intermediary is not permitted to store, retain or use Your billing information except to process Your credit card information for the Payment Agent.

# 7. CREDITS POLICY

**7.1** We may, at our sole discretion, choose to offer credits for the Service in various ways, including but not limited to, coupons, promotional campaigns and referrals. The ChannelReply Contracting Party reserves the right to award credits at its sole discretion. Credits have no monetary or cash value and can only be used by You to offset Your subsequent payments of Subscription Charges for the applicable Service. Credits may only be applied to Subscription Charges due for the Service specifically identified by the ChannelReply Contracting Party when issuing the credit. Credits can only be used by You and are non-transferable.

**7.2** To the extent that You have been awarded ChannelReply credits, unless the instrument (including any coupon) states an earlier expiration date, these ChannelReply

credits shall expire and no longer be redeemable twelve (12) months from the date the ChannelReply credit was issued.

# 8. CANCELLATION AND TERMINATION

**8.1** Either Party may elect to terminate Your Account and subscription to the Service as of the end of Your then current Subscription Term by providing notice, in accordance with these Terms, on or prior to the date thirty (30) days preceding the end of such Subscription Term. Unless Your Account and subscription to the Services is so terminated, Your subscription to the Service (including any and all Deployed Associated Services) will renew for a Subscription Term equivalent in length to the then expiring Subscription Term. Unless otherwise provided for in any Form, the Subscription Charges applicable to Your subscription to the Service for any such subsequent Subscription Term shall be Our standard Subscription Charges for the Service Plan and Deployed Associated Services to which You have subscribed or which you have deployed, as applicable, as of the time such subsequent Subscription Term commences.

**8.2** No refunds or credits for Subscription Charges or other fees or payments will be provided to You if You elect to terminate Your subscription to the Service or cancel Your Account prior to the end of Your then effective Subscription Term. Following the termination or cancellation of Your subscription to the Service and/or Account, We reserve the right to delete all Service Data in the normal course of operation. Service Data cannot be recovered once Your Account is cancelled.

**8.3** If You terminate Your subscription to the Service or cancel Your Account prior to the end of Your then effective Subscription Term or We effect such termination or cancellation pursuant to Sections 2.5(c) or 8.4, in addition to other amounts You may owe ChannelReply, You must immediately pay any then unpaid Subscription Charges associated with the remainder of such Subscription Term. This amount will not be payable by You in the event You terminate Your subscription to the Service or cancel Your Account as a result of a material breach of these Terms by the ChannelReply Contracting Party, provided that You provide advance notice of such breach to the

ChannelReply Contracting Party and afford the ChannelReply Contracting Party not less than thirty (30) days to reasonably cure such breach.

**8.4** We reserve the right to modify, suspend or terminate the Service (or any part thereof), Your Account or Your and/or Agents' or End-Users' rights to access and use the Services, and remove, disable and discard any Service Data if We believe that You, Agents or End-Users have violated these Terms. Unless legally prohibited from doing so, We will use commercially reasonable efforts to contact You directly via email to notify You when taking any of the foregoing actions. We shall not be liable to You, Agents, End-Users or any other third party for any such modification, suspension or discontinuation of Your rights to access and use the Service. Any suspected fraudulent, abusive, or illegal activity by You, Agents or End-Users may be referred to law enforcement authorities at Our sole discretion.

## 9. DISCLAIMER OF WARRANTIES

THE SITE AND THE SERVICE, INCLUDING ALL SERVER AND NETWORK COMPONENTS ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITHOUT ANY WARRANTIES OF ANY KIND TO THE FULLEST EXTENT PERMITTED BY LAW, AND WE EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, TITLE, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. YOU ACKNOWLEDGE THAT WE DO NOT WARRANT THAT THE SERVICE WILL BE UNINTERRUPTED, TIMELY, SECURE, ERROR-FREE OR FREE FROM VIRUSES OR OTHER MALICIOUS SOFTWARE, AND NO INFORMATION OR ADVICE OBTAINED BY YOU FROM US OR THROUGH THE SERVICE SHALL CREATE ANY WARRANTY NOT EXPRESSLY STATED IN THESE TERMS.

## 10. LIMITATION OF LIABILITY

**10.1** UNDER NO CIRCUMSTANCES AND UNDER NO LEGAL THEORY (WHETHER IN CONTRACT, TORT, NEGLIGENCE OR OTHERWISE) WILL EITHER PARTY TO THESE TERMS, OR THEIR AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES,

AGENTS, SUPPLIERS OR LICENSORS BE LIABLE TO THE OTHER PARTY OR ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, CONSEQUENTIAL, PUNITIVE OR OTHER SIMILAR DAMAGES, INCLUDING LOST PROFITS, LOST SALES OR BUSINESS, LOST DATA, BUSINESS INTERRUPTION OR ANY OTHER LOSS INCURRED BY SUCH PARTY OR THIRD PARTY IN CONNECTION WITH THESE TERMS OR THE SERVICE, REGARDLESS OF WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF OR COULD HAVE FORESEEN SUCH DAMAGES.

**10.2** NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THESE TERMS, OUR AGGREGATE LIABILITY TO YOU OR ANY THIRD PARTY ARISING OUT OF THESE TERMS OR OTHERWISE IN CONNECTION WITH ANY SUBSCRIPTION TO, OR USE OR EMPLOYMENT OF THE SERVICE, SHALL IN NO EVENT EXCEED THE SUBSCRIPTION CHARGES FOR SUCH SERVICE PAID BY YOU DURING THE TWELVE (12) MONTHS PRIOR TO THE FIRST EVENT OR OCCURRENCE GIVING RISE TO SUCH LIABILITY. YOU ACKNOWLEDGE AND AGREE THAT THE ESSENTIAL PURPOSE OF THIS SECTION 11.2 IS TO ALLOCATE THE RISKS UNDER THESE TERMS BETWEEN THE PARTIES AND LIMIT POTENTIAL LIABILITY GIVEN THE SUBSCRIPTION CHARGES, WHICH WOULD HAVE BEEN SUBSTANTIALLY HIGHER IF WE WERE TO ASSUME ANY FURTHER LIABILITY OTHER THAN AS SET FORTH HEREIN. WE HAVE RELIED ON THESE LIMITATIONS IN DETERMINING WHETHER TO PROVIDE YOU THE RIGHTS TO ACCESS AND USE THE SERVICE PROVIDED FOR IN THESE TERMS.

**10.3** Some jurisdictions do not allow the exclusion of implied warranties or limitation of liability for incidental or consequential damages, which means that some of the above limitations may not apply to You. IN THESE JURISDICTIONS, THE CHANNELREPLY CONTRACTING PARTY'S LIABILITY WILL BE LIMITED TO THE GREATEST EXTENT PERMITTED BY LAW.

**10.4** Any claims or damages that You may have against the ChannelReply Contracting Party shall only be enforceable against the ChannelReply Contracting Party and not any other entity or its officers, directors, representatives or agents.

# 11. INDEMNIFICATION

**11.1** We will indemnify and hold You harmless, from and against any claim against You by reason of Your use of the Service as permitted hereunder, brought by a third party alleging that such Service infringes or misappropriates a third party's valid patent, copyright, trademark or trade secret (an "IP Claim"). We shall, at Our expense, defend such IP Claim and pay damages finally awarded against You in connection therewith, including the reasonable fees and expenses of the attorneys engaged by the ChannelReply Contracting Party for such defense, provided that (a) You promptly notify the ChannelReply Contracting Party of the threat or notice of such IP Claim; (b) We will have the sole and exclusive control and authority to select defense attorneys, defend and/or settle any such IP Claim; and (c) You fully cooperate with the ChannelReply Contracting Party in connection therewith. If use of the Service by You, Agents or End-Users has become, or in Our opinion is likely to become, the subject of any such IP Claim, We may at its option and expense (a) procure for You the right to continue using the Service as set forth hereunder; (b) replace or modify the Service to make it non-infringing; or (c) if options (a) or (b) are not commercially reasonable or practicable as determined by the ChannelReply Contracting Party, terminate Your subscription to the Service and repay You, on a pro-rated basis, any Subscription Charges previously paid to the ChannelReply Contracting Party for the corresponding unused portion of Your Subscription Term for such Service. We will have no liability or obligation under this Section 12.1 with respect to any IP Claim if such claim is caused in whole or in part by (i) compliance with designs, data, instructions or specifications provided by You; (ii) modification of the Service by anyone other than the ChannelReply Contracting Party; or (iii) the combination, operation or use of the Service with other hardware or software where the Service would not by itself be infringing.

he provisions of this Section 11.1 state the sole, exclusive and entire liability of the ChannelReply Contracting Party to You and constitute Your sole remedy with respect to an IP Claim brought by reason of access to or use of the Service by You, Agents or End-Users.

**11.2** You will indemnify and hold the ChannelReply Contracting Party harmless against any claim brought by a third party against ChannelReply arising from or related to use of the Service by You, Agents or End-Users in breach of these Terms or matters which You have expressly agreed to be responsible pursuant to these Terms; provided that We promptly notifies You of the threat or notice of such a claim.

# 12. ASSIGNMENT; ENTIRE AGREEMENT; AMENDMENT

**12.1** You may not, directly or indirectly, by operation of law or otherwise, assign all or any part of these Terms or Your rights under these Terms or delegate performance of Your duties under these Terms without Our prior consent, which consent will not be unreasonably withheld. We may, without Your consent, assign Our agreement with You to any member of the ChannelReply Group or in connection with any merger or change of control of the ChannelReply Contracting Party or the ChannelReply Group or the sale of all or substantially all of Our assets provided that any such successor agrees to fulfill its obligations pursuant to these Terms. Subject to the foregoing restrictions, these Terms will be fully binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and assigns.

**12.2** These Terms, together with any Form(s), constitute the entire agreement, and supersede any and all prior agreements between You and the ChannelReply Contracting Party with regard to the subject matter hereof. These Terms and any Form(s) shall apply in lieu of the terms or conditions in any purchase order or other order documentation You or any Entity which You represent provides (all such terms or conditions being null and void), and, except as expressly stated herein, there are no other agreements, representations, warranties, or commitments which may be relied upon by either party with respect to the subject matter hereof. Notwithstanding the foregoing, additional terms may apply to certain features, functionality, or services We offer as part of or distinct from the Service, including Associated Services (the "Additional Terms"). In those instances, We will notify You of such Additional Terms prior to the activation of these features, functionality, or services and the activation of these features, functionality, or services in Your Account will be considered acceptance

of the Additional Terms. All such Additional Terms will be considered incorporated into these Terms when You or any Agent authorized as an administrator in Your Account activate the feature, functionality, or service. Where there is a conflict between these Terms and the Additional Terms, the Additional Terms will control.

**12.3** We may amend these Terms from time to time, in which case the new Terms will supersede prior versions. We will notify You not less than ten (10) days prior to the effective date of any such amendment and Your continued use of the Service following the effective date of any such amendment may be relied upon by ChannelReply as Your consent to any such amendment. Our failure to enforce at any time any provision of these Terms does not constitute a waiver of that provision or of any other provision of the Terms.

# 13. SEVERABILITY

If any provision in these Terms is held by a court of competent jurisdiction to be unenforceable, such provision shall be modified by the court and interpreted so as to best accomplish the original provision to the fullest extent permitted by law, and the remaining provisions of these Terms shall remain in effect.

# 14. EXPORT COMPLIANCE AND USE RESTRICTIONS

The Service and other Software or components of the Service that We may provide or make available to You, Agents or End-Users may be subject to U.S. export control and economic sanctions laws. You agree to comply with all such laws and regulations as they relate to access to and use of the Service, Software and such other components by You, Agents and End-Users. You shall not access or use the Service if You are located in any jurisdiction in which the provision of the Services, Software or other components is prohibited under U.S. or other applicable laws or regulations (a "Prohibited Jurisdiction") and You shall not provide access to the Services to any government, entity or individual located in any Prohibited Jurisdiction. You represent, warrant and covenant that (a) You are not named on any U.S. government list of persons or entities prohibited from receiving U.S. exports, or transacting with any U.S. person; (b) You are not a national of, or a company registered in, any Prohibited Jurisdiction; (c) You shall

not permit Agents or End-Users to access or use the Service in violation of any U.S. or other applicable export embargoes, prohibitions or restrictions; and (d) You shall comply with all applicable laws regarding the transmission of technical data exported from the United States and the country in which You, Agents and End-Users are located.

# 15. RELATIONSHIP OF THE PARTIES

The parties are independent contractors. These Terms do not create a partnership, franchise, joint venture, agency, fiduciary or employment relationship among the parties.

# 16. SURVIV§§AL

Sections 1, 2.3, 3, 4 and 9-21 shall survive any termination of our agreement with respect to use of the Service by You, Agents or End Users. Termination of such agreement shall not limit a Party's liability for obligations accrued as of or prior to such termination or for any breach of these Terms.

# 17. WITH WHOM YOU ARE CONTRACTING

**17.1** For the purposes of these Terms, the ChannelReply Contracting Party and the terms and conditions upon which each of the Parties contracts will vary depending on the Service. It is agreed that the table below sets out and determines (a) the entity within the ChannelReply Group with which You are contracting pursuant to these Terms with respect to such Service; (b) to whom You should direct notices to for the ChannelReply Contracting Party; (c) the law that will apply in construing or interpreting any dispute arising out of or in connection with these Terms as it relates to such Service; and (d) the courts which You and the ChannelReply Contracting Party have agreed shall have exclusive jurisdiction over any final determination or interpretation in relation to these Terms with respect to such Service.

| If You are subscribing to: | The ChannelReply Contracting Party is: | Notices should be addressed to: | The governing law is: | The courts h exclusive jurisdiction s be: |
|---|---|---|---|---|

| If You are subscribing to: | The ChannelReply Contracting Party is: | Notices should be addressed to: | The governing law is: | The courts h exclusive jurisdiction s be: |
|---|---|---|---|---|
| ChannelReply Service | Cooper Square Ventures, LLC | Cooper Square Ventures□1010 Northern Blvd, Suite 208□Great Neck, NY 11021 | New York and controlling United States federal law | New York, NY U.S.A. |

**17.2** Payments made by credit card, debit card or certain other payment instruments for the ChannelReply Service are billed and processed by the Payment Agent. To the extent the Payment Agent is not the ChannelReply Contracting Party, the Payment Agent is acting solely as a billing and processing agent for and on behalf of the ChannelReply Contracting Party and shall not be construed to be providing the applicable Service.

# 18. NOTICE

All notices to be provided by the ChannelReply Contracting Party to You under this Agreement may be delivered in writing (a) by nationally recognized overnight delivery service ("Courier") or U.S. mail to the contact mailing address provided by You on any Form; or (b) electronic mail to the electronic mail address provided for Your Account owner. You must give notice to the ChannelReply Contracting Party in writing by Courier or U.S. Mail to the applicable following address in Section 18.1. All notices shall be deemed to have been given immediately upon delivery by electronic mail, or if otherwise delivered upon receipt or, if earlier, two (2) business days after being deposited in the mail or with a Courier as permitted above.

# 19. GOVERNING LAW

These Terms shall be governed by the jurisdictions detailed in Section 17.1 without regard to conflict of laws principles. You hereby expressly agree to submit to the exclusive personal jurisdiction of those jurisdictions detailed in Section 17.1, for the

purpose of resolving any dispute relating to this Agreement or access to or use of the Service by You, Agents or End Users.

**Exhibit 12**

P-9

# TERMS OF SERVICE

Effective as of May 6, 2016, we have updated Terms of Service that apply to both ChannelReply. For a prior version of ChannelReply's Terms of Service, click here.

**THESE TERMS OF SERVICE ("TERMS") CONSTITUTE A CONTRACT BETWEEN YOU AND THE CHANNELREPLY CONTRACTING PARTY (AS DEFINED IN SECTION 18 BELOW) AND GOVERN USE OF AND ACCESS TO THE SERVICE AND SITE BY YOU, AGENTS AND END-USERS WHETHER IN CONNECTION WITH A PAID SUBSCRIPTION TO THE SERVICE OR A FREE TRIAL OF THE SERVICE.**

By accepting these Terms, or by accessing or using the Service or Site, or authorizing or permitting any Agent or End-User to access or use the Service, You agree to be bound by these Terms. If You are entering into these Terms on behalf of a company, organization or another legal entity (an "Entity"), You are agreeing to these Terms for that Entity and representing to ChannelReply that You have the authority to bind such Entity and its Affiliates to these Terms, in which case the terms "Subscriber," "You," "Your" or related capitalized terms herein shall refer to such Entity and its Affiliates. If You do not have such authority, or if You do not agree with these Terms, You must not accept these Terms and may not use the Service.

## 1. DEFINITIONS.

When used in these Terms with the initial letters capitalized, in addition to the terms defined elsewhere in these Terms, the following terms have the following meanings:

**Account:** means any accounts or instances created by or on behalf of Subscriber or its Agents within the Service.

**Affiliate:** means, with respect to a Party, any entity that directly or indirectly controls, is controlled by, or is under common control with such Party, whereby "control" (including, with correlative meaning, the terms "controlled by" and "under common control") means the possession, directly or indirectly, of the power to direct, or cause the direction of the

management and policies of such person, whether through the ownership of voting securities, by contract, or otherwise.

**Agent:** means an individual authorized to use the Service through Your Account as an agent and/or administrator as identified through a unique login.

**API:** means the application programming interfaces developed and enabled by the ChannelReply Contracting Party that permits Subscriber to access certain functionality provided by the Service, including without limitation, the REST API that enables the interaction with the Service automatically through HTTP requests and the application development API that enables the integration of the Service with other web applications.

**Associated Services:** means products, services, features and functionality designed to be used in conjunction with the Service but not included in the Service Plan to which You subscribed, including without limitation, integrations and applications created or developed by ChannelReply or its Affiliates which are expressly stated to be governed by these Terms. For avoidance of doubt, neither the ChannelReply Service or any other product, service, feature or functionality that is expressly stated to be governed by any alternative license, agreement or terms of service shall be deemed an Associated Service.

**Confidential Information:** means all information disclosed by You to the ChannelReply Contracting Party or by the ChannelReply Contracting Party to You which is in tangible form and labeled "confidential" (or with a similar legend) or which a reasonable person would understand to be confidential given the nature of the information and circumstances of disclosure, including, but not limited to information relating to the ChannelReply Contracting Party's security policies and procedures. For purposes of these Terms, these Terms as well as Service Data shall be deemed Confidential Information. Notwithstanding the foregoing, Confidential Information shall not include information that (a) was already known to the receiving party at the time of disclosure by the disclosing party; (b) was or is obtained by the receiving party by a third party not known by the receiving party to be under an obligation of confidentiality with respect to such information; (c) is or becomes generally available to the public other than by violation of these Terms or another valid agreement between the Parties; or (d) was or

is independently developed by the receiving party without use of the disclosing party's Confidential Information.

**Directive:** means Directive 95/46/EC on the protection of individuals with regard to the processing of Personal Data and on the free movement of such data.

**Documentation:** means any written or electronic documentation, images, video, text or sounds specifying the functionalities of the ChannelReply Service provided or made available by the ChannelReply Contracting Party to You, Agents or End-Users through the Site or otherwise.

**End-User:** means any person or entity other than Subscriber or Agents with whom Subscriber or its Agents interact using the Service.

**Form:** means any of Our generated service order forms executed or approved by You with respect to Your subscription to a Service, which form may detail, among other things, the number of Agents authorized to use the Service under Your subscription to the Service and the Service Plan applicable to Your subscription to the Service.

**Other Services:** means third party products, applications, services, software, products, networks, systems, directories, websites, databases and information which the Service links to, or which You may connect to or enable in conjunction with the Service, including, without limitation, Other Services which may be integrated directly into Your Account.

**Payment Agent:** means the ChannelReply Contracting Party, provided that (a) if the ChannelReply Contracting Party is not ChannelReply, the ChannelReply Contracting Party may designate ChannelReply to be the Payment Agent; or (b) if You choose to pay for a Service with a credit card or certain other payment instruments in a currency other than the U.S. Dollar, the ChannelReply Contracting Party may designate the Cooper Square Ventures, LLC Agent to be collect for ChannelReply, an LLC organized under the laws of the United States.

