H6j1darc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MICHAEL DARDASHTIAN, et al.,

4                 Plaintiffs,

5          v.                           17 Civ. 4327 (LLS)

6   DAVID GITMAN, et al.,

7                 Defendants.           Order to Show Cause
                                        Hearing
8   ------------------------------x
9                                       New York, N.Y.
                                        June 19, 2017
10                                      3:44 p.m.

11  Before:

12                      HON. LOUIS L. STANTON,

13                                      District Judge

14                      APPEARANCES

15  ARTURI, D'ARGENIO & GUAGLARDI, LLP
        Attorneys for Plaintiffs
16  BY:  BARRY S. GUAGLARDI, ESQ.
        EVAN A. OSTRER, ESQ.
17
    DENTONS US LLP
18      Attorneys for Defendants David Gitman, Dalva Ventures,
        Channel Reply
19  BY:  LINDSAY F. DITLOW, ESQ.

20  MORRISON COHEN LLP
        Attorneys for Defendants Jeremy Falk, Summit Rock Holdings
21  BY:  EDWARD P. GILBERT, ESQ.

22

23

24

25

H6j1darc

1                    (In the jury room)

2                    THE COURT:  Just starting at the small end, why is it

3         necessary for Mr. Falk's lawyer to be here?  Was the

4         stipulation not acceptable?

5                    MR. GUAGLARDI:  That would be addressed to me, your

6         Honor.

7                    THE COURT:  It would indeed.

8                    MR. GUAGLARDI:  Yes.  And Mr. Falk's stipulation, if

9         he's consenting to all the restraints, then he does not need to

10        be here.

11                   THE COURT:  Well, he said you turned it down.

12                   MR. GUAGLARDI:  We had been having a global discussion

13        about the resolution of the entire matter.

14                   THE COURT:  I see.

15                   MR. GUAGLARDI:  And that was part of the matter, and

16        we are still having a discussion regarding the remainder of the

17        matter --

18                   THE COURT:  Very good.

19                   MR. GUAGLARDI:  -- regarding noncompetition and --

20                   THE COURT:  Yes, yes.

21                   MR. GUAGLARDI:  -- other things.  But if he's

22        consenting to each of the restraints here --

23                   THE COURT:  The way I read it, he did.

24                   MR. GUAGLARDI:  -- then that's no issue.

25                   THE COURT:  He's trying to save money --

H6j1darc

1            MR. GILBERT:  Good afternoon, your Honor.

2            THE COURT:  -- which I understand and applaud.

3            MR. GILBERT:  Yes.  I would consent to the restraints

4     as the stipulation that I proposed to Mr. Guaglardi.

5            THE COURT:  There may undergo some enlargement or

6     diminishment in the course of this afternoon's discussions, but

7     I will be careful that that would not in any effect involve

8     Mr. Falk.

9            MR. GILBERT:  Thank you, your Honor.

10            THE COURT:  And I will assume you will consent to

11     whatever changes are made.

12            MR. GILBERT:  Correct, your Honor, yes.

13            THE COURT:  Okay.  Dangerous but economical.

14            MR. GILBERT:  Yes, your Honor.

15            THE COURT:  Okay.  You're excused with the thanks of

16     the Court.  You're welcome to remain if you wish.

17            MR. GILBERT:  I do wish to remain, your Honor.

18            THE COURT:  Okay.  I've read the submissions of

19     Mr. Gitman and counsel, and we have a date for Wednesday, 3:00

20     for the return date of the documents which have been filed.

21            Let me first ask counsel on each side what they would

22     prefer as an agenda for today's discussion, because I don't

23     want to cut that off in any way if it makes sense to do it, and

24     then I will suggest what I think is the most useful agenda.

25            MR. GUAGLARDI:  Thank you very much, your Honor.

H6j1darc

1          THE COURT:  I'm speaking to agenda.  That does not

2     include a recital of grievances, claims, suspicions, or hostile

3     material.

4          MR. GUAGLARDI:  Fair.  Fair, Judge.

5          THE COURT:  That's reserved until its place on the

6     agenda.

7          MR. GUAGLARDI:  Thank you, your Honor.

8          Well, two things.  One is, we're here to have the

9     contempt order to show cause entered and the various forms of

10    relief.

11         THE COURT:  Correct.

12         MR. GUAGLARDI:  And we did need to bring up a new

13    issue to your Honor that came about over the weekend.

14         THE COURT:  Sure.

15         MR. GUAGLARDI:  And I think it's going to be extremely

16    relevant to the Court.  And I have brought a copy of it.

17         THE COURT:  Describe it briefly.

18         MR. GUAGLARDI:  Sure.  There are two software programs

19    that the plaintiff used.  One is called Chargebee, and

20    Chargebee manages --

21         THE COURT:  I don't want the facts and the law.  I

22    just want the nature.

23         MR. GUAGLARDI:  Sure.  So the nature is, Judge, that

24    over the weekend Mr. Gitman, through the defendant Channel

25    Reply, Inc., sent an invitation to Mr. Dardashtian to gain

H6j1darc

1    access to the Chargebee and Stripe accounts that were formerly

2    owned by the plaintiffs.  So Judge Ramos entered an order

3    that --

4              THE COURT:  Over the weekend?

5              MR. GUAGLARDI:  No.  The previous June 8th order.

6              THE COURT:  What's the new issue?

7              MR. GUAGLARDI:  The new issue is that over the weekend

8    Mr. -- Mr. Gitman had indicated he restored access to all the

9    accounts.  So these two --

10             THE COURT:  Can you tell me the nature of the issue

11   without recitals.

12             MR. GUAGLARDI:  Mr. Gitman violated the court order

13   because he did not advise the Court of the truth that he had

14   not restored access to the Chargebee and Stripe accounts.

15             THE COURT:  Okay.  Got it.  Next one.

16             MR. GUAGLARDI:  And that Channel Reply, Inc. is the

17   owner of those accounts as of the weekend, and those are the

18   two accounts that control the customer payments --

19             THE COURT:  Okay.

20             MR. GUAGLARDI:  -- to the plaintiffs.

21             THE COURT:  So that's a new issue.

22             MR. GUAGLARDI:  That's the new issue.

23             THE COURT:  Okay.

24             MR. GUAGLARDI:  So other than to bring up the new

25   issue --

H6j1darc

| | |
|---|---|
| 1 | THE COURT:  Absolutely, we'll deal with that. |
| 2 | MR. GUAGLARDI:  Other than to bring up the new issue |
| 3 | and to address the issues why we're here -- |
| 4 | THE COURT:  While you're repeating that, let me ask |
| 5 | you just a quick question.  Would you like to see Channel |
| 6 | Reply, Inc. liquidated? |
| 7 | MR. GUAGLARDI:  We would like to -- |
| 8 | THE COURT:  "Yes" or "no" or "I'm not sure"? |
| 9 | MR. GUAGLARDI:  Yes.  Yes. |
| 10 | THE COURT:  Okay.  Your agenda. |
| 11 | MS. DITLOW:  Sure.  So on agenda, today was going to |
| 12 | be to set forth -- let's see -- the temporary restraints that |
| 13 | might be incurred between now and Wednesday's hearing -- |
| 14 | THE COURT:  Let me rephrase.  What's your preferred |
| 15 | agenda for this afternoon? |
| 16 | MS. DITLOW:  Sure.  So I think first I would like to |
| 17 | address the new issue that Mr. Guaglardi has raised because I |
| 18 | think it will help everything going forward. |
| 19 | So what Mr. Gitman, my client, was doing, there are |
| 20 | certain technological limitations on accounts that have been |
| 21 | deleted, but in an effort to fully comply with the order, we |
| 22 | have given access to Mr. Dardashtian. |
| 23 | THE COURT:  Are you talking about the agenda or are |
| 24 | you talking about a state of facts? |
| 25 | MS. DITLOW:  So the new issue was I guess the |

