# COOPER SQUARE VENTURES, LLC/NDAP,LLC

## SERVICES AGREEMENT

This Agreement for Services is a binding agreement (this "*Agreement*") that is made and entered into as of March 3, 2017 (the "*Effective Date*") by and between Summit Rock Holdings LLC, a Delaware limited liability company ("*Consultant*") and the following: Cooper Square Ventures, LLC, and NDAP, LLC (dba/ Car Part Kings) (the "*Company*"). "Consultant" and "Company" herein referred to individually as a "*Party*," or collectively as the "*Parties*".

## RECITALS

WHEREAS, Company has engaged in negotiations with Buy Auto Parts (the "Buyer") concerning a contemplated sale of NDAP, LLC and/or its assets to Buyer (the "Transaction"); and

WHEREAS, the Company desires to retain Consultant to perform the services described herein with respect to negotiations with Buyer solely with reference to the Transaction, and for Consultant to perform such services on the terms and conditions described herein.

NOW THEREFORE, in consideration of the promises and mutual agreements contained herein, the Parties hereto, intending to be legally bound, agree as follows:

**Section 1.**     **Services**

1.1.    Consultant since December 1, 2015 has provided Services and shall continue to perform the following services for the Company (or its designee) solely with respect to the Buyer and solely concerning the Transaction: (i) providing strategic and financial analysis and conducting due diligence (which may include constructing financial models and managing certain aspects of the Transaction), (ii) advising the Company in connection with the sale of assets pertaining to the Transaction or the structuring of the Transaction as a merger or joint venture with Buyer, (iii) soliciting proposals from Buyer, (iv) providing advice to the Company in the negotiation process, (v) performing business development for current businesses and the sourcing of new investment opportunities for the Company as same may pertain to the Transaction, (vi) advising concerning institutionalization of the Company and the development of its processes to enable capital raising for the execution of the Transaction, and (vii) contributing toward the formalization of business development or investment processes, protocols and operating procedures as same may pertain to the Transaction (items (i) through (vii), together with other services previously provided, are collectively referred to herein as the "*Services*").

**Section 2.**     **Compensation and Consideration**

2.1.    Company hereby engages Consultant to perform the Services with Buyer solely concerning the Transaction and for no other purpose.  As compensation and in full payment and consideration of all Consultant's services rendered hereunder, Company shall pay Consultant a fee (the "Fee") solely in the event of a closing of the Transaction and solely in the event Company receives payment of the Purchase Price (as defined below).  The Fee shall be calculated as follows:

(a)    The total Fee shall equal:

$110,000.00 + (0.0025 x Purchase Price)

(b) Payment of the Fee. Consultant will receive one-third (33%) of all distributions to the Company until the total Fee (Section 2.1 (a)) is paid to Consultant, after which 100% of distributions shal be paid to the Company. Consultant will be paid no later than seven (7) days after Company's receipt of Purchase Price installments.

(c) The term "Purchase Price" shall encompass the value of (1) all consideration received or to be received by the Company pursuant to a transaction, whether such consideration is paid in cash, or debt which for purposes of calculating the "Purchase Price" shall be reduced to present value or equity securities, when received and (2) future monetary considerations payable to Company or its owners (whether prior to or post termination of this Agreement) including the earn outs when paid, royalty fees, license fees, when paid and equity ownership (or in the case of a sale of assets, the consideration received for such assets, when received and (3) to the extent not included in the Purchase Price, the value of any outstanding long-term debt of the business assumed by the investor as part of the transaction. Note, any outstanding payables greater than 90 days will be considered as long term debt if assumed by Buyer as part of the Transaction. If a Transaction involves a combination or series of installments, the Purchase Price shall be the sum of the amount paid at the closing plus the amount of the installments.

(d) In the event the Transaction does not close, for any reason or for no reason, **NO** compensation shall be due Consultant.

### Section 3. Confidentiality

3.1. *Confidentiality*. Consultant will do everything reasonably possible to preserve Company confidentiality. Company will require all potential parties and professionals to whom confidential information is provided to maintain confidentiality of all such confidential information. Consultant agrees to hold in confidence all proprietary information provided by the Company in connection with this project. Consultant agrees not to share any confidential information with persons outside of its office without the Company's consent, except that the Consultant may share the materials with the Buyer in connection with its duties, subject to Buyer agreeing to hold such confidential information in confidence. Confidential Information shall not include any such information which (i) was publicly known or made generally available prior to the time of disclosure to Consultant; (ii) becomes publicly known or made generally available after disclosure to Consultant through no wrongful action or inaction of Consultant; or (iii) is in the rightful possession of or was obtained by Consultant, without confidentiality obligations or restrictions at the time of disclosure.

