UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE, LLC a/k/a
COOPER SQUARE VENTURES,
LLC, NDAP, LLC and CHANNELREPLY,

                              Plaintiffs,

    -against-

DAVID GITMAN, ACCEL COMMERCE, LLC,
DALVA VENTURES, LLC, KONSTANTYN
BAGAIEV, OLESKSII GLUKHAREV and
CHANNEL REPLY, INC.,

                              Defendants.

1:17 Civ.4327 ( LLS) (RWL)

-----------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL- SUMMARY JUDGMENT AND REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' RULE 56.1 STATEMENT OF MATERIAL FACTS**

Dated: October 16, 2020

**GUAGLARDI & MELITI, LLP**

Barry S. Guaglardi (BG24501)
Evan A. Ostrer (EO1099)
365 West Passaic Street, Suite 130
Rochelle Park, New Jersey 07662
(201) 947-4100

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION.................................................................................... 1

I.   THE OWNERSHIP OF THE PLAINTIFF COMPANIES
     IS AND ALWAYS HAS BEEN UNDISPUTED............. 2

II.  PLAINTIFFS' RULE 56.1 STATEMENT OF FACTS
     ARE UNDISPUTED ........................................... 3

III. ALL DISTRIBUTIONS TO THE PARTIES WERE
     WELL KNOWN TO THE PARTIES AT ALL TIMES
     AND ARE NOT DISPUTED................................. 5

IV.  DEFENDANTS' ARGUMENTS AGAINST
     PLAINTIFFS' RIGHT OF REDEMPTION UNDER
     THE CSV OPERATING AGREEMENT ARE WITHOUT
     MERIT ............................................................... 7

V.   DEFENDANTS HAVE FAILED TO RAISE A GENUINE
     ISSUE OF FACT WITH RESPECT TO DEFENDANTS'
     COUNTERCLAIMS WHICH MUST BE DISMISSED
     IN THEIR ENTIRETY............................................ 10

CONCLUSION................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

| | |
|---|---|
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) | 2 |
| Baity v. Kralik, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) | 4 |
| Celotex Corp. v. Catrett, 477 U.S. 317 (1986) | 10 |
| Davis v. Carroll, 937 F. Supp. 2d 390 (SDNY 2013) | 9 |
| Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001). | 3 |
| Howley v. Stratford, 217 F.3d 141, 155 (2d Cir. 2000) | 1 |
| Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987) | 1 |
| Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 222 (2d Cir. 2004) | 1 |
| Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155 (2d Cir. 1999) | 4, 7 |
| Washington v. City of New York, 05-CV-8884 (S.D.N.Y. June 5, 2009) | 4 |

**STATUTES**

| | |
|---|---|
| Local Rule 56.1(b), (d); Fed. R. Civ. P. 56(c) | 1, 3, 4 |
| Rule 56(c); Rule 56(e) | 1, 7, 10 |
| Rule 56(g) | 7 |

Plaintiffs Michael Dardashtian, individually and on behalf of Cooper Square, LLC a/k/a Cooper Square Ventures, LLC ("CSV"), NDAP, LLC ("NDAP") and ChannelReply (also referred to as "CR") respectfully submit this reply ("Reply") in further support of Plaintiffs' Motion for Partial Summary Judgment and Dismissal of Defendants' Counterclaims in their entirety.

## INTRODUCTION

Despite the hundreds of thousands of pages exchanged through discovery, Defendants, solely through the Declaration of their counsel ("Sim Decl") have come forward with a total of eleven (11) exhibits in opposition[1] comprised of deposition testimony (except Gitman's), documents already annexed to the Dardashtian Affidavit ("Dardashtian Aff"), and incomplete accounting records. See Fed. R. Civ. P. 56(c)(4); 56(e). Defendants' opposition is deficient, fails to properly respond to Plaintiffs' Statement of Material Facts ("SMF"), and fails to accurately cite to Dardashtian's testimony.[2]

Confronted with irrefutable evidence, Defendants have failed to provide a specific citation or even a pinpoint citation to any evidence in support of their illusory arguments. They rely primarily on Gitman's "Sham Affidavit," which contains no evidence in support of his statements contained therein, but instead contradicts Defendant Gitman's earlier Affidavits and sworn deposition testimony.[3] Defendants' opposition is consistent with Defendants' predictable strategy throughout the course of this proceeding: to throw false allegations against the wall, without proof, hoping something will stick.

