**GUAGLARDI & MELITI, L.L.P.**

*Attorneys At Law*
*A Limited Liability Partnership*

| | | |
|---|---|---|
| BARRY S. GUAGLARDI ▲<br>MICHAEL P. MELITI ▲ | 365 WEST PASSAIC STREET, SUITE 130<br>ROCHELLE PARK, NJ 07662<br>TELEPHONE: 201-947-4100<br>FACSIMILE: 201-947-1010<br>FACSIMILE: 201-843-5302 | JASON S. NUNNERMACKER ♦<br>FRANCES OLIVERI ▲<br>KRISTEN E. SCHREIB ▲<br>EVAN A. OSTRER ▲<br>MYLES M. MISSIRIAN ♦ |
| | | ♦ NJ BAR<br>▲ NJ & NY BAR |
| | 111 MAIN STREET<br>P.O. BOX 509<br>CHESTER, NY 10918<br>TELEPHONE: 845-576-0600<br>FACSIMILE: 845-576-0601 | |
| **Via ECF** | DIRECT DIAL: 201-374-9092<br>EOSTRER@ADGMLAW.COM<br><br>WEBSITE: WWW.ADGMLAW.COM | October 16, 2020 |

**Dardasthian et al v. Gitman et al.: 17-cv-4327**

Dear Judge Lehrburger,

With the Court's permission, kindly accept this correspondence in accordance with Your Honor's Order of October 14, 2020, requiring Plaintiffs to specify why the proposed three (3) supplemental exhibits are relevant to Plaintiffs' summary judgment arguments. While Plaintiffs continue to maintain that their pending motion eliminates all genuine issues of material fact, the relevant portions of the proposed three (3) exhibits below are relevant to some of the improper claims advanced in Defendants' opposition papers.

**Proposed Supplemental Exs 149 and 150**

Defendants argue that genuine issues of fact exist regarding alleged "uneven distributions" received by Mr. Dardashtian ("Dardashtian") from Plaintiff Companies, which Defendants' contend were taken unlawfully and/or without Mr. Gitman's ("Gitman") prior knowledge and/or consent (Gitman Aff. at paras 90-112. 148; Sim Decl. **Ex. E**). Defendants' alleged "uneven distributions" are: (a) a 401k distribution in the amount of $13,500 to Dardashtian that Gitman claims he did **not** receive a similar amount; (b) a revenue discrepancy for ChannelReply ("CR") in the amount of $104,000 that Gitman claims was not reflected in the Plaintiff Companies' QuickBooks; (c) health benefits taken by Dardashtian without Gitman's knowledge and/or consent; and (d) an aggregate $10,000.00 in draw payments to Dardashtian without a similar draw to Gitman (Id).[1]

**Alleged Unequal 401(k) Distribution**: Plaintiffs' proposed **Ex.149a** is the January 2014 bank statement from the Plaintiff Companies' Bank of America account. **Ex. 149(a)** is relevant as it reflects Gitman received the **same** $13,500.00 401k distribution that Mr. Dardashtian received. See Proposed Ex. **149a** at p.5.

**Alleged CR Revenue Discrepancy**: Plaintiffs' proposed **Ex.149b** is (a) an email dated 10/8/20 from Plaintiffs' payment portal vendor, Chargebee ("Chargebee Email"), to Dardashtian, and (b) Plaintiff Companies' monthly profit and loss statement for the period 1/2017 through 12/2019

---

[1] The $10,000 draw is not addressed herein as it was fully briefed in Plaintiffs' Motion, see also Dardashtian Aff. paras 28, 37; Ex. 20(i).

1

("Monthly P & L"), which are relevant as they each confirm that there is no "revenue" discrepancy for CR. Specifically, Defendants claim that their partial "accounting report"[2] somehow demonstrates that "Chargebee provided net revenue for ChannelReply in the amount of $447,000, while QuickBooks profit and loss statements only reported $343,000," which is unsubstantiated. See Gitman Aff. para 111. Dardashtian has since retrieved the Monthly P & L and Chargebee Email, each of which confirm that from the inception of the Plaintiff Companies' use of Chargebee through the present date, there has never been revenue sales in the amount of $447,000 in any year. See proposed **Ex.149b** at p.1. Defendants' alleged "discrepancies" are inaccurate and are being offered simply to attempt to create an issue of fact that does not exist.

**Alleged Health Benefits Without Gitman's Knowledge or Consent**: Plaintiffs' proposed **Ex. 150**, the Plaintiff Companies' tax form K-1's for Gitman and Dardashtian, refute Gitman's allegation that Dardashtian received health benefits without Gitman's prior knowledge or consent. See Gitman Aff. 103, 148. Proposed **Ex. 150** also demonstrates that Gitman received the **same** health benefits in the year 2013 as Dardashtian. **Ex. 150** further confirms that Gitman has, at all times, had access to and knowledge of all income, deductions and credits to Gitman and Dardashtian.

