UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MICHAEL DARDASHTIAN, individually and
on behalf of COOPER SQUARE VENTURES, LLC
NDAP, LLC and CHANNEL REPLY,

                                Plaintiffs,           1:17 Civ.4327 (LLS)

      -against-

DAVID GITMAN, ACCEL COMMERCE, LLC,
DALVA VENTURES, LLC, KONSTANTYN
BAGAIEV, OLESKII GLUKHAREV
and CHANNEL REPLY, INC.,

                                Defendants.
-------------------------------------------------------------------X

## DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATION

                                                    Respectfully submitted,

                                                    /s/ Sang J Sim_____
                                                    SIM & DEPAOLA, LLP
                                                    By: Sang J. Sim, Esq
                                                    Attorneys for Defendants
                                                    42-40 Bell Blvd. Suite 201
                                                    Bayside, New York 11361
                                                    (718) 281-0400

Pursuant to 28 U.S.C. 636(b)(1) and Rule 72 to the Local Rules, Defendants, David Gitman, Accel Commerce, LLC, Dalva Ventures, LLC and Channel Reply, Inc. respectfully make the following objections to the Report and Recommendation entered in this matter on February 16, 2021 (hereinafter referred to as "Report"). *See* Doc. 209.

This Court should decline to follow the Report since the Reports makes numerous determinations with respect to issues of fact that is exclusively reserved for the trier of facts. The Report disregards factual disputes and makes factual determinations after improperly weighing the factual issues by giving deference to the movant with respect to the issues that are present in this case.

## LEGAL STANDARD

This Court's review is *de novo. See* 28 U.S.C. 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"),

## OBJECTIONS

### I. TRIABLE ISSUES OF FACT EXIST AS TO GITMAN'S ALLEGED MISCONDUCT THAT MUST BE RESERVED FOR THE TRIER OF FACT TO DECIDE

The Report states that Gitman indisputably engaged in willful and serious misconduct that merits redemption. However, the Report, in making this determination, made factual determinations that is reserved for the trier of facts and improperly gave deference to the movant on this summary judgment motion.

As the Report correctly points out, the main crux of Plaintiffs' motion for summary judgment seeks to redeem David Gitman's interest in CSV. The Report recommends that this Court redeem David Gitman's interest in CSV by the grant of summary judgment.

However, the Report ignores Defendants' submissions that raised triable issues of fact. Further, the Report also resolved factual issues in favor of the movant as opposed to resolving all factual disputes by giving deference to the nonmovant in the case, namely the Defendants.

David Gitman provided that, for years, Michael Dardashtian took took uneven distributions from CSV in violation of the Operating Agreement, which was not authorized or consented to by David Gitman. Further, Michael Dardashtian had a history on reneging on agreements and promises he made over the years, which included granting equity to developers who assisted in developing the business over the years as well as promises and agreements he made with David Gitman with respect to ownership percentages in regard to Channel Reply. Thus, there is an issue of fact as to whether an agreement existed with respect to the disputed ownership of Channel Reply. This is a credibility issue that must be determined by a trier of fact and thus, summary judgment is inappropriate since this involves an issue that must be decided by the trier of facts. As set forth in more detail below, it is submitted that this case is rife with credibility issues that would warrant denial of summary judgment.

Gitman alleges that he was tasked with completing the due diligence with respect to the NDAP sale. In order to effectuate the sale, they were required to separate out the accounts of CSV as Michael Dardashtian knew. In order to complete the due diligence to go forward with the NDAP sale, David Gitman undertook the segregation of accounts, business and accounts of CSV to facilitate the NDAP sale. In fact, when David Gitman transferred the funds, he advised

3

Dardashtian that it was his intention to hold the money until an audit is completed. It was not his intention to deprive Dardashtian of his ownership rights of Channel Reply or to take the monies.

It is clear that Gitman alleges that there was an agreement by which CSV would own 50% of Channel Reply while the remaining ownership percentages would belong to Gitman and the two developers.

The Report weighed the credibility of evidence in reaching its findings. It is respectfully submitted that this is improper. For instance, the Report provides that "Gitman's attempt to justify his actions as protecting CSV and ChannelReply rather than harming them are without any evidentiary basis. However, David Gitman provided in his affidavit that he was tasked with preparing the NDAP sales. As part of the sales of NDAP, he was required to separate the businesses being held by CSV. This meant separating our the NDAP business with the other businesses held by CSV, including ChannelReply and Plumburs in order to facilitate the transfer of NDAP cleanly. In this respect, the parties knew about the need to separate out the business of ChannelReply with the NDAP business. For this reason, Michael Dardashtian formed ChannelReply LLC and even prepared an operating agreement. However, since the proposed operating agreement did not comport with their oral agreement, David Gitman refused to sign it. Further, David Gitman discovered an uneven distribution made by Michael Dardashtian. In addition, David Gitman discovered that Michael Dardashtian paid for his health insurance through the company when this was never agreed by the parties.