**Personal Data:** means any information relating to an identified or identifiable natural person where an identifiable person is one who can be identified, directly or indirectly, in

particular by reference to an identification number or to one or more factors specific to their physical, physiological, mental, economic, cultural or social identity.

**Processing/To Process/Processed:** means any operation or set of operations which is performed upon Personal Data, whether or not by automatic means, such as collection, recording, organization, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, blocking, erasure or destruction.

**Service:** means the ChannelReply Service, as applicable, together with all applicable Associated Services that You have purchased or deployed or to which You have subscribed ("Deployed Associated Services"), whether made available to You on a trial or paid basis.

**Service Data:** means electronic data, text, messages, communications or other materials submitted to and stored within the Service by You, Agents and End-Users in connection with Your use of such Service, which may include, without limitation, Personal Data.

**Service Plan(s):** means the packaged service plan(s) and the functionality and services associated therewith (as detailed on the Site applicable to the Service) for the ChannelReply Service, as applicable, to which You subscribe.

**Site:** means www.ChannelReply.com as applicable, as well as the other websites that the ChannelReply Contracting Party operates.

**Software:** means software provided by the ChannelReply Contracting Party (either by download or access through the internet) that allows an Agent or End-Users to use any functionality in connection with the applicable Service.

**Subscription Term:** means the period during which You have agreed to subscribe to the ChannelReply Service, as applicable, with respect to any individual Agent.

**Usage Data:** means encoded or anonymized information or aggregated data that the ChannelReply Group may collect about a group or category of services, features or

users while You, Your Agents or End-Users use a Service for certain purposes, including analytics, which does not contain Personal Data.

**"We," "Us" or "Our":** means the ChannelReply Contracting Party described in Section 18.

**ChannelReply Contracting Party:** means the ChannelReply entity with which You are contracting under these Terms.

**ChannelReply:** means Cooper Square Ventures, LLC a New York Limited Liability Company or any of its successors or assignees.

**ChannelReply Group:** means Cooper Square Ventures, LLC a New York Limited Liability Company together with all its Affiliates.

**ChannelReply Service:** means only the on-demand customer service solution made available by ChannelReply online via the subscriber login link at https://www.ChannelReply.com and other web pages designated by ChannelReply, including, individually and collectively, the applicable Software, Updates, API and Documentation.

## 2. GENERAL CONDITIONS; ACCESS TO AND USE OF THE SERVICE

**2.1** During the Subscription Term and subject to compliance by You, Agents and End-Users with these Terms, You have the limited right to access and use a Service consistent with the Service Plan(s) that You subscribe to, together with all applicable Deployed Associated Services, for Your internal business purposes. You may not use the Service to provide customer service, support or other outsourced business process services to more than one third party (other than Affiliates) through a single Account. Without limiting the foregoing, Your right to access and use the API is also subject to the restrictions and policies implemented by the ChannelReply Contracting Party from time to time with respect to the API as set forth in the Documentation or otherwise communicated to You in writing.

**2.2** A high speed Internet connection is required for proper transmission of the Service. You are responsible for procuring and maintaining the network connections that connect Your network to the Service, including, but not limited to, "browser" software that supports protocols used by the ChannelReply Contracting Party, including the Transport Layer Security (TLS) protocol or other protocols accepted by the ChannelReply Contracting Party, and to follow procedures for accessing services that support such protocols. We are not responsible for notifying You, Agents or End-Users of any upgrades, fixes or enhancements to any such software or for any compromise of data, including Service Data, transmitted across computer networks or telecommunications facilities (including but not limited to the Internet) which are not owned, operated or controlled by the ChannelReply Contracting Party. We assume no responsibility for the reliability or performance of any connections as described in this section.

**2.3** In addition to complying with the other terms, conditions and restrictions set forth below in these Terms, You agree not to (a) license, sublicense, sell, resell, rent, lease, transfer, assign, distribute, time share or otherwise commercially exploit or make the Service available to any third party, other than authorized Agents and End-Users in furtherance of Your internal business purposes as expressly permitted by these Terms; (b) use the Service to Process data on behalf of any third party other than Agents or End-Users; (c) modify, adapt, or hack the Service or otherwise attempt to gain unauthorized access to the Service or related systems or networks; (d) falsely imply any sponsorship or association with the ChannelReply Contracting Party, (e) use the Service in any unlawful manner, including but not limited to violation of any person's privacy rights; (f) use the Service to send unsolicited or unauthorized bulk mail, junk mail, spam, pyramid schemes or other forms of duplicative or unsolicited messages; (g) use the Service to store or transmit files, materials, data, text, audio, video, images or other content that infringes on any person's intellectual property rights; (h) use the Service in any manner that interferes with or disrupts the integrity or performance of the Services and its components; (i) attempt to decipher, decompile, reverse engineer or otherwise discover the source code of any Software making up the Service; (j) use the Service to knowingly post, transmit, upload, link to, send or store any content that is unlawful, racist, hateful, abusive, libelous, obscene, or discriminatory; (k) use the Service to store or transmit any "protected health information" as that term is defined in

45 C.F.R. 160.103, unless expressly agreed to otherwise in writing by the ChannelReply Contracting Party; (l) use the Service to knowingly post transmit, upload, link to, send or store any viruses, malware, Trojan horses, time bombs, or any other similar harmful software ("Malicious Software"); or (m) attempt to use, or use the Service in violation of these Terms.

2.4 You are responsible for compliance with the provisions of these Terms by Agents and End-Users and for any and all activities that occur under Your Account, as well as for all Service Data. Without limiting the foregoing, You are solely responsible for ensuring that use of the Service to store and transmit Service Data is compliant with all applicable laws and regulations as well as any and all privacy policies, agreements or other obligations You may maintain or enter into with Agents or End-Users. You also maintain all responsibility for determining whether the Services or the information generated thereby is accurate or sufficient for Your purposes. Subject to any limitation on the number of individual Agents available under the applicable Service Plan(s) to which You subscribed or applicable Deployed Associated Service, access to and use of the Service is restricted to the specified number of individual Agents permitted under Your subscription to the Service. You agree and acknowledge that each Agent will be identified by a unique username and password ("Login") and that an Agent Login may only be used by one (1) individual. You will not share an Agent Login among multiple individuals. The foregoing shall not be deemed to limit Your use of the Multi-Branding and Light.Agent features of the ChannelReply Service if Your Service Plan includes these features or they are made available to you as a Deployed Associated Service. You and Your Agents are responsible for maintaining the confidentiality of all Login information for Your Account.

2.5 In addition to Our rights as set forth in Section 8.4, We reserve the right, in Our reasonable discretion, to temporarily suspend Your access to and use of a Service: (a) during planned downtime for upgrades and maintenance to the Service (of which We will use commercially reasonable efforts to notify You in advance both through Our Site and a notice to Your Account owner and Agents) ("Planned Downtime"); (b) during any unavailability caused by circumstances beyond Our reasonable control, such as, but not limited to, acts of God, acts of government, acts of terror or civil unrest, technical failures beyond Our reasonable control (including, without limitation, inability to access

the Internet), or acts undertaken by third parties, including without limitation, distributed denial of service attacks; or (c) if We suspect or detect any Malicious Software connected to Your Account or use of the Service by You, Agents or End-Users.

# 3. DATA PRIVACY AND SECURITY; CONFIDENTIALITY

**3.1** Subject to the express permissions of these Terms, each Party will protect each other's Confidential Information from unauthorized use, access or disclosure in the same manner as each protects its own Confidential Information, but with no less than reasonable care. Except as otherwise expressly permitted pursuant to these Terms, each of us may use each other's Confidential Information solely to exercise our respective rights and perform our respective obligations under these Terms and shall disclose such Confidential Information (a) solely to those of our respective employees, representatives, subcontractors and agents who have a need to know such Confidential Information for such purposes and who are bound to maintain the confidentiality of, and not misuse, such Confidential Information; (b) as necessary to comply with an order or subpoena of any administrative agency or court of competent jurisdiction; or (c) as reasonably necessary to comply with any applicable law or regulation. The provisions of this Section 3 shall supersede any non-disclosure agreement by and between the Parties that would purport to address the confidentiality and security of Service Data and such agreement shall have no further force or effect with respect to Service Data.

**3.2** To the extent Service Data constitutes Personal Data, You and the ChannelReply Contracting Party hereby agree that You shall be deemed to be the data controller and the relevant ChannelReply Contracting Party shall be deemed to be the data processor as those terms are understood under the Directive (and any applicable national legislation implementing the Directive). In providing the Service, the ChannelReply Contracting Party will engage entities within the ChannelReply Group and other authorized service providers, to Process Service Data, including and without limitation, any associated Personal Data pursuant to these Terms within the European Economic Area (the "EEA"), the United States and in other countries and territories. Under no circumstances will the relevant ChannelReply Contracting Party be deemed a data

controller with respect to Service Data under the Directive or any relevant law or regulation of any Member State as defined in the Directive.

**3.3** ChannelReply will maintain commercially reasonable administrative, physical and technical safeguards to protect the security, confidentiality and integrity of Service Data. These safeguards include encryption of Service Data in transmission (using TLS or similar technologies), except for certain Other Services that do not support encryption, which You may link to through the Service at Your election. Our compliance with the provisions of this Section 3.3 shall be deemed compliance with Our obligations to protect Service Data as set forth in Section 3.1.

**3.4** You agree that We and the service providers that We utilize to assist in providing the Service to You shall have the right to access Your Account and to use, modify, reproduce, distribute, display and disclose Service Data to the extent necessary to provide the Service, including, without limitation, in response to Your support requests. Any third party service providers We utilize will only be given access to Your Account and Service Data as is reasonably necessary to provide the Service and will be subject to (a) confidentiality obligations which are commercially reasonable and substantially consistent with the standards described in Section 3.3 and (b) their agreement to comply with the data transfer restrictions applicable to Personal Data.

**3.5** In addition to Service Data, We collect certain information (which may include Personal Data) about You, Agents and End-Users as well as Your and their respective devices, computers and use of the Service. We use, disclose, and protect this information as described in Our Privacy Policy, the then-current version of which is available at www.channelreply.com/privacy and is incorporated into the Terms.

# 4. INTELLECTUAL PROPERTY RIGHTS

Each Party shall maintain all rights, title and interest in and to all our respective patents, inventions, copyrights, trademarks, domain names, trade secrets, know-how and any other intellectual property and/or proprietary rights (collectively, "Intellectual Property Rights"). The rights granted to You, Agents and End-Users to use the Service under these Terms do not convey any additional rights in the Service, or in any Intellectual

Property Rights associated therewith. Subject only to limited rights to access and use the Service as expressly stated herein, all rights, title and interest in and to the Service and all hardware, Software and other components of or used to provide the Service, including all related Intellectual Property Rights, will remain with the ChannelReply Contracting Party and belong exclusively to the ChannelReply Contracting Party. The ChannelReply Group shall have a fully paid-up, royalty-free, worldwide, transferable, sub-licensable, irrevocable and perpetual license to implement, use, modify, commercially exploit, and/or incorporate into the Service or otherwise use any suggestions, enhancement requests, recommendations or other feedback We receive from You, Agents, End-User, or other third parties acting on Your behalf. ChannelReply, and the ChannelReply Group's other product and service names, and logos used or displayed on the Service are registered or unregistered trademarks of one or more members of the ChannelReply Group (collectively, "Marks"), and You may only use applicable Marks to identify You as a Subscriber; provided You do not attempt, now or in the future, to claim any rights in the Marks, degrade the distinctiveness of the Marks, or use the Marks to disparage or misrepresent Us, Our services or products.

# 5. THIRD PARTY SERVICES

If You decide to enable, access or use Other Services, be advised that Your access and use of such Other Services is governed solely by the terms and conditions of such Other Services, and We do not endorse, are not responsible or liable for, and make no representations as to any aspect of such Other Services, including, without limitation, their content or the manner in which they handle data (including Service Data) or any interaction between You and the provider of such Other Services. You irrevocably waive any claim against the ChannelReply Contracting Party with respect to such Other Services. We are not liable for any damage or loss caused or alleged to be caused by or in connection with Your enablement, access or use of any such Other Services, or Your reliance on the privacy practices, data security processes or other policies of such Other Services. You may be required to register for or log into such Other Services on their respective websites. By enabling any Other Services, You are expressly permitting the ChannelReply Contracting Party to disclose Your Login as well as Service Data as necessary to facilitate the use or enablement of such Other Services.

# 6. BILLING, PLAN MODIFICATIONS AND PAYMENTS

6.1 Unless otherwise indicated on a Form referencing these Terms or in any Additional Terms (as defined in Section 12.2) and subject to Section 6.2, all charges associated with Your access to and use of the Service ("Subscription Charges") are due in full upon commencement of Your Subscription Term, or with respect to a Deployed Associated Service, at the time such Deployed Associated Service is purchased, subscribed to or otherwise deployed. At Our election, Subscription Charges for ChannelReply Voice may be charged in arrears or by requiring You to prepay for expected usage. If You fail to pay Your Subscription Charges or charges for other services indicated on any Form referencing these Terms within five (5) business days of Our notice to You that payment is due or delinquent, or if You do not update payment information upon Our request, in addition to Our other remedies, We may suspend or terminate access to and use of such Service by You, Agents and End-Users.

6.2 If You choose to upgrade Your Service Plan or increase the number of Agents authorized to access and use the Service during Your Subscription Term (a "Subscription Upgrade"), any incremental Subscription Charges associated with such Subscription Upgrade will be prorated over the remaining period of Your then current Subscription Term, charged to Your Account and due and payable upon implementation of such Subscription Upgrade. In any future Subscription Term, Your Subscription Charges will reflect any such Subscription Upgrades.

6.3 No refunds or credits for Subscription Charges or other fees or payments will be provided to You if You elect to downgrade Your Service Plan. Downgrading Your Service Plan may cause loss of content, features, or capacity of the Service as available to You under Your Account, and the ChannelReply Contracting Party does not accept any liability for such loss.

6.4 Unless otherwise stated, Our charges do not include any taxes, levies, duties or similar governmental assessments, including value-added, sales, use or withholding taxes assessable by any local, state, provincial or foreign jurisdiction (collectively "Taxes"). You are responsible for paying Taxes except those assessable against the ChannelReply Contracting Party based on its income. We will invoice You for such

Taxes if We believe We have a legal obligation to do so and You agree to pay such Taxes if so invoiced.

6.5 If You pay by credit card or certain other payment instruments, the Service provides an interface for the Account owner to change credit card information (e.g. upon card renewal). The Account owner will receive a receipt upon each receipt of payment by the Payment Agent, or they may obtain a receipt from within the Service to track subscription status. You hereby authorize the Payment Agent to bill Your credit card or other payment instrument in advance on a periodic basis in accordance with the terms of the Service Plan for the Service and for periodic Subscription Charges applicable to Deployed Associated Services until You terminate Your Subscription to the Service, and You further agree to pay any Subscription Charges so incurred. If applicable, You hereby authorize the ChannelReply Contracting Party and the Payment Agent to charge Your credit card or other payment instrument to establish such prepaid credit. You agree to promptly update your Account information with any changes (for example, a change in Your billing address or credit card expiration date) that may occur. The Payment Agent uses a third-party intermediary to manage credit card processing and this intermediary is not permitted to store, retain or use Your billing information except to process Your credit card information for the Payment Agent.

# 7. CREDITS POLICY

7.1 We may, at our sole discretion, choose to offer credits for the Service in various ways, including but not limited to, coupons, promotional campaigns and referrals. The ChannelReply Contracting Party reserves the right to award credits at its sole discretion. Credits have no monetary or cash value and can only be used by You to offset Your subsequent payments of Subscription Charges for the applicable Service. Credits may only be applied to Subscription Charges due for the Service specifically identified by the ChannelReply Contracting Party when issuing the credit. Credits can only be used by You and are non-transferable.

7.2 To the extent that You have been awarded ChannelReply credits, unless the instrument (including any coupon) states an earlier expiration date, these ChannelReply

credits shall expire and no longer be redeemable twelve (12) months from the date the ChannelReply credit was issued.

# 8. CANCELLATION AND TERMINATION

8.1 Either Party may elect to terminate Your Account and subscription to the Service as of the end of Your then current Subscription Term by providing notice, in accordance with these Terms, on or prior to the date thirty (30) days preceding the end of such Subscription Term. Unless Your Account and subscription to the Services is so terminated, Your subscription to the Service (including any and all Deployed Associated Services) will renew for a Subscription Term equivalent in length to the then expiring Subscription Term. Unless otherwise provided for in any Form, the Subscription Charges applicable to Your subscription to the Service for any such subsequent Subscription Term shall be Our standard Subscription Charges for the Service Plan and Deployed Associated Services to which You have subscribed or which you have deployed, as applicable, as of the time such subsequent Subscription Term commences.

8.2 No refunds or credits for Subscription Charges or other fees or payments will be provided to You if You elect to terminate Your subscription to the Service or cancel Your Account prior to the end of Your then effective Subscription Term. Following the termination or cancellation of Your subscription to the Service and/or Account, We reserve the right to delete all Service Data in the normal course of operation. Service Data cannot be recovered once Your Account is cancelled.

8.3 If You terminate Your subscription to the Service or cancel Your Account prior to the end of Your then effective Subscription Term or We effect such termination or cancellation pursuant to Sections 2.5(c) or 8.4, in addition to other amounts You may owe ChannelReply, You must immediately pay any then unpaid Subscription Charges associated with the remainder of such Subscription Term. This amount will not be payable by You in the event You terminate Your subscription to the Service or cancel Your Account as a result of a material breach of these Terms by the ChannelReply Contracting Party, provided that You provide advance notice of such breach to the

ChannelReply Contracting Party and afford the ChannelReply Contracting Party not less than thirty (30) days to reasonably cure such breach.

8.4 We reserve the right to modify, suspend or terminate the Service (or any part thereof), Your Account or Your and/or Agents' or End-Users' rights to access and use the Services, and remove, disable and discard any Service Data if We believe that You, Agents or End-Users have violated these Terms. Unless legally prohibited from doing so, We will use commercially reasonable efforts to contact You directly via email to notify You when taking any of the foregoing actions. We shall not be liable to You, Agents, End-Users or any other third party for any such modification, suspension or discontinuation of Your rights to access and use the Service. Any suspected fraudulent, abusive, or illegal activity by You, Agents or End-Users may be referred to law enforcement authorities at Our sole discretion.

# 9. DISCLAIMER OF WARRANTIES

THE SITE AND THE SERVICE, INCLUDING ALL SERVER AND NETWORK COMPONENTS ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITHOUT ANY WARRANTIES OF ANY KIND TO THE FULLEST EXTENT PERMITTED BY LAW, AND WE EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, TITLE, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. YOU ACKNOWLEDGE THAT WE DO NOT WARRANT THAT THE SERVICE WILL BE UNINTERRUPTED, TIMELY, SECURE, ERROR-FREE OR FREE FROM VIRUSES OR OTHER MALICIOUS SOFTWARE, AND NO INFORMATION OR ADVICE OBTAINED BY YOU FROM US OR THROUGH THE SERVICE SHALL CREATE ANY WARRANTY NOT EXPRESSLY STATED IN THESE TERMS.

# 10. LIMITATION OF LIABILITY

10.1 UNDER NO CIRCUMSTANCES AND UNDER NO LEGAL THEORY (WHETHER IN CONTRACT, TORT, NEGLIGENCE OR OTHERWISE) WILL EITHER PARTY TO THESE TERMS, OR THEIR AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES,

AGENTS, SUPPLIERS OR LICENSORS BE LIABLE TO THE OTHER PARTY OR ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, CONSEQUENTIAL, PUNITIVE OR OTHER SIMILAR DAMAGES, INCLUDING LOST PROFITS, LOST SALES OR BUSINESS, LOST DATA, BUSINESS INTERRUPTION OR ANY OTHER LOSS INCURRED BY SUCH PARTY OR THIRD PARTY IN CONNECTION WITH THESE TERMS OR THE SERVICE, REGARDLESS OF WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF OR COULD HAVE FORESEEN SUCH DAMAGES.