H6j1darc

invitations that Mr. Dardashtian was --

THE COURT:  I'm trying to get the agenda for this
afternoon straight in my mind.  Can you help me with that.

MS. DITLOW:  Certainly.

So I think we can address any of the continuation of
the TRO entered by Judge Ramos, and I think that would be first
and foremost, your Honor, and then any new restraints that your
Honor would like to have in place between now and Wednesday,
and then we can reserve the arguments on the factual issues to
Wednesday, as your Honor suggested.

THE COURT:  I would in general agree with that.  And
when you refer to factual issues, I think the things that ought
to be deferred are also claims arising out of the general
background of the litigation.  I see this really on two levels.
The first is the underlying facts and law and claims and
resolutions of the background situation in which these disputed
matters arose, and that is classically preserved for litigation
of the merits of the case.  Those, as you can see by the briefs
that you've written, are interesting, and we're going to
reserve them as much as we can, and that period will probably
start with the hearing of the interim injunction phase of the
proceedings, because in their nature, they also include
possibility and probability of discussions on the merits.  So
those matters become relevant really starting Wednesday
afternoon.

H6j1darc

1         Between now and Wednesday afternoon, I am primarily

2    and almost exclusively concerned with a different level, and

3    that is the level of returning the factual situation to the

4    situation as it existed on May 26, 2017.  That is more urgent,

5    it may involve more pain and excitement, but it is important,

6    and it should, from many standpoints, be completed as much as

7    possible before turning to the entanglements of the underlying

8    situation.

9         So that is what informs my thinking between now and

10   Wednesday afternoon.  If you can resolve it globally by that

11   time, you are to be congratulated, and of course in doing that,

12   you are dealing with the whole situation, but I am not.  I'm

13   dealing only with its return to the status quo May 26, which I

14   view as having been -- which one is Mr. Gitman?

15             MR. GITMAN:  Right here, your Honor.

16             THE COURT:  Welcome back.

17             MR. GITMAN:  Thank you.

18             THE COURT:  Which I regard you as being the major

19   sinner when it comes to changing the situation after May 26.

20             Now my approach to that this afternoon is something

21   that I want to be characterized by two characteristics --

22   clarity, number one; and reasonability, number two.  As a first

23   step towards that, I come to the papers that are before me, the

24   most recent of which is what we were talking about on -- was it

25   way back on Friday afternoon?

H6j1darc

1          MR. GUAGLARDI:  Long time ago.

2          THE COURT:  Excuse me?

3          MR. GUAGLARDI:  Friday.

4          THE COURT:  Friday afternoon.  And I hope a lot has

5    transpired since then.  They were submitted then, and that was

6    for the purpose of giving the defendant notice of what I would

7    be asked to sign today.

8          That also forms into two parts.  The first part is a

9    statement of the relief which would be asked on Wednesday.

10   That gives the defendant notice of what is to be argued and

11   asserted on Wednesday, and it serves to give that notice.

12   You've had that notice since Friday, and there's really nothing

13   for me to do about that.  It has served its function.  An order

14   to show cause has two functions.  One is to give notice, and

15   that is what the first half of the document serves, and it's

16   been done.  The second is to impose interim restrictions.  That

17   has not been addressed yet.  It should be addressed this

18   afternoon.  And I propose to do so as follows:

19         This situation is a swath of different transactions,

20   accounts, electronic accesses to different things, transfers of

21   money, transfers of intellectual property, assets, and a host

22   of the underlying actions which were taken and those which will

23   have to be taken to return the situation to May 26.

24   Unfortunately, the human brain being what it is, the more you

25   deal in detail with each of those items, the more you lose

H6j1darc

1  track of the overall situation that you're trying to bring into

2  being.  So I propose in general to simply group all of those

3  matters together under the general characterization of

4  restoration or repair or return to status quo, and the

5  transfers which occurred on May 27 and following.  And if that

6  won't baffle anybody, I think it will clarify the more

7  important matters by not getting lost in detail.  We all know

8  what we're talking about, and you know what you're talking

9  about with respect to those details infinitely better than I

10  do, and so I want to handle it in that way in gross.

11         With that understanding and based entirely and only on

12  what I've seen in the papers before me and of course those

13  which were before Judge Ramos, I was concerned that a major

14  risk in the case might be Mr. Gitman's return to Russia with

15  the problems of recreating the status quo left unsolved and,

16  while in Russia, exacerbating the problem, making it more

17  difficult to cure and perhaps inflicting irreparable harm on

18  the plaintiffs.  And the classic reaction of a court to that

19  situation is to restrain and detain Mr. Gitman until the

20  situation is resolved.  That also is classically designed to

21  secure his prompt cooperation, since as soon as the status quo

22  is returned to its earlier condition, his release follows.  It

23  doesn't follow; it goes the same day.

24         I shrink from that step.  First, nobody has asked me

25  to do it, and that's to be taken very seriously, because they

H6j1darc

1    have a sense of the realities, which I don't.  Mine is only

2    conditional.  Second, it would infringe, very much impair its

3    ability to make the restorative actions come into effect.  And

4    so I've been thinking about practical alternatives to that.

5    And it seems to me -- let me break off from that for a second.

6            In the meantime, I've been well aware, because it's

7    inherent in the nature of the facts, that the parties are

8    discussing and bit by bit nibbling away at resolution, because

9    it's so much in everybody's interest, and I applaud that, but

10   I'm also conscious at the same time that it presents me with a

11   moving target.  So I'm hoping that these things are being taken

12   care of.  I want to foster that.  It seemed to me a very

13   workable resolution of that fear follows if I address and

14   accept the plaintiff's suggestion that Mr. Gitman be removed as

15   a manager and that done forthwith, because, number one, it

16   reduces or eliminates any motive towards flight on his behalf,

17   because it would be able to accomplish much less and it gives

18   the plaintiffs considerable security against the infliction of

19   further harm, which is one of the purposes of the restraining

20   provisions.  So I propose to do that this afternoon, outline

21   the scope of what he will be allowed to do in continuing his

22   efforts as directed by court order to restore the status quo as

23   it was on May 26, and I think otherwise defer any start of

24   consideration of the merits of the underlying dispute until

25   through the submissions on Wednesday.