### Section 4. Term and Termination

4.1. *Term*. This Agreement shall remain in effect until the submission of a letter of intent or April 14, 2017, whichever shall occur first (the "*Term*"). Any sums due consultant pursuant to Section 2.1 shall survive termination of this Agreement.

### Section 5. Intentionally Omitted

### Section 6. Miscellaneous

6.1. *Governing Law; Consent to Personal Jurisdiction*. This Agreement shall be governed by the laws of the State of New York, without regard to the conflicts of law provisions of any jurisdiction.

6.2. *Authority*. The person(s) signing this Agreement has full legal authority to bind the Company to this Agreement.

6.3. **Indemnification.** (a) Company shall indemnify and hold harmless the Consultant, its officers and employees from and against any damages, liabilities, claims, and losses, costs and expenses, but only to the extent caused by the negligent acts, errors and omissions of Company, or of those for whom the Company is legally liable related to or arising out of such engagement. Company shall defend, indemnify and hold the Consultant harmless from and against any and all liability, loss, expense, including attorneys' fee, or claims for injury or damages (each a "*Claim*") arising out of the performance of this Agreement. Expenses incurred by Consultant in defending any Claim shall be paid by the Company in

advance of the final disposition of such Claim upon receipt by the Company of an undertaking. Company will reimburse Consultant and any other party entitled to be indemnified hereunder for all expenses (including counsel fees) as they are incurred by Consultant or any such other indemnified party in connection with investigating, preparing or defending any such action or claim whether or not in connection with pending or threatened litigation in which Consultant is a party. The Company also agrees that neither Consultant shall have any liability to the Company for or in connection with such engagement.

(b) Consultant shall indemnify and hold harmless the Company, its officers and employees from and against damages, liabilities and losses, costs and expenses, but only to the extent caused by the negligent acts, errors and omissions of Consultant, or of those for whom the Consultant is legally liable, which arise out of the Consultant's performance of its services under this Agreement.

6.4. *Assignability*. This Agreement will be binding for the benefit of the Consultant's heirs, executors, assigns, administrators, and other legal representatives. There are no intended third-party beneficiaries to this Agreement, except as expressly stated. Notwithstanding anything to the contrary herein, the Company may assign this Agreement and its rights and obligations under this Agreement to any successor to all or substantially all of the Company's relevant assets, whether by merger, consolidation, reorganization, reincorporation, sale of assets or stock, or otherwise.

6.5. *Entire Agreement*. This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between the Parties. Consultant represents and warrants that he/she is not relying on any statement or representation not contained in this Agreement. To the extent any terms set forth in any exhibit or schedule conflict with the terms set forth in this Agreement, the terms of this Agreement shall control unless otherwise expressly agreed by the Parties in such exhibit or schedule. The undersigned acknowledges that the Company has received all necessary approvals, read the Agreement and received a copy and understands that this is a legal binding contract.

6.6. *Survival*. All sections of this Agreement will survive termination or expiration of this Agreement.

6.7. *Headings*. Headings are used in this Agreement for reference only and shall not be considered when interpreting this Agreement.

6.8. *Severability*. If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

6.9. *Modification, Waiver.* No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Parties. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

6.10. *Notices*. Any notice or other communication required or permitted by this Agreement to be given to a Party shall be in writing and shall be deemed given (i) if delivered personally or by commercial messenger or courier service, (ii) when sent by electronic mail or confirmed facsimile, or (iii) if mailed by U.S. registered or certified mail (return receipt requested), to the Party at the Party's address written below or at such other address as the Party may have previously specified by like notice. If by mail, delivery shall be deemed effective three business days after mailing in accordance with this section.

(a) If to Cooper Square Ventures, LLC or NDAP, LLC (dba/Car Part Kings), to:

1010 Northern Blvd, Suite 208
Great Neck, NY 11021

with a copy to:

Seligson, Rothman & Rothman
29 West 30th Street, 10th Floor
New York, NY 10001

    Attn: Jeffrey E. Rothman, Esq.

  (b)  If to Consultant, to: or unless a change in address is provided

450 East 83rd Street (Suite 15C)
New York, New York 10028

  6.11.  ***Intentionally Omitted.***

  6.12.  ***Signatures.*** This Agreement may be signed in multiple counterparts, each of which shall be deemed an original, with the same force and effectiveness as though executed in a single document.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Consulting Agreement as of the date first written above.

**SUMMIT ROCK HOLDINGS, LLC**

By: ___*Jeremy Falk*_____
Name: Jeremy Falk
Title: Authorized Signatory

**COOPER SQUARE VENTURES, LLC**

By: ___*Michael Dardashtian*_____
Name: Michael Dardashtian
Title: Member

___*David Gitman*_____
Name: David Gitman
Title: Member

**NDAP, LLC**

By: ___*Michael Dardashtian*_____
Name: Michael Dardashtian
Title: Member

___*David Gitman*_____
Name: David Gitman
Title: Member