---

[1] See Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 222 (2d Cir. 2004) (because the affiant was not competent, affidavit was insufficient to create a genuine issue for trial); Howley v. Stratford, 217 F.3d 141, 155 (2d Cir. 2000) (holding an affidavit about facts not based on the affiant's personal knowledge was inadmissible).

[2] In one instance, Defendants argue that Dardashtian testified he did not recall if ChannelReply's software used proprietary programming. (Def Brief p. 10). Dardashtian testified in the same line of questioning that ChannelReply contains Proprietary code (Sim Decl. **Ex. A** at p. 53).

[3] Defendant Gitman's deposition testimony in response to the relevant topics are replete with "I don't remember(s)" and "I don't recall(s)."See proposed supplemental exhibit "**151**". Even assuming arguendo that the Gitman Aff. was supported by actual evidence, any issue of fact created by the contradictions contained therein are not genuine, and therefore cannot serve as a basis on which to deny summary judgment. See Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987).

1

Plaintiffs have clearly demonstrated their entitlement to partial summary judgment as a matter of law as supported by: (a) the 148 exhibits annexed to the Affidavit of Michael Dardashtian ("Dardashtian Aff"); (b) sworn affidavits of witnesses, including the Plaintiff Companies' longtime accountant; (c) the initial findings made by this Court at the time preliminary relief was granted in Plaintiffs' favor; and importantly (d) the earlier sworn deposition testimony and damning *admissions* made by Gitman as set forth in Plaintiffs' Motion. This unrebutted evidence directly contradicts and undermines Defendants' arguments made in their Opposition. Though Plaintiffs are not required to disprove all of Defendants' Counterclaims, Plaintiffs have done that as well.

The Supreme Court has held that "[t]he mere existence of a scintilla of evidence. . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Defendants' opposition must set forth admissible evidence that is significantly probative, not merely unsubstantiated assertions lacking evidence to support it.

An examination of the evidence cited to in Defendants' Opposition (or lack thereof) reveals that there are no genuine issues of material fact, and partial summary judgment should be granted as a matter of law, and Defendants' Counterclaims must also be dismissed in their entirety.

I. **THE OWNERSHIP OF THE PLAINTIFF COMPANIES IS AND ALWAYS HAS BEEN UNDISPUTED**

Plaintiffs have demonstrated, without question, that CSV owns 100% of ChannelReply and NDAP. As substantiated by CSV's Operating Agreement, tax returns, accounting records and testimony in the record, CSV owns 100% of ChannelReply and NDAP, and Dardashtian and Gitman each own 50% of CSV. There is not a single document in the record that disputes these facts.[4]

---

[4] Incredibly, at deposition, Gitman could *not* confirm what his ownership interest is in ChannelReply (108-109:21-16; 121:12-15; 123:2-20). There is no evidence upon which a jury could find that Gitman owns anything but a 50% interest in the Plaintiff Companies.