**CR Ownership**: While Plaintiffs maintain that CR's 50/50 ownership is undisputed, the K-1's attached to CSV's filed tax returns, which include all of CR's income and expenses, and which are provided to Gitman and Dardashtian annually, confirm Gitman and Dardashtian's 50/50 ownership and interest in CSV and CR. See Schedule K-1's at **Ex. 150**.

**Proposed Supplemental Exhibit 151**
*Defendant David Gitman's Deposition Transcript*

To the extent that this Court were to find that the unsubstantiated assertions contained in the Gitman Aff. raise any questions of fact, it is respectfully submitted that a review of Gitman's sworn deposition testimony is relevant to the determination as to whether the Gitman Aff should be considered at all for purposes of Plaintiffs' Motion.

In the Second Circuit, "a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987)." See also Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 43 (2d Cir. 2000) (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact). An affidavit may not be used to "escape summary judgment only to permit [the nonmoving party] to modify and contradict himself at trial." (Id at 43).

Defendants have submitted a 172 paragraph affidavit of David Gitman ("Gitman Aff."), which substantially contradicts his prior sworn deposition testimony. The Gitman Aff is also *primarily* relied upon by Defendants to support each denial in Defendants' Response to Plaintiffs'

---

[2] Defendants "accounting report" at Sim Decl. **Ex. E** is unreliable and contains a portion of an Appendix of what appears to be a report prepared by Shulman Associates, LLC (Shulman). The author of **Ex. E** also relies on "information according to DG" without documentary evidence in support. (Id at p. 5).

56.1 Statement of Facts. Even assuming arguendo that the Gitman Aff. had support, any issue of fact created by the contradictions contained therein are not genuine, and therefore cannot serve as a basis on which to deny summary judgment. A review of Gitman's deposition testimony confirms that his testimony was filled with "I don't recall(s)", "I don't remember(s)" and "I don't know(s)" on the same subjects contained in the Gitman Aff. Several examples are provided below.

The Gitman Aff. makes factual assertions concerning NDAP at paragraphs 20-65, from its creation, his work for NDAP, hiring the Developers, and that Dardashtian was negligent, and interfered with the sale of NDAP (paras 20-65). At deposition, Gitman's responses to these areas of inquiry were markedly different that his Affidavit. Mr. Gitman (1) could not remember "what was going on" in the year 2015 (See Proposed Ex. "**150**" at 86:12-14); (2) could not recall if NDAP hired Bagaiev (104:11-13); (3) could not recall Bagaiev's relationship with NDAP as of the year 2016 (112:17-22), (4) could not recall whether it was Dardashtian who brought the NDAP buyer to the table (234:13-19), (5) could not recall if Gitman removed money from the Bank of America NDAP account (D2 17-18:21-1); (6) testified that Mike was "exemplary" in protecting Gitman and Dardashtian **from** Falk in the NDAP deal (179:11-12)[3]; (7) could not recall who the members of Accel Commerce were (183:14-16); (8) could not remember the Falk Agreement but could recall that Mike was "100 percent correct" about how Dardashtian "handled" Falk (180:12-15).

The Gitman Aff. makes reference to "uneven distributions" at paras 90-112. At deposition, Plaintiffs could not obtain answers to these areas of inquiry. Gitman did not know how much in health benefits Dardashtian received, but confirmed that Gitman "elected" not to take health benefits himself (236-237:23-4); Gitman could not name specific "improprieties" committed by Dardashtian (250-251: 18-8); Gitman bases his claims on a reconciliation prepared by Mary Faith Andan, but was unable to state any specific examples (Id at 252:5-9).

The Gitman Aff. makes reference to the ChannelReply Business at paras 66-89, including claims that Dardashtian mismanaged CR accounts with customers (para 75-76); Gitman created Channel Reply, Inc. out of necessity (para 153); CR is not owned by CSV 100% (paras 80-81). At deposition, Gitman could not recall if Channel Reply, Inc. was Gitman's company (248:10-15); Gitman could not recall if CR had customers in the year 2015 (100:12-14); Gitman could not confirm his own ownership interest in CR (108-109:21-16); Gitman did not know in what capacity he owned CR (123:2-12); he could not recall what his ownership interest was in CRbefore he incorporated Channel Reply, Inc. (123:16-20); could not recall if Bagaiev worked on CRin 2016 (117:5-6).

For these reasons, it is respectfully requested that this Court consider the accompanying proposed **Exs. 149-151** in connection with the pending motion.

Respectfully submitted,

Evan Ostrer

---

[3] The Gitman Aff even states that Gitman made a withdrawal from the bank account of the Company to "prepare for the NDAP sale". See Gitman Aff. para 135.

3