As a result, David Gitman, through the advice of counsel, formed ChannelReply Inc. and proceeded to spin off ChannelReply into that entity. David Gitman provided that he did not intend to secret the money for his own use. Rather, David Gitman made it clear to Michael Dardashtian that he intended to hold the money aside until an audit could be completed. There

4

were numerous emails that supports this assertion. As a nonmovant, David Gitman's version of events should have been afforded deference. The Report does the opposite by giving deference to the movant.

The record is clear that both Dardashtian and Gitman knew about the need to separate the ChannelReply business from CSV. At the very least, this is a triable issue of fact and deference should have been given to the nonmovant. Since ChannelReply business had to be separated, the facts of the case demonstrate that they formed ChannelReply LLC. Further, Michael Dardashtian even drafted an operating agreement for ChannelReply LLC because they both knew that they had to separate the business of ChannelReply with CSV. However, David Gitman refused to sign the newly drafted operating agreement since David Gitman provides in his duly notarized affidavit that the proposed operating agreement did not set forth their oral agreement by which David Gitman would be allocated a greater share and the developers would be given equity interests. The promise to give 5% equity was confirmed by Mr. Bagaeiv in his affidavit, which is defective since it was not properly notarized and thus, should have been inadmissible. Despite this fact, the Report accepts the movant's assertion that there was no oral agreement and dismisses the promises that were made to Mr. Bagaiev that at the very least, provides support to David Gitman's version of the facts.

Further, the Report provides that David Gitman transferred funds into a new bank account that caused the CSV account to be overdrawn and drove up the companies' debt. However, David Gitman provided in his affidavit that the alleged charges were recurring expenses that were set up for automatic payments prior to the transfer of funds. David Gitman did not increase any debts of the company. At the very least, this is an issue of fact in which the

nonmovant, defendant should be afforded deference. However, the Report resolves factual issues in favor of the movant.

The Report continues to give deference to the movant and makes improper factual findings. For instance, with respect to the password accounts, David Gitman, in preparation for the sale of NDAP assets undertook completing the due diligence on behalf of the company. He hired Umar Farooq to provide legal counsel with respect to the sale of NDAP, who advised him that these were proper under the circumstances of the case. Further, David Gitman clearly sent an email demonstrating that he did not intend to keep the funds. Rather, he sought an audit of the company or an offset for the uneven distributions that Dardashtian took from the company. Dardashtian even admitted that he took uneven distributions. Further, the quickbook transaction statement submitted by the Plaintiffs in support of their summary judgment and attached as Sim Declaration Exhibit H demonstrates that Dardashtian did in fact take uneven distributions from CSV in violation of the CSV Operating Agreement. Davit Gitman provided that the goal was to continue to run Channel Reply but not enable access to the money until an audit was completed. In this respect, it is clear that the parties intended to spin off Channel Reply since Dardashtian even formed Channel Reply LLC. Obviously, he knew that Channel Reply had to be spinned off into another entity separate from CSV. Rather than utilizing Channel Reply LLC, David Gitman utilized Channel Reply Inc.

Further, David Gitman had to segregate all technology accounts and subscriptions attributable to the Channel Reply business away from NDAP. Guaglardi Dec. Exhibit J ¶68 This was a fact that Dardashtian clearly knew since David Gitman had texted him advising him of the need to spin-off the assets of CSV. David Gitman did not intend to take the Channel Reply

6

business for himself.  Despite this issue of fact, the Report sets to demonize David Gitman by resolving issues of fact by ignoring David Gitman version of the events that occurred.

David Gitman spun off Channel Reply and sought to enforce the agreement he had with Dardashtian albeit that he spun off the ChannelReply business into a newly formed entity that he created alone.  However, it was never David Gitman's intention to keep the business or the assets entirety for himself to the detriment of CSV or Michael Dardashtian.  Rather, David Gitman found evidence that Michael Dardashtian took uneven distributions, including taking health benefits that was never consented to.  David Gitman sought an auditing by which Michael Dardashtian refused.  This was the primer for why David Gitman did what he did.  At the very least, this raises an issue of fact that David Gitman's actions were not willful and he never intended to benefit himself solely but did what he believed was right to fulfill the oral agreement that David Gitman asserts existed.  It is certain that this issue goes to the credibility of the parties and thus, cannot be decided by summary judgment.