**10.2** NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THESE TERMS, OUR AGGREGATE LIABILITY TO YOU OR ANY THIRD PARTY ARISING OUT OF THESE TERMS OR OTHERWISE IN CONNECTION WITH ANY SUBSCRIPTION TO, OR USE OR EMPLOYMENT OF THE SERVICE, SHALL IN NO EVENT EXCEED THE SUBSCRIPTION CHARGES FOR SUCH SERVICE PAID BY YOU DURING THE TWELVE (12) MONTHS PRIOR TO THE FIRST EVENT OR OCCURRENCE GIVING RISE TO SUCH LIABILITY. YOU ACKNOWLEDGE AND AGREE THAT THE ESSENTIAL PURPOSE OF THIS SECTION 11.2 IS TO ALLOCATE THE RISKS UNDER THESE TERMS BETWEEN THE PARTIES AND LIMIT POTENTIAL LIABILITY GIVEN THE SUBSCRIPTION CHARGES, WHICH WOULD HAVE BEEN SUBSTANTIALLY HIGHER IF WE WERE TO ASSUME ANY FURTHER LIABILITY OTHER THAN AS SET FORTH HEREIN. WE HAVE RELIED ON THESE LIMITATIONS IN DETERMINING WHETHER TO PROVIDE YOU THE RIGHTS TO ACCESS AND USE THE SERVICE PROVIDED FOR IN THESE TERMS.

**10.3** Some jurisdictions do not allow the exclusion of implied warranties or limitation of liability for incidental or consequential damages, which means that some of the above limitations may not apply to You. IN THESE JURISDICTIONS, THE CHANNELREPLY CONTRACTING PARTY'S LIABILITY WILL BE LIMITED TO THE GREATEST EXTENT PERMITTED BY LAW.

**10.4** Any claims or damages that You may have against the ChannelReply Contracting Party shall only be enforceable against the ChannelReply Contracting Party and not any other entity or its officers, directors, representatives or agents.

# 11. INDEMNIFICATION

**11.1** We will indemnify and hold You harmless, from and against any claim against You by reason of Your use of the Service as permitted hereunder, brought by a third party alleging that such Service infringes or misappropriates a third party's valid patent, copyright, trademark or trade secret (an "IP Claim"). We shall, at Our expense, defend such IP Claim and pay damages finally awarded against You in connection therewith, including the reasonable fees and expenses of the attorneys engaged by the ChannelReply Contracting Party for such defense, provided that (a) You promptly notify the ChannelReply Contracting Party of the threat or notice of such IP Claim; (b) We will have the sole and exclusive control and authority to select defense attorneys, defend and/or settle any such IP Claim; and (c) You fully cooperate with the ChannelReply Contracting Party in connection therewith. If use of the Service by You, Agents or End-Users has become, or in Our opinion is likely to become, the subject of any such IP Claim, We may at its option and expense (a) procure for You the right to continue using the Service as set forth hereunder; (b) replace or modify the Service to make it non-infringing; or (c) if options (a) or (b) are not commercially reasonable or practicable as determined by the ChannelReply Contracting Party, terminate Your subscription to the Service and repay You, on a pro-rated basis, any Subscription Charges previously paid to the ChannelReply Contracting Party for the corresponding unused portion of Your Subscription Term for such Service. We will have no liability or obligation under this Section 12.1 with respect to any IP Claim if such claim is caused in whole or in part by (i) compliance with designs, data, instructions or specifications provided by You; (ii) modification of the Service by anyone other than the ChannelReply Contracting Party; or (iii) the combination, operation or use of the Service with other hardware or software where the Service would not by itself be infringing.

he provisions of this Section 11.1 state the sole, exclusive and entire liability of the ChannelReply Contracting Party to You and constitute Your sole remedy with respect to an IP Claim brought by reason of access to or use of the Service by You, Agents or End-Users.

**11.2** You will indemnify and hold the ChannelReply Contracting Party harmless against any claim brought by a third party against ChannelReply arising from or related to use of the Service by You, Agents or End-Users in breach of these Terms or matters which You have expressly agreed to be responsible pursuant to these Terms; provided that We promptly notifies You of the threat or notice of such a claim.

# 12. ASSIGNMENT; ENTIRE AGREEMENT; AMENDMENT

**12.1** You may not, directly or indirectly, by operation of law or otherwise, assign all or any part of these Terms or Your rights under these Terms or delegate performance of Your duties under these Terms without Our prior consent, which consent will not be unreasonably withheld. We may, without Your consent, assign Our agreement with You to any member of the ChannelReply Group or in connection with any merger or change of control of the ChannelReply Contracting Party or the ChannelReply Group or the sale of all or substantially all of Our assets provided that any such successor agrees to fulfill its obligations pursuant to these Terms. Subject to the foregoing restrictions, these Terms will be fully binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and assigns.

**12.2** These Terms, together with any Form(s), constitute the entire agreement, and supersede any and all prior agreements between You and the ChannelReply Contracting Party with regard to the subject matter hereof. These Terms and any Form(s) shall apply in lieu of the terms or conditions in any purchase order or other order documentation You or any Entity which You represent provides (all such terms or conditions being null and void), and, except as expressly stated herein, there are no other agreements, representations, warranties, or commitments which may be relied upon by either party with respect to the subject matter hereof. Notwithstanding the foregoing, additional terms may apply to certain features, functionality, or services We offer as part of or distinct from the Service, including Associated Services (the "Additional Terms"). In those instances, We will notify You of such Additional Terms prior to the activation of these features, functionality, or services and the activation of these features, functionality, or services in Your Account will be considered acceptance

of the Additional Terms. All such Additional Terms will be considered incorporated into these Terms when You or any Agent authorized as an administrator in Your Account activate the feature, functionality, or service. Where there is a conflict between these Terms and the Additional Terms, the Additional Terms will control.

**12.3** We may amend these Terms from time to time, in which case the new Terms will supersede prior versions. We will notify You not less than ten (10) days prior to the effective date of any such amendment and Your continued use of the Service following the effective date of any such amendment may be relied upon by ChannelReply as Your consent to any such amendment. Our failure to enforce at any time any provision of these Terms does not constitute a waiver of that provision or of any other provision of the Terms.

## 13. SEVERABILITY

If any provision in these Terms is held by a court of competent jurisdiction to be unenforceable, such provision shall be modified by the court and interpreted so as to best accomplish the original provision to the fullest extent permitted by law, and the remaining provisions of these Terms shall remain in effect.

## 14. EXPORT COMPLIANCE AND USE RESTRICTIONS

The Service and other Software or components of the Service that We may provide or make available to You, Agents or End-Users may be subject to U.S. export control and economic sanctions laws. You agree to comply with all such laws and regulations as they relate to access to and use of the Service, Software and such other components by You, Agents and End-Users. You shall not access or use the Service if You are located in any jurisdiction in which the provision of the Services, Software or other components is prohibited under U.S. or other applicable laws or regulations (a "Prohibited Jurisdiction") and You shall not provide access to the Services to any government, entity or individual located in any Prohibited Jurisdiction. You represent, warrant and covenant that (a) You are not named on any U.S. government list of persons or entities prohibited from receiving U.S. exports, or transacting with any U.S. person; (b) You are not a national of, or a company registered in, any Prohibited Jurisdiction; (c) You shall

not permit Agents or End-Users to access or use the Service in violation of any U.S. or other applicable export embargoes, prohibitions or restrictions; and (d) You shall comply with all applicable laws regarding the transmission of technical data exported from the United States and the country in which You, Agents and End-Users are located.

## 15. RELATIONSHIP OF THE PARTIES

The parties are independent contractors. These Terms do not create a partnership, franchise, joint venture, agency, fiduciary or employment relationship among the parties.

## 16. SURVIV§§AL

Sections 1, 2.3, 3, 4 and 9-21 shall survive any termination of our agreement with respect to use of the Service by You, Agents or End Users. Termination of such agreement shall not limit a Party's liability for obligations accrued as of or prior to such termination or for any breach of these Terms.

## 17. WITH WHOM YOU ARE CONTRACTING

**17.1** For the purposes of these Terms, the ChannelReply Contracting Party and the terms and conditions upon which each of the Parties contracts will vary depending on the Service. It is agreed that the table below sets out and determines (a) the entity within the ChannelReply Group with which You are contracting pursuant to these Terms with respect to such Service; (b) to whom You should direct notices to for the ChannelReply Contracting Party; (c) the law that will apply in construing or interpreting any dispute arising out of or in connection with these Terms as it relates to such Service; and (d) the courts which You and the ChannelReply Contracting Party have agreed shall have exclusive jurisdiction over any final determination or interpretation in relation to these Terms with respect to such Service.

| If You are subscribing to: | The ChannelReply Contracting Party is: | Notices should be addressed to: | The governing law is: | The courts h exclusive jurisdiction s be: |
|---|---|---|---|---|

| If You are subscribing to: | The ChannelReply Contracting Party is: | Notices should be addressed to: | The governing law is: | The courts h exclusive jurisdiction s be: |
|---|---|---|---|---|
| ChannelReply Service | Cooper Square Ventures, LLC | Cooper Square Ventures▢1010 Northern Blvd, Suite 208▢Great Neck, NY 11021 | New York and controlling United States federal law | New York, NY U.S.A. |

**17.2** Payments made by credit card, debit card or certain other payment instruments for the ChannelReply Service are billed and processed by the Payment Agent. To the extent the Payment Agent is not the ChannelReply Contracting Party, the Payment Agent is acting solely as a billing and processing agent for and on behalf of the ChannelReply Contracting Party and shall not be construed to be providing the applicable Service.

## 18. NOTICE

All notices to be provided by the ChannelReply Contracting Party to You under this Agreement may be delivered in writing (a) by nationally recognized overnight delivery service ("Courier") or U.S. mail to the contact mailing address provided by You on any Form; or (b) electronic mail to the electronic mail address provided for Your Account owner. You must give notice to the ChannelReply Contracting Party in writing by Courier or U.S. Mail to the applicable following address in Section 18.1. All notices shall be deemed to have been given immediately upon delivery by electronic mail, or if otherwise delivered upon receipt or, if earlier, two (2) business days after being deposited in the mail or with a Courier as permitted above.

## 19. GOVERNING LAW

These Terms shall be governed by the jurisdictions detailed in Section 17.1 without regard to conflict of laws principles. You hereby expressly agree to submit to the exclusive personal jurisdiction of those jurisdictions detailed in Section 17.1, for the

purpose of resolving any dispute relating to this Agreement or access to or use of the Service by You, Agents or End Users.

**Exhibit 13** A

just got off phone w/ Rothman

abt CR creating a new LLC etc

what do u think we should call new
LLC?

 Really going out of business

hah

do we name it ChannelReply or do
we name it something random dba
channelreply

 ChannelReply, LLC is fine with me.

k

u talk to Alice?

 A bit over txt. I might see her
tomorrow.

# EXHIBIT B

 <sup>™</sup>
by Google

Mike Dash <mdash@ndap-llc.com>

---

## Items

---

**Michael Dash** <mdash@ndap-llc.com>                             Tue, Jun 7, 2016 at 11:00 AM
To: Jeffrey Rothman <jrothman@srrlaw.com>

*ChannelReply -*

- Create a new LLC for ChannelReply - we should call it ChannelReply, LLC it can be a New York LLC with business address of 1010 Northern Blvd, Suite 208 Great Neck, NY 11021
- New Operating Agreement btwn David Gitman and Michael Dardashtian

*Review Super ISO Agreement*

*New Super ISO LLC (will be created in Delaware)*

- Need Operating agreement between Michael Dardashtian and Jeremy Falk
- Operating agreement should have a non-circumvent

Also, if you know of a software transaction attorney you can refer for eventual "sale/license" of CarPartKings software that would be great.

Thank you Jeff!

**Michael Dash**
**ndap**
Tel: (646) 553-5918
mdash@ndap-llc.com | http://www.ndap-llc.com



## **<u>Exhibit 14</u>**

# NYS Department of State
## Division of Corporations
## Entity Information

The information contained in this database is current through June 2, 2017.

Selected Entity Name: CHANNELREPLY, LLC

Selected Entity Status Information

Current Entity Name: CHANNELREPLY, LLC

DOS ID #: 4960621

Initial DOS Filing Date: JUNE 09, 2016

County: NASSAU

Jurisdiction: NEW YORK

Entity Type: DOMESTIC LIMITED LIABILITY COMPANY

Current Entity Status: ACTIVE

Selected Entity Address Information

DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)
THE LIMITED LIABILITY COMPANY
1010 NORTHERN BLVD, SUITE 208
GREAT NECK, NEW YORK, 11021

Registered Agent
NONE

This office does not require or maintain information regarding the names and addresses of members or managers of nonprofessional limited liability companies. Professional limited liability companies must include the name(s) and address(es) of the original members, however this information is not recorded and only available by viewing the certificate.

*Stock Information

| # of Shares | Type of Stock | $ Value per Share |
| --- | --- | --- |
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

Name History

| Filing Date | Name Type | Entity Name |
| --- | --- | --- |
| JUN 09, 2016 | Actual | CHANNELREPLY, LLC |

A Fictitious name must be used when the Actual name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results | New Search

Services/Programs | Privacy Policy | Accessibility Policy | Disclaimer | Return to DOS Homepage | Contact Us

# Exhibit 15



August 23, 2016


Seligson, Rothman & Rothman, Esqs.
29 West 30th Street, 10th floor
New York, New York 10001

Attn: Angela Curci

Re: ChannelReply, LLC

Dear Angela,

This letter is to confirm that a legal notice regarding the above-referenced
entity has been published.

Enclosed please find the filing receipt for the Certificate of Publication filed
with the state.

Thank you for using Vcorp Services for all your corporate service needs.


Very truly yours,

*Dylan Lolya*

Dylan Lolya

```
N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS          ALBANY, NY 12231-0001

                              FILING RECEIPT
================================================================================
ENTITY NAME: CHANNELREPLY, LLC

DOCUMENT TYPE: CERTIFICATE OF PUBLICATION (DOM LLC)          COUNTY: NASS

================================================================================
FILED:08/19/2016 DURATION:*********   CASH#:160819000133 FILM #:160819000134


    FILER:
    ------
    SELIGSON ROTHMAN & ROTHMAN ESQS
    29 WEST 30TH STREET 10TH FL

    NEW YORK, NY 10001

    ADDRESS FOR PROCESS:
    -------------------



    REGISTERED AGENT:
    ----------------
```



```
================================================================================
SERVICE COMPANY: VCORP SERVICES, LLC                  SERVICE CODE: HD


  FEES        50.00                         PAYMENTS        50.00
            --------                                      --------
  FILING      50.00                         CASH             0.00
  TAX          0.00                         CHECK            0.00
  CERT         0.00                         CHARGE           0.00
  COPIES       0.00                         DRAWDOWN        50.00
  HANDLING     0.00                         OPAL             0.00
                                            REFUND           0.00
================================================================================
2337861                                             DOS-1025 (04/2007)
```

# CERTIFICATE OF PUBLICATION

## OF

## ChannelReply, LLC

### Under Section 206 of the Limited Liability Company Law

The undersigned is an authorized person of ChannelReply, LLC

If the name of the limited liability company has been changed, the name under which it was organized is: .

The published notices described in the annexed affidavits of publication contain all of the information required by Section 206 of the Limited Liability Company Law.

The newspapers described in such affidavits of publication satisfy the requirements set forth in the Limited Liability Company Law and the designation made by the county clerk.

I certify the foregoing statements to be true under penalties of perjury.

Dated: July 29, 2016

_____ */s/Dylan Lolya* _____
Dylan Lolya

# NEWSDAY
# AFFIDAVIT OF PUBLICATION

VCORP SERVICES LLC
25 ROBERT PITT DR STE 204
MONSEY, NY 10952-3366

Under Section 206 of the Limited Liability Company Law

STATE OF NEW YORK)            Legal Notice No.        0021191517
:SS.:
COUNTY OF SUFFOLK)

The undersigned is the publisher of Newsday, a daily newspaper printed in
Melville, County of Suffolk, State of New York, and circulated in
Nassau, Suffolk and Queens Counties.

A Legal Notice regarding ChannelReply, LLC. was published in said newspaper once in
each week for six successive weeks, commencing on 6/22/2016 and ending on 7/27/2016

The text of the notice as published in said newspaper as set forth below or in the annexed
exhibit. This newspaper has been designated by the Clerk of Nassau County for this
purpose.

**SWORN** to before me this
27 Day of July, 2016.

By: _____

                    Tamika Byrd

**"Authorized Designee of Gordon McLeod , Publisher of Newsday"**

**Jason A. Neknez**
**Notary Public, State of New York**
**No. 01NE6219108**
**Commission Expires 03/22/2018**
**Qualified in Suffolk County**

## Ad Content

Legal Notice # 21191517
Notice of Formation of
ChannelReply, LLC. Arts of
Org. filed with New York
Secy of State (SSNY) on 6/
9/16. Office location: Nassau
County. SSNY is designated
as agent of LLC upon whom
process against it may be
served. SSNY shall mail proc-
ess to: 1010 Northern Blvd,
Ste 208, Great Neck, NY
11021. Purpose: any lawful
activity.

# NEWSDAY PROOF

**Ad Number:**      0021191517

**Advertiser:**      VCORP SERVICES LLC

Affidavit of Publication
Under Section   206   of the
Limited Liability Company Law

State of New York
County of New York, ss.:

The undersigned is the publisher of The Jewish Press, a weekly newspaper published in Brooklyn, New York. A notice regarding ChannelReply, LLC was published in said newspaper once in each week for six successive weeks, commencing on June 17, 2016 and ending July 22, 2016. The text of the notice as published in said newspaper is set forth below. This newspaper has been designated by the Clerk of Nassau County for this purpose.

Naomi Klass Mauer, Publisher

By:_____

Rose Gluckman, Authorized Designee of the Publisher

Sworn to before me this _____ day of _____, 2016

_____
Notary Public

Arthur Klass
Notary Public State of NY
No. 01KL4922689
Qualified in Kings County
Comm. Expires 3/7/2018

Notice of Formation of ChannelReply, LLC. Arts of Org. filed with New York Secy of State (SSNY) on 6/9/16. Office location: Nassau County. SSNY is designated as agent of LLC upon whom process against it may be served. SSNY shall mail process to: 1010 Northern Blvd, Ste 208, Great Neck, NY 11021. Purpose: any lawful activity.
JP# 9361  6/17,24,7/1,8,15,22/16

# CERTIFICATE OF PUBLICATION

## OF

## ChannelReply, LLC

Under Section 206 of the Limited Liability Company Law

---

Filed by:

Seligson, Rothman & Rothman, Esqs.
29 West 30th Street, 10th floor
New York, New York 10001
Cust. Ref.#2337861

---

DRAWDOWN ACCOUNT #HD

## Exhibit 16



Mike Dash <mdash@ndap-llc.com>

---

## Call
---

**Michael Dash** <mdash@carpartkings.com>                                    Tue, Feb 16, 2016 at 3:48 PM
To: Dara Greaney <dara_greaney@yahoo.com>

Hey Dara - Just wanted to follow up with you regarding our previous conversation.

Any thoughts?

Thanks,

**Michael Dash**
President | **Car Part Kings**
Phone: +1.646.553.5918
mdash@carpartkings.com | www.carpartkings.com

⊡ ⊞ ⊠

On Mon, Feb 8, 2016 at 1:00 PM, Michael Dash <mdash@carpartkings.com> wrote:
No problem - cell is the best way to reach me (516) 521-7496

**Michael Dash**
President | **Car Part Kings**
Phone: +1.646.553.5918
mdash@carpartkings.com | www.carpartkings.com

⊡ ⊞ ⊠

On Mon, Feb 8, 2016 at 12:59 PM, Dara Greaney <dara_greaney@yahoo.com> wrote:
Michael,
I can give you a call about 10 after 10 PT, getting off another one.