H6j1darc

1          To my mind the salient new situation was that

2     involving Channel Reply, Inc., and that was not addressed in

3     Judge Ramos's provisions because it hadn't occurred yet.  Now

4     apparently it has not only occurred but gotten worse.  So I

5     think we must address that this afternoon and impose restraints

6     on that.

7          But I don't like attacks from ambush.  Mr. Gitman, I

8     want you to know what my thinking has been, what you could be

9     faced with, and how it has been ameliorated, which I think is

10    better for everybody, if it is complied with.  That means

11    full-hearted cooperation and no internal restraints or

12    construction of language in your own favor but in a way that

13    words were not intended to convey.  If there's anything you

14    don't understand about anything I'm saying this afternoon, I

15    want you to ask.  I will not be insulted by it.  I'm desperate

16    for clarity.  All cards on the table.

17          MR. GITMAN:  Absolutely.

18          THE COURT:  That's my proposed agenda for this

19    afternoon.

20          MR. GITMAN:  Fine.

21          MR. GUAGLARDI:  If I may, your Honor?

22          THE COURT:  Excuse me?

23          MR. GUAGLARDI:  May I just ask a question?  Which I'm

24    happy to wait until your Honor --

25          THE COURT:  No.  I think I'm finished.  The reason I

H6j1darc

```
 1   asked about whether you wanted to liquidate that company is
 2   because I imagine that it might serve purposes for you to keep
 3   it alive.
 4                MR. GUAGLARDI:  Yes.
 5                THE COURT:  And these are the kinds of things that I
 6   leave entirely to counsel, what benefits them and what harms
 7   them.  What I don't want to do is to inflict harm unknowingly,
 8   and that's a risk that I run.
 9                In that connection, oh, I should say, any orders that
10   you need signed to get the time doctored materials restored, I
11   will sign instantaneously.
12                MR. GUAGLARDI:  Thank you.
13                Just an issue, your Honor, to address on what your
14   Honor had indicated.  Mr. Gitman, because he has formed Channel
15   Reply, Inc., and because the new issue that we're going to --
16                THE COURT:  Tell me what you want and then why.
17                MR. GUAGLARDI:  Right.  So we're going to want Channel
18   Reply today dissolved and liquidated effective immediately.
19                THE COURT:  How can you do it in one day?
20                MR. GUAGLARDI:  Well, what we --
21                THE COURT:  It's an American corporation or --
22                MR. GUAGLARDI:  Yes.
23                THE COURT:  It's an American corporation.
24                MR. GUAGLARDI:  Absolutely.
25                THE COURT:  I see.
```

H6j1darc

1          MR. GUAGLARDI:  It can be liquidated today.  And your

2     Honor can --

3          THE COURT:  Does it contain any assets that are other

4     than those contributed by the plaintiffs?

5          MR. GUAGLARDI:  No.  It's an alter ego of the

6     plaintiff.  That's all it is, your Honor.

7          MR. GITMAN:  That's not true.

8          MR. GUAGLARDI:  If I may, your Honor.

9          THE COURT:  I'll hear you.

10          MR. GUAGLARDI:  Channel Reply, Inc. is doing exactly

11     the same thing that Channel Reply, the plaintiffs, is doing.

12     Same name, same accounts, same pay structure, same customers.

13     Same intellectual property, same trade secrets.  Same

14     developers.  Everything.  And --

15          THE COURT:  Will you tell me why you want it

16     liquidated.

17          MR. GUAGLARDI:  Because the company itself is

18     functioning as the plaintiffs Channel Reply company in

19     competition with the plaintiff, servicing the plaintiff's

20     customers, creating confusion as to who the originator of the

21     service is, using the exact same trade name, and utilizing all

22     of the intellectual property.

23          THE COURT:  You're making sort of a copyright claim.

24          MR. GUAGLARDI:  Oh, it's not just a copyright claim.

25     It's a trademark -- it's an infringement claim.

H6j1darc

1            THE COURT:  Yes.

2            MR. GUAGLARDI:  It's a misappropriation of the trade

3    secret.  And with respect to Judge Ramos's order, it has

4    violated every provision.  The payment of the customers for the

5    plaintiffs Channel Reply, that payment is going to Channel

6    Reply, Inc.

7            THE COURT:  Oh, I had thought that the concept was

8    that Channel Reply, Inc. was created as a successor to the

9    plaintiffs to take over its business but excluding these

10   plaintiffs.

11           MR. GUAGLARDI:  It is a successor, Judge.  It's

12   Mr. Gitman's successor.

13           THE COURT:  We don't have to belabor that.  That's

14   what it is in your eyes.

15           MR. GUAGLARDI:  Yes.  Yes.

16           THE COURT:  So you want it liquidated.

17           MR. GUAGLARDI:  Absolutely.

18           THE COURT:  I'm not surprised.

19           MS. DITLOW:  Your Honor, may I.

20           So with regards to that remedy, especially today, I

21   don't know if your Honor has yet had an opportunity to read our

22   papers, but this afternoon we have for the first time been able

23   to make full submission to the Court, so I think such a drastic

24   remedy of liquidation before the Court has fully considered our

25   papers, Mr. Gitman's certification, as well as our legal

H6j1darc

1    memorandum, would be improper.  Obviously, as your Honor said,

2    those merits and everything can be addressed --

3           THE COURT:  Will you give me a hint why you think it's

4    wrong to do it.

5           MS. DITLOW:  Sure.  Absolutely.

6           THE COURT:  Other than procedural.

7           MS. DITLOW:  Mm-hmm.  So first, as to the trade name,

8    not Mr. Dardashtian nor any of the entities own the Channel

9    Reply trade name, so that is not something that should come

10   into play.  Additionally --

11          THE COURT:  What?

12          MS. DITLOW:  They don't own the trade name, Channel

13   Reply, so they don't have a trademark on the name, so there's

14   nothing improper for them to utilize -- for Mr. Gitman to be

15   utilizing the trade name of Channel Reply, Inc.

16          Also, and I will also let Mr. Gitman explain more

17   fully if he'd like to, but after a lot of improper deeds and

18   actions and failure to properly keep accurate books and records

19   of Channel Reply, LLC as well as CSV and --

20          THE COURT:  I want you to keep clearly in mind, the

21   reason I went through the full explanation I have been through

22   is that my purpose is to restore the situation as it existed on

23   May 26.

24          MR. GITMAN:  I want to restore it to that date and --

25          THE COURT:  And what was incorporated can always be

H6j1darc

1    incorporated again.

2              MS. DITLOW:  It was created to help keep that --

3              THE COURT:  At this point I will of course hear --

4              MR. GITMAN:  What I want to ask is -- I'm happy to

5    make sure everything is restored to that date.