2

In opposition, Defendants reargue their previously unsubstantiated, manufactured and illogical position that Gitman somehow owns 67.5 % of ChannelReply pursuant to a "joint venture agreement" without a single document or witness (other than himself) to substantiate this claim (Def Brief at pp. 52-54). To rebut this mountain of evidence that a 50/50 ownership relationship exists, Defendants *now* rely on a limited portion of texts sent by Bagaiev to Gitman, which states <u>that Bagaiev</u> was "promised a share" of ChannelReply. Defendants contend that this text message supports a finding that Gitman owns a 67.5% interest in ChannelReply, though Bagaiev himself denies being a part of this purported "joint venture agreement" or having an ownership interest. Bagaiev Aff. para 105. Gitman contradicts such a joint venture in no less than ten exchanges in his deposition as well.[5] (Def Brief at p. 52);

Defendants' also filed their baseless Counterclaim making this ridiculous assertion of ownership after Gitman himself <u>filed with the federal government his CSV tax form Schedule K-1</u> for each consecutive year since CSV's inception; which also confirms that Gitman and Dardashtian each own 50% of CSV, which owns 100% of ChannelReply. ChannelReply files no income tax return as it is owned by CSV who reports all of ChannelReply's income and expenses. See also, Liebman Decl. at paras 6-11.

It is respectfully submitted that Gitman is breaching his fiduciary duty to the Plaintiff Companies for merely asserting these baseless claims that he knows are a fiction. The facts are and remain undisputed that ChannelReply is owned by CSV 100% and that Gitman owns 50% of CSV.

## II.   PLAINTIFFS' RULE 56.1 STATEMENT OF FACTS ARE UNDISPUTED

"The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 74 (2d Cir. 2001). Defendants, as the non-

---

[5] See Gitman's deposition at 259, 260:1-16, Gitman admits developers had no stock options; 65-69: 1-10, Gitman does not remember telling the Court he owned 67.5% of CR, Gitman says "it's possible" CSV owns 100% of CR, Gitman admits he and Dardashtian never gave ownership of CR to third parties; 123: 1-20 Gitman does not know what interest he had in CR; 21: 11-20 Gitman says he is not an owner of CR; 108-109:1-16 Gitman thinks he "possibly" owns more than Dardashtian in CR, because that's his "belief." Proposed Ex. **151**.

3

moving party, are required to submit a response to Plaintiffs' 56.1 Statement ("SMF") by *specifically* responding to each undisputed fact, and if controverting such fact, to support their position **by citing to admissible evidence in the record**. See, Local Rule 56.1(b), (d); Fed. R. Civ. P. 56(c).

Defendants' Response to Plaintiffs' SMF ("RSMF") admits to a total of thirty-four (34) of Plaintiffs' SMF, eighteen (18) of which Defendants' initial response is "undisputed,"[6] followed by interjecting arguments and/or explanations that are non-responsive to the facts themselves, including Gitman blaming his personal attorney Umar Farooq for his own actions. See Baity v. Kralik, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that responses failed to comply with the court's local rules where " purported denials . . . improperly interject arguments and/or immaterial facts in response, often speaking past the asserted facts without specifically controverting those same facts").[7] The Court should likewise deem Plaintiffs' SMF admitted in their entirety. Washington v. City of New York, 05-CV-8884 (S.D.N.Y. June 5, 2009) (holding that a statement is taken as true if initial response is "admit").

Of Defendants' 21 purported "denials" identified in the chart below, Defendants rely almost exclusively on the accompanying "sham affidavit" of David Gitman ("Gitman Aff"), without citing to any <u>documentary</u> evidence in the record.[8] Rule 56(c), see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155 (2d Cir. 1999) (hearsay assertions that would not be admissible if testified to at trial are not competent material for a Rule 56 affidavit). Incredibly, Gitman's "sham affidavit" includes averments that contradict his earlier sworn deposition testimony and prior Affidavits to this

---

[6] RSMF 3,4, 6- supports that ChannelReply and NDAP are owned by CSV 100%; RSMF 13 supports ChannelReply is a protected trade secret; RSMF 24, 43 Gitman admits to competing with the Plaintiff Companies; RSMF 26, 35 Gitman admits to conversion; RSMF 27, 28, 31, 36 Gitman admits to misappropriation and conversion; termination of Dardashtian's access to ChannelReply, used Plaintiff Companies' funds to pay his attorney; RSMF 34 Gitman admits to the termination of Dardashtian's access to <u>personal</u> accounts; RSMF 43 Gitman admits to soliciting Plaintiff Companies' IT developers to work for Channel Reply Inc.