Contrary to the findings in the Report, it is respectfully submitted that there are triable issues of fact that precludes summary judgment as a matter of law as the Plaitniffs's: (i) Breach of Fiduciary Claim (Count Two); (ii) Contractual Breach of CSV Operating Agreement (Count Seven); and (iii) Redemption (Count Twenty);

. The affidavit submitted by David Gitman in opposition to Plaintiffs' summary judgment motion raises issues of fact that also provides sufficient reasons to justify David Gitman's actions and the reasons why he did what he did.  The Report completely discredits David Gitman's affidavit rather than giving reasonable deference to David Gitman's affidavit as the nonmovant in this summary judgment motion.

## II. THERE ARE TRIABLE ISSUES OF FACT TO PRECLUDE SUMMARY JUDGMENT AS TO COUNTS FIVE, TEN, TWELVE, EIGHTEEN AND NINETEEN

The Plaintiffs seek the grant of summary judgment with respect to Counts 5, 10, 12, 18 and 19. However, it is submitted that there are triable issues of fact that preclude summary judgment relief for the Plaintiffs as a matter of law.

The Report granted Plaintiffs summary judgment on Counts 5, 12, 18 and 19 despite the fact that there are triable issues of fact. The Plaintiffs claim that David Gitman took trade secrets, including proprietary software and confidential information from Channel Reply. However, as a threshold matter, the ownership of Channel Reply is being contested in this case and David Gitman has raised issues of fact as to the ownership of ChannelReply. Further, it is submitted that there are also questions of fact with respect to whether the software was a trade secret. During the purported oral arguments in this case, the court basically conducted a evidentiary hearing as to the facts surrounding the software. The court sought clarification as to whether the software was built on open-source applications. The court asked the Defendants as to the nature of the open sourcing for the software, The fact that the court had to enquire demonstrates that the Plaintiffs did not meet their prima facie burden on this issue since the court had questions regarding the software. Further, the Report completely ignores the fact that Plaintiffs' valuation expert, Ms. Gaskin, noted that she spoke with Michael Dardashtian who advised her that the software was easily duplicated and thus, had no value. This fact alone raises issues of fact that precludes summary judgment on Counts 5, 12, 18 and 19.

Further, the Plaintiffs seek summary judgment on their claim for unfair competition. However, it is submitted that the Defendants never misappropriated any trade secrets that belonged exclusively to Plaintiffs. Rather, as David Gitman submitted an affidavit that explains

8

that the ownership structure of Channel Reply is 50% owned by CSV, 42.5% owned individually by David Gitman, and the remaining 7.5% by the two developers. David Gitman swears000 that CSV owned 50% of Channel Reply and he acknowledged it from the beginning. He never sought to undercut or to displace CSV's ownership rights in Channel Reply. Rather, David Gitman sought to enforce his rights under the agreement he had with Michael Dardashtian. At the very least, this is a triable issue of fact.

The Defendants did not misappropriate any assets. Rather, as David Gitman has always maintained, Channel Reply business needed to be split off from CSV due to the NDAP sale. Dardashtian was fully aware of this need to split off the various businesses in order to separate NDAP assets. Further, Channel Reply is not owned solely by CSV. Rather, CSV only owns 50% of Channel Reply and the remaining 50% is owned by Gitman and the two developers. Moreover, David Gitman, with Dardashtian's knowledge, undertook to split-off the business. Channel Reply Inc. was not formed to compete with Channel Reply but to continue the business as per the agreement between Dardashtian and Gitman. At the very least, this issue as to the ownership structure of Channel Reply must be resolved prior to any other determination can be made in the case. Since the resolution of this issue requires resolving credibility issues, this summary judgment should be denied in its entirety. This is a triable issue of fact that must preclude summary judgment that the Report ignores.

The Plaintiffs assert that it is undisputed that Gitman took the funds, software, doe, electronic accounts, proprietary data, assets, trade secrets, tradename, customer lists and customers with him. However, other than making conclusory assertions, the Plaintiffs have failed to demonstrate entitlement to summary judgment on this issue. In this respect, Plaintiffs have failed to identity what electronic accounts Gitman took with him. Gitman has stated that he

was required to separate out the accounts in order to effectuate the sale of NDAP. As such, accounts were changed to effectuate this condition precedent to the sale. Other than making a conclusory and general allegation that Gitman took everything, David Gitman disputes this allegation and thus, a triable issue of fact exists to preclude summary judgment as a matter of law.