Thanks,
Dara

On Feb 8, 2016, at 8:10 AM, Michael Dash <mdash@carpartkings.com> wrote:

Hi Dara - Would you be available for a call today 10am PST?

Thanks,

**Michael Dash**
President | **Car Part Kings**
Phone: +1.646.553.5918
mdash@carpartkings.com | www.carpartkings.com

⊡ ⊞ ⊠

6/1/2017                               ndap Mail - ChannelReply "stock" options



Mike Dash <mdash@ndap-llc.com>

## ChannelReply "stock" options

Michael Dash <mdash@ndap-llc.com>                        Wed, Jun 29, 2016 at 12:23 PM
To: "Jeffrey E. Rothman" <jrothman@srrlaw.com>

How about tomorrow?

Michael Dash
ndap
Tel: (646) 553-5918
mdash@ndap-llc.com | http://www.ndap-llc.com



On Tue, Jun 28, 2016 1:50 PM, Jeffrey E. Rothman jrothman@srrlaw.com wrote:

> So when would you like to discuss how to structure your profit sharing/equity sharing plans?
>
>
>
> Jeffrey E. Rothman
>
> Seligson, Rothman & Rothman
>
> 29 West 30th Street, 10th Floor
>
> New York, NY 10001
>
> jrothman@srrlaw.com
>
> Phone: (212) 966-5020
>
> Telecopier: (646) 514-9980
>
>
> NOTICE:
> This email, together with any attachment is confidential, intended for only the recipient(s) named above and may contain
> information that is privileged, attorney work product or exempt from disclosure under applicable law.  If you have received this
> email in error, or are not the named recipient(s), you are hereby notified that any use, dissemination, distribution or copying of
> this email, or any attachments, is strictly prohibited.  Please immediately notify the sender at jrothman@srrlaw.com  and delete
> this email and any attachments from your computer.  You should not retain, copy or use this email or any attachments for any
> purpose, or disclose all or any part of the contents to any person. Although this e-mail and any attachments are believed to be
> free of any virus or other defect that may affect any computer system into which it is received or opened, it is the responsibility
> of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any
> way from its use. Thank you.

**From:** Michael Dash [mailto:mdash@ndap-llc.com]
**Sent:** Monday, June 27, 2016 11:49 AM
**To:** Jeffrey E. Rothman
**Subject:** ChannelReply "stock" options

Hey Jeff - We still need operating agreement for new ChannelReply entity but want to start discussing the stock options or equity for the employees.  Need a simple doc I can send over to them as they have been requesting for a while.  Let's get a draft of this going.

Thanks,


**Michael Dash**
**ndap**

Tel: (646) 553-5918

mdash@ndap-llc.com | http://www.ndap-llc.com

**<u>Exhibit 17</u>**

Timedoctor is back online.



08/24, 5:08 PM

 Donde Esta NDAP letterhead for K's visa issue?

NDAP or CSV?