6              THE COURT:  Excuse me?

7              MR. GITMAN:  I'm happy to have the company liquidated

8    and have things restored to that date, but my question is:  Do

9    I have the ability to start my own competing product on my own?

10             THE COURT:  Okay.  That's a fair question, and what

11   I'm trying to make clear is that question will be reserved and

12   addressed as it would have been on May 26.  In the meantime,

13   I'm interested only in returning the status quo --

14             MR. GITMAN:  I'm happy to --

15             THE COURT:  -- to what it was on May 26, and I think

16   that most of what you're telling me would have been valid to

17   the extent it's valid at that time and therefore can be argued,

18   starting on Wednesday.  In the meantime --

19             MR. GITMAN:  Can I do, to make sure things are --

20             THE COURT:  The traditional procedure is, listen to

21   what the judge is saying --

22             MR. GITMAN:  I apologize.

23             THE COURT:  -- and you'll get a chance to talk to your

24   lawyer any time you want, and then respond.  We're all here

25   together.

H6j1darc

1          MR. GITMAN:  Okay.  I apologize.  I'm anxious to

2     resolve the issue.

3          THE COURT:  Back to the status quo first, and then

4     we'll start making rulings about who has the right to do what.

5          MR. GUAGLARDI:  And your Honor --

6          THE COURT:  And that is a step I want taken, and it

7     would be one of the serious reasons for keeping your attention

8     and person focused on the resolution of that situation.

9          MR. GITMAN:  I'm worried about the negative

10    consequences of it, so I assume that our developers will quit

11    and things like that.

12         THE COURT:  The classification to negative

13    consequences, negative consequences to you, from returning the

14    situation to May 26 are considered with sympathy but given very

15    little weight.

16         MR. GITMAN:  It's not about me.

17         THE COURT:  Negative consequences to the plaintiffs

18    from that --

19         MR. GITMAN:  Absolutely.

20         THE COURT:  -- may happen, and they're something I

21    want to carve out from your relief and status and forming any

22    instructions I give and so that they don't occur.  Nobody wants

23    to create them.

24         MR. GITMAN:  Okay.

25         THE COURT:  And you, working with them, can do the

H6j1darc

```
 1   best at doing that.
 2           MR. GITMAN:  Okay.
 3           THE COURT:  But --
 4           MR. GITMAN:  So to be clear, I'm happy to liquidate
 5   the company, but -- but I hope the other side understands the
 6   negative impact of that.
 7           THE COURT:  Well, that's why I asked.  He says he
 8   wants it done.
 9           MR. GITMAN:  We're happy to do it.
10           THE COURT:  They say they're happy to do it, except
11   for --
12           MS. DITLOW:  Well, obviously I don't want to go
13   against what the client said, but I do --
14           THE COURT:  Excuse me?
15           MS. DITLOW:  I don't want to go against what
16   Mr. Gitman said.  I do think it's a little bit of a drastic
17   remedy, between now and Wednesday, when we have not yet gotten
18   to the merits.
19           THE COURT:  Oh, I know you're worried about procedure,
20   and I will give you the comfort of Rule 1 of the Federal Rules
21   of Civil Procedure, which say that these rules shall be
22   construed and administered so as to obtain the just, speedy,
23   and inexpensive determination of every action.  So they are not
24   designed to stand in the way of that which is otherwise
25   desirable.
```

H6j1darc

1          MR. GITMAN:  Is it okay if we have a conversation so

2     you clearly understand the negative impacts of the change?  I

3     would like the other side to know.

4          MS. DITLOW:  What he's trying to suggest --

5          MR. GITMAN:  I would like -- I would like Michael and

6     everyone to know what the negative impacts --

7          THE COURT:  What negative impacts do you fear from the

8     interim nonexistence of --

9          MR. GITMAN:  Not my negative impacts, just --

10         THE COURT:  Excuse me?

11         MR. GITMAN:  Not how it impacts me, how it will impact

12    you.

13         THE COURT:  Yes, that's fine.

14         MR. GITMAN:  So the developers will quit.  They may

15    sabotage the system.

16         THE COURT:  Excuse me for interrupting you.  This is

17    something I'm sure has been explained.  In making the

18    dispositions I'm contemplating this afternoon, I do not want in

19    any way to impair the opportunities of the NDAP transaction.

20         MR. GUAGLARDI:  We understand that, your Honor.

21         THE COURT:  And I don't want anything that would harm

22    that without your being fully aware.

23         MR. GUAGLARDI:  I think that that's proceeding on a

24    separate track, your Honor.

25         THE COURT:  Well, maybe that's what you're talking

H6j1darc

1    about.

2              MR. GITMAN:  No.  But I did not even think of that,

3    but that is a great point, that we're not able to execute on

4    the NDAP transaction, you know, because the suit was brought

5    hours before the final asset purchase agreement was delivered,

6    and I see this whole thing as a tactic to take more money from

7    that, you know, by auto parts transaction, nothing more,

8    nothing less.

9              MR. GUAGLARDI:  Can we find out, your Honor.

10             THE COURT:  It's a pity that we have to return to

11   May 26.

12             MR. GITMAN:  So to go back to May 26 --

13             THE COURT:  There may be some unavoidable cost.

14             MR. GITMAN:  Yeah.  And unfortunately, this is sad

15   that that transaction will be lost.  But the developers --

16   essentially the operation of the website will cease and the

17   product may no longer exist, if the company is liquidated.  So

18   just to be clear, that's the negative impact.

19             THE COURT:  Actions have consequences.

20             MR. GITMAN:  I completely agree, and I'm happy to make

21   sure that happens within the next day or -- day.

22             THE COURT:  Next what?

23             MR. GITMAN:  24 hours.  It takes a little while to

24   liquidate a company, a day or so, you know, to go to the bank,

25   close the accounts, move the money around, file papers with the

H6j1darc

1    state.  I'm happy to do that.

2              THE COURT:  Unless I hear on Wednesday it's been done,

3    that will affect my view of things that happen on Wednesday and

4    thereafter.

5              MR. GITMAN:  All right.  I'll have it done by

6    Wednesday.

7              THE COURT:  And if they change their minds, saying, we

8    don't want that to happen, that's something I will honor.

9              MR. GITMAN:  Well, the damage will be done by then.

10   So --

11             MR. GUAGLARDI:  And your Honor, just briefly, to

12   respond to what Mr. Gitman had indicated.

13             THE COURT:  Let me explain to everybody, one of the

14   reasons sensible people avoid courts is the court remedies are

15   very blunt.  It's a blunt instrument, not tailored to regulate

16   the considerations that businessmen consider when going into a

17   business transaction.  It's just not possible to make an

18   outsider's understanding of the complexities as sensitive as

19   the insider's understanding is.

20             MR. GUAGLARDI:  Thank you, your Honor.

21             So I just wanted to address directly, so that the

22   record is clear and your Honor is clear, the plaintiffs, Cooper

23   Square Ventures, they own the domain name channelreply.com.

24   The defendant does not.  He indicated there's no trademark, or

25   counsel did.  That's irrelevant.

H6j1darc

1          MR. GITMAN:  We registered the trademark.

2          THE COURT:  I don't want to hear the merits of that

3     dispute.