[7] See Defendants' RSMF at 4, 8, 17, 20, 23, 24, 25, 26, 27, 28, 29, 31, 34, 35, 36, 38, 51 and 53.

[8] See Defendants' RSMF at 5, 9, 10, 11, 12, 14, 18, 19, 21, 22, 30, 32, 33, 37, 39, 40, 41, 42, 44, 48 and 52.

Court. In other instances, Defendants simply neglect to offer a citation to any evidence *at all* contrary to the local rules. See e.g. Defendants' RSMF at 30, 37, 36, 38, 51.

| SMF# with Documents in Support | Defendants Denial Citations | **DEPOSITION CITE** |
|---|---|---|
| 5- Gitman has no proof of Disproportionate Distribution/Theft by Dardashtian- Guaglardi Decl. Ex. M, para 12 | Gitman Aff. para 112; Sim Decl. Ex. A 61: 14-22 | See Sang Decl. Ex. A at pp. 61-62: 14-10. |
| 9- CSV Owns CR 100%- Dardashtian Aff. Ex's 5b, 5c, 6, 7a, 7b; Liebman Decl. para's 2,7,9,10,11 | Gitman Aff. para's 153, 81, 82 | Gitman Dep (D1) pp. 65-68, 108, 121-123, 187-188, Gitman does not know ownership of ChannelReply pp. 108, 187-188, 271, 278; (D2) p. 47;p. 56; See also RSMF at 3. |
| 10- CSV Owns CR 100%- Dardashtian Aff. Ex. 2; Liebman Decl. at paras 2,7,9,10, 11 | Gitman Aff. paras 153, 81, 82 | Gitman Dep (D1) pp. 65-68, 108, 121, 123, 187-188, 271, 288; (D2) p. 47 Gitman does not recall ChannelReply ownership |
| 11- CSV Owns CR 100%- Bagaiev Aff. para 105, Ex. B at Section 1(e); Liebman Decl. 6, 7, 8, 9, 10, 11, CSV Operating Agreement | Gitman Aff. paras 153, 81, 82 | Gitman Dep (D1) pp. 61, 65-68, 121-123, 187-188 see also, (D2) p. 51; (D2)p. 47 Gitman does not recall if Dardashtian/Gitman owned ChannelReply 50/50 |
| 12- CR is a Protected Trade Secret/Proprietary Software- Guaglardi Decl. Ex. K at para 47; Bagaiev Aff. paras 86, 94-99; Dardashtian Aff. Exs. 6,9, 11-12, 59 | Gitman Aff. para 10 | Gitman Dep (D1) p. 231 Gitman had a duty to keep ChannelReply's information confidential; see p. 211-212; (D1) p. 227- 230, RSMF 13. |
| 14-Gitman Transferred CR to ChannelReply Inc.- Bagaiev Aff, paras 43, 56, 57, 86, 94-99; Dardashtian Aff. Exs. 11, 26 (pp 3-4), 41, 42 at Ex D "Assignment of IP and Other Assets". | Gitman Aff. para 154 | Gitman Dep (D2) p. 39- Gitman does not recall; (D2) p. 43-44 Gitman does not recall offering Bagaiev ownership in ChannelReply; (D2) p. 46 Gitman offered Bagaiev Dardashtian's shares; (D1) p. 249-250 Gitman admits unilateral action. |
| 18- Gitman and Falk Managed/Operated Accel- Dardashtian Aff. Ex. 39 | Gitman Aff. para 131 | Gitman Dep (D1) pp. 193-197, Falk was signatory on Accel's bank account |
| 19- Gitman and Falk Members Dalva- Dardashtian Aff. Ex. 39 | Gitman Aff. para 131 | Gitman Dep (D1) pp. 199-200, 219-220, Falk was an initial member of Dalva |
| 21- Gitman Wanted to Pay Falk Higher Fee- Dardashtian Aff. Ex. 24; 29a | Gitman Aff paras 127,129; Sim Decl. Ex. F | Gitman Dep (D1) pp. 167-175, 177-181, 191 |
| 22- Gitman-Falk were Members of Dalva- Dardashtian Aff. Ex. 39 | Gitman Aff. para 131 | Gitman Dep (D1) pp. 199-200, 219-220, Falk was an initial member of Dalva |
| 30- Gitman Created New Chargebee, Slack and Stripe Accounts- Guaglardi Decl. Ex. J at para 101 | NO CITE | Gitman Dep (D2) p. 22- Gitman does not recall (D2) pp. 25-30; Guaglardi Decl. Ex. J at para 101 |
| 32- Gitman Removed Dardashtian's Access to Accounts- Guaglardi Decl. Ex. J para 97 | Gitman Aff. paras 59-62 | Gitman Dep (D2) p. 22- 110, 124, Gitman does not recall; Guaglardi Decl. Ex. J para 97 |
| 33- Gitman Removed Dardashtian's Access-Dardashtian Aff. Exs. 59, 60a, 60b, 60c | Gitman Aff. paras 59-62 | Gitman Dep (D2) pp. 22, 110, 124- Gitman does not recall removing Dardashtian's access |
| 37- Gitman Removed Dardashtian's Access to Events- Dardashtian Aff. Ex. 64 | NO CITE | See Gitman Dep (D2) p. 22, Gitman does not recall removing Dardashtian's access |
| 39- Gitman Cannot Prove Unlawful Distributions- Guaglardi Decl. Ex. M para 12 | Gitman Aff. para 111; Sim Decl. Ex. A 58:19-22 | See Sang Decl. Ex. A at pp. 61-62: 14- 10, Gitman Dep (D1) pp. 251-252 |
| 40- Gitman Removed Dardashtian's access to ChannelReply Account | Gitman Aff. para 59 | Guaglardi Decl. Ex. J para 95; see also Gitman Dep (D2)p. 20, 22 Gitman does not recall removing Dardashtian's access |
| 41- Gitman Operated Separate Account for Channel Reply, Inc. Dardashtian Aff. Ex. 41 | Gitman Aff. para 89 | Gitman Dep (D1) p 124- Gitman does not remember what he did 3 years ago, 271, 278. |