The Plaintiffs allege that Defendants stole, fraudulently used, possessed and misappropriated Channel Reply's trade secrets and confidential information to form and maintain a competing business operation to CSV and Channel Reply. However, this certainly is not the case.

As set forth by David Gitman, he was tasked to complete the due diligence for the sale of NDAP assets to Meridien. As a result, he was obligated to segregate and separate the various businesses conducted through CSV. This task proved challenging because Dardashtian commingling of accounts among various businesses conducted through CSV. Further, David Gitman provides that there was an agreement between Gitman and Dardashtian regarding the ownership of Channel Reply business. In this respect, it was agreed that David Gitman and the two developers would cumulative own 50% of Channel Reply while CSV would own the other 50% of the Channel Reply business. As David Gitman provided, without this agreement, David Gitman would have been free to develop this business outside of CSV since he was the creator of Channel Reply. It was always agreed that Channel Reply would be operated through a separate entity. For this reason, Dardashtian formed Channel Reply LLC. However, upon formation of Channel Reply LLC, Dardashtian created the operating agreement. The operating agreement clearly demonstrated to David Gitman that Dardashtian intended to renege on his verbal agreement regarding the ownership structure. For this reason, David Gitman refused to execute

the Channel Reply LLC operating agreement because this was not the agreement that was agreed to by the parties. Further, David Gitman was obligated to separate the business of Channel Reply. As such, David Gitman created Channel Reply Inc. to effectuate the separation of the Channel Reply business from CSV and NDAP to effectuate the sale of NDAP. Guaglardi Declaration Exhibit J ¶64. It was never David Gitman's intent to start a competing business with CSV. Rather, this was a spin-off in order to effectuate the agreed to ownership structure and in preparation for the sale of NDAP. Guaglardi Declaration Exhibit J ¶64. It can be hardly said that David Gitman took any trade secrets from CSV since CSV did not have exclusive ownership rights to Channel Reply. Rather, CSV only owned 50% of Channel Reply.

Further, David Gitman has clearly demonstrated that he never intended to start a new company but rather, a continuation of the business through a split off to reflect the ownership structure that had been agreed to between the parties. Certainly, Dardashtian and Gitman differs with respect to this agreement and thus, is a credibility issue that must be resolved by the trier of facts. Therefore, it is respectfully submitted that the Plaintiffs have failed to meet their prima facie burden by eliminating all triable issues of fact as a matter of law.

Moreover, the Plaintiffs have failed to demonstrate that they suffered any damages on these claims simply because they did not suffer any damages since the Court ordered maintenance of the status quo during the pendency of this litigation. Thus, David Gitman never operated any competing business.

In addition, it is also clear that Ms. Gaskin testified that she believed, based on her discussion with Dardashtian that the Channel Reply software could be easily duplicated and for this reason, attributed no value to the intellectual property to support her low and undervalued opinion as to the value of the Channel Reply business. Now, it appears that the Plaintiffs are

11

arguing that the intellectual property has an enormous value when it suits their argument. Notwithstanding these contradictory positions, it is submitted that the issue is rife with triable issues that precludes summary judgment as a matter of law.

### III. DEFENDANTS OBJECT TO THE REPORT'S GRANT OF SUMMARY JUDGMENT ON THE CONVERSION CLAIM

In this case, Gitman alleges that he was tasked with completing the due diligence with respect to the NDAP sale. In order to effectuate the sale, they were required to separate out the accounts of CSV as Michael Dardashtian knew. In order to complete the due diligence to go forward with the NDAP sale, David Gitman undertook the segregation of accounts, business and accounts of CSV to facilitate the NDAP sale. In fact, when David Gitman transferred the funds, he advised Dardashtian that it was his intention to hold the money until an audit is completed. It was not his intention to deprive Dardashtian of his ownership rights of Channel Reply or to take the monies.

Further, David Gitman alleges that there was an agreement by which CSV would own 50% of Channel Reply while the remaining ownership percentages would belong to Gitman and the two developers. As such, there is an issue of fact as to who had the superior right to ChannelReply. Further, the Report continues to note that David Gitman transferred the money into his account when in fact, he transferred it to ChannelReply Inc. and David Gitman did advise that the money would be secured until an audit was completed. As such, this demonstrates that David Gitman never intended to take the money for himself. At the very least, there are triable issues of fact to preclude summary judgment as a matter of law.