 Who does K work for

CSV

 So CSV

 **CSV Letterhead.docx**
43 KB

# **Exhibit 18**

 DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH   45999-0023

Date of this notice:  09-06-2016

Employer Identification Number:
~~~~~~~~8046

Form:  SS-4

Number of this notice:  CP 575 B

CHANNELREPLY
MICHAEL DARDASHTIAN MBR
1010 NORTHERN BLVD STE 208
GREAT NECK, NY  11021

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN 81-3748046. This EIN will identify you, your business accounts, tax returns, and documents, even if you have no employees. Please keep this notice in your permanent records.

When filing tax documents, payments, and related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above. Any variation may cause a delay in processing, result in incorrect information in your account, or even cause you to be assigned more than one EIN. If the information is not correct as shown above, please make the correction using the attached tear off stub and return it to us.

Based on the information received from you or your representative, you must file the following form(s) by the date(s) shown.

                  Form 1065                        03/15/2017

If you have questions about the form(s) or the due date(s) shown, you can call us at the phone number or write to us at the address shown at the top of this notice. If you need help in determining your annual accounting period (tax year), see Publication 538, *Accounting Periods and Methods*.

We assigned you a tax classification based on information obtained from you or your representative. It is not a legal determination of your tax classification, and is not binding on the IRS. If you want a legal determination of your tax classification, you may request a private letter ruling from the IRS under the guidelines in Revenue Procedure 2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue). Note: Certain tax classification elections can be requested by filing Form 8832, *Entity Classification Election*. See Form 8832 and its instructions for additional information.

A limited liability company (LLC) may file Form 8832, *Entity Classification Election*, and elect to be classified as an association taxable as a corporation. If the LLC is eligible to be treated as a corporation that meets certain tests and it will be electing S corporation status, it must timely file Form 2553, *Election by a Small Business Corporation*. The LLC will be treated as a corporation as of the effective date of the S corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice, visit our Web site at www.irs.gov. If you do not have access to the Internet, call 1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY)     575B          09-06-2016  CHAN  B  9999999999  SS-4

IMPORTANT REMINDERS:

   * Keep a copy of this notice in your permanent records.  This notice is issued only
    one time and the IRS will not be able to generate a duplicate copy for you.  You
    may give a copy of this document to anyone asking for proof of your EIN.

   * Use this EIN and your name exactly as they appear at the top of this notice on all
    your federal tax forms.

   * Refer to this EIN on your tax-related correspondence and documents.

   If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

   Your name control associated with this EIN is CHAN.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

   Thank you for your cooperation.


                       Keep this part for your records.          CP 575 B (Rev. 7-2007)
--------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                              CP 575 B
correct any errors in your name or address.
                                                                    9999999999

Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  09-06-2016
(    )       -                             EMPLOYER IDENTIFICATION NUMBER:  ▓▓▓▓▓046
_____  _____   FORM:  SS-4              NOBOD

INTERNAL REVENUE SERVICE                   CHANNELREPLY
CINCINNATI  OH   45999-0023                MICHAEL DARDASHTIAN MBR
|l.l.l.l.l.l.l.l.l.l.l.l.l.l.l.l.l.l.l.l|  1010 NORTHERN BLVD STE 208
                                           GREAT NECK, NY  11021

**Exhibit 19**



Mike Dash <mdash@ndap-llc.com>

## ChannelReply Op Agreement

**Michael Dash** <mdash@ndap-llc.com>
To: David Gitman <dgitman@ndap-llc.com>

Wed, Oct 5, 2016 at 12:00 PM

I took the agreement from CSV and just changed out wording for CR.

Let me know what you think.



ChannelReply - Agr. v1 10.5.16.doc 167KB                    Download 

**Michael Dash**
**ndap**
Tel: (646) 553-5918
mdash@ndap-llc.com | http://www.ndap-llc.com



# EXHIBIT B

EIN: 81-3748046

OPERATING AGREEMENT
*of*
<u>CHANNEL REPLY, LLC</u>

THIS AGREEMENT is made and entered into on October __, 2016, by the following persons ("Members"):

MICHAEL DARDASHTIAN
DAVID GITMAN

The following person or persons shall serve as the initial "Manager(s)" of the Company in accordance with Article 8:

MICHAEL DARDASHTIAN
DAVID GITMAN

<u>Article 1</u>
<u>Select Definitions</u>

"Act" means the Limited Liability Company Act from time to time in force in the State.

"Agreement" means this Operating Agreement, as originally executed and as amended, modified, supplemented or restated from time to time.

"Base Rate of Interest" means a rate equal to 375 basis points over the prime rate of interest as published from time to time in *The Wall Street Journal* or similar publication if *The Wall Street Journal* is not available.

"Charter" means the articles of organization, certificate of formation or similar instrument, as amended from time to time, issued by the State evidencing the formation of the Company. The Charter was issued on _____, 2016, and bears State File No. _____.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Company" means the limited liability company formed upon the filing of the Charter and whose affairs are governed by this Agreement.

"Management" has the meaning set forth in Article 8.

"Manager" means the person or persons identified as such in this Agreement, including persons subsequently appointed as such in accordance with Article 8.

"Member" means the person or persons identified as such in this Agreement, including persons subsequently admitted to the Company as Members in accordance with Article 10.

"Profit Percentages" has the meaning set forth in Section 6.1.

"State" means the State of New York, which has issued the Company's Charter.

<div align="center">

Article 2
Organizational Matters
</div>

2.1    Formation and Statutory Authority.

(a)    *Formation.*  The Company was formed upon the issuance of the Charter by the State. The Company hereby ratifies and adopts the acts and conduct of the Company's organizer in connection with the filing of the Charter as acts and conduct by and on behalf of the Company.  The organizational and other activities for which the organizer was responsible have been completed and the organizer is hereby relieved of any further duties and responsibilities in that regard.

(b)    *Statutory Authority.*  The Company shall be operated as a limited liability company in accordance with this Agreement and the Act.  The rights and obligations of the Members and Management *inter se* and in relation to the Company shall be determined in accordance with this Agreement and the Act.  To the extent that anything contained in this Agreement conflicts with the Act, or modifies, supplements or otherwise affects any rights or obligations under the Act, this Agreement shall supersede the Act, except to the extent expressly restricted by the Act.

2.2    Filings.  Management shall make such filings and do or cause to be done such other acts and things as shall be required to continue the existence of the Company in the State and shall cause the Company to be qualified or registered under assumed or fictitious names statutes or similar laws in any jurisdiction in which the Company owns property or transacts business to the extent such qualification or registration is necessary or, in the judgment of Management, advisable in order to protect the limited liability of the Members or to permit the Company to lawfully own property or transact business. Management shall execute, file and publish all such certificates, notices, statements or other instruments necessary to permit the Company lawfully to own property and conduct business as a limited liability company in all jurisdictions where the Company elects to own property or transact business and to maintain the limited liability of the Members.

2.3    Name.  The name of the Company is the name set forth in the heading of this Agreement. The affairs of the Company shall be conducted under the Company name or such other name as Management may select in accordance with the Act.  If the Company uses a fictitious or assumed name, Management shall execute and file all certificates required by any jurisdiction in which the activities of the Company make it necessary or desirable to do so.  The Company shall have the exclusive ownership of and right to use the Company name and any other names under which the Company conducts its affairs.

2.4    Principal Office of the Company.  The principal office of the Company shall be located at such place within or outside the State as Management may from time to time designate.  The Company may have secondary offices at such other place or places as Management may from time to time designate.

2.5    Records to be Maintained.  Management shall at all times during the continuance of the Company keep at the Company's principal office such records and information as the Company may be required to maintain in accordance with the Act.

<div align="center">2</div>

2.6     <u>Registered Office and Registered Agent</u>.  Management shall designate a registered office and a registered agent in accordance with the Act.  Management may from time to time in accordance with the Act change the Company's registered office and/or registered agent.  Management shall select and designate a registered office and registered agent for the Company in each other state in which the Company is required to maintain or appoint one.

<div align="center">

Article 3
Purpose of the Company

</div>

The purpose of the Company is to engage in any and all lawful businesses, make any and all lawful investments and undertake such other activities related or incidental thereto as Management may determine is in the interests of the Company, including owning membership interests in other business entities engaging in the business of internet sales.

<div align="center">

Article 4
Duration of the Company

</div>

4.1     <u>Duration of the Company</u>.  The Company shall continue in perpetuity unless sooner dissolved in accordance with the other provisions of this Article.

4.2     <u>Winding-Up</u>.  The Company shall commence a winding-up of its affairs upon the earliest of:

(a)     *Disposition of All or Substantially All of its Non-Cash Assets*.  The sale or other disposition of all or substantially all of the Company's non-cash assets; but if the foregoing sale or other disposition involves (i) the receipt of a deferred payment obligation, whether or not secured, or (ii) the receipt of payment in whole or in part in kind, then at Management's election the term of the Company shall not end, and it shall continue, subject to the other provisions of this Agreement, until the earlier of the time that (A) the deferred payment obligation shall have been paid in full, (B) the in kind considerations received by the Company shall have been sold or otherwise converted to cash or (C) Management elects to distribute the deferred payment obligation or in kind considerations.

(b)     *Decision of Management*.  Management's decision to do so.  Management shall provide the Members with notice of its decision to commence the winding-up of the Company.

(c)     *Decision of the Members*.  The decision of the Members to do so.  A decision of the Members under this paragraph shall require the approval of Members holding at least fifty-one (51%) percent of the Profit Percentages (as hereinafter defined) and the approval of Management.

(d)     *Judicial Dissolution*.  Upon the entry of a judicial decree of dissolution of the Company in accordance with the Act.

The winding-up of the Company shall be conducted in accordance with this Agreement generally and Article 16 in particular.

4.3     <u>Continuation of Company Upon Certain Events</u>.  The death, disability, court declaration of incompetence, bankruptcy, dissolution, liquidation or other dissociation of a Member shall not dissolve the Company, but it shall be continued with the successor or legal representative of such Member; such successor or legal representative shall, to the extent of the interest acquired, be entitled only to the predecessor Member's rights, if any, in the distributions of the Company, and no such person shall have any right to participate in the management of the affairs of the Company or vote on any Company matter

<div align="center">3</div>

without the written consent of Management.  See Article 10 for additional provisions applicable to any such successor or legal representative.

<div align="center">

Article 5
Capital Contributions to the Company
</div>

5.1     _Capital Contributions._  Each Member shall contemporaneously with the execution of this Agreement contribute to the capital of the Company the amount of money or property set forth opposite that Member's signature hereto.

5.2     _Additional Capital Contributions._  Except as set forth in this Agreement or as required by the Act, no Member shall be assessed for additional capital contributions.

(a)     _By Agreement of Members._  The Members may, by unanimous agreement, at any time or from time to time, make additional capital contributions to the Company.

(b)     _By Action of Management._  If Management determines that it is necessary or desirable for the Company to obtain additional funds in the form of additional capital contributions, then:

(i)     Management shall send to each Member a notice (the "First Requirement Notice"), which shall advise Members as to the total amount of capital required by the Company (the "Requirement Amount"), the portion of the Requirement Amount which may be contributed by each Member (determined _pro rata_ according to the Members' Profit Percentages) and the date on which such capital is required to be contributed to the Company (the "Requirement Date").  The Requirement Date shall be not less than 10 days after the date of the First Requirement Notice.

(ii)    Should any Member not exercise its option and contribute its capital within the period provided in clause (i), above, Management shall promptly send to each Member who made contributions pursuant to clause (i), above a notice (the "Second Requirement Notice") of the uncontributed portion of the Requirement Amount, each of whom may elect to make a further capital additional contribution to the Company by delivering to Management, within five days of the date of the Second Requirement Notice, written notice of the same, which notice shall include a statement of the maximum amount of the uncontributed Requirement Amount such Member would be willing to contribute.  The portion of the uncontributed Requirement Amount that may be contributed by each Member shall be determined by Management ratably according to the relative maximum amounts that the Members propose to contribute in their notices to Management, and shall be paid by the Member to the Company immediately upon demand therefore.  No Member, however, shall be required to pay more than the maximum amount it proposed to contribute to the Company.

(iii)   Additional capital contributions under this Section are voluntary; but once a Member shall have agreed to make an additional capital contribution hereunder, the Company shall have all of the rights and remedies set forth in this Agreement resulting from the failure of the Member to make such capital contribution.

(iv)    In the event that the entire Requirement Amount is not contributed by all Members in proportion to their Profit Percentages in effect immediately prior to

<div align="center">4</div>

the First Requirement Notice, the Profit Percentages of the Members shall be adjusted with prospective effect to take account of the additional capital contributions made by the contributing Members in relation to the sum of (A) those additional capital contributions and (B) the aggregate amount of the capital contributions of the Members immediately prior to the additional capital contributions.

5.3     Defaulting Members.  The Company shall be entitled to enforce the obligations of each Member to make the contributions specified in this Article, and the Company acting at the direction of Management shall have all remedies available at law or in equity in the event any such contribution is not so made.  The Company shall be entitled to recover the reasonable attorney's fees and other costs of enforcing the Members' obligations under this Article, and shall also be entitled to recover interest on any unpaid contributions, from the due date of such capital contribution, at the Base Rate of Interest from time to time in effect.

<div align="center">

Article 6
Distributions by the Company

</div>

6.1     Definitions.  The following terms shall have the following meanings:

"Available Cash" shall consist of all cash on hand of the Company irrespective of its source, excluding, however, (i) "Capital Event Proceeds" (as defined below) and (ii) such reserves as Management may establish.

"Capital Event Proceeds" shall consist of the net amount of cash received by the Company from the sale, exchange, refinancing, condemnation, casualty loss or other disposition by the Company of its assets outside of the ordinary course of business, less (i) the portion thereof disbursed by Management for the payment of the Company's debts and expenses and (ii) such other reserves as Management may establish.  Capital Event Proceeds shall include amounts distributed to the Company as an owner of another entity to the extent that the amount distributed, in the hands of the distributing entity, is in the nature of Capital Event Proceeds.  Amounts released from a reserve of Capital Event Proceeds shall be treated as Capital Event Proceeds.

"Unreturned Capital" consists of so much of a Member's actual capital contributions to the Company that have not been returned to such Member by way of distributions made under this Article that are identified (in the distribution provisions of this Article) as distributions of Unreturned Capital.

"Profit Percentages" of the Members shall be as set forth opposite each Member's signature to this Agreement (or in such Member's subscription agreement, joinder to this Agreement or other instrument admitting the Member to the Company), as the same may be adjusted from time to time in accordance with this Agreement.

6.2     Distributions of Available Cash.  Available Cash shall be distributed to the Members according to their Profit Percentages at such times as Management shall determine.

6.3     Distributions of Capital Event Proceeds.  Capital Event Proceeds shall be distributed to the Members at such times as Management shall determine in the following rank and order:

(a)     Among the Members in proportion to, and to the extent of, their Unreturned Capital.

(b)     The remainder, if any, among the Members according to their Profit Percentages.

<div align="center">

5

</div>

6.4     <u>Withholding of Taxes</u>.  If the Company is required to withhold and remit any Federal, state, foreign or local taxes levied on all or part of a Member's allocable share of the Company's income, the Company shall have the right to do so and such withholding by the Company shall be treated as a distribution to the Member for whom such withholding is made and shall reduce the amount of future distributions to be paid to such Member.  In Management's discretion, the Member for whom such withholding would be made shall make a capital contribution of immediately available funds in the amount of any balance needed by the Company to satisfy such withholding liability within three days after being so notified by the Company.  Should a Member fail to timely make any such capital contribution, such Member shall be in default and shall indemnify and hold the Company and the other Members harmless for any costs, penalties, payments or damages incurred by the Company or the other Members as a result of such failure, and such Member shall pay the Company interest in respect of any disbursements made by the Company as a result of such Member failing to timely make the capital contributions required by this Section at the Base Rate of Interest from time to time in effect.  The Company shall have the authority to apply and setoff any distributions to which such defaulting Member would otherwise be entitled towards the satisfaction of the liabilities to the Company incurred by such Member under this Section.  This Section shall also have application to taxes that are not in the nature of withholding taxes but are assessable against the Company with reference to (or where there is exemption from based upon) the status or nature of a Member.

6.5     <u>Priorities</u>.  Except as may be expressly provided in this Agreement, no Member shall have a priority right over any other Member as to distributions.

6.6     <u>Interest on Capital Contributions</u>.  Except as may be expressly provided in this Agreement, no interest shall be allowed to any Member upon the amount of its Unreturned Capital.  Any amounts distributed as a preferred return shall not be considered interest.

6.7     <u>Set-Off Rights</u>.  The Company shall be entitled to set-off against any distributions or other amounts that may be or become due to a Member from the Company any amounts that may be due from such Member to the Company or another Member.

6.8     <u>Restrictions on Distributions</u>.  No distributions may be made to the Members if, after giving effect to such distributions, either the Company would be unable to pay its debts as they become due in the usual course of business or the net assets of the Company would be less than zero.

<div align="center">

Article 7
Accounting and Tax Matters

</div>

7.1     <u>Books of Account</u>.  Management shall cause proper and true books of account to be maintained for the Company in conformity with sound accounting principles consistently applied.  There shall be recorded in the Company's books of account the particulars of all monies, goods or effects belonging to or owing to or by the Company, or paid, received, sold or purchased in the course of the Company's activities and all of such other transactions, matters and things relating to the Company as are usually entered in books of account kept by companies engaged in activities of a like kind and character.

7.2     <u>Method of Accounting and Fiscal Year</u>.  The Company's books of account shall be maintained on the cash or accrual basis, as determined by Management.  The Company's fiscal year shall be the calendar year unless determined otherwise by Management.

7.3     <u>Reports and Returns</u>.  As soon as practicable after the close of each fiscal year Management shall provide each Member with such  statements as shall be necessary to advise the Members properly about their investment in the Company for income tax reporting purposes.

Management shall be responsible for engaging an accountant to prepare and to see to the filing of all Federal, state and local tax returns on behalf of the Company. Members acknowledge that the Company may not be able to provide all information required for income tax reporting purposes on a timely basis and that they should expect to extend the time for filing their income tax returns.

7.4     Capital Accounts.  As part of the Company's books of account, an individual "Capital Account" shall be maintained for each Member at all times in accordance with sound accounting principles consistently applied.

7.5     Financial (Book) Allocations.  The net profit or net loss of the Company, determined on an annual basis in accordance with sound accounting principles, shall be allocated as follows:

(a)     *In the case of a net profit*:

   (i)     If any net losses were allocated in any prior fiscal year pursuant to clause (b), below:

      (A)     Among the Members to the extent of and in proportion to the prior period allocations made to them or their predecessors in accordance with clause (b)(iii), below, not previously eliminated by allocation under this clause. Allocations hereunder shall be made in the reverse order in which such net losses were originally allocated (*i.e.*, most recent net loss allocations are reversed first).

      (B)     Among the Members to the extent of and in proportion to the prior period allocations made to them or their predecessors in accordance with clause (b)(ii), below, not previously eliminated by allocation under this clause. Allocations hereunder shall be made in the reverse order in which such net losses were originally allocated (*i.e.*, most recent net loss allocations are reversed first).

      (C)     Then in accordance with clause (ii), below.

   (ii)     If net losses were not previously allocated among the Members pursuant to clause (b), below, or if clause (i)(C), above, applies, then among all of the Members according to their Profit Percentages.

(b)     *In the case of a net loss*:

   (i)     If any net profits were allocated in any prior fiscal year in accordance with clause (a)(ii), above, then among the Members to the extent of and in proportion to the prior period allocations made to them or their predecessors in accordance with clause (a)(ii), above, not previously eliminated by allocation under this clause. Allocations hereunder shall be made in the reverse order in which such net profits were originally allocated (*i.e.*, most recent net profit allocations are reversed first).

   (ii)     Then among the Members, to the extent of and in proportion to their Unreturned Capital.

     (iii)   Then among the Members according to their Profit Percentages; but no allocation of loss or deduction shall be made to a Member to the extent such allocation causes or increases a deficit in such Member's Capital Account balance at the end of the fiscal year to which such allocation relates; such loss or deduction shall instead be allocated among the other Members in accordance with their relative Profit Percentages, subject to the limitations of this clause; except that once all of the Members' Capital Account balances have been reduced to zero, such loss or deduction shall be allocated among the Members in a manner that Management determined fairly comports with the Members' economic interests in the Company and risk of loss.

    7.6   <u>Tax Allocations</u>.  Except as provided herein, or as otherwise required by the Code or Treasury Regulations promulgated thereunder (including, without limitation, Treasury Regulations Section 1.704-1 and 1.704-2), Company income, gain, loss, deduction, credit and other partnership items, as computed for Federal income tax purposes, shall be allocated among the Members in the same manner as the corresponding book items are allocated pursuant to Section 7.5.

    7.7   <u>Changes in Profit Percentages</u>.  In the event of any changes in any Member's Profit Percentage during a fiscal year, Management shall take into account the requirements of Code Section 706(d) and shall have the right to select any method of determining the varying interests of the Members during the fiscal year which satisfies Code Section 706(d).

    7.8   <u>Tax Elections</u>.  Management shall have the right to make (and revoke) any and all tax elections for the Company, including, without limitation, an election to adjust the tax basis of Company assets under Code Section 754.

    7.9   <u>Administration of Tax Proceedings</u>.  Management shall appoint, remove and replace the Company's "Tax Matters Partner" as defined in Code Section 6231(a)(7) (referred to herein as the "Tax Matters Member").  The Tax Matters Member shall have the right to resign by giving 30 days written notice to the Members.  Upon the resignation of the Tax Matters Member, a successor Tax Matters Member shall be selected by Management.

    7.10   <u>Federal Taxpayer Identification Number</u>.  Management hereby authorizes Michael Dardashtian to apply for a Federal taxpayer identification number for the Company and to execute in connection therewith Internal Revenue Service Form SS-4 as an authorized signatory for and on behalf of the Company or any of its Members or members of Management.

<div align="center">

Article 8
Management of the Company

</div>

    8.1   <u>Management by Managers</u>.  The affairs of the Company shall be managed and controlled by Management in accordance with this Agreement generally and this Article in particular.  Management shall be comprised of one or more "Managers."

    (a)   *Number*.  There shall be two (2) Manager(s) of the Company.

    (b)   *Appointment of Manager(s)*.  The Members appoint the person or persons identified on the first page of this Agreement as the initial Manager(s) of the Company.

    (c)   *Decision-Making*.  Whenever Management shall be required to take any action, make any decision or exercise any discretion and there shall be more than one Manager, then except as otherwise

provided in this Agreement, the action, decision or exercise of discretion shall require the approval of <u>all</u> of the persons appointed as Manager.

(d)     *Removal and Replacement of Managers.*   Members holding at least fifty-one (51%) percent of the Profit Percentages shall have the authority at any time and from time to time to (i) remove a Manager from office and (ii) appoint a new Manager whenever there is a vacancy in the office of Manager.   A successor Manager shall be entitled to all of the rights and privileges of the Manager, as Manager, to whose position it succeeded, and shall be subject to all of the obligations of the predecessor Manager, as Manager, whether or not such successor Manager is a signatory to this Agreement.

Michael Dardashtian (and his successors collectively) shall have the authority at any time and from time to time to remove and replace Michael Dardashtian (and any of his successors) as Manager. David Gitman (and his successors collectively) shall have the authority at any time and from time to time to remove and replace David Gitman (and any of his successors) as Manager.   A successor Manager shall be entitled to all of the rights and privileges of the Manager, as Manager, to whose position it succeeded, and shall be subject to all of the obligations of the predecessor Manager, as Manager, whether or not such successor Manager is a signatory to this Agreement.