4          MR. GUAGLARDI:  Okay.  The second issue on the adverse

5     consequences --

6          THE COURT:  Standing alone, I want it transferred back

7     to the situation on May 26.

8          MR. GUAGLARDI:  Now what's very important, your Honor,

9     and what came out of Mr. Gitman's statement, is that your Honor

10    needs to under -- I'm sure your Honor heard, Mr. Gitman said

11    that the developers from Russia, who he just met with, will

12    quit and they'll sabotage the system.  Mr. Gitman is the one

13    who put the company in this position by soliciting the

14    developers themselves.  Mr. Gitman needs to permit, as part of

15    the restoration, my client to be able to communicate with those

16    developers.  My client's ability -- please don't interrupt.

17    Thank you.

18         MS. DITLOW:  I'm just telling him wait till you

19    finish.

20         MR. GUAGLARDI:  Mr. Gitman has eliminated Skype, he's

21    eliminated every communication --

22         THE COURT:  But he's under instructions to restore

23    those.

24         MR. GUAGLARDI:  Yes.  So that means my client will be

25    able to communicate with those developers because the

H6j1darc

1    information --

2            THE COURT:  So what?

3            MR. GUAGLARDI:  How about to indicate to them that

4    they have the ability to continue with the existing company

5    that they're contracted with?

6            THE COURT:  You can make your arguments as we move

7    back towards May 26.

8            MR. GUAGLARDI:  Yes, absolutely, and that's what we're

9    looking to do.

10           THE COURT:  So that's what you want.

11           MR. GUAGLARDI:  To restore everything that existed

12   back in the plaintiffs' name, where the plaintiffs have the

13   ability -- with Mr. Gitman no longer a manager, as your Honor

14   indicated, so that my client has the ability to run the company

15   with all of the software, with all of the intellectual

16   property, so that it can be operated as it was on May 26th,

17   with no interference from anyone else.

18           MS. DITLOW:  Your Honor, if I may.

19           THE COURT:  Mr. Guaglardi, you've been here all

20   afternoon.

21           MR. GUAGLARDI:  I have, your Honor.

22           THE COURT:  And you've listened closely.  And you

23   perceived Mr. Gitman saying that between now and Wednesday he'd

24   liquidate it.  Is that unacceptable to you?

25           MR. GUAGLARDI:  No.

H6j1darc

1          THE COURT:  Well, then what are you arguing about?

2          MR. GUAGLARDI:  I'm not.  I was just simply responding

3  to the adverse consequences.

4          THE COURT:  Please don't.  Only respond to what's

5  necessary.

6          MR. GUAGLARDI:  Okay, your Honor.

7          THE COURT:  Take "yes" for an answer.

8          MR. GUAGLARDI:  Yes.  I understand, Judge.

9          THE COURT:  Maybe Mr. Falk would obtain the benefit of

10  that too.

11          MS. DITLOW:  Your Honor, if I may, I do just want to

12  renew my point that I think for a less-than-48-hour window

13  right now --

14          THE COURT:  Excuse me?

15          MS. DITLOW:  That for a less-than-48-hour window, that

16  liquidation is a drastic remedy.

17          I also want to say, with regards to returning

18  everything to the status quo, the status quo was that

19  Mr. Dardashtian was barely involved in the business.  He has a

20  full-time job and he actively competes otherwise.  So

21  Mr. Dardashtian was running the company day to day as of the

22  status quo date, May 26, that your Honor is --

23          THE COURT:  Then I guess he will be again until it's

24  altered in the normal course of litigation by the underlying

25  claims.

H6j1darc

```
 1              MS. DITLOW:  Also, with respect to the developers, so
 2     the developers have had barely any contact with
 3     Mr. Dardashtian.  They are not interested in working with
 4     Mr. Dardashtian.  They don't even have agreements with the
 5     company.  And in fact, they are defendants in this matter.
 6     They haven't had an appearance.  They're not residents of the
 7     State of New York.  They've made no appearance.  And they are
 8     not speaking with the plaintiffs because of any direction by
 9     Mr. Gitman but because they are defendants in this case.  They
10     don't want to interact --
11              THE COURT:  What's your point?
12              MS. DITLOW:  Well, I think, again, the situation that
13     Channel Reply, LLC will operate without Mr. Gitman as of May 26
14     if Mr. Dardashtian takes the helm is not practical, and I think
15     in order to maintain the status quo that your Honor is looking
16     for, we can't have that situation occur where Mr. Gitman is
17     removed.  Without Mr. Gitman --
18              THE COURT:  It will be operated by --
19              MS. DITLOW:  Mr. Dardashtian, who has a full-time job,
20     separate and apart from these companies.
21              MR. GITMAN:  A competing full-time job.
22              THE COURT:  But Mr. Liebman will be coming in.
23              MS. DITLOW:  Well, as we point out, Mr. Liebman is far
24     from an independent accountant.  Mr. Liebman is personal
25     accountant to Mr. Dardashtian and his family.  Certainly we'd
```

H6j1darc

1    be welcome to entertain if your Honor wanted to appoint someone

2    else, but to appoint somebody so closely affiliated with

3    plaintiff I think is improper.

4            THE COURT:  Yes.  I know you made that point last week

5    and you make it again in your papers this afternoon.

6            MS. DITLOW:  That's correct, your Honor.

7            THE COURT:  And they say, well, he's represented both

8    sides and he has the advantage of a knowledge of the business,

9    and he looks to me eminently practical as an interim manager.

10           MS. DITLOW:  As I think we laid out in our papers, we

11    don't believe the company -- at Mr. Dardashtian's kind of helm,

12    the company's accounting books and records have been sloppily

13    done over the last couple years -- commingled accounts,

14    expenses being paid from one bank account to the other and

15    everything commingled.

16           THE COURT:  Who do you suggest would do those?

17           MS. DITLOW:  We are open to the Court's suggestion.

18           THE COURT:  To my suggestion?

19           MS. DITLOW:  If the court has somebody he'd like to

20    offer instead of -- or we can propose someone.  We just don't

21    think it should be Mr. Liebman.  But we can make some

22    suggestions.

23           THE COURT:  I understand your arguments in that

24    respect.  I don't find them persuasive.

25           MS. DITLOW:  Okay.

H6j1darc

1          THE COURT:  Life will go on.  If you complain of

2    Mr. Liebman's activities in this regard or that regard, I will

3    hear them.  He is no more free to mismanage than anybody else.

4    The only exception that I think should be made in his case is

5    that if he should be excepted from the provision of the

6    agreement which says that no manager should receive any

7    compensation, and I think that $2,500 a month is a reasonable

8    compensation to be charged against Mr. Gitman's account in the

9    first instance.

10          MS. DITLOW:  When you say Mr. Gitman's account, are

11   you referring to the company account?

12          THE COURT:  I think he is the major cause of the

13   disruptions from the status quo to the need to return to the

14   status quo.