| | | |
|---|---|---|
| 42- Gitman Created Channel Reply Inc. with Umar Farooq, Esq., to Compete with ChannelReply- Guaglardi Decl. Ex. J para 69 | Gitman Aff. para 89 | Gitman Dep (D1) pp 248, 271, see also D2 (19-22) |
| 48- Gitman Sent Resignation Letters to Developers- Guaglardi Decl. Ex. Q at p. 38 | Gitman Aff. para 168 | Gitman Dep (D2) pp. 128-130 Gitman does not recall; p. 134 Gitman has a "vague" recollection |
| 52- Accel Generated a Profit- Dardashtian Aff. Ex. 38 | Gitman Aff. para 169 | Gitman Dep (D1) pp. 219-225 |

Defendants, through Gitman, are completely incredible with their unending contradictions.

### III. ALL DISTRIBUTIONS TO THE PARTIES WERE WELL KNOWN TO THE PARTIES AT ALL TIMES AND ARE NOT DISPUTED

Defendants argue, again without proof, that there are facts in dispute regarding Dardashtian's alleged breach of fiduciary duty by taking "uneven distributions." (Def Brief at p. 50)[9]. In support, Defendants contend that Dardashtian *improperly* took health care benefits, one unequal 401(k) distribution, and unequal cash distributions without Gitman's knowledge and/or consent. See also Defendants RSMF at 5; Gitman Aff. para 111. It is respectfully submitted that these arguments advanced by Defendants are red herrings, and are a baseless attempt to manufacture questions of fact that do not exist.