It is noteworthy that it is undisputed that Michael Dardashtian took an uneven distribution in the amount of $10,000 from CSV when the business was struggling. The Report takes a position that since Michael Dardashtian agreed to provide a credit to David Gitman, all

can be forgiven. However, this was an event that triggered the discourse between Michael Dardashtian

## IV. DEFENDANTS COUNTER-CLAIMS SHOULD NOT BE DISMISSED

It is understood that David Gitman asserted a counterclaim for declaratory judgment that CSV only owns 50% of Channel Reply while the remaining 50% belongs to the two developers and David Gitman individually. In support of its summary judgment, the Plaintiffs makes conclusory assertion that it is unrefuted that CSV owns 100% of Channel Reply. However, this point is not undisputed since David Gitman disputes this fact. This is a credibility issue that must be resolved by the trier of fact and cannot be decided as a matter of law.

In support of its motion, the Plaintiffs attach an affidavit from one of the developers, Bagaiev. However, it is submitted that there are issues with the credibility of Bagaiev's affidavit since he was rehired by the company for more money. He continues to work for CSV under Michael Dardashtian. Further, he is also a named defendant in this case. Michael Dardashtian, when asked if he intended to dismiss his claims against Bagaiev, Dardashtian testified that he will wait and see how the case proceeds before deciding to release Bagaiev. Obviously, this is akin to a gun to Bagaiev's head. Thus, the veracity of his affidavit is in doubt. Further, the affidavit is not in admissible form. At the very least, this is a credibility issue that must be determined by a trier of fact.

Clearly, Bagaiev did indicate that he was promised equity or shares by Michael Dardashtian. As such, this directly contradicts the assertions he is making in his affidavit, clearly because Dardashtian holds the threat of litigation over his head and he is being paid by CSV with Dardashtian in control. Further, there is no indication that Bagaiev even provided that he would

be willing to appear in Court to testify as to the assertions he made in his affidavit.  Further, it is worth noting that the Bagaiev's affidavit is not properly authenticated by a notary.

It is also clear that David Gitman provided that there was an agreement that Channel Reply would be a new venture. As was done in the past, CSV would be a participant in a joint venture in which it was not a 100 percent owner. In fact, when CSV started the joint venture, it was a 49% participant.  Likewise, Channel Reply would be a joint venture by which CSV would own 50% and David Gitman would own 42.5% individually and the two developers would own the remaining 7.5%.  Following the formation of the spin off entity, Channel Reply Inc., David Gitman and Bagaiev executed a Stock Purchase Agreement to provide Bagaiev with 5% of the equity in Channel Reply he was promised. Sim Declaration Exhibit J.

Thus, this is an issue of fact since there is a discrepancy between Dardashtian and Gitman's version.  As a nonmovant, Gitman's version must be given deference, which would result in denial of summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Report should not be followed for the reasons set forth above.

Dated: Bayside, New York
February 26, 2021

                      Yours,

                      /s/ Sang J Sim
                      **SIM & DEPAOLA, LLP**
                      BY: Sang J. Sim, Esq.
                      *Attorneys for Defendant(s)*
                      42-40 Bell Boulevard Suite 201
                      Bayside, New York 11361
                      (718) 281-0400

TO:    Guaglardi & Meliti, LLC
        *Attorneys for Plaintiffs*
        365 W Passaic St #130
        Rochelle Park, NJ 07662
        bguaglardi@adgmlaw.com
        Tel: (201) 947-4100
        Fax: (201) 947-1010

1:17 Civ.4327 (LLS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL DARDASHTIAN, individually and on behalf of COOPER SQUARE VENTURES, LLC NDAP, LLC and CHANNEL REPLY,

         Plaintiffs,

 -against-

DAVID GITMAN, ACCEL COMMERCE, LLC, DALVA VENTURES, LLC, KONSTANTYN BAGAIEV, OLESKII GLUKHAREV and CHANNEL REPLY, INC.,

         Defendants.

### MEMORANDUM OF LAW

**SIM & DEPAOLA, LLP**
BY: Peter Sim
Attorney for Defendant(s)
42-40 Bell Boulevard, Ste 201
Bayside, NY 11361
Tel. (718) 281-0400

To: Guaglardi & Meliti, LLC
   365 W Passaic St #130
   Rochelle Park, NJ 07662

Attorney(s) for Plaintiffs

Service of a copy of the within is hereby admitted.
Dated

Attorney(s) for