8.2     <u>Authority of Management</u>.

(a)     *Exclusive Right to Manage.*   Except as otherwise provided herein, Management shall have the sole and exclusive right and authority to operate, manage, conduct and control the affairs of the Company.   Management shall make all decisions affecting the affairs of the Company and shall carry out the purposes of the Company as Management deems proper, convenient or advisable.

(b)     *Power and Authority.*   Without limiting the generality of the foregoing, and consistent with the purposes of the Company, Management shall have all of the rights, powers and authority under the Act and otherwise as provided by law, including the right, power and authority to: acquire assets; purchase goods and services; sell, exchange, lease, license or otherwise deal in or with any and all assets of the Company; open and maintain one or more bank accounts and designate (and change the designation of) signatories thereon; borrow funds to finance the Company's activities and in connection with such borrowing, mortgage, hypothecate, pledge, lien or otherwise encumber the revenues and assets of the Company; guaranty the debts of affiliates and others when Management believes it will benefit the Company to do so; enter into any contract or agreement or amend or cancel the same; and invest and reinvest any funds or other assets of the Company – all as incident to or necessary for the operations of the Company.   Without limitation of the foregoing, and for the avoidance of any doubt, it is explicitly declared that Management has the right, power and authority to sell, exchange or otherwise dispose of all or substantially all of the Company's assets, including in a transaction that is not in the ordinary course of business.

(c)     *No Duty to Inquire.*   Nothing herein contained shall impose any obligation on any person or firm doing business with the Company to inquire as to whether or not Management has exceeded its power and authority in executing any agreement, contract, lease, mortgage, security agreement, deed or other instrument on behalf of the Company, and any such third person shall be fully protected in relying upon such authority.   Management may designate one or more persons to act as authorized signatories of the Company and the signatures of such authorized signatories on any agreement, contract, lease, mortgage, security agreement, deed or other instrument shall be binding on the Company.

(d)     *General Proscriptions.*   Without the written consent or ratification of all of the Members, Management shall have no authority to expend or use Company money or property other than on the

account and for the benefit of the Company or to pledge any of the Company's credit or property for other than Company purposes.

8.3     Management's Time Commitment.  Management shall cause so much time to be devoted to the business of the Company as, in its judgment, the conduct of the Company's business shall reasonably require.

8.4     Compensation of Management.  Management shall not be entitled to any fees or other remunerations for its services in managing the Company.  Insofar as a member of Management is a Member, this Section shall not be construed to limit such Member's share of distributions under this Agreement.

8.5     Expenditures by Management.  The Company shall reimburse Management for any costs that may be properly expended on behalf of the Company made out of funds other than those of the Company.

8.6     Related Business Partners.  Management may employ, contract for services with, acquire or sell goods, property and materials from or to and otherwise deal with any Member, any member of Management or any affiliate of the foregoing on any basis which is customary and competitive, or otherwise fair and reasonable.

8.7     Liability of Management.  Management (which for purposes of this Section and Section 8.8 shall include its partners, officers, directors, shareholders, members, managers, employees, agents and affiliates) shall not be liable to a Member or the Company for honest mistakes of judgment, or for action or inaction, taken reasonably and in good faith for a purpose that was reasonably believed to be in the best interests of the Company, or for losses due to such mistakes, action or inaction, or for the negligence, dishonesty or bad faith of any employee, broker or other agent of the Company, provided that such employee, broker or agent was selected, engaged or retained and supervised with reasonable care. Management may consult with counsel and accountants in respect of Company affairs and be fully protected and justified in any action or inaction that is taken in accordance with the advice or opinion of such counsel or accountants, but if, and only if, they shall have been selected with reasonable care.  The Members shall look solely to the assets of the Company for the return of their capital and, if the assets of the Company remaining after payment or discharge of the debts and liabilities of the Company are insufficient to return such capital, they shall have no recourse against Management for such purpose. Notwithstanding any of the foregoing to the contrary, the provisions of this Section shall not be construed to relieve (or attempt to relieve) any person of any liability by reason of gross negligence, recklessness or intentional wrongdoing or to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Section to the fullest extent permitted by law.

8.8     Indemnification.  The Company shall indemnify any person who was or is a party, or is threatened to be made a party, to any threatened, pending or completed action, suit or proceeding (other than an action by or in the right of the Company), whether civil, criminal, administrative or investigative, by reason of the fact that the person is or was a manager, member, officer, employee or agent of the Company, or is or was serving at the request of the Company as a director, manager, officer, employee or agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorney's fees and costs), judgments, fines and amounts paid in settlement actually and reasonably incurred by the person in connection with the action, suit or proceeding, if the person acted in good faith and in a manner the person reasonably believed to be in, or not opposed to, the best interests of the Company or, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful.  The termination of any action,

suit or proceeding by judgment, order, settlement, conviction or upon a plea of *nolo contendere* or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner that the person reasonably believed to be in, or not opposed to, the best interests of the Company or, with respect to any criminal action or proceeding, that the person had reasonable cause to believe that the person's conduct was unlawful.

8.9   Officers of the Company.   Management may from time to time appoint one or more persons to serve as officers of the Company, in such capacities and with such delegated rights and powers as Management may approve; provided, however, that no such officer shall have any different or greater rights and powers than Management has under this Agreement. Officers appointed by Management shall be entitled to be indemnified by the Company in accordance with Section 8.8.

<div align="center">

Article 9
Membership in the Company

</div>

9.1   Rights and Obligations of the Members.   Unless a Member is a member of Management, and except as expressly provided in this Agreement to the contrary, no Member shall take part in the control or management of the Company, nor shall any Member have any authority to act for or on behalf of the Company or to sign for or bind the Company. Unless admitted to the Company as a Member in accordance with Article 10, no person who is not a signatory to this Agreement shall be considered a Member. The Company and Management need deal only with persons as Members that are so admitted and shall not be required to deal with any other person (other than with respect to distributions to assignees pursuant to assignments in compliance with Article 10) merely because of an assignment or transfer of an interest to such person or by reason of the incapacity of a Member. Any distribution made in accordance with this Agreement by the Company to the person shown on the Company records as a Member or to its legal representatives, or to the assignee of the right to receive Company distributions as provided herein, shall acquit the Company and Management with respect to such distribution of all liability to any other person that may have an interest in or claim to such distribution by reason of any other assignment by the Member with respect to such distribution or by reason of such Member's incapacity, or for any other reason.

9.2   Liability.   No Member shall be personally liable for any of the debts of the Company or any of the losses thereof beyond the amount contributed or required to be contributed by it to the Company under this Agreement and as otherwise specified in the Act.

9.3   Expenditures of Members.   In the discretion of Management, the Company may reimburse the Members for any costs that may be properly expended by them on behalf of the Company made out of funds other than those of the Company.

9.4   Partition and Accounting.   No Member shall have the right to partition any property of the Company during the term of this Agreement, or while such assets are held in trust pursuant to Section 16.4, nor shall any Member make application to any court of authority having jurisdiction in the matter or commence or prosecute any action or proceeding for such partition and the sale thereof, and upon any breach of the provisions of this Section by any Member, the other Members, in addition to all of the rights and remedies in law and in equity that they may have, shall be entitled to a decree or order restraining and enjoining such application, action or proceeding. To the maximum extent permitted by law, the Members specifically renounce, waive and forfeit all rights, whether arising under contract or statute or by operation of law, to seek, bring or maintain any action in any court of law or equity for an accounting.

9.5   Resignations and Withdrawals.   No Member shall be entitled to withdraw or resign from the Company, except pursuant to the terms of this Agreement. No Member shall be entitled to receive

<div align="center">11</div>

any money or property from the Company except (a) by way of distributions as provided pursuant to Article 6, (b) by way of distributions upon the winding-up of the Company pursuant to Article 16, (c) in respect of any loans to the Company then due and owing to such Member and (d) as expressly provided elsewhere in this Agreement.

9.6     Trustee Liability.

(a)     *Actions as Trustees.*  When this Agreement is executed by the trustee of any trust, such execution is by the trustee, not individually, but solely as trustee in the exercise and under the power of authority conferred upon and vested in such trustee, and it is expressly understood and agreed that nothing herein contained shall be construed as creating any liability on the part of any such trustee personally to pay any amounts required to be paid hereunder, or to perform any covenant, either express or implied, contained herein, all such liability, if any, being expressly waived by the parties hereto by their execution hereof. Any liability of any Member which is a trust to the Company or to any third person shall be only that of such trust to the full extent of its trust estate and shall not be a personal liability of any trustee, grantor or beneficiary thereof.

(b)     *Successor Trustee.*  Any successor trustee or trustees of any trust which is a Member herein shall be entitled to exercise the same rights and privileges and be subject to the same duties and obligations as its predecessor trustee.  As used in this Agreement, the term "trustee" shall include any or all such successor trustees.

(c)     *Termination of Trust.*  The termination of any trust which is a Member shall not terminate the Company.  Upon the allocation or distribution of all or any portion of the Company interest of a trust which is a Member pursuant to the exercise of any power of appointment, or otherwise, to a beneficiary of such trust or to another person or persons or to another trust or trusts, whether or not such distribution shall terminate such distributing trust, each such distributee shall be entitled to be admitted to the Company as a Member to the extent of the proportionate share of the Company interest distributed to it, subject to the terms of this Agreement, including, without limitation, the restrictions contained in Article 10.

## Article 10
### Transfers by Members and Issuance of Additional Interests

10.1     Transfers by Members.

(a)     *Generally.*  Except as set forth herein, no Member shall sell, exchange, pledge, mortgage, hypothecate or otherwise transfer or encumber its interest in the Company without the prior written consent of Management.  Any such transfer or encumbrance shall be void from inception and of no force or effect whatsoever.  Direct or indirect transfers of interests in entities that are Members shall also be subject to the limitations of this Section.

(b)     *Permitted Transferees.*  Management shall not unreasonably withhold or delay its consent to a transfer of all or any part of a Member's interest to a Permitted Transferee.  In the case of a Member who is an individual, a Permitted Transferee is (i) such Member's spouse; (ii) a lineal descendant or ancestor of such Member or a spouse of any of the foregoing; (iii) a trust established for the benefit of the Member or any person described in clauses (i) or (ii), above; (iv) any entity wholly-owned and controlled by the Member and/or any one or more of the persons described in clauses (i), (ii) or (iii), above; or (v) any other Member. In the case of a Member who is an entity, a Permitted Transferee is any person who is directly or indirectly controlled by the Member or directly or indirectly controls the Member; as used

12

herein, "control" means possessing more than 50 percent of the capital, profits and voting rights of an entity.

10.2    <u>Transfers by Management</u>.    Management is an agent of the Company and its interest in managing the affairs of the Company is not susceptible of being and may not be sold, assigned, pledged, mortgaged or otherwise disposed of or transferred.  Insofar as a member of Management is a Member or is otherwise entitled to distributions under Article 6, Section 10.1 shall govern the transfer of such member of Management's right to distributions and other economic interests in the Company.

10.3    <u>Issuance of Additional Interests</u>.

(a)    *Additional Members and Membership Interests*.    Management may admit into the Company one or more additional Members or issue additional membership interests to existing Members on such terms as Management may determine is fair and reasonable.

(b)    *Adjustment of Profit Percentages*.  Upon the admission into the Company of one or more additional Members or the issuance of additional interests to existing Members, Management is authorized to adjust the Profit Percentages of the existing Members to take account of the additional capital contributions made by the additional Members in relation to the sum of (A) those additional capital contributions and (B) the aggregate capital contributions of the Members immediately prior to the capital contributions of the additional Members.   The dilution of Profit Percentages of the existing Members shall be in proportion to the existing Members' Profit Percentages.  If an additional or existing Member is to receive a Profit Percentage (or an additional Profit Percentage) and is not required to make a capital contribution in respect of same, Management is authorized to dilute the Profit Percentages of the existing Members in proportion to the existing Members' Profit Percentages.

Nothing herein contained shall be construed to require or cause the dilution of any so-called carried interest or promote interest that may inure to a Member or a member of Management.

(c)    *Rights and Obligations of Additional Members*.  Additional Members shall be entitled to all of the rights and privileges of the original Members hereunder and shall be subject to all of the obligations and restrictions hereunder, and in all other respects their admission shall be subject to all of the terms and provisions of this Agreement.

10.4    <u>General Provisions</u>.  The following rules shall apply to transfers of Company interests and the admission of additional persons to the Company:

(a)    *Procedure for Admission*.  No person shall be admitted as a transferee or additional Member hereunder unless and until  (i) in the case of an assignment of an interest in the Company permitted hereby, the assignment is made in writing, signed by the assignor and accepted in writing by the assignee, and a duplicate original of the assignment is delivered to and accepted by Management, and (ii) the prospective admittee executes and delivers to the Company a written agreement, in form and substance satisfactory to Management, pursuant to which said person agrees to be bound by this Agreement.

(b)    *Binding Effect*.  Any person acquiring or claiming an interest in the Company, in any manner whatsoever, shall be subject to and bound by all terms, conditions and obligations of this Agreement to which its predecessor in interest, if any, was subject or bound, without regard to whether such person has executed a counterpart hereof or any other document contemplated hereby.  No person, including the legal representatives, heirs or legatees of a deceased Member, shall have any rights or

obligations greater than those set forth herein and no person shall acquire an interest in the Company or become a Member except as permitted hereby.

(c)    *Actions Prior to Acceptance of Assignment.*  Notwithstanding that a person acquiring or claiming an interest in the Company is bound by all terms, conditions and obligations of this Agreement to which its predecessor in interest, if any, was subject or bound, the Company and Management shall be entitled to treat the assignor of the assigned interest as the absolute owner thereof in all respects and shall incur no liability for distributions made in good faith to such assignor prior to such time as the documents specified in this Section have been delivered to and accepted by Management.  Any person to whom an interest in the Company is attempted to be transferred in violation of this Article shall not have the rights of a Member of the Company otherwise provided under the Act, including, but not limited to, the right (i) to receive distributions from the Company, (ii) to vote on any matter, (iii) to participate in the management of the Company, (iv) to act as an agent of the Company, (v) to obtain any information or accounting of the affairs of the Company or (vi) to inspect the books or records of the Company.  If, however, by law, the Company is required to recognize the purported transfer of a Member's interest in the Company, the purported transferee's rights shall be strictly an economic interest in the Company limited solely to distributions (and accompanying allocations) as provided by this Agreement with respect to such economic interest, and the Member whose interest in the Company has purportedly been transferred shall have no right to any distributions with respect to such interest in the Company.  Any distributions to such purported transferee may be applied (without limiting any other legal or equitable rights of the Company) to satisfy any debts, obligations or liabilities for damages that the transferor or transferee may have to the Company.  A Member attempting to engage in any purported transfer that has not been approved in writing by Management shall be liable to indemnify and hold harmless the Company and the other Members from all costs, liability and damages that either of them may incur (including, but not limited to, incremental tax liability and attorney's fees and expenses) as a result of such purported transfer.  For purposes of this paragraph, an economic interest in the Company shall mean a person's interest in the Company including, without limitation, such person's rights to distributions (and accompanying allocations), but excluding the right to vote and otherwise to participate in the management and control of the affairs of the Company.

(d)    *Consent of Members.*  Each Member hereby consents to the substitution of any assignee of a Member's interest or the admission of any additional person as a Member as approved by Management.

(e)    *Costs.*  The costs incurred by the Company in processing an assignment (including attorney's fees and costs) shall be borne by the assignee, and shall be payable prior to and as a condition of admission to the Company.

<div align="center">Article 11<br>Miscellaneous Provisions</div>

11.1    Loans from Members.  If Management determines that it would be in the interests of the Company to borrow funds from a Member or an affiliate of a Member, then prior to accepting any such funds:

(a)    *Notice to Members.*  Management shall send to each Member a notice (the "Loan Notice"), which shall advise each Member of the total amount of funds which the Company seeks to borrow (the "Loan Amount"), the terms of the proposed borrowing (including the rate of interest and the collateral security, if any) and the date on which such funds are required (the "Loan Date").  The Loan Date shall be not less than five days after the Loan Notice.  Said borrowing may be secured or unsecured,

as determined by Management in its sole discretion, but shall be evidenced by one or more promissory notes as are customary.

(b)   *Election to Participate*.  Within five days of the date of the Loan Notice, Members may elect to participate in the borrowing by delivering to Management written notice of the same, together with its portion of the Loan Amount.  The portion of the Loan Amount which each Member may elect to lend to the Company shall be determined *pro rata* according to the Members' Profit Percentages.  Any portion of the Loan Amount not loaned by the Members in accordance with this Section may be loaned by any Member or affiliate of a Member as Management may determine.

(c)   *Excuse*.  The provisions of this Section shall not apply to short-term loans made in exigent circumstances bearing a market rate of interest.

(d)   *Priority*.  Management shall have the discretion to repay all loans from Members or affiliates of Members before distributions are made to the Members under Sections 6.2 or 6.3.

11.2   <u>Right of Reimbursement and/or Contribution</u>.  In the event any Member (or affiliate of a Member) guaranties any indebtedness of the Company, then the Company shall promptly reimburse the guarantor for any and all payments made by the guarantor thereunder.  Without limitation of the foregoing sentence, and notwithstanding the terms of any such guaranty, as between and among the Members, each of the Members shall be liable with respect to such guaranty in proportion to such Member's Profit Percentage.  If any Member (or affiliate of a Member) makes payment with respect to a guaranty of Company indebtedness that at time of demand has not been reimbursed by the Company, the other Members shall immediately make a payment to such Member (or such affiliate of a Member) such that after all payments between and among the Members are made, each Member shall have contributed to the payment of such guaranty an amount equal to the amount of such payment multiplied by such Member's Profit Percentage.  Any Member and any affiliate of a Member making payment on any such guaranty or making a contribution in respect thereof shall have the right to enforce this Section.  This Section shall apply to any person who holds an interest in the Company, whether or not such person is a Member.  In the event that the obligation under the guaranty arises by reason of the gross negligence, fraud or willful misconduct of a particular Member (or affiliate of a particular Member), that Member shall be solely responsible for funding the reimbursement obligations described herein.

11.3   <u>Conversion</u>.  Notwithstanding anything to the contrary in this Agreement, Management shall have the right and power in its sole discretion to cause the Company to contribute its assets to, merge with, consolidate with or convert into any other entity formed under the laws of the State or the laws of any other state in accordance with the Act, whereupon the assets and liabilities of the Company shall become the assets and liabilities of such other entity, the Members (including Management) or, in the case of a contribution, the Company, shall become the owner(s) of such other entity (without modification of their economic interests *inter se*), and Management shall become the controlling person of such other entity.  By way of illustration and not by way of limitation, the Company may be converted into a limited partnership in which Members are limited partners and Management is the general partner, or into a real estate investment trust in which Members are non-voting shareholders and Management is the sole voting shareholder.  Should the Company merge with, consolidate with or convert into another entity in accordance with this Section, Members agree that they shall be bound by the terms of the organizational documents of such entity as presented by Management.  Such organizational documents (viewed as if they were amendments to this Agreement) shall comport with Section 15.1.  The execution of such organizational documents (viewed as if they were amendments to this Agreement) shall be subject to Section 15.2.

15

11.4    "Bring-Along" Rights.  In the event that Management proposes to enter into one or more agreements to sell to any person or persons (referred to herein collectively as the "purchaser") all or substantially all of the membership interests in the Company in a single transaction or related series of transactions in lieu of a sale of all or a substantial part of the assets of the Company, all of the Members hereby agree to sell their respective interests in the Company to the purchaser on the terms set forth in such agreements.  The agreements shall provide for the payment to the Members for their interests in the Company amounts equal to the amounts that they would have received had the Company (a) sold all of its assets at the price implicit in the price to be paid by the purchaser for the membership interests in the Company, (b) satisfied all of its obligations and (c) made liquidating distributions to the Members in accordance with Article 16 hereof.  The costs associated with the sale shall, in general, be borne by the Members in the same proportion.  Management may reallocate among the Members so much of the considerations that a Member would be entitled to receive as equals the amounts which such Member then owes to the Company or to another Member.  Amounts that the purchaser agrees to pay in consideration of consulting, employment, non-competition and similar agreements shall be allocated (if not allocated in the agreements) among the Members as Management shall deem reasonable and appropriate.  Management is hereby granted by each Member a power of attorney, coupled with an interest, to execute in the name of the Member any and all agreements, contracts, documents and other instruments (including instruments of assignment) which Management deems necessary or useful in order to consummate the transactions aforesaid; said instruments shall be deemed to have been executed on behalf of the Members as if signed by the Members themselves.

11.5    Redemption of Interests.

(a)    *Membership Interests Subject to Redemption*.  The interests of any Member in the Company shall be subject to redemption (*i.e.*, purchase by the Company) as provided in this Section.

(b)    *Election to Redeem Made by Management*.  The decision to redeem a Member's interest in the Company in accordance with this Section shall be made by Management in its sole discretion, but only in the following circumstances applicable to a Member:

(i)    Willful or serious misconduct by the Member with respect to the business, operations or assets of the Company.

(ii)    Fraud or dishonesty on the part of the Member, whether or not with respect to the business or affairs of the Company, which affects the business, operations, assets or reputation of the Company.

(iii)    The Member's conviction of a felony crime, or a non-felony crime involving an act of moral turpitude.

(iv)    A transfer by the Member of its interest in the Company in violation of this Agreement.

(v)    An attempt by the Member to withdraw from the Company in violation of this Agreement.

(vi)    An attempt by the Member to partition the property of the Company in violation of this Agreement.

(vii)    A breach by the Member of any of the other terms, conditions and obligations contained in this Agreement.

16

(viii)   A failure to contribute additional capital to the Company pursuant to Management's call in Section 5.2(b) above.

(ix)   A breach by the Member of any employment agreement between the Member and the Company.

(x)   Any event resulting in a separation of the Member from service to the Company as an employee, contractor or agent.

For purposes of clauses (i), (ix) and (x), the term "Company" shall include the Company and any of its subsidiaries or other affiliates.

The interests of all transferees, successors or assignees of a Member (including a Permitted Transferee) shall also be subject to redemption under this Section if any transferee, successor or assignee has engaged in any of the acts described in the clauses set forth above or if, in the case of a partial assignment, the assigning Member (while a Member) engaged in any of the acts described in the clauses set forth above.

(c)   *Redemption Notice.*  If Management decides to redeem a Member in accordance with this Section, Management shall send such Member (the "Redeemed Member") written notice (the "Redemption Notice") of its decision.  The Redemption Notice shall specify the date on which the redemption shall close (the "Redemption Closing Date"); the Redemption Closing Date shall be established in accordance with paragraph (f).

(d)   *Purchase Price.*  The purchase price (the "Purchase Price") of a Redeemed Member's interest shall equal (i) the amount that the Redeemed Member would have received had the Company (A) terminated on the date the Redemption Notice was given, (B) sold all of its assets at their fair market values on the date the Redemption Notice was given, (C) satisfied all of its debts and obligations and (D) made distributions to the Members in accordance with Section 16.2, less (ii) any distributions made to the Redeemed Member after the date the Redemption Notice is given to Redemption Closing Date.  The fair market values of the Company's assets shall be determined by Management.