15          MS. DITLOW:  Just so I'm clear, I want to clarify,

16   when you're saying from Mr. Gitman's account, are you referring

17   to one of the company bank accounts that are at issue?

18          THE COURT:  Not specifically.  To his account in the

19   sense of a claim which he would have to receive cash from the

20   operation.

21          MS. DITLOW:  Okay.  So Mr. Liebman's fees can be paid

22   from the company.

23          THE COURT:  Excuse me?

24          MS. DITLOW:  Mr. Liebman's fee can be paid from the

25   company account?

H6j1darc

1     THE COURT:  In the first instance, but charged against

2  Mr. Gitman's account.

3     MS. DITLOW:  As we addressed in our papers, Mr. Gitman

4  has failed to have been paid properly by the company for some

5  time, so that's a whole other issue.  I know your Honor doesn't

6  want to get to the merits, but I just --

7     THE COURT:  Good.  Good.  That's clearly in mind.

8  Wednesday will be here before you know it.

9     MS. DITLOW:  Okay.

10    THE COURT:  And I expect -- and the parties should

11 also -- that there will be competing claims set forth on

12 Wednesday and argued, and they're the kind of thing that should

13 not be ruled on from the hip.  At that point we're getting into

14 the merits of the litigation and I won't be free in my own

15 conscience to deal with it as peremptorily as I am with the

16 status quo question.

17    MR. GITMAN:  Could you explain to me what exactly

18 needs to be done to liquidate the accounts.

19    THE COURT:  I can't hear you.

20    MR. GITMAN:  I apologize.  Can you, in layman's terms,

21 explain to me what I should do from a corporation perspective

22 to make sure I'm complying with your order.  My intent is to

23 make sure we have clarity of what you want me to do and --

24    THE COURT:  Sure.  No, it's a fair question.  And I

25 wish I had a more satisfactory answer.  Look, it's the kind of

H6j1darc

1  question that is only usefully answered in practical terms, not

2  in theoretical terms.

3           MR. GITMAN:  Exactly.

4           THE COURT:  You want to know practically when you're

5  safe, when you've done enough.

6           MR. GITMAN:  Exactly.

7           THE COURT:  Sure.

8           MR. GITMAN:  I want to be able to check off the boxes.

9           THE COURT:  Exactly.

10          MR. GITMAN:  Yes.  Because that seems to be the

11 problem up to today, that I haven't been checking the boxes

12 correctly.  So going forward, I want to make sure I'm checking

13 the boxes.

14          MS. DITLOW:  I just want to clarify.  I don't want to

15 say up to today.  Mr. Gitman just said that up till today he

16 hasn't been checking the boxes correctly.  I want to clarify

17 that, because as set forth in his affidavit, we think a number

18 of the boxes have been correctly checked.  Just for the record,

19 I want to make sure to clarify that statement.

20          THE COURT:  Well, I'm glad you feel comfortable with

21 that on the record.  It doesn't alter anything.

22          MS. DITLOW:  No, I understand.

23          THE COURT:  His question is still a fair question.

24          MS. DITLOW:  Absolutely.  I understand.

25          THE COURT:  And I wish I could articulate a better

H6j1darc

1    answer.

2            Basically you will be entitled to rest, with respect

3    to the completion of any item, when that item is the same as it

4    was on Friday, May 26 -- that is to say, the plaintiffs have

5    everything that they had then restored to them now.  Now you

6    will be entitled to address --

7            MR. GITMAN:  Could it be possible for --

8            THE COURT:  Please, please.  I'm not finished.  But

9    I'll tell you that I don't answer questions that begin with the

10   word "possibly" or "if."

11           MR. GITMAN:  Right.

12           THE COURT:  Now in deciding when that has been

13   accomplished, the best and most reliable test is:  Do the

14   plaintiffs agree with you?  Basically they're not entitled to

15   have any interest in getting anything better than what they had

16   then, and if they have what they had then, they should be

17   satisfied, and they should express their satisfaction.  And I

18   think on many things they probably have, where it's clear.  On

19   the ones that they differ with you, be sure that you understand

20   what their difference of opinion with you is and evaluate it

21   sympathetically towards them.  If it's easy to remedy, remedy

22   that too.  If it's a really serious difference and you have a

23   really justifiable reason for going no further, then at your

24   own risk, wait until I can resolve it.

25           MR. GITMAN:  That's a little scary to me.

H6j1darc

| | |
|---|---|
| 1 | THE COURT:  You are at risk on not complying with -- |
| 2 | MR. GITMAN:  But I -- |
| 3 | THE COURT:  -- the standards, so you have to decide |
| 4 | that you have a justifiable reason for it.  Your lawyer has, in |
| 5 | two occasions last Friday, offered reasons which I found to be |
| 6 | thoroughly unacceptable.  They were so bad, they shouldn't have |
| 7 | been offered.  So you begin with a little suspicion against |
| 8 | you.  But I want no more than full and complete compliance with |
| 9 | May 26, and any deviation, you will have the responsibility to |
| 10 | explain so persuasively that I accept it -- |
| 11 | MS. DITLOW:  Your Honor, I -- |
| 12 | THE COURT:  -- that won't involve quibbles, |
| 13 | modifications, or reasonable constructions in your own favor |
| 14 | that nevertheless fall short of May 26. |
| 15 | MS. DITLOW:  Your Honor, and we -- |
| 16 | THE COURT:  And that -- |
| 17 | MS. DITLOW:  I apologize. |
| 18 | THE COURT:  Well, please stop. |
| 19 | MS. DITLOW:  Yes, okay. |
| 20 | THE COURT:  I'm doing the best I can to answer a fair |
| 21 | question -- |
| 22 | MS. DITLOW:  That's all right. |
| 23 | THE COURT:  -- from your client. |
| 24 | MS. DITLOW:  Yes, absolutely. |
| 25 | THE COURT:  Can I make it any clearer? |

H6j1darc

1              MR. GITMAN:  I will do my best to --

2              THE COURT:  Well, I'm sure you will.

3              MR. GITMAN:  -- to make sure everything is as it was

4       on May 26.

5              THE COURT:  That's the best thing, that's the safest

6       thing to do.

7              And let me point out further, you have an interest in

8       doing that.  It's in your own best interest long term in the

9       case if you remedy that fully.

10             MR. GITMAN:  I agree.

11             THE COURT:  You stand on better footing than if you

12      fail and prevaricate or trim or otherwise give reasons for what

13      is really falling short.

14             MR. GITMAN:  Tomorrow morning --

15             THE COURT:  You'll be better off.

16             MR. GITMAN:  Tomorrow morning, I'll get you -- I can

17      spend the day to make sure that everything is moved, okay?

18             THE COURT:  Good.

19             MR. GITMAN:  And I will communicate that to my lawyer,

20      and hopefully there is -- everybody's happy with that.

21             THE COURT:  Yes.  Ending on a really good phase is

22      pretty evident to all the neighborhood, and they will probably

23      agree with it.  They don't have any interest in wasting time

24      improving that situation.