First, Defendants' *allegation* that Dardashtian took *undisclosed* health care benefits has been disproven. Defendants *finally* admit that Gitman has had complete access to the Plaintiff Companies' QuickBooks accounts from 2013 through the present. See RSMF at 16. Annexed to Plaintiffs' motion at Dardashtian Aff., Ex. **116**, is a portion of the accounting Quickbooks' records which show that Gitman has, at all times, been aware of and had knowledge that Dardashtian received health care benefits from the Plaintiff Companies (disclosed in the tax form K-1 filed by Gitman and Dardashtian).[10] Liebman Decl. paras 6-11. Defendants conveniently omit that Gitman **also** took health

---

[9] Sim Decl at Ex. D contains "Accounting Documents" with no certification or identity of origin for pages 1-5, or the entirety of the report which appears to have been created by a "Shulman and Associates LLC." Defendants did not identify/produce Shulman and Associates LLC in this case, provide their qualifications or produce them for deposition. As stated above, counsel's reliance on selective portions of an undisclosed report does not create issues of fact.

[10] Gitman testified at deposition that he "**elected** not to take" health benefits (237:1-4); Also see, (247:8-19)

6

care benefits through CSV in 2013. See proposed Ex. "**150**" at 2013. Defendants' arguments are deceitful (if not delusional) and do not establish a breach of duty by Dardashtian.

Second, Dardashtian did not take *unequal* 401(k) distributions. Defendants rely on an "accounting report" that was suspiciously *not* annexed to Gitman's "sham affidavit," but rather the Sim Decl. contrary to Rule 56(c)(4), claiming Dardashtian took $13,500 when Gitman did not, see also Gitman Aff. at para 111. Ex. **116** demonstrates Gitman was aware of and received 401(k) distributions (Id at page 9, first entry). Dardashtian has also since pulled the Plaintiff Companies' bank statement which Gitman admittedly has access to. The bank statement from January 2014 demonstrates that both Dardashtian and Gitman each received the <u>same</u> $13,500. Proposed Exhibit **149(a)** at p. 5.

Defendants also argue that their "accounting report" shows a purported $104,000.00 discrepancy. See Gitman Aff. at para 111; Sim Decl. at **Ex. E.**, which states: "[David Gitman] provided a statement from Charge-Be that there were $447,000 of net revenue generated on the internet for Channel Reply. The QuickBooks profit and loss statements is only reporting $343,000." Id at p. 5[11]. Defendants again rely *solely* on the Sim Decl., without demonstrating the competency of the affiant. See <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 160 (2d Cir. 1999) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit). Defendants fail to identify the year of the alleged discrepancy, or produce the "statement from Charge-Be" that Gitman allegedly provided to the *author* of **Ex. E**. The annexed accounting report and email from Chargebee confirms that there was <u>no</u> discrepancy, or a single year where there was $447,000 of net revenue generated for ChannelReply. Proposed Ex. **149b**. Defendants' intentional attempt to distort the record, now with hearsay of unnamed sources and incomplete documents should form the basis for sanction under Rule 56(g).

---

[11] The author of **Ex. E** states that these dollar discrepancies a based on information "[a]ccording to DG" without the back-up documents themselves to support it. Id at p. 5.

7

Lastly, the Plaintiff Companies have been doing business since the year 2011. Defendants' argument that Dardashtian received total of $10,000 more in undisputed cash distributions than Gitman, over the course of a 9 year period that the Plaintiff Companies have existed, is *de minimus* and does not constitute a cognizable cause of action to survive this motion.[12] Defendants' arguments do not demonstrate a breach of duty or "unclean hands" by Dardashtian, and fail to demonstrate that Dardashtian received any *unauthorized* distributions, or *undisclosed* distributions to support the relief they seeks in their counterclaim(s).