(e)   *Payment of Purchase Price.*  The Purchase Price shall be paid in the form of an unsecured promissory note (the "Redemption Note") payable to the Redeemed Member and payable over a three year term.  The principal amount of the Redemption Note shall bear interest at the lowest rate necessary to avoid the imputation of additional interest for Federal income tax purposes.  Level payments of interest and principal shall be made on the note on a quarterly basis to fully amortize the principal balance over the term of the Redemption Note.  The first payment under the Redemption Note shall be due 90 days after the Redemption Closing Date.  The Redemption Note shall be prepayable at any time and from time to time.  The outstanding balance of the Note shall be prepaid upon the dissolution of the Company in accordance with Section 16.2(b).

(f)   *Redemption Closing Date and Closing Deliveries.*  The Redemption Closing Date shall be on a date and at the time specified by Management in the Redemption Notice but not later than the 30th day following the date the Redemption Notice is given.  Closing shall occur at the Company's principal office or at such other place specified by Management in the Redemption Notice.  At the closing the Company shall tender the Note to the Redeemed Member and the Redeemed Member shall accept the same and execute such documents of transfer as Management may request.  If the Redeemed Member shall not accept the tender or execute said documents, Management shall be entitled to execute the documents of transfer for and on behalf of the Redeemed Member, with the same effect as if the Redeemed Member had done so itself, and the contemplated transfer shall be deemed closed once Management has deposited the Note (i) as an interpleader in any court of competent jurisdiction or (ii) in

17

a non-interest bearing escrow account at any established title company, trust company or banking institution, under instructions that the same (and any payments made under the Note after such deposit) may be withdrawn by the Redeemed Member upon demand.   The closing of a redemption as contemplated in this paragraph shall not prejudice a Redeemed Member's right to contest the amount of the Purchase Price but a Redeemed Member shall not be permitted to contest the closing as contemplated by this paragraph.

(g)   *Allocation of Redeemed Member's Interest.*   The Percentage Interest of a Redeemed Member shall be reallocated among the Members in accordance with their relative Profit Percentages.  If a member of Management possesses a Profit Percentage, the reallocation shall also include such member of Management.

<div align="center">

Article 12
Special Covenants

</div>

12.1   Competitive Undertakings.   Except as otherwise provided herein, any Member and Management may engage in business ventures of any nature and description independently or with others, including, but not limited to, business of the character described in Article 3 (or any part thereof), and neither the Company nor any of the Members shall have any rights in or to such independent ventures or the income or profits derived therefrom.

12.2   Confidentiality.

(a)   *Restriction on Disclosure.*   Each Member (which term, for purposes of this Section, includes each member of Management, whether or not such member of Management is a Member) recognizes and acknowledges that by virtue of its relationship with the Company it may be exposed to, discover, develop, generate or contribute to the Company's Confidential Information (as defined below). Each Member agrees that it will not, at any time or in any manner, either directly or indirectly, publish, communicate, divulge, disclose, disseminate or otherwise reveal to any person or entity, or use for any purpose whatsoever any Confidential Information, except as may be necessary in the course of performing authorized services for the Company or as may be required by applicable order of court, law, statute or regulation.   Each Member further agrees to notify the Company before disclosing any Confidential Information under compulsion of law.   Each Member hereby acknowledges that all Confidential Information is valuable, material and will significantly affects the effective and successful conduct of the Company's business and its goodwill.   Each Member will take all necessary steps and precautions to protect any Confidential Information and shall comply with all policies of the Company in regard to Confidential Information.   Upon the Company's request, any Member shall promptly return to the Company any and all correspondence, notes, data and documents containing or reflecting Confidential Information, keeping no copies for himself.   The rights and protections granted herein are in addition to the rights, remedies and protections afforded to the Company under any applicable law, statute or regulation.

(b)   *Definitions.*   For the purposes of this Agreement, the term "Confidential Information" shall mean all information or data relating to the business and affairs of the Company not generally known outside of the Company, including, without limitation, any of the Company's processes, data, designs, compilations of information, apparatus, computer programs, information of or relating to suppliers or customers, customer requirements, cost or price data, research data, business plans, marketing or sales plans or information, financial data, salary information, policies and procedures, sales know-how or any other information that may be considered to be proprietary to or a trade secret of the Company, whether or not such information is considered a trade secret within the meaning of applicable law. Information shall not be considered "Confidential Information" if any of the following apply:

<div align="center">18</div>

(i)     It is already in or enters into the public domain otherwise than as a consequence of a breach of the terms of this Agreement.

(ii)    It is already properly and lawfully in the possession of the receiving party and is not subject to any obligation of secrecy on the receiving party's part.

(iii)   It becomes available to a party on a non-confidential basis from a source other than the Company, provided that such information was properly and lawfully in the possession of such source and not, so far as the receiving party is aware (after making due and careful inquiry), subject to any obligation of secrecy on the part of such source.

<div align="center">

Article 13
Securities and Other Matters

</div>

13.1    No Registration Statement.  The interests evidenced by this Agreement have not been registered with the Securities and Exchange Commission or any state but have been issued pursuant to exemptions under the Federal Securities Act of 1933, as amended (the "Securities Act"), and applicable state securities laws.

13.2    Transfers of Interests Restricted.  The sale, transfer, pledge, hypothecation or other disposition of any of interests in the Company is restricted and may not be accomplished except in accordance with this Agreement and an applicable registration statement or an opinion of counsel satisfactory to Management that registration is unnecessary or an exemption from registration under the Securities Act and applicable state securities laws.

<div align="center">

Article 14
Intentionally Omitted

Article 15
Amendments to Operating Agreement

</div>

15.1    Amendments.  The terms of this Agreement may be modified or amended at any time and from time to time with the written consent of Management and Members holding a majority of the Profit Percentages; but, in no event shall any modification or amendment to this Agreement (a) disproportionately decrease the right of any Member to distributions; (b) cause any Member to incur any personal additional liability with respect to the Company; or (c) amend this Article – unless in each case the Members adversely affected thereby consent in writing to such modification or amendment.

15.2    Power of Attorney.  Each Member hereby agrees that, upon the execution of this Agreement, it shall and hereby does consent and appoint Management as its true and lawful attorney, coupled with an interest in its name, place and stead to sign, execute, acknowledge, swear to and file any and all documents which in the discretion of such attorney are required to be signed, executed, acknowledged, sworn to or filed by the Member to discharge the purposes of the Company as hereinabove stated or the provisions of this Agreement.  Without limitation, among the documents which Management may execute on behalf of each Member shall be the following:

(a)     Any amendments to this Agreement, when this Agreement is amended in accordance with Section 15.1.

<div align="center">

19

</div>

(b)     The Charter and any other instrument which may be required of the Company pursuant to the Act or the laws of any other jurisdiction and any amendments thereto that are not prohibited by Section 15.1.

The grant of authority set forth in this Section is a special power of attorney coupled with an interest, is irrevocable and shall survive the death, incapacity, insolvency, bankruptcy, liquidation or dissolution of a Member; may be exercised by Management for a Member by a facsimile signature or by listing the names of all of the Members executing any instrument with the signature of Management, as attorney in fact for all of them; and shall survive the delivery of an assignment by a Member of all or any portion of its interest, except that where the assignee has been approved by Management for admission to the Company as a substituted Member, the power of attorney shall survive the delivery of such assignment for the sole purpose of enabling Management to execute, acknowledge and file any instrument necessary to effect such substitution, and the grant of authority set forth in this Section shall be deemed to have been made by such substitute Member.

### Article 16
### Winding-Up and Dissolution of the Company

16.1    <u>Winding-Up and Dissolution Procedures</u>.  Upon an event described in Section 4.2, the affairs of the Company shall be wound-up and the Company shall be dissolved.  Management shall preside over the winding-up and dissolution of the Company or may appoint one or more agents to do so. Management shall make such filings in the State and in such other states in which the activities of the Company make it necessary or desirable to do so and do or cause to be done such other acts and things as shall be required to dissolve the Company.

16.2    <u>Distributions Upon Winding-Up</u>.  Except as otherwise provided in this Article, the winding-up and dissolution of the Company shall involve:

(a)     The orderly sale or other disposition of the Company's non-cash assets within a commercially reasonable time.

(b)     The payment or settlement of (and where appropriate, the establishment of reasonable reserves for) the Company's debts and other obligations, including to Members who are creditors, in the order of priority and to the extent provided by law.

(c)     The distribution of any remaining sums among the Members in accordance with Section 6.3.

16.3    <u>Distributions In Kind</u>.  In the event that Management determines that it is necessary or desirable to make a distribution of Company property in kind, such property shall be transferred and conveyed to the distributees as tenants in common so as to vest in them undivided interests in the whole of such property in proportion to their respective rights to share in the proceeds of the sale of such property in accordance with the provisions of Section 16.2(c).  All such Company property shall be valued at fair market value as determined by Management and shall be subject to such reasonable conditions and restrictions as are necessary or desirable in order to preserve the value of the assets distributed or for legal reasons.

16.4    <u>Liquidating Trust</u>.  In the discretion of Management, all or any portion of the distributions that would otherwise be made to the Members pursuant to Section 16.2(c) may be distributed to a trust established for the benefit of the Members for the purposes of liquidating Company assets, collecting amounts owed to the Company and paying any debts or other obligations of the

Company arising out of or in connection with the Company. Management shall appoint one or more persons as liquidating trustee. The assets of any such trust shall be distributed to the Members from time to time in the discretion of the Liquidating Trustee in the same proportions as the amount distributed to such trust by the Company would otherwise have been distributed to the Members pursuant to this Agreement.

16.5   <u>Final Accounting</u>. As part of the winding-up of the Company, a final accounting shall be made of the activities of the Company from the date of the last previous accounting to the date of dissolution. If a Member has a deficit in its Capital Account, such Member shall not be obligated to contribute any amount of that deficit to the Company.

<div align="center"><u>Article 17</u><br><u>General Provisions</u></div>

17.1   <u>Notices</u>. All notices, demands, offers or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be transmitted by courier, recognized overnight delivery service (such as FedEx) or first class (postage prepaid) certified U.S. mail. Any notice, demand, offer or other communication shall be effective on the date of receipt at the address of the addressee. Notices, demands, offers or other communications to a Member shall be addressed to the Member at the address beneath the Member's name on the signature page of this Agreement or, if applicable, in such Member's subscription agreement. Notices, demands, offers or other communications to the Company shall be addressed to the Company in care of Management. Notices, demands, offers or other communications to Management shall be addressed to each member of Management at the address beneath each such person's name on the signature page of this Agreement. Any Member or member of Management may change its address for all future notices, demands, offers or other communications by giving notice to all of the other Members and members of Management stating its new address.

17.2   <u>Successors</u>. This Agreement and all the terms and provisions hereof shall be binding upon the parties hereto and their respective legal representatives, heirs, successors and assigns, except as expressly herein otherwise provided.

17.3   <u>Third Party Benefits</u>. Without limiting Section 17.2, the provisions of this Agreement are intended solely to benefit the Company and the parties hereto and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any other person, including without limitation any creditor of the Company (and no such creditor or other person shall be a third party beneficiary of this Agreement), and except as required by the Act, the Members shall have no duty or obligation to any such creditor or other person to make any contributions or return any money or other property to the Company.

17.4   <u>Governing Law</u>. This Agreement shall be construed in conformity with the domestic laws of the State, as applied to agreements whose only parties are residents of the State and which are to be performed entirely within the State.

17.5   <u>Severability</u>. If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid by a court of competent jurisdiction, the remainder of this Agreement, or the application of such provision to persons or circumstances other then those to which it is held invalid by such court, shall not be affected thereby.

17.6   <u>Other Rules of Construction</u>. Every provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any Member (notwithstanding any rule

<div align="center">21</div>

of law requiring an Agreement to be strictly construed against the drafting party). The following additional rules of construction shall apply to this Agreement:

(a)   All pronouns shall include the masculine, feminine or neuter thereof, wherever the context and facts require such construction.

(b)   The term "person" refers to an individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, statutory trust, common-law trust, unincorporated organization, government authority or any other organization whether or not a legal entity.

(c)   The term "party" means a signatory to this Agreement, including a Member, member of Management and any successor to any of the foregoing, whether or not such successor has executed or otherwise joined in this Agreement. The fact that a successor is a party shall not give that person any greater rights than it has under the express terms of this Agreement. By way of illustration, a successor who has not been admitted to the Company in accordance with Article 10 is a party to this Agreement for purposes of the dispute resolution procedures in Section 17.8, but despite being a party is still subject to the limitations of Section 10.4(c).

(d)   All terms defined in this Agreement in the singular have the same meanings when used in the plural and vice versa.

(e)   The use of the word "including" herein shall not be considered to limit the provisions which it modifies but instead shall mean "including without limitation" unless the provision states otherwise.

(f)   Headings, titles and subtitles us are inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof.

(g)   An "Article" of this Agreement is typically identified with a number (*e.g.*, "Article 17"). A "Section" of this Agreement corresponds to an Article and is typically identified with a number that includes a decimal (*e.g.*, "Section 17.6"). A "paragraph" of this Agreement corresponds to a Section and is typically identified by a lower case letter (*e.g.*, paragraph "(g)"). A "clause" of this Agreement corresponds to a paragraph and is typically identified with a roman numeral or an upper case letter (*e.g.*, "(i)," "(I)" or "(A)").

(h)   Except where express reference is made to "business days," references in this Agreement to a number of days within which an action must be taken (including the giving of notice or the delivery of documents) shall mean calendar days. Notwithstanding the preceding sentence, whenever the final day on which an action must be taken (including the giving of notice or the delivery of documents) occurs on a non-business day (*i.e.*, Saturday, Sunday or a holiday recognized by the U.S. Federal government, the State or the state in which the Company's principal office is located), then such period or date shall be extended until the immediately following business day.

17.7   Members Not Agents. Nothing contained herein shall be construed to constitute any Member the agent of another Member, except as specifically provided herein.

17.8   Dispute Resolution. The Company and the parties to this Agreement hereby irrevocably and unconditionally agree that any suit, action or proceeding arising out of or related to this Agreement or the Company shall be brought only in the United States District Court for the Southern District or in the Supreme Court of New York County, State of New York, and the specific choice from among the

foregoing shall be determined by the party initiating such suit, action or proceeding. To the fullest extent permissible by law, the Company and the parties to this Agreement hereby consent to the personal jurisdiction, venue and forum of such courts and hereby irrevocably and unconditionally waive any claim or objection that it is not subject to the jurisdiction of such courts, that the venue is improper, that the forum is inconvenient or any similar objection, claim or argument. Service of process on any of the parties hereto with regard to any such action may be made and is considered legally proper by mailing the process to such person by certified mail to the address of such person as provided in Section 17.1 or to any subsequent address to which notices shall be sent.

17.9    <u>Waiver of Trial by Jury</u>.   Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues, and therefore each such party hereby irrevocably and unconditionally waives any right such party may have to a trial by jury with respect to any litigation directly or indirectly arising out of or relating to this Agreement. Each party understands and has considered the implications of this waiver. Each party makes this waiver voluntarily.

17.10    <u>Attorney's Fees</u>.   If the Company, any Member or any member of Management obtains a judgment in connection with a dispute arising under or in connection with any this Agreement, such party shall be entitled to recover from the non-prevailing party its court costs, and reasonable attorney's fees and disbursements incurred in connection therewith and in any appeal or enforcement proceeding thereafter, in addition to all other recoverable costs.

17.11    <u>Remedies</u>.   Subject to any express provisions of this Agreement, no remedy conferred upon the Company, any Member or any member of Management is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity or by statute.

17.12    <u>Waiver</u>.   No waiver by the Company, any Member or any member of Management of any breach of this Agreement shall be deemed to be a waiver of any other breach of any kind or nature, and no acceptance of payment or performance by the Company, any Member or any member of Management after any such breach shall be deemed to be a waiver of any breach of this Agreement, whether or not the Company, any Member or any member of Management knows of such breach at the time it accepts such payment or performance. No failure or delay on the part of the Company, any Member or any member of Management to exercise any right it may have shall prevent the exercise thereof by the Company, any Member or any member of Management at any time such other may continue to be so in default, and no such failure or delay shall operate as a waiver of any default.

17.13    <u>Entire Understanding</u>.   This Agreement (and any subscription agreement that a Member may have entered into with the Company in connection herewith) constitutes the entire understanding among the Members and supersedes any prior understanding and/or written or oral agreements among them with respect to the Company. In the event of any conflict between this Agreement (and any subscription agreement that a Member may have entered into with the Company) and any other written or oral communications between the Company, Management or any employee or agent of either, and the Members (including any private placement memorandum for the issuance of interests in the Company), this Agreement (and any subscription agreement that a Member may have entered into with the Company) shall control and take precedence. Notwithstanding anything to the contrary contained in this Agreement, the parties hereto acknowledge that, as of the date hereof, Management, on its own behalf and/or on behalf of the Company, may agree in letters or other writings with one or more Members (each, an "other agreement"), and may from time to time hereafter agree in other agreements entered into with one or more Members to be admitted to the Company following the date hereof, in its sole discretion, to exceptions or departures from the provisions of this Agreement. Each other agreement, as in effect from

23

time to time, shall be incorporated herein by reference with respect to the Member or Members who are parties thereto. The parties hereto agree that any such exceptions or departures contained in an other agreement with a Member shall govern with respect to the Member who is a party to such other agreement notwithstanding the provisions of this Agreement.

17.14   Further Assurances. Each of the parties hereto shall hereafter execute and deliver such further instruments and do such further acts and things as may be required or useful to carry out the intent and purpose of this Agreement and as are not inconsistent with the terms hereof. Recognizing that the Company, the Members and the members of Management may find it necessary from time to time to establish to third parties the then-current status of performance hereunder, each party hereto agrees, upon the written request of another party hereto, reasonably from time to time, to furnish promptly a written statement of the status of any matter pertaining to this Agreement or the Company to the best of the knowledge and belief of the party making such statements.

17.15   Counterparts and Electronic Transmission. This Agreement may be executed in counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument. Signatures to this Agreement that are transmitted electronically (*i.e.*, via e-mail or facsimile) shall be binding.

*[Signatures begin on next page of this document]*

*[Signature Page to Operating Agreement]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed.

MANAGER:                                        MANAGER:


Michael Dardashtian____                         David Gitman_____
Print Name of Manager                           Print Name of Manager


_____                        _____
Signature                                       Signature


_____                        _____
Address                                         Address


| MEMBERS: | PROFIT PERCENTAGES | CAPITAL CONTRIBUTIONS |
|---|---|---|
| Michael Dardashtian____ Print Name of Member | 50% | $500.00 |
| | | |
| _____ Signature | | |
| | | |
| _____ Address | | |
| | | |
| David Gitman_____ Print Name of Member | 50% | $500.00 |
| | | |
| _____ Signature | | |
| | | |
| _____ Address | | |

# EXHIBIT C

| Customers | 5/1/2016 | 6/1/2016 | 7/1/2016 | 8/1/2016 | 9/1/2016 | 10/1/2016 |
|---|---|---|---|---|---|---|
| Customer 1 | $134.20 | $134.20 | $134.20 | $134.20 | $134.20 | $1,908.00 |
| Customer 2 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 3 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 4 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 5 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 6 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 7 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 8 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 9 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 10 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 11 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 12 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 13 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 14 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 15 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 16 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 17 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 18 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 19 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 20 | $79.00 | $79.00 | $179.00 | $79.00 | $79.00 | $79.00 |
| Customer 21 | $79.00 | $49.00 | $49.00 | $179.00 | $179.00 | $179.00 |
| Customer 22 | $49.00 | $79.00 | $79.00 | $49.00 | $49.00 | $49.00 |
| Customer 23 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 24 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 25 | $49.00 | $79.00 | $49.00 | $49.00 | $49.00 | $79.00 |
| Customer 26 | $49.00 | $49.00 | $49.00 | $49.00 | $79.00 | $49.00 |
| Customer 27 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 28 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 29 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 30 | $79.00 | $49.00 | $49.00 | $79.00 | $49.00 | $79.00 |
| Customer 31 | $49.00 | $79.00 | $79.00 | $49.00 | $79.00 | $49.00 |

| Customer | | | | | |
|---|---|---|---|---|---|
| Customer 32 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 33 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 34 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 35 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 36 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 37 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 38 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 39 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 40 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 41 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 42 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 43 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 44 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 45 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 46 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 47 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 48 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 49 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 50 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 51 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 52 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 53 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 54 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 55 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 56 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 57 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 58 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 59 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 60 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 61 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 62 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 63 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |

| | | | | | |
|---|---|---|---|---|---|
| Customer 64 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 65 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 66 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 67 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 68 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 69 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 70 | $49.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 71 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 72 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 73 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 74 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 75 | $179.00 | $179.00 | $179.00 | $1,717.20 | $179.00 |
| Customer 76 | $49.00 | $49.00 | $49.00 | $49.00 | $0.00 |
| Customer 77 | $79.00 | $79.00 | $79.00 | $49.00 | $49.00 |
| Customer 78 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 79 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 80 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 81 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 82 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 83 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 84 | $79.00 | $79.00 | $179.00 | $179.00 | $179.00 |