25             MR. GITMAN:  I'm glad that you can see that this is --

H6j1darc

1            THE COURT:  Excuse me?

2            MR. GITMAN:  I'm glad you can see I'm doing this in

3    good faith.

4            THE COURT:  I have not to date seen that.

5            MR. GITMAN:  Well, you will see that I'm doing that in

6    good faith.

7            THE COURT:  That's fine.  I'm open to it.  And I saw a

8    flicker of it with respect to Channel Reply.

9            MR. GITMAN:  Thank you.

10            THE COURT:  Anything else?

11            MR. GUAGLARDI:  Judge, we would just ask the Court to

12    make sure that the line of communication between my clients,

13    the plaintiffs, including Mr. Dardashtian, and the developers

14    is not locked, impeded, or restricted in any way.  That's --

15            THE COURT:  No.  I would certainly not do that.

16    That's no responsibility of mine.  It's the responsibility of

17    yours.

18            MR. GUAGLARDI:  We will make the efforts to do that.

19            THE COURT:  Very good.  And if there are problems,

20    bring it to my attention.

21            MR. GUAGLARDI:  We will do that as well, Judge.

22            THE COURT:  I'll be here through next week.  After

23    that, take it to Part 1.

24            Okay.  Then Mr. David Gitman is removed as manager

25    pursuant to Article 8.1(b) of the operating agreement of Cooper

H6j1darc

Square and is replaced as interim successor manager by

Mr. Joseph Liebman.

          Has he, by the way, been given an option to agree to

this?  And does he agree?

          MR. GUAGLARDI:  I can only speak to my client.  This

is Mr. Dardashtian, your Honor.

          MR. DARDASHTIAN:  Your Honor, yes, he has.

          THE COURT:  You've talked to him and he agrees.

          MR. DARDASHTIAN:  Yes, I have.

          THE COURT:  And he agrees.

          MR. DARDASHTIAN:  Correct.

          THE COURT:  Okay.  Mr. Liebman of Liebman, Goldberg &

Hymowitz.  And his salary shall be $2,500 a month, to be

charged to Mr. David Gitman's account, notwithstanding the

contrary provision in another section, probably in the same

article of the operating agreement, which prevents managers

from receiving any compensation.  That shall be inactive as

affecting Mr. Liebman during the period of the interim

position.

          Let me be clear in passing that these are orders,

they're not suggestions, and they're to be complied with.  An

oral order of a federal court is just as valid as a written

order.  But they are also subject to amendments or vacation by

me at any time on due application and the opportunity of the

other party to be heard.  You may not be quite as frightened as

H6j1darc

1    you are that I will commit error to your injury, but I'm pretty

2    frightened of it.  I don't want to commit any injury on

3    anybody, and so I proceed simply subject to amendments.

4           So Mr. Gitman is not to conduct any business on behalf

5    of the plaintiffs or any of them; he is not to conduct any

6    transactions for any of the plaintiffs, or in their names, or

7    take any actions as a manager or representative of any of the

8    plaintiffs except when necessary to do so in the performance

9    and compliance with Judge Ramos's directions and the additional

10   directions given by this Court that you restore to the

11   plaintiffs everything of any nature that you transferred to

12   Channel Reply, Inc. and to return the situation and the

13   plaintiffs to the state of affairs as of May 26, 2017.  That

14   will involve, in addition to other provisions, that he comply

15   with paragraphs F, I, J, M, and N of the plaintiff's June 16,

16   2017 memorandum of law, but that does not diminish in any

17   respect his compliance with the other directions of the Court.

18   And this afternoon I'm not directing Mr. Gitman to liquidate.

19   I do direct him to return to plaintiffs from Channel Reply,

20   Inc. and the assets of any nature that he transferred to that

21   company.

22           MR. GITMAN:  That also means --

23           THE COURT:  But I'm not directing him to liquidate it

24   because I believe he deserves the credit of promptly agreeing

25   to do so as soon as the matter was raised here this afternoon.

H6j1darc

| | |
|---|---|
| 1 | And I await, perhaps optimistically, hearing on Wednesday |
| 2 | afternoon that that has been accomplished. |
| 3 | MS. DITLOW:  He has one question to clarify. |
| 4 | MR. GITMAN:  Do I need to shut down Channel Reply, |
| 5 | Inc. with -- |
| 6 | THE COURT:  "Shut down" is not a legal term. |
| 7 | Liquidate. |
| 8 | MR. GITMAN:  Dissolve. |
| 9 | THE COURT:  "Dissolve" is about the same.  The normal |
| 10 | term is "liquidate."  Terminate its existence. |
| 11 | MR. GITMAN:  Okay.  So I should dissolve the company. |
| 12 | Okay.  I will file the papers tomorrow.  I don't know how long |
| 13 | that takes. |
| 14 | THE COURT:  I leave it to you. |
| 15 | MR. GITMAN:  Okay. |
| 16 | THE COURT:  You agreed to do it, and I leave it to you |
| 17 | to accomplish it. |
| 18 | MS. DITLOW:  Your Honor, I just want to -- |
| 19 | THE COURT:  "Vaporize" would perhaps be the military |
| 20 | term. |
| 21 | MS. DITLOW:  And I think we spoke about this before. |
| 22 | When you said that Mr. Liebman is to be paid from Mr. Gitman's |
| 23 | account, I think we meant the company account as charged |
| 24 | against Mr. Gitman, correct, as opposed to Mr. Gitman's |
| 25 | personal account? |

H6j1darc

1          THE COURT:  What is your question?

2          MS. DITLOW:  Sure.  The $2,500 that's to be paid to

3     Mr. Liebman, you had said that to be paid by Mr. Gitman's

4     account.  I just want to clarify, is that to be paid from a

5     personal account of Mr. Gitman or a company account credited

6     against monies that would otherwise be paid to Mr. Gitman, just

7     so we know where the money should be coming from to pay

8     Mr. Liebman?

9          THE COURT:  It can be paid by the company in the first

10    instance.  Before any money is distributed to Mr. Gitman for

11    any reason by the company, those sums should be subtracted from

12    that distribution.

13         MS. DITLOW:  Thank you for the clarification.

14         MR. GUAGLARDI:  And your Honor, to the extent --

15    because we have no idea how much money is in the company,

16    because Channel Reply, Inc. has taken that money in, in the

17    event that there is no money in the account currently until all

18    of that money that was in Channel Reply, Inc. is transferred to

19    the plaintiff, will Mr. Gitman then be paying the 2500 a month

20    until there is sufficient funds in the company?