### IV. DEFENDANTS' ARGUMENTS AGAINST PLAINTIFFS' RIGHT OF REDEMPTION UNDER THE CSV OPERATING AGREEMENT ARE WITHOUT MERIT

Defendants argue that summary judgment should be denied with respect to a redemption of Defendant Gitman's right, title and interests in the Plaintiff Companies, because Plaintiffs' valuation report is "unreliable." (Def Brief at p. 49). Plaintiffs' valuation report is irrelevant for purposes of determining whether Plaintiffs' have demonstrated a contractual, equitable or legal right of redemption pursuant to the CSV Operating Agreement and well-settled law.

Defendants do not cross-move to exclude Plaintiffs' expert testimony on valuation, they rather offer an *opinion*, through Defendants' *counsel* and the Gitman Aff, to suggest that Plaintiffs' valuation should be disregarded because it utilized the capitalized earnings method ("CEM") and not the discounted cash flow method ("DCF") (Def Brief at pp. 41-48). Defendants fail to provide any authority that the DCF method is the *only* applicable method with general acceptance for SaaS companies. Gitman and his counsel's <u>unqualified</u> opinion do not cure this infirmity.[14]

Contrary to *counsel's* opinion, the two valuation methodologies at issue are likely the two most frequently used valuation methods of the income approach. DCF was not employed by Plaintiffs'

---

[12] See Dardasthian Aff. at "Ex. 20i" Dardashtian reminds Gitman they agreed Dardashtian would be paid for running companies when Gitman left for Cue Connect, more than a year before the lawsuit. Gitman did not make a further issue of it until after this litigation commenced.

[14] Defendants argue that Plaintiffs' valuation fails to differentiate between SaaS companies from software development companies, yet software development companies often develop software as a service (SaaS). They are not mutually exclusive.

valuation expert, in part, because there were no apparent *significant* growth opportunity or unplanned expenses projected. (Gaskin Aff. Ex. A at pp. 18-19)[15]. Plaintiffs' expert's *opinion* that CEM would better value business interests/assets based on future estimated profits, determined by measures of earnings and cash flows that the Plaintiff Companies are expected to generate (Id).

Just as *counsel* believes that the DCF method should have been utilized, the secondary source upon which Defendants rely suggests that DCF provides greater flexibility for high-growth businesses and start-ups that are not yet profitable or when calculating damages over a predetermined period. Sim Decl. **Ex. D** at p.3. On the other hand, it can be argued that established businesses may be easier and equally reliable to apply the CEM- it is easier to explain to a judge or jury than a sophisticated discounted cash flow model would.

Plaintiffs' valuation report includes Withum's qualifications[16], foundations for their opinion, and supporting data that the employed theories and techniques have been tested and accepted in the field of accounting and business valuation. Though Defendants were afforded the same opportunity to present a qualified opinion, they did not. Defense counsel's *opinion* is inadequate to support his own analysis or to create a genuine issue of material fact.[17]

The concept of valuation, while not required by the Redemption Clause in the CSV Operating Agreement, was contemplated and agreed to by both parties to aid the Court based on the issues in this case. Defendants' subsequent neglect and failure to proceed in accordance with parties' agreement, and thereafter this Court's orders, do not permit Defendants to complain later. That ship has sailed.

---

[15] Defendants' secondary source supports Plaintiffs' reasons for not applying the DCF method See e.g. Sim Decl. Ex. D at p. 139: "Courts have often used the guideline company method when DCF could not be utilized because of the unavailability of adequate protections."