| Customer 85 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 86 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 87 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 88 | $49.00 | $49.00 | $49.00 | $79.00 | $433.38 |
| Customer 89 | $49.00 | $49.00 | $79.00 | $49.00 | $49.00 |
| Customer 90 | $179.00 | $179.00 | $179.00 | $179.00 | $79.00 |
| Customer 91 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 92 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 93 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 94 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 95 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |

| Customer | | | | | | |
|---|---|---|---|---|---|---|
| Customer 96 | | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 97 | - | | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 98 | - | | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 99 | - | | $0.00 | $0.00 | $0.00 | $0.00 |
| Customer 100 | - | | $468.00 | $79.00 | $79.00 | $179.00 |
| Customer 101 | | | $79.00 | $0.00 | $0.00 | $0.00 |
| Customer 102 | | | $468.00 | $0.00 | $0.00 | $0.00 |
| Customer 103 | | | $468.00 | $0.00 | $0.00 | $0.00 |
| Customer 104 | | | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 105 | | | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 106 | | | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 107 | | | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 108 | | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 109 | | | | $79.00 | $79.00 | $79.00 |
| Customer 110 | | | | $79.00 | $79.00 | $79.00 |
| Customer 111 | | | | $79.00 | $79.00 | $79.00 |
| Customer 112 | | | | $179.00 | $179.00 | $179.00 |
| Customer 113 | | | | $79.00 | $79.00 | $79.00 |
| Customer 114 | | | | $49.00 | $49.00 | $49.00 |
| Customer 115 | | | | $49.00 | $49.00 | $49.00 |
| Customer 116 | | | | $49.00 | $49.00 | $49.00 |
| Customer 117 | - | | | $49.00 | $49.00 | $49.00 |
| Customer 118 | - | | | $468.00 | $0.00 | $468.00 |
| Customer 119 | - | | | $0.00 | $129.00 | $129.00 |
| Customer 120 | - | | | | $129.00 | $79.00 |
| Customer 121 | - | | | | $2,148.00 | $179.00 |
| Customer 122 | - | | | | $179.00 | $179.00 |
| Customer 123 | - | | | | $179.00 | $179.00 |
| Customer 124 | - | | | | $179.00 | $179.00 |
| Customer 125 | - | | | | $79.00 | $79.00 |
| Customer 126 | - | | | | $49.00 | $49.00 |
| Customer 127 | - | | | | $468.00 | $0.00 |

| Customer | Amount | Amount |
|---|---|---|
| Customer 128 | $0.00 | $468.00 |
| Customer 129 | $0.00 | $749.00 |
| Customer 130 | $49.00 | |
| Customer 131 | $0.00 | |
| Customer 132 | $468.00 | |
| Customer 133 | $79.00 | |
| Customer 134 | $79.00 | |
| Customer 135 | $386.98 | |
| Customer 136 | $49.00 | |
| Customer 137 | $49.00 | |
| Customer 138 | $79.00 | |
| Customer 139 | $49.00 | |
| Customer 140 | $79.00 | |
| Customer 141 | $79.00 | |
| Customer 142 | $79.00 | |
| Customer 143 | $179.00 | |
| Customer 144 | $49.00 | |
| Customer 145 | $828.00 | |
| Customer 146 | $0.00 | |
| Customer 147 | $2,148.00 | |
| Customer 148 | $179.00 | |
| Customer 149 | $49.00 | |
| Customer 150 | $49.00 | |
| Customer 151 | $49.00 | |
| Customer 152 | $79.00 | |
| Customer 153 | $468.00 | |
| Customer 154 | $828.00 | |
| Customer 155 | $49.00 | |
| Customer 156 | $179.00 | |
| Customer 157 | $49.00 | |
| Customer 158 | $99.00 | |
| Customer 159 | $79.00 | |

| Customer | Amount |
| --- | --- |
| Customer 191 | |
| Customer 190 | |
| Customer 189 | |
| Customer 188 | |
| Customer 187 | |
| Customer 186 | |
| Customer 185 | |
| Customer 184 | |
| Customer 183 | |
| Customer 182 | |
| Customer 181 | |
| Customer 180 | |
| Customer 179 | |
| Customer 178 | |
| Customer 177 | |
| Customer 176 | |
| Customer 175 | |
| Customer 174 | |
| Customer 173 | |
| Customer 172 | |
| Customer 171 | |
| Customer 170 | $49.00 |
| Customer 169 | |
| Customer 168 | |
| Customer 167 | |
| Customer 166 | $179.00 |
| Customer 165 | $49.00 |
| Customer 164 | $1,440.00 |
| Customer 163 | $49.00 |
| Customer 162 | $179.00 |
| Customer 161 | $79.00 |
| Customer 160 | $79.00 |

Customer 223
Customer 222
Customer 221
Customer 220
Customer 219
Customer 218
Customer 217
Customer 216
Customer 215
Customer 214
Customer 213
Customer 212
Customer 211
Customer 210
Customer 209
Customer 208
Customer 207
Customer 206
Customer 205
Customer 204
Customer 203
Customer 202
Customer 201
Customer 200
Customer 199
Customer 198
Customer 197
Customer 196
Customer 195
Customer 194
Customer 193
Customer 192

| Customer | | | | | | |
|---|---|---|---|---|---|---|
| Customer 224 | | | | | | |
| Customer 225 | | | | | | |
| Customer 226 | | | | | | |
| Customer 227 | | | | | | |
| Customer 228 | | | | | | |
| Customer 229 | | | | | | |
| Customer 230 | | | | | | |
| Customer 231 | | | | | | |
| Customer 232 | | | | | | |
| Customer 233 | | | | | | |
| Customer 234 | | | | | | |
| Customer 235 | | | | | | |
| Customer 236 | | | | | | |
| Customer 237 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 238 | | | | | | |
| Customer 239 | | | | | | |
| Customer 240 | | | | | | |
| Customer 241 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 242 | | | | | | |
| Customer 243 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 244 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 245 | | | | | | |
| Customer 246 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 247 | | | | | | |
| Customer 248 | | | | | | |
| Customer 249 | | | | | | |
| Customer 250 | | | | | | |
| Customer 251 | | | | | | |
| Customer 252 | | | | | | |
| Customer 253 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 254 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 255 | | | | | | |

Customer 256
Customer 257
Customer 258
Customer 259
Customer 260
Customer 261
Customer 262
Customer 263
Customer 264
Customer 265
Customer 266
Customer 267
Customer 268
Customer 269
Customer 270
Customer 271
Customer 272
Customer 273
Customer 274
Customer 275
Customer 276
Customer 277

| | | | | | | |
|---|---|---|---|---|---|---|
| TOTAL ACTIVE | $12,386.00 | $14,405.20 | $13,031.20 | $18,211.84 | $17,941.40 | $24,411.36 |
| TOTAL PAID | $9,681.20 | $11,987.20 | $11,225.20 | $16,533.84 | $16,856.40 | $23,117.36 |
| *Total Active Subscribers* | *96* | *108* | *116* | *129* | *143* | *165* |
| *Subscriber Growth* | *11.46%* | *11.11%* | *6.90%* | *10.08%* | *9.79%* | *13.33%* |
| *Revenue Growth* | *13.43%* | *14.02%* | *-10.54%* | *28.45%* | *-1.51%* | *26.50%* |

**Cancellations**
Customer 278
Customer 279

Customer 311
Customer 310
Customer 309
Customer 308
Customer 307
Customer 306
Customer 305
Customer 304
Customer 303
Customer 302
Customer 301
Customer 300
Customer 299
Customer 298
Customer 297
Customer 296
Customer 295
Customer 294
Customer 293
Customer 292
Customer 291
Customer 290
Customer 289
Customer 288
Customer 287
Customer 286
Customer 285
Customer 284
Customer 283
Customer 282
Customer 281
Customer 280

| Customer | Amount 1 | Amount 2 |
|---|---|---|
| Customer 312 | | |
| Customer 313 | | |
| Customer 314 | | |
| Customer 315 | | |
| Customer 316 | | |
| Customer 317 | | |
| Customer 318 | | |
| Customer 319 | | |
| Customer 320 | | |
| Customer 321 | | |
| Customer 322 | | |
| Customer 323 | | |
| Customer 324 | | |
| Customer 325 | | |
| Customer 326 | | |
| Customer 327 | | |
| Customer 328 | | |
| Customer 329 | | |
| Customer 330 | | |
| Customer 331 | $49.00 | |
| Customer 332 | $179.00 | |
| Customer 333 | $179.00 | |
| Customer 334 | $79.00 | |
| Customer 335 | $79.00 | |
| Customer 336 | $79.00 | $179.00 |
| Customer 337 | $58.80 | $79.00 |
| Customer 338 | $49.00 | $79.00 |
| Customer 339 | $179.00 | $49.00 |
| Customer 340 | | $79.00 |
| Customer 341 | | $49.00 |
| Customer 342 | | $49.00 |
| Customer 343 | | $179.00 |

| Customer | | | | | | |
|---|---|---|---|---|---|---|
| Customer 344 | $49.00 | $49.00 | | | | |
| Customer 345 | $49.00 | $49.00 | | | | |
| Customer 346 | | | | | | |
| Customer 347 | $79.00 | $79.00 | | | | |
| Customer 348 | $79.00 | $79.00 | | | | |
| Customer 349 | $79.00 | $79.00 | $79.00 | | | |
| Customer 350 | $79.00 | $79.00 | $79.00 | | | |
| Customer 351 | $79.00 | $79.00 | $79.00 | | | |
| Customer 352 | $179.00 | $179.00 | $179.00 | | | |
| Customer 353 | $79.00 | $79.00 | $79.00 | | | |
| Customer 354 | $79.00 | $79.00 | $79.00 | | | |
| Customer 355 | $49.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 356 | $79.00 | $79.00 | $79.00 | $79.00 | | |
| Customer 357 | $49.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 358 | $49.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 359 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 360 | | | | | | |
| Customer 361 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 362 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 363 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 364 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 365 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 366 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 367 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 368 | | | | | | |
| Customer 369 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 370 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 371 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 372 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 373 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 374 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 375 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Customer 376 | - | | - | | | - |
| Customer 377 | | | | | | |
| Customer 378 | | | | | | |
| Customer 379 | | | | | | |
| Customer 380 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 381 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 382 | | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 383 | - | - | - | | | |
| Customer 384 | - | - | - | - | $49.00 | $49.00 |
| Customer 385 | | - | - | - | - | $49.00 |
| Customer 386 | - | | | | | - |
| Customer 387 | - | - | - | - | | |
| TOTALS | $2,704.80 | $2,418.00 | $1,806.00 | $1,678.00 | $1,085.00 | $1,294.00 |
| | $12,386.00 | $14,405.20 | $13,031.20 | $18,211.84 | $17,941.40 | $24,411.36 |
| Total Subscribers | 127 | 135 | 135 | 146 | 153 | 176 |
| Total Cancellations | 5 | 8 | 4 | 7 | 4 | 5 |
| Churn Rate | 3.94% | 5.93% | 2.96% | 4.79% | 2.61% | 2.84% |

| Customers | 5/1/2016 | 6/1/2016 | 7/1/2016 | 8/1/2016 | 9/1/2016 | 10/1/2016 |
|---|---|---|---|---|---|---|
| Customer 1 | $134.20 | $134.20 | $134.20 | $134.20 | $134.20 | $1,908.00 |
| Customer 2 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 3 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 4 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 5 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 6 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 |
| Customer 7 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 8 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 9 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 10 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 11 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 12 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 13 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 14 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 15 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 16 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 17 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 18 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 19 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 20 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 21 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 22 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 23 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 24 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 25 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 26 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 27 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 28 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 29 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 30 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 31 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Customer 32 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 33 | $149.00 | $149.00 | $149.00 | $149.00 | | |
| Customer 34 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 35 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | |
| Customer 36 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 37 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 38 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 39 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 40 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 41 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | |
| Customer 42 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 43 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 44 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | |
| Customer 45 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 46 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | |
| Customer 47 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 48 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 49 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 50 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 51 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 52 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | |
| Customer 53 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 54 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | |
| Customer 55 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | |
| Customer 56 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 57 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 58 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 59 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 60 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 61 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 62 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 63 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |

| | | | | |
|---|---|---|---|---|
| Customer 64 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 65 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 66 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 67 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 68 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 69 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 70 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 71 | $49.00 | $79.00 | $79.00 | $79.00 |
| Customer 72 | $79.00 | $49.00 | $49.00 | $49.00 |
| Customer 73 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 74 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 75 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 76 | $49.00 | $49.00 | $49.00 | $0.00 |
| Customer 77 | $49.00 | $49.00 | $49.00 | $1,717.20 |
| Customer 78 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 79 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 80 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 81 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 82 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 83 | $49.00 | $79.00 | $79.00 | $49.00 |
| Customer 84 | $79.00 | $179.00 | $179.00 | $79.00 |
| Customer 85 | $179.00 | $79.00 | $79.00 | $179.00 |
| Customer 86 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 87 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 88 | $49.00 | $49.00 | $49.00 | $433.38 |
| Customer 89 | $49.00 | $49.00 | $79.00 | $79.00 |
| Customer 90 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 91 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 92 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 93 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 94 | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 95 | $79.00 | $79.00 | $79.00 | $79.00 |

| Customer | | | | | |
|---|---|---|---|---|---|
| Customer 96 | | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 97 | | | $49.00 | $49.00 | $49.00 |
| Customer 98 | | | $79.00 | $79.00 | $79.00 |
| Customer 99 | | | $468.00 | $0.00 | $0.00 |
| Customer 100 | | | $79.00 | $79.00 | $179.00 |
| Customer 101 | | | $0.00 | $444.64 | $0.00 |
| Customer 102 | | | $468.00 | $0.00 | $0.00 |
| Customer 103 | | | $468.00 | $0.00 | $0.00 |
| Customer 104 | | | $49.00 | $49.00 | $49.00 |
| Customer 105 | | | $49.00 | $49.00 | $49.00 |
| Customer 106 | | | $79.00 | $79.00 | $79.00 |
| Customer 107 | | | $49.00 | $49.00 | $49.00 |
| Customer 108 | | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 109 | | $49.00 | $79.00 | $79.00 | $79.00 |
| Customer 110 | | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 111 | | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 112 | | $179.00 | $179.00 | $179.00 | $179.00 |
| Customer 113 | | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 114 | | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 115 | | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 116 | $179.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 117 | | | $468.00 | $0.00 | $0.00 |
| Customer 118 | | | $49.00 | $0.00 | $0.00 |
| Customer 119 | | | $2,148.00 | $129.00 | $129.00 |
| Customer 120 | | | $79.00 | $179.00 | $129.00 |
| Customer 121 | | | $179.00 | $179.00 | $179.00 |
| Customer 122 | | | $179.00 | $179.00 | $179.00 |
| Customer 123 | | | $179.00 | $179.00 | $179.00 |
| Customer 124 | | | $79.00 | $79.00 | $79.00 |
| Customer 125 | | | $79.00 | $79.00 | $828.00 |
| Customer 126 | | | $49.00 | $49.00 | $79.00 |
| Customer 127 | | | $468.00 | $0.00 | $0.00 |

| Customer | Amount | | |
|---|---|---|---|
| Customer 128 | $0.00 | | |
| Customer 129 | $0.00 | | |
| Customer 130 | $49.00 | | |
| Customer 131 | $0.00 | | |
| Customer 132 | $468.00 | | |
| Customer 133 | $79.00 | | |
| Customer 134 | $179.00 | | |
| Customer 135 | $386.98 | | |
| Customer 136 | $468.00 | | |
| Customer 137 | $49.00 | | |
| Customer 138 | $79.00 | | |
| Customer 139 | $49.00 | | |
| Customer 140 | $79.00 | | |
| Customer 141 | $79.00 | | |
| Customer 142 | $79.00 | | |
| Customer 143 | $179.00 | | |
| Customer 144 | $49.00 | $468.00 | |
| Customer 145 | $828.00 | $749.00 | |
| Customer 146 | $0.00 | | |
| Customer 147 | $2,148.00 | | |
| Customer 148 | $179.00 | | |
| Customer 149 | $49.00 | | |
| Customer 150 | $49.00 | | |
| Customer 151 | $49.00 | | |
| Customer 152 | $0.00 | | |
| Customer 153 | $179.00 | | |
| Customer 154 | $79.00 | | |
| Customer 155 | $79.00 | | |
| Customer 156 | $79.00 | | |
| Customer 157 | $49.00 | | |
| Customer 158 | $79.00 | | |
| Customer 159 | $79.00 | | |

$828.00
$468.00
$79.00
$49.00
$49.00
$179.00
$49.00
$828.00
$468.00
$179.00
$99.00
$49.00
$179.00
$79.00
$79.00

| Customer | Amount |
|---|---|
| Customer 160 | $79.00 |
| Customer 161 | $79.00 |
| Customer 162 | $179.00 |
| Customer 163 | $49.00 |
| Customer 164 | $1,440.00 |
| Customer 165 | $49.00 |
| Customer 166 | $179.00 |
| Customer 167 | |
| Customer 168 | |
| Customer 169 | |
| Customer 170 | |
| Customer 171 | $49.00 |
| Customer 172 | |
| Customer 173 | |
| Customer 174 | |
| Customer 175 | |
| Customer 176 | |
| Customer 177 | |
| Customer 178 | |
| Customer 179 | |
| Customer 180 | |
| Customer 181 | |
| Customer 182 | |
| Customer 183 | |
| Customer 184 | |
| Customer 185 | |
| Customer 186 | |
| Customer 187 | |
| Customer 188 | |
| Customer 189 | |
| Customer 190 | |
| Customer 191 | |

Customer 192
Customer 193
Customer 194
Customer 195
Customer 196
Customer 197
Customer 198
Customer 199
Customer 200
Customer 201
Customer 202
Customer 203
Customer 204
Customer 205
Customer 206
Customer 207
Customer 208
Customer 209
Customer 210
Customer 211
Customer 212
Customer 213
Customer 214
Customer 215
Customer 216
Customer 217
Customer 218
Customer 219
Customer 220
Customer 221
Customer 222
Customer 223

| Customer | | | | | | |
|---|---|---|---|---|---|---|
| Customer 224 | | | | | | |
| Customer 225 | | | | | | |
| Customer 226 | | | | | | |
| Customer 227 | | | | | | |
| Customer 228 | | | | | | |
| Customer 229 | | | | | | |
| Customer 230 | | | | | | |
| Customer 231 | | | | | | |
| Customer 232 | | | | | | |
| Customer 233 | | | | | | |
| Customer 234 | | | | | | |
| Customer 235 | | | | | | |
| Customer 236 | | | | | | |
| Customer 237 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 238 | | | | | | |
| Customer 239 | | | | | | |
| Customer 240 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 241 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 242 | | | | | | |
| Customer 243 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 244 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 245 | | | | | | |
| Customer 246 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 247 | | | | | | |
| Customer 248 | | | | | | |
| Customer 249 | | | | | | |
| Customer 250 | | | | | | |
| Customer 251 | | | | | | |
| Customer 252 | | | | | | |
| Customer 253 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 254 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 255 | | | | | | |

Customer 256
Customer 257
Customer 258
Customer 259
Customer 260
Customer 261
Customer 262
Customer 263
Customer 264
Customer 265
Customer 266
Customer 267
Customer 268
Customer 269
Customer 270
Customer 271
Customer 272
Customer 273
Customer 274
Customer 275
Customer 276
Customer 277

| | | | | | | |
|---|---|---|---|---|---|---|
| TOTAL ACTIVE | $9,681.20 | $11,987.20 | $11,225.20 | $16,533.84 | $16,856.40 | $23,117.36 |
| TOTAL PAID | $12,386.00 | $14,405.20 | $13,031.20 | $18,211.84 | $17,941.40 | $24,411.36 |
| Total Active Subscribers | 96 | 108 | 116 | 129 | 143 | 165 |
| Subscriber Growth | 11.46% | 11.11% | 6.90% | 10.08% | 9.79% | 13.33% |
| Revenue Growth | 13.43% | 14.02% | -10.54% | 28.45% | -1.51% | 26.50% |

**Cancellations**
Customer 278
Customer 279

Customer 280
Customer 281
Customer 282
Customer 283
Customer 284
Customer 285
Customer 286
Customer 287
Customer 288
Customer 289
Customer 290
Customer 291
Customer 292
Customer 293
Customer 294
Customer 295
Customer 296
Customer 297
Customer 298
Customer 299
Customer 300
Customer 301
Customer 302
Customer 303
Customer 304
Customer 305
Customer 306
Customer 307
Customer 308
Customer 309
Customer 310
Customer 311

| Customer | | |
|---|---|---|
| Customer 312 | | |
| Customer 313 | | |
| Customer 314 | | |
| Customer 315 | | |
| Customer 316 | | |
| Customer 317 | | |
| Customer 318 | | |
| Customer 319 | | |
| Customer 320 | | |
| Customer 321 | | |
| Customer 322 | | |
| Customer 323 | | |
| Customer 324 | | |
| Customer 325 | | |
| Customer 326 | | |
| Customer 327 | | |
| Customer 328 | | |
| Customer 329 | | |
| Customer 330 | | |
| Customer 331 | $49.00 | |
| Customer 332 | $179.00 | |
| Customer 333 | $179.00 | |
| Customer 334 | $49.00 | |
| Customer 335 | $58.80 | |
| Customer 336 | $179.00 | $179.00 |
| Customer 337 | $79.00 | $79.00 |
| Customer 338 | $79.00 | $79.00 |
| Customer 339 | $49.00 | $49.00 |
| Customer 340 | $49.00 | $79.00 |
| Customer 341 | $79.00 | $49.00 |
| Customer 342 | $79.00 | $179.00 |
| Customer 343 | $49.00 | |

| Customer | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Customer 344 | $49.00 | $49.00 | | | | | | |
| Customer 345 | $49.00 | $49.00 - | | | | | | |
| Customer 346 | | | | | | | | |
| Customer 347 | $49.00 | $49.00 | $49.00 | | | | | |
| Customer 348 | $79.00 | $79.00 | $79.00 | $49.00 | | | | |
| Customer 349 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | | | |
| Customer 350 | $79.00 | | $179.00 | $79.00 | $49.00 | | | |
| Customer 351 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | | |
| Customer 352 | $179.00 | $179.00 | $179.00 | $179.00 | $179.00 | | | |
| Customer 353 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | | |
| Customer 354 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | | |
| Customer 355 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 356 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | | |
| Customer 357 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 358 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 359 | | | | $179.00 | $179.00 | $179.00 | | |
| Customer 360 | | | | | | | | |
| Customer 361 | | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | | |
| Customer 362 | $49.00 | $49.00 | $49.00 | $79.00 | $79.00 | $79.00 | | |
| Customer 363 | $79.00 | $79.00 | $79.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 364 | $49.00 | $49.00 | $49.00 | $79.00 | $79.00 | $79.00 | | |
| Customer 365 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 366 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | | |
| Customer 367 | | | | | | | | |
| Customer 368 | | | | | | $179.00 | $79.00 | |
| Customer 369 | | | | | | | $179.00 | $79.00 |
| Customer 370 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | $149.00 | |
| Customer 371 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 372 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 373 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |
| Customer 374 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | |
| Customer 375 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Customer 376 | | | | | | |
| Customer 377 | | | | | | |
| Customer 378 | | | | | | |
| Customer 379 | - | | | - | | - |
| Customer 380 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 381 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 | $79.00 |
| Customer 382 | | $49.00 | $49.00 | $49.00 | $49.00 | $49.00 |
| Customer 383 | | | | | | |
| Customer 384 | - | - | - | | $49.00 | |
| Customer 385 | - | - | - | - | | $49.00 |
| Customer 386 | | | - | - | - | |
| Customer 387 | - | | | | | - |
| TOTALS | $2,704.80 | $2,418.00 | $1,806.00 | $1,678.00 | $1,085.00 | $1,294.00 |
| | $12,386.00 | $14,405.20 | $13,031.20 | $18,211.84 | $17,941.40 | $24,411.36 |
| Total Subscribers | 127 | 135 | 135 | 146 | 153 | 176 |
| Total Cancellations | 5 | 8 | 4 | 7 | 4 | 5 |
| Churn Rate | 3.94% | 5.93% | 2.96% | 4.79% | 2.61% | 2.84% |

**Exhibit 20** A

5/29/2017                                ndap Mail - Jeremy Comp

 **Gmail** by Google

Mike Dash <mdash@ndap-llc.com>

---

## Jeremy Comp

**David Gitman** <david@coopersquare.ventures>
To: Michael Dash <mdash@ndap-llc.com>                    Thu, Dec 29, 2016 at 6:25 AM

Ok, thanks for handling.
On Wed, Dec 28, 2016 at 8:05 PM Michael Dash <mdash@ndap-llc.com> wrote:
Yea I spoke to him today about it. He's trying to get $ from us now which I told him we don't have. He told me it was a
tax issue which wasn't correct. I'll handle it.

> On Dec 28, 2016, at 7:50 PM, David Gitman <david@coopersquare.ventures> wrote:
>
> Hey,
>
> Jeremy called me today asking about compensation the last two years of CPK work, by year end. Did he talk to you
about it?

# EXHIBIT B

●●○○○ Verizon 📶    7:24 PM    ⏰ ✳ 19% 🔋

< ⚙ David Gitman    📹 📞

05/11, 11:13 AM

 You in the office?

Ya

Kk

I'll swing by

05/11, 12:53 PM

Let's sit down tom - we gotta go thru all expenses etc and figure out how to spin everything out of CSV and into a newco.. we gotta cut everything we dont need at this point..

 Sure

05/12, 9:43 AM

Type a message here    

    

# EXHIBIT C

●●○○○ Verizon 🛜          7:24 PM          ⏰ ✳ 19% 🔋

‹          ⦿ David Gitman          📷🔊   📞

05/12, 9:43 AM

what time r u gonna come by?

 Prob after lunch

I gotta see my dad

What exactly do we need to review?

there's a bunch of stuff - made a list, anyway u can come by before I may have to run out after lunch?

 I can't come by before.

If you want to send me the list, I can start working on it though

would rather go thru it w/ u there's stuff i want to know how to login/ see etc.. what time can u come by?

 What can't you login to?

Type a message here          

            

# EXHIBIT D

●●○○○ Verizon 📶    7:24 PM    ⏰ ✳ 19% 🔋

‹     David Gitman    🎥    📞

M2E (for CPK) - u need to cancel this.. im gonna get a refund for last 2 mo's
Google Services - I am not a master admin
Godaddy - dont have ndap login
Amazon Web Services - dont have ndap login
MageMojo - dont have ndap login
Github - dont have ndap login

 I'll send them over now

Do you not know your AWS password?

Sign-in URL is https:// ndap.signin.aws.amazon.com/ console    ✏



Type a message here    😊

        

# EXHIBIT E

 Verizon  7:24 PM  19%  

 David Gitman 

 What are the expenses you wanna go through?

hang on ill share doc w/ u



Sign in - Google Accounts
www.google.com

can u do call?

 Call my cell

**CarPartKings_Co...raft2_2.11.16.pdf**
You sent this file from another device. 

**CarPartKings_Co...Draft2_2.11.16.eps**
You sent this file from another device. 

Type a message here 

    

# EXHIBIT F

●●○○○ Verizon 📶          7:24 PM          ⏰ ✳ 19% 🔋

‹                    ⊛ David Gitman           

ur right, its fine - keep car running thru, whatever u can cut would be good.. just trying to figure out how to weather next few mo's, just a shock to system so a bit scary

 Yeah, you were oddly clam yesterday

We'll figure it out

Doesn't need to happen today

I mean i did make a conscious choice not to take that job.. whether it was right or not is yet to be seen

 But I will reduce my expenses

its not like we didnt see this coming - its been mo's w nothing happening

wish it was diff but is what it is

 I'm upset to

Type a message here                    

        

# EXHIBIT G

●●○○○ Verizon 📶          7:25 PM          ⏰ ⁂ 19% 🔋

‹          David Gitman          📷          📞

I wanted something big to happen

well Jeremy asked yest if something were to happen would u come back

i said i can prob convince you 😊

He just called me

I think he's thinking something w/ revolution

I'll call him back

but remains to be seen

esp w/ him..

He has delivered anything yet

exactly

Andreas ever reschedule

Type a message here          😊

# EXHIBIT H

●○○○○ Verizon 📶          7:38 PM          ⏰ ✳ 17% 🔋

‹          ✳ David Gitman          📹 📞

**09/26, 10:42 AM**

K just asked me for a raise for him and Aleksey.. he wants to go up to 25 an hr and Alexey to 20 an hr

 There deserve it.

cool. i agree

 What are all the 5k transaction in BOA?

What's the ndaponline password? dashgit1 isn't working anymore.

which ones?

c4MFEp^C!X

 I see some checks made out to you.

those are to me

Type a message here          

    

# EXHIBIT I

●○○○○ Verizon 🛜          7:38 PM          ⏰ ❋ 17% 🔋

‹          ◔ David Gitman          📹   📞

~~those are to me~~

the others are from PayPal

 We never talked about taking distributions.

I guess we need to

yea we did - talked abt it when u took cue job

 I wanna look over the books

c4MFEp^C!X isn't working for me

sry Z2Xos3FH3p69bH

 K, i"ll look over it later and get back to you

k im literally trying to set up books for CR now

all i have is our CSV acct

Type a message here          