21         MS. DITLOW:  Your Honor, if I may, I don't think we

22    need to get to that point.  There are two other company

23    accounts --

24         MR. GUAGLARDI:  I think we do need to get to that,

25    because we want to make sure that Mr. Liebman is paid, and we

H6j1darc

```
 1        don't know if there's any money in the bank.
 2                THE COURT:  Well, don't you know if there's any money
 3        in your client's account?
 4                MR. GUAGLARDI:  That's exactly right, Judge.
 5                THE COURT:  Just pay it out of your client's accounts
 6        in the first instance.
 7                MS. DITLOW:  We submitted --
 8                MR. GUAGLARDI:  Excuse me one minute.
 9                What I'm suggesting, your Honor, is, as of May 26, all
10        of the accounts for the payment to the plaintiffs were
11        appropriated by Channel Reply, Inc., so those monies that are
12        currently in Channel Reply, Inc., under your Honor's order,
13        will need to be paid now to the plaintiffs.
14                THE COURT:  No.  It's a separate order.  All those
15        monies will be returned to your client.
16                MR. GUAGLARDI:  Thank you.
17                THE COURT:  Everything transferred to that company
18        from your client at any time is to be restored to your client.
19                MR. GUAGLARDI:  Okay.
20                THE COURT:  Even if it didn't have it on May 26.
21                MS. DITLOW:  To dissuade any concerns you have,
22        submitted with our papers today is a statement of the CSV bank
23        account, which shows in excess of $80,000, so that's why I said
24        there's not an issue of monies available to pay Mr. Liebman.
25                MR. GUAGLARDI:  I haven't seen that.
```

H6j1darc

1          MS. DITLOW:  I understand they were just delivered to

2     you, but that's why I wanted to alert you to that fact.

3          THE COURT:  Anything else?

4          MR. GUAGLARDI:  I do have one other thing, Judge.

5          THE COURT:  Sure.

6          MR. GUAGLARDI:  And I don't know if your Honor deems

7     it emergent, but we do, as far as the issues are concerned

8     today.

9          We're here, and we've been before Judge Ramos, and

10    we're here today to develop compliance with the order, and

11    there are two issues.  One is, what if there is not --

12         THE COURT:  Are you getting to them?

13         MR. GUAGLARDI:  What if there is no compliance with

14    your Honor's order today?  That's the first question.

15         And the second is, what about the counsel fees that my

16    client, the plaintiffs, have incurred as a result of developing

17    that compliance, which we now have had to be before two

18    separate federal judges to develop compliance, and both federal

19    judges have found there to be no compliance in certain

20    respects.  So my client has had to foot the bill out of his own

21    pocket, all right, to develop this compliance on behalf of

22    himself and the companies.  Mr. Gitman should be paying those

23    fees associated with that, and we want to make sure that (a) he

24    does, and (b) with respect -- and we would like to submit an

25    application to your Honor for your Honor's consideration for

H6j1darc

1    reimbursement.

2              THE COURT:  Well, you've suggested it in your briefs

3    already.

4              MR. GUAGLARDI:  Yes.  And then we're concerned,

5    because although your Honor's entering this order on the

6    record, so did Judge Ramos enter an order on the record, and

7    that wasn't complied with.  So we have a high level of concern

8    that there will be noncompliance with today's order, as there

9    was with Judge Ramos's, and we want to make sure that there is

10   sufficient deterrent effect of your Honor's order today.  And

11   we did ask for incarceration in the event of a violation of

12   your Honor's order, all right, and we did ask for a monetary

13   fine and sanctions, and we did ask for legal fees, and so far,

14   the only thing Mr. Gitman has done is shown up here today after

15   coming back from Russia and indicating that he will now comply

16   with Judge Ramos's and your Honor's order.

17             THE COURT:  He did more than indicate.  I will hold

18   him to a commitment.

19             MR. GUAGLARDI:  Right.  That remains to be seen,

20   because we understood that Judge Ramos's order was not an offer

21   or a suggestion; it was an order of the court that was not

22   complied with.  We have shown a multitude of documents,

23   including the ones that took place on Father's Day, over the

24   weekend, where the payment portals were offered back to us well

25   after the date that Judge Ramos ordered that they be returned,

H6j1darc

```
 1    and where they admitted that Channel Reply, Inc. is taking all
 2    of the money from the customers of plaintiffs.  So at this
 3    point there has been glaring admissions that they have violated
 4    the orders.  And we believe, respectfully, that we are entitled
 5    to an award of attorney's fees, number one, which just gets my
 6    client back the money to develop compliance with the orders.
 7    More importantly, what happens if he doesn't comply again?
 8            THE COURT:  Mr. Guaglardi, it will shorten our future
 9    conversations if you trust me to understand what you say the
10    first time.
11            MR. GUAGLARDI:  I apologize.  I do understand you
12    understand.
13            THE COURT:  I listen as closely as I can.  And
14    frankly, I usually don't feel differently about something the
15    third time I hear it than I do the first time.  So let's apply
16    that economy to your presentations.
17            Second, matters of relief on any of the applications
18    or situations or claims or grievances other than what I have
19    accomplished today in effecting the return to the status quo
20    are deferred until later.  I understand you each may have
21    pending claims.  Among other things, they may be offset by each
22    other and therefore not to be treated separately.  You could
23    lose the whole case on the merits, perhaps, and with that would
24    go your counsel fee claim.
25            MR. GUAGLARDI:  I understand.
```

H6j1darc

1          THE COURT:  I'm not dealing with that kind of thing at

2     this time.  I've done enough to bring the status quo back to

3     where it belongs, if my orders are carried out, which they may

4     incorporate Judge Ramos's orders, of course.  If they are not

5     carried out, the law has a panoply of penalties that can be

6     enforced to punish and to compel compliance.  Therefore, we

7     don't have to address future noncompliance.  And past

8     noncompliance you could claim, which will be addressed later,

9     like the other claims.

10          MR. GUAGLARDI:  Thank you.

11          THE COURT:  Got it?

12          MR. GUAGLARDI:  I do, your Honor.  Thank you.

13          THE COURT:  Because I usually don't like to repeat

14    what I say.  I mean it the first time.

15          See you Wednesday.

16          ALL COUNSEL:  Thank you, your Honor.

17          THE COURT:  The more interesting to do is the global

18    settlement, and I'm hearing nothing, I hope, to impede that.

19    Court procedures have to go in accordance with court rules --

20          MR. GUAGLARDI:  Thank you, your Honor.

21          THE COURT:  -- which are blasé.

22          MR. GUAGLARDI:  Your Honor, Wednesday's hearing is

23    just oral argument, right?  There's no testimony Wednesday?

24          THE COURT:  The short answer is almost never do we

25    actually take testimony on that kind of a return date.

H6j1darc

1          MR. GUAGLARDI:  That's why I just wanted to make sure.

2          THE COURT:  Yes.  I have done it, we've all done it.

3     Sometimes a question comes up in court cases; in the middle of

4     an argument, a point comes up, and the lawyers are saying

5     something isn't true, and I may say call the witness and have

6     him take the stand and testify.  I can't rule it out.

7          MR. GUAGLARDI:  Okay.  That's fine.

8          THE COURT:  But the norm is only on papers and

9     argument.  And in the nature of this case, the kind of

10    questions that are going to be argued I think are the

11    underlying merits to a great degree.  And they can be

12    accelerated.

13         (Discussion off the record)

14                          o0o

15

16

17

18

19

20

21

22

23

24

25