[16] See Withum's qualifications at Gaskin Aff. Ex. A, Appendix D, Appendix E (pp. 42-46)

[17] Defendants complain CEM is, in substance, unheard of in the SaaS context (Def Brief at p. 44). Even if were true, it is well settled that under Fed. R. Evid. 702 novelty is not a sufficient basis for the exclusion of a proposed expert methodology on grounds of "unreliability," it may form the basis for skepticism and caution. See e.g. Davis v. Carroll, 937 F. Supp. 2d 390 (SDNY 2013). Defendants have failed to demonstrate that the CEM is a novelty.

9

Lastly, Defendants ridiculously argue that only <u>Gitman</u> has the authority to redeem his own shares and because Joel Liebman was only appointed interim manager, Plaintiffs cannot redeem Gitman's interests. (Def Brief at pp. 21-26). Defendants' arguments present a legal fiction:[18] If only Gitman has the authority to redeem his own shares, Plaintiffs could *never* redeem should Gitman engage in any of the enumerated criteria for a non-compliant Manager in Article 11.5. Defendants' interpretation is also contrary to 11.5(f), which expressly prohibits the redeemed member from contesting the redemption closing- it <u>only</u> permits the redeemed member to contest the purchase price for his redeemed shares.

The appointment of an interim manager also does not render provisions of the CSV Operating Agreement inapplicable. Gitman's *interim* removal by this Court was to enable the Plaintiff Companies to proceed in orderly fashion, not to *gridlock* the Plaintiff Companies from complying with the CSV Operating Agreements. Even if Gitman was not removed as manager, Plaintiffs would *still* have the authority to redeem Gitman's interests upon a determination by a Manager of any of the enumerated criteria set forth in Article 11. 5, see also 11.5(B)(x). The parties further stipulated to await an adjudication of the instant motion as this matter is currently before a Court. See Guaglardi Decl. **Ex. P**.

## V. DEFENDANTS HAVE FAILED TO RAISE A GENUINE ISSUE OF FACT WITH RESPECT TO DEFENDANTS' COUNTERCLAIMS WHICH MUST BE DISMISSED IN THEIR ENTIRETY

Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c). Notably missing from **Point VII** is a <u>single</u> citation by Defendants to any evidence in the record for these counterclaims to survive. (Def Brief at pp. 49-52). Bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (non-moving party failed to make a

---

[18] See Plaintiffs' Memo of Law at pp. 40-41.

sufficient showing of an essential element of its case with respect to which it has a burden of proof at trial). Defendants remaining baseless assertions are addressed briefly herein:

Defendants argue, without proof, that Yotpo and ChannelReply are in "related businesses" and therefore Dardashtian has breached his fiduciary duty to Gitman. Defendants' argument is *bizarre*, as it is Defendants, not Plaintiffs, who claim that they are permitted to compete with the Plaintiff Companies in this case.[19] (Def Brief p. 51). Plaintiffs have demonstrated that Yotpo and ChannelReply are not competitors, and cannot be competitors for they share the same customers. Dardashtian Aff. para 30 (and exhibits identified therein). Plaintiffs have disproven Defendants' claim with actual evidence, while Defendants continue to rely solely on Gitman's unsubstantiated allegations.

Lastly, Defendants argue that Dardashtian has a "conflict of interest" based yet again "upon information and belief" that "Dardashtian sought to divert resources from established ChannelReply product lines." (Def Brief p. 51). It is respectfully submitted that this litigation is long past the "information and belief" stage.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' moving papers, it is respectfully requested that this Honorable Court grant Plaintiffs' motion for partial summary judgment in its entirety, with dismissal of Defendants' Counterclaims and for such other relief as this Court deems just and proper.

Dated: October 16, 2020

Evan Ostrer (EO1099)
**Guaglardi & Meliti, LLP**
*Attorneys for Plaintiffs*
365 West Passaic Street, Suite 130
Rochelle Park, New Jersey 07662
(201) 947-4100

---

[19] See e.g. Defendants' Amended Counterclaim at Count 7 (paras 128-130), seeking declaratory judgment permitting Gitman to compete against CSV, NDAP and ChannelReply.

11